IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, GUTHRIE ABBOTT, CATHERINE BURNELL, STEVEN QUEYROUZE, JAIME ALEXIS ARROYO BORNSTEIN, and JUAN C. OLANO, on behalf of themselves and all others similarly situated, | § § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:09-cv-2384-N |
| v. | § § | |
| TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, SG PRIVATE BANKING (SUISSE) S.A., and BANK OF HOUSTON, | § § § § § § § | |
| Defendants. | § | |

**DEFENDANT HSBC'S MOTION TO DISMISS
AND SUPPORTING BRIEF**

Edwin R. DeYoung
State Bar No. 05673000
Roger B. Cowie
State Bar No. 00783886
David Cabrales
State Bar No. 00787179
Jason S. Lewis
State Bar No. 24007551
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

**ATTORNEYS FOR DEFENDANT HSBC
BANK PLC**

# <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT ..................................................................................... 1

FACTS ..................................................................................................................... 2

ARGUMENT ............................................................................................................ 3

    I.    Plaintiffs' claims against HSBC should be dismissed for lack of personal jurisdiction. .................................................................................................. 3

    II.    Plaintiffs' claim against HSBC should be dismissed for lack of standing and failure to state a claim. ........................................................................... 8

        A.    Plaintiffs lack standing to pursue their fraudulent transfer claims. ............ 8

        B.    Plaintiffs have failed to state a conspiracy claim against HSBC. ............. 10

        C.    HSBC joins its codefendants' Rule 12(b)(6) motions to dismiss. ............ 11

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Access Telecom, Inc. v. MCI Telecomm. Corp.*,
    197 F.3d 694 (5th Cir. 1999) ...................................................................................3

*Alpine View Co. v. Atlas Copco A.B.*,
    205 F.3d 208 (5th Cir. 2000) ...................................................................................3

*American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*,
    115 F. App'x 662 (5th Cir. 2004) ...........................................................................7

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ...........................................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................10

*Bradley v. Phillips Petroleum Co.*,
    527 F. Supp. 2d 625 (S.D. Tex. 2007) ..................................................................10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................................3

*Delta Brands, Inc. v. Danieli Corporation*,
    99 F. App'x 1 (5th Cir. 2004) .................................................................................7

*Dtex, LLC v. BBVA Bancomer, S.A.*,
    405 F. Supp. 2d 639 (D.S.C. 2005), *aff'd*, 214 F. App'x 286 (4th Cir.)................6

*Eagle Metal Products, LLC v. Keymark Enterprises, LLC*,
    651 F. Supp. 2d 577 (N.D. Tex. 2009) ...................................................................7

*In re Enron Corp. Sec.*,
    540 F. Supp. 2d 800 (S.D. Tex. 2007) ..................................................................10

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*,
    815 S.W.2d 223 (Tex. 1991)....................................................................................4

*Harris v. Lloyds TSB Bank, PLC*,
    281 F. App'x 489 (6th Cir. 2008) .......................................................................5, 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)................................................................................................4

*Hill v. Hunt*,
    2010 WL 54756 (N.D. Tex., Jan. 4, 2010) ...........................................................10

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)................................................................................................3

*Juhl v. Airington*,
936 S.W.2d 640 (Tex. 1996).................................................................................10

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
213 F.3d 841 (5th Cir. 2000) ..................................................................................4

*MortgageAmerica Corp. v. American Nat'l Bank of Austin*,
714 F.2d 1266 (5th Cir. 1983) ................................................................................9

*Nat'l Architecture Prods. Co. v. Atlas-Telecom Servs. USA, Inc.*,
No. 3:06-cv-751-G, 2007 WL 2051125 (N.D. Tex. Jul 13, 2007) ...........................8

*Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.*,
701 F.2d 889 (11th Cir. 1983) ................................................................................6

*Seiferth v. Helicopteros Atuneros, Inc.*,
472 F.3d 266 (5th Cir. 2006) ..................................................................................4

*The Semi Conductor Materials, Inc. v. Citibank Int'l PLC*,
969 F. Supp. 243 (S.D.N.Y. 1997) .........................................................................6

*Triplex Commc'ns, Inc. v. Riley*,
900 S.W.2d 716 (Tex. 1995)..................................................................................10

*Weinberg v. NFL Players Assoc.*,
No. 3:06-cv-2332-B, 2008 WL 4808920 (N.D. Tex. Nov. 5, 2008) ...................7, 8

