## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: STANFORD ENTITIES SECURITIES LITIGATION | MDL Docket No. 2099 |
| THIS DOCUMENT RELATES TO: | |
| PEGGY ROIF ROTSTAIN, GUTHRIE ABBOTT, CATHERINE BURNELL, STEVEN QUEYROUZE, JAIME ALEXIS ARROYO BORNSTEIN, AND JUAN C. OLANO, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFFS, <br><br> V. <br><br> TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, SG PRIVATE BANKING (SUISSE) S.A., AND BANK OF HOUSTON, <br><br> DEFENDANTS. | No. 09 Civ. 2384 |

### SOCIÉTÉ GÉNÉRALE PRIVATE BANKING (SUISSE) S.A.'s MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM (AND BRIEF IN SUPPORT)

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1000 Louisiana St., Suite 6800
Houston, TX 77002
(713) 655-5122

Attorneys for Defendant Société Générale
Private Banking (Suisse) S.A.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 4

ARGUMENT ......................................................................................................................... 7

I.  THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER SG
    SUISSE .......................................................................................................................... 7

    A.  The Jurisdictional Issue Is Governed by Texas State Law .................................. 7

    B.  The Amended Complaint Fails to Allege the Requisite Jurisdictional Facts
        with Respect to SG Suisse .................................................................................... 8

    C.  SG Suisse Does Not Have Minimum Contacts with the State of Texas ................ 9

        1.  This Court Does Not Have General Jurisdiction Over SG Suisse ............ 10

        2.  This Court Does Not Have Specific Jurisdiction Over SG Suisse ............ 11

            (a)  *SG Suisse Has No Jurisdictional Contacts with the State of
                 Texas* ........................................................................................... 11

            (b)  *Plaintiffs' Alternative Theories for Specific Jurisdiction Are
                 Not Legally Cognizable* .............................................................. 15

II.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF ........................... 16

    A.  Plaintiffs Have Failed to State a Claim for Fraudulent Transfer ........................ 16

        1.  SG Suisse Is Not a Transferee Under TUFTA ....................................... 17

        2.  Plaintiffs Have Not Adequately Alleged the Elements of a TUFTA
            Claim ...................................................................................................... 19

            (a)  *Plaintiffs Have Not Identified a Debtor that Is Responsible
                 for the Allegedly Fraudulent Transfers* ....................................... 20

            (b)  *Plaintiffs Have Not Adequately Alleged that the Debtor Did
                 Not Receive Reasonably Equivalent Value in Exchange for
                 Banking Services Provided by SG Suisse* ..................................... 22

i

B.      Plaintiffs Have Failed to State a Claim for Civil Conspiracy .............................24

    1.      Plaintiffs Have Failed to Allege a Predicate Act of Fraud ......................24

    2.      Plaintiffs Have Failed to Plead Civil Conspiracy with Particularity.........25

        (a)     *Plaintiffs Have Failed to Allege that SG Suisse Was Aware of Any Fraud*.............................................................................26

        (b)     *Plaintiffs Have Failed to Allege that SG Suisse Agreed to Participate in the Fraud*.............................................................27

        (c)     *Plaintiffs Have Failed to Allege that SG Suisse Specifically Intended to Advance the Scheme* ..................................................27

        (d)     *Plaintiffs Have Failed to Allege Any Facts Regarding Blaise Friedli Sufficient to State a Claim Against SG Suisse*........28

CONCLUSION........................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

### CASES

Page(s)

*Alenia Spazio, S.p.A. v. Reid*,
    130 S.W.3d 201 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ................3, 12

*American Type Culture Collection, Inc. v. Coleman*,
    83 S.W.3d 801 (Tex. 2002) ....................................................................................10

*Asahi Metal Industry Co. v. Superior Court*,
    480 U.S. 102 (1987)................................................................................................9

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................................16, 22, 24

*Askanase v. Fatjo*,
    130 F.3d 657 (5th Cir. 1997)................................................................................24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................16

*Bonded Financial Services Inc. v. European American Bank*,
    838 F.2d 890 (7th Cir. 1988)..........................................................................18, 19

*CSR Ltd. v. Link*,
    925 S.W.2d 591 (Tex. 1996) ...........................................................................9, 10

*In re Caremerica*,
    409 B.R. 737 (Bankr. E.D.N.C. 2009)..................................................................22

*In re Century Business Services Securities Litigation*,
    No. 1:99CV02200, 2002 WL 32254513 (N.D. Ohio June 27, 2002)........................30

*Chu v. Hong*,
    249 S.W.3d 441 (Tex. 2008) ....................................................................26, 28, 29

*In re Churchill Mortgage Investment Corp.*,
    256 B.R. 664 (Bankr. S.D.N.Y. 2000), *aff'd sub nom. Balaber-Strauss v.*
    *Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001) .............................................................23

*In re Colombian Coffee Co.*,
    59 B.R. 643 (Bankr. S.D. Fla. 1986) ....................................................................18

*In re Coutee*,
 984 F.2d 138 (5th Cir. 1993) ............................................................... 17, 19

*Credit Commercial de France, S.A. v. Morales*,
 195 S.W.3d 209 (Tex. App.—San Antonio 2006, pet. denied) ............... 11, 13, 14, 15

*Delta Brands, Inc. v. Danieli Corp.*,
 No. 3:02-CV-0081-N, 2003 WL 22255699 (N.D. Tex. Sept. 29, 2003), *aff'd*,
 99 F. App'x 1 (5th Cir. 2004) ............................................................. 8, 11

*Delta Brands, Inc. v. Danieli Corp.*,
 No. 3:02-CV-0081-N, 2002 WL 31875560 (N.D. Tex. Dec. 20, 2002), *aff'd*,
 99 F. App'x 1 (5th Cir. 2004) ................................................................ 11

*Dollar Savings Bank v. First Security Bank of Utah, N.A.*,
 746 F.2d 208 (3d Cir. 1984) .................................................................. 12

*In re Enron Corp. Securities, Derivative & ERISA Litigation*,
 258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................ 29, 30

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,
 Nos. H-01-3624, *et al.*, 2006 WL 3716669 (S.D. Tex. Dec. 12, 2006),
 *aff'd*, 535 F.3d 325 (5th Cir. 2008) ........................................................ 24

*Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance Co.*,
 51 S.W.3d 573 (Tex. 2001) .................................................................. 24

*Ferrer v. Chevron Corp.*,
 484 F.3d 776 (5th Cir. 2007) ................................................................ 16

*FDIC v. White*,
 No. 3:96-CV-0560-P, 1998 WL 120298 (N.D. Tex. Mar. 5, 1998) ..................... 21

*Fidelity National Title Insurance Co. of New York v. Howard Savings Bank*,
 436 F.3d 836 (7th Cir. 2006) ................................................................ 18

*First Interstate Bank of Texas, N.A. v. S.B.F.I., Inc.*,
 830 S.W.2d 239 (Tex. App.—Dallas 1992, no writ) ................................... 28

*Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*,
 565 F.3d 200 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 199 (2009) ............... 25, 28

*Forum Insurance Co. v. Devere Ltd.*,
 151 F. Supp. 2d 1145 (C.D. Cal. 2001), *rev'd on other grounds sub nom.*
 *Forum Insurance Co. v. Comparet*, 62 F. App'x 151 (9th Cir. 2003) ................ 19

iv

*Freudensprung v. Offshore Technical Services, Inc.*,
   379 F.3d 327 (5th Cir. 2004)..............................................................7, 8, 13

*GE Capital Commercial, Inc. v. Wright & Wright, Inc.*,
   No. 3:09-CV-572-L, 2009 WL 5173954 (N.D. Tex. Dec. 31, 2009)..................17, 18

*In re Global Crossing Ltd. Securities Litigation*,
   No. 02 Civ. 910, 2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005)................................30

*In re Global Crossing Ltd. Securities Litigation*,
   No. 02 Civ. 910, 2005 WL 2990646 (S.D.N.Y. Nov. 7, 2005)................................30

*Guidry v. Bank of LaPlace*,
   954 F.2d 278 (5th Cir. 1992)................................................................................24

*Harris v. Lloyds TSB Bank, PLC*,
   281 F. App'x 489 (6th Cir. 2008)..........................................................................12

*Harris v. United States*,
   340 F. Supp. 2d 764 (S.D. Tex. 2004) ....................................................................5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)........................................................................................10, 11

*Hill v. Hunt*,
   No. 3:07-CV-2020-O, 2010 WL 54756 (N.D. Tex. Jan. 4, 2010) ...........................25

*IRA Resources, Inc. v. Griego*,
   221 S.W.3d 592 (Tex. 2007) ...........................................................................10, 15

*IRA Resources, Inc. v. Griego*,
   235 S.W.3d 263 (Tex. App.—Corpus Christi 2007, no pet.)....................................11

*In re Image Masters, Inc.*,
   421 B.R. 164 (Bankr. E.D. Pa. 2009) ....................................................................23

*Indiana Bell Telephone Co. Inc. v. Lovelady*,
   No. SA-05-CA-285-RF, 2006 WL 485305 (W.D. Tex. Jan. 11, 2006).....................20

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................................8

*Johnston v. Multidata Systems International Corp.*,
   523 F.3d 602 (5th Cir. 2008)............................................................................9, 10

