IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, GUTHRIE ABBOTT, CATHERINE BURNELL, STEVEN QUEYROUZE, JAIME ALEXIS ARROYO BORNSTEIN, and JUAN C. OLANO, on behalf of themselves and all others similarly situated, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Plaintiffs,* | §<br>§ | Civil Action No. 3:09-cv-02384 |
| v. | §<br>§ | JURY TRIAL DEMANDED |
| TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, SG PRIVATE BANKING (SUISSE) S.A., and BANK OF HOUSTON, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Defendants.* | § | |

**DEFENDANT TRUSTMARK NATIONAL BANK'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

I.      INTRODUCTION ................................................................................. 1

II.     PROCEDURAL BACKGROUND.......................................................... 2

III.    APPLICABLE PLEADING STANDARDS: FEDERAL RULES OF CIVIL
        PROCEDURE 8(A) AND 9(B) .............................................................. 3

IV.     ARGUMENT AND AUTHORITIES...................................................... 4

        A.      Conspiracy to Commit Fraud—Plaintiffs' Claim Should Be Dismissed
                Because (1) It Fails to Adequately Allege that Trustmark Either Had
                Actual Knowledge of Stanford's Alleged Fraud or Entered into an
                Agreement with Stanford to Further that Fraud and (2) It Is Implausible
                on Its Face........................................................................................ 4

                1.      Plaintiffs Have Neither Pleaded with Particularity Nor Alleged
                        Specific Facts Sufficient to Raise a Plausible Inference that
                        Trustmark Had Actual Knowledge of Stanford's Alleged Fraud .............. 6

                        a.      The Allegation that Trustmark Received "Suspicious"
                                Deposits............................................................................ 7

                        b.      The FinCEN Advisory Allegation .................................... 9

                        c.      The Allegation that Trustmark Had a Duty to Investigate
                                Stanford's Activities .................................................... 10

                2.      Plaintiffs Have Neither Pleaded with Particularity Nor Alleged
                        Specific Facts Sufficient to Raise a Plausible Inference That
                        Trustmark Entered into an Agreement to Defraud Plaintiffs.................... 11

                3.      Plaintiffs' Conspiracy Claim Is Implausible on Its Face ......................... 13

        B.      Aiding and Abetting Common Law Fraud—Plaintiffs' Claim Should Be
                Dismissed Because (1) No Such Cause of Action Exists Under Texas
                Law, (2) It Fails to Adequately Allege that Trustmark Either Had Actual
                Knowledge of Stanford's Alleged Fraud or Rendered Substantial
                Assistance to It, and (3) It Is Implausible on Its Face............................ 14

                1.      Aiding and Abetting Common Law Fraud Is Not a Cognizable
                        Claim Under Texas Law ......................................................... 14

2.      To the Extent Such A Claim Exists Under Texas Law, Plaintiffs
        Have Failed to Plead Facts to Support Aiding and Abetting
        Liability Under Rules 8(a) or 9(b) ............................................................ 15

        a.      Plaintiffs Have Failed to Adequately Allege that
                Trustmark Had Actual Knowledge of the Scheme ...................... 15

        b.      Plaintiffs Have Failed to Adequately Allege that
                Trustmark Provided "Substantial Assistance" to
                Stanford's Alleged Fraud ............................................................ 16

3.      Plaintiffs' Aiding and Abetting Fraud Is Implausible on Its Face ........... 17

C.   Fraudulent Transfer—Plaintiffs Claims Should Be Dismissed Because
     (1) They Are Barred by the Receivership Order and (2) They Fail to
     Adequately Allege Numerous Essential Elements ............................................... 17

1.      Plaintiffs' Fraudulent Transfer Claims Violate the Receivership
        Order and Should Be Dismissed ................................................................ 18

2.      Plaintiffs Have Failed to Allege Facts Sufficient to Satisfy
        Essential Elements of Their Fraudulent Transfer Claims ......................... 20

        a.      Plaintiffs' Have Failed to State a Claim Under §§
                24.005(a)(2) and 24.006(a) Because They Have Not
                Alleged Facts Sufficient to Raise a Plausible Inference
                that SIBL Received Less Than Reasonably Equivalent
                Value .......................................................................................... 20

        b.      Plaintiffs Have Failed to State a Claim Under §
                24.005(a)(1) Because They Have Not Alleged Facts
                Sufficient to Raise a Plausible Inference that the Alleged
                Transfers to Trustmark Were Made with Actual Intent to
                Hinder, Delay, or Defraud Creditors ........................................... 23

        c.      Plaintiffs' §§ 24.005(a)(1), 24.005(a)(2), and 24.006(a)
                Claims Fail Because They Fail to Allege that Plaintiffs
                Were Creditors of SIBL at the Time of, or Within a
                Reasonable Time After, the Transfers at Issue ............................ 26

D.   Plaintiffs' Class Action Allegations Should Be Dismissed Because It Is
     Facially Apparent From Plaintiffs' Amended Petition that the
     Prerequisites for a Class Action Cannot Be Met ................................................. 26

1.      Plaintiffs Cannot Certify a Class for Conspiracy to Commit Fraud
        or Aiding and Abetting Fraud .................................................................... 27

2.      Plaintiffs Cannot Certify a Class for Fraudulent Conveyance ................. 28

V.      INCORPORATION OF ARGUMENTS MADE BY CO-DEFENDANT
        BANKS .................................................................................................................. 29

VI.     CONCLUSION ........................................................................................................ 29

CERTIFICATE OF SERVICE .................................................................................................. 30

## TABLE OF AUTHORITIES

### Cases

*Aikens v. Interglobal Mergers and Acquisitions*,
   2006 WL 1878323 (S.D.N.Y. 2006) ..................................................... 11

*Armstrong v. American Pallet Leasing Inc.*,
   678 F. Supp. 2d 827 (N.D. Iowa 2009) ................................................ 11

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................. 3, 13, 21, 22, 24

*Bane v. Sigmundr Exploration Corp.*,
   848 F.2d 579 (5th Cir. 1988) .......................................................... 17

*Beardon v. Honeywell Int'l Inc.*,
   2010 WL 1223936 (M.D. Tenn. 2010) ................................................ 28

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ............................................. 3, 5, 12, 21, 22, 23

*Berry v. Indianapolis Life Ins. Co.*,
   608 F. Supp. 2d 785 (N.D. Tex. 2009) ............................................... 12

*Bonded Fin. Serv., Inc. v. European Am. Bank*,
   838 F.2d 890 (7th Cir. 1988) .......................................................... 18

*Borsellino v. Goldman Sachs Group, Inc.*,
   477 F.3d 502 (7th Cir. 2007) .......................................................... 12

*Cadle Co. v. Wilson*,
   136 S.W.3d 345 (Tex. App.—Austin 2004, no pet.) ............................... 18

*Carroll v. Fort James Corp.*,
   470 F.3d 1171 (5th Cir. 2006) .......................................................... 4

*Cas. & Surety Co. v. Leahy Const. Co.*,
   219 F.3d 519 (6th Cir. 2000) ..................................................... 15, 16

*Castano v. American Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ............................................................ 27

*Castillo v. First City Bancorporation of Tex., Inc.*,
   43 F.3d 953 (5th Cir. 1994) ............................................................. 5

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir. 1990) .......................................................... 14

*Donell v. Kowell,*
    533 F.3d 762 (9th Cir. 2008) ................................................................. 19

*Dorsey v. Portfolio Equities, Inc.,*
    540 F.3d 333 (5th Cir. 2008) ................................................................... 7

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,*
    51 S.W.3d 573 (Tex. 2001) .............................................................. 14, 27

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009) ................................................................ 7

*Firestone Steel Products Co. v. Barajas,*
    927 S.W.2d 608 (Tex. 1996)................................................................. 5, 6

*GE Capital Commercial, Inc. v. Wright & Wright, Inc,*
    2009 WL 5173954 (N.D. Tex. 2009)...................................................... 18

*Gloria v. Allstate Cty. Mut. Ins. Co.,*
    2000 WL 35754563 (W.D. Tex. 2000)................................................... 28

*Goldstein v. Mortenson,*
    113 S.W.3d 769 (Tex. App.—Austin 2003, no pet.) ...................... 5, 9, 10

*Goss v. Firestone Polymers, L.L.C.,*
    2005 WL 1004717 (E.D. Tex. 2005) ..................................................... 12

*Guidry v. Bank of LaPlace,*
    954 F.2d 278 (5th Cir. 1992) ................................................................. 15

*Hahn v. Love,*
    2009 WL 793637 (Tex. App—Houston [1st Dist.] 2009, pet. denied) ................................... 25

*Hedgepeth v. Blue Cross & Blue Shield of Miss.,*
    2006 WL 141624 (N.D. Miss. 2006)..................................................... 28

Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.,
    2008 WL 3925272 (N.D. Tex. 2008)...................................................... 14

*In re Caremerica,*
    409 B.R. 737, 755-56 (Bankr. E.D.N.C. 2009) ..................................... 22

*In re Churchill,*
    256 B.R. 664 (Bankr. S.D.N.Y. 2000)................................................... 23

In re Complaint of River City Towing Serv., Inc.,
    204 F.R.D. 94 (E.D. La. 2001) .............................................................. 29

In re Diet Drugs Prod. Liab. Litig.,
   1999 WL 782560 (E.D. Pa. 1999) ...................................................................... 29

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007) ............................................................................... 12

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,,
   540 F. Supp. 2d 800 (S.D. Tex. 2007) ............................................................ 5, 15

*In re Enron Corp. Secs., Derivative and "ERISA" Litig.*,,,
   623 F. Supp. 2d 798 (S.D. Tex. 2009) ................................................................ 5

*In re Enron Secs., Derivative & "ERISA" Litig.*,
   511 F. Supp. 2d 742 (S.D. Tex. 2005) .............................................................. 15

*In re IFS Financial Corp.*,
   417 B.R. 419 (Bankr. S.D. Tex. 2009). .............................................................. 24

