**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

------------------------------------------------------------------- x

PEGGY ROIF ROTSTAIN, *et al.*, *on behalf of*
*themselves and all others similarly situated*,

                     Plaintiffs,

                -against-

TRUSTMARK NATIONAL BANK, HSBC BANK
PLC, THE TORONTO-DOMINION BANK,
INDEPENDENT BANK F/K/A BANK OF
HOUSTON, SG PRIVATE BANKING (SUISSE)
S.A., and BLAISE FRIEDLI,

                   Defendants.

:
:
:
:
:  Case No. 3:09-CV-02384-N
:
:
:
:
:
:
:
:
:

------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF THE TORONTO-DOMINION BANK**
**AND INDEPENDENT BANK'S JOINT MOTION TO DISMISS**
**THE SECOND AMENDED CLASS ACTION COMPLAINT**
**PURSUANT TO RULE 12(b)(6) AND RULE 9(b)**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ......................................................................................2

ARGUMENT............................................................................................5

    I.    Plaintiffs' TSA Claim Should Be Dismissed ........................................5

        A.    The TSA's Statute of Repose is "Absolute" and Bars Plaintiffs' TSA Claim ..........................................................................................5

        B.    The TSA's Three-Year Statute of Limitations Also Bars Plaintiffs' Claim ....................................................................................9

        C.    Plaintiffs' TSA-Related Claim Lacks Particularity and Fails to State a Claim ........................................................................................11

        D.    The SAC Does Not Specify The Applicable Sections of the TSA ...........15

    II.    Plaintiffs' Aiding and Abetting a Fiduciary Breach Claim Should be Dismissed ........................................................................................16

        A.    Texas Does Not Recognize This Cause of Action ...................................16

        B.    Even If Recognized, the Four-Year Statute of Limitations Bars This Claim.............................................................................................17

        C.    Plaintiffs Do Not State a Claim for Aiding and Abetting a Fiduciary Breach ..................................................................................17

    III.    Plaintiffs' Three Other Causes of Action Should Be Dismissed ..........................25

CONCLUSION.......................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott v. Equity Grp., Inc.*, 2 F.3d 613 (5th Cir. 1993) ..............................................14

*Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477 (Tex. App.—Corpus Christi
    1989, writ denied) ...................................................................................................19

*Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252 (5th Cir. 2011) ...................14

*Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276 (Tex. 1998) ......18

*Billitteri v. Sec. Am., Inc.*, No. 09-cv-1568, 2010 WL 6785484 (N.D. Tex. July 26,
    2010).........................................................................................................................12

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355 (5th Cir.
    2005)..........................................................................................................................8

*Cleveland Const., Inc. v. Centex Const. Co., Inc.*, No. 303-cv-1437, 2005 WL
    1131168 (N.D.Tex. May 11, 2005)................................................................... 18, 19

*Cox Tex. Newspapers, L.P. v. Wooten*, 59 S.W.3d 717 (Tex. App.—Austin 2001,
    pet. denied)..............................................................................................................18

*Davis v. West*, 317 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ........19

*Dontos v. Vendomation NZ Ltd.*, No. 11-CV-0553, 2012 WL 3702044 (N.D. Tex.
    Aug. 27, 2012), *rev'd on other grounds*, 582 F. App'x 338 (5th Cir. 2014).........17

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) ................................12

*E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins.*, 137 S.W.3d 311 (Tex. App.—
    Beaumont 2004, no pet.)...........................................................................................20

*Electro Assocs., Inc. v. Harrop Constr. Co.*, 908 S.W.2d 21 (Tex. App.—Houston
    [1st Dist.] 1995, writ denied) ..................................................................................19

*Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602 (Tex. App.—Houston [14th
    Dist.] 2009, pet. denied) ..........................................................................................19

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001) .......16

*Escalon v. World Grp. Secs., Inc.*, No. 07-CV-214-CECF, 2008 WL 5572823
    (N.D. Tex. Nov. 14, 2008)..........................................................................................6

**Page(s)**

*Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624 (Tex. App.—Houston [14th Dist.] 1973, no pet.)..........................................................................................23

*FDIC v. Eagle Props., Ltd.*, 664 F. Supp. 1027 (W.D. Tex. 1985) ..............................19

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200 (5th Cir. 2009)..................................................................................................12

*Fleming v. Tex. Coastal Bank of Pasadena*, 67 S.W.3d 459 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ................................................................21

*Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ....................................................................................12

*Harris v. OSI Fin. Servs., Inc.*, 595 F. Supp. 2d 885 (N.D. Ill. 2009) ...........................8

*Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719 (Tex. App.—Houston [1st Dist.] 2012, no pet.)...........................................................12

*Highland Crusader Offshore Partners v. Lifecare Holdings, Inc.*, No. 08-CV-0102-B, 2008 WL 3925272 (N.D. Tex. Aug. 27, 2008), *aff'd on other grounds*, 377 Fed. App'x 422 (5th Cir. 2010) .......................................................16

*Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563 (5th Cir. 1985)................................10

*Holubec v. Brandenberger*, 111 S.W.3d 32 (Tex. 2003) ................................................6

*Hulliung v. Bolen*, 548 F. Supp. 2d 336 (N.D. Tex. 2008).............................................1

*In re Cmty. Bank of N. Va.*, 467 F. Supp. 2d 466 (W.D. Pa. 2006) ...............................8

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. CIV A H-01-3624, 2006 WL 3716669 (S.D. Tex. Dec. 12, 2006), *aff'd*, 535 F.3d 325 (5th Cir. 2008) ......................17

*In re Gen. Motors*, No. Civ. A. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005) ...................24

*In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477 (S.D.N.Y. 2011) .........................8

*In re NYMEX S'holder Litig.*, No. 3621-VCN, 2009 WL 3206051 (Del. Ch. Sept. 30, 2009)..................................................................................................24

*In re Telecomms., Inc.*, No. Civ. A. 16470-NC, 2003 WL 21543427 (Del. Ch. July 7, 2003).....................................................................................................25

*Ins. Co. of N. Am. v. Dealy*, 911 F.2d 1096 (5th Cir. 1990)........................................14

*Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667 (Tex. 1998)....................................18, 20

*Janvey v. Alvarado*, 10-cv-2584, slip op. (N.D. Tex. June 24, 2015)..........................22

Page(s)

*Janvey v. Democratic Sen. Campaign Comm.*, 793 F. Supp. 2d 825 (N.D. Tex. 2011) ............................................................................................................................8

*Jones v. Thompson*, 338 S.W.3d 573 (Tex. App.—El Paso 2010, pet. denied.) .........................19

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996) ........................................................16

*Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014) ..............................................................12

*Litson-Gruenber v. JPMorgan Chase & Co.*, No. 09-cv-056, 2009 WL 4884426 (N.D. Tex. Dec. 16, 2009) .................................................................................23, 24

*Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372 (Tex. 1984) .........................................11

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001) ....................................................25

*Mary E. Bivins Found. v. Highland Capital Mgmt. L.P.*, 451 S.W.3d 104 (Tex. App.—Dallas 2014, no pet.) ...............................................................................19

*Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634 (5th Cir. 2007) ...............................18

*Meyer v. Cathey*, 167 S.W.3d 327 (Tex. 2005) .........................................................19

*O'Kane v. Coleman*, No. 14-06-00657-CV, 2008 WL 2579832 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) ..................................................................16

*OSIC v. Breazeale Sachse & Wilson LLP*, 11-cv-0329, slip op. (N.D. Tex. Mar. 24, 2015).....................................................................................................7, 15

*OSIC v. Greenberg Traurig, et al.*, 12-CV-4641, slip op. (N.D. Tex. Dec. 17, 2014).........................................................................................................22

*OSIC v. Greenberg Traurig, et al.*, 12-CV-4641, slip op. (N.D. Tex. Feb. 4, 2015) ...........passim

*R2 Investments v. Phillips*, No. 02-cv-323, 2003 WL 22862738 (N.D. Tex. Mar. 26, 2003).............................................................................................................2

*Rauscher Pierce Refsnes, Inc. v. Great Southwest Sav., F.A.*, 923 S.W.2d 112 (Tex. App.–Houston [14th Dist.] 1996, no pet.)................................................21

*Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014) ....................................................18, 19

*Robbins v. Payne*, 55 S.W.3d 740 (Tex. App.—Amarillo 2001, pet. denied) ............20

