## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, et al. on behalf of themselves and all others similarly situated, | § § § § | |
| Plaintiffs | § § | |
| and | § § | Civil Action No. 3:09-CV-2384-N |
| THE OFFICIAL STANFORD INVESTORS COMMITTEE, | § § § | |
| Plaintiff-Intervenor, | § § | |
| v. | § § | |
| TRUSTMARK NATIONAL BANK, HSBC BANK PLC, THE TORONTO-DOMINION BANK, BANK OF HOUSTON, SG PRIVATE BANKING (SUISSE) S.A., and BLAISE FRIEDLI, | § § § § § § | |
| Defendants. | § § § | |

## DEFENDANT BLAISE FRIEDLI'S MOTION TO DISMISS
## PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT
## AND BRIEF IN SUPPORT THEREOF

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................. 3

ARGUMENT ...................................................................................................................... 6

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER MR. FRIEDLI ............... 6

     A.     The Court Lacks Specific Jurisdiction Over Mr. Friedli ...................................... 9

     B.     The Court Also Lacks General Jurisdiction Over Mr. Friedli ........................... 12

     C.     Class Plaintiffs' Alternative Theory Of Jurisdiction Fails................................. 13

     D.     Exercising Personal Jurisdiction Over Mr. Friedli Offends Due Process........... 14

II.     CLASS PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY
     HAVE FAILED TO SERVE MR. FRIEDLI IN ACCORDANCE WITH THE
     FEDERAL RULES OF CIVIL PROCEDURE ............................................................. 15

III.     CLASS PLAINTIFFS' CLAIMS AGAINST MR. FRIEDLI ARE TIME
     BARRED. .................................................................................................................... 17

     A.     The Applicable Limitations Periods .................................................................. 17

     B.     The Limitations Clock Began To Run No Later Than August 23, 2009 ............. 18

     C.     The August 25, 2014 Order Does Not Save Class Plaintiffs' Claims ................ 20

IV.     CLASS PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR THE
     ADDITIONAL REASONS SET FORTH IN THE BRIEFS FILED BY MR.
     FRIEDLI'S CO-DEFENDANTS AND IN PRIOR BRIEFING ..................................... 21

CONCLUSION................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aerotech Holdings, Inc. v. Alliance Aerospace Eng'g, LLC,*
  650 F. Supp. 2d 594 (N.D. Tex. 2009) ...............................................................7

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.,*
  480 U.S. 102 (1987) ...........................................................................................14

*Baxter v. Gardere Wynne Sewell, LLP,*
  182 S.W.3d 460 (Tex. App.—Dallas 2006, no pet.) .............................................18

*Credit Commercial de France, S.A. v. Morales,*
  195 S.W.3d 209 (Tex. App.—San Antonio 2006, pet. denied) ..............................11

*Delta Brands, Inc. v. Danieli Corp.,*
  No. 3:02-CV-0081-N, 2003 WL 22255699 (N.D. Tex. Sept. 29, 2003), *aff'd,* 99 F.
  App'x 1 (5th Cir. 2004) .............................................................................7, 10, 12

*Florance v. Bush,*
  No. 3:09-cv-1470-B-BH, 2010 WL 2730615 (N.D. Tex. May 25, 2010) ...............16

*Flores v. Koster,*
  No. 3:11-CV-0726, 2013 U.S. Dist. LEXIS 92044 (N.D. Tex. May 20, 2013) ...............16, 17

*Freudensprung v. Offshore Tech. Servs., Inc.,*
  379 F.3d 327 (5th Cir. 2004) ...................................................................... passim

*Gant v. DeLeon,*
  786 S.W.2d 259 (Tex. 1990) ...............................................................................21

*Helicopteros Nacionales de Columbia, S.A. v. Hall,*
  466 U.S. 408 (1984) ........................................................................................7, 12

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ........................................................................................7, 14

*Janvey v. Alguire,*
  846 F. Supp. 2d 662 (N.D. Tex. 2011) .................................................................13

*Janvey v. Democratic Senatorial Campaign Comm., Inc.,*
  712 F.3d 185 (5th Cir. 2013) ...............................................................................20

*Johnston v. Multidata Sys. Int'l Corp.,*
  523 F.3d 602 (5th Cir. 2008) .........................................................................12, 14

*Landers Seed Co. v. Champaign Nat. Bank*,
  15 F.3d 729 (7th Cir. 1994) ................................................................................16

*Lucky v. Haynes*,
  No. 3:12-CV-2609, 2013 U.S. Dist. LEXIS 86038 (N.D. Tex. May 28, 2013) ....................16

*Moki Mac River Expeditions v. Drugg*,
  221 S.W.3d 569 (Tex. 2007) ..............................................................................7, 9

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*.
  481 F.3d 309 (5th Cir. 2007) ............................................................................10, 11

*Monkton Ins. Svcs., Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ......................................................................1, 8, 9, 10

*Patterson v. Dietze, Inc.*,
  764 F.2d 1145 (5th Cir. 1985) ............................................................................10

*Pineda v. Countrywide Home Loans, Inc.*,
  No. H-12-356, 2012 WL 2050358 (S.D. Tex. June 6, 2012).....................................20

*Rush v. Savchuk*,
  444 U.S. 320 (1980)..........................................................................................7

*Steans v. Combined Ins. Co. of America*,
  148 F.3d 1266 (11th Cir. 1998) ..........................................................................16

*Steve Silver Co. v. CG Commercial. Funding*,
  No. 3:01-CV-0466-C, 2001 WL 1018754 (N.D. Tex. Aug. 15, 2001)..........................8, 9

*Thomas v. Barton Lodge II, Ltd.*,
  174 F.3d 636 (5th Cir. 1999) ..............................................................................17

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)..................................................................................1, 8, 9

