IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, et al. on behalf of themselves and all others similarly situated, | § § § | |
| | § | Civil Action No 3:09-CV-02384-N-BG |
| *Plaintiffs*, | § § | |
| | § | Judge: Hon. David C. Godbey |
| and | § § | |
| | § | Mag.: Hon. Nancy M. Koenig |
| THE OFFICIAL STANFORD INVESTORS COMMITTEE | § § § | |
| *Plaintiff-Intervenor*, | § § | |
| v. | § § | |
| TRUSTMARK NATIONAL BANK, et al., | § § § | |
| *Defendants*. | § | |

**CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

**Fishman Haygood, L.L.P.**
James R. Swanson
Lance C. McCardle
Benjamin D. Reichard
Jesse C. Stewart
201 St. Charles Ave. Ste. 4600
New Orleans, LA 70170

**Butzel Long, P.C.**
Peter D. Morgenstern
Joshua E. Abraham
230 Park Ave. Ste. 850
New York, NY 10169

*Attorneys for the Plaintiffs*

Eric Seiler
Scott M. Berman
**Friedman Kaplan Seiler & Adelman, L.L.P.**
7 Times Square
New York, NY 10036-6516

*Of Counsel*

# TABLE OF CONTENTS

Page

I.   Preliminary Statement ...........................................................................................1

II.   Legal Standard .......................................................................................................2

III.   Argument ...............................................................................................................3

    A.   Plaintiffs' TSA claims are timely and properly pled ................................4

        1.   Applicable law ...............................................................................4

        2.   The TSA's 5-year statute of repose does not bar Plaintiffs' TSA claims...........................................................................5

        3.   The TSA's 3-year statute of limitations does not bar Plaintiffs' TSA claims.................................................................20

        4.   Plaintiffs' TSA claims are properly pled ....................................21

    B.   Plaintiffs' fiduciary duty claims are cognizable, timely, and properly pled ............................................................................................23

        1.   Aiding a breach of fiduciary duty is a cognizable claim under Texas law ............................................................................23

        2.   Plaintiffs' breach of fiduciary duty claims are not time-barred...................................................................................23

        3.   Plaintiffs' breach of fiduciary duty claims are properly pled............................................................................................26

    C.   The Bank Defendants fail to articulate an adequate basis for reconsidering the Court's prior rulings .................................................28

    D.   Blaise Friedli offers no independent grounds for dismissing Plaintiffs' claims ....................................................................................29

        1.   The Court has already rejected Friedli's jurisdictional challenge ......................................................................................29

        2.   Friedli's objections to sufficiency of service are unavailing ....................30

        3.   Plaintiffs' claims against Friedli are not time-barred when measured from December 14, 2012 ........................................34

IV.   Conclusion ...........................................................................................................35

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Aguilar v. Trujillo*,
   162 S.W.3d 839 (Tex. App. 2005)..................................................................... passim

*Albert v. Carovano*,
   851 F.2d 561 (2d Cir. 1988)..............................................................................6

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ...................................................................11, 15

*Anderson v. Cain*,
   402 B.R. 752 (E.D. Tex. 2009)..............................................................28, 29, 30

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................7, 17

*Bailey v. State*,
   155 S.W.3d 346 (Tex. App. 2004)......................................................................16

*Bensinger v. Denbury Res. Inc.*,
   31 F. Supp. 3d 503 (E.D.N.Y. 2014) ...................................................................18

*Bradley v. Etessam*,
   703 S.W.2d 237 (Tex. App. 1985)...............................................................13, 19

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*,
   748 F.3d 631 (5th Cir. 2014) ........................................................................2, 3

*Brazosport Bank of Texas v. Oak Park Townhouses*,
   889 S.W.2d 676 (Tex. App. 1994)......................................................................24

*BRS Associates, L.P. v. Dansker*,
   246 B.R. 755 (S.D.N.Y. 2000)...............................................................11, 15, 20

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*,
   419 F.3d 355 (5th Cir. 2005) ........................................................................18

*Cactus Pipe & Supply Co. v. M/V Montmartre*,
   756 F.2d 1103 (5th Cir. 1985) ........................................................................31

*CTS Corp. v. Waldburger*,
   134 S. Ct. 2175 (2014).................................................................... passim

*Curry v. Heard*,
   819 F.2d 130 (5th Cir. 1987) ...........................................................................35

*Darocy v. Abildtrup*,
   345 S.W.3d 129 (Tex. App. 2011) ...................................................................26

*Dow Agrosciences, LLC. v. Bates*,
   No. 01-331, 2003 WL 22660741 (N.D. Tex. Oct. 14, 2003)...............................32

*Duperier v. Texas State Bank*,
   28 S.W.3d 740 (Tex. App. 2000)........................................................................2

*Dussouy v. Gulf Coast Inv. Corp.*,
   660 F.2d 594 (5th Cir. 1981) ...................................................................6, 11, 15

*Farr v. Designer Phosphate & Premix Int'l, Inc.*,
   804 F. Supp. 1190 (D. Neb. 1992)..............................................................11, 15

*FDIC v. Bennett*,
   898 F.2d 477 (5th Cir. 1990) ................................................................... passim

*FDIC v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   No. 14-126, 2014 WL 4161561 (W.D. Tex. Aug. 18, 2014)...............................18

*Fluor Engineers and Constructors, Inc. v. Southern Pacific Transportation Co.*,
   753 F.2d 444 (5th Cir.1985) .............................................................................35

*Galbraith Eng'g Consultants, Inc. v. Pochucha*,
   290 S.W.3d 863 (Tex. 2009)..............................................................................18

*Gochnauer v. A.G. Edwards & Sons, Inc.*,
   810 F.2d 1042 (11th Cir. 1987) ........................................................................25

*Goldstein v. Mortenson*,
   113 S.W.3d 769 (Tex. App. 2003)......................................................................16

*Hall v. Variable Annuity Life Ins. Co.*,
   727 F.3d 372 (5th Cir. 2013) .........................................................................8, 18

*Hand v. Dean Witter Reynolds Inc.*,
   889 S.W.2d 483 (Tex. App. 1994).........................................................25, 26, 27

*Harris v. OSI Fin. Servs., Inc.*,
   595 F. Supp. 2d 885 (N.D. Ill. 2009) ................................................................18

*HECI Exploration Co. v. Neel*,
   982 S.W.2d 881 (Tex. 1998)..............................................................................26

iii

*Hendricks v. Thornton*,
  973 S.W.2d 348 (Tex. App. 1998) ..................................................................................23

*Hildebrand v. Honeywell, Inc.*,
  622 F.2d 179 (5th Cir. 1980) .........................................................................................6

*Holmes v. Greyhound Lines, Inc.*,
  757 F.2d 1563 (5th Cir. 1985) ................................................................................ passim

*Holubec v. Brandenberger*,
  111 S.W.3d 32 (Tex. 2003) ..........................................................................................18

*Homoki v. Conversion Servs., Inc.*,
  717 F.3d 388 (5th Cir. 2013) ....................................................................6, 8, 11, 15

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  995 F. Supp. 2d 291 (S.D.N.Y. 2014) ............................................................................18

*In re Boesky Sec. Litig.*,
  882 F. Supp. 1371 (S.D.N.Y. 1995) ....................................................................11, 15, 20

*In re Brocade Commc'ns Sys., Inc. Derivative Litig.*,
  615 F. Supp. 2d 1018 (N.D. Cal. 2009) ..................................................................11, 15

*In re Cmty. Bank of N. Virginia*,
  467 F. Supp. 2d 466 (W.D. Pa. 2006) ............................................................................18

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
  966 F. Supp. 2d 1018 (C.D. Cal. 2013) ..........................................................................18

*In re Lehman Bros. Sec. & Erisa Litig.*,
  800 F. Supp. 2d 477 (S.D.N.Y. 2011) ............................................................................18

*In re Longtop Fin. Technologies Ltd. Sec. Litig.*,
  939 F. Supp. 2d 360 (S.D.N.Y. 2013) ....................................................................19, 20

*In re Sharps Run Associates, L.P.*,
  157 B.R. 766 (D.N.J. 1993) ....................................................................................8, 11

*In re Vioxx Products Liab. Litig.*,
  509 F. App'x 383 (5th Cir. 2013) ..................................................................................29

*In re Westcap Enterprises*,
  230 F.3d 717 (5th Cir. 2000) ..........................................................................................2

*Jacksonville Mar. Ass'n v. Int'l Longshoremen's Ass'n*,
  571 F.2d 319 (5th Cir. 1978) ....................................................................................7, 17

*Janvey, et al., v. Willis of Colorado, Inc.*,
No 13-03980, Doc. 64 (Dec. 5, 2014) ....................................................................21

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) ................................................................................16

*Janvey v. Alguire*,
No. 09-0724, 2013 WL 2451738 (N.D. Tex. Jan. 22, 2013) ..................................27

*Janvey v. Brown*,
767 F.3d 430 (5th Cir. 2014) ....................................................................16, 27, 28

*Janvey v. Democratic Senatorial Campaign Comm.*,
793 F. Supp. 2d 825 (N.D. Tex. 2011) .......................................................4, 21, 26

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
712 F.3d 185 (5th Cir. 2013) ....................................................................21, 26, 34

*Jaquez v. Bank of Am. Corp.*,
No. 11-657, 2011 WL 1807391 (N.D. Tex. May 9, 2011) ....................................20

*Jones v. Sheehan, Young & Culp, P.C.*,
82 F.3d 1334 (5th Cir. 1996) ..........................................................................31, 32

*Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*,
20 F.3d 1362 (5th Cir. 1994) ..................................................................................6

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
160 S.W.2d 509 (Tex. 1942) ................................................................................23

*Krim v. pcOrder.com, Inc.*,
212 F.R.D. 329 (W.D. Tex. 2002) ........................................................................28

*Krupski v. Costa Crociere S. p. A.*,
560 U.S. 538 (2010) ....................................................................................6, 17, 33

*Lee v. Valdez*,
No. 07-1298, 2009 WL 1406244 (N.D. Tex. May 20, 2009) ...........................31, 32

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) .................................................................................14

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ..................................................................................3

*Lozano v. Bosdet*,
693 F.3d 485 (5th Cir. 2012) ..........................................................................32, 33

v

*Maes v. El Paso Orthopaedic Surgery Grp., P.A.*,
  385 S.W.3d 694 (Tex. App. 2012) .......................................................................34

*Mayle v. Felix*,
  545 U.S. 644 (2005)..........................................................................................6

*Meadows v. Hartford Life Ins. Co.*,
  492 F.3d 634 (5th Cir. 2007) .....................................................................24, 26

*Miguel v. Country Funding Corp.*,
  309 F.3d 1161 (9th Cir. 2002) ...........................................................................18

*Miteff v. Guardian Title Co.*,
  612 S.W.2d 693 (Tex. Civ. App. 1981) ...........................................................13, 19

*Paradigm Entm't, Inc. v. Video Sys. Co.*,
  No. 99-2004, 2000 WL 251731 (N.D. Tex. Mar. 3, 2000)....................................33

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013)...........................................................................8, 18

*Pyco Supply Co. v. Am. Centennial Ins. Co.*,
  364 S.E.2d 380 (N.C. 1988)...........................................................................8, 11

*Resnick v. AvMed, Inc.*,
  693 F.3d 1317 (11th Cir. 2012) ....................................................................7, 17

*Resolution Trust Corp. v. Olson*,
  768 F. Supp. 283 (D. Ariz. 1991) .................................................................7, 18

*Ritchie v. Rupe*,
  443 S.W.3d 856 (Tex. 2014)....................................................................24, 25, 26

*Robertson v. Johnston*,
  376 F.2d 43 (5th Cir. 1967) ............................................................................6

*S.E.C. v. Stanford Int'l Bank, Ltd.*,
  776 F. Supp. 2d 323 (N.D. Tex. 2011) ..............................................................16

*Servicios-Expoarma, C.A. v Indus. Mar. Carriers, Inc.*,
  135 F.3d 984 (5th Cir. 1998) ...........................................................................18

*Sterling Trust Co. v. Adderley*,
  168 S.W.3d 835 (Tex. 2005)....................................................................4, 16, 22

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002)..........................................................................................3

vi

*Texas Instruments, Inc. v. Hyundai Electronics Indus., Co.*,
    50 F. Supp. 2d 619 (E.D. Tex. 1999)................................................................29, 34