*WRR Indus., Inc. v. Prologis*,
No. 3:04-cv-2544-L, 2006 WL 247894 (N.D. Tex. Feb. 2, 2006) ...........................8

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, GUTHRIE ABBOTT, CATHERINE BURNELL, STEVEN QUEYROUZE, JAIME ALEXIS ARROYO BORNSTEIN, and JUAN C. OLANO, on behalf of themselves and all others similarly situated, | § § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:09-cv-2384-N |
| v. | § § | |
| TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, SG PRIVATE BANKING (SUISSE) S.A., and BANK OF HOUSTON, | § § § § § § | |
| Defendants. | § § | |

**DEFENDANT HSBC'S MOTION TO DISMISS
AND SUPPORTING BRIEF**

HSBC Bank plc ("HSBC") requests that the Court dismiss all claims against HSBC under Fed. R. Civ. P. 12(b)(2) because the Court lacks personal jurisdiction over HSBC. Alternatively, HSBC requests that the Court dismiss all claims against HSBC under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because Plaintiffs lack standing to assert certain claims and their First Amended Complaint fails to state a claim for relief against HSBC.

**SUMMARY OF ARGUMENT**

Plaintiffs' claims against HSBC should be dismissed for lack of personal jurisdiction. HSBC is a London-based bank organized under the laws of the United Kingdom that does not have a presence in Texas and does not regularly conduct any business here. The correspondent

1

banking accounts forming the basis of Plaintiffs' claims against HSBC were not solicited or administered by HSBC in Texas.  Rather, Stanford International Bank, Ltd. ("SIBL"), which is an Antiguan bank, opened those accounts in London, and those accounts were administered by HSBC in London.  Indeed, the only plaintiff who alleges to have had any dealings with HSBC purports to be a citizen of the United Kingdom residing in Antigua.

Alternatively, Plaintiffs' claims should be dismissed for lack of standing and failure to state a claim.  Plaintiffs do not have standing to pursue their purported fraudulent transfer claims because the Court-appointed receiver of SIBL has exclusive authority to pursue those claims under the Court's Amended Order Appointing Receiver dated March 12, 2009.  Plaintiffs' fraudulent conspiracy claim likewise fails because it is not supported by any alleged facts (as opposed to conclusions) about the conduct of HSBC and its co-defendants that, if true, would state a conspiracy claim.  At most, Plaintiffs have alleged that HSBC agreed to perform correspondent banking services for SIBL and "should have known" about Stanford's fraud, but such allegations of negligence are not sufficient to state a claim of conspiracy.

## FACTS

HSBC is a bank organized under the laws of the United Kingdom with its principal place of business in London.  It does not have any offices, branches, employees, or agents in Texas.[1]

In the first half of 2003, representatives of SIBL traveled to London to introduce themselves to HSBC and begin discussions about the possibility of opening a correspondent banking account with HSBC.  These discussions eventually led to SIBL opening a British Pound Sterling account with HSBC in September 2003, and three subsequent correspondent banking

---

[1] Declaration of Ian Brooks at ¶ 3 (Appendix p. 2 ).

2

accounts between November 2003 and July 2007. These accounts were opened, maintained, and administered by HSBC in London.[2]

Plaintiffs allege that "Stanford used HSBC to collect all wire transfers intended by the victims to be deposited in SIBL in British Pound Sterling, Euros, and other European currencies" and that such funds were "eventually diverted from SIBL, where the victims intended the funds to go, to be 'invested' in Allen Stanford's private ventures, used to fund Allen Stanford's lavish lifestyle, and reinvested in [Stanford's] criminal venture to keep the fraudulent scheme in operation."[3] The only plaintiff who alleges to have had any dealings with HSBC is Catherine Burnell, who Plaintiffs allege "is and was a citizen of the United Kingdom residing in Antigua."[4]

Under the terms of the correspondent bank accounts, any transfers of funds out of the accounts were initiated by SIBL, and any transfers into the accounts were initiated by SIBL or others (such as SIBL's customers). HSBC did not control where the funds were sent to or received from. Thus, if any funds were sent to or received from Texas associated with the accounts, those transactions were not initiated or directed by HSBC.[5]

## ARGUMENT

### I.   Plaintiffs' claims against HSBC should be dismissed for lack of personal jurisdiction.

Under the Texas long-arm statute and the due process clause of the U.S. Constitution, the Court may exercise personal jurisdiction over a nonresident defendant only if, among other things, the defendant has sufficient "minimum contacts" with Texas to be hailed into court here.[6]

---

[2] Brooks Declaration at ¶¶ 4-5 (Appendix pp. 2-3).