*Juhl v. Arlington*,
936 S.W.2d 640 (Tex. 1996) ...................................................................25

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) ...............................................................................15

*Marlin v. Moody National Bank, N.A.*,
248 F. App'x 534 (5th Cir. 2007) .....................................................25, 27

*Meadows v. Hartford Life Insurance Co.*,
492 F.3d 634 (5th Cir. 2007) ..................................................................24

*Melder v. Morris*,
27 F.3d 1097 (5th Cir. 1994) ..................................................................28

*Michels v. Zeifman*,
No. 03-08-0287-CV, 2009 WL 349167 (Tex. App.—Austin Feb. 12, 2009,
pet. denied) ..............................................................................................25

*Michiana Easy Livin' Country, Inc. v. Holten*,
168 S.W.3d 777 (Tex. 2005) ...............................................................9, 15

*Mink v. AAAA Development LLC*,
190 F.3d 333 (5th Cir. 1999) ..................................................................16

*Moki Mac River Expeditions v. Drugg*,
221 S.W.3d 569 (Tex. 2007) ................................................... 7, 9, 10, 11

*Moncrief Oil International Inc. v. OAO Gazprom*,
481 F.3d 309 (5th Cir. 2007) .............................................................15, 16

*National Industrial Sand Association v. Gibson*,
897 S.W.2d 769 (Tex. 1995) ...................................................................15

*Newsome v. Charter Bank Colonial*,
940 S.W.2d 157 (Tex. App.—Houston [14th Dist.] 1996, writ denied).....18

*Nordberg v. Société Générale* (In re Chase & Sanborn Corp.),
848 F.2d 1196 (11th Cir. 1988) ..............................................................18

*Norfolk Southern Railway v. Trinity Industries, Inc.*,
No. 3-07-CV-1905-F, 2009 WL 362437 (N.D. Tex. Feb. 13, 2009) .........22

*Norris v. Hearst Trust*,
500 F.3d 454 (5th Cir. 2007)...............................................................22, 24

vi

*O'Kane v. Coleman,*
   No. 14-06-00657-CV, 2008 WL 2579832 (Tex. App.—Houston [14th Dist.]
   July 1, 2008, no pet.)............................................................................................24

*Panda Brandywine Corp. v. Potomac Electric Power Co.,*
   253 F.3d 865 (5th Cir. 2001) ..........................................................................8, 14

*Papasan v. Allain,*
   478 U.S. 265 (1986)............................................................................................24

*Patel v. Pacific Life Insurance Co.,*
   No. 3:08-CV-0249-B, 2009 WL 1456526 (N.D. Tex. May 22, 2009) ...............10, 25

*Patterson v. Dietze, Inc.,*
   764 F.2d 1145 (5th Cir. 1985)..........................................................................12, 13

*Poly-America, L.P. v. Shrink Wrap International, Inc.,*
   No. 303CV1556N, 2004 WL 884362 (N.D. Tex. Apr. 23, 2004).........................7, 16

*Polycomp Administrative Services, Inc. v. Jackson,*
   No. 01-09-00999-CV, 2010 WL 1611760 (Tex. App.—Houston [1st Dist.]
   Apr. 22, 2010, no pet. h.) ......................................................................................13

*R2 Investments v. Phillips,*
   No. 302CV0323N, 2003 WL 22862738 (N.D. Tex. Mar. 26, 2003) ........................26

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,*
   435 S.W.2d 854 (Tex. 1968)............................................................................25, 28

*Shell Compañia Argentina de Petroleo, S.A. v. Reef Exploration, Inc.,*
   84 S.W.3d 830 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ....................3, 12

*Silverman v. Bookzone, Inc.,*
   No. 3:04-CV-1772, 2005 WL 1902786 (N.D. Tex. Aug. 9, 2005) ............................9

*Soma Medical International v. Standard Chartered Bank,*
   196 F.3d 1292 (10th Cir. 1999) .............................................................................12

*Stuart v. Spademan,*
   772 F.2d 1185 (5th Cir. 1985)................................................................................14

*Super Vision International, Inc. v. Mega International Commercial Bank Co.,*
   534 F. Supp. 2d 1326 (S.D. Fla. 2008) ..................................................................18

*T.J. Raney & Sons, Inc. v. Security Savings & Loan Association,*
   749 F.2d 523 (8th Cir. 1984)..................................................................................12

*Tareco Properties, Inc. v. Morriss*,
No. 6:07-CV-181, 2008 WL 1836377 (E.D. Tex. Apr. 23, 2008) ...........................25

*Tri v. J.T.T.*,
162 S.W.3d 552 (Tex. 2005) ..................................................................................27

*Triplex Communications, Inc. v. Riley*,
900 S.W.2d 716 (Tex. 1995) ..................................................................................26

*United Financial Mortgage Corp. v. Bayshores Funding Corp.*,
245 F. Supp. 2d 884 (N.D. Ill. 2002) ......................................................................12

*Western Oil & Gas J.V. Inc. v. Griffiths*,
No. 300CV277ON, 2002 WL 32319043 (N.D. Tex. Oct. 28, 2002) ........................25

*Williams v. WMX Technologies, Inc.*,
112 F.3d 175 (5th Cir. 1997) ..................................................................................21

## STATUTES

Fed. R. Civ. P. 8(a) ...........................................................................................21, 22

Fed. R. Civ. P. 9(b) .............................................................................................1, 25

Fed. R. Civ. P. 12(b)(2) ...........................................................................................1

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 16

Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (Vernon 2009) .......................17

Tex. Bus. & Com. Code Ann. § 24.002(6) (Vernon 2009) .............................21

Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (Vernon 2009) ............ 20, 21, 22

Tex. Bus. & Com. Code Ann. § 24.005(a)(2) (Vernon 2009) ............ 20, 21, 22

Tex. Bus. & Com. Code Ann. § 24.006(a) (Vernon 2009)................. 20, 21, 22

Tex. Bus. & Com. Code Ann. § 24.009(a) (Vernon 2009)............................22

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2008)...........................7

Appearing for the limited purpose of contesting this Court's jurisdiction, and without waiving any of its jurisdictional defenses, Defendant Société Générale Private Banking (Suisse) S.A. ("SG Suisse")[1] respectfully submits this motion to dismiss the First Amended Complaint (the "Amended Complaint") in *Rotstain v. Trustmark National Bank*, No. 09 Civ. 2384, pursuant to Federal Rule of Civil Procedure 12(b)(2) for want of personal jurisdiction, and, in the alternative, Rule 12(b)(6) and Rule 9(b) for failure to state a claim upon which relief can be granted.

## INTRODUCTION

This putative class action arises out of the well-publicized Ponzi scheme orchestrated by R. Allen Stanford and effected through companies he owned or controlled. Searching for any conceivable deep pocket, the Plaintiffs reached across the world, literally, and named as a defendant SG Suisse – a Swiss entity with no jurisdictional contacts whatsoever with Texas, and which, even under the most liberal reading of the Amended Complaint, had nothing to do with the harm allegedly suffered by Plaintiffs.

The 149-paragraph Amended Complaint recites, *ad nauseam*, the details of the Ponzi scheme perpetrated by R. Allen Stanford and by the Stanford Financial Group. The only allegation against SG Suisse, however, is that it facilitated monthly wire transfers of funds from a *Swiss* account controlled by an unspecified Stanford entity [2] to the *London* account of

---

[1]   Société Générale Private Banking (Suisse) S.A. was formerly known as SG Private Banking (Suisse) S.A., the entity named in the Amended Complaint.

[2]   The Amended Complaint uses the term "Stanford" to refer to R. Allen Stanford and the Stanford Financial Group, which includes "dozens of affiliated companies owned and/or controlled by" Stanford, "including but not limited to SIBL, Stanford Group Company, Stanford Capital Management, LLC, Stanford Trust Company Ltd., and Stanford Financial Group Global Management LLC." (Compl. at 2 n.1.) Plaintiffs thus fail to identify precisely who did what. For the purposes of this brief, unless otherwise indicated, "Stanford" is used as it is in the Amended Complaint.

Stanford's *Antiguan* auditor for the alleged purpose of paying the auditors to certify fraudulent financial statements of the Antigua-based Stanford International Bank, Ltd. ("SIBL"). On its face, this allegation of transfers from Switzerland to London confirms the absence of any jurisdictional nexus between SG Suisse and Texas.

Based solely on this allegation, Plaintiffs purport to assert claims against SG Suisse under the Texas Uniform Fraudulent Transfer Act ("TUFTA"). It bears emphasis that SG Suisse was a mere transfer agent that is not alleged to have exercised dominion and control over its client's funds and received no benefit from its banking relationship with the Stanford Financial Group other than industry-standard banking fees – which Plaintiffs do not bother to quantify, and which are not even alleged to have been out of the norm for the standard services provided. Nevertheless, Plaintiffs have devised a theory that the routine banking fees paid to SG Suisse as Stanford's banker are fraudulent transfers. Straining credulity even further, Plaintiffs also contend that SG Suisse is jointly and severally liable as a co-conspirator in Stanford's fraud – a claim that is completely unsupported by a single allegation of fact even suggesting, let alone establishing a *prima facie* case, that SG Suisse had any knowledge of Stanford's Ponzi scheme.