*In re Image Masters, Inc.*,
   421 B.R. 164 (Bankr. E.D. Penn. 2009) ............................................................ 22

In re Katrina Canal Breaches Consol. Litig.,
   263 F.R.D. 340 (E.D. La. 2009) ........................................................................ 29

*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) ............................................................................ 27

*JP Morgan Chase Bank v. Winnick*,
   406 F. Supp. 2d 247 (S.D.N.Y. 2005) .......................................................... 15, 16

*Kane v. Rose*,
   2007 WL 4393917 (11th Cir. 2007) .................................................................. 20

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
   238 F.3d 363 (5th Cir. 2001) .............................................................................. 4

*Markey v. La. Citizens Fair Plan*,
   2008 WL 5427708 (E.D. La. 2008) ................................................................... 28

*Marlin v. Moody Nat'l Bank, N.A.*,
   2007 WL 2726893 (5th Cir. 2007) ........................................................... 5, 6, 11

*Matter of Coutee*,
   984 F.2d 138 (5th Cir. 1993) ............................................................................ 18

*McManus v. Fleetwood Enters., Inc.*,
   320 F.3d 545 (5th Cir. 2003) ............................................................................ 27

*Melder v. Morris,*
  27 F.3d 1097 (5th Cir. 1994) ................................................................ 4, 14

*Metz v. Unizan Bank,*
  2008 WL 2017574 (N.D. Ohio 2008) ........................................................ 17

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.,*
  1999 WL 558141 (S.D.N.Y. 1999) ............................................................ 17

O'Kane v. Coleman,
  2008 WL 2579832 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ...................... 14

*Ortiz v. Fibreboard Corp.,*
  119 S. Ct. 2295 (1999) ........................................................................ 28

*Owens v. Comerica Bank,*
  229 S.W.3d 544 (Tex. App.—Dallas 2007, no pet.) ........................................ 11

*Patterson v. Mobil Oil Corp.,*
  241 F.3d 417 (5th Cir. 2001) ................................................................. 27

*Priester v. Lowndes County,*
  354 F.3d 414 (5th Cir. 2004) ................................................................. 12

*Read v. Input/Output, Inc.,*
  2005 WL 2086179 (S.D. Tex. 2005) ........................................................... 28

*Renner v. Chase Manhattan Bank,*
  2000 WL 781081 (S.D.N.Y. 2000) .............................................................. 9

*Robinson v. Wal-Mart Stores, Inc.,*
  253 F.R.D. 396 (S.D. Miss. 2008) ........................................................... 27

*Rodriguez v. Editor in Chief,*
  285 Fed. Appx. 756 (D.C. Cir. 2008) ........................................................ 12

*Ryan v. Hunton & Williams,*
  2000 WL 1375265 (E.D.N.Y. 2000) ............................................................ 17

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,*
  435 S.W.2d 854 (Tex. 1968) ..................................................... 5, 6, 9, 10, 27

*Scholes v. Lehmann,*
  56 F.3d 750 (7th Cir. 1995) ................................................................. 19

*SEC v. Cook,*
  2001 WL 256172 (N.D. Tex. 2001) ............................................................ 19

*SEC v. Private Equity Mgmt Group*,
 2010 WL 1576737 (C.D. Cal. 2010) ....................................................... 20

*Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 482 F.2d 880 (5th Cir. 1973) ........................................................... 27, 29

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
 365 F.3d 353 (5th Cir. 2004) ............................................. 10, 13, 21, 23

*Stern v. Charles Schwab & Co.*,
 2009 WL 3352408 (D. Ariz. 2009) ......................................................... 11

*Timberlake v. Synthes Spine Co., L.P.*,
 2009 WL 926990 (S.D. Tex. 2009) ..................................... 10, 13, 21, 23

*Tri v. J.T.T.*,
 162 S.W.3d 552 (Tex. 2005) ............................................................... 5, 11

*United States ex rel. Grubbs v. Kanneganti*,
 565 F.3d 180 (5th Cir. 2009) ............................................................... 5, 12

*Williams v. Bank Leumi Trust Co.*,
 1997 WL 289865 (S.D.N.Y. 1997) ......................................................... 17

*Xavier v. Belfor USA Group, Inc.*,
 2009 WL 411559 (E.D. La. 2009) ........................................................... 27

## Statutes

11 U.S.C. § 548(a)(1)(B) ............................................................................ 22

TEX. BUS. & COMM. CODE ANN. § 24.005(a)(1)............................ 17, 18, 20, 23, 25, 26

TEX. BUS. & COMM. CODE ANN. § 24.005(a)(2)............................ 17, 18, 20, 22, 23, 26

TEX. BUS. & COMM. CODE ANN. § 24.006(a) ................................ 17, 18, 20, 22, 23, 26

TEX. BUS. & COMM. CODE ANN. § 24.009(a)................................................. 25

## Rules

FED. R. CIV. P. 12(b)(6) ........................................................................ 3, 27

FED. R. CIV. P. 8(a)..................................................................................... 3

FED. R. CIV. P. 9(b)..................................................................................... 3

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Trustmark National Bank ("Trustmark") moves to dismiss all claims asserted in Plaintiffs' First Amended Petition ("Amended Petition").

## I.   INTRODUCTION

In this lawsuit, Plaintiffs purport to state individual and class claims on behalf of persons allegedly defrauded by Antiguan-based Stanford International Bank, Ltd. ("SIBL"), part of the Stanford Financial Group ("SFG") controlled by R. Allen Stanford (collectively, "Stanford"). According to Plaintiffs' Amended Petition, Stanford perpetrated "a massive fraud in which Stanford misappropriated billions of dollars, falsified SIBL's financial statements, and concealed their fraudulent conduct from customers, prospective customers, and regulators in the United States and elsewhere."[1]

Although Plaintiffs acknowledge that Trustmark merely acted as a correspondent bank for SIBL (collecting and transferring funds as part of routine banking operations), Plaintiffs nonetheless purport to assert claims against Trustmark for conspiracy and/or aiding and abetting fraud (on the theory that Trustmark knew of and elected to participate in the alleged Stanford fraud) and fraudulent transfer (on the theory that the routine banking fees paid to Trustmark by SIBL were paid without receiving reasonably equivalent value in return and/or were made with actual intent to hinder, delay, or defraud creditors).[2]

As explained in detail below, all of Plaintiffs' causes of action should be dismissed for the following summary of reasons:

---

[1]  Plaintiffs' First Amended Petition (Dkt. No. 1, Ex. A-3) (hereafter "Am. Pet.") ¶ 31.

[2]  *See id.* ¶¶ 80-97 (Counts One through Three: fraudulent transfer claims); 98-104, 130-35, 143-48 (Count Four: conspiracy and aiding and abetting claims).

(a)     Plaintiffs' conspiracy to commit fraud claim should be dismissed because:

    (i)     Plaintiffs have failed to adequately allege that Trustmark had actual knowledge of the alleged Stanford fraud;

    (ii)    Plaintiffs have failed to adequately allege that Trustmark entered into an agreement with Stanford to further its alleged fraud; and

    (iii)   Plaintiffs' claim is implausible on its face.

(b)     Plaintiffs' aiding and abetting fraud claim should be dismissed because:

    (i)     Texas law does not recognize such a cause of action;

    (ii)    Plaintiffs have failed to adequately allege that Trustmark had actual knowledge of the alleged Stanford fraud;

    (iii)   Plaintiffs have failed to adequately allege that Trustmark rendered substantial assistance to the alleged Stanford fraud; and

    (iv)    Plaintiffs' claim is implausible on its face.

(c)     Plaintiffs' fraudulent transfer claims should be dismissed because:

    (i)     Plaintiffs' attempt to recover sums allegedly transferred by Stanford violates this Court's receivership order;

    (ii)    Plaintiffs have failed to adequately allege that Stanford received less than reasonably equivalent value in exchange for the banking fees paid to Trustmark;

    (iii)   Plaintiffs have failed to adequately allege that the banking fees paid to Trustmark were made with actual intent to hinder, delay, or defraud creditors; and

    (iv)    Plaintiffs have failed to allege facts showing that they were creditors of SIBL in the time periods required to establish their claims.

In addition, it is apparent from the face of Plaintiffs' petition that class claims cannot be certified against Trustmark on behalf of the class of Stanford investors that Plaintiffs purport to represent for either (i) conspiracy to commit fraud and aiding and abetting fraud or (ii) fraudulent conveyance.  Thus, even if Plaintiffs' individual claims could survive dismissal, the class claims that they purport to assert should nonetheless be dismissed.

## II.     PROCEDURAL BACKGROUND

On August 23, 2009, Plaintiffs filed a four-count putative class action petition in the 129th Judicial District Court of Harris County, Texas against five banks: Trustmark, The Toronto-Dominion Bank ("TD Bank"), Bank of Houston ("BoH"), HSBC Bank PLC ("HSBC"), and SG Private Banking (Suisse) S.A. ("SGPB Suisse") (collectively, "Defendant Banks").  On

October 9, 2009, Plaintiffs filed their Amended Petition.  Plaintiffs define the putative class to

include "all individuals who, and entities that, as of February 16, 2009, were customers of SIBL,

with monies on deposit at SIBL and/or holding CDs issued by SIBL."[3]

Defendants Trustmark, TD Bank, and BoH jointly removed the case to the United States

District Court for the Southern District of Texas, Houston Division, on November 13, 2009.[4]

The case was subsequently transferred to this Court pursuant to an order from the United States

Judicial Panel on Multidistrict Litigation.[5]   On April 16, 2010, this Court entered an order

establishing a briefing schedule and providing a deadline of May 26, 2010 for the Defendant

Banks to file an answer or a motion to dismiss under Rule 12(b)(6).[6]   In compliance with that

Order, Trustmark now files this motion asking the Court to dismiss each of Plaintiffs' claims

pursuant to Rule 12(b)(6).