*Rosner v. Bank of China*, 349 F. App'x 637 (2d Cir. 2009)........................................14

*Saito v. McCall*, No. Civ. A. 17132-NC, 2004 WL 3029876 (Del. Ch. Dec. 20, 2004).......................................................................................................24

Page(s)

*Schlifke v. SeaFirst Corp.*, 866 F.2d 935 (7th Cir. 1989)...........................................................13

*SEC v. Stanford Int'l Bank Ltd.*, 09-cv-298 (N.D. Tex. Feb. 16, 2009)....................................3, 6

*Servicios–Expoarma, C.A. v. Indus. Mar. Carriers, Inc.*, 135 F.3d 984 (5th Cir. 1998)..............................................................................................................................5

*Span Enters. v. Wood*, 274 S.W.3d 854 (Tex. App.—Houston [1st Dist.] 2008, no pet.)..........................................................................................................................16

*Sterling Trust Co. v. Adderly*, 168 S.W.3d 835 (Tex. 2005) ...............................................12, 13

*Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)...................................................19

*Town N. Bank, N.A. v. Shay Fin. Servs., Inc.*, No. 3:11-CV-3125-L, 2014 WL 4851558 (N.D. Tex. Sept. 30, 2014) ...................................................................... 11, 12, 15

*Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269 (Tex. 1995) .....................................................19

*Troice v. Proskauer Rose LLP*, 09-cv-1600 (N.D. Tex. Mar. 4, 2015) ..................................7, 15

*Troice v. Willis of Colorado, Inc.*, 09-CV-1274 (N.D. Tex. July 2, 2009) ...................................3

*U.S. v. James M. Davis*, No. 09-cr-0335-01 (S.D. Tex. Aug. 27, 2009)......................................3

*USPPS, Ltd. v. Avery Dennison Corp.*, No. SA-07-CA-963-FB, 2008 WL 7984967 (W.D. Tex. Apr. 9, 2008) .................................................................................17

*Webre v. Sneed*, 358 S.W.3d 322 (Tex.App.–Houston [1st Dist.] 2011), *aff'd*, No. 12-0045, 2015 WL 3451653 (Tex. May 29, 2015).............................................................22

*Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523 (S.D. Tex. 2011) ..................................20

*Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A.*, 181 S.W.3d 790 (Tex. App.—Waco 2005, pet. denied)................................................................................19

*Williams v. Khalaf*, 802 S.W.2d 651 (Tex. 1990)........................................................................6

*Wil-Roye Inv. Co. v. Wash. Mut. Bank, FA*, 142 S.W.3d 393 (Tex. App.—El Paso 2004, no pet.) ............................................................................................................19

*Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (5th Cir. 1975) .............................................13

**Statutes**

Antigua and Barbuda Companies Act, 1995 § 97 .......................................................................23

Tex. Civ. Prac. & Rem. Code Ann. § 16.004 ..............................................................................17

**Page(s)**

TSA Art. 581-33F ..................................................................................................................16

TSA Art. 581-33H...........................................................................................................passim

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................2

Fed. R. Civ. P. 15.............................................................................................................passim

Fed. R. Civ. P. 9.............................................................................................................2, 12

**Other Authorities**

6A Wright & Miller, *Fed. Prac. & Proc. Civ.* (3d ed.)..................................................................8

Vernon's Civil Statutes of the State of Texas Annotated, Articles 581-5 to 1175,
    Comment—1977 Amendment (West 2010) ..........................................................................6

Defendants The Toronto-Dominion Bank ("TD Bank") and Independent Bank, successor by merger to Bank of Houston ("IB") (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Class Action Complaint (the "SAC") pursuant to Rule 12(b)(6) and Rule 9(b).

## PRELIMINARY STATEMENT

Nearly six years after filing their first complaint, Plaintiffs now introduce two new aiding and abetting claims that are both untimely and inadequately pled. Both should be dismissed.

The Texas Securities Act ("TSA") claim is barred by the explicit and "absolute" five-year statute of repose. Art. 581-33H(2)(b). None of the members of Plaintiffs' proposed class purchased Stanford CDs in the five years prior to May 1, 2015, the date Defendants first learned that this claim was being asserted. Indeed, Plaintiffs allege that the very last possible purchase *any* putative class member could have made was in 2009, outside the five-year window. Any attempt by Plaintiffs to claim that their TSA claim somehow "relates back" to their original state court complaint from six years ago contradicts the express language and purpose of the TSA. And any attempt to argue that Defendants were somehow "on notice" of this claim is also wrong: none of the *four* complaints Plaintiffs have either filed themselves or have incorporated by reference contain *any* TSA claims against Defendants. As this Court described a plaintiff's similar ploy to circumvent a different statute of repose, Plaintiffs are merely trying to "do through the backdoor what they are barred from doing through the front."[1]

In addition to the statute of repose, the TSA's express three-year statute of limitations also bars Plaintiffs' claim and is grounds for dismissal here. Art. 581-33H(2)(b). Plaintiffs' new claim also cannot be saved by the relation back standard set out by Rule 15.

---

[1]  *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 338 n.1 (N.D. Tex. 2008) (Godbey, J.).

Yet even if Plaintiffs' TSA claim were timely filed, Plaintiffs' allegations fail to state a TSA claim under Rule 12(b)(6) and lack the particularity imposed by Rule 9.  Plaintiffs have pieced together a series of unsupported allegations and innuendo in an attempt to show that Defendants not only "knew" about the Stanford Ponzi scheme but also provided "substantial assistance" to it.  Claims sounding in fraud require more.[2]

Plaintiffs' claim of aiding and abetting breach of fiduciary duty fares no better.  Indeed, many courts have found that such a claim does not exist under Texas law.  Moreover, Plaintiffs' claim is untimely under the four-year statute of limitations.  But even if this claim were both cognizable *and* timely, Plaintiffs have not adequately pled an underlying fiduciary relationship that gives rise to their claim here.  Rather than allege facts showing the "special" relationship of trust and confidence that Texas law requires, Plaintiffs instead expect the Court to take them at their word and read in a relationship that does not exist on the face of the SAC.  What's more, Plaintiffs further allege that Defendants somehow "knew" such a relationship existed.

Finally, although this memorandum focuses on Plaintiffs' two previously unasserted causes of action, Plaintiffs' three additional Counts should be dismissed for the reasons set forth in Defendants' prior briefing.

## **BACKGROUND**

This case arises out of the Ponzi scheme orchestrated by R. Allen Stanford and certain of his associates, as well as various entities under his control (collectively, "Stanford").  Specifically, the Ponzi scheme here involved sales by Stanford representatives of high-yield certificates of deposit ("CDs") issued by Stanford International Bank Limited ("SIBL"), an

---

[2]    *See, e.g.*, *R2 Investments v. Phillips*, No. 02-cv-323, 2003 WL 22862738, at *7 (N.D. Tex. Mar. 26, 2003) (Godbey, J.) (dismissing a TSA aiding and abetting claim because plaintiffs "plead no evidence indicating that E&Y knew about a violation or that E&Y substantially assisted in any such violation").

offshore bank based in Antigua.  The proceeds from these CDs were used to finance Mr.

Stanford's various ventures and to pay off previous investors.

## A.      The Ponzi Scheme Is Exposed In Early 2009

In February 2009, the Stanford scheme was exposed.  Things moved quickly after that.

On February 16, 2009, Judge O'Connor issued an order that froze Stanford's assets and

appointed Ralph Janvey as the Receiver of the Stanford estate.  *SEC v. Stanford Int'l Bank Ltd.*,

09-cv-298 (N.D. Tex.) (Dkt. No. 10).  On May 12, 2009, Laura Pendergest-Holt, Stanford's CIO,

was indicted.  On June 18, 2009, Mr. Stanford was indicted.  By the end of July 2009, multiple

class actions had been filed alleging numerous violations of state and common law.  *E.g.*,

Complaint, *Troice v. Willis of Colorado, Inc.*, 09-CV-1274 (N.D. Tex.) (filed July 2, 2009).  By

August 27, 2009, Jim Davis, Stanford's CFO, pleaded guilty to three criminal counts.  *U.S. v.*

*James M. Davis*, No. 09-cr-0335-01 (S.D. Tex.) (plea filed Aug. 27, 2009).