**STATUTES**

28 U.S.C. §§ 754 and 1692 ..................................................................................13

TEX. CIV. PRAC. & REM. CODE § 16.003(a) ..............................................................18

TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4) ..........................................................18

TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5) ..........................................................18

TEX. CIV. PRAC. & REM. CODE § 17.042 ..................................................................7

TEX. REV. CIV. STAT. ANN. art. 581-33H(1)(a) ........................................................18

TEX. REV. CIV. STAT. ANN. art. 581-33H(2)(b) ...........................................................................18

**OTHER AUTHORITIES**

7 CHARLES A. WRIGHT ET AL., Federal Practice & Procedure § 1688 (1986) ..............................16

Fed. R. Civ. P. 4 .....................................................................................................................2, 16, 17

Fed. R. Civ. P. 4(c) ............................................................................................................................16

Fed. R. Civ. P. 4(c)(1) ........................................................................................................................17

Fed. R. Civ. P. 12(b)(2) ........................................................................................................................1

Fed. R. Civ. P. 12(b)(5) .............................................................................................................1, 15, 16

Fed. R. Civ. P. 12(b)(6) ........................................................................................................................1

Fed. R. Civ. P. 21 ........................................................................................................................15, 16

Defendant Blaise Friedli respectfully submits this memorandum in support of his motion to dismiss the Second Amended Class Action Complaint (the "Class SAC") (Docket No. 279) filed by the putative class representatives ("Class Plaintiffs") for want of personal jurisdiction under Rule 12(b)(2), insufficient service of process under Rule 12(b)(5), and failure to state a claim under Rule 12(b)(6).[1]

## PRELIMINARY STATEMENT

Blaise Friedli, the only individual among five bank co-defendants, is a retired former employee of defendant Société Générale Private Banking (Suisse) S.A. ("S.G. Suisse"), where he helped service accounts maintained by R. Allen Stanford.   Mr. Friedli is a complete afterthought to this class action (the "Class Action").   He was not named as a defendant when the Class Action was initiated in August 2009 in Harris County state court; he was not named in the first amended Class Action petition filed in October 2009; Class Plaintiffs never filed a motion to add him as a party to the Class Action; he was never served with process in the Class Action; and, even to this day, Class Plaintiffs proclaim that "[t]his case is directed against the five banks." (Class SAC ¶ 3.)

The claims in the Class SAC against Mr. Friedli should be dismissed for the following reasons:

*First,* this Court lacks personal jurisdiction over Mr. Friedli—a citizen and full-time resident of Switzerland.  Mr. Friedli is a perfect stranger to the State of Texas with the exception of two brief visits—across the span of his entire life.  He has never worked in Texas, he owns no

---

[1] Mr. Friedli appears for the limited purpose of contesting this Court's jurisdiction, without waiving any of his jurisdictional defenses.  The Court previously rejected Mr. Friedli's personal jurisdiction defense in connection with his motion to dismiss the separate Intervenor Complaint.  (Docket No. 194.)  As this is Mr. Friedli's first response to a complaint by the Class Plaintiffs, Mr. Friedli raises an objection to personal jurisdiction in the Class Action both because the law, including the recent decisions in *Walden v. Fiore,* 134 S. Ct. 1115 (2014), and *Monkton Ins. Svcs., Ltd. v. Ritter,* 768 F.3d 429, 433 (5th Cir. 2014), compels dismissal of the Class SAC and to preserve the objection.

property in the state and, under controlling precedent, his incidental contacts with the forum in connection with his Swiss employment fail to give rise to personal jurisdiction under either a general jurisdiction or specific jurisdiction theory.

*Second*, Class Plaintiffs have failed to comply with the Federal Rules of Civil Procedure as they relate to service of process on Mr. Friedli. While Mr. Friedli was served in Switzerland with papers in the Intervenor lawsuit by the Intervenor Plaintiff, Class Plaintiffs failed to comply with the mandatory requirements of Rule 4.

*Third*, even if this Court had jurisdiction over Mr. Friedli, which it does not, all of the claims against Mr. Friedli in the Class SAC are time-barred and should be dismissed for that reason. The applicable limitations period for the claims alleged in the Class SAC range from two years to, at most, a five-year statute of repose for one of the claims. The Class Action was initially commenced in Harris County on August 23, 2009. Although Mr. Friedli was not named a defendant, the original Class Action petition (the "Petition") was peppered with the same allegations concerning Mr. Friedli and his alleged conduct that purport to give rise to the claims in the Class SAC. Yet Mr. Friedli still has not been properly added to the Class Action almost six years later. The August 25, 2014 Order (Docket No. 212), which incorporated by reference the claims from the complaint filed by the Official Stanford Investor Committee (the "Intervenor Complaint") into the then-pending Class Action complaint, does not change that result because that order issued more than five years after the Petition was filed. In short, there can be no dispute that the Class Plaintiffs had actual knowledge of the factual allegations and alleged injuries underlying the claims against Mr. Friedli more than five years before the August 25, 2014 Order, and each claim is therefore time-barred.

Finally, Mr. Friedli joins in the arguments of co-defendants The Toronto-Dominion Bank ("TD Bank") and Trustmark National Bank ("Trustmark"), which are included in their contemporaneously-filed briefs, and incorporates by reference arguments previously asserted by Trustmark and HSBC Bank PLC ("HSBC").

For all of these reasons, the claims in the Class SAC against Mr. Friedli should be dismissed with prejudice.

## BACKGROUND[2]

R. Allen Stanford and certain entities that he controlled, referred to in the Class SAC as the "Stanford Entities," operated a Ponzi scheme whereby investors in certain certificates of deposit lost significant sums of money.  (Class SAC ¶ 10.)  In February 2009, the SEC filed an action against R. Allen Stanford, certain Stanford Entities, and two other individuals in this Court. Ralph S. Janvey was appointed as receiver to liquidate the Stanford Financial group of companies. R. Allen Stanford was subsequently tried and convicted of various crimes in connection with the scheme.