*The Official Stanford Investors Committee, et al. v. Greenberg Traurig, LLP*,
    No. 12-04641, Doc. 114 (N.D. Tex. Dec. 17, 2014).................................................25

*The Official Stanford Investors Committee, et al. v. Greenberg Traurig, LLP*,
    No. 12-4641, Doc. 123 (Feb. 4, 2015) .......................................................... passim

*Thrift v. Estate of Hubbard*,
    44 F.3d 348 (5th Cir. 1995) ...............................................................6, 11, 15

*Troice, et al. v. Proskauer Rose LLP, et al.*,
    No. 09-1600, Doc. 176 (N.D. Tex. Mar. 4, 2015) .............................................14

*Turk, et al., v. Pershing LLC, et al.*,
    No. 09-02199, Doc. 125 (N.D. Tex. Dec. 8, 2014).............................................25

*United States v. Ho*,
    311 F.3d 589 (5th Cir. 2002) ...............................................................20

*United States v. Johnson*,
    288 F.2d 40 (5th Cir. 1961) ........................................................ passim

*United States v. Uni Oil, Inc.*,
    710 F.2d 1078 (5th Cir. 1983) ...............................................................7

*Willis v. Marshall*,
    401 S.W.3d 689 (Tex. App. 2013)................................................14, 21, 22, 26

*Willis v. Maverick*,
    760 S.W.2d 642 (Tex. 1988)................................................................21, 34

## **Statutes**

28 U.S.C. § 2401(b) ...............................................................................9

29 U.S.C. § 160(b) ...............................................................................8

Tex. Civ. Prac. & Rem. Code Ann. art. 16.004 .......................................................34

Tex. Rev. Civ. Stat. Ann. art. 581-33 ....................................................... passim

## **Other Authorities**

Fed. R. Civ. P. 4.................................................................................32

Fed. R. Civ. P. 8......................................................................... passim

Fed. R. Civ. P. 9 .................................................................................................................. 3, 22

Fed. R. Civ. P. 12 ................................................................................................................. passim

Fed. R. Civ. P. 15 ................................................................................................................. passim

Fed. R. Civ. P. 59 ...................................................................................................................... 29

Fed. R. Civ. P. 60 .................................................................................................................. 29, 30

848950v.1

Class Plaintiffs,[1] through their attorneys, hereby file this consolidated opposition to the Bank Defendants'[2] various motions to dismiss Plaintiffs' Second Amended Class Action Complaint ("CAC").

## I.   PRELIMINARY STATEMENT

By order dated June 23, 2015, the Court granted Plaintiffs' request to amend their class action complaint to amplify allegations regarding the Bank Defendants' involvement in R. Allen Stanford's *Ponzi* scheme, and to specify claims of aiding a violation of the Texas Securities Act ("TSA") and participating in a breach of fiduciary duty.  Doc. 278.  In doing so, the Court rejected the Bank Defendants' assertion that amending to specify "TSA violations is futile because [any TSA claim] is barred by the TSA's statute of repose."  Doc. 262 at p. 2.  In five separate pleadings, the Bank Defendants re-package their futility argument as a basis for dismissing Plaintiffs' TSA claims pursuant to Rule 12.[3]  In similar fashion, the Bank Defendants insist that Plaintiffs' fiduciary duty claims are also time-barred.  Finally, the Bank Defendants re-urge previously rejected arguments that these claims must be dismissed because they are insufficiently pled.

Given what is at stake, it is not surprising that the Bank Defendants attack Plaintiffs' Second Amended CAC and, in particular, Plaintiffs' TSA claims.  If the Defendants succeed at dismissing Plaintiffs' TSA claims, they will then argue that success on Plaintiffs' fraud claims will require proof that each class member relied on Stanford's material omissions, and therefore

---

[1]     Class Plaintiffs consist of Steven Queyrouze, Guthrie Abbott, Salim Estefenn Uribe, Sarah Elson-Rogers, Diana Suarez, and Ruth Alfille de Penhos, on behalf of themselves and all others similarly situated.

[2]     The Bank Defendants consist of The Toronto-Dominion Bank ("TD Bank"), Trustmark National Bank ("Trustmark"), Independent Bank f/k/a Bank of Houston ("BoH"), Société Générale Private Banking (Suisse) S.A. ("SG Suisse"), HSBC Bank, plc ("HSBC"), and Blaise Friedli ("Friedli").

[3]     Trustmark, TD Bank, BoH, and Friedli each filed motions to dismiss supported by memoranda, and incorporating by reference the arguments of the other Bank Defendants.  *See* Docs. 293, 296, 297, 299.  SG Suisse and HSBC incorporate by reference the arguments of the other Bank Defendants, as well as their own unavailing arguments from prior motions to dismiss.  *See* Doc. 295 at pp. 1–2; Doc. 298 at pp. 1–2.

class certification is disfavored.[4]   While there are rejoinders to this tack, individual reliance should not be an issue at the class certification stage because the Bank Defendants offer no valid basis for dismissing Plaintiffs' TSA claims (*or* their fiduciary duty claims).   Plaintiffs' TSA and fiduciary duty claims are timely because Plaintiffs' original class action complaint alleged facts establishing all required elements of each claim.   Stated differently, Plaintiffs' Second Amended CAC "merely makes more specific what has already been alleged generally"[5]; thus Plaintiffs' TSA and fiduciary duty claims may proceed to judgment along with their other claims.   Further, because the Second Amended CAC amplifies allegations that were *already* adequate to establish the Bank Defendants' liability for aiding a violation of the TSA and participating in a breach of fiduciary duty, the Bank Defendants cannot seriously maintain that Plaintiffs' amended papers fail to state claims upon which relief can be granted.   Accordingly, the Court should deny the Bank Defendants' renewed attempts to escape Plaintiffs' allegations that they knowingly rendered substantial assistance in furtherance of R. Allen Stanford's $7 billion *Ponzi* scheme.

## II.   <u>LEGAL STANDARD</u>

When faced with a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and is generally limited to considering the contents of the pleadings.[6]   To withstand dismissal, the complaint must satisfy the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[7]   "Such a statement must simply give the defendant fair notice of what the

---

[4]       Unlike a common law claim of aiding securities fraud, a claim of aiding a violation of the TSA does not require Plaintiffs to prove that they relied on R. Allen Stanford's omissions.  *In re Westcap Enterprises*, 230 F.3d 717, 726 (5th Cir. 2000).  Nor does it require proof of loss causation, or the Plaintiffs' due diligence.  *Id.*; *Duperier v. Texas State Bank*, 28 S.W.3d 740, 753 (Tex. App. 2000).  Also, the TSA provides a statutory measure of damages.  *See* Tex. Rev. Civ. Stat. Ann. § art. 581-33(D).

[5]       *United States v. Johnson*, 288 F.2d 40, 42 (5th Cir. 1961) (quotation marks omitted).

[6]       *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 634–35 (5th Cir. 2014).

[7]       Fed. R. Civ. P. 8(a)(2); *see Brand Coupon Network*, 748 F.3d at 634.

2

plaintiff's claim is and the grounds upon which it rests."[8] "Rule 8 does not require 'detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"[9] "A petition meets this standard when it contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

Here, Plaintiffs' TSA claims sound in fraud.  Accordingly, Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[11] "By its clear terms, Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty or non-fraudulent misstatement.'"[12]

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."[13]

## III.   <u>ARGUMENT</u>

Almost every argument advanced by the Bank Defendants in support of their motions to dismiss Plaintiffs' TSA and fiduciary duty claims has been considered and rejected—either expressly or implicitly—by this Court's prior orders.  Because the Bank Defendants are retreading well-worn ground, and because, in any event, the Bank Defendants fail to satisfy the standard for dismissal under Rule 12, their motions to dismiss must be denied.

---

[8]    *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotation marks omitted), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–563 (2007).

[9]    *Brand Coupon Network*, 748 F.3d at 634 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[10]   *Id.* (quotation marks omitted).

[11]   Fed. R. Civ. P. 9(b).

[12]   Doc. 234 at pp. 6–7 (quotation marks and alterations omitted).

[13]   *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quotation marks omitted).

### A. Plaintiffs' TSA claims are timely and properly pled

The Bank Defendants assert that Plaintiffs' TSA claims are barred by a 5-year statute of repose; are otherwise barred by a 3-year statute of limitations; and, in any event, are insufficiently pled. Each of these arguments is unavailing.

#### 1. Applicable law

The TSA imposes liability on those who sell securities "by means of an untrue statement of a material fact or an omission to state a material fact."[14] It imposes equal liability on "a person who 'materially aids a seller, buyer, or issuer of a security' if the person acts 'with intent to deceive or defraud or with reckless disregard for the truth or the law.'"[15] The TSA affords defendants—including aiders—certain affirmative defenses, which include a 5-year statute of repose and a 3-year statute of limitations for violations predicated on sales of securities by means of untrue statements or omissions of material fact.[16] The TSA's statute of repose is "absolute," cannot be tolled, and is not subject to equitable defenses.[17] Conversely, the TSA's statute of limitations is subject to the discovery rule, as well as other equitable defenses.[18] Under the discovery rule, a statute of limitations does not begin to run until the plaintiff, through exercise of reasonable diligence, could have discovered the violation at issue.[19]

---

[14]    *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 837 (Tex. 2005) (quoting Tex. Rev. Civ. Stat. Ann. art. 581–33(A)(2) (Vernon Supp. 2004–05)).

[15]    *Id.* (quoting Tex. Rev. Civ. Stat. Ann. art. 581–33(F)(2)).

[16]    Tex. Rev. Civ. Stat. Ann. art. 581-33(H)(2)(b); *see The Official Stanford Investors Committee, et al. v. Greenberg Traurig, LLP, et al.*, No. 12-4641, Doc. 123 at pp. 11–12 (Feb. 4, 2015) (Godbey, J.) [hereinafter *OSIC (Greenberg Traurig)*].

[17]    *See OSIC (Greenberg Traurig)*, No. 12-4641, Doc. 123 at pp. 11–12 (discussing Texas caselaw).

[18]    *See id.*

[19]    Tex. Rev. Civ. Stat. Ann. art. 581-33(H)(2)(a); *see Janvey v. Democratic Senatorial Campaign Comm.*, 793 F. Supp. 2d 825, 833 (N.D. Tex. 2011) (Godbey J.) [hereinafter *Janvey I*].

4

## 2. The TSA's 5-year statute of repose does not bar Plaintiffs' TSA claims

Plaintiffs' TSA claims against each of the Bank Defendants are predicated on R. Allen Stanford's sale of securities by means of multiple omissions of material fact, and are thus subject to the TSA's 5-year statute of repose. The Bank Defendants insist that because Plaintiffs specified their TSA claims in pleadings submitted after their original class action complaint, "the repose period for any and all TSA claims . . . based upon the Stanford CDs [is] long expired," thus barring liability. *See* Doc. 293 at p. 12; *see also* Doc. 297 at pp. 12–16.[20]

The Bank Defendants are wrong because they ignore that Plaintiffs' original class action complaint alleged a TSA violation in everything but name. When, as here, a complaint filed within the repose period contains allegations establishing each element of a TSA violation, the 5-year statute of repose *only* bars liability for claims arising more than five years prior to the filing of that complaint. Stated differently, because Plaintiffs' original class action complaint filed on August 23, 2009 attempted to set out conduct establishing the Bank Defendants' liability as aiders of securities fraud and, in doing so, pleaded facts establishing each element of aider

---

[20]     There is divergence among the Bank Defendants regarding why and to what extent the TSA's statute of repose works in their favor. On one hand, SG Suisse tacitly concedes that Plaintiffs' TSA claims are not barred, because they were specified on December 14, 2012, when Plaintiffs requested leave to amend their original class action complaint to incorporate by reference the allegations and claims set forth in The Official Stanford Investors Committee's ("OSIC") Intervenor Complaint. *See* Docs. 131, 132, 132-1; *see also* Doc. 299. On the other hand, Trustmark, BoH, HSBC, and TD Bank each insist that Plaintiffs' TSA claims are absolutely barred by the TSA's 5-year statute of repose because Plaintiffs did not specify their TSA claims as to these Defendants until May 1, 2015, more than five years after the SEC shut down Stanford's fraudulent enterprise on February 16, 2009. *See* Doc. 293 at pp. 10–16; Doc. 297 at pp. 12–16. Finally, Friedli invokes the TSA's five-year statute of repose to assert that Plaintiffs' TSA claims against him are barred, though for slightly different (but equally unavailing) reasons, discussed *infra* § III(D)(3). *See* Doc. 299 at pp. 22–26.