[3] Plaintiff's First Amended Complaint at pp. 2-3.

[4] *Id*. at ¶ 8.

[5] Brooks Declaration at ¶ 6 (Appendix p. 3).

[6] *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 472–78 (1985) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) (both describing Constitutional requirements for personal jurisdiction). *See also Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000) and *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197

Where, as here, a nonresident defendant challenges personal jurisdiction, the burden of proving personal jurisdiction is on the plaintiff.[7]

There are two types of personal jurisdiction that a plaintiff can attempt to prove: general jurisdiction and specific jurisdiction. General jurisdiction requires that a defendant have continuous and systematic contacts with the forum state.[8] Specific jurisdiction requires that: (1) the defendant "purposefully availed" itself of the privileges of conducting activities in the forum state; (2) the plaintiff's cause of action arises out of or results from such activities; and (3) the exercise of personal jurisdiction is "fair and reasonable."[9]

In this case, the Declaration of Ian Brooks establishes that HSBC is an English bank based in London, and it does not have any offices, branches, agents, or employees in Texas.[10] Plaintiffs have not alleged, and cannot prove, any facts establishing that HSBC conducts continuous and systematic activities in Texas that would subject it to general jurisdiction here.

Likewise, Plaintiffs have not alleged and cannot prove any facts that would establish specific jurisdiction over HSBC in Texas. Their claims against HSBC arise from a correspondent banking relationship between an Antiguan-based bank, SIBL, and a London-based bank, HSBC.[11] Mr. Brooks' declaration establishes that SIBL approached HSBC in London to establish that relationship, and the resulting correspondent banking accounts were opened and

---

F.3d 694, 716 (5th Cir. 1999) (both stating that personal jurisdiction under the Texas long-arm statute is coextensive with the limits of due process).

[7] *See, e.g., Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).

[8] *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984) (describing general jurisdiction); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) ("Personal jurisdiction can be general or specific. If a defendant's contacts with the forum state are 'continuous and systematic,' a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts." (citing *Helicopteros Nacionales*)); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991) ("When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state.").

[9] *Seiferth*, 472 F.3d at 271.

[10] Brooks Declaration at ¶ 3 (Appendix p. 2).

[11] Plaintiff's First Amended Complaint pp. 2-3.

administered in London.[12]   In fact, the only plaintiff who is alleged to have dealt with HSBC, Catherine Burnell, is "a citizen of the United Kingdom residing in Antigua."[13]

Plaintiffs may argue that HSBC is subject to personal jurisdiction here because HSBC allegedly wired funds to Texas and received funds from Texas as part of its correspondent banking relationship with SIBL.[14]   Even assuming such funds transfers occurred (and without conceding that such transfers did occur), they were made under the direction and control of third parties as part of a correspondent banking relationship, and thus, they do not constitute conduct **by HSBC** purposefully directed to Texas.

The Sixth Circuit recently addressed this very issue in *Harris v. Lloyds TSB Bank, PLC*,[15] where the court held that a London-based bank was not subject to personal jurisdiction in Tennessee even though the bank, on behalf of its customers, sent and received multiple funds transfers to and from Tennessee.   The plaintiff in *Harris* fell victim to a Ponzi scheme orchestrated from Tennessee by Ron Hogsed, a Tennessee resident.   As part of Hogsed's Ponzi scheme, the plaintiff and other investors were defrauded into transferring money from Tennessee and elsewhere to an account at Lloyds TSB Bank, PLC, ("Lloyds") in London, believing that the funds would be invested in a T-Bill trading program.   When the scheme came to light and the plaintiff was unable to retrieve the funds that he and others had invested, he filed suit against Lloyds in federal court in the Middle District of Tennessee.   The district court denied Lloyds' motion to dismiss for lack of personal jurisdiction and Lloyds appealed to the Sixth Circuit.[16]

---

[12] Brooks Declaration ¶¶ 4-5 (Appendix pp. 2-3).

[13] Plaintiff's First Amended Complaint at ¶ 8.

[14] *Id*. at ¶ 111.

[15] 281 F. App'x 489 (6th Cir. 2008).