The Amended Complaint should be dismissed on jurisdictional and substantive grounds. First, as detailed in the accompanying Declaration of Thierry Zumstein, General Counsel of SG Suisse, SG Suisse is incorporated under the laws of Switzerland and headquartered in Geneva. It has no office, bank account, or real or personal property in Texas; it has no employees in Texas; it is not qualified to do business in Texas; it has not appointed an agent for service of process in the State of Texas; and it has not paid taxes in Texas. In light of the absence of any legally relevant contacts between SG Suisse and Texas, the exercise of personal jurisdiction over SG

2

Suisse by a court sitting in Texas would violate the Texas long-arm statute and the Due Process Clause of the Fourteenth Amendment.

Notably, Plaintiffs allege no act by SG Suisse connecting it to the State of Texas. On the contrary, the sole factual allegation against SG Suisse is that allegedly "illicit" payments were transferred from Stanford's Swiss bank account to the London bank account of C.A.S. Hewlett, SIBL's outside auditor, which has its principal place of business in Antigua. Obviously, the transfer of funds from Switzerland to the London account of an Antiguan Company cannot invoke the jurisdiction of Texas courts. In any event, even if the wire transfers had any nexus to Texas, the case law is clear that wire transfers alone are insufficient to establish jurisdiction as a matter of law. *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 213 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Shell Compañia Argentina de Petroleo, S.A. v. Reef Exploration, Inc.*, 84 S.W.3d 830, 839 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Additionally, the Amended Complaint's TUFTA claims and tag-along conspiracy claim do not state a claim. First, SG Suisse is not a "transferee" under the statute because it did not have, and is not alleged to have had, control over the funds at issue. It was merely a conduit for the transfer of a customer's funds to a third party at the customer's direction. Second, Plaintiffs have not adequately pled the elements of a TUFTA claim, including the identity of the specific debtor that is alleged to have made the fraudulent transfers, when those transfers occurred, and that Stanford did not receive reasonably equivalent value in exchange for the banking services that SG Suisse provided.

Plaintiffs' conspiracy claim fails not only because the predicate TUFTA claims are defective, but also because Plaintiffs do not adequately allege that SG Suisse even knew of

Stanford's scheme, let alone that it agreed to participate in the fraud or specifically intended to bring about Plaintiffs' injury.

In the final analysis, all the Amended Complaint pleads is that SG Suisse did what every bank does: it maintained an account for a customer and transferred money in and out of that account, as directed by that customer, in exchange for standard banking fees. That the customer, unbeknownst to SG Suisse, was engaged in a Ponzi scheme and deposited the proceeds of that scheme in numerous bank accounts the world over, including his accounts at SG Suisse, cannot create liability for SG Suisse.

The Amended Complaint is utterly devoid of any well-pleaded allegations supporting even a plausible inference that SG Suisse knew of Stanford's scheme. Indeed, the notion that SG Suisse would have agreed to participate in the fraud simply in exchange for standard banking fees defies reason. And nothing in the Amended Complaint demonstrates or even suggests any jurisdictional nexus between SG Suisse and Texas. For these reasons, the Amended Complaint should be dismissed.[3]

## BACKGROUND

Plaintiffs purport to represent a putative class of investors defrauded by a Ponzi scheme perpetrated by the Stanford International Bank, Ltd. ("SIBL"). (Compl. at 2.) According to the Amended Complaint, the fraud conducted by Stanford involved the collection of billions of dollars from investors, who were duped into buying certificates of deposit issued by SIBL with falsely inflated interest rates. (*Id.*) The only allegations specific to SG Suisse are that it facilitated wire transfers from Stanford to C.A.S. Hewlett, an Antigua-based auditing firm. Plaintiffs allege that Stanford, with the "active support and assistance" of SG Suisse, "made

---

[3]   SG Suisse also incorporates by reference the arguments from the motions to dismiss filed on May 26, 2010 by Defendants Trustmark National Bank, HSBC Bank PLC, The Toronto-Dominion Bank, and Bank of Houston.

illicit payments to Stanford's outside auditor in exchange for the auditor's role in conducting sham audits." (*Id.* ¶ 125.)  Though Plaintiffs are vague on this point, the payments issued from an account held by Stanford Financial Group Antigua ("SFG Antigua"), a banking arm of the Stanford Financial Group based in Antigua.  (*See* Declaration of Thierry Zumstein, dated May 26, 2010 ("Zumstein Decl.") ¶ 15, App. 3.[4])

The "illicit payments" were allegedly transmitted to C.A.S. Hewlett's account at Barclay's in London from two bank accounts, one account with Trustmark Bank (*see* Compl. ¶ 126) and one with SG Suisse (*see id.* ¶ 127).  (*See* Zumstein Decl. ¶ 15, App. 3.)[5]  There is no allegation, and there are no facts supporting the notion, that any of the purportedly "illicit payments" ever had any intersection with the State of Texas.  (*See* Compl. ¶¶ 122-29.)  Nor do Plaintiffs allege that SG Suisse had any interaction of any sort with C.A.S. Hewlett other than the routine transfer of money to C.A.S. Hewlett's account in London pursuant to its customer's instruction.

Plaintiffs allege that Stanford made monthly payments from the SG Suisse account, beginning at £15,000 per month and later increasing to £20,000 per month.  (Compl. ¶ 127; *see also* Van Tassel Suppl. Decl. at KVT-25 (cited at Compl. ¶ 125 n.5), App. 21.[6])  Plaintiffs allege that Stanford made these payments to C.A.S. Hewlett "in exchange for the auditor's role in conducting sham audits and falsely vouching for the financial integrity of SIBL and SIBL's

---

[4]   Citations to "App. ___" are to the Appendix in Support of Société Générale Private Banking (Suisse) S.A.'s Motion to Dismiss filed along with this Motion.

[5]   Plaintiffs' allegation that "Defendant [SG Suisse] is a banking corporation organized under the laws of France with its principal place of business in France" (Compl. ¶ 15), is erroneous.

[6]   The Supplemental Van Tassel Declaration was filed in *SEC v. Stanford International Bank, Ltd.* ("In re Stanford International Bank, Ltd"), 09 Civ. 00721 (N.D. Tex.), by Karyl Van Tassel, a CPA who has been retained by SIBL's receiver to perform a variety of services, including forensic accounting and cash tracing activities.  The Complaint relies upon this document.  (Compl. ¶ 125 n.5.)  The Court may consider a document outside the complaint on a motion to dismiss if the document is attached to the complaint or is referred to in and central to the complaint.  *See Harris v. United States*, 340 F. Supp. 2d 764, 768 (S.D. Tex. 2004).

investments." (Compl. ¶ 125.)  Plaintiffs do not – and cannot – allege that Stanford ever told SG Suisse this or any other reason for Stanford's decision to make or increase these monthly payments.  (*See* Van Tassel Suppl. Decl. ¶ 3, App. 8 (noting that the e-mail from James Davis of SFG Antigua to SG Suisse "does not delineate the reason for the additional payments").)  These allegations thus amount to nothing more than a claim that SG Suisse provided routine banking services for its client and executed its client's instructions.

In an attempt to strengthen the gossamer thread on which their claims against SG Suisse hang, Plaintiffs allege that Blaise Friedli, SG Suisse's Executive Vice President of Private Banking, was a member of the Stanford Financial Group International Advisory Board (the "International Advisory Board").  (Compl. at 3.)  Plaintiffs also conclusorily allege that Mr. Friedli was "aware of those payments to C.A.S. Hewlett and, in fact, was essential to carrying them out." (*Id.* ¶ 128.)  But Plaintiffs fail to explain what the International Advisory Board was, what it did, or why membership on the board would have put Mr. Friedli in a position to "know" of Stanford's misconduct.  Nor do Plaintiffs allege that Mr. Friedli – even if he actually had some role in facilitating payments to C.A.S. Hewlett – knew that the payments to C.A.S. Hewlett were, as Plaintiffs assert, "illicit."  Thus, although Plaintiffs generically assert that SG Suisse played a "central role in [Stanford's] scheme, providing essential banking services to Stanford" (*Id.* at 3), there are no allegations that any conduct by SG Suisse contributed to Stanford's scheme beyond the entirely incidental benefit derived from SG Suisse's arm's-length provision of ordinary professional services that all banks provide to their customers.

## ARGUMENT

I.   **THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER SG SUISSE**

Plaintiffs provide scant support for the assertion of either general or specific jurisdiction over SG Suisse.  In a single paragraph of broad, conclusory allegations against all Defendants, Plaintiffs simply – and incorrectly – state:

> Jurisdiction is proper in this Court because each of the Defendants have [*sic*] purposefully availed themselves of the privilege of conducting business activities in Texas and each of the Defendants has had continuous and systematic business contacts with Texas.

(*Id.* ¶ 3.)  As set forth below, this conclusory allegation is demonstrably false with respect to SG Suisse.  In fact, SG Suisse has had no jurisdictionally relevant contact with the State of Texas beyond the mere fortuity that one of its clients happened to live there.  (Zumstein Decl. ¶¶ 3-19, App. 2-4.)

A.   **The Jurisdictional Issue Is Governed by Texas State Law**

Whether a federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant is determined by the law of the forum state.  *See Poly-Am., L.P. v. Shrink Wrap Int'l, Inc.*, No. 303CV1556N, 2004 WL 884362, at *1 (N.D. Tex. Apr. 23, 2004).  "A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment."  *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

Texas's long-arm statute allows courts to exercise jurisdiction over a nonresident who "does business" in Texas.  Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2008).  This statute reaches "as far as the federal constitutional requirements of due process will allow."