## III.   APPLICABLE PLEADING STANDARDS: FEDERAL RULES OF CIVIL PROCEDURE 8(A) AND 9(B)

Under Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief."[7]   However, as the Supreme

Court has explained, a complaint fails to comply with Rule 8(a) if it does not plead "enough facts

to state a claim to relief that is plausible on its face."[8]   This standard is met only "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."[9]   A pleading that offers only "labels and

---

[3]  Am. Pet. ¶ 23.

[4]  *See* Dkt. No. 1.

[5]  *See* Dkt. No. 6.

[6]  *See* Dkt. No. 21.

[7]  FED. R. CIV. P. 8(a).

[8]  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

[9]  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

conclusions" or "a formulaic recitation of the elements of a cause of action will not do."[10]   Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[11]   Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[12]

Fraud-based claims must comply not only with Rule 8(a), but also with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake."[13]   To meet this standard, a plaintiff must allege facts establishing "the 'who, what, when, where, and how' of the alleged fraud."[14]   In the Fifth Circuit, "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."[15]   In addition, for any claim that is "grounded in" fraud, the pleadings must also comply with Rule 9(b).[16]

## IV.   ARGUMENT AND AUTHORITIES

### A.   Conspiracy to Commit Fraud—Plaintiffs' Claim Should Be Dismissed Because (1) It Fails to Adequately Allege that Trustmark Either Had Actual Knowledge of Stanford's Alleged Fraud or Entered into an Agreement with Stanford to Further that Fraud and (2) It Is Implausible on Its Face

Because Plaintiffs' claim for conspiracy to commit fraud is "grounded in" fraud, it is subject to the heightened pleading requirements of Rule 9(b) and must be pleaded with

---

[10]  *Id.*

[11]  *Id.*

[12]  *Id.* at 1950.

[13]  FED. R. CIV. P. 9(b).

[14]  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).

[15]  *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,* 238 F.3d 363, 368 (5th Cir. 2001).

[16]  *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994); *see also Lone Star Ladies,* 238 F.3d at 368.

particularity.[17]   In addition, to meet the pleading standard of Rule 8(a), Plaintiffs' conspiracy

claim must be supported by factual allegations that "state a claim to relief that is plausible on its

face."[18]

Plaintiffs' allegations in support of their conspiracy claim against Trustmark do not come

close to meeting these standards.  Specifically, Plaintiffs have failed to allege facts sufficient to

support the essential element of their conspiracy claim that there was "a meeting of the minds on

the object or course of action" between Trustmark and Stanford.[19]  To satisfy this requirement, it

must be shown that there was:

> [A]n agreement or understanding between the conspirators to inflict a wrong
> against, or injury on, another, a meeting of the minds on the object or course of
> action, and some mutual mental action coupled with an intent to commit the act
> which results in injury; in short, there must be a preconceived plan and unity of
> design and purpose, for the common design is of the essence of the conspiracy.[20]

Moreover, because "one without knowledge of a conspiratorial plan or scheme to injure another

by the commission of a particular wrong cannot share the intent to injure such other,"[21] a

defendant's knowledge of the scheme "must be <u>specific and actual</u>."[22]

---

[17]  *See, e.g.*, *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) ("[A] plaintiff alleging conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts taken in furtherance of the conspiracy.'"); *Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 961 (5th Cir. 1994) (applying Rule 9(b) to a claim of civil conspiracy to commit fraud); *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 805 (S.D. Tex. 2007) ("The particularity requirement of Rule 9(b) also governs conspiracy to commit fraud.").

[18]  *Twombly*, 127 S. Ct. at 1974.

[19]  *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

[20]  *In re Enron Corp. Secs., Derivative and "ERISA" Litig.*, 623 F. Supp. 2d 798, 809 (S.D. Tex. 2009) (quoting *Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex. App.—Austin 2003, no pet.)); *accord Marlin v. Moody Nat'l Bank, N.A.*, 2007 WL 2726893, at *4 (5th Cir. 2007) ("[U]nder Texas law, civil conspiracy requires proof that a defendant agreed to accomplish an unlawful purpose or a lawful purpose by unlawful means. . . . Conspirators must know the object and purpose of the conspiracy, agree to the scheme, and specifically intend to advance the conspiracy.").

[21]  *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968).

[22]  *In re Enron Corp.*, 623 F. Supp. 2d at 809 n.9 (emphasis added); *accord Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996) ("One cannot agree, expressly or tacitly, to commit a wrong about which he has

In other words, in order for Plaintiffs' conspiracy to commit fraud claim to meet the pleading standards of Rules 8(a) and 9(b) and survive this motion to dismiss, Plaintiffs must have alleged specific facts sufficient for this Court to draw a plausible inference that Trustmark (i) knew of the alleged fraud being perpetrated on Stanford investors and (ii), with such knowledge, entered into an agreement with Stanford to further that fraud.  As explained below, Plaintiffs have not alleged any specific facts from which a plausible inference could be drawn that Trustmark had such knowledge or entered into any such agreement.  Accordingly, Plaintiffs' conspiracy to commit fraud claim should be dismissed.

       1.       **Plaintiffs Have Neither Pleaded with Particularity Nor Alleged Specific Facts Sufficient to Raise a Plausible Inference that Trustmark Had Actual Knowledge of Stanford's Alleged Fraud**

Plaintiffs allege that Stanford fraudulently induced them to invest in certificates of deposit with high rates of return by representing that the proceeds of the CDs were invested in a "globally diversified portfolio" of "marketable securities" when in fact these funds were misappropriated and invested in unprofitable, speculative businesses.[23]  Therefore, as noted above, to sustain a claim for conspiracy to defraud, Plaintiffs must allege facts sufficient to raise a plausible inference that Trustmark had <u>actual knowledge</u> that Stanford was engaged in this alleged fraudulent scheme.[24]

Moreover, these allegations must be specific.  As the Fifth Circuit has explained, "[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that

---

no knowledge."); *Marlin*, 2007 WL 2726893, at *6 (stating that actual knowledge of the object of the conspiracy is a necessary element of a claim for conspiracy).

[23]  *See, e.g.*, Am. Pet at p. 2 (Preliminary Statement) and ¶¶ 31-34.

[24]  *See, e.g.*, *Firestone*, 927 S.W.2d at 614; *Schlumberger*, 435 S.W.2d at 857.

defendants possess fraudulent intent will not satisfy Rule 9(b). . . . The plaintiffs must allege specific facts supporting an inference of fraud."[25]

Here, Plaintiffs have failed to allege any specific facts supporting an inference that Trustmark had actual knowledge of the alleged Stanford fraud.  Each of Plaintiffs' inadequate allegations asserting Trustmark's knowledge of the alleged fraud is addressed below.

### a.   The Allegation that Trustmark Received "Suspicious" Deposits

Plaintiffs first attempt to allege Trustmark's supposed knowledge of the asserted Stanford fraud by alleging that Trustmark received "suspicious" deposits from Stanford:

> Trustmark received daily bundles of checks that Class members intended for deposit in SIBL in Antigua.  Those checks were deposited in SIBL accounts at Trustmark, and later distributed to other Stanford entities and put to the private use of Allen Stanford.  These highly suspicious and unusual deposits, together with other information readily available to Trustmark concerning Stanford's operations, either did, or should have, alerted Trustmark to the illicit nature of the Stanford banking operation.
> . . .
> Upon information and belief, Trustmark received large and highly suspicious wire transfers from HSBC and TD Bank of funds that were received by those institutions from members of the Class and intended for deposit with SIBL in Antigua.
> . . .
> Upon information and belief, numerous large transfers of funds were made from SIBL's accounts at Trustmark to other Stanford entities, "invested" in Allen Stanford's private ventures, used to fund Allen Stanford's lavish lifestyle, and reinvested in the criminal venture to keep the fraudulent scheme in operation.
> Based upon the foregoing, and based upon its longstanding banking relationship with Stanford, Trustmark knew, or should have known, that Stanford was conducting an illegal and fraudulent scheme.[26]

---

[25]   *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (emphasis in original); *accord Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987) ("Although Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge."); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) ("Although 'knowledge' and 'intent' may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.").

[26]   Am. Pet. at p. 4 (Preliminary Statement) and ¶¶ 132, 134-35.

The sum total of these allegations is that Trustmark received checks and wire transfers payable to SIBL, deposited these funds into a SIBL account, and then followed its customer's instructions and transferred sums from the depository account to the accounts of other Stanford entities.  No plausible inference can be drawn from these allegations that Trustmark had <u>actual knowledge</u> that Stanford was fraudulently misappropriating investor assets, falsifying financial statements, or misrepresenting the manner in which investor funds were used.

Nor is anything added by Plaintiffs vague, conclusory assertions (i) that these deposits were "highly suspicious and unusual," (ii) that there was other, unspecified "information readily available to Trustmark concerning Stanford's operations," and (iii) that Trustmark learned unspecified facts from its alleged "longstanding banking relationship with Stanford."  Nowhere do Plaintiffs explain why the deposit of checks and wire transfers made payable to SIBL into a SIBL account was highly suspicious or unusual or how the facts surrounding these deposits could possibly have provided Trustmark with actual knowledge that Stanford was defrauding its investors.  Nor do Plaintiffs explain what information was allegedly "readily available to Trustmark concerning Stanford's operations" or that Trustmark learned from its alleged "longstanding banking relationship with Stanford" that would or could have provided Trustmark with actual knowledge of Stanford's alleged fraud.

Moreover, even if Plaintiffs had alleged specific facts showing that Trustmark was aware of "suspicious" activities by Stanford (which they have not), this would still be insufficient to state a claim for conspiracy.  Texas law is clear that the actual knowledge requirement of a conspiracy claim is <u>not</u> met even where the defendant "had good reason to believe there existed a

conspiracy among other parties"[27] or where "the existence and object of the conspiracy could have been discovered by [the defendant] by the exercise of the slightest degree of diligence."[28] In short, nothing in these allegations rises to the level of a specific fact on which the Court could plausibly infer that Trustmark had actual knowledge of the fraudulent scheme allegedly being perpetrated by Stanford.