## B.      Plaintiffs File Their Complaints, None of Which Contains the Two New Claims

In the midst of these developments, a group of Stanford investors ("Plaintiffs") seeking

to represent a putative class filed their Original Petition on August 23, 2009 in Harris County,

Texas.  Dkt. No. 1-4.  This lawsuit asserted four causes of action against five banks, including

Defendants.[3]  Dkt. No. 1-4 at 23-37.  Notably, Plaintiffs did not assert any causes of action under

the TSA, nor did they assert any claim of aiding and abetting a breach of fiduciary duty.  *See id.*

A few months later, Plaintiffs filed their First Amended Petition on or about October 9, 2009.

Dkt. No. 1-5.  The First Amended Petition contained the four identical causes of action asserted

---

[3]      In August 2009, a group of plaintiffs—including Dynasty Furniture Manufacturing Ltd.—also
commenced an action against TD Bank in the Ontario Superior Court of Justice seeking to recover
damages from TD Bank in connection with the Stanford Ponzi scheme.  And on September 21, 2011,
Marcus Wide and Hugh Dickson—the Antiguan Joint Liquidators—filed suit against TD Bank in Canada,
asserting similar claims on behalf of investors worldwide.  These two Canadian actions continue today
and inefficiently overlap with this case.

in the Original Petition.  *See* Dkt. No. 1-5 at 24-37.[4]

On November 13, 2009, certain of the Defendants removed the action to federal court. Dkt. No. 1.  On November 24, 2009, the Judicial Panel for Multi-District Litigation transferred the case to Dallas to become part of the ongoing MDL proceedings.  Dkt. No. 6.  Defendants moved to dismiss the First Amended Petition on May 26, 2010.  Dkt. Nos. 31, 39.

## C.   OSIC Files Two Intervenor Complaints, Neither of Which Contains the Two New Claims Belatedly Asserted Against Defendants

The case against the Banks got more crowded on December 5, 2011, when the Official Stanford Investors Committee ("OSIC") filed a motion to intervene.  Dkt. No. 96.  The Court granted this motion, Dkt. No. 129, which led to OSIC filing two Intervenor Complaints.  In the first Intervenor Complaint, filed on December 14, 2012, OSIC asserted seven causes of action against SGPB (Suisse) and Mr. Friedli.  Dkt. No. 130 at 31-39.  One cause of action was for aiding and abetting violations of the TSA (Count 7), and another was for aiding, abetting, or participation in breaches of fiduciary duty (Count 4).  *Id.* at 35-38.

On February 15, 2013, OSIC filed its second Intervenor Complaint, asserting five causes of action against four banks, including Defendants.[5]  Dkt. No. 133.  Although OSIC had only two months before asserted a TSA claim and a different fiduciary duty aiding and abetting claim against SGPB (Suisse) and Mr. Friedli, *OSIC did not assert such claims against Defendants*.  On July 10, 2013, Defendants moved to dismiss OSIC's second Complaint.  Dkt. Nos. 154, 159.

---

[4]    Those causes of action were: (1) avoidance of fraudulent transfers under section 24.005(a)(1) of Texas Uniform Fraudulent Transfer Act ("TUFTA") and/or the common law; (2) avoidance of fraudulent transfers under section 24.005(a)(2) of TUFTA and/or the common law; (3) avoidance of fraudulent transfers under section 24.006(a) of TUFTA and/or the common law; and (4) conspiracy to commit fraud and/or aiding and abetting fraud.

[5]    Those causes of actions were: (1) avoidance and recover of fraudulent transfers under sections 24.005(a)(1), 24.005(a)(2), and 24.006(a) of TUFTA and/or the common law; (2) aiding, abetting, or participation in fraudulent transfers; (3) aiding, abetting, or participation in a fraudulent scheme; (4) aiding, abetting, or participation in conversion; and (5) civil conspiracy.

After OSIC intervened and filed its two complaints, Plaintiffs moved for leave to amend their First Amended Petition to incorporate by reference the allegations and claims asserted in the two Intervenor Complaints.  Dkt. Nos. 131, 182.  On August 25, 2014, the Court granted these motions and ordered that Plaintiffs' Class Complaint be considered to incorporate by reference OSIC's claims.  Dkt. No. 212.

**D.     The Court Grants in Part and Denies in Part Defendants' Motions to Dismiss, and Plaintiffs File a Second Amended Complaint**

On April 21, 2015, the Court entered an order dismissing Plaintiffs' TUFTA-related claims but denied Defendants' motions to dismiss in other regards.  Dkt. No. 234 at 27.  Shortly thereafter, Plaintiffs moved for leave to amend their First Amended Petition and to file a new complaint, *i.e.*, the SAC.  Plaintiffs acknowledged they were asserting two new claims never previously asserted against Defendants: aiding and abetting violations of the TSA and aiding and abetting a breach of fiduciary duty.  *See* Dkt. No. 238 at 9.  Defendants opposed this motion. Dkt. No. 261.  On June 23, 2015, the Court granted Plaintiffs leave to amend their complaint and provided for the Banks to move to dismiss within 21 days.  Dkt. No. 278.  Defendants hereby move to dismiss all claims asserted in the SAC with prejudice.

## ARGUMENT

**I.     Plaintiffs' TSA Claim Should Be Dismissed**

**A.     The TSA's Statute of Repose is "Absolute" and Bars Plaintiffs' TSA Claim**

**1.     The Court Has Already Barred Claims in Other Stanford Actions Because of the TSA's Statute of Repose**

Section 33H(2)(b) of the TSA unambiguously states that "[n]o person may sue . . . more than five years after the sale" of the securities at issue.  Unlike a statute of limitations, a "statute of repose . . . abolishes the cause of action" after the statutorily-specified time period expires. *Servicios–Expoarma, C.A. v. Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 989 (5th Cir. 1998).

Thus, a claim under Article 581-33 of the TSA can "in no event" be brought "more than five years after the sale" of the securities at issue. *Williams v. Khalaf*, 802 S.W.2d 651, 654 n.3 (Tex. 1990).[6] Finding such law "absolute," this Court dismissed with prejudice nearly all of OSIC's TSA claims against Greenberg Traurig. *OSIC v. Greenberg Traurig, et al.*, 12-CV-4641 (N.D. Tex.) (Dkt. No. 123) at 22 (dismissing *all* claims prior to the five years before the date the parties entered into a tolling agreement). In dismissing those claims, this Court stated that the "purpose of repose statutes is to give absolute protection to certain parties from the burden of indefinite liability." *Id.* at 10-11 (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003)).[7]

Despite all this, Plaintiffs in their SAC introduced a never-before-seen TSA claim against Defendants on May 1, 2015, the date they filed their motion for leave to amend their first complaint. *See* Dkt. No. 238. For that claim to survive under the explicit provisions of the TSA, all of the sales giving rise to the TSA claim would have had to take place on or after *May 1, 2010*, *i.e.*, five years before the SAC was filed. *See* Art. 581-33H(2)(b) ("[n]o person may sue . . . more than five years after the sale" of the securities at issue).

There were no such post-May 1, 2010 sales here. Plaintiffs do not—and cannot—plead that they purchased the SIBL CDs at issue after that date. The Receiver had already taken control of the Stanford estate. *See SEC v. Stanford*, 09-cv-298 (N.D. Tex.) (Dkt. No. 10); SAC ¶ 104. Indeed, Plaintiffs allege that *all* of the relevant purchases took place on or before February 16, 2009, at least *six years or more* before Plaintiffs ever brought this TSA claim. SAC ¶ 420.

---

[6]     *See also Escalon v. World Grp. Secs., Inc.*, No. 07-CV-214-CECF, 2008 WL 5572823, at *3 (N.D. Tex. Nov. 14, 2008) (emphasizing distinctions between TSA's limitations and repose periods).

[7]     The statute of repose was enacted in a 1977 amendment to the TSA, described by the legislature's drafting committee as a "carefully negotiated compromise" that "reflect[ed], in a balanced way, the interests of buyers, sellers, investors, dealers, issuers and regulators." Vernon's Civil Statutes of the State of Texas Annotated, Articles 581-5 to 1175, Comment—1977 Amendment (West 2010) at 137. The statute of repose was intended as "a cutoff . . . to avoid the litigation of stale claims, . . . bring finality to transactions . . . [and] to prevent an investor from taking unfair advantage of a violation." *Id.* at 143-44.