On August 23, 2009, Class Plaintiffs filed the Petition in Harris County District Court.  The Petition alleged claims against the banks currently defending this lawsuit based on many of the same factual allegations as those found in the Class SAC.  The Petition did not name Mr. Friedli as a defendant but it did contain numerous factual allegations concerning Mr. Friedli, which are repeated in the Class SAC.  (Docket No. 1, attachment 4.)  Specifically, the Preliminary Statement of the Petition alleged that S.G. Suisse made "illicit" payments to Stanford's auditor; that "instruction" for these payments "was given by Stanford to Blaise Friedli"; that Mr. Friedli "was a member of the Stanford International Advisory Board"; and that "in a highly unusual transfer of funds, Stanford directed [S.G. Suisse] to transfer more than $100 million out of [S.G. Suisse] in the

---

[2] Solely for purposes of this motion to dismiss, this memorandum accepts as true the facts alleged in the Class SAC.

last two weeks of December 2008."  The Class Plaintiffs also alleged that, through its role as Stanford's banker, "its essential assistance in the payment of bribes" to the auditor, and "Mr. Friedli's position on the Stanford Financial Group Advisory Board," S.G. Suisse knew that Stanford's operation was "illegitimate."  (Docket No. 1, attachment 4 at 4.)  The Petition further alleged that Mr. Friedli provided "active support and assistance" with respect to allegedly illicit payments to Stanford's auditor (Docket No. 1, attachment 4 ¶ 123), and that S.G. Suisse's knowledge of the scheme was based on Mr. Friedli's knowledge.  (Docket No. 1, attachment 4 ¶ 127.)

The Class Action was subsequently removed to this Court.  The Petition was amended on October 9, 2009.  (Docket No. 1, attachment 5.)  The allegations concerning Mr. Friedli's conduct persisted, but he again was not named as a defendant.

In August 2010, this Court approved the formation of the Official Stanford Investors Committee (the "Committee"), and designated it to represent the interest of Stanford International Bank, Ltd. ("SIBL") investors and to litigate against third parties for the benefit of the SIBL investors and on behalf of the Receiver.  (Case No. 3:09-CV-298-N, Docket No. 1149, ¶¶ 1, 8.)

The Committee filed a Motion to Intervene on December 5, 2011 (Docket No. 96) and on January 5, 2012, the Class Plaintiffs filed a motion to join the Committee as a Plaintiff.  (Docket No. 112.)  Mr. Friedli was not mentioned in either motion.  On December 6, 2012, the Court entered an order granting the Committee's motion to intervene.  (Docket No. 129).  Again, Mr. Friedli was not mentioned.

On December 14, 2012, the Committee filed the Intevenor Complaint, naming Mr. Friedli as a defendant of the Committee's claims.  (Docket No. 130.)  That same day, Class Plaintiffs filed a Motion for Leave to Amend the Class Action Complaint (Docket No. 131, the "Motion to

Amend the Class Action"), seeking to "incorporate by reference all allegations in the Intervenor Complaint" into the Class Action Petition. No motion was made to join Mr. Friedli as a party to the Class Action, which by this point in time had been pending for years. Mr. Friedli was not served with the Motion to Amend the Class Action or any other papers in the Class Action.

On June 7, 2013, proof of service for the papers served on Mr. Friedli related to the Intervenor Action was filed on the docket. (Docket No. 149.) This filing shows that he was served with a summons and the Committee's Intervenor Complaint. He was not served with any papers related to the Class Action.

On July 10, 2013, Mr. Friedli filed a motion to dismiss the Intervenor Complaint for lack of personal jurisdiction and on the merits. (Docket No. 160.) The motion did not address the Class Action because Mr. Friedli was not named a defendant in the Class Action and had not been served with process related thereto.

On June 5, 2014, the Court issued an order (the "June 5, 2014 Order") denying Mr. Friedli's motion to dismiss the Intervenor Complaint for lack of personal jurisdiction. (Docket No. 194.) Mr. Friedli moved for reconsideration on July 3, 2014 (Docket No. 202), which was subsequently denied.

On August 25, 2014, more than five years after the Class Action Petition was filed in Harris County – specifically detailing Mr. Friedli's alleged role – this Court granted Class Plaintiffs' Motion to Amend the Class Action (Docket No. 212, the "August 25, 2014 Order") which purported to "incorporate by reference" into the Class Action the Committee's "claims against" Mr. Friedli. The Court observed that Defendant S.G. Suisse did not oppose the motion. The Court did not, however, make the same observation as to Mr. Friedli, nor could it, because Mr. Friedli was never served with the Motion to Amend the Class Action.

At no time thereafter did Class Plaintiffs file a motion to add Mr. Friedli to the Class Action or serve Mr. Friedli with papers in the Class Action.

On April 21, 2015, this Court granted in part and denied in part Mr. Friedli's motion to dismiss. (Docket No. 234, the "April 21, 2015 Order".)

On June 23, 2015, Class Plaintiffs' filed the Class SAC. (Docket No. 279.) For the first time in the long history of the Class Action, Mr. Friedli was listed as a defendant in a Class Action complaint. However, Class Plaintiffs still failed to file a motion to add Mr. Friedli to the Class Action or to serve him with process in the Class Action.

The Class SAC alleges five causes of action against Mr. Friedli and the other defendants:

1. Common law aiding, abetting, or participation in a fraudulent scheme;
2. Aiding, abetting or participation in violations of the Texas Securities Act;
3. Aiding, abetting or participation in breach of fiduciary duty;
4. Aiding, abetting or participation in conversion; and
5. Civil conspiracy.

(Class SAC ¶¶ 428–48.) Each of the claims against Mr. Friedli is tied to the very same facts alleged in the initial Class Action Petition.