        Despite this discrepancy among the Bank Defendants as to when Plaintiffs' TSA claims were first specified, the basic point is the same as to *all* Bank Defendants: because Plaintiffs' original class action complaint alleged facts establishing each of the elements necessary to prove Plaintiffs' TSA claims, the TSA's statute of repose *only* operates to bar liability for claims arising more than five years prior to the filing of Plaintiffs' original class action complaint (or, in Friedli's case, five years prior to Plaintiffs' request to incorporate by reference the claims stated in OSIC's Intervenor Complaint).

liability under the TSA, federal law *and* Texas law dictates that Plaintiffs' TSA claims accruing on or after August 23, 2004 may proceed to judgment.[21]

### (a) The application of Rules 8 and 15 to pleadings and amended pleadings

The Federal Rules of Civil Procedure govern when a claim specified in an amended complaint may proceed to judgment despite an otherwise expired statute of repose.[22] Specifically, the issue is governed by Rule 15(c)[23]:

> Whenever the claim or defense asserted in the amended pleading arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. This so-called "relation back" doctrine does not extend the limitations period, but merely recognizes that the purposes of the statute are accomplished by the filing of the [original] pleading.[24]

"The 'original pleading' to which Rule 15 refers is the complaint . . . . Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests."[25] Indeed, "[s]o long as a pleading alleges facts upon which relief can be granted, it states a claim *even if it fails to categorize correctly the legal theory giving rise to the claim.*"[26] In this sense, "Rule 8 marks a notable and

---

[21]   *Johnson*, 288 F.2d 40, 42; *see also FDIC v. Bennett*, 898 F.2d 477, 480 (5th Cir. 1990); *Aguilar v. Trujillo*, 162 S.W.3d 839, 854 (Tex. App. 2005).

[22]   *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1367 n.4 (5th Cir. 1994).

[23]   *Id.*; *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) ("Rule 15(c) . . . governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely.").

[24]   *Kansa Reinsurance Co.*, 20 F.3d at 1366–67 (quotation marks and citations omitted).

[25]   *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (quotation marks omitted); *accord Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985) ("In determining if an amended complaint relates back, this Court regards as 'critical' whether the opposing party was put on notice regarding the claim raised therein.").

[26]   *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (emphasis added; quotation marks a omitted); *accord Thrift v. Estate of Hubbard*, 44 F.3d 348, 356 (5th Cir. 1995) ("Under the Federal Rules of Civil Procedure, a pleading, or pretrial order, need not specify in exact detail every possible theory of recovery—it must only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981) ("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim."); *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980) ("[T]he district court has a duty under Rule 8(a) . . . to read the complaint liberally and determine whether the facts set forth justify it in assuming jurisdiction on grounds other than those pleaded."); *Robertson v. Johnston*, 376 F.2d 43, 44 (5th Cir. 1967) ("We see no reason why we should make what we think would be an

generous departure from the hyper-technical, code-pleading regime of a prior era," and instead "requires the reviewing court to draw on its judicial experience and common sense" when construing a plaintiff's allegations.[27]

### (b) Amended pleadings and statutes of repose under the Federal Rules

An expired statute of repose is "equivalent to a cutoff, in essence an absolute bar on a defendant's temporal liability" even when the plaintiff could otherwise prove that she is entitled to relief on the underlying legal claim.[28]  Thus, when a plaintiff fails to sue within the applicable repose period, a defendant may invoke a statute of repose as an affirmative defense to liability.[29] In similar fashion, when a plaintiff files a complaint alleging facts that would entitle him to relief on one legal claim, but fails to allege facts which would entitle him to relief on a separate legal claim, an expired statute of repose applicable to the second claim will bar the plaintiff from proceeding to judgment on the second claim.[30]  Likewise, in the class action context, some

---

erroneous decision, because the applicable law was not insisted upon by one of the parties." (quotation marks omitted)); *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.").

[27]     *See Iqbal*, 556 U.S. at 678–79; *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("Under the notice-pleading standard, we no longer require the hyper-technical code pleadings of ages past, and we draw on our judicial experience and common sense when construing the allegations in a complaint." (quotation marks and alterations omitted)); *see also United States v. Uni Oil, Inc.*, 710 F.2d 1078, 1080 n.1 (5th Cir. 1983) ("[I]t is too late in the day to revive the kind of hyper-technical reading of legal papers that might have prevailed under a nineteenth-century code pleading system."); *Jacksonville Mar. Ass'n v. Int'l Longshoremen's Ass'n*, 571 F.2d 319, 324 (5th Cir. 1978) (warning of the "inappropriateness of a talismanic invocation of . . . pleading rules").

[28]     *See CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014) (quotation marks and citations omitted).

[29]     *E.g.*, *id.* at 2180–81 (expired 10-year statute of repose barred plaintiff from asserting state-law nuisance action against defendant where defendant's last culpable act occurred 24 years prior to plaintiff's cause of action).

[30]     *E.g.*, *Holmes*, 757 F.2d at 1566 (expired 6-month federal statute of repose barred plaintiff from proceeding to judgment on claim of breach of duty of fair representation against his union because this claim was "based on entirely different facts, transactions, and occurrences" than plaintiff's otherwise timely cause of action alleging fraud in the arbitration against his former employer); *see also Resolution Trust Corp. v. Olson*, 768 F. Supp. 283, 286 (D. Ariz. 1991) (expired 3-month state statute of repose barred plaintiff from re-asserting "deficiency language" in second amended complaint despite the inclusion of such language in the timely original complaint where superseding first amended complaint omitted reference to a "deficiency" and instead "sought to recover on the guarantee contract").  In *Holmes*, the Court of Appeals described the applicable statute of repose as a "six-month limitations period," *not* a statute of repose.  *Holmes*, 757 F.2d at 1565.  As noted by the U.S. Supreme Court, however, this mis-labeling "is not dispositive" regarding whether the period at issue is one of "limitations" or "repose." *CTS Corp.*, 134 S. Ct. at 2185 ("While the term 'statute of limitations' has acquired a precise meaning, distinct from 'statute of repose,' and while that is its primary meaning, it must be acknowledged that the term

Circuits hold that an expired statute of repose prohibits unnamed members of the putative class from intervening to revive a claim dismissed for lack of standing.[31]

On the other hand, an otherwise expired statute of repose will *not* bar a claim specified in an amended pleading when common sense dictates that the timely original complaint alleged facts establishing the claim, but failed to label it as such.  Put differently, when the amended pleading merely specifies the name and/or citation of the previously unlabeled claim, the Federal Rules permit the newly specified claim to proceed to judgment, regardless of whether it would be barred by an applicable statute of repose if alleged for the first time as a new cause of action.[32]

The Fifth Circuit's decision in *U.S. v. Johnson* illustrates this principle.  In *Johnson*, the plaintiff sued the U.S. Air Force alleging that she suffered anxiety as a result of planes crashing "within plain view of [her] house."[33]  Mrs. Johnson's "original complaint contained no allegation

---

'statute of limitations' is sometimes used in a less formal way. In that sense, it can refer to any provision restricting the time in which a plaintiff must bring suit. Congress has used the term 'statute of limitations' when enacting statutes of repose." (citations omitted)).  Instead, to determine whether a "statute of limitations" or a "limitations period" is actually a statute of repose, a court looks to its effect. *See id.* at 2186–87. The defining characteristic of a statute of repose is "it[s] mandate[] that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued." *CTS Corp.*, 134 S. Ct. at 2187.  By this measure, the "six-month limitations period" at issue in *Holmes* is quite clearly a statute of repose insofar as it expressly provides: "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made."  29 U.S.C. § 160(b); *see Holmes*, 757 F.2d at 1566 (applying the "six-month limitations period" under § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b)).

[31]     *E.g.*, *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 111–12 (2d Cir. 2013) (28 U.S.C. § 1658(b)'s 3-year statute of repose barred unnamed class members from intervening to revive dismissed federal securities claim where the lead plaintiff lacked standing to bring the claim at issue).  Notably, it remains an open question in the Fifth Circuit whether § 1658(b)'s statute of repose "can be extended by tolling."  *See Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 n.5 (5th Cir. 2013).

[32]     *See Johnson*, 288 F.2d at 42; *Bennett*, 898 F.2d at 480; *accord Homoki*, 717 F.3d at 402.  As explained, *infra* § III(A)(2)(c), Texas's rules require the same result.  *See Aguilar v. Trujillo*, 162 S.W.3d 839, 854 (Tex. App. 2005); *accord Pyco Supply Co. v. Am. Centennial Ins. Co.*, 364 S.E.2d 380, 383 (N.C. 1988) ("[T]he determination of whether a claim asserted in an amended pleading relates back does not hinge on whether a time restriction is deemed a statute of limitation or repose. Rather, the proper test is whether the original pleading gave notice of the transactions, occurrences, or series of transactions or occurrences which formed the basis of the amended pleading. If the original pleading gave such notice, the claim survives by relating back in time without regard to whether the time restraint attempting to cut its life short is a statute of repose or limitation."); *In re Sharps Run Associates, L.P.*, 157 B.R. 766, 784 (D.N.J. 1993) ("We also do not accept the assertion that calling a statute one of repose rather than limitations automatically proscribes relation back.").

[33]     *Johnson*, 288 F.2d at 41 (quotation marks omitted).

of any specific crash or illegal low-level flight; and it contained no allegation of any negligence on the part of the United States."[34]   Nearly two years passed before Mrs. Johnson filed her amended complaint, which amplified her allegations and asserted for the first time a negligence claim against the United States pursuant to the Federal Tort Claims Act ("FTCA").[35]

Mrs. Johnson ultimately prevailed in her FTCA claim.[36]   On appeal, the Government argued that her claim was barred by the FTCA's 2-year statute of repose because it was not specified until her amended complaint, filed more than two years after the Government's last culpable act.[37]   The Fifth Circuit flatly rejected this argument, explaining:

> Limitation is suspended by the filing of a suit because the suit warns the defendant to collect and preserve his evidence in reference to it. When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement.[38]

The Court admonished:

> If the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged generally, or which changes the legal theory of the action, will relate back even though the statute of limitations has run in the interim.[39]

---

[34]   *Id.* at 42.

[35]   *See id.* at 41–42.

[36]   *Id.*

[37]   *Id.*  The Bank Defendants' quibble whether the limitations period discussed in *Johnson* is statute of repose. *See* Doc. 293 at p. 14 ("[N]owhere in [*Johnson*] did the Fifth Circuit characterize the applicable statute—28 U.S.C. § 2401(b)—as a statute of repose.").  But the Defendants' objections are without merit.  As discussed, *supra* n. 30, the labeling of a limitations period "is not dispositive" regarding whether it is a period of "limitations" or "repose"; instead, a statute of repose is defined by whether "it mandates that there shall be no cause of action beyond a certain point."  *See CTS Corp.*, 134 S. Ct. at 2186–87.  The limitations period at issue in *Johnson* provided: "A tort claim against the United States shall be forever barred unless action is begun thereon within two years after such claim accrues."  *Johnson*, 288 F.2d at 41 (quoting 28 U.S.C. § 2401(b)).  Clearly it is a statute of repose.

[38]   *Id.* at 42 (quoting *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir. 1944)).

[39]   *Id.* (quoting 3 MOORE'S FEDERAL PRACTICE, 2d ed., p. 852).

The Fifth Circuit reached the same conclusion in *FDIC v. Bennett*, where the FDIC amended its timely original complaint to add a right to redeem property sold at a foreclosure nearly five months after expiration of the otherwise applicable 1-year statute of repose.[40]   The FDIC prevailed on its redemption claim in the district court.  On appeal, Dana Smith—who held a superior lien on the property—argued that by allowing the FDIC's redemption claim to proceed to judgment, "the district court impermissibly expanded the one year period of limitations applicable to actions under the redemption statute."[41]

The Fifth Circuit rejected Smith's argument.  Reviewing a long line of jurisprudence, the Court held that the FDIC's redemption claim was not barred despite having been specified for the first time after expiration of the repose period because "the transaction or occurrence upon which the complaint [was] based [was] identical in both the original complaint and the amended complaint."[42]   Citing *Johnson*, the Court reiterated: "The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading."[43]   In reaching this conclusion, the Court drew a sharp distinction between the circumstances addressed in *Johnson* and *Bennett*—where the amended complaint "merely ma[de] more specific what was alleged generally, or which changes the legal theory of

---

[40]      *Bennett*, 898 F.2d at 478.  Again, the Bank Defendants dispute whether the "limitations period" addressed in *Bennett* is statute of repose.  *See* Doc. 293 at p. 15 ("The *Bennett* court never even mentions the word 'repose,' instead referring solely to the applicable 'limitations period' and to the statute in question as being a 'statute of limitations.'").  Again, the Bank Defendants' objections are misplaced.  The statute at issue provided: "Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem."   *Bennett*, 898 F.2d at 479 n.2 (quoting 28 U.S.C. § 2410(c)).  This "limitations period" implicitly "mandates that there shall be no cause of action beyond a certain point," thus meeting the definition of a statute of repose.  *See CTS Corp.*, 134 S. Ct. at 2187.