[16] *Id.* at 490-492.

The Sixth Circuit reversed the district court and held that Lloyds was not subject to personal jurisdiction in Tennessee notwithstanding the following contacts: 108 account holders in Tennessee; a correspondent banking relationship with AmSouth Bank of Tennessee; multiple funds transfers to and from banks in Tennessee; and eight visits to Tennessee by Lloyds' representatives over a five-year period.[17]  With respect to the issue of funds transfers, the court stated:

> Nor do the wire transfers between Lloyds and some Tennessee banks justify the exercise of general jurisdiction over Lloyds.  "As federal courts have held on many occasions, [ ] customer-initiated bank-to-bank wire transfers do not establish the 'continuous and systematic' purposeful presence necessary to establish personal jurisdiction over a foreign bank."[18]

With respect to specific jurisdiction, the Sixth Circuit explained:  "The wire transfers accepted or confirmed by Lloyds from Tennessee and any wire transfers originated by Hogsed in the United Kingdom and sent to Tennessee cannot constitute purposeful availment, because none of these transfers were initiated by Lloyds."[19]   Rather, such transfers were initiated and controlled by Lloyds' customers and others.  This holding and rationale are consistent with decisions of other courts that have addressed similar issues arising from correspondent banking activities.[20]

---

[17] *Id.* at 492-94.

[18] *Id.* at 493 (quoting *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 645 (D.S.C. 2005), *aff'd*, 214 F. App'x 286 (4th Cir.)).

[19] *Id.* at 494.

[20] *See, e.g., Dtex*, 405 F. Supp. 2d at 645 (holding that "the fact that Defendant, like every other sophisticated bank, wires funds from customers' accounts in Mexico to banks in South Carolina at customer' requests and receives wire transfers from banks in South Carolina" does not establish personal jurisdiction in South Carolina); *The Semi Conductor Materials, Inc. v. Citibank Int'l PLC*, 969 F. Supp. 243, 246-47 (S.D.N.Y. 1997) ("Courts have repeatedly found that a correspondent bank relationship between a foreign bank and a New York financial institution does not provide sufficient grounds to exercise personal jurisdiction [in New York] over a foreign bank."); *Oriental Imports and Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889 (11th Cir. 1983) (holding that a Netherlands Antilles Bank acting as a correspondent bank for various Miami banks was not subject to personal jurisdiction in Florida).

In this case, Plaintiffs have made only one factual allegation about conduct by HSBC directed at Texas:  that funds in SIBL's bank account at HSBC in London "were redirected by HSBC, in concert with and/or at the direction of Stanford, to bank accounts in Houston, Texas, and elsewhere."[21]  But to the extent, if any, that funds were transferred from SIBL's account in London to bank accounts in Texas, those transfers were originated and controlled by HSBC's customer, SIBL, not by HSBC.[22]  Under the authorities cited above, any such transfers would not be activities of HSBC purposefully directed to Texas.  Rather, they would be activities of HSBC's customer directed to Texas.  Thus, they would not subject HSBC to personal jurisdiction here.

Plaintiffs may also argue that HSBC is subject to personal jurisdiction in Texas because they have alleged that HSBC was part of a conspiracy with Stanford and others that was centered in Texas.  However, "bare allegations of conspiracy without factual support do not suffice to establish minimum contacts for personal jurisdiction purposes."[23]  Rather, a plaintiff must "demonstrate that [the defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas."[24]

This principle was recently applied in *Weinberg v. NFL Players Assoc.*,[25] where the plaintiff argued that there was specific jurisdiction over defendant Kaplan because he was "part of a conspiracy that committed the intentional tort of fraud directed at Plaintiff Weinberg in Texas."[26]  The Court rejected the plaintiff's contention, noting that "[e]ven with allegations of

---

[21] First Amended Complaint at ¶ 111.

[22] Brooks Declaration at ¶ 6 (Appendix p. 3).

[23] *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 666 n.16 (5th Cir. 2004).

[24] *Delta Brands, Inc. v. Danieli Corporation*, 99 F. App'x 1, 5 (5th Cir. 2004); *Eagle Metal Products, LLC v. Keymark Enterprises, LLC*, 651 F. Supp. 2d 577, 593-94 (N.D. Tex. 2009).

[25] No. 3:06-cv-2332-B, 2008 WL 4808920 (N.D. Tex. Nov. 5, 2008).