*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quotation marks and citation omitted). As a result, the long-arm statute and Due Process inquiries are essentially identical. *See Freudensprung*, 379 F.3d at 343.

Personal jurisdiction is proper under the Due Process Clause only if (1) the nonresident "has established minimum contacts with the forum," *i.e.*, the state of Texas, and (2) "the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). As set forth below, under the controlling case law, this Court lacks personal jurisdiction over SG Suisse.

## B.     The Amended Complaint Fails to Allege the Requisite Jurisdictional Facts with Respect to SG Suisse

When a court decides a motion to dismiss without an evidentiary hearing, the plaintiff bears the burden of pleading sufficient *facts* to support a *prima facie* showing of personal jurisdiction. *See Delta Brands, Inc. v. Danieli Corp.*, No. 3:02-CV-0081-N, 2003 WL 22255699, at *2 (N.D. Tex. Sept. 29, 2003), *aff'd*, 99 F. App'x 1 (5th Cir. 2004). Plaintiffs do not seriously attempt to sustain this burden. Instead, the totality of the personal jurisdiction allegations regarding SG Suisse are as follows:

> Jurisdiction is proper in this Court because each of the Defendants have [*sic*] purposefully availed themselves of the privilege of conducting business activities in Texas and each of the Defendants has had continuous and systematic business contacts with Texas.

(Compl. ¶ 3.)

Such conclusory allegations plainly are insufficient to state a *prima facie* case for personal jurisdiction. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001) (stating that courts are not required to accept conclusory allegations as

true on a motion to dismiss for lack of personal jurisdiction, even if the allegations are uncontroverted); *Silverman v. Bookzone, Inc.*, No. 3:04-CV-1772, 2005 WL 1902786, at *4 (N.D. Tex. Aug. 9, 2005) ("The court, however, is not required to credit conclusory allegations such as these, or reach farfetched inferences from such allegations, even if they are uncontroverted."). As the Fifth Circuit has held, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008). By itself, Plaintiffs' failure to allege any *facts* establishing a prima facie showing of jurisdiction mandates dismissal as against SG Suisse.

**C.    SG Suisse Does Not Have Minimum Contacts with the State of Texas**

"[F]or half a century, the touchstone of jurisdictional due process has been 'purposeful availment.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). That is to say, minimum contacts exist when a nonresident "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Moki Mac*, 221 S.W.3d at 575 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Minimum contacts are particularly important when the defendant is from a different country because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system." *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)).

The Texas Supreme Court has identified three elements in determining whether a nonresident has purposefully availed itself of the benefits and protections of Texas law: (1) a consideration of the defendant's forum-state contacts; (2) whether the contacts are purposeful rather than random, isolated, or fortuitous; and (3) whether the nonresident sought some benefit,

advantage, or profit by availing itself of the opportunity to do business in Texas.  *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007); *see also Patel v. Pac. Life Ins. Co.*, No. 3:08-CV-0249-B, 2009 WL 1456526, at *26 (N.D. Tex. May 22, 2009).

As a general matter, minimum contacts may give rise to either specific or general jurisdiction.  *See CSR Ltd.*, 925 S.W.2d at 595; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984).  Under either analysis, however, the result is the same: SG Suisse does not have the required jurisdictional contacts with the State of Texas.

### 1.     This Court Does Not Have General Jurisdiction Over SG Suisse

General jurisdiction exists where a nonresident "has made continuous and systematic contacts" with Texas, permitting the forum to exercise jurisdiction over a nonresident on a cause of action unrelated to the defendant's contacts within the forum.  *See Helicopteros*, 466 U.S. at 414 n.8; *see also Moki Mac*, 221 S.W.3d at 575.  General jurisdiction exists only if the defendant conducted very substantial activities in the forum.  *See Johnston*, 523 F.3d at 612 (finding no general jurisdiction because the defendant's activities were "lacking the substance or regularity necessary to establish general jurisdiction").

"General jurisdiction is premised on the notion of consent.  That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there."  *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex. 2002).  As such, general jurisdiction analysis considers whether the defendant "(1) had ever been licensed or qualified to do business in Texas, (2) had any employees, offices, or bank accounts in Texas, (3) had a mailing address or a telephone number in Texas, (4) paid taxes in Texas, (5) owned [or rented] real or personal property in Texas, (6) advertised in Texas, or (7) had a registered agent

10

for service of process in Texas." *IRA Res., Inc. v. Griego*, 235 S.W.3d 263, 268 (Tex App.—Corpus Christi 2007, no pet.).

There is no plausible argument that SG Suisse – a bank formed under Swiss law, located in Switzerland, and with no business operations or property in Texas – is subject to general jurisdiction in Texas. As established by the Zumstein Declaration,[7] SG Suisse is not authorized or registered to do business in Texas; does not have any employees, offices, or bank accounts in Texas; does not have a mailing address or a telephone number in Texas; does not pay taxes in Texas; does not own or rent real or personal property in Texas; does not advertise in Texas; and does not have a registered agent for service of process in Texas. (Zumstein Decl. ¶¶ 4-14, App. 2-3.) In short, there is no basis for the exercise of general jurisdiction. *See Helicopteros*, 466 U.S. 408; *IRA Resources*, 235 S.W.3d at 268.

### 2.    This Court Does Not Have Specific Jurisdiction Over SG Suisse

Specific jurisdiction exists when there is a "substantial connection" between a nonresident defendant's contacts with Texas and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585. "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Credit Commercial de France, S.A. v. Morales*, 195 S.W.3d 209, 219 (Tex. App.—San Antonio 2006, pet. denied); *see also Delta Brands, Inc. v. Danieli Corp.*, No. 3:02-CV-0081-N, 2002 WL 31875560, at *3 (N.D. Tex. Dec. 20, 2002).

(a)    *SG Suisse Has No Jurisdictional Contacts with the State of Texas*

Plaintiffs have not identified a single jurisdictionally relevant contact between SG Suisse and Texas. The only specific acts by SG Suisse identified in the entire Amended Complaint are

---

[7]    The court accepts the well-pleaded allegations of a complaint as true, "except those allegations 'controverted by opposing affidavits.'" *Delta Brands*, 2003 WL 22255699, at *2 (citation omitted).

the transmittal of allegedly "illicit payments" from SFG Antigua's account in Lausanne, Switzerland, to C.A.S. Hewlett's bank account at Barclay's London.  (*See* Compl. ¶ 125; Zumstein Decl. ¶ 15, App. 3; *see* Van Tassel Suppl. Decl. at KVT-25, App. 21 (email from James Davis of Stanford Financial Group to Carol Meylan at SG Suisse's offices in Lausanne to).)  As these transfers have no connection to Texas – *i.e.*, the funds were allegedly transferred from Switzerland to the London account of an Antiguan-based company, this action cannot confer jurisdiction over SG Suisse in Texas.

Indeed, even if the wire transfers had occurred in Texas, such wire transfers are legally insufficient to support jurisdiction as a matter of law.  *See, e.g.*, *Alenia Spazio*, 130 S.W.3d at 213 ("[S]ending funds to Texas is not determinative."); *Shell Compañia*, 84 S.W.3d at 839 (same).[8]

For example, in *Patterson v. Dietze, Inc.*, 764 F.2d 1145 (5th Cir. 1985), the defendant was a New York based corporation with no Texas contacts.  The plaintiff was a Texas resident and alleged, among other things, that she made phone calls to the defendant from Texas and that the defendant paid her by wiring money to her bank account in Texas.  *Id.* at 1146.  The Fifth Circuit held that these allegations were insufficient to confer personal jurisdiction, noting that, "extensive communications between the forum and the foreign states and the mailing of payment from the foreign to the forum state" are "insufficient contacts."  *Id.* at 1147.  The Fifth Circuit's

---

[8]   *See also Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 495 (6th Cir. 2008) ("The wire transfers accepted or confirmed by Lloyds from Tennessee and any wire transfers originated by Hogsed in the United Kingdom and sent to Tennessee cannot constitute purposeful availment, because none of those transfers were initiated by Lloyds."); *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) (declining to exercise specific jurisdiction on the basis of "of a limited number of faxes and other written communications concerning the account, along with a few wire transfers of funds"); *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 214 (3d Cir. 1984) (wire transfers insufficient); *T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Ass'n*, 749 F.2d 523, 524-25 (8th Cir. 1984) (per curiam) (same); *United Fin. Mortgage Corp. v. Bayshores Funding Corp.*, 245 F. Supp. 2d 884, 894 (N.D. Ill. 2002) (same).

holding is *a fortiori* controlling here, as Plaintiffs have failed even to allege that the payments at issue ever entered the state of Texas.

Nor would communications between SFG Antigua and SG Suisse regarding Stanford's bank account support a finding of specific jurisdiction, even if those communications originated in Texas (which Plaintiffs do not allege). *See Credit Commercial*, 195 S.W.3d at 220-21 ("[M]inimum contacts may not be satisfied by merely engaging in communications with a Texas corporation during performance of a contract."); *see also Polycomp Admin. Servs., Inc. v. Jackson*, No. 01-09-00999-CV, 2010 WL 1611760, at *8-9 (Tex. App.—Houston [1st Dist.] Apr. 22, 2010, no pet. h.) (finding no personal jurisdiction where a company that served as a custodian of an IRA account sent quarterly statements to a Texas resident but all of its performance under the agreement occurred in California); *Freudensprung*, 379 F.3d at 344 ("[T]his court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of a contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.").