### b.    The FinCEN Advisory Allegation

Next, Plaintiffs cite to an April 1999 advisory issued by the United States Department of Treasury Financial Crimes Enforcement Network ("FinCEN") that advised financial institutions "to give enhanced scrutiny to all financial transactions routed into or out of Antigua and Barbuda" because these countries had vested supervisory authority over their financial services sector to an "International Financial Sector Authority" whose board of directors included "representatives of the very institutions the Authority is supposed to regulate."[29]  Plaintiffs go on to allege that "Defendants" (i) received and were aware of this advisory and (ii) knew or should have known that the advisory was referring to Stanford when it warned that board members of the Authority included representatives of the institutions that were being supervised.[30]  Finally, Plaintiffs allege that:

> [E]ach of the Defendants knew or should have known, by virtue of their knowledge and experience in international banking and banking regulation, that Antigua's lax regulatory oversight of its offshore banking sector, including SIBL, posed a heightened risk that Stanford was involved in illegal activity.[31]

---

[27]  *Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex. App.—Austin 2003, no pet.) ("[P]roof that an individual has some collateral involvement in a transaction, and had good reason to believe there existed a conspiracy among other parties to it, is insufficient of itself to establish that the defendant was a conspirator.").

[28]  *Schlumberger*, 435 S.W.2d at 857; *see also Renner v. Chase Manhattan Bank*, 2000 WL 781081, at *7-8 (S.D.N.Y. 2000) (bank manager's suspicions about uses to which bank accounts were being put, and rejection of certain transactions because of suspected fraud, did not show actual knowledge of the alleged fraud).

[29]  Am. Pet. ¶ 99.

[30]  *Id*. ¶¶ 101-02.

[31]  *Id*. ¶ 104.

No plausible inference can be drawn from these allegations that Trustmark had <u>actual knowledge</u> of Stanford's alleged fraud.[32]  The FinCEN advisory—which Plaintiffs acknowledge was withdrawn in 2001[33]—does not in any way state that Stanford (or anyone else) was engaged in a fraud.  Indeed, Plaintiffs do not even attempt to allege that this advisory or Trustmark's alleged knowledge of "Antigua's lax regulatory oversight" provided Trustmark with actual knowledge of Stanford's alleged fraud.  Rather, Plaintiffs allege only that Trustmark was aware that these facts "posed a <u>heightened risk</u> that Stanford was involved in illegal activity."[34]

As noted above, knowledge of a "heightened risk" of fraud is not a substitute for <u>actual knowledge</u> of fraud in the context of conspiracy to defraud.[35]  Thus, nothing in this allegation rises to the level of a specific fact on which the Court could plausibly infer that Trustmark had actual knowledge of the fraudulent scheme allegedly being perpetrated by Stanford.

### c. The Allegation that Trustmark Had a Duty to Investigate Stanford's Activities

Finally, Plaintiffs allege that "Trustmark was required, pursuant to U.S. anti-money laundering laws and regulations, to conduct a thorough investigation of any suspicious and potentially illegal banking activity."[36]  No plausible inference can be drawn from this allegation that Trustmark had actual knowledge of the alleged Stanford fraud.  Indeed, Plaintiffs do not

---

[32] Because these allegations are directed to "Defendants" as a group, and not Trustmark specifically, they violate the "group pleading" doctrine and should be ignored.  *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("Consistent with our rejection of the 'group pleading' doctrine, we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded."); *Timberlake v. Synthes Spine Co., L.P.*, 2009 WL 926990, at *7 (S.D. Tex. 2009) ("The Fifth Circuit has explicitly rejected the 'group pleading' doctrine, and instead requires plaintiffs to delineate among defendants in their responsibilities for allegedly fraudulent activities.").

[33] Am. Pet. ¶ 103.

[34] *Id*. ¶ 104 (emphasis added).

[35] *Schlumberger*, 435 S.W.2d at 857; *Goldstein*, 113 S.W.3d at 779.

[36] Am. Pet. ¶ 131.

allege that Trustmark uncovered <u>any</u> information or fact in the course of such an investigation that provided it with actual knowledge of Stanford's alleged fraud.[37]

As another federal court has noted in a similar context, an allegation that a bank had duties under various statutes to investigate activities of depositors "says nothing about the state of [the bank's] actual knowledge."[38]   Thus, nothing in this allegation rises to the level of a specific fact on which the Court could plausibly infer that Trustmark had actual knowledge of the fraudulent scheme allegedly being perpetrated by Stanford.

### 2.   Plaintiffs Have Neither Pleaded with Particularity Nor Alleged Specific Facts Sufficient to Raise a Plausible Inference That Trustmark Entered into an Agreement to Defraud Plaintiffs

Plaintiffs' conspiracy to commit fraud claim also fails because Plaintiffs have not adequately alleged that Trustmark and Stanford entered into an agreement to defraud Plaintiffs, an essential element of this claim.[39]   To meet the relevant standards under Rules 8(a) and 9(b),

---

[37]   Although the issue here is <u>actual knowledge</u> and not a failure of Trustmark to discover Stanford's alleged fraud, it should be noted that banks owe no duty of care to third parties whose checks are deposited in an account at the bank. *See Owens v. Comerica Bank,* 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.) (holding that a bank owes no duty to third parties whose checks are deposited in an account at the bank and the funds are thereafter misappropriated by the account holder); *Armstrong v. American Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 874-75 (N.D. Iowa 2009) (same); *Aikens v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323, at *2 (S.D.N.Y. 2006) (same).  Moreover, regulations, such as the Bank Secrecy Act, do not create such a duty or supply a standard of care in civil causes of action against banks.  *See Marlin v. Moody Nat'l Bank, N.A.*, 2006 WL 2382325, at *7 (S.D. Tex. 2006) ("The obligation under that statue is to the government rather than some remote victim.  The obligation is not to roam through its customers looking for crooks and terrorists.  By that act, banks do not become guarantors of the integrity of the deals of their customers.  It [the Bank Secrecy Act] does not create a private right of action and, therefore, does not establish a standard of care."), *aff'd*, 248 Fed. Appx. 534 (5th Cir. 2007).

[38]   *Stern v. Charles Schwab & Co.*, 2009 WL 3352408, at *8 (D. Ariz. 2009).

[39]   *See, e.g., Tri*, 162 S.W.3d at 556 (stating that an essential element of a conspiracy claim is that there was "a meeting of the minds on the object or course of action").

Plaintiffs must allege specific facts[40] that are sufficient to raise a plausible inference of such an agreement.[41] Here, Plaintiffs have alleged no such facts.

Indeed, the <u>entirety</u> of Plaintiffs' allegations concerning an alleged agreement by Trustmark with Stanford to participate in Stanford's alleged fraud consists of the conclusory assertion that "Defendants together or separately, had a meeting of the minds with Stanford on the course of action for perpetrating the fraud."[42] This is exactly the type of "formulaic recitation of the elements of a cause of action" that the Supreme Court has made clear "will not do" and will not satisfy the pleading requirements of Rule 8(a).[43]

Not surprisingly, federal courts routinely dismiss conspiracy claims where, as here, they are supported only by vague, conclusory allegations of an agreement between the alleged co-conspirators.[44]   Moreover, the allegation that it was "Defendants," and not Trustmark

---

[40]   *Kanneganti*, 565 F.3d at 193 ("[A] plaintiff alleging conspiracy to commit fraud must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'"); *Goss v. Firestone Polymers, L.L.C.*, 2005 WL 1004717, at *19 (E.D. Tex. 2005) (dismissing conspiracy claim for failure to comply with Rule 9(b) because "Plaintiffs' conspiracy claim [was] nothing more than a vague allegation, which, without additional factual support, [was] insufficient to satisfy the heightened pleading requirement").

[41]   *Twombly*, 127 S. Ct. at 1974 (holding that to comply with Rule 8(a), a complaint must plead "enough facts to state a claim to relief that is plausible on its face").

[42]   Am. Pet. ¶ 145.

[43]   Twombly, 127 S. Ct. at 1965.

[44]   *See, e.g.*, *Rodriguez v. Editor in Chief*, 285 Fed. Appx. 756, 759 (D.C. Cir. 2008) (dismissing claims under Rule 8(a) where plaintiff's "allegations include[d] no facts suggesting 'unity of purpose' or a 'meeting of the minds' among the defendants, a necessary element of conspiracy"); *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (affirming dismissal of conspiracy claim because the complaint said "nothing about the nature of the purported agreement to defraud the plaintiffs, such as when it was made or which individuals at [the defendant] arranged the conspiracy"); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (affirming district court's dismissal of conspiracy claims because the plaintiffs were unable to allege facts that would "provide 'plausible grounds to infer an agreement'"); *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (affirming dismissal of conspiracy claim where complaint did not allege specific facts showing an agreement to further the conspiracy); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 792-95 (N.D. Tex. 2009) (dismissing conspiracy claim because "the Court finds no factual support for the element that [the defendant] had a meeting of the minds with any other Defendant to do anything in furtherance of committing fraud . . . [and the] only allegation of an agreement among the defendants were conclusions of the type to which [the defendant] would have no idea where to begin responding").

specifically, that had a meeting of the minds with Stanford violates the well established rule against group pleadings and should be ignored.[45]

### 3.    Plaintiffs' Conspiracy Claim Is Implausible on Its Face

Finally, Plaintiffs' conspiracy to commit fraud claim must be dismissed because it is, on its face, utterly implausible.  As the Supreme Court has explained:

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief."[46]

Here, Plaintiffs' conspiracy to commit fraud claim is premised on the patently implausible notion that Trustmark, a national bank, would knowingly and intentionally agree to participate in a conspiracy to defraud Stanford's investors, and as a result risk its hard won reputation and expose itself to enormous potential civil and criminal liability, simply in order to collect routine banking fees. Even worse, the allegations that Plaintiffs offer in support of this implausible theory consist almost entirely of conclusions, which are entitled to no weight.[47]  Moreover, the factual allegations that are well pleaded (that Trustmark provided routine banking services to Stanford and received ordinary banking fees in return) do not remotely support Plaintiffs' assertion that Trustmark knowingly agreed to assist a fraud.