These alleged facts render Plaintiffs' TSA claim untimely.

The five-year statute of repose described above applies to Section 33F claims relating to alleged Section 33A(2) violations.  To the extent Plaintiffs are alleging primary violations of Section 33A(1), given their allegation that Defendants "knew that the SIBL CDs were illegal, *unregistered* securities," SAC ¶ 235 (emphasis added), an even narrower *three-year* statute of repose applies, further rendering Plaintiffs' TSA claim untimely.  Art. 581-33H(1)(a); *OSIC v. Breazeale Sachse & Wilson LLP*, 11-cv-0329 (N.D. Tex.) (Dkt. No. 126) at 19-20; *Troice v. Proskauer Rose LLP*, 09-cv-1600 (N.D. Tex.) (Dkt. No. 176) at 12-13 (dismissing Stanford-related TSA claims based on sales of unregistered securities on statute of repose grounds); *Greenberg*, 12-cv-4641 (Dkt. No. 123) at 10.

### 2.   Plaintiffs' Attempts to Contort the Statute of Repose Should Be Rejected

In an attempt to duck the "absolute" bar that the TSA's statute of repose imposes, Plaintiffs will likely argue that Rule 15 allows Plaintiffs the opportunity to introduce new claims because they "relate back" to the date of the original pleading.  *See, e.g.*, Dkt. No. 268 (Reply In Support of Pls.' Mot. for Leave to Amend Compl.) at 6.  To support this view, Plaintiffs will likely argue that the TSA claim arises out of the "same conduct, transaction, or occurrence" set forth in their First Amended Petition and that the elements of their TSA claim are similar to their previously-asserted common law claims.  *See id.* at 6-7.  In Plaintiffs' view, a statute of limitations and a statute of repose are functionally interchangeable tools that can be used to resuscitate claims that may be untimely.  *See id.* at 8.

This view is incorrect.  The official commentary for Rule 15 makes abundantly clear that relation back "is intimately connected with the policy of the *statute of limitations*," not a statute of repose.  Fed. R. Civ. P. 15 advisory committee's note (emphasis added); *see also* 6A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1497 (3d ed.) (describing how relation back can "avoid an

otherwise applicable statute of limitations"). Several courts agree.[8] And as this Court recently

noted, Texas law draws a clear line between statutes of limitations and statutes of repose:

> The Supreme Court of Texas recently distinguished statutes of repose from statutes of limitation as follows: 'Statutes of repose typically provide a definitive date beyond which an action cannot be filed. Unlike traditional limitations provisions, which begin running upon accrual of a cause of action, a statute of repose runs from a specified date without regard to accrual of any cause of action. Repose then differs from limitations in that repose not only cuts off rights of action after they accrue, but can cut off rights of action before they accrue. And while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time. Thus, the purpose of a statute of repose is to provide absolute protection to certain parties from the burden of indefinite potential liability.'

*Janvey v. Democratic Sen. Campaign Comm.*, 793 F. Supp. 2d 825, 830 n.4 (N.D. Tex. 2011)

(quoting *Galbraith Eng'g Consultants, Inc. v. Puchucha*, 290 S.W.3d 863, 866 (Tex. 2009)).[9]

And, "the Texas Supreme Court has held that the Texas discovery rule does not revive claims

barred by statutes of repose, as distinguished from statutes of limitation." *Greenberg*, 12-cv-

4641 (Dkt. No. 123) at 11 (citing *Galbraith*, 290 S.W.3d at 864).

Plaintiffs may also argue that their earlier complaints somehow put Defendants "on

notice" of potential TSA claims. *See* Dkt. No. 268 at 5-6. Setting aside the fact that "notice" is

not the standard for analyzing the applicability of statutes of repose, there was no such notice

here. Before May 1, 2015, neither of Plaintiffs' *two* class complaints asserted any TSA-related

---

[8]   *E.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 483 (S.D.N.Y. 2011) ("[A]s a number of courts have stated, the Rule 15(c) relation back doctrine does not apply to statutes of repose."); *Harris v. OSI Fin. Servs., Inc.*, 595 F. Supp. 2d 885, 897 (N.D. Ill. 2009) (stating that since section was a statute of repose, "Plaintiffs may not rely on the relation back doctrine"); *In re Cmty. Bank of N. Va.*, 467 F. Supp. 2d 466, 480-82 (W.D. Pa. 2006) (relation back did not revive claims barred by statute of repose).

[9]   *See also Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 363 (5th Cir. 2005) ("A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. . . . A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued.").

claims or counts against Defendants, and there is nothing in those complaints "implying" that Defendants would one day be sued under the TSA or any other Blue Sky Law. *See* Dkt. No. 1. Indeed, neither of these two class complaints even alleged the CDs were "securities" at all. Furthermore, the claims asserted by OSIC in its two complaints did not include TSA claims against Defendants. *See* Dkt. Nos. 130, 133. Indeed, the only TSA claims OSIC ever brought in this action have been against defendants SGPB (Suisse) and Blaise Friedli. Dkt. No. 130. Despite the numerous opportunities Plaintiffs had to introduce TSA claims since 2009, they did no such thing between September 2009 and May 1, 2015. Defendants are now protected from the sort of "indefinite" liability the TSA statute of repose was designed to avoid.

Plaintiffs may also argue that this Court should allow Plaintiffs' TSA claim to survive because the equities somehow demand it. But this Court has already rejected such equities-based arguments, concluding that "the TSA statute of repose is absolute" and there is nothing to support an argument that the Court has the ability to "circumvent it." *Greenberg*, 12-cv-4641 (Dkt. No. 123) at 11. Moreover, even if the Court *were* permitted to consider the equities, they favor Defendants. Defendants should not have to defend a claim under the TSA on purchases that were made *11 years or more before* those claims were brought to court.

### B.   The TSA's Three-Year Statute of Limitations Also Bars Plaintiffs' Claim

Plaintiffs' TSA claim is further barred by the applicable statute of limitations. Under the TSA, the statute of limitations for Plaintiffs' aiding and abetting claim is "three years after discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence." Art. 581-33H(2)(a).[10] Assuming as true that Plaintiffs did not discover

---

[10]   For the purposes of this analysis, Defendants assume that Plaintiffs are alleging that the "primary" violation is of Section 33A(2) of the TSA. To the extent Plaintiffs allege that Stanford's scheme was in violation of Section 33A(1), a statue of repose bars any claims more than three years after the sale of the security. Art. 581-33H(1)(a) ("No person may sue under Section 33A(1) or 33F so far as it relates to

the untruths or omissions until August 23, 2009, the date they filed their Original Petition, or four days later when James Davis pleaded guilty, Plaintiffs still had until August 23 or 27, 2012 to bring their TSA claim.  But Plaintiffs did not bring any TSA claim by that date; instead, Plaintiffs waited until *May 2015*, almost *six years* after allegedly discovering the Ponzi scheme.

Moreover, the TSA claim does not "relate back" to the time Plaintiffs filed their first amended petition.  The relation back doctrine only permits amended pleadings to relate back to the time of the original pleadings in limited circumstances.  The Federal Rules state that amendments only relate back if they "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Thus, "when new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed."  *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985).  The Fifth Circuit "regards as 'critical' whether the opposing party was put on notice regarding the claim raised therein."  *Id.*

Here, Plaintiffs have introduced a host of allegations involving different conduct, transactions, and occurrences that neither appeared in the First Amended Petition nor in the second Intervenor Complaint.  For instance, Plaintiffs have now introduced allegations about TD Waterhouse, a different TD Bank subsidiary that allegedly "managed discretionary investment portfolios for both SIBL and BOA [Bank of Antigua] throughout the period that TD Bank provided correspondent banking services to SIB."  SAC ¶ 324.  Plaintiffs attempt to buttress their allegation of TD Bank's "knowledge" by relying on this investment relationship.  SAC ¶ 352

---

Section 33A(1) . . . more than three years after the sale."); *see also Greenberg*, 12-cv-4641 (Dkt. No. 123) at 11-12.  There is no "discovery rule" for claims relating to Section 33(A)(1).  *Compare* Art. 581-33H(1)(a) *with* Art. 581-33H(2), (3).