## ARGUMENT

### I.   This Court Lacks Personal Jurisdiction Over Mr. Friedli

This Court cannot exercise personal jurisdiction over Mr. Friedli and, thus, Class Plaintiffs' claims against him should be dismissed. Mr. Friedli is a resident of Switzerland. Personal jurisdiction over a nonresident defendant like Mr. Friedli exists only if "(1) the forum state's long-arm statute confers personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Freudensprung v. Offshore Tech. Servs.*, *Inc.,* 379 F.3d 327, 343 (5th Cir. 2004). Under Texas law, these "inquiries merge into one because the Texas long-arm statute permits the exercise of

jurisdiction over a non-resident defendant to the fullest extent allowed under the U.S. Constitution." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 17.042 (Vernon 2008)); *see also Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). That requirement is satisfied only if (1) the nonresident has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with the "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Freudensprung*, 379 F.3d at 343.

Absent an evidentiary hearing, the plaintiff bears the prima facie burden of pleading allegations sufficient to invoke jurisdiction. *Delta Brands, Inc. v. Danieli Corp.*, No. 3:02-CV-0081-N, 2003 WL 22255699, at *2 (N.D. Tex. Sept. 29, 2003), *aff'd*, 99 F. App'x 1 (5th Cir. 2004). Due process requires that the minimum contacts requirement be satisfied as to *each* defendant and *each* claim, and the court may not consider defending parties together and aggregate their forum contacts. *See Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980); *Aerotech Holdings, Inc. v. Alliance Aerospace Eng'g, LLC*, 650 F. Supp. 2d 594, 599 (N.D. Tex. 2009). Thus, under the Constitution and controlling case law, the threshold question is whether Mr. Friedli alone "purposely availed" himself of the privilege of conducting activities in Texas. *See Freudensprung v. Offshore Tech. Servs.*, *Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). Allegations about S.G. Suisse, other S.G. Suisse employees or other defendants are simply not relevant to this analysis.

"Minimum contacts" can be satisfied either through contacts that give rise to "specific jurisdiction" or to "general jurisdiction." *Freudensprung,* 379 F.3d at 343; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984).

Respectfully, while the Court found personal jurisdiction in connection with the Intervenor action, Mr. Friedli submits that no jurisdiction exists.  While the Class SAC recites buzz words of personal jurisdiction (e.g., "Defendants regularly conducted business in Texas and/or engaged in continuous and systematic activities within Texas . . . .") these are mere conclusions, and the Class SAC does not allege *any facts* that constitute minimum contacts. (Class SAC ¶ 36.)  Moreover, all of the jurisdictional-related conclusions in the Class SAC are directed to all of the Defendants collectively.  Class Plaintiffs ignore the requirement that minimum contacts must exist as to each defendant individually.

In denying Mr. Friedli's Motion to Dismiss the Intervenor Complaint, the Court looked beyond the pleadings and indicated that jurisdiction was supported by Mr. Friedli's two trips to Texas; his alleged seat on Stanford's International Advisory Board; and the fact that injury from the Ponzi scheme was allegedly felt in Texas.  (Docket No. 243 at 9.)  Under the Supreme Court's decision in *Walden v. Fiore*,[3] and the Fifth Circuit's decision in *Monkton Insurance Services v. Ritter*,[4] which was decided after the Court denied Mr. Friedli's personal jurisdiction motion in response to the Intevenor Complaint, these contacts are insufficient to hale Mr. Friedli into a court in a foreign land.  Finally, Mr. Friedli has submitted a declaration (the "Friedli Decl.) that demonstrates a lack of minimum contacts.[5]  (Docket No. 161 at 2–3.)  Based on the foregoing, Class Plaintiffs' claims against Mr. Friedli should be dismissed.

---

[3] 134 S.Ct. 1115 (2014).

[4] 768 F.3d 429 (5th Cir. 2014).

[5] This Court can consider Mr. Friedli's declaration. *Steve Silver Co. v. CG Commercial. Funding*, No. 3:01-CV-0466-C, 2001 WL 1018754 at *4 (N.D. Tex. Aug. 15, 2001) ("On a motion to dismiss for lack of personal jurisdiction . . . the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods.").

### A.  The Court Lacks Specific Jurisdiction Over Mr. Friedli

A court may exercise "specific jurisdiction" when (1) the defendant "purposefully directed" his activities towards the state or "purposefully availed" himself "of the privileges of conducting activities" there; and (2) "the controversy arises out of or is related to the defendant's contacts with the forum state."  *Freudensprung*, 379 F.3d at 343.  Even where the nonresident defendant has contacts with the forum, there must also be "a substantial connection between those contacts and the operative facts of the litigation."  *Moki Mac,* 221 S.W.3d at 585; *Steve Silver Co.*, 2001 WL 1018754, at *9.

The Supreme Court recently explained in *Walden* that jurisdiction may be imposed only where there is suit-related conduct that creates a substantial connection with the forum.  134 S. Ct. at 1121 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit related conduct must create a substantial connection with the forum State.").

The Fifth Circuit, in *Ritter*, recently determined that a Texas court lacked personal jurisdiction on facts that are strikingly similar to those present here.  In that case, the plaintiff alleged that a Cayman Islands bank was subject to specific jurisdiction in Texas because:  (i) the bank entered into a contract with an entity whose owner and director was located in Texas; (ii) the contract itself was sent to the owner/director in Texas; (iii) the bank made wire transfers to Texas; and (iv) there were discussions between the bank and the owner/director, who was located in Texas during those discussions.  *Ritter*, 768 F.3d at 433.

The Fifth Circuit held that such contacts are insufficient:

> We have previously explained that a defendant does not have minimum contacts with a state when it does not have a physical presence in the state; it did not conduct business in the state; and the contract underlying the business transaction at issue in the lawsuit was not signed in the state and did not call for performance

> in the state. Nor can the plaintiff's own contacts with the forum be
> used to demonstrate contacts by the defendant.