[41]      *Id.* at 479.

[42]      *Id.*

[43]      *Bennett*, 898 F.2d at 480 (quoting Wright, Miller, Kane, Federal Practice & Procedure, Vol. 6A, § 1497, p. 94).

the action"[44]—and those at issue in *Holmes v. Greyhound Lines, Inc.*, where an expired statute of repose barred the plaintiff's attempt to proceed to judgment on "a *different* claim involving *different* events."[45]

The rule of *Johnson* and *Bennett* is clear: when an amended complaint specifies a claim that was alleged in everything but name in a timely original complaint, Rule 15 permits the claim to proceed as if timely pled, despite an otherwise expired statute of repose.[46] This rule is aligned to the Fifth Circuit's admonishment that under Rule 8, a pleading states a claim for relief "[s]o long as [it] alleges facts upon which relief can be granted, . . . even if it fails to categorize correctly the legal theory giving rise to the claim."[47] On the other hand, when an amended pleading alleges a new claim based on operative facts *not* alleged in the original complaint, an expired statute of repose bars the claim.[48] Federal courts across the country observe this distinction, and apply it regularly in securities cases.[49]

---

[44] *See Johnson*, 388 F.2d at 42; *Bennett*, 898 F.2d at 480.

[45] *Id.* at 480 (emphasis added); *see Holmes*, 757 F.2d at 1566.

[46] *E.g.*, *Bennett*, 898 F.2d at 480; *Johnson*, 288 F.2d at 42; *accord Pyco Supply Co.*, 364 S.E.2d at 383; *Sharps Run Associates*, 157 B.R. at 784.

[47] *Homoki*, 717 F.3d at 402; *Dussouy*, 660 F.2d at 604; *see also Thrift*, 44 F.3d at 356.

[48] *E.g.*, *Holmes*, 757 F.2d at 1566.

[49] *E.g.*, *Farr v. Designer Phosphate & Premix Int'l, Inc.*, 804 F. Supp. 1190, 1195 (D. Neb. 1992) (otherwise expired statute of repose did not prevent plaintiff from proceeding to judgment on Nebraska Securities Act claims asserted for first time in second amended complaint where timely "first amended complaint informed the defendants of essentially every factual allegation that was later asserted in the second amended complaint"); *see also, e.g.*, *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1542–43 (8th Cir. 1996) (district court erred in failing to allow securities fraud claim under Section 11 of the 1933 Securities Act to proceed to judgment where plaintiff's timely first complaint alleged violations under Section 10(b) and Rule 10b–5, and "[plaintiff's] § 11 claim was based on the same misappropriations alleged in the original complaint"); *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1038–39 (N.D. Cal. 2009) (otherwise expired statute of repose did not prevent plaintiff from proceeding to judgment on § 10(b) claims where the prior, timely filed complaint alleged that defendants breached fiduciary duties and violated § 20(a) of the Exchange Act and the newly specified claims arose from the same "common core of operative facts" alleged in the timely original complaint); *In re Boesky Sec. Litig.*, 882 F. Supp. 1371, 1380 (S.D.N.Y. 1995) (otherwise expired statute of repose did not prevent plaintiff from proceeding to judgment on § 10(b) claims where the timely filed complaint alleged that defendants committed fraud and participated in a conspiracy and the newly specified claims "clearly [arose] out of the same transaction set forth in the [prior complaint]"); *BRS Associates, L.P. v. Dansker*, 246 B.R. 755, 766-67 (S.D.N.Y. 2000) (otherwise expired statute of repose did not prevent plaintiff from proceeding to judgment on § 10(b) claims where "the Securities

11

### (c) Amended pleadings and statutes of repose under the Texas rules

Texas courts addressing whether claims specified in an amended pleading are barred by an otherwise expired statute of repose follow the same rule. *Aguilar v. Trujillo* illustrates Texas's approach.[50]  *Aguilar* involved a land use dispute between neighbors.  In January 1997, the plaintiffs sued Enrique Trujillo alleging "a claim for damages caused by the discharge of agricultural waste . . . in November 1996."[51]  Six months later, plaintiffs filed an amended petition, adding allegations that the same discharge "violated provisions of the Texas Water Code."[52]  More than three-and-a-half years later, plaintiffs amended their complaint a second time to include a nuisance claim based on the "November 1996 application of manure."[53]

The trial court dismissed plaintiffs' nuisance claim pursuant to the Texas Agricultural Code's 1-year statute of repose.[54]  The Court of Appeals affirmed.  In doing so, however, the Court of Appeals instructed that had plaintiffs "sufficiently alleged facts to state [a] nuisance . . . cause[] of action" in their July 1997 first amended petition, that claim *would have* been timely despite being specified in the second amended petition because the July 1997 amendment occurred within one year of the events giving rise to the claim—*i.e.*, Trujillo's November 1996 application of manure.[55]  But because plaintiffs' earlier papers omitted an element of their nuisance claim—specifically, "a current condition that substantially interfere[d] with the use and enjoyment of [their] land"—plaintiffs failed to state a nuisance claim within the repose period.[56]

---

Claim in the Amended Complaint" arose from the same conduct establishing plaintiffs' timely claims of "fraud, fraudulent misrepresentation, waste and mismanagement, recision, restitution and breach of contract").

[50]      162 S.W.3d at 853.

[51]      *Id.* at 844.

[52]      *Id.* at 853.

[53]      *Id.*

[54]      *Id.* at 852 (citing Tex. Agric. Code Ann. art. 251.004(a)).

[55]      *See id.* at 854.

[56]      *See id.*  The Bank Defendants selectively cite *Aguilar* to support *their* position that Plaintiffs' TSA claims cannot proceed to judgment under any circumstances.  *See* Doc. 293 at p. 13.  However, as illustrated above, the full

Texas courts have reached the same result in various other cases addressing whether a claim specified in an amended pleading should proceed to judgment despite an otherwise expired statute of repose.[57]   The upshot is that the Texas rule is the same as the federal rule: a claim specified for the first time in an amended pleading may proceed to judgment despite an otherwise expired statute of repose if the timely original petition contained allegations sufficient to establish each element of the newly-specified claim.

### (d) Plaintiffs' TSA claims are not barred by the TSA's statute of repose, except to the extent that they assert liability for violations occurring prior to August 23, 2004

Here, a common sense reading of Plaintiffs' original class action complaint yields but one conclusion: Plaintiffs pleaded a violation of the TSA in everything but name.  The original class action complaint framed its allegations of aider liability under the common law.  Specifically, Plaintiffs' alleged that the "[Bank] Defendants are liable to the Plaintiffs and the Class for Conspiracy to Commit Fraud and/or Aiding and Abetting Fraud," based on the "essential role" each Defendant played in the Stanford *Ponzi* scheme, a multi-billion dollar criminal enterprise whereby Stanford "sold purported certificates of deposit (CDs) issued by Antigua-based SIBL, [which promised] interest rates higher than those generally available at other banks."  Doc. 1-5 at p. 2; ¶ 148.  Under the common law, aider liability requires proof of (1) a fraud, (2) the alleged aider's knowledge of the fraud, and (3) the alleged aider's substantial assistance in furtherance of

---

thrust of *Aguilar* clearly supports Plaintiffs' position that when, as here, the original complaint states a claim in everything but name, a subsequent amendment specifying that claim is timely regardless of the expiration of an otherwise applicable statute of repose.

[57]     *E.g.*, *Bradley v. Etessam*, 703 S.W.2d 237, 240 (Tex. App. 1985), *writ refused NRE* (Apr. 16, 1986) (otherwise expired statute of repose did not bar plaintiff from proceeding to judgment on a wrongful death claim "where suit [was] filed within [the] limitations period, . . . [and the] additional cause[] of action [arose] out of the same transaction or occurrence"); *Miteff v. Guardian Title Co.*, 612 S.W.2d 693, 699 (Tex. Civ. App. 1981) (otherwise expired statute of repose did not bar plaintiff from amending complaint to specify a contract claim "because the amendment at least in part was based upon and grew out of the same transaction or occurrence on which complaint of the original suit was founded").

the fraud.[58]   This Court has already determined that Plaintiffs' allegations are sufficient to establish the Bank Defendants' knowing and substantial assistance in furtherance of Stanford's fraud.  Doc. 234 at pp. 25–26.

The elements of aider liability under the TSA are virtually indistinguishable from the elements of aiding common law fraud.  Under the TSA, a plaintiff must allege: (1) that a primary violation of the securities laws occurred; (2) that the alleged aider had general awareness of its role in this violation; (3) that the actor rendered substantial assistance in this violation; and (4) that the alleged aider either (i) intended to deceive plaintiff or (ii) acted with reckless disregard for the truth of the representations made by the primary violator.[59]  As noted by this Court, "[t]he 'general awareness' element and the 'intent to deceive' element . . . can be viewed as two halves of a single scienter requirement."[60]

Because the elements of aider liability under the TSA are almost identical to the elements of aider liability under the common law, the *same* allegations in the original class action complaint already deemed sufficient to state a claim that the Bank Defendants aided Stanford's fraud are *also* sufficient to state a claim that the Bank Defendants aided Stanford's violation of the TSA.[61]  And because these allegations necessarily arise from the same conduct "attempted to be set out" in the original class action complaint,[62] Plaintiffs' TSA claims are timely and may proceed to judgment despite having been specified in Plaintiffs' Second Amended CAC.

---

[58]   *Troice, et al. v. Proskauer Rose LLP, et al.*, No. 09-1600, Doc. 176 at p. 19 (N.D. Tex. Mar. 4, 2015) (Godbey, J.) [hereinafter *Troice (Proskauer Rose)*]; *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).

[59]   *Willis v. Marshall*, 401 S.W.3d 689, 704 (Tex. App. 2013), *reh'g overruled* (July 3, 2013).

[60]   *Troice (Proskauer Rose)*, No. 09-1600, Doc. 176 at p. 15 n.5.

[61]   *See id.* at p. 19–21 (allegation sufficient to satisfy elements of plaintiffs' aider liability claims under TSA also sufficient to allege aiding fraud).

[62]   Fed. R. Civ. P. 15(c).

*Johnson*, *Bennett*, and *Aguilar* each dictate this result under Rule 15[63]; it is consistent with the requirements of Rule 8[64]; it is also consistent with the reasoning of federal courts around the country that have allowed alternative securities claims specified for the first time in amended papers to proceed to judgment despite an otherwise expired statute of repose.[65]

In sum, because the original class action complaint alleged facts sufficient to draw a reasonable inference that (1) Stanford committed a violation of the securities laws, (2) the Bank Defendants each knew of Stanford's violation, and (3) the Bank Defendants nonetheless willfully provided substantial assistance in furtherance of Stanford's violation, Plaintiffs' TSA claims are timely and not barred by the TSA's 5-year statute of repose.[66]

### (e) The Bank Defendants' arguments that the TSA's statute of repose is an absolute bar to liability fail to persuade

The Bank Defendants posit various reasons why the TSA's statue of repose "is an absolute bar" to Plaintiffs' TSA claims. *See generally* Doc. 293 at pp. 10–15; Doc. 297 at pp. 12–18. In support, the Bank Defendants selectively cite various sources. None of the Bank Defendants' arguments or citations stand up to scrutiny.

As an initial matter, the Bank Defendants contend that Plaintiffs' original class action complaint failed to "allege[] that the [SIBL] CDs were securities in the first place," suggesting that Plaintiffs' TSA claims cannot be timely because a predicate of aider liability under the TSA is a violation of the securities laws. Doc. 293 at p. 4. This argument fails for two reasons. First, Plaintiffs' original class action complaint expressly alleged that Stanford executed his fraud by selling "purported certificates of deposit (CDs) issued by Antigua-based SIBL." Doc. 1-5 at p. 2.