[26] *Id* . at *4.

conspiracy, the Court must still evaluate each of the Defendants' contacts separately to determine whether personal jurisdiction exists."[27]   After noting that "on examination of the evidence submitted by Weinberg, the Court cannot independently identify any communication by Kaplan that could support a conspiracy to commit fraud" and finding no alternative grounds to exercise personal jurisdiction, the Court granted Kaplan's motion to dismiss.[28]

In this case, Plaintiffs have made only conclusory allegations of conspiracy against HSBC, and they have not alleged any facts about HSBC's conduct that would subject it to personal jurisdiction in Texas.[29]   In short, Plaintiffs have not alleged, and cannot prove, any facts subjecting HSBC to personal jurisdiction here.

**II.     Plaintiffs' claim against HSBC should be dismissed for lack of standing and failure to state a claim.**

Not only should Plaintiffs' claims be dismissed for lack of personal jurisdiction over HSBC, they should also be dismissed for lack of standing and failure to state a claim.[30]

**A.     Plaintiffs lack standing to pursue their fraudulent transfer claims.**

In Counts 1-3 of their First Amended Complaint, Plaintiffs have sued HSBC to recover the fees that SIBL paid HSBC for HSBC's correspondent banking services. Plaintiffs assert that SIBL's payment of such fees constituted a fraudulent conveyance under the Texas Uniform Fraudulent Transfer Act and/or the common law.[31]   But Plaintiffs lack standing to bring this claim.

---

[27] *Id.* at *5.

[28] *Id.* at *6-7.  *See also Nat'l Architecture Prods. Co. v. Atlas-Telecom Servs. USA, Inc.*, No. 3:06-cv-751-G, 2007 WL 2051125 *8 (N.D. Tex. Jul 13, 2007); *WRR Indus., Inc. v. Prologis*, No. 3:04-cv-2544-L, 2006 WL 247894 *7 n.8 (N.D. Tex. Feb. 2, 2006).

[29] Plaintiffs' First Amended Complaint at ¶¶ 105-112.

[30] In this section of the brief, HSBC cites to and relies on Texas substantive law because Texas substantive law is cited in Plaintiffs' First Amended Complaint.  HSBC denies that Texas substantive law is applicable to the claims asserted against HSBC and expressly reserves the right to argue that Texas substantive law is not applicable.

[31] Plaintiffs' First Amended Complaint at pp. 24-27.

The Fifth Circuit has held unequivocally in the context of bankruptcy proceedings that "[a]n action under the Fraudulent Transfers Act is essentially one for property that belongs to the debtor and which the debtor has fraudulently transferred in an effort to put it out of the reach of creditors."[32]   Accordingly, such a suit "is usually brought by the trustee in bankruptcy for the benefit of all creditors equally."[33]   The rationale for this rule is as follows:

> Actions for the recover of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with this estate and with the equitable distribution scheme dependent upon it, and are therefore appropriately stayed under section 362(a)(3).  Any other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served.  Even without the Bankruptcy Code and the policies that support it, we would be reluctant to elevate such a principle to a rule of law.[34]

In this case, Plaintiffs seek to recover assets of SIBL that Plaintiffs allege were fraudulently conveyed to HSBC.[35]   However, the Court, in its Amended Order Appointing Receiver dated March 12, 2009 (the "Receivership Order"), granted the Receiver "complete and exclusive control" over the Receivership Estate and any assets traceable thereto.[36]   It further enjoined creditors, without first obtaining leave of court, from "[a]ny act to obtain possession of the Receivership Estate assets."[37]   Plaintiffs have not, to the best of HSBC's knowledge and belief, obtained such leave.  Accordingly, they do not have standing to seek recovery of SIBL property allegedly fraudulently transferred to HSBC, and their fraudulent conveyance claims should be dismissed.[38]

---

[32] *MortgageAmerica Corp. v. American Nat'l Bank of Austin*, 714 F.2d 1266, 1275 (5th Cir. 1983).

[33] *Id*. at 1272.

[34] *Id*. at 1276.

[35] Plaintiffs' First Amended Complaint at Counts 1-3.

[36] Receivership Order at ¶ 4.

[37] *Id*. at ¶ 10(a).

[38] By making this argument, HSBC does not concede that the Receiver is entitled to possession of or control over any assets that HSBC may hold, and HSBC expressly reserves any and all defenses to any claims or rights that the Receiver may attempt to assert.