The Texas court of appeals' opinion in *Credit Commercial de France, S.A. ("CCF") v. Morales*, is particularly instructive. In *Credit Commercial*, the plaintiffs, Mexican nationals, were customers of a failed Texas investment advisor. Plaintiffs brought various state law claims in Texas state court against CCF, a French bank that had lent money to the investment advisor in Texas. Notwithstanding the bank's business dealings with a Texas resident, the court found that CCF had no direct state contacts, the agreements at issue did not identify Texas law in the choice of law provisions, and none of the transactions at issue were initiated by the bank. *See* 195

13

S.W.3d at 220.   Thus, the Court concluded that defendant lacked the "minimum contacts" required for the exercise of specific jurisdiction.  *Id.*

As in *Credit Commercial*, SG Suisse is a bank headquartered outside of the United States. With regard to the SFG Antigua account, none of the banking agreements were executed in Texas, none of the agreements designated the application of Texas law, the situs of performance was Lausanne, Switzerland, and the accounts themselves were maintained in Switzerland. (Zumstein Decl. ¶¶ 15-19, App. 3-4.)  Accordingly, SG Suisse does not have sufficient contacts with Texas to support jurisdiction.

Because Plaintiffs do not and, as the Zumstein Declaration demonstrates, cannot allege any legally relevant forum-state contacts by SG Suisse, Plaintiffs have not made out a *prima facie* case for specific personal jurisdiction.  *See Panda Brandywine Corp.*, 253 F.3d at 868-69 (stating that courts are not required to accept conclusory allegations as true on a motion to dismiss for lack of personal jurisdiction).

It also bears emphasis that Stanford – not SG Suisse – initiated the wire transfers described in the Zumstein Declaration.  Accordingly, even if they occurred in Texas – which is not the case – they cannot be considered contacts between SG Suisse and Texas for purposes of conferring jurisdiction.  *See Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (noting that the contacts at issue cannot be the result of "'unilateral activity of another party or a third person'" (citation omitted)).

Finally, even if Plaintiffs had alleged that SG Suisse had contacts with the State of Texas, the types of contacts involved here would be "'random, isolated or fortuitous'" and cannot establish purposeful availment of Texas law.  *See, e.g., Michiana,* 168 S.W.3d at 785 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)); *IRA Resources,* 221 S.W.3d at 598

("IRA Resources' 'contacts' with Texas—agreeing to administer [a non-party's] IRA account [in Texas], accepting payment for opening the [Texas-based] account, and sending [the non-party] periodic account statements [from Texas]—are too inconsequential to support a claim that it purposefully directed its activities here.").

        (b)    *Plaintiffs' Alternative Theories for Specific Jurisdiction Are Not Legally Cognizable*

Plaintiffs briefly refer to a number of alternative theories for the assertion of personal jurisdiction (*see* Compl. ¶ 5), each of which fails.  First, Plaintiffs allege that it was "foreseeable" to SG Suisse that the harm of the alleged fraud would fall on Texas residents.  (*Id.*)  But the Fifth Circuit has stated that "[m]ere foreseeability, standing alone, does not create jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007).  Indeed, none of the named Plaintiffs is even a Texas resident, so the suggestion that SG Suisse should have foreseen injury in Texas such as to justify the exercise of personal jurisdiction is meritless.

Second, although Plaintiffs assert that Defendants generally "conspired with one or more Texas residents," merely alleging a cause of action for conspiracy is not sufficient to support the exercise of personal jurisdiction over all alleged conspirators.  *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("[W]e decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state.").  Third, Plaintiffs allege that Defendants committed torts "directed at Texas residents," but Texas courts have expressly rejected "directed-a-tort" as a basis for personal jurisdiction.  *See Credit Commercial*, 195 S.W.3d at 217-19 (noting that "directed-a-tort" analysis applies to choice of law considerations, but not jurisdictional analysis).  Finally, to the extent Plaintiffs allege that the "effects" of Stanford's fraud were felt in Texas, the Fifth Circuit has "expressly declined to allow jurisdiction for even

15

an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident."

*Moncrief Oil*, 481 F.3d at 314.[9]

In sum, upon both the alleged facts and those established by SG Suisse, there is no basis for the Court to find that it has specific jurisdiction over SG Suisse.

## II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR RELIEF

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[L]abels and conclusions'" or a "'formulaic recitation of the elements'" of a claim will not suffice. *Id.*    A court is not required to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quotation marks omitted); *see also Iqbal*, 129 S. Ct. at 1950 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). For the reasons discussed below, Plaintiffs have not stated a claim upon which this Court can grant relief, and their claims should be dismissed.[10]

## A.    Plaintiffs Have Failed to State a Claim for Fraudulent Transfer

Plaintiffs bring three causes of action under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.*

---

[9]    Furthermore, as noted in the Zumstein Declaration, SG Suisse maintains a purely passive website that is not interactive, is not directed at Texas residents, cannot be used to purchase any products, and merely provides brief descriptions of SG Suisse's services and contact information. As such, it cannot serve as the basis for personal jurisdiction in Texas. *See Poly-Am., L.P. v. Shrink Wrap Int'l, Inc.*, No. 303CV1556N, 2004 WL 884362, at *1 (N.D. Tex. Apr. 23, 2004); *see also Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999).

[10]    In this section of the brief, SG Suisse cites to and relies on Texas substantive law because Texas substantive law is cited in the Amended Complaint. SG Suisse denies that Texas substantive law is applicable to the claims asserted against it and expressly reserves the right to argue that Texas substantive law does not apply.

- Under Section 24.005(a)(1), Plaintiffs claim that Stanford allegedly transferred "fees and other monies" to SG Suisse in exchange for private banking services "with the actual intent to hinder, delay, or defraud" Plaintiffs. (Compl. ¶¶ 80-87.)

- Under Section 24.005(a)(2), Plaintiffs claim that Stanford allegedly paid such fees and monies without receiving reasonably equivalent value in exchange, and at a time when (i) "Stanford was engaged or was about to engage in a business or a transaction for which Stanford's remaining assets were unreasonably small in relation to the business or transaction;" or (ii) "Stanford intended to incur, or believed or reasonably should have believed that the [*sic*] it would incur, debts beyond its ability to pay as they became due." (Compl. ¶¶ 88-91.)

- Under Section 24.006(a), Plaintiffs claim that Stanford allegedly paid such fees and monies without receiving reasonably equivalent value in exchange at a time when Stanford was insolvent, or that Stanford became insolvent as a result of the transfers. (Compl. ¶¶ 92-97.)

Plaintiffs seek to avoid these alleged transfers under Section 24.008(a)(1). As discussed below, Plaintiffs have failed to state a claim under TUFTA.

### 1.    SG Suisse Is Not a Transferee Under TUFTA

Plaintiffs can recover against SG Suisse under TUFTA only if SG Suisse is a "transferee." *See GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2009 WL 5173954, at *6 (N.D. Tex. Dec. 31, 2009). A party is a "transferee" only if it had dominion or control over property transferred to it by a debtor. *See In re Coutee*, 984 F.2d 138, 141 & n.4 (5th Cir. 1993). Because Plaintiffs have failed to allege any facts sufficient for this Court to conclude that SG Suisse ever had dominion or control over funds deposited in bank accounts owned by any Stanford entity, the TUFTA claims must be dismissed.

Unlike a bank receiving funds to pay down a debt owed to the bank, "[w]hen banks receive money for the sole purpose of depositing it into a customer's account . . . the bank never has actual control of the funds." *Nordberg v. Société Générale* (In re Chase & Sanborn Corp.), 848 F.2d 1196, 1200 (11th Cir. 1988). Thus, it is well-established that a bank that maintains

17

accounts for a client in the ordinary course of business is not a "transferee" under the Uniform Fraudulent Transfer Act of any monies maintained in those accounts. *See Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 164-66 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (holding that bank was not a transferee because "the Bank's duty was simply to pay funds as directed by its depositors and in accordance with applicable law and prudent banking standards"); *see also Fidelity Nat'l Title Ins. Co. of N.Y. v. Howard Sav. Bank*, 436 F.3d 836, 841 (7th Cir. 2006) (same); *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893-94 (7th Cir. 1988) (same); *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co.*, 534 F. Supp. 2d 1326, 1343-44 (S.D. Fla. 2008) (same).

For example, in *In re Colombian Coffee Co.*, 59 B.R. 643 (Bankr. S.D. Fla. 1986), a bankruptcy court rejected a fraudulent transfer claim under the Bankruptcy Code,[11] holding that a bank was not a transferee of funds that were deposited in an insolvent debtor's account and then almost immediately disbursed. *Id.* at 644. The Court explained that the bank, in "[i]ts role in this transfer was indistinguishable from that of a messenger, the postal service, a common carrier, a warehouse, or a broker. It derived no benefit from the transfer, other than its customary fee for its banking services." *Id.* at 645.