In short, Plaintiffs' conspiracy to commit fraud claim is utterly implausible when considered in light of the few facts that Plaintiffs have actually pleaded.  In such a circumstance,

---

[45]   *See Southland*, 365 F.3d at 365; *Timberlake*, 2009 WL 926990, at *7.

[46]   *Iqbal*, 129 S. Ct. at 1950 (internal citations omitted).

[47]   *See id.* ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth.").

13

where Plaintiffs have "not nudged [their] claims . . . across the line from conceivable to plausible," their complaint must be dismissed.[48]

**B.    Aiding and Abetting Common Law Fraud—Plaintiffs' Claim Should Be Dismissed Because (1) No Such Cause of Action Exists Under Texas Law, (2) It Fails to Adequately Allege that Trustmark Either Had Actual Knowledge of Stanford's Alleged Fraud or Rendered Substantial Assistance to It, and (3) It Is Implausible on Its Face**

Plaintiffs' claim for aiding and abetting fraud is also deficient.  As an initial matter, Texas law does not recognize a cause of action for aiding and abetting common law fraud separate and apart from conspiracy.  Moreover, even if such a claim did exist under Texas law, Plaintiffs have failed to allege facts sufficient to support aiding and abetting liability under Rules 8(a) or 9(b).

**1.    Aiding and Abetting Common Law Fraud Is Not a Cognizable Claim Under Texas Law**

Although the Supreme Court of Texas has not decided the issue, lower state and federal courts have concluded that "Texas law does not recognize a tort in aiding and abetting fraud that is distinct from conspiracy to commit fraud."[49]  Accordingly, Plaintiffs' aiding and abetting common law fraud claim should be dismissed.

---

[48]  *Id.* at 1951; *accord Melder,* 27 F.3d at 1104 n.10 (affirming dismissal because the assertion "that the underwriters would put their valuable professional reputation at risk to ostensibly 'profit' from two relatively minor securities offerings presents an inference of irrationality we refuse to indulge"); *DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir. 1990) ("Fees for two years' audits could not approach the losses E&W would suffer from a perception that it would muffle a client's fraud.").

[49]  Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc., 2008 WL 3925272, at *14 (N.D. Tex. 2008) (dismissing claim for aiding and abetting common law fraud); accord O'Kane v. Coleman, 2008 WL 2579832, at *5 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[Plaintiff] does not cite any Texas law recognizing aiding and abetting as a cause of action separate from conspiracy or separate from the underlying wrongful act, and we have found none."); see also Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 583 n.7 (Tex. 2001) (declining to decide question of whether Texas law recognizes a claim for aiding and abetting common law fraud).

      **2.**      **To the Extent Such A Claim Exists Under Texas Law, Plaintiffs Have Failed to Plead Facts to Support Aiding and Abetting Liability Under Rules 8(a) or 9(b)**

Even if a claim for aiding and abetting common law fraud existed under Texas law, Plaintiffs have not alleged facts sufficient to state such a claim.  Like conspiracy to commit common law fraud, claims of aiding and abetting common law fraud are subject to the strict pleading requirements of Rule 9(b).[50]  As discussed below, in jurisdictions that recognize the existence of such a claim, the essential elements include that the alleged aider and abetter had actual knowledge of the fraud and provided substantial assistance to it.  Here, Plaintiffs have failed to allege specific facts that could support a plausible inference that either of these elements exists.

      **a.**      **Plaintiffs Have Failed to Adequately Allege that Trustmark Had Actual Knowledge of the Scheme**

Under the law of jurisdictions that recognize a cause of action for aiding and abetting fraud, an essential element of such a claim is that the defendant had <u>actual knowledge</u> of the underlying fraud.[51]  As explained in Part IV(A)(1), *supra*, Plaintiffs have failed to allege <u>any</u> specific facts that could form the basis of a plausible inference that Trustmark had actual knowledge of the alleged Stanford fraud.  Accordingly, Plaintiffs' and aiding abetting common law fraud claim should be dismissed.

---

[50]  *See, e.g.*, *In re Enron Corp.*, 540 F. Supp. 2d at 833 (stating that there is "no issue about the well established application of Rule 9(b)" to a claim for aiding and abetting common law fraud); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) (dismissing under Rule 9(b) a claim that banks aided and abetted their customer's fraud where the plaintiff had not alleged specific acts or omissions by the defendant banks or their officers that would give rise to such culpability).

[51]  *See, e.g.*, *Aetna Cas. & Surety Co. v. Leahy Const. Co.*, 219 F.3d 519, 536 (6th Cir. 2000) ("We stress that the requirement is actual knowledge . . . and therefore evidence establishing negligence, i.e., that a [defendant] 'should have known,' will not suffice."); *In re Enron Secs., Derivative & "ERISA" Litig.*, 511 F. Supp. 2d 742, 804 (S.D. Tex. 2005) (noting, in a discussion of scienter for aiding and abetting, that "the proof must demonstrate actual awareness of the party's role in the fraudulent scheme"); *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252-53 (S.D.N.Y. 2005) (holding that, under New York law, "[t]he knowledge requirement of an aiding and abetting fraud claim is satisfied by alleging actual knowledge of the underlying fraud").

b.     **Plaintiffs Have Failed to Adequately Allege that Trustmark Provided "Substantial Assistance" to Stanford's Alleged Fraud**

In addition to actual knowledge of the fraud, jurisdictions that recognize a cause of action for aiding and abetting fraud also require, as an essential element of such a claim, a showing that the defendant provided "substantial assistance" to the alleged fraud.[52]  Here, the only allegations that Plaintiffs make concerning Trustmark's alleged "assistance" to the Stanford fraud are that:

> Trustmark received daily bundles of checks that Class members intended for deposit in SIBL in Antigua.  Those checks were deposited in SIBL accounts at Trustmark, and later distributed to other Stanford entities and put to the private use of Allen Stanford. . . .
>      . . .
> Trustmark held and managed numerous Stanford operating accounts, including a SIBL "sweep" account, which sent: (i) approximately $295 million to SIBL's account at TD Bank during 2008; (ii) approximately $66 million to an SIBL client account at Trustmark; (iii) $32 million to an SIBL Vendor Account at Trustmark; and (iv) approximately $2 million to the SIBL Payroll Account at Trustmark.
>      . . .
> Upon information and belief, Trustmark received large and highly suspicious wire transfers from HSBC and TD Bank of funds that were received by those institutions from members of the Class and intended for deposit with SIBL in Antigua.
> Upon information and belief, Class members who paid by check in U.S. dollars sent their checks to SIBL in Antigua, where those checks were bundled and sent daily to Trustmark National Bank in Houston, Texas, for deposit there.
>      . . .
> Upon information and belief, numerous large transfers of funds were made from SIBL's accounts at Trustmark to other Stanford entities, "invested" in Allen Stanford's private ventures, used to fund Allen Stanford's lavish lifestyle, and reinvested in the criminal venture to keep the fraudulent scheme in operation.[53]

In short, Plaintiffs have alleged only that Trustmark provided routine banking services to Stanford and that Stanford then used its bank accounts at Trustmark to move funds in the course of carrying out its allegedly fraudulent scheme.  However, numerous courts have held that

---

[52]  *See, e.g.*, *Leahy Const. Co.*, 219 F.3d at 537 ("[I]n order to establish aiding and abetting liability, a plaintiff must prove that the defendant provided 'substantial assistance or encouragement to the primary party in carrying out the tortuous act.'"); *Winnick*, 406 F. Supp. 2d at 256 (same).

[53]  Am. Pet. at p. 4 (Preliminary Statement) and ¶¶ 130, 132-34.

allegations that a principal tortfeasor used bank accounts to perpetrate a fraud are insufficient to satisfy the essential element of "substantial assistance" on the part of a bank in the context of aiding and abetting fraud.[54]    Accordingly, even if Texas recognized a cause of action for aiding and abetting common law fraud, which it does not, Plaintiffs' claim would still be subject to dismissal for failing to adequately allege the essential element of substantial assistance by Trustmark.

### 3.    Plaintiffs' Aiding and Abetting Fraud Claim Is Implausible on Its Face

Finally, for the same reasons as set forth in Part IV(A)(3), *supra*, Plaintiffs' aiding and abetting fraud claim must be dismissed because it is, on its face, utterly implausible.

### C.    Fraudulent Transfer—Plaintiffs Claims Should Be Dismissed Because (1) They Are Barred by the Receivership Order and (2) They Fail to Adequately Allege Numerous Essential Elements

Plaintiffs' remaining claims seek to recover unspecified "fees and other monies" allegedly paid to Trustmark as a result of "provid[ing] banking services to Stanford."[55]   Plaintiffs contend that these payments are avoidable as fraudulent transfers under §§ 24.005(a)(1), 24.005(a)(2), and 24.006(a) of the Texas Business and Commerce Code (the Texas Uniform

---

[54]   *See, e.g.*, *Metz v. Unizan Bank*, 2008 WL 2017574, at *19 (N.D. Ohio 2008) (no substantial assistance by banks where complaint alleged only that the banks "opened accounts for [the alleged fraudfeasor] and processed Plaintiffs' checks; no other assistance is alleged."); *Ryan v. Hunton & Williams*, 2000 WL 1375265, at *9 (E.D.N.Y. 2000) (no substantial assistance by bank that opened accounts and approved transfers from accounts for fraudfeasor); *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, 1999 WL 558141, at *8 (S.D.N.Y. 1999) (no substantial assistance by bank where alleged fraudfeasor opened and used accounts at bank to move funds in furtherance of fraud); *Williams v. Bank Leumi Trust Co.*, 1997 WL 289865, at *5 (S.D.N.Y. 1997) (no substantial assistance by bank where fraudfeasor opened accounts at bank and used accounts to make transfers to accomplish the fraud); *see also Bane v. Sigmundr Exploration Corp.*, 848 F.2d 579, 580-82 (5th Cir. 1988) (dismissing claim for aiding and abetting statutory securities fraud because the defendant bank "did nothing more than engage in routine banking transactions including extension of financing to investors and thus had not lent knowing substantial assistance to the fraudulent scheme." (emphasis added)).