("the returns on the portion of the portfolio that TD Bank's investment arm, TD Waterhouse,

managed could not support the CD returns SIBL was offering").  But nowhere in the First

Amended Petition or in the second Intervenor Complaint do Plaintiffs or OSIC make any

allegations about TD Waterhouse or any role TD Bank may have had in managing Stanford

assets.[11]  Rather, Plaintiffs merely alleged that TD Bank's relationship with SIBL amounted to

no more than a correspondent bank "receiving wire transfers of funds from members of the

Class."  Dkt. No. 1-5 ¶ 113.  This addition of completely different conduct and the different

transactions arising from that conduct defeat the application of relation back here.

### C.     Plaintiffs' TSA-Related Claim Lacks Particularity and Fails to State a Claim

It is one thing to hold R. Allen Stanford liable for orchestrating a multi-billion dollar

Ponzi scheme.  It is quite another to presume that the banks that provided services to Stanford are

also liable under the TSA.  But Plaintiffs attempt to do just that.  The SAC glosses over the

elements required to prove a secondary liability claim of aiding and abetting a violation of the

TSA, and assumes that the banks conducting business with Stanford must have known of and

assisted with perpetuating the fraud.  The SAC's thin allegations are legally deficient.

### 1.     Plaintiffs Have Failed to Plead the TSA Claim With Particularity

To plead a TSA aiding-and-abetting claim, plaintiffs must show: "1) that a primary

violation of the securities laws occurred; 2) that the alleged aider had general awareness of its

role in this violation; 3) that the actor rendered substantial assistance in this violation; and 4) that

the alleged aider either a) intended to deceive plaintiff or [b]) acted with reckless disregard for

---

[11]    Moreover, as the Texas Supreme Court has held, courts should not "hold a corporation liable for the obligations of its subsidiary" except in "exceptional circumstances."  *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984).  There must be "something more than mere unity of financial interest, ownership and control for a court to treat the subsidiary as the *alter ego* of the parent and make the parent liable for the subsidiary's [alleged actions]."  *Id.*; *Town N. Bank, N.A. v. Shay Fin. Servs., Inc.*, No. 3:11-CV-3125-L, 2014 WL 4851558, at *21 (N.D. Tex. Sept. 30, 2014) (finding no authority showing that mere existence of affiliate relationship is sufficient "to impute knowledge of one company to another").

the truth of the representations made by the primary violator." *Town N. Bank*, 2014 WL 4851558, at *30 (citing *Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 384 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)).

Where aiding-and-abetting claims are premised on alleged fraud, moreover, the elements of such claims must be pled with particularity under Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 344-45 (5th Cir. 2008) (applying Rule 9(b) to claim of aiding and abetting TSA violations). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009). Rule 9(b) applies to claims brought under Article 33 of the TSA. *See* Dkt. No. 234 (Apr. 21, 2015 Order) at 7; *Billitteri v. Sec. Am., Inc.*, No. 09-cv-1568, 2010 WL 6785484, at *4-5 (N.D. Tex. July 26, 2010) (Rule 9(b) applies to state securities law claims).

(A)   No Facts Show Defendants Were Aware of Stanford's Fraud

"A failure to allege sufficient facts to support the inference that the alleged aider and abettor had actual knowledge of the fraudulent scheme warrants dismissal of the aiding and abetting claim at the pleading stage." *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014); *see also Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 738 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("showing that [a defendant] 'should have known' does not satisfy the scienter requirement for aider liability"). To meet the actual knowledge requirement, a complaint must allege facts that the aider and abettor was "subjectively aware of the primary violator's improper activity." *Sterling Trust Co. v. Adderly*, 168 S.W.3d 835, 837 (Tex. 2005). Evidence tending to establish that a defendant "should have known" of the alleged wrongdoing does not suffice. *See Schlifke v. SeaFirst Corp.*, 866 F.2d 935, 948 (7th Cir. 1989); *Sterling*

12

*Trust Co.*, 168 S.W.3d at 842 (holding that negligence does not satisfy scienter requirement because actual knowledge is required); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 96 (5th Cir. 1975) ("the proof must demonstrate actual awareness of the party's role in the fraudulent scheme").  The allegation that a bank did not investigate potential wrongdoing, for example, does not satisfy the subjective scienter standard espoused by the Texas Supreme Court:

> the policy concerns favoring a subjective scienter standard outweighed the potential investor protections available under a 'should have known' standard:  'In most cases, the alleged aider and abettor . . . will merely be engaging in customary business activities . . . .  If each [party conducting business with another party] will be required to investigate the ultimate activities of the party whom he is assisting, a burden may be imposed upon business activities that is too great. . . .  The essential point is that imposition of a duty to investigate under the guise of a 'should have known' standard in essence would amount to eliminating scienter as a necessary element in imposing aiding and abetting liability and the substitution of a negligence standard.'

*Sterling Trust*, 168 S.W.3d at 842 (internal quotations and citations omitted).

The SAC here falls far short of meeting this heightened standard.  While the SAC alleges that Defendants provided "correspondent banking" services to Stanford, SAC ¶ 100, that business relationship does not automatically translate to Defendants' knowledge of Stanford's fraudulent activities.  Similarly, alleging that Defendants knew that Antigua—where SIBL was located—was a "jurisdiction of major concern" because of allegedly lax banking laws, SAC ¶¶ 197, 183-95, 358, or that Stanford and/or SIBL were under scrutiny and/or the subjects of government investigations, SAC ¶¶ 177-180, 182, 198-202, 205-207, 217-220, does not establish that Defendants actually *knew* about Stanford's fraudulent scheme.

The requisite knowledge—which Plaintiffs do not come close to establishing—may not rest on a bare inference that the defendant "must have had" knowledge of the facts.  *Schlifke*, 866 F.2d at 948.  The SAC does not have facts to connect its conclusory allegations that Stanford's

13

business activities were suspicious with the required demonstration that Defendants actually

knew that Stanford was perpetuating a massive fraud.  The failure to bridge this gap is fatal to

Plaintiffs' aiding-and-abetting claim.  *See Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d

Cir. 2009) (claim against Chinese bank for aiding and abetting fraudulent scheme dismissed

because "facts alleged in [plaintiff's] complaint only go so far as to suggest that [the bank]

*should* have known that something was amiss with [the] transactions, [plaintiff's] conclusory

statements on appeal that [the bank] *actually* knew something notwithstanding").  Nowhere in

the SAC do Plaintiffs allege any facts establishing that Defendants actually knew about

Stanford's Ponzi scheme.

(B)      No Facts Establish "Substantial Assistance"

Plaintiffs also fail to meet the "substantial assistance" element that requires Plaintiffs to

allege facts establishing that Defendants' assistance was more than ministerial.  It is well-

established that routine banking services are insufficient to satisfy the "substantial assistance"

requirement of an aiding-and-abetting claim under the TSA.  The Fifth Circuit has consistently

held that routine, "grist of the mill" transactions do not establish aiding and abetting liability.

*Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 257 (5th Cir. 2011) (routine execution

of trades does not amount to substantial assistance); *Ins. Co. of N. Am. v. Dealy*, 911 F.2d 1096,

1101 (5th Cir. 1990) (routine extension of loan does not amount to substantial assistance).  Even

*substantial* routine assistance may be "merely 'grist of the mill'" and fall short of the requisite

assistance required.  *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 622-23 (5th Cir. 1993) (where

surety and its bonding agent had discussions regarding whether to bond units under a

partnership, court found such routine assistance did not suffice).

The SAC alleges that TD Bank maintained 11 accounts for the Stanford entities and had

14

certain investment portfolios for Stanford.[12]  SAC ¶¶ 324-36, 346-47; *see also id.* ¶ 371

(regarding IB).  The SAC also alleges that TD Bank and other Defendants provided

"correspondent banking" services for SIBL that included wiring deposits from customer

accounts to the various Stanford entities and routing funds among the Stanford entities (¶¶ 100,

168).  Wiring funds and maintaining accounts, however, are routine, ministerial services that do

not rise to the level of substantial assistance.  And providing investment management services is

normal practice for banks.  Such allegations do not implicate Defendants in Stanford's corrupt

practices.  The SAC does not allege any facts indicating that Defendants assisted Stanford's theft

of investor deposits, exercised discretion about whether to accept monies from CD investors, or

helped structure financial transactions to avoid detection.[13]

### D.    The SAC Does Not Specify The Applicable Sections of the TSA

Plaintiffs have not identified specifically which provision of the TSA has supposedly

been violated.  A plaintiff asserting a claim under the TSA for aiding and abetting liability must

allege "that a primary violation of the securities laws occurred."  *Town N. Bank*, 2014 WL

4851558 at *30 (citing *Frank*, 11 S.W.3d at 384).  The SAC's lone reference to the TSA is found

---

[12]    Should Plaintiffs try to argue that certain of Defendants' affiliates offered discretionary-type services, that does not hold weight here.  For instance, Plaintiffs make various allegations about TD Bank's "investment arm."  *See, e.g.*, SAC ¶ 324.  But as Plaintiffs themselves acknowledge, this separate TD Bank subsidiary was not involved in the "Tier 3" funds improperly siphoned off by Stanford.  In fact, this subsidiary was merely an "outside money manager[]" that invested funds "in a manner consistent with [SIBL's] annual reports and marketing materials."  SAC ¶ 133.