*Id.* (citations omitted).

The Class SAC attempts to establish specific jurisdiction with allegations that Defendants "transacted and communicated" with R. Allen Stanford who was located in Texas. (Class SAC ¶ 37.) Those allegations are wholly inadequate. *Ritter* makes clear that specific jurisdiction cannot be established through tenuous contacts such as contracting with, transmitting payments or periodic account statements to, or engaging in communications with a resident of the State. *See id.*; *see also Freudensprung,* 379 F.3d at 344; *Patterson v. Dietze, Inc.,* 764 F.2d 1145, 1147 (5th Cir. 1985); *Delta Brands, Inc.*, 2003 WL 22255699, at *4. Thus, even assuming that Mr. Friedli communicated with R. Allen Stanford while R. Allen Stanford was in Texas or mailed correspondence there, such communications are insufficient to establish minimum contacts.

*Ritter* reinforces *Moncrief Oil Int'l, Inc. v. OAO Gazprom.* 481 F.3d 309 (5th Cir. 2007). There, a Texas company, Moncrief, contracted with a Russian company concerning exploration of a Russian natural gas field. After a dispute arose, Moncrief sued the Russian contract-counterparty (and affiliates) in Texas. The claims were dismissed for lack of personal jurisdiction. The Fifth Circuit affirmed, notwithstanding that an executive of the Russian defendant visited Texas, holding:

> An exchange of communications in the course of developing or
> carrying out a contract . . . does not, by itself, constitute the
> required purposeful availment of the benefits of Texas law . . . .
> Otherwise, jurisdiction could be exercised based only on the
> fortuity that one of the parties happens to reside in the forum
> state.

*Id.* at 312 (citations omitted). The fact that the Russian counterparty could foresee that Moncrief would perform many of its duties in Texas did not change the result. Texas was not

the hub of the parties' activities; Moncrief was an international company engaged in projects around the world, and the contract called for the application of Russian law and arbitration in Russia. *See id.* at 312–313.

Here, the Stanford Entities were engaged in international activity, the accounts at issue were in Switzerland, and the account and loan agreements between R. Allen Stanford and S.G. Suisse were governed by Swiss law, not the law of the State of Texas. (Friedli Affidavit, Docket No. 161.) Indeed, the Class SAC recognizes that SIBL is domiciled in Antigua, that Stanford Financial Group also operated offices in Memphis and Miami, that beneficiaries of the S.G. Suisse accounts were in Antigua, Switzerland and Panama, that transfers to the accounting firm, C.A.S. Hewlett & Co., were to banks in London, Puerto Rico and the Virgin Islands, and that the $95 million loan featured in the Class SAC was to purchase a Venezuelan bank. (Class SAC ¶¶ 2, 141, 292.) To the extent Mr. Friedli communicated with residents in Texas in servicing these international accounts, those communications do not constitute purposeful availment or otherwise satisfy minimum contacts.[6]

The Class SAC also alleges that the Defendants "committed tortious acts directed towards Texas; and/or aided and abetted violations of the Texas Securities Act." (Class SAC ¶ 36.) Again, those allegations are patently insufficient. Intentionally tortious conduct that harms a Texas resident, without more, does not create jurisdiction. *Moncrief Oil,* 481 F.3d 309 at 313-14. Similarly, Class Plaintiffs' unfounded allegations of a conspiracy are entitled to no weight in this analysis. *Delta Brands, Inc.,* 2003 WL 22255699, at *7. Simply put, the Class SAC alleges

---

[6] The state appellate court's decision in *Credit Commercial de France, S.A. v. Morales*, 195 S.W.3d 209 (Tex. App.—San Antonio 2006, pet. denied) is also instructive. There, a class of Mexican nationals, who entrusted their money to a Texas advisor, Sharp Capital, Inc., for investment, alleged that two French financial institutions assisted Sharp in a scheme which led to a loss in the investments. The court concluded that the French entities' contacts with Texas, including communications and multiple visits, were insufficient. *Id.*

no facts sufficient to establish personal jurisdiction over Mr. Friedli under a specific jurisdiction theory.

### B.  The Court Also Lacks General Jurisdiction Over Mr. Friedli

Class Plaintiffs cannot seriously suggest that the Court has personal jurisdiction over Mr. Friedli based on a *general* jurisdiction theory.  General jurisdiction may be exercised only when a defendant's contacts with the forum are sufficiently numerous, purposeful, and continuous, as to render fair an assertion of power over the defendant by that state's courts no matter the nature or extent of the relationship to the forum entailed in the particular litigation.  *Helicopteros Nacionales de Colombia,* 466 U.S. at 415–16 (1984).  General jurisdiction thus exists only if the defendant conducted very substantial activities in the forum.  *See Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 612 (5th Cir. 2008) (no personal jurisdiction because defendant's activities were "lacking the substance or regularity necessary to establish general jurisdiction").

Class Plaintiffs make no allegations to support general jurisdiction, and Mr. Friedli's Declaration conclusively establishes the absence of any such facts.  In particular, Mr. Friedli has never been employed or licensed to do business in Texas; he has never had employees, offices, or bank accounts in Texas; he has never owned real or personal property in Texas; he has never rented real property in Texas; he has never had a mailing address or telephone number in Texas; he has never paid real estate or income taxes in Texas; he has never advertised in Texas; he has never had a registered agent for service of process in Texas; he has, to the best of his knowledge, never been a party to a contract that contains a Texas choice-of-law or dispute resolution provision; he has never commenced a lawsuit in a court in Texas; and he has only had two brief visits to the State of Texas.  (Friedli Affidavit, Docket No. 161 at 2–3.)