---

[63]     *See Johnson*, 288 F.2d at 42; *Bennett*, 898 F.2d at 479–80; *Aguilar*, 162 S.W.3d at 854.

[64]     *See Homoki*, 717 F.3d at 402; *see also Thrift*, 44 F.3d at 356; *Dussouy*, 660 F.2d at 604.

[65]     *E.g.*, *Alpern*, 84 F.3d at 1542–43; *Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d at 1038–39; *Boesky Sec. Litig.*, 882 F. Supp. at 1380; *BRS Associates*, 246 B.R. at 766–767; *Farr*, 804 F. Supp. at 1195.

[66]     *See Bennett*, 898 F.2d at 479–80; *Johnson*, 288 F.2d at 42; *Aguilar*, 162 S.W.3d at 854.

Under the TSA, whether certificates of deposit are "securities" is a "fact question" "determined after a careful consideration of the context," and therefore not an appropriate basis for granting the Bank Defendants' motions to dismiss.[67]   More fundamentally, this Court and the U.S. Fifth Circuit have already ruled that Stanford and his group of affiliated companies "operated a massive *Ponzi* scheme that stole approximately $8 billion from an estimated 50,000 investors scattered over more than 100 countries."[68]   A *Ponzi* scheme is the quintessential example of a TSA violation.[70]

Next, the Bank Defendants assert that because an expired state statute of repose confers upon a defendant a substantive right "not to be sued," and because "[t]he Rules Enabling Act— pursuant to which all Federal Rules of Civil Procedure are enacted—plainly states that the rules cannot 'abridge, enlarge, or modify any substantive right,'" "Rule 15(c) (and the concomitant relation-back rule) cannot trump or abridge [the Bank Defendants'] absolute right under Texas law to be free of all TSA liability related to the Stanford CDs five years after those CDs were sold." Doc. 293 at pp. 13–14 (quoting 28 U.S.C. § 2072(b)).   Here again, the Bank Defendants' argument shoots wide.   First, as explained above, the Federal Rules and the Texas rules are the *same* regarding the circumstances in which a claim specified in an amended pleading may proceed to judgment despite an otherwise expired statute of repose.[71]   Thus, allowing Plaintiffs'

---

[67]      *See Bailey v. State*, 155 S.W.3d 346, 351 (Tex. App. 2004), *rev'd on other grounds*, 201 S.W.3d 739 (Tex. Crim. App. 2006).

[68]      *S.E.C. v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 330–31 (N.D. Tex. 2011); *see also Janvey v. Adams*, 588 F.3d 831, 833 (5th Cir. 2009); Doc. 234 at p. 2.

[69]      *See Sterling Trust*, 168 S.W.3d at 838 & n.1, 845 (describing a "*Ponzi* scheme" as an "illegal pyramid scheme"); *Goldstein v. Mortenson*, 113 S.W.3d 769, 773 n.1 (Tex. App. 2003) ("A '*Ponzi* scheme' is an investment fraud wherein investors are enticed with the promise of extremely high returns or dividends over a very short period of time.").

[70]      *See Sterling Trust*, 168 S.W.3d at 838 & n.1, 845 (a "*Ponzi* scheme" is an "illegal pyramid scheme"); *Goldstein v. Mortenson*, 113 S.W.3d 769, 773 n.1 (Tex. App. 2003) ("A '*Ponzi* scheme' is an investment fraud wherein investors are enticed with the promise of extremely high returns or dividends over a very short period of time.").

[71]      *Compare Aguilar*, 162 S.W.3d at 854, *with Bennett*, 898 F.2d at 479–80, *and Johnson*, 288 F.2d at 42.

16

TSA claims to proceed in federal court will not abridge any right enjoyed by the Defendants because the same would be allowed in Texas court.  Second, when, as here, Plaintiffs' original class action complaint put the Bank Defendants on notice of possible liability under the TSA by pleading facts sufficient to establish a TSA violation, the Federal Rules require the Court to reject "talismanic invocation[s]"[72] in favor of "common sense." [73]  In this instance, anything less than a common sense application of Rules 8 and 15 threatens the kind of "windfall" in the Bank Defendants' favor that the Supreme Court has cautioned against when balancing "the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules . . . for resolving disputes on their merits."[74]

Finally, the various cases cited by the Bank Defendants in support of their assertion that "relation-back cannot save [Plaintiffs'] TSA claim[s]" are inapposite.  *See generally* Doc. 293 at pp. 12–16; Doc. 197 at pp. 12–16.  In broad strokes, these cases involve fact patterns falling in one of three categories, none of which is applicable to the situation where a timely original pleading states allegations sufficient to sustain a later-specified claim.   First, the Bank Defendants draw the Court's attention to cases where the plaintiff failed to bring *any* cause of action whatsoever within the applicable repose period.[75]  Naturally, in these cases the statute of

---

[72]     *Jacksonville Mar. Ass'n*, 571 F.2d at 324.

[73]     *See Iqbal*, 556 U.S. at 678–79; *Resnick*, 693 F.3d at 1324.

[74]     *Cf. Krupski*, 560 U.S. at 550 ("[T]he purpose of relation back [is] to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.  A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity. Because a plaintiff's knowledge of the existence of a party does not foreclose the possibility that she has made a mistake of identity about which that party should have been aware, such knowledge does not support that party's interest in repose.").

[75]     *E.g.*, *CTS Corp.*, 134 S. Ct. at 2180–81; *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 359 (5th Cir. 2005); *Servicios-Expoarma, C.A. v Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 996 (5th Cir. 1998); *see also, e.g.*, *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002); *FDIC v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 14-126, 2014 WL 4161561, at *9 (W.D. Tex. Aug. 18, 2014); *In re Bear Stearns*

17

repose barred the plaintiff's untimely attempt to assert his claim.  Here, however, Stanford's last culpable act occurred on February 16, 2009 and Plaintiffs filed their original complaint on August 23, 2009, well-within the TSA's 5-year statute of repose.

Next, the Bank Defendants cite cases where the plaintiff filed a complaint alleging facts entitling her to relief on one legal claim, but *failed* to allege facts entitling her to relief on a separate claim.[76]  In such instances, an expired statute of repose applicable to the separate claim prevents the plaintiff from proceeding to judgment on that claim.  Again, however, that is not the case here: Plaintiffs' original class action complaint alleged TSA claims in everything but name.

Third, the Bank Defendants point the Court to class actions wherein a class representative's claim was dismissed for lack of standing.  Where an applicable statute of repose expires prior to dismissal, some courts hold that unnamed class members cannot intervene to revive the dismissed claim.[77]  Here, there is no question regarding Plaintiffs' standing to assert their TSA claims, and although there has been some substitution among the named plaintiffs, Steven Queyrouze and Guthrie Abbott have served as class representatives from the start.

The only case identified by the Bank Defendants that comes close to supporting their position that a claim alleged but not named in an earlier pleading and specified in a later pleading is barred by an expired statute of repose is *In re Longtop Fin. Technologies Ltd. Sec. Litig.*[78]  In

---

*Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 299 (S.D.N.Y. 2014); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 966 F. Supp. 2d 1018, 1022 (C.D. Cal. 2013); *Harris v. OSI Fin. Servs., Inc.*, 595 F. Supp. 2d 885, 898 (N.D. Ill. 2009); *In re Cmty. Bank of N. Virginia*, 467 F. Supp. 2d 466, 476 (W.D. Pa. 2006); *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 865 (Tex. 2009); *Holubec v. Brandenberger*, 111 S.W.3d 32, 36 (Tex. 2003).

[76]  *E.g.*, *Holmes*, 757 F.2d at 1566; *see also, e.g., Resolution Trust Corp.*, 768 F. Supp. at 286; *Aguilar*, 162 S.W.3d at 854.

[77]  *E.g.*, *Police & Fire Ret. Sys. of City of Detroit*, 721 F.3d at 111–12; *Bensinger v. Denbury Res. Inc.*, 31 F. Supp. 3d 503, 508 (E.D.N.Y. 2014); *In re Lehman Bros. Sec. & Erisa Litig.*, 800 F. Supp. 2d 477, 479–83 (S.D.N.Y. 2011). *But see Hall*, 727 F.3d 375 n.5 (indicating that it is an open question in the Fifth Circuit whether "whether § 1658(b)'s statute of repose can be extended by tolling").

[78]  939 F. Supp. 2d 360 (S.D.N.Y. 2013).

that case, the District Court for the Southern District of New York ruled that additional federal securities violations alleged in an amended pleading were barred by § 1658(b)(2)'s 5-year statute of repose to the extent that they accrued more than five years prior to amendment.[79]  The district court based its decision primarily on the Rules Enabling Act, explaining:

> [W]hen a claim is barred by a statute of repose, Rule 15 may not be construed to permit relation back because such a construction would conflict with the Rules Enabling Act, which provides that the rules prescribed by the Supreme Court (including Rule 15) 'shall not abridge, enlarge or modify any substantive right.' Accordingly, Plaintiffs' Section 10(b) claim against DTTC is barred to the extent that it arises out of [an audit opinion issued by DTTC more than five years prior to the filing of the amended complaint].[80]

*Longtop* addressed circumstances superficially similar to those at issue here, but its reasoning is distinguishable and, in any event, not controlling.  First, the *Longtop* plaintiffs sought to "lengthen[] the class period" and proceed to judgment on "four [additional] categories of substantive allegations,"[81] whereas here Plaintiffs have "merely ma[de] more specific what has already been alleged generally."[82]  Second, the *Longtop* Court's reliance on the Rules Enabling Act carries little weight in this instance because, as explained above, Texas's rules would also allow Plaintiffs' TSA claims to proceed and thus there is no diminution of the Bank Defendants' right not to be sued under the TSA's statute of repose.[83]  Finally, and perhaps most important, the rule applied in *Longtop* is inconsistent with *Johnson* and *Bennett*—controlling Fifth Circuit precedent directly on point regarding when a plaintiff may proceed to judgment on a claim specified for the first time in an amended pleading.[84]  A district court sitting in the Fifth

---

[79]     *See id.* at 379–80.
[80]     *Id.* at 380.
[81]     *Id.* at 366.
[82]     *Johnson*, 288 F.2d at 42 (quotation marks omitted).
[83]     *See Aguilar*, 162 S.W.3d at 853; *Bradley*, 703 S.W.2d at 240; *Miteff*, 612 S.W.2d at 699.
[84]     For that matter, *Longtop* is also inconsistent with prior orders issued by the same District Court.  *See Boesky Sec. Litig.*, 882 F. Supp. at 1380; *BRS Associates*, 246 B.R. at 766–767.

Circuit may not ignore, much less overrule, "settled Fifth Circuit precedent," even in the face of conflicting caselaw from other Circuits.[85]

In sum, the Bank Defendants go too far when they claim that the TSA's 5-year statute of repose is an "absolute bar" to Plaintiffs' TSA claims.  Plaintiffs alleged facts establishing their TSA claims in their original class action complaint, filed August 23, 2009.  The predicate for Plaintiffs' TSA claims is R. Allen Stanford's *Ponzi* scheme, a multi-billion dollar securities fraud fueled by Stanford's sale of fraudulent certificates of deposit.  As aiders, the Bank Defendants are liable under the TSA to the same extent as Stanford for any CD sales constituting the fraud that occurred within five years of the filing of the original class action complaint.  In other words, the Bank Defendants are on the hook for all sales that occurred on or after August 23, 2004.  The TSA's 5-year statute of repose only shields the Bank Defendants from liability for CD sales that occurred prior to August 23, 2004.[86]

### 3.   The TSA's 3-year statute of limitations does not bar Plaintiffs' TSA claims

In the alternative, the Bank Defendants assert that "the TSA's express three-year statute of limitations also bars Plaintiffs' claim[s]."  Doc. 297 at p. 8.  Here again, the Bank Defendants' argument is flawed because it assumes that Plaintiffs failed to allege facts establishing their TSA claims in the original class action complaint.  *See id.* at pp. 16–18.

As explained, Plaintiffs' original class action complaint pleads a TSA claim in all but name.  This Court has ruled, and the Fifth Circuit has affirmed, that applicable statutes of

---

[85]      *See United States v. Ho*, 311 F.3d 589, 610 (5th Cir. 2002); *Jaquez v. Bank of Am. Corp.*, No. 11-657, 2011 WL 1807391, at *1 (N.D. Tex. May 9, 2011).