### B.      Plaintiffs have failed to state a conspiracy claim against HSBC.

In Count 4 of their First Amended Complaint, Plaintiffs have sued HSBC for allegedly conspiring with Stanford to commit fraud.  To prevail on this claim, however, Plaintiffs must allege and prove knowing misconduct by HSBC; mere negligence in failing to discover Stanford's alleged fraud is not sufficient.[39]  They must also allege and prove that HSBC entered into an agreement to accomplish an unlawful purpose.[40]  Moreover, because these allegations are based on a purported fraud, Plaintiffs must also satisfy the particularized pleading requirements of Fed. R. Civ. P. 9(b).[41]  Additionally, under the Supreme Court's recent opinions in *Twombly* and *Iqbal*, Plaintiffs must allege facts about conduct of HSBC that are sufficient to state a claim that is "plausible on its face."[42]

In this case, Plaintiffs' conspiracy allegations against HSBC are insufficient to state a claim.  They have not alleged any facts about HSBC's conduct that are inconsistent with a bank's performance of correspondent banking services in the ordinary course of business.  Moreover, the only facts alleged with respect to HSBC in support of Plaintiff's conspiracy claims are:

    1.     In April 1999, FinCEN issued an advisory concerning enhanced security
           for transactions involving Antigua and Barbuda, which was withdrawn in

---

[39] *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (civil conspiracy requires "specific intent" to agree "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.") (internal quotations and citation omitted); *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995) ("The parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement.").

[40] *Id.*

[41] *Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 656 (S.D. Tex. 2007) (stating a conspiracy claim sounding in fraud "is also subject to the heightened pleading requirements of Rule 9(b)"); (citing *Leon y Castillo v. First City Bancorporation*, 43 F.3d 953, 961 (5th Cir. 1994)); see also *Hill v. Hunt*, 2010 WL 54756 (N.D. Tex., Jan. 4, 2010) (dismissing conspiracy to commit fraud claim under Rule 9(b)); *In re Enron Corp. Sec.*, 540 F. Supp. 2d 800, 806-07 (S.D. Tex. 2007) (stating that the "particularity requirement of Rule 9(b) also governs conspiracy to commit fraud").

[42] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009).

10

August 2001 (two years before SIBL opened the first correspondent banking account with HSBC);[43]

2.      HSBC, as a correspondent bank for SIBL, had a duty to conduct certain due diligence on SIBL under the Money Laundering Regulations enacted in England during 2007 (four years after the first correspondent banking account was opened);[44] and

3.      HSBC, as a correspondent bank for SIBL, gathered sufficient information to understand Stanford's business.[45]

Even if all these facts were accepted as true, they do not give rise to a plausible conclusion that HSBC discovered Stanford's alleged fraud and made a knowing agreement to participate in or assist the fraud. In fact, Plaintiffs implicitly concede this point by ending their allegations against HSBC with the following assertion: "Based on the foregoing, and based on its longstanding correspondent banking relationship with Stanford, HSBC knew, *or should have known*, that Stanford was conducting an illegal and fraudulent scheme."[46] But "should have known" is a negligence standard. It does not rise to the level of intentional or knowing misconduct required to state a claim for conspiracy.

### C.      HSBC joins its codefendants' Rule 12(b)(6) motions to dismiss.

The foregoing arguments in subsections A and B have been briefed more extensively by HSBC's codefendants in their motions to dismiss. They have also briefed other bases for dismissal as well. Rather than submit duplicate briefing on the same legal points, HSBC incorporates by reference all the arguments and authorities asserted in its codefendants' motions to dismiss and supporting briefs as additional reasons why Plaintiffs' claims against HSBC should be dismissed.

---

[43] Plaintiff's First Amended Complaint at ¶¶ 99-103.

[44] *Id.* at ¶ 106.

[45] *Id.* at ¶ 107.

[46] *Id.* at ¶ 112 (emphasis added).

## CONCLUSION

HSBC respectfully requests that all claims against it be dismissed for lack of personal jurisdiction.   Alternatively, HSBC requests that all claims against it be dismissed for lack of standing and failure to state a claim.