Because Plaintiffs cannot claim that the funds in the accounts were ever in the dominion or control of SG Suisse, Plaintiffs claim that the fees earned by SG Suisse as payment for providing banking services were the relevant "transfers." (*See, e.g.*, Compl. ¶¶ 84, 89, 93.) Notwithstanding Plaintiffs' ingenuity, this theory is wrong, and should be rejected. *See, e.g., Forum Ins. Co. v. Devere Ltd.*, 151 F. Supp. 2d 1145, 1150 (C.D. Cal. 2001) ("It is undisputed that [fees earned by an accountant for providing professional services] do not constitute

---

[11]   Courts have looked to the Bankruptcy Code's fraudulent transfer provision when considering whether a party is a transferee under TUFTA. *See, e.g., GE Capital Commercial,* 2009 WL 5173954, at *7 & n.1.

fraudulent transfers, and are thus not voidable under UFTA."), *rev'd on other grounds sub nom.*
*Forum Ins. Co. v. Comparet*, 62 F. App'x 151 (9th Cir. 2003); *cf. In re Coutee*, 984 F.2d at 141
(holding that law firm was not transferee where law firm deposited client funds as directed and
"ke[pt] as fees only what the [client] agreed to").   Account-holders initiate millions of bank
transfers every day.  Under Plaintiffs' theory, every one of those transfers creates the potential
for liability based upon the unknown intent of the  bank customer.  Holding a bank liable as a
fraudulent transferee under TUFTA because the bank received reasonable banking fees in
exchange for its professional services makes sense only if a court is willing to "disregard[] the
function of fraudulent conveyance law."   *See Bonded*, 838 F.2d at 893 (rejecting theory that
financial intermediaries like banks can be the "initial transferee" for purposes of fraudulent
conveyance law).  Disregarding the function of (and fundamentally changing) fraudulent transfer
law based on Plaintiffs' wholly unsupported theory would produce absurd results, driving up
banking costs for all parties, while imposing an impossible obligation on banks.  Banks simply
do not – and cannot – serve as the guarantors of their customers' business practices. This case
highlights the risks inherent in a contrary rule.   Plaintiffs have imported the government's
allegations about the entire Stanford Ponzi scheme into this lawsuit, and seek to force
Defendants to spend literally millions of dollars litigating that scheme in order to retain their fees
for what are, on their face, the sort of services that banks routinely provide to customers. Under
any reasonable interpretation of TUFTA, SG Suisse is not a transferee.   Plaintiffs' claims
therefore fail as a matter of law.

## 2.   Plaintiffs Have Not Adequately Alleged the Elements of a TUFTA Claim

To state a claim for a fraudulent transfer under Section 24.005(a)(1), Plaintiffs must
allege that a debtor made a transfer or incurred an obligation "with actual intent to hinder, delay,

19

or defraud any creditor of the debtor." Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (Vernon 2009). To state a claim under Section 24.005(a)(2), Plaintiffs must allege that a debtor made a transfer or incurred an obligation "without receiving reasonably equivalent value in exchange for the transfer, and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

*Id.* § 24.005(a)(2). Finally, to state a claim under Section 24.006(a), Plaintiffs must allege that a debtor made a transfer or incurred an obligation "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation." *Id.* § 24.006(a). Plaintiffs have failed to state a claim for relief because they have not adequately alleged the required elements of their TUFTA claims.

> (a) *Plaintiffs Have Not Identified a Debtor that Is Responsible for the Allegedly Fraudulent Transfers*

Plaintiffs' claim under Section 24.005(a)(1) requires a showing of fraudulent intent and is governed by Rule 9(b)'s higher pleading standard. *See Indiana Bell Telephone Co. Inc. v. Lovelady,* No. SA-05-CA-285-RF, 2006 WL 485305, at *1-2 (W.D. Tex. Jan. 11, 2006) (holding that plaintiff's TUFTA claims failed to satisfy Rule 9(b)'s pleading standards). Plaintiffs cannot satisfy Rule 9(b)'s particularity requirement when they have not even identified the debtor that is alleged to have intended the fraudulent transfer. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (pleading fraud with particularity requires the identity of the person making the representation).

20

Moreover, this defect affects all of Plaintiffs' fraudulent transfer claims, even under Rule 8(a)'s lesser pleading standard. Every claim under TUFTA requires that a "debtor" make a transfer or incur an obligation. *See* Tex. Bus. & Com. Code Ann. §§ 24.005(a)(1)-(2), 24.006(a) (Vernon 2009). A "debtor" is "a person who is liable on a claim." *Id.* § 24.002(6). Plaintiffs, however, define "Stanford" to include not only R. Allen Stanford but also the unspecified "dozens of affiliated companies owned and/or controlled by R. Allen Stanford." (Compl. at 2 n.1.) Thus, when Plaintiffs allege that "Stanford" made fraudulent transfers to SG Suisse, they are really alleging that one or more unidentified entities in the Stanford corporate structure made payments that, as to that specific entity, were fraudulent transfers. (Compl. ¶¶ 82, 89, 93.)[12]

Plaintiffs cannot satisfy *Iqbal's* requirement to state a claim to relief that is plausible on its face when the Amended Complaint does not even identify the person that was alleged to have fraudulently transferred "fees and other monies" to SG Suisse, much less identify the actual transfers, when they occurred, and when Plaintiffs' claims arose.[13] *See Iqbal*, 129 S. Ct. at 1949. Even under Rule 8(a)'s relaxed pleading standards, Plaintiffs are required to plead that a specific debtor was responsible for a specific fraudulent transfer, *i.e.*, that the specific debtor had the

---

[12] Plaintiffs' motivation is clear: they seek to connect SG Suisse and the other unwitting banks to Stanford's fraud by means of their TUFTA claims, and then rely on the civil conspiracy claim to recoup as damages the funds fraudulently obtained by Stanford's Ponzi scheme. (*See* Compl. ¶ 147 (seeking damages "in excess of $7 billion").) Though not at issue on this motion, it bears mention that Plaintiffs cannot use a civil conspiracy claim to hold Defendants liable for more than the amount of fees they actually received. *See FDIC v. White*, No. 3:96-CV-0560-P, 1998 WL 120298, at *2 (N.D. Tex. Mar. 5, 1998) ("The Court agrees with Sorenson that the pertinent statutes [including TUFTA] do not create personal liability on the part of a co-conspirator for fraudulent conveyances to an extent or in an amount beyond property which a co-conspirator actually receives or in which he acquires an interest.").

[13] Under Section 24.005(a)(1) and (a)(2), Plaintiffs were required to demonstrate that they are creditors of a specific Stanford entity and that their claims "arose before or within a reasonable time after the transfer was made." Tex. Bus. & Com. Code Ann. §§ 24.005(a)(1), (a)(2) (Vernon 2009). Similarly, under 24.006(a), Plaintiffs were required to demonstrate that their claims arose "before the transfer was made." *Id.* § 24.006(a). Plaintiffs have utterly failed to plead any facts about when their claims against Stanford arose or when any alleged transfer to SG Suisse took place. Absent these facts, Plaintiffs TUFTA claims must be dismissed.

intent to defraud its creditors, or that a specific debtor was insolvent when it made the transfer. Accordingly, Plaintiffs have failed to state a claim.[14]

> (b) *Plaintiffs Have Not Adequately Alleged that the Debtor Did Not Receive Reasonably Equivalent Value in Exchange for Banking Services Provided by SG Suisse*

Plaintiffs' Section 24.005(a)(2) and 24.006(a) claims also fail because they do not adequately plead facts to support a *prima facie* showing that Stanford did not receive reasonably equivalent value in exchange for the private banking services provided by SG Suisse. *See* Tex. Bus. & Com. Code Ann. §§ 24.005(a)(2), 24.006(a).[15] Plaintiffs' conclusory allegations that Stanford paid Defendants substantial fees and other monies "without receiving a reasonably equivalent value in exchange for the transfers," (Compl. ¶¶ 89, 93), cannot survive scrutiny under Rule 8(a), much less Rule 9(b). *See Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) ("'[F]actual allegations must be enough to raise a right to relief above the speculative level . . . .'" (alterations in original; citation omitted)); *see also In re Caremerica*, 409 B.R. 737, 755-56 (Bankr. E.D.N.C. 2009) (holding that complaint's conclusory allegation that transferors "received less than reasonably equivalent value in exchange from the defendant" failed to state a claim for fraudulent transfer under the Bankruptcy Code because the complaint did not identify the consideration received by the transferor and explain why the value of such consideration was less than the amount transferred); *In re Image Masters, Inc.*, 421 B.R. 164, 179-80 (Bankr. E.D. Pa. 2009) (holding that plaintiff did not state claim for relief for fraudulent transfer under the

---

[14] Plaintiffs cannot lump all the Stanford entities together and impute the intent or the insolvency of one to all of the others, at least not without pleading sufficient facts to allege why each entity should not be treated separately (which they have not done). *See Norfolk S. Ry. v. Trinity Indus., Inc.*, No. 3-07-CV-1905-F, 2009 WL 362437, at *5 (N.D. Tex. Feb. 13, 2009) ("Texas law presumes that two separate corporations are distinct legal entities . . . .").

[15] While "reasonably equivalent value" is not an element of a claim under Section 24.005(a)(1), a defendant has an affirmative defense if it "took in good faith and for a reasonably equivalent value." *Id.* § 24.009(a).