[55]   Am. Pet. ¶¶ 81-82.

Fraudulent Transfer Act).[56]   These claims are meritless on their face and must be dismissed because:

> (i)      Plaintiffs' attempt to recover sums allegedly transferred by SIBL violates the Court's receivership order because such claims, to the extent they exist, are estate assets over which the Receiver has been granted exclusive authority and control;

> (ii)     Plaintiffs' §§ 24.005(a)(2) and 24.006(a) claims are not supported by allegations of fact sufficient to allow a plausible inference that SIBL received less than reasonably equivalent value in exchange for the fees allegedly paid to Trustmark;

> (iii)    Plaintiffs' § 24.005(a)(1) claim is not supported by allegations of fact sufficient to allow a plausible inference that the fees allegedly paid to Trustmark were made with actual intent to hinder, delay, or defraud creditors; and

> (iv)    Plaintiffs have failed to allege facts showing that they were creditors of SIBL in the time periods required to establish a claim under §§ 24.005(a)(1), 24.005(a)(2), and 24.006(a).

Each of these infirmities is addressed in turn below.[57]

## 1.      Plaintiffs' Fraudulent Transfer Claims Violate the Receivership Order and Should Be Dismissed

This Court's receivership order (the "Receivership Order") provides that: (i) this Court shall have exclusive jurisdiction over all the assets and records of the Defendants;[58] (ii) the

---

[56]   *See id.* ¶¶ 80-97. Plaintiffs also purport to assert fraudulent transfer claims "under the common law." *Id.* at pp. 24-26 (captions for Counts One, Two, and Three). No such common law claim exists under Texas law. *See Cadle Co. v. Wilson*, 136 S.W.3d 345, 353 (Tex. App.—Austin 2004, no pet.) (explaining that the Texas Uniform Fraudulent Transfer Act is the exclusive fraudulent transfer remedy under Texas law for transfers occurring from and after the Act's September 1, 1987 effective date).

[57]   It is clear from the face of Plaintiffs' pleadings that their fraudulent transfer claims seek to avoid only the sums allegedly paid directly to Trustmark by Stanford. *See, e.g.*, Am. Pet. at p. 4 (alleging that "each of the Defendants collected substantial fees and other payoffs," "[e]very dollar that was paid to the Defendants by SFG was paid in furtherance of Stanford's scheme to defraud," and "[a]s a result, all such payments are recoverable by SFG's creditors as fraudulent transfers"). Plaintiffs have not claimed that Trustmark is subject to liability as a fraudulent transferee of the broader universe of funds that were not paid to Trustmark but that instead merely passed through Stanford's accounts at Trustmark. To the extent that Plaintiffs ever made such a claim, it would be barred by the well-established rules that banks, such as Trustmark, are not "transferees" subject to liability as the receipt of a fraudulent transfer of funds that merely pass through customer accounts over which the banks do not have dominion and control. *See, e.g.*, *Bonded Fin. Serv., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988); *GE Capital Commercial, Inc. v. Wright & Wright, Inc*, 2009 WL 5173954, at *6 (N.D. Tex. 2009); *see also Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993).

[58]   *See* Amended Order Appointing Receiver (Dkt. No. 157 in Case No. 3-09-CV-0298-N) ¶ 1 ("This Court assumes exclusive jurisdiction and takes possession of the assets, securities, properties, real and personal, tangible and

Receiver shall have exclusive possession and control of the assets of the Receivership Estate;[59] and (iii) creditors, such as Plaintiffs, shall be and are enjoined from taking any act to obtain possession of any asset of the Receivership Estate.[60]   Among the assets included in the Receivership Estate, over which the Receiver has been granted exclusive possession and control, are any and all causes of action to recover assets of the estate, including fraudulent transfer actions seeking recovery of payments made by SIBL and other Stanford related entities.[61]

Thus, Plaintiffs' attempt to prosecute fraudulent transfer claims, and thereby recover for themselves the sums allegedly paid by SIBL to Trustmark, violates the Receivership Order, specifically the Court's injunction barring creditors from attempting to take possession of and

---

intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to the entities) of the Defendants and all entities they own or control ('Receivership Assets')."); *see also id.* at 1 (defining "Defendants" whose assets are subject to the Receivership Order as SIBL; Stanford Group Company; Stanford Capital Management, LLC; Stanford Financial Group; Stanford Financial Group Bldg Inc.; Robert Allen Stanford; James M. Davis; and Laura Pendergest-Holt).

[59]  *Id.* ¶¶ 4, 5(c) ("Receiver is authorized to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate . . . [and] is specifically directed and authorized to . . . [i]nstitute such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets . . . traceable to the Receivership Estate."); *see also id.* ¶ 2 (defining the "Receivership Estate" as the "Receivership Assets" combined with the "Receivership Records").

[60]  *Id.* ¶ 10(a) ("Creditors and all other persons are hereby restrained and enjoined, without prior approval of the Court, from: Any act to obtain possession of the Receivership Estate assets . . . .").

[61]  *Id.* ¶ 5(c) (directing the Receiver to "[i]nstitute such action or proceedings to . . . recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate"); *see also Donell v. Kowell*, 533 F.3d 762, 776-77 (9th Cir. 2008) (where corporation operated as a Ponzi scheme is placed in receivership, receiver has standing to assert fraudulent transfer claims to recover payments made by the corporation because the receiver is "suing to redress injuries that [the corporation] suffered when its managers caused [the corporation] to commit waste and fraud."); *Scholes v. Lehmann*, 56 F.3d 750, 753-55 (7th Cir. 1995) (same); *SEC v. Cook*, 2001 WL 256172, *2 (N.D. Tex. 2001) ("[T]he Court holds that the Receiver has standing to sue to avoid fraudulent transfers on behalf of the creditors of [the Ponzi entity].").

exercise control over receivership property.[62]   For this reason, Plaintiffs fraudulent transfer claims should be dismissed.[63]

> ### 2.   Plaintiffs Have Failed to Allege Facts Sufficient to Satisfy Essential Elements of Their Fraudulent Transfer Claims

Even if the fraudulent transfer claims that Plaintiffs attempt to assert against Trustmark were not property of the estate, they would still be subject to dismissal because Plaintiffs have failed to allege facts sufficient to establish essential elements of these claims.   Specifically, Plaintiffs have failed to adequately allege (i) that SIBL received less than reasonably equivalent value in exchange for the alleged transfers to Trustmark, an essential element of Plaintiffs' §§ 24.005(a)(2)  and 24.006(a)  claims; (ii) that the alleged transfers were made with actual intent to hinder, delay, or defraud creditors, an essential element of Plaintiffs' § 24.005(a)(1) claim; and (iii) that Plaintiffs were creditors of SIBL at the times necessary to recover under §§ 24.005(a)(1), 24.005(a)(2) , and 24.006(a) .  Each of these infirmities is discussed below.

> #### a.   Plaintiffs' Have Failed to State a Claim Under §§ 24.005(a)(2) and 24.006(a) Because They Have Not Alleged Facts Sufficient to Raise a Plausible Inference that SIBL Received Less Than Reasonably Equivalent Value

An essential element of Plaintiffs' claims under §§ 24.005(a)(2)  and 24.006(a) of the Texas Uniform Fraudulent Transfer Act is that the alleged transfers at issue were made by SIBL to Trustmark "without receiving a reasonably equivalent value in exchange for the transfer."[64]

---

[62]   *See* Amended Order Appointing Receiver ¶ 10(a) ("Creditors and all other persons are hereby restrained and enjoined, without prior approval of the Court from: Any act to obtain possession of the Receivership Estate assets . . . .").

[63]   *See Kane v. Rose*, 2007 WL 4393917, at *1-2 (11th Cir. 2007) (holding that dismissal of claims without prejudice was the proper remedy where claims filed in violation of anti-litigation injunction in receivership order in SEC-initiated receivership action); *SEC v. Private Equity Mgmt Group*, 2010 WL 1576737, at *4 (C.D. Cal. 2010) (dismissing claims filed in violation of anti-litigation injunction in receivership order in SEC-initiated receivership action).

[64]   TEX. BUS. & COMM. CODE ANN. §§ 24.005(a)(2), 24.006(a) (Vernon 2010).

Therefore, to meet the pleading requirements of Federal Rule of Civil Procedure 8(a), as set forth by the Supreme Court in *Twombly* and *Iqbal*, Plaintiffs' petition must allege "factual content that allows the court to draw the reasonable inference" that Trustmark did not give reasonably equivalent value in exchange for the alleged transfers.[65]  As the Supreme Court has made clear, this standard is not met by pleading mere "labels and conclusions and a formulaic recitation of the elements of a cause of action will not do."[66]

Here, Plaintiffs' <u>sole</u> allegation with respect to the issue of reasonably equivalent value is its conclusory assertion that:

> Upon information and belief, Stanford paid all such fees and other monies to the Defendants in connection with the scheme without receiving a reasonably equivalent value in exchange for the transfers.[67]

No description of the fees allegedly paid to Trustmark is provided.  Nor is any factual basis given to support the conclusion that the "banking services"[68] allegedly provided by Trustmark were not of a reasonably equivalent value to the amounts allegedly paid by SIBL.[69]  Instead, Plaintiffs offer only the bare allegation that the transfers were made "without receiving a reasonably equivalent value in exchange for the transfers."[70]  This is exactly the type of "formulaic recitation of the elements of a cause of action" that the Supreme Court has made clear

---

[65] *Iqbal*, 129 S. Ct. at 1949.

[66] Twombly, 127 S. Ct. at 1965.

[67]  Am. Pet. ¶¶ 89, 93.  This allegation is not only conclusory, it is also is an impermissible group pleading that is entitled to no weight.  *See Southland*, 365 F.3d at 365; *Timberlake*, 2009 WL 926990, at *7.

[68]  Am. Pet. ¶ 81.