[13]    The facts as alleged here are distinguishable from prior decisions by this Court.  For instance, in *Breazeale Sachse & Wilson*, the Court specifically noted that plaintiffs alleged that defendant had "issued a false legal opinion and omitted key information to convince" a regulator that Stanford investments were legal.  No. 11-cv-0329 (Dkt. No. 126) at 17.  Plaintiffs allege no such thing here, nor could they.  And in *Troice v. Proskauer Rose LLP*, this Court found that plaintiffs had met the substantial assistance requirement by alleging that one of the defendants lied to the SEC and affirmatively "devis[ed] policies implemented by [Stanford] designed to" evade detection.  No. 09-cv-1600 (Dkt. No. 176) at 17.

in Count 2, which states that Plaintiffs bring the claim under TSA Art. 581-33F(2).[14]   SAC ¶

437.  But that provision relates to *secondary* violations and references three "primary" TSA

provisions (Section 33A, 33B, 33C).  None of these "primary" TSA provisions, however, is

referenced in the SAC.

Even if the Court assumes that Plaintiffs brought this claim under Section 33A, it is

unclear which sub-part of Section 33A Plaintiffs intend to pursue.  This omission is not *de*

*minimis*.  Among other things, sub-part A(1) carries a different statute of limitations than sub-

part A(2).  *See* Art. 581-33H.  This ambiguity is fatal to Plaintiffs' TSA claim, particularly given

the heightened pleading standard by which it is judged.

## II.   Plaintiffs' Aiding and Abetting a Fiduciary Breach Claim Should be Dismissed

### A.   Texas Does Not Recognize This Cause of Action

As a preliminary matter, this claim is not recognized under Texas law.  Indeed, the Texas

Supreme Court has expressly declined to determine whether Texas law supports a claim for

aiding and abetting.  *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7

(Tex. 2001); *Juhl v. Airington*, 936 S.W.2d 640, 643-44 (Tex. 1996).  Moreover, multiple

appellate courts have ruled that it is questionable whether Texas recognizes such a cause of

action.  *See, e.g.*, *O'Kane v. Coleman*, No. 14-06-00657-CV, 2008 WL 2579832, at *5 (Tex.

App.—Houston [14th Dist.] July 1, 2008, no pet.); *Span Enters. v. Wood*, 274 S.W.3d 854, 858-

59 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  Federal courts have similarly concluded that

Texas does not recognize the type of aiding and abetting claim that Plaintiffs raise here.[15]

---

[14]    Art. 581-33F(2) states:  "A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer."

[15]    *E.g.*, *Highland Crusader Offshore Partners v. Lifecare Holdings, Inc.*, No. 08-CV-0102-B, 2008 WL 3925272, at *14 (N.D. Tex. Aug. 27, 2008), *aff'd on other grounds*, 377 Fed. App'x 422 (5th Cir. 2010);

The Court itself has acknowledged that the "law is admittedly unclear" as to whether Texas law even recognizes common law aiding and abetting as a cause of action. *Greenberg*, 12-cv-4641 (Dkt. No. 123) at 18.  Although Defendants are aware that the Court for now "sides with the courts that have recognized a cause of action for aiding and abetting," *id.*, Defendants respectfully disagree with that conclusion and request that the Court dismiss this claim.

### B.  Even If Recognized, the Four-Year Statute of Limitations Bars This Claim

Even if recognized under Texas law, Plaintiffs' aiding and abetting claims for a breach of fiduciary duty are subject to a four-year statute of limitations. *See USPPS, Ltd. v. Avery Dennison Corp.*, No. SA-07-CA-963-FB, 2008 WL 7984967, at *15 (W.D. Tex. Apr. 9, 2008) (relying on Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (West 2015)).  Plaintiffs did not bring this claim within that four-year window.  Even if one accepts that this statute of limitations began to run upon Plaintiffs' discovery of Stanford's alleged breach of fiduciary duty, and one further accepts that such discovery was not possible until August 23, 2009 (the date the Original Petition was filed), Plaintiffs did not timely bring this claim.  Rather, Plaintiffs waited until May 1, 2015, nearly *six years* after discovering the alleged breach and nearly *two years* after the limitations period had ended.  The Court should dismiss this claim on that basis alone.  For substantially the same reasons described above in Section I.A.2, this new claim also does not "relate back" under Rule 15.

### C.  Plaintiffs Do Not State a Claim for Aiding and Abetting a Fiduciary Breach

To the extent this Court recognizes this claim under Texas law, a plaintiff must adequately allege: "(1) the existence of a fiduciary relationship; (2) that the third party knew of

---

*In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, No. CIV A H-01-3624, 2006 WL 3716669, at *8 (S.D. Tex. Dec. 12, 2006), *aff'd*, 535 F.3d 325 (5th Cir. 2008); *see also Dontos v. Vendomation NZ Ltd.*, No. 11-CV-0553, 2012 WL 3702044, at *14 (N.D. Tex. Aug. 27, 2012), *rev'd on other grounds*, 582 F. App'x 338 (5th Cir. 2014).

the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship."[16]  *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721-22 (Tex. App.—Austin 2001, pet. denied)).  Plaintiffs have not adequately pleaded these three elements.

### 1.   Plaintiffs Have Not Pleaded the Existence of a Fiduciary Relationship

Plaintiffs have failed to sufficiently plead facts showing that an actionable fiduciary relationship existed.  Instead, Plaintiffs conclusorily allege that the "Stanford Entities and their officers and directors were fiduciaries to Plaintiffs and the Class during the relevant period." SAC ¶ 439.  The sort of relationship alleged does not fall within the two general categories of fiduciary relationships recognized under Texas law.

The first type of fiduciary relationships are formal ones recognized as a matter of law, *e.g.*, relationships between attorneys and clients, principals and agents, trustees and beneficiaries, or between partners or joint venturers.  *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).  Here, Plaintiffs have not alleged that a formal fiduciary relationship existed between the Stanford entities and the putative class members, nor could they.

The second type of fiduciary relationship arises from an informal, "confidential" relationship between the parties.  *E.g.*, *Ritchie v. Rupe*, 443 S.W.3d 856, 874 n.27 (Tex. 2014). Courts, however, do not find such a relationship lightly,[17] and as this Court has noted, "not every relationship involving trust and confidence creates fiduciary duties."  *Cleveland Const., Inc. v. Centex Const. Co., Inc.*, No. 303-cv-1437, 2005 WL 1131168, at *2 (N.D.Tex. May 11, 2005)

---

[16]   Although Plaintiffs have asserted this and other common law claims under Texas law, Defendants disagree that Texas law governs the common law claims of non-Texas putative class members and reserve all their rights with respect to the correct applicable law.

[17]   *Meyer v. Cathey*, 167 S.W.3d 327, 330-31 (Tex. 2005); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287-88 (Tex. 1998).