12

### C.  Class Plaintiffs' Alternative Theory Of Jurisdiction Fails

Class Plaintiffs also invoke 28 U.S.C. §§ 754 and 1692 as a basis for personal jurisdiction.  (Class SAC ¶ 15.)  This alternative theory of jurisdiction, however, is entirely unsupported.  This Court addressed jurisdictional questions under those statutes, which address the powers of a receiver, in *Janvey v. Alguire,* 846 F. Supp. 2d 662, 668–69 (N.D. Tex. 2011).  But that case does not support *in personam* jurisdiction over Mr. Friedli.  There, Ralph Janvey, the receiver, sought to recover estate assets in the possession of former employees of Stanford Entities, including Ken Crimmins.  The Court concluded that it had personal jurisdiction over Mr. Crimmins, who worked for the Stanford Group Company in Houston, and presumably was in possession of estate assets in Texas.  The Court also reviewed the role of the Receiver under 28 U.S.C. §§ 754 and 1692 and concluded that these statutes provide a "stepping stone" to exercising personal jurisdiction "over those persons having custody" over estate property.  *Id.* at 669.

That conclusion is consistent with § 754, which provides in part: "A receiver appointed in any civil action or proceeding involving property . . . situated in different districts shall . . . be vested with complete jurisdiction and control *of all such property* with the right to take possession thereof." (Emphasis added).  Here, however, there is no allegation in the Class SAC that Mr. Friedli is in possession of any estate property.  The bank accounts described in the Class SAC were held at S.G. Suisse, which maintained custody over the assets deposited therein, not personally by Mr. Friedli, who never exercised any control over them.

### D.  Exercising Personal Jurisdiction Over Mr. Friedli Offends Due Process

The exercise of personal jurisdiction over Mr. Friedli does not comport with "traditional notions of fair play and substantial justice," as required by the Due Process Clause of the Fourteenth Amendment.  *See Freudensprung*, 379 F.3d at 343 ("As interpreted by the Supreme Court, the Fourteenth Amendment Due Process clause requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" (quoting *Int'l Shoe Co.*, 326 U.S. at 316 (1945))).

The Supreme Court recognized the "unique burdens placed upon one who must defend oneself in a foreign legal system" and directed that the burden on an alien defendant "should have *significant weight* in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114–15 (1987) (emphasis added); *see also Johnston*, 523 F.3d at 615–18 (holding that "traditional notions of fair play and substantial justice would be violated if we exercised jurisdiction over [the Canadian defendant] in this case").

In its June 5, 2015 Order finding personal jurisdiction with respect to the Committee's Intervenor Complaint, the Court concluded that none of the Foreign Defendants (HSBC, S.G. Suisse, and Mr. Friedli) would be significantly burdened by defending a case in Texas and that each of the Foreign Defendants can "certainly afford that burden." (Docket No. 194 at 11.) Respectfully, that conclusion as applied to Mr. Friedli is unfair.

Mr. Friedli is an individual, and he is being compelled to defend a matter in a foreign land thousands of miles from home in complicated proceedings involving numerous defendants

14

that could drag on for years.  The burden imposed upon him as an individual is very different from the burden imposed upon a foreign business entity, which by its nature has greater resources and multiple persons who can address the litigation.

The Court also observed that it was not a burden to travel to Texas "when they [the Foreign Defendants] were seeking business."  (Docket No. 194.)  There is a substantial difference between the burden of travel for two short meetings over the course of two decades and what is required to defend this litigation, particularly if this matter were to go to trial.  All of this is especially true because, as set forth in the supplemental affidavit of Mr. Friedli dated June 27, 2014 (Docket No. 203), Mr. Friedli retired and is no longer an employee of S.G. Suisse, effective December 31, 2013.

## II. Class Plaintiffs' Claims Should Be Dismissed Because They Have Failed To Serve Mr. Friedli In Accordance With The Federal Rules Of Civil Procedure

The procedural background that led to Mr. Friedli's status as a defendant in the Class SAC (summarized above) is complicated, if not tortured.  But the bottom line is that Mr. Friedli was only served in Switzerland *by the Committee* with papers *only* related to the *Intervenor Complaint*.  He was never served with process in the Class Action, and for that reason the claims should be dismissed under Rule 12(b)(5).

Rule 21 provided the Class Plaintiffs with a method to add Mr. Friedli as a defendant to the Class Action, but they never made a motion pursuant to that rule.  Instead, Class Plaintiffs requested "leave to amend the [Petition] to incorporate by reference all allegations and causes of action stated in the [Intervenor] Complaint."  (Docket No. 182 at 3.)  The Court subsequently entered the August 25, 2014 Order, which stated, "From the date of this Order, Plaintiffs' Class Complaint shall be considered to incorporate by reference [the Committee's] claims against

Defendants SG Private Banking (Suisse) S.A. and Blaise Friedli . . . ."  (Docket No. 212.)  No order was issued granting leave to add Mr. Friedli as a party.

But even if the Class Plaintiffs and the Court were to treat the August 25, 2014 Order as permission to add Mr. Friedli as a party to the Class Action, the Class Plaintiffs were still required to serve Mr. Friedli with process with respect to the Class Action:

> If permission to add a party defendant is granted, plaintiff must comply with the requirements of Rule 3 and 4 relating to the issuance of a summons and service on the added party.

7 CHARLES A. WRIGHT ET AL., Federal Practice & Procedure § 1688 (1986); *see generally Landers Seed Co. v. Champaign Nat. Bank*, 15 F.3d 729, 732 (7th Cir. 1994) (finding that individuals were not made parties to the suit because they were not served with summonses and complaints pursuant to Rule 21); *Steans v. Combined Ins. Co. of America*, 148 F.3d 1266, 1270 (11th Cir. 1998) (finding that one cannot be bound to a judgment in a litigation to which he has not been made a party by service of process).