[86]      *Cf. OSIC (Greenberg Traurig)*, No. 12-04641, Doc. 123 at pp. 19–21 (N.D. Tex. Feb. 4, 2015) (Godbey, J.) (dismissing Plaintiffs' TSA claims for sale of securities through untruth or omission arising from sales taking place more than five years prior to the entry of a tolling agreement); *Troice (Proskauer Rose)*, No. 09-1600, Doc. 176 at p. 12 (dismissing plaintiffs' TSA claims predicated on sales of unregistered securities pursuant to the applicable 3-year statute of repose "to the extent Plaintiffs' claims . . . are based on sales taking place [more than] three years before Plaintiffs sued Chadbourne").

limitations were tolled by the "discovery rule"[87] until sometime after the SEC shuttered Stanford's operations in February 2009, and possibly until as late as August 27, 2009 when James Davis pleaded guilty to various federal charges related to "Stanford's . . . massive *Ponzi* scheme."[88]  Plaintiffs filed their original class action complaint on August 23, 2009—well-within the TSA's tolled 3-year limitations period for claims alleging sales of securities based on material omissions of fact.  Plaintiffs' original complaint alleged aiding liability under the common law, but because Plaintiffs' common law fraud claims and TSA claims share the same elements, the original class action complaint also "warn[ed] the [Bank Defendants] to collect and preserve [their] evidence in reference [their TSA claims]."[89]  Accordingly, Plaintiffs' filing of the original class action complaint "suspended" the TSA's 3-year statute of limitations must be rejected.[90]  The Bank Defendants' arguments to the contrary must again be rejected.

### 4.  *Plaintiffs' TSA claims are properly pled*

In a last ditch effort, the Bank Defendants insist that "Plaintiffs' allegations fail to state a TSA claim under Rule 12(b)(6) and lack the particularity imposed by Rule 9."  Doc. 297 at p. 9; *see also* Doc. 293 at p. 16.  Here again, the Bank Defendants' protests ring hollow.

---

[87]     Under the "discovery rule," a statute of limitations "does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action." *See Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1988).  The TSA's 3-year statute of limitations for claims based on sales of securities through material omissions of fact contains a built-in discovery rule provision.  *See* Tex. Rev. Civ. Stat. Ann. art. 581-33(H)(2)(a) ("No person may sue under Section 33A(2) . . . more than three years after discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence.").

[88]     *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 197 (5th Cir. 2013) [hereinafter *Janvey II*] (discovery rule tolled one-year statute of limitations applicable to Receiver's TUFTA claims); *Janvey, et al., v. Willis of Colorado, Inc.*, No 13-03980, Doc. 64 at pp. 13–14 (Dec. 5, 2014) [hereinafter *Janvey (Willis)*] (discovery rule tolled statutes of limitations applicable to Receiver's claims of participation in a breach of fiduciary duty and negligence); *Troice (Proskauer Rose)*, No. 09-1600, slip op. at pp. 23–24 (discovery rule tolled statute of limitations applicable to plaintiffs' conspiracy claim).

[89]     *Johnson*, 288 F.2d at 42 (quotation marks omitted).

[90]     *Id.*

As stated, aider liability under the TSA requires proof of (1) a primary violation of the securities laws; (2) the alleged aider's substantial assistance in furtherance of the violation; and (3) either (i) the alleged aider's intent to deceive the victim, or (ii) the alleged aider's "general awareness that his role was part of an overall activity that is improper."[91]  The Second Amended CAC expressly alleges that Stanford sold SIBL CDs by means of "material omissions" and that "the CDs offered by the Stanford Entities constitute[] 'securities' under the relevant securities law"—specifically, the TSA.  Doc. 279 at ¶¶ 434, 436.  Thus, Plaintiffs have pleaded sufficient facts, accepted as true, to satisfy the first element of their TSA claims.

There can be no doubt that Plaintiffs adequately allege the remaining elements of their TSA claims when the Second Amended CAC amplifies allegations *already* deemed sufficient to satisfy the specificity required by Rules 9 and 12.  When addressing the Bank Defendants' prior motions to dismiss Plaintiffs' claims of aiding fraud, the Court ruled that Plaintiffs' allegations were "sufficient to raise a reasonable inference" that the Bank Defendants "[knew] of Stanford's underlying wrongdoing" and agreed to provide "substantial assistance" in furtherance of Stanford's fraud.  Doc. 234 at pp. 25–26.  The Court has already rejected Trustmark's request to reconsider this assessment.  Doc. 277.

It is now well-settled that prior to filing the Second Amended CAC, Plaintiffs' allegations were adequate to show the Bank Defendants' knowing and substantial assistance in furtherance of Stanford's fraud. It follows as a matter of course that the amplified allegations in Plaintiffs' Second Amended CAC—which are more detailed than Plaintiffs' prior allegations—adequately establish the scienter and conduct elements of aider liability under the TSA.[92]

---

[91]     *Sterling Trust*, 168 S.W.3d at 842; *Willis*, 401 S.W.3d at 704; *see also  Troice (Proskauer Rose)*, No. 09-01600, Doc. 176 at p. 13.

[92]     Plaintiffs' Second Amended CAC is an expansive and detailed account of the Bank Defendants' knowing and substantial assistance in support of Stanford's violations of the Texas Securities Act.  *See generally* Doc. 279.

**B. Plaintiffs' fiduciary duty claims are cognizable, timely, and properly pled**

The Bank Defendants also raise various challenges to Plaintiffs' claims that they aided a breach of fiduciary duty. These arguments are equally toothless.

*1. Aiding a breach of fiduciary duty is a cognizable claim under Texas law*

First, the Bank Defendants assert that a claim of aiding, abetting, or participating in a breach of fiduciary duty "is not recognized under Texas law." Doc. 297 at p. 23; *see also* Doc. 293 at p. 17. This is puzzling, because the Texas Supreme Court has stated in no uncertain terms: "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such."[93] Quite clearly, aiding a breach of fiduciary duty is actionable in Texas.

*2. Plaintiffs' breach of fiduciary duty claims are not time-barred*

Next, the Bank Defendants insist that even if cognizable, Plaintiffs' fiduciary duty claims are "untimely under the four-year statute of limitations." Doc. 297 at p. 9. Yet again, the Bank Defendants ignore that Plaintiffs' fiduciary duty claims arise from the same conduct attempted to be set forth in the original class action complaint.

Participation in a breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary

---

Based on the allegations contained therein, Plaintiffs assert that the Bank Defendants were "aware at all relevant times of R.A. Stanford's omissions and improper activity," and were "aware that their role was part of an overall activity that was fraudulent," but still "rendered necessary assistance to Stanford in the face of a perceived risk that their assistance would facilitate untruthful or illegal activity." *Id.* at ¶¶ 437–438. For a succinct summary of Plaintiffs' allegations establishing the Bank Defendants' "general awareness" of their respective roles in Stanford's illegal activities, and substantial assistance in furtherance of the same, see paragraphs five through nine.

Plaintiffs submit that their allegations sufficiently establish each element of aider liability under the TSA. However, should the Court disagree, Plaintiffs respectfully request the opportunity to amend to add specificity.

[93]   *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942)); *see also Hendricks v. Thornton*, 973 S.W.2d 348, 372 (Tex. App. 1998) (rejecting "assertion that Texas law does not recognize a cause of action for aiding and abetting a breach of fiduciary duty of another").

relationship.[94] Plaintiffs' original class action complaint alleged that Plaintiffs' "entrust[ed] their money to Stanford" because they were made to believe that "SIBL could offer . . . higher rates of return" than other investment opportunities, Doc. 1-5 at p. 2; ¶¶ 32–33; that Plaintiffs' trust was engendered through a marketing scheme that was deliberately false and misleading, *see id.* at ¶¶ 45–52, 58–66; and that R. Allen Stanford—SIBL's founder, owner, and board chairman— "diverted [money] from SIBL, where the victims intended it to go" to bankroll his "private ventures" and "lavish lifestyle," and to "keep the fraudulent scheme in operation," *id.* at p. 3; ¶ 22.   The original class complaint further alleged that the Bank Defendants "underst[ood] Stanford's business and, as a result, knew . . . that Stanford was conducting an illegal and fraudulent scheme," *see id.* at ¶¶ 107, 115, 129, 135, 142, and that the Bank Defendants facilitated Stanford's fraud despite this knowledge, *see id.* at ¶¶ 98–104.

These allegations satisfy each of the elements of Plaintiffs' fiduciary duty claims.   First, they establish the existence of at least two fiduciary relationships: (1) R. Allen Stanford, as chairman of SIBL's board of directors, owed a fiduciary duty to SIBL[95]; and (2) Stanford and his lieutenants, as financial advisors and securities brokers, owed the same fiduciary duty to SIBL investors as an agent owes to his principal.[96] Stanford and his cronies breached their duties to SIBL and its investors when they "diverted" investors' funds to line their own pockets.[97]

---

[94]       *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721–22 (Tex. App. 2001)).

[95]       *Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014) ("Directors, or those acting as directors, owe a fiduciary duty to the corporation in their directorial actions, and this duty includes the dedication of their uncorrupted business judgment for the sole benefit of the corporation." (quotation marks and alterations omitted)), *reh'g denied* (Oct. 24, 2014); *Brazosport Bank of Texas v. Oak Park Townhouses*, 889 S.W.2d 676, 684 (Tex. App. 1994) ("As a director of the bank, Claiborne also owed a fiduciary duty to the bank."), *writ denied* (Sept. 19, 1996).

[96]       *Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 492 & n.5 (Tex. App. 1994) (explaining that "[t]he relationship between a broker and its customer is that of principal and agent," from which fiduciary duties arise "when the broker accepts the customer's order and agrees to execute it"), *writ denied* (Apr. 27, 1995); *see also Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987) ("The law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor.").

[97]       *See Ritchie*, 443 S.W.3d at 868; *Hand*, 889 S.W.2d at 492 & n.5; *Gochnauer*, 810 F.2d at 1049.

Next, Plaintiffs' allegations that the Bank Defendants "understood Stanford's business and thus knew that "Stanford was conducting an illegal and fraudulent scheme," combined with their allegations regarding the nature and scope of Plaintiffs' assistance in furtherance of Stanford's fraud, support the reasonable inference that the Bank Defendants—sophisticated corporate entities—knew of R. Allen Stanford's fiduciary obligations to SIBL and to SIBL's investors.[98]  The second element of Plaintiffs' fiduciary duty claims is satisfied.

Finally, Plaintiffs' allegations regarding the Bank Defendants' knowledge and conduct—which this Court has already deemed sufficient to support a claim of aiding fraud—also show that the Bank Defendants knew they were participating in Stanford's breach of his fiduciary duties, as required to prove the final element of a participation claim.[99]

In short, Plaintiffs' fiduciary duty claims arise from the same conduct attempted to be set forth in the original class action complaint.  Thus, the filing of that complaint stopped the clock on August 23, 2009—well within the four-year statute of limitations.[100]  It is of no moment that Plaintiffs specified their fiduciary duty claims in a subsequent pleading.[101]

---

[98]     *See The Official Stanford Investors Committee, et al. v. Greenberg Traurig, LLP, et al.*, No. 12-04641, Doc. 114 at p. 20 (N.D. Tex. Dec. 17, 2014) (Godbey, J.) [hereinafter *OSIC (Greenberg Traurig)*] ("Plaintiffs allege 'Defendants knew that the Stanford Financial directors and officers owed fiduciary duties to their respective Stanford Financial companies.'  Given the Defendants' alleged familiarity with the Stanford businesses and the basic rule that officers and directors owe fiduciary duties to their companies, Plaintiffs' allegation is sufficient as to this element."); *see also Turk, et al., v. Pershing LLC, et al.*, No. 09-02199, Doc. 125 at pp. 11–12 (N.D. Dec. 8, 2014) (Godbey, J.) [hereinafter *Turk (Pershing)*].

[99]     *See Turk (Pershing)*, No. 09-02199, Doc. 125 at pp. 12–13 (allegations establishing conduct and scienter elements of plaintiffs' TSA aider liability claim also established defendant's awareness that it was participating in a breach of fiduciary duty); *OSIC (Greenberg Traurig)*, No. 12-04641, Doc. 123 at pp. 19–21 (same).

[100]     The discovery rule applies to breach of fiduciary duties claims.  *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998) (citing cases).  Thus, here again, the statute of limitations did not begin to run on Plaintiffs' claims of participation in breach of fiduciary duty until at least February 2009, and possibly as late as August 2009.  *See Janvey II*, 712 F.3d at 197.