Respectfully submitted:


/s/ Roger B. Cowie
Edwin R. DeYoung
State Bar No. 05673000
Roger B. Cowie
State Bar No. 00783886
David Cabrales
State Bar No. 00787179
Jason S. Lewis
State Bar No. 24007551
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

**ATTORNEYS FOR DEFENDANT HSBC BANK PLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2010 I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Roger B. Cowie
Roger B. Cowie

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, GUTHRIE ABBOTT, CATHERINE BURNELL, STEVEN QUEYROUZE, JAIME ALEXIS ARROYO BORNSTEIN, and JUAN C. OLANO, on behalf of themselves and all others similarly situated, | § § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:09-cv-2384-N |
| v. | § § | |
| TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, SG PRIVATE BANKING (SUISSE) S.A., and BANK OF HOUSTON, | § § § § § § | |
| Defendants. | § § | |

# APPENDIX

to

**DEFENDANT HSBC'S MOTION TO DISMISS
AND SUPPORTING BRIEF**

Edwin R. DeYoung
State Bar No. 05673000
Roger B. Cowie
State Bar No. 00783886
David Cabrales
State Bar No. 00787179
Jason S. Lewis
State Bar No. 24007551
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

**ATTORNEYS FOR DEFENDANT HSBC
BANK PLC**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PEGGY ROIF ROTSTAIN, GUTHRIE ABBOTT, CATHERINE BURNELL, STEVEN QUEYROUZE, JAIME ALEXIS ARROYO BORNSTEIN, and JUAN C. OLANO, on behalf of themselves and all others similarly situated,<br><br><div align="right">*Plaintiffs,*</div><br>v.<br><br>TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, SG PRIVATE BANKING (SUISSE) S.A., and BANK OF HOUSTON,<br><br><div align="right">*Defendants*</div> | Civil Action No. 3:09-cv-2384-N |

## DECLARATION OF IAN BROOKS IN SUPPORT OF HSBC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1.    My name is Ian Brooks.  I am over the age of twenty-one (21), have never been convicted of a felony or crime involving dishonesty, and am fully competent to testify to the matters herein.  All statements made herein are based upon my personal knowledge and/or upon knowledge I acquired in the ordinary course of business working for HSBC Bank plc ("HSBC").

2.    I have been employed by HSBC for approximately 30 years and was HSBC's original relationship manager for the correspondent banking relationship between HSBC and Stanford International Bank, Ltd. ("SIBL").  I was serving as the relationship manager when SIBL first opened a correspondent banking account with HSBC in September 2003, and I

DECLARATION OF IAN BROOKS                                                                                    Page 1

continued in that capacity until June 2005, when I assumed a different position with HSBC. I currently serve as Manager, Operations, Global Banking of HSBC.

3.    HSBC is a bank organized under the laws of the United Kingdom with its principal place of business in London, England (which is where I am located). Based on my 30 years of experience working for HSBC and to the best of my knowledge and belief, HSBC does not have any offices, branch locations, or other business operations in Texas, or any officers, employees, or other agents who work for HSBC in Texas.

4.    In early 2003, I and others working with me at HSBC in London were informed by colleagues at an affiliate of HSBC in Panama that members of Stanford Financial Group's senior management were going to be in London on an upcoming trip and had requested an introductory meeting with senior executives of HSBC during the trip. The introductory meeting was held in February 2003 at HSBC's offices in London. I and two other London-based executives of HSBC attended that meeting on behalf of HSBC. James Davis and Laura Pendergest, who I understood and believed were from Memphis, Tennessee, attended the meeting on behalf of Stanford Financial Group. Copies of the business cards they gave me at the meeting are attached as Exhibit 1. This was an introductory meeting only, and we did not identify any business opportunities at that meeting.

5.    In June 2003, senior executives of SIBL from Antigua met with me in London to begin discussing the possibility of SIBL opening a correspondent banking account with HSBC. Copies of the business cards they gave me at this meeting are attached as Exhibit 2. This meeting in London eventually led to SIBL opening a British Pounds Sterling account with HSBC in September 2003. Subsequently, SIBL opened additional correspondent banking accounts with HSBC in November 2003, February 2005, and July 2007. All of these accounts were opened,

**DECLARATION OF IAN BROOKS**                                          **Page 2**

maintained, and administered by HSBC in London. During my tenure as the relationship manager, neither I nor anyone else associated with HSBC of whom I am aware traveled to Texas to solicit, open, maintain, or administer any of these accounts.