22

Bankruptcy Code when it generally alleged that the defendant "received no value . . . let alone reasonably equivalent value" for the transfers).

For instance, *In re Churchill Mortgage Investment Corp.* rejected the theory (which Plaintiffs seek to advance here) that, because the debtor operated as a Ponzi scheme, "all of its transfers were actual or constructively fraudulent transfers." *See* 256 B.R. 664, 680 (Bankr. S.D.N.Y. 2000). Rather than focus on "collateral conduct of the Debtors' management (the overall operation of the Ponzi scheme), which is extraneous to any particular transaction between Debtor and Broker," courts must instead consider the actual transaction between the debtor and the alleged transferee and determine whether there was an equivalence in value between what the debtor gave and what it received in return. *See id.* at 681. Viewed through this specific lens, the court held that brokers hired to produce mortgages gave value in exchange for their services, where the bankruptcy trustee acknowledged that no evidence supported the conclusion that the fees paid to the brokers for their services were not disproportionate to "like commissions paid for like services in the marketplace." *Id.* at 679.

Just as in *Churchill Mortgage*, Plaintiffs in this case have not sufficiently alleged that a debtor failed to receive reasonably equivalent value in exchange for the fees paid for banking services from SG Suisse. Nowhere do Plaintiffs claim that SG Suisse did not actually perform the services for which it charged fees, nor do Plaintiffs allege that SG Suisse charged higher fees to the debtor than is customary for the same services. Instead, Plaintiffs plead nothing more than a "'formulaic recitation of the elements'" of their claims. *See Iqbal*, 129 S. Ct. at 1951 (citation omitted). Such allegations are not entitled to the assumption of truth. *See id.*; *see also Norris*, 500 F.3d at 464 ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a

23

factual allegation.'" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   Accordingly,

Plaintiffs' TUFTA claims should be dismissed for failure to state a claim.

## B.      Plaintiffs Have Failed to State a Claim for Civil Conspiracy

In their fourth cause of action, Plaintiffs allege a civil conspiracy involving Stanford and

"Defendants together or separately," to "fraudulently induce members of the Class to send funds

to SIBL, which were then distributed to Defendants in the form of 'fees.'"[16]   Plaintiffs'

conspiracy claim fails as a matter of law for several independent reasons.

### 1.      Plaintiffs Have Failed to Allege a Predicate Act of Fraud

"Under Texas law, civil conspiracy is a derivative tort.   If a plaintiff fails to state a

separate underlying claim on which the court may grant relief, then a claim for civil conspiracy

necessarily fails."   *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007); *see*

*also Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (noting that "because the fraud claims

fail[,] the fraud based conspiracy claim must fail also"); *W. Oil & Gas J.V. Inc. v. Griffiths*, No.

300CV277ON, 2002 WL 32319043, at \*7 (N.D. Tex. Oct. 28, 2002) (same).   Because Plaintiffs

---

[16]   Count Four is ambiguously titled "Conspiracy to Commit Fraud and/or Aiding and Abetting Fraud," although Plaintiffs' actual allegations appear to assert a conspiracy claim only.   (Compl. ¶¶ 143-148.)   The Texas Supreme Court has expressly reserved the question as to whether a cause of action exists for aiding and abetting fraud. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001) ("[W]e do not consider whether Texas law recognizes a cause of action for 'aiding and abetting' fraud separate and apart from a conspiracy claim.").   Since then, Texas courts have concluded that no such cause of action exists. *See O'Kane v. Coleman*, No. 14-06-00657-CV, 2008 WL 2579832, at \*5 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, Nos. H-01-3624, *et al.*, 2006 WL 3716669, at \*8 & n.7 (S.D. Tex. Dec. 12, 2006) (agreeing that Texas has not clearly recognized a cause of action for aiding and abetting common law fraud and stating that because the plaintiffs also pled conspiracy to commit fraud, "the aiding and abetting claim was redundant and unnecessary"), *aff'd* 535 F.3d 325 (5th Cir. 2008).   In any event, Plaintiffs' aiding and abetting claim fails to satisfy Rule 9(b)'s particularity requirements for the same reasons that Plaintiffs' conspiracy claim fails under Rule 9(b). *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) (discussing aiding and abetting fraud claim under Rule 9(b)).

have failed to state a claim for fraudulent transfer, the civil conspiracy claim fails as a matter of law.[17]

### 2.   Plaintiffs Have Failed to Plead Civil Conspiracy with Particularity

Even if Plaintiffs' TUFTA claims could survive a motion to dismiss, their conspiracy claim still fails because Plaintiffs have not pled it with particularity.  *See* Fed. R. Civ. P. 9(b); *see also Hill v. Hunt*, No. 3:07-CV-2020-O, 2010 WL 54756, at *3-4  (N.D. Tex. Jan. 4, 2010) (dismissing civil conspiracy claim for failure to plead with particularity). The Fifth Circuit "interprets Rule 9(b) strictly." *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (citation omitted), *cert. denied*, 130 S. Ct. 199 (2009).

Civil conspiracy is defined as "'a combination of two or more persons [acting] to accomplish an unlawful purpose, or accomplish a lawful purpose by unlawful means[.]'" *Patel*, 2009 WL 1456526, at *14 (alterations in original; citation omitted).  To be liable for civil conspiracy, the "[c]onspirators must know the object and purpose of the conspiracy, agree to the scheme, and specifically intend to advance the conspiracy." *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 538 (5th Cir. 2007) (citing *Juhl v. Arlington*, 936 S.W.2d 640, 644 (Tex. 1996)).  Thus, to plead a civil conspiracy claim Plaintiffs must allege that: (1) SG Suisse had "knowledge of the object of the conspiracy and intention to injure" Plaintiffs, *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968); (2) SG Suisse was "aware of the harm or wrongful conduct at the inception of the combination or agreement,"

---

[17] Plaintiffs cannot rely upon Stanford's Ponzi scheme generally as the predicate for their derivative conspiracy claim.  The derivative conspiracy claim must be predicated upon a cause of action alleged against a party to *this* lawsuit.  *See, e.g.*, *Michels v. Zeifman*, No. 03-08-0287-CV, 2009 WL 349167, at *7 (Tex. App.—Austin Feb. 12, 2009, pet. denied) ("Civil conspiracy is 'a derivative tort,' which depends on a defendant's participation 'in some underlying tort for which the plaintiff seeks to hold at least *one of the named defendants liable*'") (citation omitted) (emphasis added); *Tareco Props., Inc. v. Morriss*, No. 6:07-CV-181, 2008 WL 1836377, at *14 (E.D. Tex. Apr. 23, 2008) ("The only causes of action Tareco presented were the TUFTA claim and the civil conspiracy claim. Having failed on the TUFTA claim, Plaintiff has failed to prove any underlying tort that would provide a foundation for it to proceed on the civil conspiracy claim.").

*Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995); and (3) SG Suisse "agreed to the injury to be accomplished; agreeing to the conduct ultimately resulting in injury is not enough." *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008) (emphasis omitted).

(a)  *Plaintiffs Have Failed to Allege that SG Suisse Was Aware of Any Fraud*

Critically, Plaintiffs fail to allege that SG Suisse ever knew about the fraud.  As this Court has noted, "[a] person without knowledge of the purpose or object of the conspiracy cannot be a co-conspirator because he cannot agree to the commission of a wrong that he does not know about." *R2 Invs. v. Phillips*, No. 302CV0323N, 2003 WL 22862738, at *7 (N.D. Tex. Mar. 26, 2003). The best that Plaintiffs can muster is the insinuation – with no factual allegations in support – that SG Suisse should have known that something was amiss.  (Compl. ¶ 129.)  This generic negligence-based allegation, however, is patently insufficient to sustain a claim for conspiracy under Rule 9(b).

Plaintiffs also have failed to allege that SG Suisse was aware that any representation by Stanford to his investors was false, let alone that SG Suisse made any representation to the class members that SG Suisse knew was false.  Plaintiffs try to distract from this shortcoming by suggesting that SG Suisse should have known of the fraud "through reasonable and required diligence," and as the result of certain announcements by the United States Department of Treasury Financial Crimes Enforcement Network ("FinCEN").  (*Id.* at 4; *see also id.* ¶¶ 99-104.) As an initial matter, Plaintiffs do not even allege that SG Suisse, a Swiss bank, was subject to FinCEN's suspicious-activity reporting requirements.  But, even if a FinCEN advisory could create a legal duty for a foreign bank, the FinCEN advisory that Plaintiffs reference was withdrawn in August 2001.  (*Id.* ¶ 103.)  Moreover, Texas courts have "consistently held that there cannot be a civil conspiracy to be negligent."  *Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex.

2005).  Furthermore, even if, as Plaintiffs suggest, SG Suisse had unreasonably failed to notice certain red flags, SG Suisse had no duty to engage in due diligence or investigate its clients for the benefit of Plaintiffs.  *See Marlin*, 248 F. App'x at 540  ("[A] bank owes a duty of care to customers but not third parties.").

(b)   *Plaintiffs Have Failed to Allege that SG Suisse Agreed to Participate in the Fraud*

Plaintiffs also do not specifically allege that SG Suisse agreed to participate in the Ponzi scheme.  The conclusory allegation that Defendants "had a meeting of the minds with Stanford on the course of action for perpetrating the fraud," (Compl. ¶ 145), is insufficient to establish an agreement to participate in the fraud, and there is no allegation that Stanford's fraud was ever revealed to SG Suisse prior to its exposure to the entire world.  Thus, Plaintiffs have failed to allege that SG Suisse ever agreed to the ultimate injury that Plaintiffs allege occurred.