[69]  The only nonconclusory factual allegation that Plaintiffs do provide—that Trustmark "provided banking services to Stanford"—rebuts rather than supports the notion that Trustmark did not provide reasonably equivalent value in return for the sums allegedly received by it.  Am. Pet. ¶ 81 ("At all relevant times Defendants provided banking services to Stanford.").

[70]  *Id.* ¶¶ 89, 93.

"will not do" and will not satisfy the pleading requirements of Rule 8(a).[71]  Indeed, in precisely the circumstances presented here, federal courts have dismissed constructive fraudulent transfer claims where plaintiffs failed to allege specific facts on which a court could plausibly infer that the disputed transfer was made without receiving reasonably equivalent value.

For example, in *In re Caremerica*, a bankruptcy trustee sought to avoid a transfer under 11 U.S.C. § 548(a)(1)(B),[72] the bankruptcy code corollary to §§ 24.005(a)(2) and 24.006(a) of the Texas Uniform Fraudulent Transfer Act.[73]  There, as here, the plaintiff alleged nothing more than the bare conclusion that the transferors "received less that reasonably equivalent value in exchange from the defendant for such fraudulent transfer."[74]  Applying *Twombly* and *Iqbal*, the court dismissed the fraudulent transfer claim holding that the trustee had failed to state a claim because the complaint did not include "an identification of the consideration received by the transferor [and] information as to why the value of such consideration was less than the amount transferred."[75]  As the *Caremerica* court explained, "[i]n the absence of such factual assertions, the trustee's claims based on constructive fraud fail to met the Rule 8 pleading standard."[76]

The same is true here.  Plaintiffs allege no specific facts to support their assertion that Trustmark did not provide reasonably equivalent value in exchange for the sums allegedly received by it.  They have not alleged what specific dollar amounts Trustmark received.  More

---

[71] Twombly, 127 S. Ct. at 1965.

[72] *In re Caremerica*, 409 B.R. 737, 755-56 (Bankr. E.D.N.C. 2009).

[73] *Compare* 11 U.S.C. § 548(a)(1)(B) (2010) (federal bankruptcy code claim for fraudulent transfer including as an essential element that the transferor "received less than a reasonably equivalent value in exchange for such transfer") *with* TEX. BUS. & COMM. CODE ANN. §§ 24.005(a)(2), 24.006(a) (same).

[74] In re Caremerica, 409 B.R. at 756.

[75] *Id.*

[76] *Id*; *see also In re Image Masters, Inc.*, 421 B.R. 164, 179-80 (Bankr. E.D. Penn. 2009) (dismissing the trustee's claim for failing to satisfy Rule 8(a) where allegations regarding the transferee proving less than reasonably equivalent value were nothing more than "a threadbare, formulaic recitation of the elements of a cause of action for avoidance of a fraudulent transfer based on constructive fraud").

importantly, the have they not alleged why the value of the "banking services" (which Plaintiffs acknowledge Trustmark provided[77]) was not reasonably equivalent to the sums allegedly paid by SIBL.  Instead, Plaintiffs offer only a formulaic recitation of this element of their causes of action.[78]   As the Supreme Court has explained, this "will not do."[79]   Accordingly, Plaintiffs' claims under §§ 24.005(a)(2) and 24.006(a) of the Texas Uniform Fraudulent Transfer Act should be dismissed for failing to meet the requirements of Rule 8(a).

> **b.      Plaintiffs Have Failed to State a Claim Under § 24.005(a)(1) Because They Have Not Alleged Facts Sufficient to Raise a Plausible Inference that the Alleged Transfers to Trustmark Were Made with Actual Intent to Hinder, Delay, or Defraud Creditors**

An essential element of Plaintiffs' claim under § 24.005(a)(1) ) of the Texas Uniform Fraudulent Transfer Act is that the alleged transfers to Trustmark were made by SIBL "with actual intent to hinder, delay, or defraud any creditor of the debtor."[80]   Plaintiffs attempt to satisfy this requirement by alleging that "Stanford paid all such fees and other monies to the Defendants in connection with the scheme, and with actual intent to hinder, delay, or defraud members of the Class."[81]   Beyond this bare recitation of the elements of a claim under § 24.005(a)(1)—which is entitled to no weight on a motion to dismiss—Plaintiffs offer no

---

[77]   *See* Am. Pet. ¶ 81 ("At all relevant times Defendants provided banking services to Stanford.").

[78]    Plaintiffs cannot claim that Stanford did not receive reasonably equivalent value in exchange for its alleged payments to Trustmark simply because Stanford was engaged in an allegedly fraudulent scheme.  *See In re Churchill*, 256 B.R. 664, 681 (Bankr. S.D.N.Y. 2000) (rejecting argument that funds received in payment for services provided to Ponzi entity do not provide value simply because a Ponzi scheme is driven further into insolvency with each transaction it engages in).

[79]   Twombly, 127 S. Ct. at 1965.

[80]   TEX. BUS. & COMM. CODE ANN. § 24.005(a)(1).

[81]    Am. Pet. ¶ 84.  This allegation is not only conclusory, it is also is an impermissible group pleading which is entitled to no weight.  *See Southland*, 365 F.3d at 365; *Timberlake*, 2009 WL 926990, at *7.

allegations or explanations as to how the Court could plausibly infer that the alleged payments to Trustmark were made with actual intent to hinder, delay or defraud creditors.[82]

As Plaintiffs' petition acknowledges, the alleged transfers at issue were paid to Trustmark because it "provided banking services to Stanford,"[83] which consisted of Trustmark being the institution at which SIBL held various accounts used by it to conduct aspects of its business.[84]  In other words, Plaintiffs have alleged nothing more than that Trustmark was a vendor who provided ordinary, correspondent banking services to SIBL and was paid for them.  Nothing in these allegations could be the basis for a plausible inference that the routine banking fees paid to Trustmark were made with actual intent to hinder, delay, or defraud creditors.

What Plaintiffs do allege, in some detail, is that SIBL was involved in a fraudulent scheme to defraud Plaintiffs and other investors.  Thus, it appears that Plaintiffs are attempting to rely on those authorities which hold that "[e]vidence of a fraudulent scheme is sufficient circumstantial evidence to establish actual intent [to hinder, delay, or defraud] with respect to transfers made in furtherance of the fraudulent scheme."[85]

However, these authorities require that the transfer at issue was actually made "in furtherance of the fraudulent scheme,"[86] an inference that cannot plausibly be drawn here based on Plaintiffs' allegations.  Indeed, the payments by SIBL to Trustmark for ordinary "banking services" can no more be said to have been made "in furtherance of a fraudulent scheme" than were the payments that SIBL made to its stationary vendor whose paper SIBL used to

---

[82]  *See Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statement, do not suffice.").

[83]  Am. Pet. ¶ 81.

[84]  *Id*. at p. 4 and ¶ 130.

[85]  *In re IFS Financial Corp.*, 417 B.R. 419, 439 (Bankr. S.D. Tex. 2009).

[86]  *Id*. (emphasis added).

disseminate its allegedly false and misleading securities solicitations.   If the law views the payments to Trustmark as having been made "in furtherance of a fraudulent scheme," then <u>every</u> vendor who provides goods or services of any kind to a person or entity that is later shown to have used those goods or services in some way in connection with a fraudulent scheme is presumptively assumed to have been the recipient of a fraudulent transfer.   Worse still, every such vendor would be subject to being hauled into court where it would bear the burden of proof (as well as the burden of litigation costs) to prove its innocence or be forced to disgorge the sums it received.[87]

Trustmark respectfully submits that this is not the law.   Plaintiffs' allegations that Trustmark was paid for routine, ordinary, and unremarkable "banking services" do not raise a plausible inference that these payments were made "in furtherance of" SIBL's allegedly fraudulent scheme.[88]   Indeed, as one court has put it:

> The fact that the debtor's enterprise as a totality is operated at a loss, or in a manner that is fraudulent, does not render actually or constructively fraudulent a particular transaction which in and of itself is not fraudulent in any respect.[89]

Rather, "a plaintiff must set forth factual allegations of fraudulent intent in connection with the specific transfer sought to be avoided and must show some direct connection between a defendant and a debtor's fraudulent Ponzi scheme."[90]   Here, Plaintiffs' allegations in support of their § 24.005(a)(1) claim do not meet this standard and therefore should be dismissed.

---

[87]   Under the Texas Uniform Fraudulent Transfer Act, once a transfer is determined to have been made with actual intent to hinder, delay, or defraud a creditor, the burden then shifts to the recipient to establish the affirmative defense that he took in good faith and for reasonably equivalent value.   *See* TEX. BUS. & COMM. CODE ANN. § 24.009(a) (affirmative defense of good faith and reasonably equivalent value to claim for avoidance under § 24.005(a)(1)); *Hahn v. Love*, 2009 WL 793637, at *6 (Tex. App—Houston [1st Dist.] 2009, pet. denied) (explaining that defendants bear the burden of proof under § 24.009(a) to establish good faith and reasonably equivalent value).

[88]   In re IFS Financial Corp., 417 B.R. at 439.

[89]   *In re Image Masters*, 421 B.R. at 186-87.

[90]   *Id*. at 186.

      **c.**      **Plaintiffs' §§ 24.005(a)(1), 24.005(a)(2), and 24.006(a) Claims Fail Because They Fail to Allege that Plaintiffs Were Creditors of SIBL at the Time of, or Within a Reasonable Time After, the Transfers at Issue**

In order to state a claim for relief under § 24.006(a) of the Texas Uniform Fraudulent Transfer Act, a plaintiff must plead and prove that it was a creditor "whose claim arose before the transfer was made" by the transferor.[91]  Sections 24.005(a)(1) and 24.005(a)(2) require that a plaintiff plead and prove that it was a creditor whose "claim arose before or within a reasonable time after the transfer was made" by the transferor.[92]

Here, Plaintiffs have not alleged when any of their claims against SIBL arose.  Nor have they alleged when any of the alleged transfers to Trustmark, which they seek to avoid, took place.  Thus, Plaintiffs have not alleged, as required to state a claim under § 24.006(a), that their claims against SIBL arose before an alleged transfer to Trustmark was made.  Nor have they alleged, as required to state claims under §§ 24.005(a)(1) ) and 24.005(a)(2) , that their claims against SIBL arose before or within a reasonable time after an alleged transfer to Trustmark was made.  Accordingly, because Plaintiffs have failed to allege facts essential to state a claim for relief under §§ 24.005(a)(1), 24.005(a)(2), and 24.006(a), these claims should be dismissed.