(finding no fiduciary relationship existed).  That a business relationship has been cordial and of extended duration is not by itself sufficient to demonstrate a fiduciary relationship, nor does the fact that one businessperson trusts another and relies on another to perform a contract.[18]

Moreover, the Texas Supreme Court and this Court have held that an informal special relationship must exist prior to, and apart from, the agreement that made the basis of the lawsuit. *Ritchie*, 443 S.W.3d at 874 n.27; *Cleveland Const.*, 2005 WL 1131168 at *2; *see also Meyer*, 167 S.W.3d at 330-31.  With these principles in mind, Texas courts have ruled that such informal "confidential" relationships have *not* existed between:

- insurance brokers and their customers,[19]
- banks and their depositors,[20]
- investors and a hedge fund's investment manager, president, and chief investment officer,[21]
- lenders and borrowers,[22]
- insurers and third-party claimants,[23]
- suppliers and distributors,[24] and
- general contractors and sub-contractors.[25]

Here, Plaintiffs have not pled facts sufficient to infer that such a special relationship

---

[18]   *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 880-82 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

[19]   *Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 627-28 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

[20]   *FDIC v. Eagle Props., Ltd.*, 664 F. Supp. 1027, 1043-44 (W.D. Tex. 1985); *Jones v. Thompson*, 338 S.W.3d 573, 583 (Tex. App.—El Paso 2010, pet. denied.); *Davis v. West*, 317 S.W.3d 301, 312 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A.*, 181 S.W.3d 790, 801 (Tex. App.—Waco 2005, pet. denied).

[21]   *Mary E. Bivins Found. v. Highland Capital Mgmt. L.P.*, 451 S.W.3d 104, 113-14 (Tex. App.—Dallas 2014, no pet.).

[22]   *Wil-Roye Inv. Co. v. Wash. Mut. Bank, FA*, 142 S.W.3d 393, 410 (Tex. App.—El Paso 2004, no pet.).

[23]   *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 279-80 (Tex. 1995).

[24]   *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 481 (Tex. App.—Corpus Christi 1989, writ denied).

[25]   *Electro Assocs., Inc. v. Harrop Constr. Co.*, 908 S.W.2d 21, 22 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

existed.  For one, Plaintiffs do not allege that there was any pre-existing relationship between

Stanford representatives and CD investors.  Plaintiffs further do not allege that any such

relationship existed *apart from* the purchase of SIBL CDs, the event that triggered this purported

relationship.[26]  Courts have dismissed claims even when faced with relationships far more

"special" than any alleged to have existed here.  In *E.R. Dupuis Concrete Co. v. Penn Mut. Life

Ins.*, 137 S.W.3d 311 (Tex. App.—Beaumont 2004, no pet.), a concrete company brought suit

against a life insurance company and its agents for the purchase of a variable life insurance

policy on the life of its president.  The concrete company alleged that a fiduciary duty existed

between the company and the agents because the agents gave an "estate planning kit" and prayed

together at the local church.  But the court found there was no indication from this evidence that

there was a pre-existing relationship involving a high degree of trust and confidence over a long

period of time.  *Id.* at 319.  In *Robbins v. Payne*, 55 S.W.3d 740, 749 (Tex. App.—Amarillo

2001, pet. denied), the court refused to find that a fiduciary relationship existed between two co-

founders of an Internet business because the relationship was not longstanding and did not go

"beyond that ordinarily existing between parties to a contract of this type."[27]

The closest Plaintiffs come to alleging a fiduciary relationship is between the CD

investors and their so-called "financial advisors."  But Plaintiffs offer no allegations that this

---

[26]   In *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523 (S.D. Tex. 2011), the court found that plaintiff had "not come forward with any evidence that Wellogix and SAP entered into agreement or engaged in activities prior to and separate from the" agreement that "would give rise to SAP's fiduciary obligation to Wellogix." *Id.* at 547.  The *Wellogix* court also rejected plaintiff's argument that there was a fiduciary relationship between it and a software company: although there were "a number of agreements" between them, "none of these agreements is anything other than an arms-length transaction entered into for the parties' mutual benefit." *Id.* at 548.

[27]   *See also Ins. Co. of N. Am. v. Morris*, 981 S.W.2d at 674-75 (Tex. 1998) (in rejecting argument that fiduciary relationship existed, Texas Supreme Court concluded there was "no evidence of any prior dealings between INA and the Investors that would justify an expectation that INA reveal or require disclosure of material information regarding the investment product").

relationship was anything more than a standard business-customer relationship. *See* SAC ¶¶ 105,

126 (alleging that "financial advisors" worked with customers "to purchase SIBL CDs" or

helped customers "complete their SIBL CD applications"). Notably, Plaintiffs offer no

allegations that these advisors had discretionary accounts over which they exercised control.[28]

Instead, these so-called "financial advisors" merely "sold SIB CDs to potential investors in the

United States." SAC ¶ 30. Run-of-the-mill transactions between investors and their financial

advisors or brokers do not rise to the level of a fiduciary relationship. *Fleming v. Tex. Coastal*

*Bank of Pasadena*, 67 S.W.3d 459, 460-61 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)

(refusing to recognize fiduciary relationship between bank and its CD customer where customer

was "victim of a swindle" seeking recovery not from "the swindler, but from the swindler's

bank"). And even if one concedes that *some* relationship of trust and confidence existed between

individual investors and their Stanford advisors, Texas law requires more.

    In rebuttal, Plaintiffs may cite this Court's opinion in *OSIC v. Greenberg*, in which the

Court denied defendants' motion to dismiss a similar claim. 12-cv-4641 (Dkt. No. 123). But

unlike here, the *Greenberg* plaintiffs alleged in their complaint, over multiple paragraphs, that

"Stanford's investment brokers assumed a position of trust by lobbying them to invest in the

fraudulent CDs." *Id.* at 20. By contrast, Plaintiffs offer no such allegations about investment

brokers here. Instead, Plaintiffs shift in their claim to focusing on Stanford officers and directors

and allege that the breach of fiduciary duty lay in the fact that higher-up executives within the

Stanford group of companies "misappropriated and converted funds" and "paid bribes" to

---

[28]   *See Rauscher Pierce Refsnes, Inc. v. Great Southwest Sav., F.A.*, 923 S.W.2d 112, 115 (Tex. App.–
Houston [14th Dist.] 1996, no pet.) (noting that where a broker "is charged with no responsibility and is
not obligated to exercise any discretion, but his duty consists merely of bringing the parties together so
that, between themselves, they may negotiate a sale, and the sale is made in that manner, the broker is
considered a mere 'middleman'" and a fiduciary relationship would not typically exist).

auditors and regulators.  SAC ¶ 439.

        2.     <u>Plaintiffs Do Not Show Defendants' Knowledge of Fiduciary Relationship</u>

Plaintiffs' SAC is even more defective when trying to allege that Defendants had "knowledge" of a special fiduciary relationship.  Plaintiffs cursorily allege in a single sentence that "Defendants knew that R.A. Stanford and other officers and directors of the Stanford Entities owed fiduciary duties to Plaintiffs and the Class."  SAC ¶ 440.  Tellingly, Plaintiffs appear confused about what fiduciary duty is at issue.  Plaintiffs' fact allegations appear focused on a fiduciary duty between financial advisors and CD investors.  Plaintiffs then re-cast the legal claim as one between Stanford *directors and officers* and CD investors.  Meanwhile, this Court has focused on the fiduciary duty between Stanford directors and officers and "their respective Stanford entities."  *Greenberg*, 12-cv-04641 (Dkt. No. 114) at 20; *see also Janvey v. Alvarado*, 10-cv-2584 (N.D. Tex.) (Dkt. No. 99) at 5 (discussing the fiduciary duty "owed by Alvarado [Stanford's general counsel] to multiple Stanford entities").  Plaintiffs' failure to clearly articulate the exact fiduciary relationship at issue, and their departure from this Court's prior rulings on this issue, are fatal to their assertion that Defendants somehow "knew" that some poorly-identified fiduciary relationship existed.

Plaintiffs may argue that this "knowledge" element is satisfied merely because Defendants are familiar with "the basic rule that officers and directors owe fiduciary duties to their companies," as the Court has previously concluded.[29]  *Greenberg*, 12-cv-4641 (Dkt. No. 114) at 21 (citing *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. App.—

---

[29]    Even if Plaintiffs did allege the correct fiduciary relationship between Stanford's officers and directors and the company (which they do not), they would not have standing to bring such a claim. *See Webre v. Sneed*, 358 S.W.3d 322, 329 (Tex. App.–Houston [1st Dist.] 2011), *aff'd*, No. 12-0045, 2015 WL 3451653 (Tex. May 29, 2015) ("A corporate officer owes a fiduciary duty to the corporation, but, absent some contract or special relationship, he does not owe a fiduciary duty to an individual shareholder.").  Here, Plaintiffs are not even shareholders; they are third-party customers of the bank. They have no legal right to assert claims on behalf of SIBL.