Class Plaintiffs completely failed to serve Mr. Friedli in connection with the Class Action.  Rule 12(b)(5) creates a defense to a claim for relief for "lack of delivery of the summons and complaint."  *Flores v. Koster*, No. 3:11-CV-0726, 2013 U.S. Dist. LEXIS 92044, at *5 (N.D. Tex. May 20, 2013).  "A federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure."  *Id.* at *5–6.  Moreover, "courts insist on strict compliance with the rules for service of process."  *Florance v. Bush*, No. 3:09-cv-1470-B-BH, 2010 WL 2730615, at *3 (N.D. Tex. May 25, 2010).

Plaintiffs bear the burden of properly serving all defendants with a copy of the summons and complaint (*see* Fed. R. Civ. P. 4(c)), as well as the burden to demonstrate valid service.  *See*

16

*Lucky v. Haynes*, No. 3:12-CV-2609, 2013 U.S. Dist. LEXIS 86038, at *11 (N.D. Tex. May 28, 2013); *Flores*, 2013 U.S. Dist. LEXIS 92044, at *6–7. Because Mr. Friedli was not served with a summons together with a Class Action complaint, Class Plaintiffs cannot satisfy that burden.

Class Plaintiffs will undoubtedly argue that they can rely upon the summons served by the Committee. But Rule 4(c)(1) specifically requires that a summons be accompanied with a copy of the complaint and, as demonstrated by a review of the service return (Docket No. 149), the Committee did not serve Mr. Friedli with the Class Action Petition. Indeed, service by the Committee predated the August 25, 2014 Order by well over a year, and a summons served by a different plaintiff with a different complaint does not satisfy Rule 4.

## III.   Class Plaintiffs' Claims Against Mr. Friedli Are Time Barred.

The claims against Mr. Friedli in the Class SAC should be dismissed in full because each claim is barred by the applicable statute of limitation for the reasons set forth in the memorandum of law submitted by TD Bank and Trustmark and for the separate and additional reasons set for the below.

### A.   The Applicable Limitations Periods

Class Plaintiffs allege five causes of action in the Class SAC. As a general matter, aiding and abetting claims are subject to the same limitations period as the underlying claims, and the applicable statutes of limitation are summarized below.[7]

---

[7] *See Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 647 (5th Cir. 1999) (applying statute of limitations of underlying claim to aiding and abetting).

| Cause of action | Statute of limitation/repose | Authority |
|---|---|---|
| Common law aiding, abetting, or participation in a fraudulent scheme | Four years | TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4) |
| Aiding, abetting or participation in violations of the Texas Securities Act | Three years from the date the omission was or should have been discovered; five year statute of repose from the sale of the security[8] | TEX. REV. CIV. STAT. ANN. art. 581-33H(2)(b) |
| Aiding, abetting or participation in breach of fiduciary duty; | Four years | TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5) |
| Aiding, abetting or participation in conversion | Two years | TEX. CIV. PRAC. & REM. CODE § 16.003(a) |
| Civil conspiracy | Two years | TEX. CIV. PRAC. & REM. CODE § 16.003(a) |

Generally, a cause of action accrues when a wrongful act injures a plaintiff, regardless of any other circumstances. *Baxter v. Gardere Wynne Sewell, LLP*, 182 S.W.3d 460, 462 (Tex. App.—Dallas 2006, no pet.). And even under Texas's discovery rule, accrual does not depend on whether the plaintiff knows the *specific* nature of *each* wrongful act. *Id.* Rather, the clock starts, when the "plaintiff knew or should have known of their injury, not the identity of the wrongdoer." *Id.*

### B. The Limitations Clock Began To Run No Later Than August 23, 2009

The Class SAC claims against Mr. Friedli are based on his servicing of Stanford accounts at S.G. Suisse, his alleged seat on the Stanford Financial Group International Advisory Board, payments of alleged bribes through S.G. Suisse accounts to Stanford's auditor, and repayment of

---

[8] Class Plaintiffs do not specify the provision of the TSA on which they base their claim. The above statutes of limitation and repose, however, represent the longest limitations period available to Class Plaintiffs. Mr. Friedli therefore reserves the right to argue that the shorter limitations period in TEX. REV. CIV. STAT. ANN. art. 581-33H(1)(a) applies.

a large Stanford loan in December 2008.  All of that was known to Class Plaintiffs by August 23, 2009 because they cited it in the initial Class Action Petition.  Indeed, based on a side-by-side comparison of the original Class Action Petition and the new Class SAC, this is incontrovertible:

| Petition Filed August 23, 2009 | Class SAC |
|---|---|
| "[B]ased upon Mr. Friedli's knowledge: (a) of Stanford as a member of Stanford's International Advisory Board; (b) of Stanford's bank accounts and funds transfers as the Executive Vice President of Private Banking at Société Générale and the Société Générale banker in charge of overseeing [the Stanford] accounts . . . Société Générale knew, or should have known, that Stanford was conducting an illegal and fraudulent scheme." (Petition ¶ 127.) | "All of the Stanford Entities' depository accounts and investments at, or made through, SG Suisse were supervised in all respects by . . . Blaise Friedli . . . ." (Class SAC ¶ 279.) |
| "Through its roles as Stanford's private banker, its essential assistance in the payment of bribes to Stanford's purported auditor, and Mr. Friedli's position on the Stanford Financial Group International Advisory Board . . . Société Générale either knew that Stanford's banking operation was illegitimate or, through reasonable and required diligence, could have determined that it was illegitimate." (Petition at 3.) | "Rather, SG Suisse had actual knowledge of the amount and purpose of each transaction and the diversion of massive amounts of investor funds for improper purposes through the 731 Account.  As noted above, given his long-standing relationship with Stanford, his status as fiduciary to the Stanford Entities, his intimate knowledge of R.A. Stanford's business operations through service on the International Advisory Board, and as a paid consultant and Stanford *confidante*, his role as the banking officer in charge of Account 731, and international banking and business practices, Friedli was aware of R.A. Stanford's improper activities at all relevant times and Friedli and SG Suisse acted as R.A. Stanford's secret partners in facilitating his fraud and the diversion of investor funds." (Class SAC ¶ 288.) |
| "Moreover, in a highly unusual transfer of funds, Stanford directed Société Générale to transfer more than $100 million out of Société Générale in the last two weeks of December 2008." (Petition at 3.) | "But R.A. Stanford's longstanding close personal relationship with SG Suisse Vice President Blaise Friedli held sway and prevented SG Suisse from applying what it knew to prevent the theft of investor funds. |