[101]     *Johnson*, 288 F.2d at 42.

### 3. *Plaintiffs' breach of fiduciary duty claims are properly pled*

Finally, the Bank Defendants argue that Plaintiffs' fiduciary duty claims fail because they are insufficiently pled. Doc. 293 at p. 17; *see also* Doc. 297 at pp. 24–32. Here, the Bank Defendants base their arguments on an incomplete reading of the Second Amended CAC.

As stated, a claim of participating in a breach of fiduciary duty requires Plaintiffs to allege facts sufficient to reasonably infer: (1) the existence of a fiduciary relationship; (2) the Bank Defendants' knowledge of the relationship; and (3) the Bank Defendants' awareness that they were participating in the breach of that relationship.[102] As in their original class action complaint, Plaintiffs' allegations in the Second Amended CAC establish the existence of at least two fiduciary relationships: Stanford, as chairman of SIBL's board, owed SIBL the "dedication of [his] uncorrupted business judgment,"[103] Doc. 279 at ¶ 28; and Stanford and his lieutenants, acting as "[f]inancial advisors" and agents of the investors, owed an obligation to execute investors' orders, *id.* at ¶¶ 105, 126, 129, 147–53, 439.[104] Each of these duties was breached when Stanford and his cronies looted SIBL for their own profit, and failed to invest Plaintiffs' "SIBL CD deposits . . . in the manner described." *See id.* at ¶¶ 435, 439–40.

Likewise, Plaintiffs allege facts sufficient to support an inference that the Bank Defendants knew of the fiduciary relationships at issue. The Second Amended CAC cites myriad specific interactions between the Stanford Entities and the Bank Defendants, the sum of

---

[102]     *Meadows*, 492 F.3d at 639.

[103]     *Ritchie*, 443 S.W.3d at 868 (quotation marks omitted). The Bank Defendants assert that Plaintiffs lack standing to allege a claim of participating in a breach of fiduciary duty based on Stanford's duties to SIBL. *See* Doc. 297 at p. 29 n.29. Here, the Bank Defendants simply misstate the law. Texas law allows a plaintiff to assert claims of participating in a breach of fiduciary duty predicated on fiduciary relationships to which the plaintiff was not party. *See Darocy v. Abildtrup*, 345 S.W.3d 129, 138 (Tex. App. 2011) (managing partner's breach of duties "owed the other partners" sufficient to establish predicate for investors' claim of aiding a breach of fiduciary duty); *OSIC (Greenberg Traurig)*, No. 12-04641, Doc. 114 at p. 20 ("[T]he underlying fiduciary duties on which Plaintiffs' claims are based are those owed by directors and officers of the Stanford Financial Group to their respective Stanford entities.").

[104]     *Hand*, 889 S.W.2d at 492 & n.5; *Gochnauer*, 810 F.2d at 1049.

which supports Plaintiffs' allegation that "[d]ue to their multiple and conflicted roles, Defendants had a clear picture of R.A. Stanford's management, diversion and looting of CD-customer funds for his own benefit."  Doc. 279 at ¶ 278; *see generally id.* at ¶¶ 238–419.  Plaintiffs expressly allege that "Defendants knew that R.A. Stanford and other officers and directors of the Stanford Entities owed fiduciary duties to Plaintiffs and the Class," and that the source of these duties stemmed from Plaintiffs' "expectation" that "SIBL was to use the money that was invested in its CDs consistent with SIBL's mandate as an international bank," *not* to line Allen Stanford's pockets.  *See id.* at ¶¶ 440–41.  "Given the Defendants' alleged familiarity with the Stanford businesses," "the basic rule that officers and directors owe fiduciary duties to their companies," and the equally basic rule that securities brokers owe fiduciary duties to their investors, "Plaintiffs' allegation[s] [are] sufficient as to this element."[105]

Finally, the same allegations that establish the Bank Defendants' "general awareness" of their respective roles in Stanford's illegal activities, and substantial assistance in furtherance of the same, also establish that the Bank Defendants were aware that they were participating in a breach of fiduciary duty.[106]  *See, e.g.,* Doc. 279 at ¶¶ 5–9.  Because this Court has already rejected the Bank Defendants' complaints that Plaintiffs have failed to plead facts establishing their knowing and substantial assistance in furtherance of Stanford's fraud, it follows that the

---

[105]     *See OSIC (Greenberg Traurig)*, No. 12-04641, Doc. 114 at p. 21 (citing *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. Civ. App. 1973, *no writ*)); *Hand*, 889 S.W.2d at 492 & n.5; *Gochnauer*, 810 F.2d at 1049.  In their attempt to escape Plaintiffs' allegation that they knew of an existing fiduciary relationship, the Bank Defendants assert that "Stanford Financial Group was an Antiguan-based entity with correspondingly different rules regarding fiduciary duties and when they are breached."  Doc. 297 at p. 30.  This Court and the U.S. Fifth Circuit have already determined, however, that any conflict of laws between Antigua and Texas is a false conflict because Antigua "has no actual interest in this dispute" insofar as the Stanford Entities' presence in Antigua was a façade and no Antiguan citizens were affected by the fraud.  *Janvey v. Alguire*, No. 09-0724, 2013 WL 2451738, at *4 (N.D. Tex. Jan. 22, 2013) (Godbey J.); *see also Janvey v. Brown*, 767 F.3d at 435.  Thus, regardless of whether Antiguan law defines a different range of fiduciary duties compared to Texas law, Texas law trumps.  *Id.*  And because Plaintiffs plead their fiduciary duty claims under Texas law, the Court should likewise decline Defendants' invitation to consider non-controlling authority from California and Delaware.  *See* Doc. 297 at pp. 30–31.

[106]     *See Turk (Pershing)*, No. 09-02199, Doc. 125 at pp. 12–13; *OSIC (Greenberg Traurig)*, No. 12-04641, Doc. 123 at pp. 19–21.

Second Amended CAC's amplified allegations also establish this element of Plaintiffs' fiduciary duty claims.[107]

In sum, the Second Amended CAC alleges sufficient facts, accepted as true, to support a reasonable inference that the Bank Defendants each participated in a breach of fiduciary duty.[108]

## C. The Bank Defendants fail to articulate an adequate basis for reconsidering the Court's prior rulings

In addition to attacking Plaintiffs' TSA and fiduciary duty claims, the Bank Defendants encourage the Court to revisit prior rulings denying their previous motions to dismiss.[109] Without saying so, the Bank Defendants seek reconsideration of these rulings. Where, as here, a request to reconsider is filed more than 28 days after entry of the order complained of, it is treated as an application for relief under Rule 60(b)(6).[110] Rule 60(b)(6) requires the moving party to "show the initial judgment to have been manifestly unjust," which requires proof of "exceptional circumstances."[111]

---

[107] *See* Doc. 234 at pp. 25–26; *see also id.* at pp. 26–27 (declining to dismiss Plaintiffs' breach of fiduciary duty claims against Blaise Friedli and SG Suisse). Under the guise of attacking Plaintiffs' fiduciary duty claims, the Bank Defendants re-assert that Plaintiffs have failed to allege knowing and substantial assistance in furtherance of Stanford's *Ponzi* scheme. *See* Doc. 293 at p. 22 (arguing that Plaintiffs' fiduciary duty claims fail because "Plaintiffs have pleaded no factual allegations to make the requisite showing that (i) Trustmark had ***actual knowledge*** that Stanford was committing fraud and (ii) Trustmark provided ***substantial assistance*** to Stanford in committing this fraud." (emphasis in original)); *see also* Doc. 297 at p. 31–32. The Court has now rejected these arguments multiple times. *See* Doc. 234 (denying Defendants' Motions to Dismiss); Doc. 277 (denying Trustmark's Motion to Reconsider). Clearly Plaintiffs have pleaded these elements of their claims (and the rest) to the Court's satisfaction. It is time to move on. *Cf. Anderson v. Cain*, 402 B.R. 752, 755 (E.D. Tex. 2009) ("Mere disagreement with a district court's order does not warrant reconsideration of that order. . . . District court opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." (quotation marks and citations omitted)); *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 332 (W.D. Tex. 2002) (refusing to "revisit . . . findings and legal conclusions with which the [movants] merely disagree[d], except to point out the issues [had] already been addressed").

[108] Should the Court disagree, Plaintiffs again respectfully request the opportunity to amend to add specificity.

[109] *See* Doc. 293 at p. 1 n.1 ("Because the SAC is subject to the same deficiencies described in Trustmark's prior motions to dismiss, Trustmark hereby moves to dismiss the other claims in the SAC on the same grounds set forth in those prior motions and incorporates all of the arguments set forth therein by reference."); *see also* Doc. 295 at pp. 1–2; Doc. 297 at p. 32; Doc. 298 at pp. 1–2; Doc. 299 at p. 21.

[110] *See* Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60(b)(6).

[111] *In re Vioxx Products Liab. Litig.*, 509 F. App'x 383, 386 (5th Cir. 2013) (quoting *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993)).

The Court recently rejected Trustmark's most recent request to reconsider its ruling on Plaintiffs' allegations of fraud, conversion, and conspiracy.  Doc. 277.  Neither Trustmark nor the remaining Bank Defendants articulate an adequate ground to justify their renewed requests for reconsideration, indicating instead that they merely disagree with the Court's prior orders. But "[m]ere disagreement . . . does not warrant reconsideration."[112]  Because the Bank Defendants have not shown that the Court's assessment of their prior requests to dismiss Plaintiffs' claims was "manifestly unjust," and because Plaintiffs' Second Amended CAC amplifies Plaintiffs' claims in even greater detail, the Bank Defendants' attempts to re-litigate previously rejected arguments must be denied.[113]

### D.  Blaise Friedli offers no independent grounds for dismissing Plaintiffs' claims

In addition to joining the other Bank Defendants in their motions to dismiss Plaintiffs' TSA and fiduciary duty claims, Friedli asserts his own unique defenses to the claims stated in Plaintiffs' Second Amended CAC.  None of Friedli's arguments is persuasive.

#### 1.  The Court has already rejected Friedli's jurisdictional challenge

First, Friedli urges the Court to dismiss Plaintiffs' claims against him for lack of personal jurisdiction because "[he] is a perfect stranger to the State of Texas with the exception of two brief visits—across the span of his entire life."  Doc. 299 at p. 6.  At the same time Friedli concedes (as he must) that the Court has already *twice* denied Friedli's attempts to escape the Court's reach.  *See id.* at pp. 10, 13.  On June 5, 2014, the Court denied Friedli's first jurisdictional challenge, providing a detailed overview of Friedli's engagement in Stanford's fraud—which included oversight and management of Stanford's "secret slush fund account" and

---

[112]    *Cf. Anderson*, 402 B.R. at 755 (addressing a motion to reconsider pursuant to Rule 59); *Texas Instruments, Inc. v. Hyundai Electronics Indus., Co.*, 50 F. Supp. 2d 619, 621 (E.D. Tex. 1999) ("A motion to reconsider based on recycled arguments only serves to waste the resources of the court." (quotation marks omitted)).

[113]    *See Vioxx Products Liab. Litig.*, 509 F. App'x at 386.

"serv[ice] on Stanford's International Advisory Board"—and contacts with the State of Texas—which includes "travel[] . . . to Houston to meet with Stanford regarding Stanford business." Doc. 194 at pp. 8–11.  On September 8, 2014, the Court denied Friedli's request to reconsider its June 5 ruling.  Doc. 216 at p. 1.

There is no substantive difference between the losing jurisdictional arguments advanced in Friedli's prior papers and the arguments now advanced in Friedli's motion to dismiss Plaintiffs' Second Amended CAC.  *Compare* Doc. 160 at pp. 9–16; Doc. 175 at pp. 7–11; *and* Doc. 202 at pp. 2–10; *with* Doc. 299 at pp. 11–20.  To repeat: "District court opinions are not intended as mere first drafts . . . ."[114]  For the same reasons articulated in Plaintiffs' and the Official Stanford Investors Committee's ("OSIC") opposition briefs, *see* Docs. 166, 210,[115] and endorsed by the Court in its various orders rejecting Friedli's earlier jurisdictional challenges, Docs. 194, 216, the Court should deny Friedli's renewed attempt to skirt jurisdiction.