6.     Under the terms of the correspondent banking accounts, any transfers of funds out of the accounts were initiated by SIBL (except HSBC could periodically deduct its fees from the accounts). HSBC did not control where the funds were sent to or received from. In either case, even though a counterparty based in Texas may have been the sender or recipient of funds associated with a transaction, HSBC would not have been involved in the initiation of the transaction nor would the transaction have been directed by HSBC.

7.     Neither I nor anyone else at HSBC of whom I am aware knew or had information indicating that fraudulent or other illegal activities were taking place by SIBL or the Stanford Financial Group until allegations of fraud were made in 2009 by authorities in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 2 1 day of May, 2010.

IAN BROOKS

DECLARATION OF IAN BROOKS

Page 3



James M. Davis, Director
Chief Financial Officer

6075 Poplar, Suite 202
Memphis, Tennessee 38119
(901) 680-5260
(901) 680-5265 Fax

Laura Pendergest-Ant
Managing Director of
Investments and Research

6075 Poplar, Suite 202
Memphis, Tennessee 38119
(901) 680-5260
(901) 680-5270 Fax







**STANFORD
INTERNATIONAL
BANK LTD.**

A MEMBER OF
THE STANFORD FINANCIAL GROUP

FRANS P. VINGERHOEDT
*President*

No. 11 Pavilion Drive
P.O. Box 3300
St. John's, Antigua, W.I.
(268) 480-3700
(268) 480-3717 Fax
fvingerhoedt@stanfordeagle.com



**STANFORD
INTERNATIONAL
BANK LTD.**

A MEMBER OF
THE STANFORD FINANCIAL GROUP

PETER THOMAS SIRAGNA
*Senior Director
Private Banking*

No. 11 Pavilion Drive
P.O. Box 3300
St. John's, Antigua, West Indies
(268) 480-3700
(268) 480-5918 Fax
44-768-755-0509 Cell
psiragna@stanfordeagle.com



**STANFORD
INTERNATIONAL
BANK LTD.**

A MEMBER OF
THE STANFORD FINANCIAL GROUP

GEOFFREY RUSSELL
*Senior Director
Private Banking*

No. 11 Pavilion Drive
P.O. Box 3300
St. John's, Antigua, West Indies
(268) 480-3700
(268) 480-5918 Fax
44-768-735-5257 Cell
grussell@stanfordeagle.com

(4) 0787 - 656 - 4500



**STANFORD
INTERNATIONAL
BANK LTD.**

A MEMBER OF
THE STANFORD FINANCIAL GROUP

JUAN RODRIGUEZ-TOLENTINO
*Chief Operating Officer*

Pavilion Drive No. 11
P.O. Box 3300
St. John's, Antigua, West Indies
(268) 480-3785 Direct
(268) 464-1140 Cell
(268) 480-3724 Fax
jrodriguez@stanfordeagle.com



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, | § | |
| GUTHRIE ABBOTT, CATHERINE | § | |
| BURNELL, STEVEN QUEYROUZE, | § | |
| JAIME ALEXIS ARROYO | § | |
| BORNSTEIN, and JUAN C. OLANO, | § | |
| on behalf of themselves and all others | § | |
| similarly situated, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:09-cv-2384-N |
| | § | |
| v. | § | |
| | § | |
| TRUSTMARK NATIONAL BANK, | § | |
| HSBC BANK PLC, THE TORONTO- | § | |
| DOMINION BANK, SG PRIVATE | § | |
| BANKING (SUISSE) S.A., and BANK | § | |
| OF HOUSTON, | § | |
| | § | |
| Defendants. | § | |

**[PROPOSED] ORDER GRANTING HSBC'S MOTION TO DISMISS**

The Court, having considered HSBC Bank plc's ("HSBC's") Motion to Dismiss and

Supporting Brief, Plaintiffs' response, HSBC's reply, the pleadings and briefs on file, and the

evidence, arguments, and authorities submitted by the parties, is of the opinion that the motion

should be GRANTED.

Therefore, it is ORDERED, ADJUDGED, and DECREED that Plaintiffs' claims against

HSBC are DISMISSED for the following reasons:

1.   The Court lacks personal jurisdiction over HSBC;

2.   Plaintiffs' First Amended Complaint fails to state a claim for relief against HSBC; and

3.   Plaintiffs lack standing to pursue Counts 1-3 of their First Amended Complaint.

Signed this the _____ day of _____, 2010.

_____
UNITED STATES DISTRICT JUDGE