(c)   *Plaintiffs Have Failed to Allege that SG Suisse Specifically Intended to Advance the Scheme*

Plaintiffs have also failed to allege that SG Suisse specifically intended to advance Stanford's scheme by merely providing ordinary banking services.  Rather than alleging that SG Suisse ever profited from the fraud – which Plaintiffs cannot do – Plaintiffs allege that "the object of the fraud was to increase investment in Stanford's "personal business ventures," to fund Stanford's "lavish lifestyle," and to "fund[] and perpetuat[e] the fraud described above." (Compl. ¶ 144.)  It is implausible that SG Suisse provided banking services to Stanford and the Stanford entities with the specific intent to "fund Stanford's lavish lifestyle."  Beyond that, such an

allegation is legally insufficient – because Plaintiffs have failed to allege that SG Suisse ever recovered any benefit from the fraud.[18]

Indeed, Plaintiffs' conspiracy claim is particularly anemic because it does not allege any benefit to SG Suisse derived from the Ponzi scheme. This pleading failure is fatal. *See Schlumberger*, 435 S.W.2d at 857-58 (rejecting conspiracy claim because, *inter alia*, "[t]here is no evidence that Schlumberger shared in any of its customer's ill-gotten gains. The uncontradicted evidence is that Schlumberger was performing a service for which it was paid on a professional basis at its regular and customary rate"); *Chu*, 249 S.W.3d at 447 (noting that "[c]onspiracy may be proved by inferences from circumstantial evidence, but inferring an agreement to the ultimate injury generally arises 'from joint participation in the transactions *and from enjoyment of the fruits of the transactions*.'" (citation omitted)). Accordingly, the cause of action for civil conspiracy should be dismissed for failure to state a claim.

(d)   *Plaintiffs Have Failed to Allege Any Facts Regarding Blaise Friedli Sufficient to State a Claim Against SG Suisse*

In an attempt to tie SG Suisse to Stanford's fraud, Plaintiffs allege that Blaise Friedli, SG Suisse's Executive Vice President of Private Banking, was a member of the International Advisory Board. (*See* Compl. ¶¶ 128-29.) Plaintiffs have failed to allege, however, (i) that Mr. Friedli gained any knowledge of Stanford's fraudulent scheme in his capacity as a member of the

---

[18]   To the extent Plaintiffs suggest that the banking fees constituted the benefit to SG Suisse, Texas courts have routinely held that intent cannot be supported by acts or motives that would similarly support a typical, nonfraudulent activity. *See, e.g., First Interstate Bank of Tex., N.A. v. S.B.F.I., Inc.*, 830 S.W.2d 239, 251 (Tex. App.—Dallas 1992, no writ) ("All of the evidence against Dale is as consistent with a lawful purpose as with an unlawful purpose . . . . An inference piled on an inference will not support the jury's finding that Dale was involved with Bailey in a civil conspiracy."); *cf. Flaherty & Crumrine*, 565 F.3d at 213 ("[T]his court has held that certain motives alleged, especially those universal to corporations and their officers, do not suffice to establish an inference of fraud under Rule 9(b)." (collecting cases)); *Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994) (holding that scienter could not be inferred from allegations regarding retaining clients and increasing compensation because "all rational economic actors . . . seek to maximize their profits").

International Advisory Board, or (ii) that any knowledge that Mr. Friedli might have gained would have been imputable to SG Suisse.

First, there is no allegation that Mr. Friedli was a knowing participant in the fraud. Plaintiffs allege that Mr. Friedli was "aware" of the payments to C.A.S. Hewlett and "was essential to carrying them out," (Compl. ¶ 128), yet Plaintiffs do not allege that Mr. Friedli was aware that the payments were in the furtherance of any fraudulent scheme. Indeed, even if Mr. Friedli's alleged awareness were imputable to SG Suisse, a party "could only be liable for conspiracy if he agreed to the *injury* to be accomplished; agreeing to the *conduct* ultimately resulting in injury is not enough." *Chu*, 249 S.W.3d at 446. Here, Plaintiffs conclusorily allege that Mr. Friedli was aware of and agreed to the conduct at issue, *i.e.*, the routine wire transfers to C.A.S. Hewlett, but there is no allegation that Mr. Friedli knew or had any reason to know that these routine payments to Stanford's auditor were in furtherance of a scheme to procure sham audits – let alone any suggestion that Mr. Friedli agreed to the injury to be accomplished. These allegations plainly fail to meet the requisite pleading requirements.

Second, Plaintiffs do not allege that Mr. Friedli gained any knowledge of the fraud during the course of his employment at SG Suisse. Instead, Plaintiffs suggest that Mr. Friedli may have been aware of the fraud because he served on the International Advisory Board. (*See* Compl. at 3-4; *id.* ¶¶ 128-29.) But Plaintiffs fail to explain what the International Advisory Board was, or what role – if any – its members had in the actual operation of Stanford's business. Friedli's service on this "advisory board" does not support any inference that he knew of the Ponzi scheme, as even an outside director of an actual board of directors is not charged with knowledge of all the events that occur at the company. *See, e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 627-28 (S.D. Tex. 2003) (dismissing fraud claims against

outside directors because status as outside director and committee member, absent particularized allegations of knowledge or reckless disregard of Ponzi scheme, was insufficient to support allegation that approval of board resolutions was intended to further a fraud); *In re Century Bus. Servs. Sec. Litig.*, No. 1:99CV02200, 2002 WL 32254513, at *10 (N.D. Ohio June 27, 2002) (holding that conclusory allegations based only on defendants' status as directors were insufficient to establish scienter).

Nor have Plaintiffs alleged how any knowledge that Mr. Friedli obtained as a member of this "advisory" board could possibly be imputed to SG Suisse.  In this connection, courts have squarely held that a defendant corporation cannot be liable for the actions of its designees on another corporation's board of directors.  *See In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 2990646, at *5 (S.D.N.Y. Nov. 7, 2005) (rejecting claim that "CIBC and World Markets should be liable for false and misleading statements signed by the CIBC designees because the designees were high-level World Markets employees chosen by CIBC to sit on [Global Crossing's] Board of Directors"); *see also In re Global Crossing Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1881514, at *3-4, *9-10 (S.D.N.Y. Aug. 5, 2005) (same).  Accordingly, the allegations regarding Mr. Friedli are irrelevant and cannot support a civil conspiracy claim against SG Suisse.

## CONCLUSION

For the foregoing reasons, SG Suisse respectfully requests that the Court grant its motion to dismiss the Amended Complaint for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

Dated:    May 26, 2010                       Respectfully submitted,

                                             */s/ Noelle M. Reed*
                                             Noelle M. Reed
                                             State Bar No. 24044211
                                             Noelle.Reed@skadden.com
                                             Wallis M. Hampton
                                             State Bar No. 00784199
                                             Wallis.Hampton@skadden.com
                                             SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP
                                             1000 Louisiana St., Suite 6800
                                             Houston, TX 77002
                                             Tel: (713) 655-5122
                                             Fax: (713) 483-9122

                                             George A. Zimmerman
                                             George.Zimmerman@skadden.com
                                             *Pro hac vice* application forthcoming
                                             SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP
                                             4 Times Square
                                             New York, NY  10036
                                             Tel: (212) 735-3000

                                             Of Counsel:

                                             Michelle L. Davis
                                             Michelle.Davis@skadden.com
                                             State Bar No. 24038854
                                             SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP
                                             2521 Springer Rd.
                                             Midlothian, TX 76065
                                             Tel: (972) 723-6370
                                             Fax: (713) 483-9197

                                             ATTORNEYS FOR DEFENDANT SOCIÉTÉ
                                             GÉNÉRALE PRIVATE BANKING (SUISSE)
                                             S.A.

31

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2010, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.  All others were served a copy via U.S. mail postage prepaid.

*/s/ Noelle M. Reed*
Noelle M. Reed

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| IN RE: STANFORD ENTITIES SECURITIES LITIGATION | MDL Docket No. 2099 |
| THIS DOCUMENT RELATES TO: | |
| PEGGY ROIF ROTSTAIN, GUTHRIE ABBOTT, CATHERINE BURNELL, STEVEN QUEYROUZE, JAIME ALEXIS ARROYO BORNSTEIN, AND JUAN C. OLANO, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | |
| PLAINTIFFS, | |
| v. | No. 09 Civ. 2384 |
| TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, SG PRIVATE BANKING (SUISSE) S.A., AND BANK OF HOUSTON, | |
| DEFENDANTS. | |

## [PROPOSED] ORDER

On this day the Court considered Société Générale Private Banking (Suisse) S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim and Brief in Support (the "Motion"). After considering the Motion, the motions to dismiss filed by the other defendants, Plaintiffs' responses to the motions to dismiss, and all documents on file with the Court, the Court has concluded that the Motion is in all respects meritorious and should be, and is, GRANTED.

It is therefore ORDERED that the Amended Complaint is hereby DISMISSED with prejudice.

Dated: _____, 2010.

_____
HONORABLE DAVID C. GODBEY
United States District Judge