      **D.**      **Plaintiffs' Class Action Allegations Should Be Dismissed Because It Is Facially Apparent From Plaintiffs' Amended Petition that the Prerequisites for a Class Action Cannot Be Met**

Even if Plaintiffs' individual claims could survive dismissal, which they cannot, the class claims that Plaintiffs purport to assert should nonetheless be dismissed.  This is so because, where it is apparent from the face of the pleadings that a putative class cannot be certified to

---

[91] Tex. Bus. & Comm. Code Ann. § 24.006(a).

[92] *Id.* § 24.005(a)(1)-(2).

prosecute claims on behalf of the class that the plaintiff purports to represent, dismissal of the class claims pursuant to Rule 12(b)(6) is the appropriate remedy.[93]

Here, as discussed below, it is apparent from the face of Plaintiffs' petition that class claims cannot be certified against Trustmark on behalf of the class of Stanford investors that Plaintiffs purport to represent for either (i) conspiracy to commit fraud and aiding and abetting fraud or (ii) fraudulent conveyance.  Accordingly, these class claims should be dismissed.

### 1.      Plaintiffs Cannot Certify a Class for Conspiracy to Commit Fraud or Aiding and Abetting Fraud

An essential element of Plaintiffs' claims for conspiracy to commit fraud and aiding and abetting fraud is that there was an underlying fraud committed by Stanford[94] and that, as part of that fraud, each putative class member individually relied on Stanford to their detriment.[95] Plaintiffs attempt to satisfy this requirement by alleging that "Plaintiffs and other members of the Class reasonably relied" on various alleged misrepresentations by Stanford."[96]   However, it is well established that "a fraud class action cannot be certified when individual reliance will be an issue."[97]   Here, individual reliance—i.e., whether each putative class member did in fact rely on an alleged misrepresentation by Stanford—is plainly an issue, meaning that a class action

---

[93]   *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 444 (5th Cir. 2007) ("Where it is facially apparent on the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings."); *Xavier v. Belfor USA Group, Inc.*, 2009 WL 411559, at *4-5 (E.D. La. 2009) (dismissing class allegations for failing to state claims which could be certified as a class when the face of the pleadings showed that individualized issues predominated over common issues); *Robinson v. Wal-Mart Stores, Inc.*, 253 F.R.D. 396, 400-02 (S.D. Miss. 2008) (same).

[94]   *See Ernst & Young, L.L.P. v. Pacific Mut'l Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001) (holding that the failure of the underlying fraud claim defeats claims for conspiracy to commit fraud and aiding and abetting fraud).

[95]   *See Schlumberger Tech. Co. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) (holding that reliance is an element of fraud, including fraud by nondisclosure).

[96]   Am. Pet. ¶¶ 33, 36, 38, 43, 48, 56, 62, 74 (alleging reliance by "Plaintiffs and other members of the Class" on various alleged misrepresentations by Stanford).

[97]   *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996); *accord McManus v. Fleetwood Enters., Inc.*, 320 F.3d at 545, 549 (5th Cir. 2003); *Patterson v. Mobil Oil Corp.*, 241 F.3d 417, 419 (5th Cir. 2001); *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882-83 (5th Cir. 1973).

premised on the existence of a fraud <u>cannot</u> be certified.   Accordingly, Plaintiffs' class allegations as to their conspiracy and aiding and abetting claims should be dismissed.[98]

### 2. Plaintiffs Cannot Certify a Class for Fraudulent Conveyance

Plaintiffs' fraudulent conveyance claims likewise cannot be certified as a class action because, on the face of Plaintiffs' petition, their putative class is under-inclusive.   Plaintiffs' proposed class consists of individuals and entities that had money on deposit at SIBL and/or held CDs issued by SIBL as of February 16, 2009.[99]   Through their fraudulent conveyance claims, Plaintiffs seek "the avoidance of the transfers [*i.e.* all "fees and other monies" paid to Trustmark] necessary to satisfy the Class's claims against Stanford."[100]   In other words, Plaintiffs seek to certify a class that consists of not all Stanford's creditors but only those Stanford creditors who were SIBL account and CD holders as of a specific date.

However, the United States Supreme Court has made clear that, where a proposed class seeks recovery of a limited fund of money, under-inclusiveness of the class will preclude certification.[101]   This is so because, in order to certify such a class, it is "presumptively necessary" that "claimants identified by a common theory of recovery [be] treated equitably

---

[98]   Plaintiffs who fail to plead facts sufficient to demonstrate that the prerequisites of Rule 23 are met are also subject to having their class allegations stricken pursuant to Rule 12(f) and/or Rule 23(d)(1)(D). *See, e.g.*, *Beardon v. Honeywell Int'l Inc.*, 2010 WL 1223936, at \*9 (M.D. Tenn. 2010) (striking class allegations and noting that courts may rely on Rule 12(f) or Rule 23(d)(1)(D) in doing so); *Markey v. La. Citizens Fair Plan*, 2008 WL 5427708, at \*1-2 (E.D. La. 2008) (striking class allegations pursuant to Rule 23(d)(1)(D) and citing other Fifth Circuit cases that dismissed or struck meritless class allegations); *Hedgepeth v. Blue Cross & Blue Shield of Miss.*, 2006 WL 141624, at \*1-2 (N.D. Miss. 2006) (striking class actions without indication of which Rule was relied on); *see generally Read v. Input/Output, Inc.*, 2005 WL 2086179, at \*2 (S.D. Tex. 2005) (observing that courts have authority to strike class allegations under both Rule 12(f) and Rule 23(d)); *Gloria v. Allstate Cty. Mut. Ins. Co.*, 2000 WL 35754563, at \*8-9 (W.D. Tex. 2000) (striking class allegations pursuant to Rule 12(f)).   Accordingly, Trustmark requests, in the alternative to its request that Plaintiffs' class allegations be dismissed pursuant to Rule 12(b), that those allegations be stricken pursuant to Rule 12(f) and/or Rule 23(d)(1)(D). *See generally* FED R. CIV. P. 12(f) ("The court may strike . . . any immaterial . . . matter."); *id.* at Rule 23(d)(1)(D) ("[T]he court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.").

[99]   *See* Am. Pet. ¶ 23.

[100]   *Id.* ¶¶ 87, 91, 97.

[101]   *See Ortiz v. Fibreboard Corp.*, 119 S. Ct. 2295, 2323 (1999).

among themselves;" that "the class will comprise everyone who might state a claim on a single or repeated set of facts, invoking a common theory of recovery;" and that any recovery will be "distributed to satisfy all those with liquidated claims based on [that] common theory of liability."[102]

Here, Plaintiffs attempt to assert fraudulent transfer claims on behalf of a class of some, but not all, Stanford creditors violates the requirement that a limited fund class not omit anyone sharing a common theory of liability. Accordingly, Plaintiffs' fraudulent transfer class claims should be dismissed on the ground that Plaintiffs' proposed class is, on the face of the pleadings, under-inclusive.

## V. INCORPORATION OF ARGUMENTS MADE BY CO-DEFENDANT BANKS

In this lawsuit, Plaintiffs have asserted the same claims and causes of action at issue against four other banks: HSBC, TD Bank, SGPB Suisse, and BoH. Contemporaneously with the filing of this motion, each of these Defendant Banks have also filed motions to dismiss the claims asserted against them pursuant to Rule 12(b)(6). Trustmark hereby incorporates by reference the arguments and authorities presented in those motions as additional grounds for the dismissal of Plaintiffs' claims against it.

## VI. CONCLUSION

For the foregoing reasons, all of the Plaintiffs' claims against Trustmark should be dismissed with prejudice in their entirety.

---

[102] Id. at 2311-12; see also In re Simon II Litig., 407 F.3d 125, 136-38 (2d Cir. 2005); In re Katrina Canal Breaches Consol. Litig., 263 F.R.D. 340, 347-48 (E.D. La. 2009); In re Complaint of River City Towing Serv., Inc., 204 F.R.D. 94, 95-96 (E.D. La. 2001); In re Diet Drugs Prod. Liab. Litig., 1999 WL 782560, at *6-10 (E.D. Pa. 1999).

Respectfully submitted,

**GIBBS & BRUNS, LLP**

By: __/s/ Robin C. Gibbs_____
Robin C. Gibbs
State Bar No. 07853000
Robert J. Madden
State Bar No. 07853000
Jeffrey C. Kubin
State Bar No. 24002431
Ashley McKeand
State Bar No. 24060263
1100 Louisiana, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

*Counsel for Defendant Trustmark National Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2010, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

__/s/ Robin C. Gibbs_____
Robin C. Gibbs

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, GUTHRIE ABBOTT, CATHERINE BURNELL, STEVEN QUEYROUZE, JAIME ALEXIS ARROYO BORNSTEIN, and JUAN C. OLANO, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, SG PRIVATE BANKING (SUISSE) S.A., and BANK OF HOUSTON,<br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § § | Civil Action No. 3:09-cv-02384<br><br>JURY TRIAL DEMANDED |

**[PROPOSED] ORDER**

On this day, the Court considered Defendant Trustmark National Bank's Motion to Dismiss. The Court finds that the motion is meritorious and should be granted.

Therefore, IT IS HEREBY ORDERED that Defendant Trustmark National Bank's Motion to Dismiss is GRANTED and all claims against Trustmark National Bank are hereby dismissed with prejudice.

SIGNED this _____ day of _____, 2010.

_____
Hon. David C. Godbey
United States District Judge