Houston [14th Dist.] 1973, no pet.)).  But as Plaintiffs concede, Stanford Financial Group was an

Antiguan-based entity, *see* SAC ¶ 26, with correspondingly different rules regarding fiduciary

duties and when they are breached.[30]  Knowledge of any sort of fiduciary relationship cannot be

presumed here, much less knowledge of divergent and unclear relationships between financial

advisors and CD customers, directors and officers and CD customers, and directors and officers

and various banking entities.

### 3.     The SAC Does Not Allege Awareness of Participation in a Breach

Even if a fiduciary duty existed that could potentially give rise to civil liability here,

Plaintiffs have not alleged facts demonstrating that Defendants knew or had awareness that they

were participating in a breach of any such duty.  Within the fiduciary context, courts applying

other states' law offer insight into the demanding inquiry that this knowledge element requires.[31]

In *Litson-Gruenber v. JPMorgan Chase & Co.*, No. 09-cv-056, 2009 WL 4884426 (N.D. Tex.

Dec. 16, 2009), a victim of a Ponzi scheme brought claims in Texas against a bank for aiding and

abetting a Ponzi schemer's breach of fiduciary duty.  Applying California law, the court

dismissed these claims on knowledge grounds, concluding that:

> Plaintiff fails to allege that Defendant knew the Ponzi defendants were making
> false representations or stealing the investors' money based on the Ponzi
> defendants' representations. In essence, the allegations are an artful manner of
> stating that Defendant should have known of the Ponzi defendants' actions.
> Plaintiff's factual narrative is, at best, merely a story of suspicious activity that
> Plaintiff contends should have provided Defendant notice of the Ponzi scheme. As
> such, this is not sufficient to satisfy the requirement of actual knowledge for aider
> and abettor liability.

---

[30]   *See, e.g.*, Antigua and Barbuda Companies Act, 1995 § 97 (reflecting *statutory*, as opposed to
*common law*, articulations of fiduciary duty).

[31]   Although other states' law is not binding here, Defendants respectfully submit that such analysis is
appropriate where, as here, it is uncertain if an aiding and abetting a breach of fiduciary duty claim is
recognized under Texas law.  *See supra* § II.A.

*Id.* at *3.  Courts applying Delaware law are similarly rigorous as to this knowledge element.

*See In re Gen. Motors*, No. Civ. A. 20269, 2005 WL 1089021, at *24 (Del. Ch. May 4, 2005)

("Conclusory statements of knowing participation will not suffice."), *aff'd*, 897 A.2d. 162 (Del.

2006); *In re NYMEX S'holder Litig.*, No. 3621-VCN, 2009 WL 3206051, at *12-13 (Del. Ch.

Sept. 30, 2009) ("conclusory allegations such as '[defendant] had knowledge of the [fiduciary's]'

duties and knowingly and substantially participated and assisted in the [fiduciary's] breaches of

fiduciary duty, and, therefore, aided and abetted such breaches of fiduciary duties' are

insufficient as a matter of law").[32]

Moreover, Plaintiffs have not alleged facts demonstrating that Defendants "participated"

in any meaningful way in the breach of any fiduciary duty.  As alleged, Defendants such as TD

Bank provided routine banking services involving wire transfers for the Stanford entities and

managed certain SIB and BOA investment accounts.  *See* SAC ¶¶ 100, 168, 346-47.  These

routine services do not qualify as "participation" in a Ponzi scheme for purposes of this claim.

Plaintiffs, for instance, do not allege that Defendants had any involvement in the

decision-making of any Stanford entity's board of directors, or held any sway over any Stanford

directors or officers.  Nor have Plaintiffs alleged that any of Defendants' employees participated

in any Stanford board of directors meetings, consulted with such boards, or sent them any

presentations.[33]  Indeed, under Delaware law, a complaint would need to plead "specific factual

allegations" creating an inference that Defendants either "participated in the board's decisions,

---

[32]   *See also Saito v. McCall*, No. Civ. A. 17132-NC, 2004 WL 3029876, at *9 (Del. Ch. Dec. 20, 2004)
(because complaint contains "only conclusory allegations of knowing participation in [directors']
breaches of fiduciary duty, it does not plead facts sufficient to meet the stringent standard required for an
aiding and abetting claim"), *overruled on other grounds by Lambrecht v. O'Neal*, 3 A.3d 277 (Del. 2010).

[33]   Plaintiffs allege in a single sentence that one TD Bank individual was "reputedly" a member of a
vaguely-described "advisory board," comprised "primarily of politicians and former businesspeople."
SAC ¶¶ 29, 333.  But alleged attendance at such meetings—or charity golf outings supporting children's
cancer research, SAC ¶ 333—does not rise to the level of knowing participation the law requires.

conspired with the board, or otherwise caused the board to make the decisions at issue."
*Malpiede v. Townson*, 780 A.2d 1075, 1098 (Del. 2001); *see also In re Telecomms., Inc.*, No.
Civ. A. 16470-NC, 2003 WL 21543427, at *2 (Del. Ch. July 7, 2003) (holding that knowing
participation may potentially be inferred, *inter alia*, "through direct factual allegations
supporting a theory that the defendant sought to induce the breach of fiduciary duty, such as
through the offer of side payments intended as incentives for the fiduciaries to ignore their
duties").  No such allegations exist in the SAC, nor could they.

Defendants recognize that this Court has determined that Plaintiffs adequately pleaded
this knowledge element against SGPB (Suisse) and Blaise Friedli.  *See, e.g.*, Dkt. No. 234 at 24-
25, 27.  But for the reasons outlined above, Defendants believe that a more demanding standard
of knowledge is required under Texas law, one that Plaintiffs have not met here with respect to
the fact allegations against Defendants.

### III.    Plaintiffs' Three Other Causes of Action Should Be Dismissed

In addition to the two previously unasserted claims discussed above, Plaintiffs bring three
additional causes of action in their SAC: (i) common law aiding, abetting, or participation in a
fraudulent scheme (Count 1); (ii) aiding, abetting, or participation in conversion (Count 4); and
(iii) civil conspiracy (Count 5).  For the reasons set forth in Defendants' prior motions to dismiss
those causes of action (*see* Dkt. Nos. 31, 39 and Dkt. Nos. 154, 159), which Defendants
expressly incorporate here, Defendants urge the Court to give further consideration to these
claims and dismiss them as time-barred, factually deficient, and legally flawed.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss
Plaintiffs' Second Amended Class Action Complaint in its entirety and with prejudice.

Dated: July 14, 2015

Respectfully submitted,

*/s/ Rodney Acker*
Rodney Acker
  State Bar No. 00830700
Ellen Sessions
  State Bar No. 00796282
James V. Leito IV
  State Bar No. 24054950
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
T: (214) 855-8000
F: (214) 855-8200
rodney.acker@nortonrosefulbright.com
ellen.sessions@nortonrosefulbright.com
james.leito@nortonrosefulbright.com

Of Counsel:

Lynn Neuner (*pro hac vice*)
Peter Kazanoff  (*pro hac vice*)
Katherine A. Helm  (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
T: (212) 455-2000
F: (212) 455-2502
lneuner@stblaw.com
pkazanoff@stblaw.com
khelm@stblaw.com

*Attorneys for Defendant The Toronto-Dominion Bank*

By:  /s/ Brad Repass
    Brad Repass
     State Bar No. 16786700
    HAYNIE RAKE REPASS &
     KLIMKO P.C.
    Wellington Centre
    14643 Dallas Parkway, Suite 550
    Dallas, Texas 75254
    T: (972) 716-1855
    F: (972) 716-1850
    brad@hrrpc.com

    Paul C. Watler
     State Bar No. 20931600
    Jeffrey G. Hamilton
     State Bar No. 00793886
    JACKSON WALKER LLP
    901 Main Street, Suite 6000
    Dallas, Texas 75202
    T: (214) 953-6000
    F: (214) 953-5822
    pwatler@jw.com
    jhamilton@jw.com

    *Attorneys for Defendant Independent Bank,*
    *successor by merger to Bank of Houston*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2015, the foregoing document was filed with the Court's CM/ECF system, which has generated and delivered electronic notices of filing to all counsel of record who have consented to electronic service.

<u>/s/ *Rodney Acker*                       </u>
Rodney Acker