| | Indeed, as SG Suisse became aware that the Stanford empire was beginning to crumble, it called a $95 million personal loan to R.A. Stanford, which was repaid to SG Suisse with what it knew were SIBL CD investor assets." (Class SAC ¶ 9.) |
|---|---|
| Mr. Friedli "served on the Stanford Financial Group International Advisory Board." (Petition ¶ 122.) | "Blaise Friedli, SG Suisse's Executive Vice President, served on [SIBL's advisory board], which met as recently as September 25, 2008 in New York City with Friedli in attendance." (Class SAC ¶ 29.) |
| "Stanford, with the active support and assistance of Friedli and Société Générale made illicit payments to Stanford's outside auditor in exchange for the auditor's role in conducting sham audits and falsely vouching for the financial integrity of SIBL and SIBL investments." (Petition ¶ 123.) | "[A]t the direction of R.A. Stanford and Jim Davis, Friedli regularly transferred large sums of money from Account 731 to three separate accounts in the name of SIBL's purported auditor, CAS Hewlett . . . ." (Class SAC ¶ 292.) |

Consistent with the contents of the original Petition, the Fifth Circuit has recognized that "the true nature and duration of Stanford's operation of a massive Ponzi scheme" was known at least by August 2009. *See Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 197-98 (5th Cir. 2013).

### C.  The August 25, 2014 Order Does Not Save Class Plaintiffs' Claims

Class Plaintiffs' claims are all barred by their applicable statutes of limitation.

Mr. Friedli has never been served in the Class Action.  As demonstrated above, the clock started running at least as early as August 23, 2009 and it has never stopped, nearly six years later.  *Pineda v. Countrywide Home Loans, Inc.*, No. H-12-356, 2012 WL 2050358, at *2–3 (S.D. Tex. June 6, 2012) (dismissing claim on 12(b)(6) motion "[b]ased on the lack of recorded efforts to serve [d]efendants within the four-year statute of limitations, notwithstanding the availability of information regarding [defendant's] registered agent . . . ."); *Gant v. DeLeon*, 786

S.W.2d 259, 260 (Tex. 1990) ("a plaintiff must not only file suit within the applicable limitations period, but must also use diligence to have the defendant served with process").

But even if the Court ignores Class Plaintiffs' failure to serve, and deems the claims against him to be "on file" by virtue of the August 25, 2014 Order, the claims are still time barred.

As set forth above, the conversion (Count 4) and civil conspiracy (Count 5) claims have two-year statutes of limitation; and the fraudulent scheme (Count 1) and breach of fiduciary duty (Count 3) claims have four-year statutes of limitation. The Texas Securities Act claim (Count 2) has, at most, a three-year statute of limitations and, at most, is subject to a five-year statute of repose after the sale of the security. The allegations underlying the claims against Mr. Friedli were all laid out in the initial Class Action Petition, filed on August 23, 2009, more than five years before the August 25, 2014 Order, and therefore the claims should be dismissed.

## IV. Class Plaintiffs' Claims Should Be Dismissed For The Additional Reasons Set Forth In The Briefs Filed By Mr. Friedli's Co-Defendants And In Prior Briefing

Mr. Friedli's co-defendants are moving to dismiss the claims asserted against them. Mr. Friedli incorporates by reference the arguments and authorities from those motions as additional grounds for dismissal of Class Plaintiffs' claims.

Mr. Friedli also expressly incorporates the arguments his co-defendants made in prior motions to dismiss the Class Action Complaint. For example, the Class SAC fails to state a claim for aiding, abetting, or participation in a fraudulent scheme as the claim is not cognizable under Texas law and Class Plaintiffs fail to allege that Mr. Friedli had actual knowledge of the fraudulent scheme or provided substantial assistance to the alleged fraud. (*See* Trustmark's Motion to Dismiss, docket no. 31 at 14-17.)

Class Plaintiffs' civil conspiracy claim also fails because they have failed to allege that Mr. Friedli engaged in knowing misconduct and that he entered into an agreement to accomplish an unlawful purpose.  (*See* HSBC's Motion to Dismiss, docket no. 28 at 10–11.)

## **CONCLUSION**

For all of the foregoing reasons, Mr. Friedli respectfully requests that this Court grant his motion to dismiss.

Dated: July 14, 2015

Respectfully submitted,

/s/ Brian A. Herman
Brian A. Herman (Admitted Pro Hac Vice)
(N.Y. Bar No. 2959120)
Stephanie Gamiz (Pro Hac Vice Pending)
(N.Y. Bar No. 5122163)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
T.  212.309.6000
F.  212.309.6001
bherman@morganlewis.com
sgamiz@morganlewis.com

Aaron C. Christian (Tex. Bar No. 24076089)
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, Texas  75201
T. 214.466.4000
F. 214.466.4001
achristian@morganlewis.com

Ryan C. Wooten (Tex. Bar No. 24075308)
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas  77002
T. 713.890.5000
F. 713.890.5001
rwooten@morganlewis.com

Attorneys for Defendant
Blaise Friedli

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July 2015, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Brian A. Herman
Brian A. Herman