### 2.  *Friedli's objections to sufficiency of service are unavailing*

Next, Friedli insists that as against him, *all* of Plaintiffs' claims are "time-barred" by various statutes of limitations and repose.  On this issue, Friedli's argument is unique from the remaining Bank Defendants because it adds an additional element.  Specifically, Friedli contends that because he was not named as a defendant in Plaintiffs' original class action complaint and has not been "served with process in the Class Action," the various limitations periods related to Plaintiffs' claims never tolled and have each expired.  Doc. 299 at pp. 20–26.  Yet again, Friedli's arguments are unavailing in all significant respects.

---

[114]    *Anderson*, 402 B.R. at 755 (quotation marks omitted).

[115]    In response to Friedli's recycled jurisdictional challenge, Plaintiffs hereby incorporate by reference the jurisdictional arguments made in OSIC's Response and Brief in Opposition to Defendants' Motions to Dismiss, Doc. 166 at pp. 43–51, and Plaintiffs' Opposition to Motions to Reconsider or, Alternatively, to Certify Interlocutory Appeal, Doc. 210 at pp. 9–18.

**(a) Friedli waived his challenge to service by making a general appearance**

The filing of a cause of action suspends the limitations period for all claims attempted to be set forth in that action.[116]   Friedli argues that the clock has never stopped running on Plaintiffs' claims against him because he has not been properly served with Plaintiffs' class action complaint.   For reasons explained below, Friedli is incorrect in his assessment of Plaintiffs' efforts to serve him.   But even if Plaintiffs' service of process was insufficient, Friedli forfeited his challenge to service by having already made a general appearance.

Under the Federal Rules, a defendant waives any objection to service of process by making a voluntary general appearance.[117]   "A party makes a general appearance whenever it invokes the judgment of the court on any question other than jurisdiction. In determining whether conduct is sufficient to be considered a general appearance, the focus is on affirmative action that impliedly recognizes the court's jurisdiction over the parties."[118]

Here, Friedli made a general appearance on December 20, 2013, when he joined his co-Defendants in their "request that this Court defer ruling on the pending motions in this case until the Supreme Court renders its decision on the SLUSA question." Doc. 178 at p. 2.  Friedli made a second general appearance on May 22, 2015, when he filed an objection to Plaintiffs' request to amend their class action complaint.  Doc. 263.  Unlike Friedli's motions to dismiss OSIC's Intervenor Complaint—which focused on jurisdiction—these requests each invoked the Court's judgment on issues unrelated to jurisdiction, thereby inviting "affirmative action that impliedly

---

[116]      *Johnson*, 288 F.2d at 42.

[117]      *See Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1108 (5th Cir. 1985) (citing cases); *see also Lee v. Valdez*, No. 07-1298, 2009 WL 1406244, at *4 (N.D. Tex. May 20, 2009) ("Under Texas law, if the defendant makes a general appearance before the expiration of the statute of limitations period, the plaintiff is relieved of the responsibility to serve the defendant with process.").

[118]      *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1340 (5th Cir. 1996).

recognize[d] the court's jurisdiction over the parties."[119]   Each of these appearances was unquestionably targeted at Plaintiffs' class action complaint.  *See* Docs. 178, 263.  Moreover, in his December 20, 2013 request for deferral of consideration, Friedli failed to reserve his jurisdictional challenge.  *See* Doc. 178.  In sum, Friedli has already made a general appearance in this action, and therefore cannot now challenge Plaintiffs' service of process.[120]

### (b) Friedli was served with "good faith and reasonable dispatch"

Assuming that Friedli has not already waived service of process, his claim that he was not properly served still fails.  Friedli argues that service of process was improper under Rule 4 because he "was only served in Switzerland *by the Committee* with papers *only* related to the *Intervenor Complaint*."  Doc. 299 at p. 20 (emphasis in original).  Friedli defines the issue as whether Plaintiffs have demonstrated "strict compliance with the rules for service of process," and, in particular, Rule 4(c).  *Id.* at pp. 21–22 (quotation marks omitted).  But when, as here, the Defendant is a foreign national, "[g]ood faith and reasonable dispatch are the proper yardsticks" for determining whether service is effectuated, *not* strict compliance.[121]

Plaintiffs' efforts to effectuate service on Friedli satisfy the good faith and reasonable dispatch standard.  On December 14, 2012, OSIC named Friedli as a defendant in its Intervenor Complaint.  Doc. 130.  This complaint informed Friedli of each claim now pursued by Plaintiffs. *See id.* at ¶¶ 106–117.  Friedli concedes that he was properly served in Switzerland with OSIC's Intervenor Complaint.  Doc. 299 at p. 20.  On the *same* day that OSIC filed its Intervenor Complaint, Plaintiffs requested leave to amend "the Class Complaint to incorporate by reference the allegations set forth [against Friedli] in the Intervenor Complaint."  Doc. 131 at p. 3; *see also*

---

[119]     *Id.*

[120]     *See id.*; *e.g.*, *Lee*, 2009 WL 1406244, at *4; *Dow Agrosciences, LLC. v. Bates*, No. 01- 331, 2003 WL 22660741, at *28 (N.D. Tex. Oct. 14, 2003).

[121]     *Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012).

Doc. 132.  Thereafter, following Friedli's execution of proof of service, Doc. 149, and multiple appearances by his attorneys, *see* Docs. 160, 175, 178, 202, the Court granted Plaintiffs' request to amend, stating that "Plaintiffs' Class Complaint shall be considered to incorporate by reference [OSIC's] claims against . . . Blaise Friedli."  Doc. 212 at p. 1.

Friedli can hardly claim to have been a stranger to the allegations in Plaintiffs' original class action complaint when his name appeared throughout as SG Suisse's agent responsible for its relationship with the Stanford Entities. *See generally* Doc. 1-5.  Nor does Friedli assert that he failed to receive a copy of the Court's order granting Plaintiffs' request for leave to amend. Instead, Friedli exalts form over substance, insisting that "Plaintiffs completely failed to serve [him] in connection with the Class Action," and therefore Rule 12(b)(5) requires dismissal.  Doc. 299 at p. 21–22.  Friedli's approach is inconsistent with the Fifth Circuit's admonishment that a "flexible" standard applies to service of international defendants.[122]  It is also inconsistent with the Federal Rules' "preference . . . for resolving disputes on their merits," and the Supreme Court's admonishment that repose is reserved for defendants "who legitimately believed that the limitations period had passed without any attempt to sue," not a defendant such as Friedli "who understood, or who should have understood" that he was the target of Plaintiffs' claims.[123]

In short, Plaintiffs have effectuated service with "[g]ood faith and reasonable dispatch" because they moved to incorporate the claims stated in OSIC's Intervenor Complaint at the first possible moment, and Friedli concedes that he received a copy of this Complaint.[124]

---

[122]     *See id.* at 488; *see also Paradigm Entm't, Inc. v. Video Sys. Co.*, No. 99-2004, 2000 WL 251731, at *5 (N.D. Tex. Mar. 3, 2000) (indicating that a district court should not "elevate form over substance" when determining whether an international defendant was properly served).

[123]     *Krupski*, 560 U.S. at 550.

[124]     *Lozano*, 693 F.3d at 489.

### 3. *Plaintiffs' claims against Friedli are not time-barred when measured from December 14, 2012*

Friedli forfeited his challenge to Plaintiffs' efforts to serve him with the class action complaint. In any event, Friedli's assertion that he "has never been served" is wrong because he disregards the flexible standard applicable to service of process on international defendants. Under this standard, Plaintiffs' December 14, 2012 request to incorporate the allegations stated in OSIC's Intervenor Complaint stopped the clock on their claims against Friedli.

Measured from December 14, 2012, Friedli's assertion that Plaintiffs' claims are time-barred is clearly incorrect. Indeed, the Court has already said so, when it ruled that Plaintiffs' invocation of the discovery rule was sufficient to save Plaintiffs' conspiracy and conversion claims from 2-year statutes of limitations when "measur[ed] backward from the date [OSIC] filed its Complaint on December 14, 2012." Doc. 160 at pp. 19–20; *see* Doc. 234 at p. 23.[125] It stands to reason that if the discovery rule saves Plaintiffs' conversion and conspiracy claims, it also saves Plaintiffs' TSA, fraud, and breach of fiduciary duty claims, each of which is subject to a longer statute of limitations.[126]

Even absent the discovery rule (and this Court's prior rulings), Plaintiffs' claims are timely under Texas's equitable tolling doctrine.

> In order to toll the Texas statute of limitations, two requirements must generally be met within the period of limitation: (1) The plaintiff's petition (or complaint) must be filed in the office of the clerk, and (2) a citation, which shall

---

[125]   Friedli offers no reason why the Court should reconsider its prior order rejecting his timeliness arguments. Here again, Friedli's tacit request for reconsideration "only serves to waste the resources of the court." *Texas Instruments*, 50 F. Supp. 2d at 621 (quotation marks omitted).

[126]   As noted, Plaintiffs' TSA claims are subject to a 3-year statute of limitations, which was tolled by the discovery rule until at least the collapse of Stanford's scheme in February 2009, and possibly until James Davis's guilty plea in August 2009. *See Janvey II*, 712 F.3d at 197. Plaintiffs' common law fraud and fiduciary duty claims are each subject to a 4-year statute of limitations, which were likewise tolled by the discovery rule. Tex. Civ. Prac. & Rem. Code Ann. art. 16.004(a)(4)–(5); *see Maes v. El Paso Orthopaedic Surgery Grp., P.A.*, 385 S.W.3d 694, 699 (Tex. App. 2012) (holding that derivative claim is subject to the same statute of limitations as a primary violation), *review denied* (Feb. 15, 2013); *Maverick*, 760 S.W.2d at 645 (discovery rule applies to claims of fraud and/or breach of fiduciary duty).

be accompanied by a copy of plaintiff's petition, must be issued by the clerk and served upon the defendant by an authorized officer.

Under the Texas equitable doctrine of tolling, the above tolling rule is satisfied alone by filing the petition within the period of limitation so long as the plaintiff approximates the rule's second requirement by using diligence in procuring the issuance and service of citation, even though the citation is in fact first issued and served after the period of limitation.[127]

Here, Plaintiffs have filed their papers in accordance with Court rules and, for reasons explained above, have "approximate[d] . . . procuring the issuance and service of citation."[128] Thus, the requirements of Texas's equitable tolling doctrine are satisfied, and the filing of Plaintiffs' December 14, 2012 request to incorporate OSIC's claims stopped the clock on all applicable statute of limitations.

In sum, the various applicable statutes of limitations cannot bar Plaintiffs from proceeding to judgment against Friedli. However, consistent with Plaintiffs' position that the TSA's 5-year statute of repose bars TSA claims which accrued more than 5-years prior to the filing of an action, Plaintiffs acknowledge that their TSA claims against Friedli are barred to the extent that such claims arose more than five years prior to December 14, 2012—when Plaintiffs first requested to name Friedli as a defendant in the class action. Friedli is subject to liability only for TSA claims that accrued on or after December 14, 2007.

## IV.   CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court deny the Bank Defendants' motions to dismiss the Plaintiffs' Second Amended CAC.

Dated: August 4, 2015

                                        Respectfully Submitted,

---

[127]     *Curry v. Heard*, 819 F.2d 130, 131–32 (5th Cir. 1987) (quotation marks and citations omitted); *see also Fluor Engineers and Constructors, Inc. v. Southern Pacific Transportation Co.*, 753 F.2d 444, 447 & n.6 (5th Cir.1985).

[128]     *Curry*, 819 F.2d at 131–32.

/s/    *Jesse C. Stewart*
James R. Swanson (*pro hac vice*)
jswanson@fishmanhaygood.com
Lance C. McCardle (*pro hac vice*)
Benjamin D. Reichard (*pro hac vice*)
Jesse C. Stewart (*pro hac vice*)
**Fishman Haygood, L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Tel.: (504) 586-5252
Fax: (504) 586-5250

Peter D. Morgenstern (*pro hac vice*)
Joshua E. Abraham (*pro hac vice*)
**Butzel Long, P.C.**
230 Park Avenue, Suite 850
New York, New York 10169
Tel.: (212) 818-1110
Fax: (212) 818-0494

*Attorneys for the Plaintiffs*

Eric Seiler
Scott M. Berman
**Friedman Kaplan Seiler & Adelman,
L.L.P.**
7 Times Square
New York, NY 10036-6516
Tel.: (212) 833-1100
Fax: (212) 833-1250

*Of Counsel*

# CERTIFICATE OF SERVICE

I hereby certify that I have on this 4th day of August, 2015, served a copy of the foregoing upon counsel of record by CM/ECF filing.

/s/    *Jesse C. Stewart*