# EXHIBIT 1

**APPENDIX A**

**CLAIMANTS BY CONTINENT**



Source:  Data taken from information provided by the Joint Liquidators and produced by investor-Plaintiffs in *Troice v. Proskauer* regarding the country of citizenship for claimants who submitted claims to the Joint Liquidators.  *See* App. 2926-27, 2928-32 [Russell Dep. Tr. at 122:17-123:22, 125:17-129:21]; App. 651-52 ["Stanford International Bank – In Liquidation: Summary of Claims by Country and Status"]; *Troice v. Proskauer Rose LLP, et al.*, No. 09-cv-01600-N-BG, Dkt. No. 198-8 at 105-06, Dkt. No. 197 at 55, Dkt. No. 193 at 45-46.

# EXHIBIT 2

## APPENDIX B

### CLAIMANTS IN TOP 6 COUNTRIES



**United States**
$1.6 B
3,438 claimants

**Mexico**
$976 M
3,077 claimants

**Haiti**
$234 M
294 claimants

**Venezuela**
$1.6 B
8,313 claimants

**Antigua & Barbuda**
$1.5 B
3,176 claimants

**Peru**
$122 M
378 claimants

Source: Data taken from information provided by the Joint Liquidators and produced by investor-Plaintiffs in *Troice v. Proskauer* regarding the country of citizenship for claimants who submitted claims to the Joint Liquidators. *See* App. 2926-27, 2928-32 [Russell Dep. Tr. at 122:17-123:22, 125:17-129:21]; App. 651-52 ["Stanford International Bank – In Liquidation: Summary of Claims by Country and Status"]; *Troice v. Proskauer Rose LLP, et al.*, No. 09-cv-01600-N-BG, Dkt. No. 198-8 at 105-06, Dkt. No. 197 at 55, Dkt. No. 193 at 45-46.

# EXHIBIT 3

**APPENDIX C**

## CLASS COMPOSITION—106 COUNTRIES

| Country | Total Value of Claimants in US Dollars | Percentage of Total Dollars | No. of Claimants | Percentage of Total Claimants | Country | Total Value of Claimants in US Dollars | Percentage of Total Dollars | No. of Claimants | Percentage of Total Claimants |
|---|---|---|---|---|---|---|---|---|---|
| Venezuela | 1.6B | 22% | 8313 | 38% | Nicaragua | 15M | .2% | 30 | .1% |
| United States | 1.6B | 22% | 3438 | 16% | New Zealand | 14M | .2% | 11 | .5% |
| Antigua and Barbuda | 1.5B | 20% | 3176 | 15% | Jamaica | 12M | .2% | 14 | .06% |
| Mexico | 976M | 13% | 3071 | 14% | Guyana | 11M | .1% | 22 | .1% |
| Haiti | 234M | 3% | 294 | 1% | Russian Federation | 11M | .1% | 21 | .09% |
| Peru | 122M | 2% | 378 | 2% | Brazil | 10M | .1% | 32 | .1% |
| Colombia | 105M | 1% | 384 | 2% | Bolivia | 9M | .1% | 24 | .1% |
| Virgin Islands (British) | 91M | 1% | 102 | .4% | Cayman Islands | 9M | .1% | 6 | .03% |
| Panama | 90M | 1% | 99 | .4% | Costa Rica | 9M | .1% | 16 | .07% |
| Aruba | 76M | 1% | 268 | .1% | Egypt | 9M | .1% | 42 | .1% |
| The Netherlands | 75M | 1% | 116 | .5% | Latvia | 9M | .1% | 6 | .03% |
| Ecuador | 65M | 1% | 378 | .2% | Portugal | 8M | .1% | 17 | .08% |
| El Salvador | 63M | .9% | 77 | .4% | Belgium | 7M | .1% | 24 | .1% |
| Netherlands Antilles | 63M | .8% | 235 | 1% | Switzerland | 7M | .1% | 28 | .1% |
| Libyan Arab Jamahiriya | 58M | .8% | 2 | .009% | Dominican Republic | 6M | .08% | 36 | .2% |
| United Kingdom | 56M | .7% | 158 | .7% | United Arab Emirates | 6M | .09% | 6 | .02% |
| Canada | 45M | .6% | 159 | .7% | Barbados | 5M | .08% | 14 | .06% |
| France | 34M | .4% | 37 | .2% | Trinidad and Tobago | 5M | .07% | 30 | .1% |
| Argentina | 29M | .4% | 122 | .5% | Ireland | 3M | .05% | 6 | .03% |
| Spain | 29M | .5% | 106 | .5% | Isle of Man | 3M | .05% | 3 | .01% |
| Guatemala | 27M | .4% | 87 | .4% | Saint Kitts and Nevis | 3M | .05% | 7 | .03% |
| Germany | 21M | .3% | 29 | .1% | Virgin Islands (U.S.) | 3M | .04% | 4 | .02% |
| Singapore | 17M | .2% | 11 | .5% | Chile | 2M | .03% | 12 | .05% |
| Israel | 16M | .2% | 40 | .1% | Guadeloupe | 2M | .03% | 2 | .01% |
| Bahamas | 15M | .2% | 4 | .2% | Kenya | 2M | .04% | 8 | .04% |
| Italy | 15M | .2% | 49 | .2% | Liberia | 2M | .03% | 2 | .01% |

Source:  Data taken from information provided by the Joint Liquidators and produced by investor-Plaintiffs in *Troice v. Proskauer* regarding the country of citizenship for claimants who submitted claims to the Joint Liquidators.  *See* App. 2926-27, 2928-32 [Russell Dep. Tr. at 122:17-123:22, 125:17-129:21]; App. 651-52 ["Stanford International Bank – In Liquidation: Summary of Claims by Country and Status"]; *Troice v. Proskauer Rose LLP, et al.*, No. 09-cv-01600-N-BG, Dkt. No. 198-8 at 105-06, Dkt. No. 197 at 55, Dkt. No. 193 at 45-46.

| Country | Total Value of Claimants in US Dollars | Percentage of Total Dollars | No. of Claimants | Percentage of Total Claimants |
|---|---|---|---|---|
| Senegal | 2M | .03% | 1 | .001% |
| Australia | 1M | .02% | 4 | .02% |
| Bahrain | 1M | .02% | 2 | .01% |
| Bermuda | 1M | .03% | 4 | .02% |
| Greece | 1M | .01% | 8 | .03% |
| Honduras | 1M | .02% | 4 | .02% |
| Lebanon | 1M | .03% | 5 | .02% |
| Montserrat | 1M | .01% | 2 | .01% |
| Namibia | 1M | .02% | 4 | .02% |
| People's Republic of China | 1M | .01% | 3 | .01% |
| Puerto Rico | 1M | .03% | 8 | .03% |
| Sweden | 1M | .02% | 18 | .08% |
| Suriname | 1M | .02% | 5 | .02% |
| Ukraine | 1M | .03% | 6 | .03% |
| Uruguay | 1M | .02% | 6 | .03% |
| Paraguay | 917K | .01% | 7 | .03% |
| Austria | 873K | .01% | 14 | .06% |
| Tanzania | 828K | .01% | 1 | .01% |
| Denmark | 767K | .01% | 7 | .03% |
| India | 752K | .01% | 6 | .03% |
| Belize | 721K | .01% | 4 | .02% |
| Martinique | 572K | .008% | 2 | .01% |
| South Africa | 572K | .008% | 3 | .01% |
| Bulgaria | 507K | .007% | 3 | .01% |
| Cyprus | 448K | .006% | 6 | .03% |
| Saint Lucia | 447K | .006% | 5 | .02% |
| Cuba | 354K | .005% | 3 | .01% |
| Romania | 345K | .005% | 2 | .01% |

| Country | Total Value of Claimants in US Dollars | Percentage of Total Dollars | No. of Claimants | Percentage of Total Claimants |
|---|---|---|---|---|
| Taiwan | 331K | .005% | 1 | .01% |
| Bosnia and Herzegovina | 305K | .004% | 1 | .01% |
| Grenada | 257K | .004% | 3 | .01% |
| Ghana | 238K | .003% | 2 | .01% |
| Poland | 239K | .003% | 2 | .01% |
| Saudi Arabia | 266K | .004% | 1 | .01% |
| Syrian Arab Republic | 235K | .003% | 4 | .02% |
| Macedonia | 212K | .003% | 3 | .01% |
| Kuwait | 197K | .003% | 1 | .01% |
| Anguilla | 158K | .002% | 4 | .02% |
| Turkey | 116K | .002% | 2 | .01% |
| Iceland | 101K | .001% | 1 | .01% |
| Angola | 96K | .001% | 1 | .01% |
| Croatia (Hrvatska) | 56K | .001% | 1 | .01% |
| Norway | 53K | .001% | 1 | .01% |
| Nigeria | 49K | .001% | 1 | .01% |
| Serbia | 43K | .001% | 1 | .005% |
| Saint Vincent and The Grena | 34K | .000% | 1 | .005% |
| Hungary | 26K | .000% | 1 | .005% |
| Congo (Democratic Republi | 25K | .000% | 1 | .005% |
| Uganda | 20K | .000% | 1 | .005% |
| Chad | 19K | .000% | 1 | .005% |
| Malta | 18K | .000% | 1 | .001% |
| Azerbaijan | 13K | .000% | 1 | .005% |
| Bouvet Island | 55.78 | .000% | 1 | .005% |
| Yemen | 52.11 | .000% | 1 | .005% |
| **TOTAL** | **7.2B** | | **21,738** | |

# EXHIBIT 4

## APPENDIX D

## CLASS COMPOSITION—47 STATES

| State | Dollars | % of Dollars | # of Claimants | % of Claimants |
|---|---|---|---|---|
| FL | 857M | 33.26% | 2,409 | 34.02% |
| TX | 582M | 22.59% | 1,290 | 18.22% |
| LA | 561M | 21.77% | 1,810 | 25.56% |
| TN | 83M | 3.22% | 196 | 2.77% |
| MS | 64M | 2.48% | 125 | 1.77% |
| GA | 62M | 2.41% | 160 | 2.26% |
| CA | 60M | 2.33% | 177 | 2.50% |
| NC | 59M | 2.29% | 125 | 1.77% |
| CO | 44M | 1.71% | 72 | 1.02% |
| AR | 35M | 1.36% | 88 | 1.24% |
| AZ | 35M | 1.36% | 28 | 0.40% |
| SC | 25M | 0.97% | 20 | 0.28% |
| NY | 16M | 0.62% | 71 | 1.00% |
| MD | 13M | 0.50% | 26 | 0.37% |
| NJ | 8M | 0.31% | 45 | 0.64% |
| PR | 8M | 0.31% | 39 | 0.55% |
| MI | 8M | 0.31% | 24 | 0.34% |
| CT | 8M | 0.31% | 11 | 0.16% |
| MA | 7M | 0.27% | 30 | 0.42% |
| VA | 6M | 0.23% | 31 | 0.44% |

| State | Dollars | % of Dollars | # of Claimants | % of Claimants |
|---|---|---|---|---|
| OK | 5M | 0.19% | 26 | 0.37% |
| OH | 4M | 0.16% | 14 | 0.20% |
| NV | 4M | 0.16% | 9 | 0.13% |
| MO | 3M | 0.12% | 14 | 0.20% |
| NM | 2M | 0.08% | 14 | 0.20% |
| AL | 2M | 0.08% | 12 | 0.17% |
| DC | 2M | 0.08% | 9 | 0.13% |
| UT | 2M | 0.08% | 5 | 0.07% |
| OR | 2M | 0.08% | 4 | 0.06% |
| KY | 2M | 0.08% | 2 | 0.03% |
| WA | 1M | 0.04% | 22 | 0.31% |
| WI | 1M | 0.04% | 6 | 0.08% |
| IN | 1M | 0.04% | 5 | 0.07% |
| HI | 1M | 0.04% | 3 | 0.04% |
| KS | 1M | 0.04% | 3 | 0.04% |
| AK | 546K | 0.02% | 2 | 0.03% |
| NH | 501K | 0.02% | 4 | 0.06% |
| WV | 352K | 0.01% | 1 | 0.01% |
| VT | 323K | 0.01% | 2 | 0.03% |
| VI | 286K | 0.01% | 3 | 0.04% |

| State | Dollars | % of Dollars | # of Claimants | % of Claimants |
|---|---|---|---|---|
| SD | 254K | 0.01% | 1 | 0.01% |
| D.C. | 128K | 0.00% | 1 | 0.01% |
| DE | 66K | 0.00% | 2 | 0.03% |
| IA | 56K | 0.00% | 1 | 0.01% |
| WY | 50K | 0.00% | 1 | 0.01% |
| Unkown | 37K | 0.00% | 71 | 1.00% |
| MN | 25K | 0.00% | 1 | 0.01% |
| IL | 23K | 0.00% | 33 | 0.47% |
| PA | 7K | 0.00% | 31 | 0.44% |
| MT | 0 | 0.00% | 2 | 0.03% |
| ID | 0 | 0.00% | 1 | 0.01% |

| 47 States | $2.6B | 7,082 |
|---|---|---|

Source:  Data taken from chart produced by the U.S. Receiver providing the allowed claimants' state of residence for the allowed claims in the United States.  *See* App. 2936-39 [Russell Dep. Tr. at 137:18-140:2]; App. 649 [ABBOTT_000006].

# EXHIBIT 5

### APPENDIX E

## OVERVIEW OF PROPOSED CLASS REPRESENTATIVES



**GUTHRIE ABBOTT**

U.S. citizen; Mississippi resident
- Filed lawsuit against financial advisor in Mississippi

REDACTED

REDACTED

- Did not report interest from Stanford CDs on tax returns



**RUTH ALFILLE DE PENHOS**

Mexican citizen and resident
- Admitted her class representative declaration is wrong
- Wrongly testified she is not party to any other lawsuit, but is part of three suits in Mexico and a NAFTA arbitration
- Repeatedly threatened to walk out of deposition



REDACTED



**SARAH ELSON-ROGERS**

U.K. citizen; North Carolina resident
- Submitted inaccurate information in declaration to be class representative

REDACTED

REDACTED



**STEVEN QUEYROUZE**

U.S. citizen; Louisiana resident

REDACTED

REDACTED

REDACTED

REDACTED



**DIANA SUAREZ**

Venezuela citizen; Florida resident

REDACTED

- Gave Power of Attorney for all Stanford-related matters to her son
- Put money in U.S. to avoid Hugo Chavez Administration

REDACTED

REDACTED

- Did not declare interest on Stanford CDs on U.S. tax returns



**SALIM ESTEFENN URIBE**

Colombian citizen and resident
- Submitted erroneous class representative declaration regarding Trusts that purchased CDs

REDACTED

- Used his Stanford accounts for suspicious round-trip and currency exchange transfers



App. 28

# EXHIBIT 6

**APPENDIX F**

**DEFENDANTS' CLASS CERTIFICATION EXPERTS**

| Subject Matter of Legal Opinion | Expert | Notable Qualifications/Affiliations |
|---|---|---|
| **Canadian Law** | Janet Walker  | • Professor of Law and past Associate Dean of *Osgoode Hall Law School* in Toronto and former visiting professor at universities across the globe focused on private international and comparative law<br>• Author of leading authoritative treatise, *Castel & Walker: Canadian Conflict of Laws*, 6th Edition |
| **Colombian Law** | Eduardo Zuleta  | • Named Senior Partner at a Bogotá law firm with 25+ years of practice<br>• Vice President of the International Court of Arbitration of the International Chamber of Commerce, active arbitrator across numerous foreign jurisdictions<br>• Former Professor of International Law at two Colombian law schools |
| **English Law** | Adrian Briggs  | • Barrister at the bar of England and Wales<br>• Professor of Private International Law at the *University of Oxford*<br>• Author of authoritative texts on *Civil Jurisdiction and Judgments*; *Private International Law in English Courts*; *Agreements on Jurisdiction and Choice of Law*; and section editor for Dicey, Morris & Collins, *The Conflict of Law* |
| **French Law** | George A. Bermann  | • Professor of Law and of European Union law at *Columbia Law School*, focus includes comparative and international law<br>• Distinguished Chair holder and Affiliated Professor of Law at the *Institut des Sciences Politiques* (Paris, France)<br>• Council Member of the European Law Institute |

| German Law | Stephan Wilske  | • Partner at German law firm with specialized practice in international disputes and cross-border litigation, including the recognition and enforcement of foreign judgments<br>• Dual U.S. and German licensed, multi-lingual practitioner of private international law |
|---|---|---|
| **Latin American Law, with focus on: Ecuador, El Salvador, Mexico, Panama, Peru, and Venezuela** | Antonio Gidi  | • Drafter of model class action code for Latin America / Civil Law countries and of comprehensive class action legislation for Mexico and Brazil<br>• Visiting Professor of International Law at universities throughout the U.S., Brazil, Italy, Belgium, France<br>• Reputed scholar on the recognition and enforcement of U.S. class actions abroad |
| **Mexican Law** | Eduardo Siqueiros  | • Partner at Hogan Lovells LLP in Mexico City and former founding partner of prominent Mexican law firm with 30+ years of practice<br>• Professor of Law at two Mexican law schools on matters of private international commercial law<br>• Chairman of the Board of Arbitration before the International Court of Arbitration of the International Chamber of Commerce |
| **Former Netherlands Antillean Law (including Aruba)** | Rogier F. van den Heuvel  | • Attorney at a Curaçao law firm, specializing in corporate litigation, international disputes and the recognition and enforcement of foreign awards<br>• Visiting lecturer in Private International Law at the *University of Curaçao* School of Law |
| **Panamanian Law** | Arturo Hoyos  | • Former Chief Justice of the Supreme Court of Justice of Panama, with longest tenure in Panamanian history (16 years)<br>• Eight years sitting on Fourth Chamber of Supreme Court that governs recognition of foreign judgments<br>• 40 years' experience in Panamanian courts and abroad<br>• Current law firm founder and practitioner at *Hoyos & Associates* |

2

| Peruvian Law | J. Domingo Rivarola Reisz  | • Drafter of Peruvian legislation concerning class action litigation for consumer protection issues<br>• Partner at a Lima law firm, Fulbright Scholar with extensive experience in international commercial litigation<br>• Professor at Law at *Pontificia Universidad Católica del Perú* |
| Spanish Law | David Arias  | • Founding partner of Madrid law firm *Arias SLP*, head of international dispute resolution practice<br>• Professor of Law at *Universidad Francisco de Vitoria*<br>• Drafter of model rules for international dispute resolution, arbitrator and counsel in international conflicts |
| Swiss Law | Isabelle Romy  | • Former Deputy Judge at Swiss Federal Supreme Court<br>• Partner at Zurich law firm<br>• Associate Professor of Law at the *University of Fribourg* and the *Federal Institute of Technology* in Lausanne, focus includes Swiss and European Private International Law |
| Venezuelan Law | James Otis Rodner  | • Founding partner of highly-ranked Venezuelan law firm *Rodner Martínez & Asociados*<br>• Harvard J.D. and M.B.A., former professor of law at numerous universities in Caracas<br>• Former principal member of International Court of Arbitration of the International Chamber of Commerce |

3

| Damages | Kenneth M. Lehn<br> | • Former Chief Economist of the U.S. Securities and Exchange Commission<br>• Samuel A. McCullough Professor of Finance at the University of Pittsburgh, Joseph M. Katz Graduate School of Business<br>• Former Director of the Center for Research on Contracts and the Structure of Enterprise, University of Pittsburgh |
|---|---|---|

4

# EXHIBIT 7

**APPENDIX G**

**PROPOSED CLASS REPRESENTATIVES' ALLOWED CLAIM AMOUNTS**



Source:  Data taken from documents produced by the six plaintiffs and the U.S. Receiver, and plaintiffs' deposition testimony.  *See* App. 675 [ABBOTT_000433]; App. 1059 [STAN_TDBANK_000383]; App. 1051 [STAN_TDBANK_000553]; App. 1055 [STAN_TDBANK_000654]; App. 1165 [ABBOTT_000011]; App. 1111 [PENHOS_000095]; App. 1574-75  [June 10, 2015 Penhos Dep. Tr. at 195:18-25, 198:9-11]; App. 671 [ELSON-ROGERS_000790]; App. 903-04 [ELSON-ROGERS_000639-40]; App. 1087, 1090 [URIBE_000013, URIBE_000016]; App. 1113 [URIBE_000083]; App. 1121 [URIBE_000090]; [STAN_TDBANK_000089]; App. 1137 [STAN_TDBANK_000210]; App. 1063 [STAN_TDBANK_000657]; App. 1381-84 [May 27, 2015 Queyrouze Dep. Tr. at 229:18-232:18]; App. 1071 [SUAREZ_000158]; App. 1156 [SUAREZ_000167]; App. 1083 [SUAREZ_000204].

# EXHIBIT 8

<u>APPENDIX H</u>

**EXECUTIVE SUMMARY OF STATE LAW DIFFERENCES**

      This Executive Summary provides examples of state law variations regarding the common law claims in this Action, which involve aiding and abetting tort liability; aiding and abetting a fraud; aiding and abetting conversion; aiding and abetting a breach of fiduciary duty; and civil conspiracy.  The complete analysis of the state laws on these claims is set forth in Exhibits 9 to 12 in the Appendix.

| **I.**    **STATE VARIATIONS IN THE LAW OF AIDING AND ABETTING TORTS** |
|---|
| **A.**    **Examples of States that Do Not Recognize Aiding and Abetting Tort Liability** |
| **Alabama** – *Continental Casualty Co. v. Compass Bank*, No. CIV.A. 04-0766-KD-C, 2006 WL 566900, at *11 (S.D. Ala. Mar. 6, 2006) (noting "it does not appear that Alabama recognizes the claim of aiding and abetting common law torts" and commenting that "[w]hen aiding and abetting is discussed in Alabama cases it is almost exclusively in the context of a criminal case or in reference to a specific civil statutory provision"). |
| **Louisiana** – *Guidry v. Bank of LaPlace*, 661 So. 2d 1052, 1057 (La. Ct. App. 1995) ("In the absence of a conspiracy, there is no distinct cause of action for aiding and abetting under Louisiana law."). |
| **Ohio** – *Wells Fargo v. Smith*, No. 2012-04-006, 2013 WL 938069, at *7 (Ohio Ct. App. Mar. 11, 2013) ("Ohio does not recognize a cause of action for aiding and abetting a tortious act."); *DeVries Dairy, L.L.C. v. White Eagle Coop. Assn., Inc.*, 974 N.E.2d 1194 (Ohio 2012) (holding that Ohio has never recognized an action for tortious acts in concert under the Restatement (Second) of Torts § 876). |
| **B.**    **Examples of States that Recognize Aiding and Abetting Tort Liability** |
| **Alaska** – *Beal v. McGuire*, 216 P.3d 1154, 1174 (Alaska 2009) ("aiding and abetting liability occurs when the actor knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other"). |
| **California** – *Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 405 (Ct. App. 2005) ("California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort."). |
| **Maine** – *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993) (the claim of aiding and abetting a tort is recognized in Maine). |
| **New Mexico** – *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 947 P.2d 143, 147 (N.M. 1997) ("New Mexico recognizes tort liability for aiding and abetting another's tortious conduct."). |

|  |  |
|---|---|
| **C.** | **Examples of States That Have Not Explicitly Addressed Aiding and Abetting Tort Liability** |

**Missouri** – *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 09 CV 1252, 2012 WL 3984486, at *6 (E.D. Mo. Sept. 11, 2012) ("[T]he Missouri Supreme Court has not squarely decided whether to recognize the tort of aiding and abetting.").

## II.   STATE VARIATIONS IN THE LAW OF AIDING AND ABETTING FRAUD

|  |  |
|---|---|
| **A.** | **Examples of State Law Variations With Respect to States' Recognition of a Cause of Action for Aiding and Abetting Fraud** |

**Ohio** – *Fed. Mgt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842, 853 (Ohio Ct. App. 2000) ("Ohio does not recognize a claim for aiding and abetting common-law fraud.").

**New Jersey** – *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l*, Inc., 904 A.2d 775, 782 (N.J. Super Ct. App. Div. 2006) ("[A]iding and abetting fraud is a cognizable civil cause of action under New Jersey law." )

**Hawaii** – *Television Events & Mktg., Inc. v. Amcon Distrib*. Co., 488 F. Supp. 2d 1071, 1077 (D. Haw. 2006) ("the courts recognized that Hawaii had not indicated whether a cause of action for aiding and abetting fraud existed, but neither court reached the issue because the respective plaintiffs failed to make any allegations to support such a claim").

|  |  |
|---|---|
| **B.** | **Examples of State Law Variations With Respect to the Injured Party's Reliance on  the Fraudulent Statement** |

**Texas** – *Miller Global Props., LLC v. Marriott Int'l, Inc.*, 418 S.W.3d 342, 347-48 (Tex. App.—Dallas 2013, pet. denied) (plaintiffs "must have both actually and *justifiably* relied on the alleged misrepresentation to suffer a compensable injury").

**Kansas** –  *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 532 (1987) ("The injured party's reliance on a fraudulent misrepresentation must be reasonable, justifiable and detrimental.").

**Massachusetts** – *Mass. v. Mylan Labs.*, 608 F. Supp. 2d 127, 156-57 (D. Mass 2008) (a plaintiff "must also prove that it relied upon the representation as true" and that reliance was reasonable).

**Iowa** – *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 736 (Iowa 2009) (noting that "justifiable reliance is an essential element of a claim for fraud").

**New Mexico –** *Papatheofanis v. Allen*, 242 P.3d 358, 361 (N.M. Ct. App. 2010) (noting there must be detrimental reliance).

**Oregon** – *Or. Pub. Emples. Ret. Bd. v. Simat, Helliesen & Eichner*, 83 P.3d 350, 361 (Or. Ct. App. 2009) (to prevail on a fraud claim, "reliance in fact must be reasonable, but such reasonableness is measured in the totality of the parties' circumstances and conduct").

**North Dakota** – *Phoenix Assurance Co. v. Runck*, 366 N.W.2d 788, 792 (N.D. 1985) ("In actions for fraud it is not required that a defendant's representations be the sole cause of the damage. If they are a substantial factor in inducing the plaintiff to act, even though he also relies in part upon the advice of others, reliance is sufficiently shown.").

C. **Examples of State Law Variations Regarding Required Level of Knowledge and Intent of Party Making the Fraudulent Statement**

1. **Example of States Requiring Actual Knowledge of Falsity**

**Alaska** – *Lightle v. State, Real Estate Comm'n*, 146 P.3d 980, 983-84 (Alaska 2006) ("To be 'fraudulent,' then, a representation need only be made with 'scienter,' in other words, the necessary 'knowledge of the untrue character.'").

**Connecticut** – *Alliance Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157, 167 (D. Conn. 2005) ("[A] defendant must know what he or she represents as true is not true. A reckless allegation will not suffice.").

2. **Example of States Requiring Only Recklessness**

**Minnesota** – *Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986) ("even if a misrepresentation is made without purpose to deceive or without knowledge of its falseness, 'the fraud is as great as if the party knew his statement to be untrue'").

**Tennessee** – *Davis v. McGuigan*, 325 S.W.3d 149, 154 (Tenn. 2010) (statement needs to have been made with knowledge of falsity or recklessness or without belief that it was true).

**West Virginia** – *State v. Berkeley*, 23 S.E. 608, 609 (W. Va. 1985) ("[A] false representation may be made [with] scienter, in contemplation of law, in any of the following ways: (1) With actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; or (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity.")

3. **Example of States Requiring Actual Knowledge Plus Intent to Deceive**

**New Jersey** – *Desi, poLink Court Reporting & Litig. Support Servs. v. Rochman*, 64 A.3d 579, 586 (App. Div. 2013) (plaintiff must demonstrate "defendant's knowledge of the falsity and intent to obtain an undue advantage").

**North Carolina** – *Latta v. Rainey*, 689 S.E.2d 898, 909 (N.C. Ct. App. 2010) ("required scienter is not present without both knowledge and an intent to deceive, manipulate, or defraud").

4. **Example of States Requiring Actual Knowledge or Recklessness, Plus Intent to Deceive**

**Kentucky** – *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (knowledge or recklessness, coupled with intent to induce reliance is required for fraud claims).

**Louisiana** – *Sys. Eng'g and Sec., Inc. v. Sci. & Eng's Ass'ns, Inc.*, 962 So. 2d 1089, 1091 (La. Ct. App. 2007) (knowing misrepresentation and intent to deceive required).

**New Mexico** – *Papatheofanis v. Allen*, 242 P.3d 358, 361 (N.M. Ct. App. 2010) (there must be knowledge of the falsity of the representation or recklessness in making the representation and intent to deceive and to induce reliance).

#### D.   Examples of State Law Variations With Respect to the Required Standard of Proof for Fraud

##### 1.   Examples of States That Require Clear and Convincing Evidence

**Connecticut** – *Stuart v. Freiberg*, 116 A.3d 1195, 1203-04 (Conn. 2015) (noting that the elements of fraud must be "show[n] by clear and convincing evidence").

**Delaware** – *In re Estate of Dugger*, No. 224629, 2000 WL 1528710, at *4 (Del. Ch. Sep. 29, 2000 (same).

**Florida** – *Ibarra v. Izaguirre*, 985 So.2d 1117, 1119 (Fla. Dist. Ct. App. 2008) (same).

**Mississippi** – *Moore v. Bailey*, 46 So. 3d 375, 383-384 (Miss. Ct. App. 2010) ("To demonstrate a prima facie case of fraud, otherwise known as intentional misrepresentation, a plaintiff must demonstrate by clear and convincing evidence the following nine elements [of fraud].").

##### 2.   Examples of States That Require Proof by a Preponderance of the Evidence

**Arkansas** – *Tyson Foods v. Davis*, 66 S.W.3d 568, 577 (Ark. 2002) ("The tort of fraud or deceit consists of five elements that the plaintiff must prove by a preponderance of the evidence.").

**Montana** – *In re Estate of Kindsfather*, 108 P.3d 487, 490 (Mont. 2005) ("A mere suspicion of fraud is not sufficient, fraud must be proven by a preponderance of the evidence.").

**Rhode Island** – *Ostalkiewicz v. Guardian Alarm, Div. of Colbert's Sec. Servs., Inc.*, 520 A.2d 563, 569 (R.I. 1987) ("[F]raud in a civil suit need only be proven by a fair preponderance of the evidence.").

##### 3.   Examples of States That Apply Other Standards of Proof

**Alabama** – *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 17 (Ala. 2004) ("[A] party can prove fraud by 'substantial evidence' without having the "clear and convincing evidence" described in the statute as necessary to justify punitive damages in a fraud action.").

**Iowa** – *Hoelscher v. Sandage*, 462 N.W.2d 289, 291 (Iowa Ct. App. 1990) (each element of fraud must be proved "by a preponderance of clear, satisfactory, and convincing evidence").

**South Carolina** – *Moseley v. All Things Possible, Inc.*, 694 S.E.2d 43, 45 (S.C. Ct. App. 2010) ("To prevail on a cause of action for fraud, a Plaintiff must prove [the elements] by clear, cogent and convincing evidence.").

|  | E. | Examples of State Law Variations With Respect to the Applicable Statute of Limitations for Fraud |
|---|---|---|

**Louisiana** – *Winn Fuel Serv., Inc. v. Booth*, 34 So.3d 515, 519 (La. Ct. App. 2010) (one-year statute of limitations for fraud).

**Ohio** – *Bennett v. McKibben*, 915 P.2d 400, 405 (Okla. Civ. App. 1996 (two-year statute of limitations for fraud).

**Georgia** – *Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 387 (2007) (four-year statute of limitations for fraud claims).

**Indiana** – *Orem v. Ivy Tech State Coll.*, 711 N.E.2d 864, 870 n.7 (Ind. Ct. App. 1999) (six years for fraud).

| III. | STATE VARIATIONS IN THE LAW OF AIDING AND ABETTING CONVERSION |
|---|---|

|  | A. | Examples of State Law Variations With Respect to Recognition of a Cause of Action for Aiding and Abetting Conversion |
|---|---|---|

**Kentucky** – *Budsgunshop.com, LLC v. Security Safe Outlet, Inc.*, No. 10-cv-00390-KSF, 2012 WL 1899851, at *18-19 (E.D. Ky. May 23, 2012) (noting that the court was unable to find a Kentucky state court case recognizing a civil action for aiding and abetting conversion).

**New York** – *Dickinson v. Igoni*, 76 A.D.3d 943, 945 (N.Y. App. Div. 2010) (New York law "permits a claim for aiding and abetting conversion").

**Utah** – *Albright v. Attorney's Title Ins. Fund*, No. 2:03-cv-517, 2008 WL 2952260, at *12 (D. Utah July 28, 2008) ("Although Utah appears to recognize aiding and abetting liability for intentional torts . . . Utah courts have not specifically recognized a cause of action for aiding and abetting conversion.").

|  | B. | Examples of State Law Variations With Respect to Required Intent for Conversion |
|---|---|---|

**Hawaii** – *Brooks v. Dana Nance & Co.*, 153 P.3d 1091, 1100 (Haw. 2007) (plaintiff must prove that defendant had "a constructive or actual intent to injure"); *accord. Newcomb v. Cambridge Home Loans, Inc.*, 861 F. Supp. 2d 1153, 1164 (D. Haw. 2012).

**Colorado** – *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1199 (Colo. App. 2009) (for conversion claim, a plaintiff must show a defendant "intentionally exercised dominion or control over a chattel"); *but see Holmes v. Young*, 885 P.2d 305, 310 (Colo. App. 1994) ("There is a

divergence of authority [in Colorado] as to whether actual knowledge is required or whether constructive knowledge of the breach will suffice.").

**Delaware** – *Segovia v. Equities First Holdings*, LLC, No. CIV.A.06C09-149-JRS, 2008 WL 2251218, at *19 (Del. Super. May 30, 2008) ("Conversion need not be accompanied by a subjectively wrongful intent to be actionable . . . . A person who mistakenly believes that his or her conduct is legal may nonetheless commit conversion.").

|   | **C.** | **Examples of State Law Variations in Rules Governing Claims for Conversion of Money** |

**Delaware** – *AM Gen. Holdings LLC ex rel. Ilshar Capital LLC v. Renco Grp., Inc.*, No. CV 7639-VCN, 2013 WL 5863010, at *16 (Del. Ch. Oct. 31, 2013) ("Under Delaware law, an action in conversion will not lie to enforce a claim for the payment of money.").

**California** – *Sanowicz v. Bacal*, 184 Cal. Rptr. 3d 517, 529 (Ct. App. 2015) (money cannot be the subject of a conversion action "*unless there is a specific, identifiable sum involved*").

**Wyoming** – *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 978 (Wyo. 1994) (money may be the subject of a conversion action, but the money needs to be "identifiable" and "there must also be an obligation to deliver that money in a specific manner").

**Alaska** – *Burseth v. Weyerhaeuser Mortgage Co.*, No. S-5075, 1993 WL 13563649, at *5 (Alaska Oct. 13, 1993) (the Supreme Court of Alaska has recognized "an action for conversion where the allegedly converted property is money").

|   | **D.** | **Examples of State Law Variations With Respect to the Required Interest in the Allegedly Converted Property** |

**Vermont** – *Miller v. Merchants Bank*, 415 A.2d 196, 199 (Vt. 1980) ("To make out a claim for conversion . . . plaintiff must show an immediate right to possession.").

**Connecticut** – *Devitt v. Manulik*, 410 A.2d 465, 467 (Conn. 1979) (in an action for conversion, plaintiff must prove "an immediate right to possession at the time of conversion").

**Alaska** – *McKibben v. Mohawk Oil Co.*, 667 P.2d 1223, 1229 (Alaska 1983) ("A future possessory interest is sufficient for a plaintiff to maintain an action for conversion.").

|   | **E.** | **Examples of State Law Variations With Respect to the Applicable Statute of Limitations for  Conversion** |

**Louisiana** – La. Rev. Stat. Ann. 10:3-420 (one-year statute of limitations for conversion of an instrument).

**Mississippi, Texas, Tennessee, Washington** – Tex. Bus. & Com. Code Ann. § 3.118(g) (West) (three-year statute of limitations); Tenn. Code Ann. § 47-3-118(g) (West) (same); Wash. Rev. Code Ann. § 62A.3-118 (g) (West) (same); Miss. Code. Ann. § 75-3-118 (g)(West) (same).

| |
|---|
| **New York** – *Doukas v. Ballard*, 972 N.Y.S.2d 143 (N.Y. Sup. Ct. 2013) (three-year statute of limitations for conversion under N.Y. C.P.L.R. § 214(3)). |
| **Florida** – *Feingold v. Am. Rack & Stack, Inc.*, 734 So.2d 479, 480 (Fla. Dist. Ct. App. 1999) (applying Fla. Stat. Ann. § 95.11(3)(h)'s four-year statute of limitations for conversion). |
| **Iowa, Virginia** – *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 477 (Iowa 1990) (applying five-year statute of limitations to claim for conversion of an instrument); *Willard v. Moneta Bldg. Supply, Inc.*, 551 S.E.2d 596, 599 (Va. 2001) (noting that it is "well-established" that conversion actions constitute claims of injury to property and applying the five-year statute of limitations under Va. Code. Ann. § 8.01-243(B)). |
| **Oregon** – Or. Rev. Stat. Ann. § 73.0118(7)(a) (West) (six-year statute of limitations for conversion of an instrument). |

## IV.  STATE VARIATIONS IN THE LAW OF AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### A.  Examples of State Law Variations With Respect to States' Recognition of a Claim for Aiding and Abetting Breach of Fiduciary Duty

#### 1.  Examples of States That Do Not Recognize This Cause of Action

| |
|---|
| **Louisiana** – *Broyles v. Cantor Fitzgerald & Co.*, No. 10-854-JJB, 2014 WL 6886158, at *5 (M.D. La. Dec. 8, 2014) ("This Court has ruled before that aiding and abetting the breach of a fiduciary duty is not a cause of action recognized in Louisiana."). |
| **Indiana** – *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 656 (Ind. Ct. App. 2014) (noting that "Indiana does not recognize . . . a cause of action" for aiding and abetting a breach of fiduciary duty). |
| **Kentucky** – *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 260 (Ky. Ct. App. 2008) ("Kentucky law has never recognized a civil cause of action for aiding and abetting a breach of fiduciary duty."). |

#### 2.  Examples of States That Recognize This Cause of Action

| |
|---|
| **Oregon** – *Granewich v. Harding*, 985 P.2d 788, 793 n.3 (Or. 1999) (recognizing claim for aiding and abetting a breach of a fiduciary duty as a "subcategory of a broader theory of vicarious tort liability"). |
| **South Carolina** – *Vortex Sports & Entm't, Inc. v. Ware*, 662 S.E.2d 444, 448 (S.C. Ct. App. 2008) (setting out elements for aiding and abetting a breach of fiduciary duty). |
| **Washington** – *Vanguard Int'l, Inc. v. Guangdong Fully, Ltd.*, No. 57396-9-I, 2008 WL 116268, at *4 (Wash. Ct. App. 2008) (describing "well settled" rule that a person who "knowingly assists another in violating his fiduciary" obligation is "liable as an aider and abettor"). |

| 3. Examples of States Where This Is an Open Question |
| --- |
| **Connecticut** – *Flannery v. Signer Asset Fin. Co.*, 94 A.3d 553, 560 n.12 (Conn. 2014) (noting that this issue is an open question in Connecticut and commenting that "[t]he Appellate Court assumed, without deciding, 'that Connecticut recognizes an action for aiding and abetting in the breach of a fiduciary duty'"). |
| **New Hampshire** – *In re Felt Mfg. Co., Inc.*, 371 B.R. 589, 615 (Bankr. D.N.H. 2007) (noting that New Hampshire has not addressed whether a claim for aiding and abetting a breach of fiduciary duty exists under New Hampshire law). |
| **B.    Examples of State Law Variations With Respect to the Required Level of Knowledge and Intent by an Alleged Aider and Abettor** |
| **Georgia** – *Wright v. Apartment Inv. & Mgmt. Co.*, 726 S.E.2d 779, 788 (Ga. Ct. App. 2012) (plaintiff must establish that defendant had knowledge of fiduciary duty owed between primary wrongdoer and plaintiff and that "the defendant acted purposely and with malice and the intent to injure"). |
| **New Jersey** – *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 307 (D.N.J. 2012) (New Jersey law requires that a defendant had "actual knowledge" of the breach of fiduciary duty). |
| **Minnesota** – *Park Midway Bank, N.A. v. R.O.A., Inc.*, No. A11-2092, 2012 WL 3263866, at *4 (Minn. Ct. App. Aug. 13, 2012) (requiring plaintiff demonstrate that defendant had "actual knowledge that the [primary tortfeasor was] engaging in tortious conduct"). |
| **Connecticut** – *Katcher v. 3V Capital Partners LP*, No. 05CV085008383S, 2011 WL 1105724, at *13 (Conn. Super. Ct. Feb. 1, 2011) (in a claim for aiding and abetting breach of fiduciary duty, "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance"). |
| **South Dakota** – *Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 775 (S.D. 2007) ("Although in some instances actual knowledge may be required, constructive knowledge will often suffice. Constructive knowledge is adequate when the aider and abettor has maintained a long-term or in-depth relationship with the fiduciary.") |
| **C.    Examples of State Law Variations With Respect to the Applicable Statute of Limitations for Breach of Fiduciary Duty** |
| **Tennessee** – Tenn. Code Ann. § 48-18-601 (one-year statute of limitations applies to breach of fiduciary duty claims). |
| **Arizona, Pennsylvania** – *Serrano v. Serrano*, No. 1 CA-CV 10-0649, 2012 WL 75639, at *3, 6 (Ariz. Ct. App. Jan. 10, 2012) (two-year statute of limitations for breach of fiduciary duty claims); *Pierce v. Rossetta Corp.*, No. 88-5873, 1992 WL 165817, at *10 (E.D. Pa. June 12, 1992) (same). |

**California, Massachusetts** – Cal Code Civ Proc § 338; *William L. Lyon & Associates, Inc. v. Superior Court*, 204 Cal. App. 4th 1294, 1313 (Cal. App. 3d Dist. 2012) (three-year statute of limitations for aiding and abetting breach of fiduciary duty); M.G.L.A. 260 § 2A; *O'Connor v. Redstone*, 452 Mass. 537, 551 (Mass. 2008) (same).

**Georgia, Utah** – O.C.G.A. § 9-3-25; *Hendry v. Wells*, 650 S.E.2d 338, 343-44 (four-year statute of limitations applicable to breach of fiduciary duty claims); *United Park City Mines Co. v. Greater Park City Co.*, 870 P.2d 880, 890 (Utah 1993) (citing Utah Code Ann. § 78B-2-307) (same).

**Colorado, Missouri** – *Johnston v. CIGNA Corp.*, 916 P.2d 643, 652 (Colo. App. 1996) (five years for breach of fiduciary duty); *Cmty. Title Co. v. U.S. Title Guar. Co.*, 965 S.W.2d 245, 253 (Mo. Ct. App. 1998) (same).

**Minnesota, New Jersey** – *O'Leary ex rel. Lakeland Printing Co., Inc. v. Carefree Living of Am. (Minnetoka)*, No. C5-00-2072, 2001 WL 1083757, at *3 (Minn. Ct. App. Sep. 18, 2001) (Minnesota imposes a six-year statute of limitations for "allegations of breach of fiduciary duty based on" fraud claims); *Balliet v. Fennell*, 845 A.2d 168, 170, 172 (N.J. Super. Ct. App. Div. 2004) (six-year statute of limitations for breach of fiduciary duty causing purely economic loss).

| V. | STATE VARIATIONS IN THE LAW OF CIVIL CONSPIRACY |
|----|--|

      **A.**    **Examples of State Law Variations With Respect to Civil Conspiracy as an Independent Cause of Action**

            **1.**    **Examples of States that Do Not View Civil Conspiracy as a Stand-Alone Cause of Action**

**Michigan** – *Early Detection Ctr., P.C., v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986) ("[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort.").

**Mississippi** – *Bradley v. Kelley Bros. Contractors*, 117 So.3d 331, 339 (Miss. Ct. App. 2013) ("A conspiracy standing alone, without the commission of acts causing damage is not actionable.").

**North Carolina** – *New Bar P'ship v. Martin*, 729 S.E.2d 675, 682 (N.C. Ct. App. 2012) ("[I]t is well established that there is not a separate civil action for civil conspiracy in North Carolina. Instead, civil conspiracy is premised on the underlying act. Thus, where a plaintiff's underlying claims fail, its claim for civil conspiracy must also fail.").

**Pennsylvania** – *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) ("[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.").

| **2.** | **Examples of States That May View Civil Conspiracy as an Independent Cause of Action** |
|---|---|

**Delaware** – *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 805 n. 149 (Del. Ch. 2009) (stating that "civil conspiracy is an independent wrong," and noting that that while "[s]ome jurisdictions have abandoned the independent tort of conspiracy," "Delaware has never done so").

**Florida** – *Churruca v. Miami Jai-Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977) (in specific circumstances, Florida law does not require an independent, underlying tort for a claim for civil conspiracy to be maintained: "[I]f the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort.").

| **B.** | **Examples of State Law Variations With Respect to the Required Level of Knowledge and Intent** |
|---|---|

| **1.** | **Examples of States That Require Specific Intent** |
|---|---|

**Alabama** – *First Bank of Childersburg v. Florey*, 676 So.2d 324, 327 (Ala. Civ. App. 1996) (to establish an agreement, "[t]he plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy");

**Arkansas** – *Faulkner v. Arkansas Children's Hosp.*, 69 S.W.3d 393, 406 (Ark. 2002) (civil conspiracy in Arkansas is an "intentional tort which requires specific intent to accomplish the contemplated wrong").

**Minnesota** – *Tremco, Inc. v. Holman*, No. C8-96-2139, 1997 WL 423575, at *4 (Minn. Ct. App. July 29, 1997 (plaintiff must demonstrate that defendants had a "specific intent to achieve an unlawful purpose").

**Mississippi** – *S. Health Corp. of Houston v. Crausby*, No. 2014-CA-00603-COA, 2015 WL 3541907, at *3 (Miss. Ct. App. May 26, 2015) (a meeting of the minds requires not just an agreement, but an agreement "to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully").

| **2.** | **Example of States That Require Malice** |
|---|---|

**Florida** – *Churruca v. Miami Jai-Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977) (for species of conspiracy claim not requiring an underlying tort, conspiracy requires "malicious motive").

**Ohio** – *Cook v. Kudlacz*, 974 N.E.2d 706, 725 (Ohio Ct. App. 2012) (civil conspiracy requires a "malicious combination"); *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996) ("The 'malice' in 'malicious combination' is legal or implied malice . . . and is defined as 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'").

**Pennsylvania** – *Rutherford v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 508 (Pa. Super. Ct. 1992) ("Proof of malice, i.e., an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification.").

### C.      Examples of State Law Variations With Respect to the Standard of Proof

#### 1.      Examples of States That Require Proof by Clear and Convincing Evidence

**Arizona** – *Law Corp. of Brian Finander, P.C. v. Alexander*, No. 1 CA-CV 08-0290, 2009 WL 449233, at *4 (Ariz. Ct. App. Feb. 24, 2009) ("The agreement to commit a tort must be proven by clear and convincing evidence." ).

**Illinois** – *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) ("If a conspiracy is shown by circumstantial evidence, however, that evidence must be clear and convincing.").

**Missouri** – *Chmieleski v. City Prods. Corp.*, 660 S.W.2d 275, 289-90 (Mo. Ct. App. 1983) (proof of a civil conspiracy must be "supported by clear and convincing evidence")

**Oklahoma** – *Shadid v. Monsour*, 746 P.2d 685, 688 (Okla. Civ. App. 1987) (proof of a conspiracy must be with clear and convincing evidence).

**Utah** – *Crane Co. v. Dahle*, 576 P.2d 870, 872 (Utah 1978) (the burden of proof for conspiracy "is higher than mere preponderance," as a plaintiff must establish civil conspiracy "by clear and convincing evidence").

**Virginia** – *Waytec Elec. Corp. v. Rohm & Haas Elec. Materials, LLC*, 459 F. Supp. 2d 480, 492 (W.D. Va. 2006) ("[A] civil conspiracy must be shown by clear and convincing evidence.").

#### 2.      Example of States That Require Proof by a Preponderance of the Evidence

**Rhode Island** – *Stubbs v. Taft*, 149 A.2d 706, 708-09 (R.I. 1959) ("[T]he doctrine of reasonable doubt has no place in a civil suit for damages where it is sufficient if the evidence is full, clear and satisfactory, and the conspiracy established by a preponderance of the evidence. This degree of proof, however, is necessary. The evidence must do more than raise a suspicion. It must lead to belief.").

**Washington** – *Sterling Bus. Forms, Inc. v. Thorpe*, 918 P.2d 531, 533 (Wash. Ct. App. 1996) ("A plaintiff in a civil conspiracy action has the burden of proving the case by a preponderance of the evidence, and must establish the existence of the conspiracy by clear, cogent and convincing evidence.").

# EXHIBIT 9

# DEFENDANTS' ANALYSIS OF STATE LAW VARIATIONS

## AIDING AND ABETTING FRAUD[1]

### ALABAMA

| Elements | As a preliminary matter, it is questionable whether Alabama recognizes claims for aiding and abetting common law torts. In *Continental Cas. Co. v. Compass Bank*, No. CIV.A. 04-0766-KD-C, 2006 WL 566900, at *11 (S.D. Ala. Mar. 6, 2006), a federal district court stated that "it does not appear that Alabama recognizes the claim of aiding and abetting common law torts," and that, "[w]hen aiding and abetting is discussed in Alabama cases it is almost exclusively in the context of a criminal case or in reference to a specific civil statutory provision."<br><br>Fraud has four basic elements: "(1) a false representation, (2) of a material existing fact, (3) reasonably relied upon by the plaintiff, (4) who suffered damage as a proximate consequence of the misrepresentation." *Ex parte Moulton*, 116 So.3d 1119, 1144 (Ala. 2013). For promissory fraud, a plaintiff must also provide "[1] proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised; and [2] proof that the defendant had an intent to deceive." *Id.* |
|---|---|
| Materiality | A fact is material if it would "induce action on the part of the complaining party. It is not necessary that the misrepresentation be the sole inducement: It is sufficient if it materially contributes and is of such a character that the [complaining party] would not have consummated the contract, had he known the falsity of the statement." *Bank of Red Bay v. King*, 482 So.2d 274, 282 (Ala. 1985) (internal quotation marks omitted). |
| Reliance | To sustain a fraud action, "the plaintiffs' reliance [on a misrepresentation] must . . . have been reasonable under the circumstances." *AmerUs Life Ins. Co. v. Smith*, 5 So.3d 1200, 1207 (Ala. 2008); *Liberty Nat'l Life Ins. Co. v. Ingram*, 887 So. 2d 222, 226 (Ala. 2004). Additionally, a finding of fraud requires that the misrepresentations "actually induced the injured party to change its course of action." *Exxon Mobil Corp. v. Ala. Dep't of Conservation & Natural Res.*, 986 So.2d 1093, 1116 (Ala. 2007). |
| Scienter | Fraud requires "an intention not to do the act promised, and such a promise or opinion must have been given with intent to deceive." *Clanton v. Bains Oil Co.*, 417 So.2d 149, 151 (Ala. 1982). There must be "substantial evidence of a fraudulent intent that existed when the promise was made." *Southland Bank v. A & A Drywall Supply Co.*, 21 So.3d 1196, 1212 (Ala. 2008). This can include "evidence of consistent, but unfulfilled, promises," or through "circumstantial evidence that relates to events that occurred after the alleged misrepresentations were made." *Id.* |
| Proof | Alabama does not require "clear and convincing evidence" to prove fraud. *Hunt Petroleum Corp. v. State*, 901 So.2d 1, 17 (Ala. 2004). "[A] party can prove fraud by 'substantial evidence' without having the 'clear and convincing evidence' described in the statute as necessary to justify punitive damages in a fraud action." *Id.* However, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." *Sverdrup Tech., Inc. v. Robinson*, 36 So.3d 34, 43 (Ala. 2009). |
| Statute of Limitations | The statute of limitations is two years following the discovery by the aggrieved party of the fact constituting fraud. Code of Ala. § 6-2-3 (2015). |

---

[1] Defendants have conducted an analysis of the common law claims asserted by Plaintiffs under the 50 states' laws. Defendants analyzed all 50 states in order to be complete. While the U.S. data provided by the Receiver identifies allowed claimants from only 47 states, there are approximately 71 SIBL clients identified as having an "unknown" last mailing address.

## ALASKA

| | |
|---|---|
| **Elements** | The Supreme Court of Alaska has indicated that "aiding and abetting liability occurs when the actor knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other." *Beal v. McGuire*, 216 P.3d 1154, 1174 (Alaska 2009) (internal quotations omitted).<br><br>"Common law fraud claims require a showing of (1) a false representation of fact; (2) knowledge of the falsity of the representation; (3) intention to induce reliance; (4) justifiable reliance; and (5) damages." *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010); *see also Lightle v. State, Real Estate Comm'n*, 146 P.3d 980, 983 (Alaska 2006) (adopting Restatement §525). |
| **Materiality** | "The plaintiff in a misrepresentation case bears the burden of establishing by a preponderance of the evidence that the misrepresentation was material. [Alaska courts] have described a material fact as one to which a reasonable man might be expected to attach importance in making his choice of action. It is a fact which could reasonably be expected to influence someone's judgment or conduct concerning a transaction." *Diblik v. Marcy*, 166 P.3d 23, 28 (Alaska 2007) (internal citations omitted). |
| **Reliance** | A plaintiff's reliance must be reasonable. *Lightle*, 146 P.3d at 984 ("One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced." (quoting Restatement § 526). This element "does not require the maker of a false statement to act with the specific 'intent to deceive'; rather, it requires the maker to have reason to expect that the other's conduct will be influenced. *Id*. However, "[a]s a general rule, in common law fraud, a person cannot justifiably rely on a statement she knows to be false." *Shehata*, 225 P.3d 1106, 1114 (Alaska 2010). |
| **Scienter** | The scienter requirement is satisfied if "the maker (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (c) knows that he does not have the basis for his representation that he states or implies." *Lightle*, 146 P.3d at 983-84. "To be fraudulent [ ], a representation need only be made with 'scienter,' in other words, the necessary knowledge of the untrue character." *Id*. (internal quotation marks omitted). |
| **Proof** | "To make out a prima facie case [of fraud], [the plaintiff] had to present more than mere allegations." *Seybert v. Cominco Alaska Exploration*, 182 P.3d 1079, 1098 (Alaska 2008). For instance, "[t]he plaintiff in a misrepresentation case bears the burden of establishing by a preponderance of the evidence that the misrepresentation was material." *Diblik*, 166 P.3d at 28. |
| **Statute of Limitations** | The limitations period for a fraud claim in Alaska is two years. *Bauman v. Day*, 892 P.2d 817, 825 (Alaska 1995) (citing AS 09.10.070). The statute of limitations begins when the fraud is discovered, not when the fraud might have been discovered. *City of Fairbanks v. Amoco Chem. Co*., 952 P.2d 1173, 1177 (Alaska 1998) (examining AS 09.10.120). |

2

App. 50

ARIZONA

| Elements | In Arizona, "[a]n aiding-and-abetting claim requires proof of a causal connection between the defendant's assistance or encouragement and the primary tortfeasor's commission of the tort, although "but for" causation is not required." *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 491 (Ariz. 2008). To be held liable for aiding and abetting, "it must be shown that the person knew the primary tortfeasor's conduct constituted a tort, and that the person substantially assisted or encouraged the primary tortfeasor in accomplishing the tort." *Dawson v. Withycombe*, 216 Ariz. 84, 102 (Ariz. 2007).<br><br>In Arizona, the elements of actual fraud are: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury." *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 156 (2009). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Ariz. R. Civ. P. 9(b). |
|---|---|
| Materiality | "[A] matter is material if: . . . the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it . . . . Even though the matter misrepresented is one to which a reasonable man would not attach any importance in determining his course of action in the transaction in (sic) hand, it is nevertheless material if the maker knows that the recipient, because of his own peculiarities, is likely to attach importance to it. There are many persons whose judgment, even in important transactions, is likely to be determined by considerations that the normal man would regard as altogether trivial or even ridiculous. One who practices upon another's known idiosyncrasies cannot complain if he is held liable when he is successful in what he is endeavoring to accomplish." *Rhoads v. Harvey Publ'ns Inc.*, 131 Ariz. 267, 270 (Ariz. Ct. App. 1981) (quoting § 538(2)(b) of the Restatement of the Law of Torts 2d). |
| Reliance | "Mere reliance is not enough to support a claim for fraud; [the plaintiff] was required to show that he had the right to rely upon the representations. A person may rightfully rely upon a misrepresentation of fact even when he may have discovered the falsity of the statement by a simple investigation. A person may not, however, rely upon a misrepresentation that is obviously false." *Dawson v. Withycombe*, 163 P.3d 1034, 1048 (Ariz. Ct. App. 2007*; see also Walters v. First Fed. Sav. & Loan Ass'n*, 131 Ariz. 321, 326 (1982) (precluding justifiable reliance on statements of *opinion* rather than statements of fact unless made by someone with known expertise in the area on which they opine and the person relying on the opinion is not an expert as well). |
| Scienter | "A claim for fraud requires proof of . . . the speaker's knowledge of its falsity or ignorance of its truth [and] the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity." *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010). |
| Proof | "The evidence of fraud or mistake must be clear and convincing." *Melvin v. Stevens*, 458 P.2d 977, 980 (Ariz. Ct. App. 1969). "Arizona courts have applied the clear and convincing standard of proof to species of fraud comprised of fewer than all nine elements of common law fraud." *Am. Pepper Supply Co. v. Fed. Ins. Co.*, 205 Ariz. 465, 468 (Ariz. Ct. App. 2003), *vacated in part on other grounds*, 93 P.3d 507 (Ariz. 2004) (citing *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 499, P98, n.24 (2002)) (regarding 'fraudulent concealment'). |
| Statute of Limitations | The statute of limitations for fraud is three years after the cause of action accrues. The statute does not begin to toll until discovery by the aggrieved party. A.R.S. § 12-543; *Elm Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290 (Ariz. Ct. App. 2010). |

3

ARKANSAS

| Elements | "While under Arkansas law a party who aids and abets the commission of a tort is 'jointly and severally liable therefor,' to establish such secondary liability a plaintiff must show the party: (1) committed a tortious act in concert with the other or pursuant to a common design with him; or (2) knew the other's conduct constituted a breach of duty and gave substantial assistance or encouragement to the other so to conduct himself; or (3) gave substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 871-72 (8th Cir. 2008) (internal citations omitted).<br><br>Arkansas common law requires five elements to sustain a fraud action: "(1) a false representation of material fact; (2) knowledge that the representation is false, or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance." *Rosser v. Columbia Mut. Ins. Co.*, 928 S.W.2d 813, 815 (Ark. Ct. App. 1996). |
|---|---|
| Materiality | "To prove materiality of a misrepresentation, it is only necessary to show the misrepresented fact was a material influence on the decision; it must have been a substantial factor, but it is not necessary that it was the paramount or decisive inducement." *Ellis v. Liter*, 841 S.W.2d 155, 156 (Ark. 1992) (internal citations omitted). |
| Reliance | "Justifiable reliance is an element of fraud." *Tyson Foods v. Davis*, 66 S.W.3d 568, 583 (Ark. 2002). |
| Scienter | The misrepresentation "must be made with intent to deceive." *Wal-Mart Stores, Inc. v. Coughlin*, 255 S.W.3d 424, 432 (Ark. 2007). |
| Proof | "The tort of fraud or deceit consists of five elements that the plaintiff must prove by a preponderance of the evidence." *Tyson Foods*, 66 S.W.3d at 577. |
| Statute of Limitations | The limitation period for a fraud action is three years. *Tyson Foods*, 66 S.W.3d at 579. |

4

## CALIFORNIA

| | |
|---|---|
| **Elements** | "California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort.  Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (Cal. Ct. App. 2005) (addressing aiding and abetting fraud claim).  Actual knowledge of the tort they are violating is critical.  *Id.* at 1146.<br><br>"The well-established common law elements of fraud … are: (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage.  It is essential . . . that the person complaining of fraud actually have relied on the alleged fraud, and suffered damages as a result." *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1557 (Cal. Ct. App. 2011).  "Each element in a cause of action for fraud . . . must be factually and specifically alleged." *Perlas v. GMAC Mortgage, LLC*, 187 Cal. App. 4th 429, 434  (Cal. Ct. App. 2010). |
| **Materiality** | "The misrepresentation element must normally be satisfied by an affirmation of fact. A representation of opinion is ordinarily not actionable." *Agric. Ins. Co. v. Superior Court*, 70 Cal. App. 4th 385, 402 (Cal. Ct. App. 1999) (internal citations omitted).  "[A] representation is one of opinion if it expresses only (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his or her judgment as to quality, value, authenticity, or other matters of judgment." *Id.* |
| **Reliance** | "It is essential . . . that the person complaining of fraud actually have relied on the alleged fraud, and suffered damages as a result." *Bower*, 196 Cal. App. 4th at 1557.  Moreover, it must be the case that the plaintiff was "justified in his reliance" and "[The Plaintiff] may not justifiably rely upon mere statements of opinion...unless the person expressing the opinion purports to have expert knowledge concerning the matter or occupies a position of confidence and trust." *Wilke v. Coinway, Inc.*, 257 Cal. App. 2d 126, 136 (Cal. Ct. App. 1967). |
| **Scienter** | "Under California law, a cause of action for fraud requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff." *Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1081 (Cal. Ct. App. 1999).  Because fraud is an intentional tort, "[w]hat distinguishes actionable fraudulent deceit is the element of knowing intent to induce someone's action to his or her detriment with false representations of fact." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 482 (Cal. Ct. App. 1998). |
| **Proof** | "It is now clearly established that a verdict finding liability for fraud or misrepresentation — even knowing misrepresentation—need not be based on clear and convincing evidence, but only on a preponderance of the evidence." *Grubb Co. v. Dep't of Real Estate*, 194 Cal. App. 4th 1494, 1503 (Cal. Ct. App. 2011).  "As direct proof of fraudulent intent is often an impossibility, fraud may be established by the circumstances surrounding the transaction. Fraud is not generally practiced in the open light of day and for that reason is not susceptible of direct proof but must be spelled out from circumstantial evidence." *Wilke*, 257 Cal. App. 2d at 138 (internal citations omitted). |
| **Statute of Limitations** | Fraud claims must be brought within three years of discovery.  Cal. Civ. Proc. Code § 338(d). *Stueve Bros. Farms, LLC v. Berger Kahn*, 222 Cal. App. 4th 303, 321 (2013). |

5

### COLORADO

| Elements | In Colorado, "[l]iability for aiding or abetting a tortious act will be found if the party whom the defendant aids performs a wrongful act that causes an injury, the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation." *Holmes v. Young,* 885 P.2d 305, 308 (Colo. App. 1994).<br><br>"A plaintiff seeking to prevail on a claim of fraud must establish: (1) that the defendant made a false representation of material fact; (2) that the one making the representation knew that it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff." *Vinton v. Virzi,* 269 P.3d 1242, 1247 (Colo. 2012) (en banc). |
|---|---|
| Materiality | "Information is material if 'considering the specific factual circumstances involved, [it] would have assumed actual significance in the deliberations of a reasonable shareholder or would have been considered by a reasonable investor as having significantly altered the total mix of the available information.'" *Wisehart v. Zions Bancorporation,* 49 P.3d 1200, 1205 (Colo. App. 2002). |
| Reliance | "Implicit within [the] elements [of fraud] are the requirements that the claimant demonstrate that it relied on the misrepresentation and that its reliance was justified under the circumstances." *Loveland Essential Grp., LLC v. Grommon Farms, Inc.,* 251 P.3d 1109, 1116-17 (Colo. App. 2010) (internal citation omitted). "It is long-settled law that if a party claiming fraud has access to information that was equally available to both parties and would have led to the true facts, that party has no right to rely on a false representation." *Vinton,* 269 P.3d at 1247. |
| Scienter | "In a fraud case . . . the gravamen of the tort is the defendant's conscious knowledge of the falsity of the representation or such recklessness as amounts to a conscious indifference to the truth. Thus, the scienter element required for deceit significantly distinguishes that tort from any tort based upon simple negligence." *Ebrahimi v. E.F. Hutton & Co.,* 794 P.2d 1015, 1017 (Colo. App. 1989). |
| Proof | The standard of proof in an action based on fraud is "clear and convincing" evidence. *Ficor, Inc. v. McHugh,* 639 P.2d 385, 396 (Colo. 1982). "[F]raud must be pleaded with considerable particularity and upon trial proof thereof must be quite clear and convincing." *Wiley v. Byrd,* 158 Colo. 479, 483(1965). |
| Statute of Limitations | The limitations period in a fraud action is three years. Col. Rev. Stat. Ann. § 13-80-101. |

6

**CONNECTICUT**

| Elements | In Connecticut, the elements of aiding and abetting a tort are: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Flannery v. Singer Asset Fin. Co., LLC*, 94 A.3d 553, 579 (Conn. 2014). |
| --- | --- |
| | "The essential elements of an action in common law fraud are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury.  The party to whom the false representation was made must claim to have relied on that representation and to have suffered harm as a result of the reliance." *Simms v. Seaman*, 69 A.3d 880, 893 (Conn. 2013) (quoting *Sturm v. Harb Development, LLC*, 2 A.3d 859, 872 (Conn. 2010)). |
| **Materiality** | "In equity, as in law, misrepresentation, to constitute fraud, must be material . . . [T]he representation must prejudice the party relying upon it. He must suffer some injury or pecuniary loss." *Harper v. Adametz*, 113 A.2d 138-39 (Conn. 1955); *see Morgera v. Chiappardi*, 74 Conn. App. 442, 458 (Conn. App. Ct. 2003). |
| **Reliance** | "To prevail [in a fraud action], the plaintiff also [is] required to show that he reasonably relied on that misrepresentation. One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Duplissie v. Devino*, 96 Conn. App. 673, 690-91(2006) (citing *Visconti v. Pepper Partners Ltd. Partnership*, 77 Conn. App. 675, 682-83 (2003).  However, "a party may not rely upon previously-made false representations once the truth of the matter has come to light."  *Clifford St. John & Sons v. Farley Co.*, No. CV890099957, 2000 WL 33115339, at *4 (Conn. Super. Ct. Dec. 14, 2000). |
| **Scienter** | "Scienter is an essential element in a claim of fraud. '[A] defendant must *know* what he or she represents as true is not true.  A reckless allegation will not suffice.'" *Alliance Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157, 167 (D. Conn. 2005) (citing *Bobbin v. Sail the Sounds, L.L.C.*, No. CV020563884S, 2003 WL 22206799, at *5 (Conn. Super. Ct. Sept. 12, 2003)). "With respect to the scienter element, '[w]e have had occasion to point out that where a defendant has special means of knowledge, and a plaintiff can under the circumstances attribute to the former accurate knowledge of what is represented, the plaintiff need not show the actual knowledge of the falsity of the representation.'" *J. Frederick Scholes Agency v. Mitchell*, 191 Conn. 353, 358 (1983). |
| **Proof** | A plaintiff must establish the elements of fraud by clear and convincing evidence. *Stuart v. Freiberg*, 316 Conn. 809, 821 (2015); *see also Kilduff v. Adams, Inc.*, 219 Conn. 314, 327-28 (1991) (citing *Verrastro v. Middlesex Ins. Co.*, 207 Conn. 179, 181 (1988)); *see Stuart v. Stuart*, 297 Conn. 26, 43 n. 11 (2010) (stating that the court adopted a "clear, precise and unequivocal evidence" standard). |
| **Statute of Limitations** | The limitations period for a fraud claim in Connecticut is three years.  Conn. Gen. Stat. § 52–577. The statute begins to toll when the wrong occurs. *Id.* |

7

## DELAWARE

| Elements | "Delaware courts have set out the elements for aiding and abetting a tort as: (i) underlying tortious conduct, (ii) knowledge, and (iii) substantial assistance." *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, No. CV 7906-VCG, 2014 WL 6703980, at \*23 (Del. Ch. Nov. 26, 2014), *judgment entered*, (Del. Ch. Dec. 8, 2014).<br><br>"To establish a claim for fraud, a plaintiff must prove (i) a false representation, (ii) a defendant's knowledge or belief of its falsity or his reckless indifference to its truth, (iii) a defendant's intention to induce action, (iv) reasonable reliance, and (v) causally related damages." *In re Wayport, Inc. Litig.*, 76 A.3d 296, 323 (Del. Ch. 2013) (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)). Delaware's Court of Chancery Rule 9(b) requires that a complaint allege "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations." *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006) (citation omitted). State of mind and knowledge may be pled generally. *Id.* |
|---|---|
| Materiality | For a fraud claim to be actionable under Delaware law, the alleged false statement "must have been material." *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 29 (Del. Ch. 2009) (citations omitted). Facts are generally characterized as material if they "relate to matters of substance and are of such importance as to influence the action of the party to whom the representations are made." *Montgomery v. Jacob Bros. Co.*, 159 A. 374, 375 (Del. Super. Ct. 1931). In other words, the representation "must concern 'an essential part of the transaction.'" *E.I. DuPont de Nemours and CO. v. Fla. Evergreen Foliage*, 744 A.2d 457, 462 (Del. 1999) (citing *Nye Odorless Incinerator Cop. v. Felton*, 162 A. 504, 512 (Del. Super. Ct. 1931)). If the Plaintiff relies on their own knowledge, however, the fact is immaterial. *Consolidated Fisheries Co. v. Consolidated Solubles Co.*, 112 A.2d 30, 37 (Del. 1955) (citations omitted). |
| Reliance | "Justifiable reliance is an element of common law fraud … under Delaware law." *H–M Wexford LLC*, 832 A.2d at 142. "In Delaware, 'whether a plaintiff has the right to rely on specific representations depends on whether the representations relied upon involve matters which a reasonable person would consider important in determining his course of action in the transaction in question.'" *Tekstrom, Inc. v. Savla*, 2006 WL 2338050 at \*11 (Del. Super. Ct. July 31, 2006) (quoting *WSFS v. Chillibilly's, Inc.*, 2005 WL 730060 (Del. Super. Ct. 2005)). "The recipient of the information is 'required to use his senses and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Id.* (citations omitted). Furthermore, the reliance element is still met if the plaintiff was induced to not examine the factual background. *See Arctic Roofings v. Travers*, 32 A.2d 559, 561–62 (Del. 1943). |
| Scienter | In Delaware, an allegation of fraud "require[s] a certain level of scienter on the part of the defendant; a misrepresentation must be made either knowingly, intentionally, or with reckless indifference to the truth." *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 143 (Del. Ch. 2004) (quoting *DRR, L.L.C. v. Sears, Roebuck & Co.*, 949 F. Supp. 1132, 1137 (D. Del. 1996)). Thus, the scienter requirement is met when an individual makes a representation and "is conscious that he has no sufficient basis of information to justify" those misrepresentations. *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000) (citation omitted). |
| Proof | Plaintiffs bear the burden of proving their fraud claims by "clear and convincing evidence." *In re Estate of Dugger*, No. 224629, 2000 WL 1528710, at \*4 (Del. Ch. Sep. 29, 2000). Fraud may be proved by "either direct or circumstantial evidence; that is, either by the admission of the plaintiff, or by other facts and circumstances from which fraud may be reasonably inferred." *Journal Printing Co. v. Maxwell*, 43 A. 615, 616 (Del. Super. Ct. 1899); *Cobalt Operating, LLC v. James Crystal Enters., LLC*, No. Civ.A 714-CVS, 2007 WL 2142926, at \*25 (Del. Ch. July 20, 2007). |
| Statute of Limitations | The statute of limitations for fraud is three years, which accrues "at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006). |

8

# FLORIDA

| Elements | Although there is a "dearth of authority" regarding aiding and abetting fraud as a valid cause of action, if recognized a plaintiff would have to show that: "1. There existed an underlying fraud; 2. The defendant had knowledge of the fraud; 3. The defendant provided substantial assistance to advance the commission of the fraud." *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So.2d 368, 371 (Fla. Dist. Ct. App. 2005)<br><br>In Florida, "the elements of a fraud claim are (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induce another's reliance; and (4) consequent injury by the other party acting in reliance upon the representation." *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So.2d 204, 209 (Fla. Dist. Ct. App. 2003) (citations omitted).  Plaintiffs are "required to plead intentional fraud with particularity." *Cedars Healthcare Grp., Ltd. v. Mehta*, 16 So.3d 914, 917 (Fla. Dist. Ct. App. 2009); Fla. R. Civ. P. 1.120(b). |
|---|---|
| Materiality | To be material, a statement of facts must be "so material to the interests of the party thus relying and acting upon it, that he is pecuniarily prejudiced by its falsity, is placed in a  worse position than he otherwise would have been." *Hillcrest Pac. Corp. v. Yamamura*, 727 So.2d 1053, 1056 (Fla. Dist. Ct. App. 1999) (quoting *Pryor v. Oak Ridge Dev. Corp.*, 119 SO. 326, 328 (Fla. 1928)).  In other words, "the misrepresentation must be so material that its falsity renders it unconscientious in the person making it to enforce the agreement or other transaction which it has caused." *Casey v. Cohan*, 740 So.2d 59, 62 (Fla. Dist. Ct. App. 1999) (quoting *Pryor*, 119 So. at 329).  "A concealed fact is material to a transaction if a contract would not have been entered into but for the concealment." *Id.* (citations omitted). |
| Reliance | "[F]or fraud to be remediable, the reliance placed upon the representation must be justified under the circumstances." *Ramel v. Chasebrook Const. Co.*, 135 So.2d 876, 881 (Fla. Dist. Ct. App. 1961). Furthermore, reliance "cannot be satisfied by assumptions." *Humana, Inc. v. Castillo*, 728 So.2d 261, 265 (Fla. Dist. Ct. App. 1999) (citing *Morgan v. Canaveral Port Auth.*, 202 So.2d 884 (Fla. Dist. Ct. App. 1967)).  Rather, the proper question "is whether the recipient of the misrepresentation is 'justified in relying upon its truth.' If the recipient 'knows that [the statement] is false or its falsity is obvious to him,' his reliance is improper, and there can be no cause of action for fraudulent misrepresentation." *Rose v. ADT Sec. Servs., Inc.*, 989 So.2d 1244, 1247 (Fla. Dist. Ct. App. 2008) (quoting *M/I Schottenstein Homes, Inc. v. Azam*, 813 So.2d 91, 94–95 (Fla. 2002).  Thus, a Plaintiff cannot "establish justifiable reliance 'and may not recover in fraud for an alleged false statement when proper disclosure of the truth is subsequently revealed in a written agreement between the parties.'" *Id.* (quoting *Taylor Woodrow Homes Fla., Inc v. 4/46-A Corp.*, 850 So.2d 536, 542-43 (Fla. Dist. Ct. App. 2003)). |
| Scienter | Under Florida law, scienter is a required element of fraud. *See Needle v. Lowenburg*, 421 So.2d 678, 680 (Fla. Dist. Ct. App. 1982) (referencing the importance of scienter in fraud claims). More specifically, "[t]he person charged with the misrepresentation must be shown to have had knowledge of the falsity of the statement at the time it was made or the evidence must show the equivalent of such knowledge which is that the statement was made without knowledge as to its truth or falsity or was made under circumstances in which the truth should have been known to the person making the statement." *First Nat. bank of Stuart v. Jackson*, 267 So.2d 697, 699 (Fla. Dist. Ct. App. 1972) (citations omitted).  In short, "an intent to induce reliance" must be established. *Bankers Mut. Capital Corp. v. U.S. Fid. And Guar. Co.*, 784 So.2d 485, 490 (Fla. Dist. Ct. App. 2001) (citing *Barth v. Khubani*, 705 So.2d 72, 73 (Fla. Dist. Ct. App. 1997)). |
| Proof | "Fraud must be proven by clear and convincing evidence." *Ibarra v. Izaguirre*, 985 So.2d 1117, 1119 (Fla. Dist. Ct. App. 2008) (citation omitted).  This may be met by "wholly circumstantial" evidence. *Altman Contractors v. Gibson*, 63 So.3d 802, 805 (Fla. Dist. Ct. App. 2011). |
| Statute of Limitations | Fraud has a four-year statute of limitations.  *See Bistricer v. Palmer*, 93 So.3d 1231, 1232 (Fla. Dist. Ct. App. 2012) (citing Fla. Stat. Ann. § 95.11 (3)(j) (2002)). |

9

## GEORGIA

| Elements | There is some uncertainty surrounding whether Georgia recognizes aiding and abetting fraud as a cause of action.  One case deems it to be cognizable claim.  *In re Friedman's Inc.*, 385 B.R. 381, 431 (S.D. Ga. Bank. 2008) *order vacated in part on separate grounds on reconsideration*, 394 B.R. 623 (S.D. Ga. 2008).  Other courts have reached different conlcusions.  *BMC-The Benchmark Mgmt. Co. v. Ceebraid-Signal Corp.*, No. 1:05-CV-1149, 2007 WL 2126272, at *11 (N.D. Ga. July 23, 2007); *Hays v. Paul, Hastings, Janofsky & Walker LLP*, No. CIV.A. 106CV754, 2006 WL 4448809, at *8 (N.D. Ga. Sept. 14, 2006).  Another court suggests that the Restatement of Torts may be broadly applicable to aiding and abetting claims.  *See Madden v. Fulton Cnty.*, 115 S.E.2d 406, 409 (Ga. Ct. App. 1960) (citing Restatement (First) Torts § 876 (1939)). <br><br> Assuming this cause of action is recognized, aiding and abetting fraud requires knowingly providing encouragement and aid to a principal in the commission of fraud.  *See Traub v. Washington*, 264 Ga. App. 541, 545 (2003). <br><br> To prevail on a fraud claim, a plaintiff must show that the defendant "made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true and that it was with the intent that it be acted upon by [the plaintiff]; and, further, that [the plaintiff] acted upon the misrepresentation in reasonable reliance of its truth in a manner reasonably foreseeable by [the defendant] and to [the plaintiff's] proximate injury."  *Levine v. Suntrust Robinson Humphrey*, 321 Ga. App. 268, 273-274 (2013). |
|---|---|
| Materiality | "Not every alleged misrepresentation can serve as the basis for a claim of fraud. Statements of opinion are not factual representations that are actionable as fraud."  *ReMax N. Atlanta v. Clark*, 244 Ga. App. 890, 893 (2000). |
| Reliance | "Misrepresentations are not actionable unless the hearer was justified in relying on them in the exercise of common prudence and diligence."  *Tri-E. Petroleum Corp. v. Glenn's Super Gas, Inc.*, 178 Ga. App. 144, 146 (1986).  A plaintiff can generally rely on misrepresentation when the speaker has peculiar access to the facts or where it would be necessary to employ an expert or third party to ascertain the truth.  *Id.* Justifiable reliance is an indispensable element of fraud under Georgia law.  *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1026,1030 (11th Cir. 2003) (holding that appellant could not justifiably rely on "puffing" or "mere opinions"). |
| Scienter | "A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.  To be actionable the misrepresentations must be made with the intention of deceiving another, and the defendant at the time must either know they were false *or what the law regards as the equivalent of knowledge*.  What one may not do is to turn his head away and blind himself to the truth or falsity of a condition which he recklessly represents to his own advantage."  *Bill Spreen Toyota, Inc. v. Jenquin*, 163 Ga. App. 855, 858 (1982) (internal citations omitted). |
| Proof | "Given that fraud is inherently subtle, slight circumstances of fraud may be sufficient to establish a proper case.  Proof of fraud is seldom ever susceptible of direct proof, thus recourse to circumstantial evidence usually is required.  Moreover, it is peculiarly the province of the jury to pass on these circumstances showing fraud."  *Levine*, 321 Ga. App. at 274.  In any event, "a general allegation of fraud . . . amounts to nothing—it is necessary that the complainant show, by specifications, wherein the fraud consists. Issuable facts must be charged."  *R.W. Holdco, Inc. v. Johnson*, 267 Ga. App. 859, 866 (2004). |
| Statute of Limitations | The statute of limitation for fraud claims is four years.  *Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 387 (2007). |

10

HAWAII

| Elements | Aiding and abetting fraud  is not a clearly established cause of action in Hawaii.  "In both *Nakamoto* and *Unity House*, the courts recognized that Hawaii had not indicated whether a cause of action for aiding and abetting fraud existed, but neither court reached the issue because the respective plaintiffs failed to make any allegations to support such a claim." *Television Events & Mktg., Inc. v. Amcon Distrib.* Co., 488 F. Supp. 2d 1071, 1077 (D. Haw. 2006).  For aiding and abetting generally, Hawaii has adopted Restatement (Second) of Torts §876. *Id.* at 1076.<br><br>"In Hawaii, to establish an action for fraud, a plaintiff must prove that "(1) false representations were made by defendant[ ], (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." *Id.* at 1080-81; *see also Ass'n of Apt. Owners of Newton Meadows v. Venture 15, Inc.*, 167 P.3d 225, 256 (Haw. 2007). |
|---|---|
| Materiality | For a fraud claim "[t]o be actionable, the alleged false representation must relate to a past or existing material fact and not the occurrence of a future event." *Shoppe v. Gucci Am., Inc.,* 14 P.3d 1049, 1067 (Haw. 2000).  "Under Hawai'i law, in order to maintain a claim for relief grounded in fraud, the plaintiff must have suffered substantial actual damage, not nominal or speculative." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 366 (9th Cir. 2005) (internal quotations marks omitted). |
| Reliance | Reliance on a misrepresentation must be reasonable.  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d at 370 ; *Matsuura v. E.I. du Pont de Nemours & Co.*, 73 P.3d 687, 701 (Haw. 2003); *Davis v. Vancil*, No. CAAP-11-0000999, 2015 WL 4067172, at *6 (Haw. Ct. App. June 30, 2015). |
| Scienter | To be liable for fraud, a person must provide a misrepresentation with knowledge, or lack of knowledge of  the  truth or falsity of  the  statement made, and intent to induce reliance.  *See Menashe v. Bank of New York*, 850 F. Supp. 2d 1120, 1137 (D. Haw. 2012) ("A fraud claim requires a plaintiff to establish, among other things, that the defendant *knew* its representations were false." (citing *Shoppe v. Gucci Am., Inc.,* 14 P.3d 1049, 1067 (Haw. 2000)); *Television Events & Mktg.*, 488 F. Supp. 2d  at 1081. |
| Proof | The party claiming fraud must establish the elements of fraud by clear and convincing evidence. *Shoppe v. Gucci Am., Inc.*, 14 P.3d 1049, 1067 (Haw. 2000). |
| Statute of Limitations | "Fraudulent misrepresentation is not governed by a specific limitations period." *Eastman v. McGowan*,  946 P.2d 1317, 1323 (Haw. 1997) (applying a six-year statute of limitations under HRS § 657-1(4), which covers "personal actions of any nature not specifically covered by the laws of the State"); *see also Au v. Au*, 626 P.2d 173, 178 (Haw. 1981). |

11

IDAHO

| Elements | Although no Idaho cases have interpreted aider-abettor liability generally, "federal courts have articulated the following three elements for aider-abettor liability: (1) the existence of an independent primary wrong; (2) the actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong." *State, Dept. of Finance v. Tenney*, 858 P.2d 782, 788 (Idaho Ct. App. 1993) (citing *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir. 1982)).<br><br>"Nine elements must be proved to sustain an action for fraud: (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) the hearer's right to rely; and (9) consequent and proximate injury." *Country Cove Dev., Inc. v. May*, 150 P.3d 288, 293 (Idaho 2006) (citation omitted). Furthermore, Idaho "requires that when a party is alleging fraud, the circumstances constituting the fraud must be stated with particularity." *Theriault v. A.H. Robins Co., Inc.*, 698 P.2d 365, 369 (Idaho 1985). |
|---|---|
| Materiality | The materiality requirement "refers to the importance of the misrepresentation in determining the plaintiff's course of action." *Watts v. Krebs*, 962 P.2d 387, 390 (Idaho 1998) (quoting *G & M Farms v. Funk Irr. Co.*, 808 P.2d 851, 858 (Idaho 1990)). "[T]he test for materiality can be either objective or subjective." *Id.* (citation omitted). Thus, a representation is considered material if "(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." *Id.* (citation omitted). |
| Reliance | "Fraud requires that a representation is made and that the 'hearer' relies on that representation." *Partout v. Harper*, 183 P.3d 771, 776 (Idaho 2008) (citing *Maroun v. Wyreless Sys., Inc.*, 114 P.3d 974, 985 (Idaho 2005)). Furthermore, any reliance must be characterized as "justifiable reliance." *Watson v. Weick*, 112 P.3d 788, 795 (Idaho 2008) (citing *Lindberg v. Roseth*, 46 P.3d 518 (Idaho 2002)); *see also W.O. Kepler v. WHW Mgmt., Inc.*, 825 P.2d 1122, 1133 n.2 (Idaho Ct. App. 1992) ("The justifiability of a party's reliance is an essential element to a claim of fraud."). Thus, for example, "the recipient of a fraudulent misrepresentation of intention is justified in relying upon it if the existence of the intention is material and the recipient has reason to believe that it will be carried out." *Gray v. Tri-Way Const. Servs., Inc.*, 210 P.3d 63, 71 (Idaho 2009) (citation omitted). But if "a purchaser is given the opportunity to conduct an independent investigation of the records and does so, . . . he is not entitled to rely on alleged misrepresentations of the seller." *Faw v. Greenwood*, 613 P.2d 1338, 1340 (Idaho 1980) (citations omitted). |
| Scienter | Under Idaho law, the only scienter requirement is (1) the speaker's knowledge of a statement's falsity or ignorance of its truth and (2) his intent that it should be acted on by the person and in the manner reasonably contemplated. *See Staff of Idaho Real Estate Common v. Nordling*, 22 P.3d 105, 110 (Idaho 2001). Otherwise, "there is no specific 'scienter' requirement for fraud in Idaho." *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1203 (D. Idaho 2013) (c). Thus, bad faith motive is not required to prove fraud. *See Nordling*, 22 P.3d at 110 (citations omitted). |
| Proof | Plaintiffs asserting a fraud claim must prove the elements "by clear and convincing evidence." *G & M Farms*, 808 P.2d at 855 (citations omitted); *see also Umphrey v. Sprinkel*, 682 P.2d 1247, 1253 (Idaho 1983) (citations omitted). Nevertheless, "fraud may be established by circumstantial evidence." *Idaho State Tax Com'n v. Hautzinger*, 49 P.3d 406, 409 (Idaho 2002). |
| Statute of Limitations | In Idaho, the three-year statute of limitation begins running once the plaintiff knows or reasonably should have known of the facts constituting the fraud. *McCorkle v. Nw. Mut. Life Ins. Co.*, 112 P.3d 838, 842–843 (Idaho Ct. App. 2005) (citations omitted). |

## ILLINOIS

| Elements | In Illinois, "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *Sanke v. Bechina*, 576 N.E.2d 1212, 1213-14 (Ill. App. Ct. 1991) (quoting Restatement (Second) of Torts § 876). <br><br> "The elements of a claim for fraudulent misrepresentation, also referred to as common law fraud, are: (1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 2010). |
|---|---|
| **Materiality** | "A misrepresentation is material if the plaintiff would have acted differently had he been aware of the falsity of the statement . . . A misrepresentation also is material if the one making it knew that the statement was likely to induce the recipient to engage in the conduct in question." *Kleinwort Benson N. Am. v. Quantum Fin. Servs.*, 673 N.E.2d 369, 375 (Ill. App. Ct. 1996) (internal citations omitted). |
| **Reliance** | Plaintiffs reliance "must be justified, *i.e.*, he must have a right to rely . . . the question is whether, under all the circumstances, plaintiff had a right to rely on the false representations . . . while viewing the representation in light of all the facts of which plaintiff had actual knowledge as well as those of which he might have availed himself by the exercise of ordinary prudence." *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980) (internal citations omitted). |
| **Scienter** | The requisite scienter is knowledge or belief of falsity and  intent to induce reliance. *Weidner v. Karlin*, 932 N.E.2d 602, 605 (Ill. App. Ct. 2010). |
| **Proof** | "A plaintiff must prove the elements of fraudulent misrepresentation by clear and convincing evidence." *Johnson v. Waterfront Servs. Co.*, 909 N.E.2d 342, 350 (Ill. App. Ct. 2009). |
| **Statute of Limitations** | The statute of limitations for a fraud claim is five years. *Fitton v. Barrington Realty Co.*, 653 N.E.2d 1276, 1278 (Ill. App. Ct. 1995).  "[T]he statute of limitations starts to run when a person knows or reasonably should know that he was injured and that the injury was wrongfully caused." *Id.* |

13

# INDIANA

| Elements | As a preliminary matter, it is not clear whether Indiana recognizes aiding and abetting fraud as a cause of action. With regard to aiding and abetting other torts, the Court of Appeals has stated that Indiana "does not recognize" a cause of action for aiding and abetting a breach of fiduciary duty. *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 656 (Ind. Ct. App. 2014), *transfer denied*, 30 N.E.3d 1229 (Ind. Ct. App. 2015). In the criminal context, "[a person may be convicted as a principal upon evidence that he or she aided or abetted in the perpetration of the charged crime. There is no separate crime of being an accessory to a crime or aiding and abetting its perpetration." *Taylor v. State*, 495 N.E.2d 710, 713 (Ind. 1986) (citing *Hoskins v. State*, 441 N.E.2d 419, 419 (Ind. 1982)).<br><br>In Indiana, "[t]o establish a cause of action for fraudulent misrepresentation, [plaintiff] must demonstrate that (1) [defendant] made false statements of past or existing material facts; (2) [defendant] made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; (3) [defendant] made the statements to induce [plaintiff] to act upon them; 4) [plaintiff] justifiably relied and acted upon the statements; and (5) [the plaintiff] suffered injury." *Hizer v. Holt*, 937 N.E.2d 1, 5 (Ind. Ct. App. 2010). |
|---|---|
| **Materiality** | "In order to state a claim for fraudulent misrepresentation it is essential that there be a material misrepresentation and that a plaintiff acted to its detriment in reliance thereon." *St. Joseph Bank & Trust Co., S. Bend, Ind. v. Sun Ins. Co. of New York*, 380 F. Supp. 890, 892 (N.D. Ind. 1974) (citing *Grisson v. Moran*, 290 N.E.2d 119, 123-124 (Ind. Ct. App. 1972)). |
| **Reliance** | "To prevail on a fraud claim, the plaintiff must establish reasonable reliance upon a material misrepresentation by the defendant." *Dean V. Kruse Found., Inc. v. Gates*, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010) (finding no fraud where defendant was neither misled nor acted in reasonable reliance). "A person has a right to rely upon representations where the exercise of reasonable prudence does not dictate otherwise." *Plymale v. Upright*, 419 N.E.2d 756, 762 (Ind. Ct. App. 1981). "While the person relying is bound to use ordinary care and diligence to guard against the fraud; the requirement of reasonable prudence in business transactions is not carried to the extent that the law will ignore an intentional fraud practiced upon the [unwary]." *Grissom v. Moran*, 290 N.E.2d 119, 124 (Ind. Ct. App. 1972) (internal citations omitted). |
| **Scienter** | "An intent to deceive, or 'scienter,' is an element of actual fraud, whether classified as a knowing or reckless misrepresentation or as an additional element to a knowing or reckless misrepresentation." *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind. Ct. App. 1995), *decision clarified on denial of reh'g*, 664 N.E.2d 394 (Ind. Ct. App. 1996). "Where a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 881 (S.D. Ind. 2014). "[S]ilence will not support a claim for actionable fraud absent a duty to speak or to disclose facts." *Wright v. Pennamped*, 657 N.E.2d at 1231. |
| **Proof** | "When fraud is relied on as a basis for recovery, the alleging party must prove all of the essential elements of fraud by a preponderance of the evidence. However, direct or positive proof is not essential to establish fraud; circumstantial evidence will suffice if there are grounds from which fraud may be reasonably inferred." *Grissom v. Moran*, 290 N.E.2d at 123 (internal citations omitted). |
| **Statute of Limitations** | Indiana has a, "[s]ix-year statute of limitations for actions seeking relief against frauds applies to constructive fraud as well as actual fraud." *Orem v. Ivy Tech State Coll.*, 711 N.E.2d 864, 870 n.7 (Ind. Ct. App. 1999). |

14

IOWA

| Elements | "In order to establish a civil claim for aiding and abetting under Iowa law, [the Plaintiff] must prove; '1) a wrong to the primary party; 2) knowledge of the wrong on the part of the aider; and 3) substantial assistance by the aider in the achievement of the primary violation.'" *Graves v. City of Durant*, 2010 WL 785850 at *13 (N.D. Iowa Mar. 5, 2010) (quoting *PFS Distrib. Co. v. Raduechel*, 492 F. Supp. 2d 1061, 1084 (S.D. Iowa 2007)).<br><br>There are seven elements to a fraud claim: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage." *Grefe v. Ross*, 231 N.W.2d 863, 864 (Iowa 1975) (citing *Hall v. Wright*, 156 N.W.2d 661, 666 (Iowa 1968)). Unlike many other states, Iowa law does not require the Plaintiff to plead fraud with particularity. *Rosenberg v. Miss. Val. Const. Co.*, 106 N.W.2d 78, 79 (Iowa 1960) ("[I]t is not necessary that all details and circumstances of the [fraud] be set forth with particularity."). |
| --- | --- |
| Materiality | "A fact is material if it substantially affects the interest of the party alleged to have been defrauded." *Smith v. Peterson*, 282 N.W.2d 761, 765 (Iowa Ct. App. 1979) (citation omitted). "Materiality has been found where a fact influences a person to enter into a transaction, where it deceives him or induces him to act, or where the transaction would not have occurred without it." *Id.* (citations omitted); *see also First Nat. Bank in Lenox v. Brown*, 181 N.W.2d 178, 182 (Iowa 1970) (citation omitted). |
| Reliance | Iowa requires "reliance on the representation to be justified, not reasonable." *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 736 (Iowa 2009). The "reliance does not necessarily need to conform to the standard of a reasonably prudent person, but depends on the qualities and characteristics of a particular plaintiff and the specific surrounding circumstances." *Id.* at 737 (citations omitted). Certain misrepresentations, however, may not justifiably be relied on. "For example, 'where a plaintiff has equal information of certain knowledge as the defendant, he has no right to rely upon defendant's statements.'" *Lockard v. Carson*, 287 N.W.2d 871, 878 (Iowa 1980) (quoting *Andrew v. Baird*, 265 N.W. 170, 175 (1936)). Iowa's common-law fraud claim parallels the federal fraud claim and, therefore, factors used in federal cases are helpful in determining the justifiable-reliance element. The relevant factors are: "(1) the sophistication and expertise of the plaintiff in financial . . . matters; (2) the existence of long-standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the . . . transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations." *Spreitzer*, 779 N.W.2d at 737 (quoting *Davidson w. Wilson*, 973 F.2d 1391, 1400 (8th Cir. 1992)). |
| Scienter | Scienter is defined as "knowledge of the falsity of a material representation." *McGough v. Gabus*, 526 N.W.2d 328, 331 (Iowa 1995); *Dier v. Peters*, 815 N.W.2d 1, 8 (Iowa 2012). Scienter may be "met when the evidence shows such representations were made in reckless disregard of their truth or falsity." *Id.* (citing *Hall*, 156 N.W.2d at 667-69). Finally, scienter may also be established if the plaintiff can prove that the defendant "falsely stated or implied that the representations were based on personal knowledge or investigation [] or had a special relationship with the plaintiff and therefore had a duty to disclose." *McGough*, 526 N.W.2d at 331 (citing *Cornell v. Wunschel*, 408 N.W.2d 369, 375-76 (Iowa 1987). |
| Proof | Each element of fraud must be proved "by a preponderance of clear, satisfactory, and convincing evidence." *Hoelscher v. Sandage*, 462 N.W.2d 289, 291 (Iowa Ct. App. 1990). "[F]raud may, and usually must be proved by circumstantial evidence." *Prod. Credit Ass'n of Midlands v. Shirley*, 485 N.W.2d 469, 472 (Iowa 1992) (citation omitted). Courts "look for certain badges or indicia of fraud such as inadequacy of consideration, insolvency of the transferor, and pendency or threat of a third-party creditor litigation." *Id.* (citing *Graham v. Henry*, 456 N.W.2d 364, 366 (Iowa 1990); *Rouse*, 174 N.W.2d at 667–68). |
| Statute of Limitations | "In general, actions for injuries to property and for relief on the ground of fraud must be brought within five years." *Bob Mckiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993) (citing Iowa Code Ann. § 614.1 (4) (2013). |

15

# KANSAS

| Elements | The Supreme Court of Kansas has stated that the Restatement (Second) of Torts may be broadly applicable to aiding and abetting tort claims.  *State ex rel. Mays v. Ridenhour*, 811 P.2d 1220, 1231-31 (Kan. 1991) ("[Aiding and abetting is a theory used to impose vicarious liability for concerted action. . . . . 'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other.'" (quoting Restatement § 876)). <br><br> "[T]he elements of actual fraud are (1) a false statement of existing and material fact; (2) known to be false or made recklessly; (3) made intentionally for purpose of inducing another's action; (4) reasonable reliance on the statement; and (5) damage because of reliance."  *Nelson v. Nelson*, 288 Kan. 570, 583 (2009).  "Two additional elements must also be proven in order to establish constructive fraud: (1) a confidential relationship, and (2) a betrayal of this confidence or a breach of a duty imposed by the relationship."  *Id.*  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Kan. Stat. Ann. § 60-209(b); *see Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 260 (1999). |
|---|---|
| Materiality | "A matter is material if it is one to which a reasonable man would attach importance in determining his choice of action in the transaction in question." *Griffith v. Byers Construction Co.*, 510 P.2d 198 (Kan. 1973). |
| Reliance | "The injured party's reliance on a fraudulent misrepresentation must be reasonable, justifiable and detrimental."  *Slaymaker v. Westgate State Bank*, 241 Kan. 525, 532 (1987); *see also Robinson v. Shah*, 936 P.2d 784, 791 (Kan. Ct. App. 1997);  *Hutchinson Travel Agency, Inc. v. McGregor*, 701 P.2d 977, 980 (Kan. Ct. App. 1985). |
| Scienter | "The elements of an action for fraud include an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth . . . ."  *Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004) (citing *Gerhardt v. Harris*, 934 P.2d 976 (Kan. 1997)); *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005).  Evidence of acts after the alleged fraud may be used as evidence of intent: "[S]ometimes the subsequent action of the party more clearly demonstrates the fraudulent intent than any or all of the circumstances that occurred prior to or at the particular time of the transaction that is alleged to be fraudulent*." Unified School Dist. v. Celotex Corp.*, 629 P.2d 196, 210 (Kan. Ct. App. 1981). |
| Proof | Fraud "must be established by clear and convincing evidence." *Chism v. Protective Life Ins. Co.*, 290 Kan. 645, 654 (Kan. 2010).  The Kansas Supreme Court has stated that "[t]he burden of proving fraud is by a preponderance of the evidence, which is "a matter of quantum," whereas "[t]he character of the evidence [must be] 'clear and convincing,'" which "is a matter of quality." *Fox v. Wilson*, 507 P.2d 252, 265 (Kan. 1973); *see also In the Interest of B.D.-Y.*, 286 Kan. 686, 692-693 (2008) (citing *Ortega v. IBP, Inc.*, 255 Kan. 513, 528 (1994)). |
| Statute of Limitations | The limitations period in Kansas is two years.  K.S.A. § 60-513.  The statute begins to run at the time of the occurrence of the act, "but the cause of action shall not be deemed to have accrued until the fraud is discovered."  *Id.*; *Sutton v. Sutton*, 118 P.3d 700, 703 (Kan. Ct. App. 2005). |

16

## KENTUCKY

| Elements | In Kentucky, a person who knowingly, actively and affirmatively aids and abets a third party to perpetuate a fraud is liable for aiding and abetting fraud.  *Lappas v. Barker*, 375 S.W.2d 248, 252 (Ky. 1963).  There must be intent to aid in the commission of a fraud.  *Haman v. Steele*, 1889 WL 1288 (Ky. Super. Sept. 11, 1889). |
|---|---|
|  | "In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury."  *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).   "Fraud may be committed either by intentionally asserting false information or by willfully failing to disclose the truth." *Rickert*, 996 S.W.2d at 469. |
| Materiality | The misrepresentation "must relate to a past or present material fact" such that "[a] mere statement of opinion or prediction may not be the basis of an action." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). |
| Reliance | "In Kentucky, a claimant may establish detrimental reliance in a fraud action when he acts or fails to act due to fraudulent misrepresentations." *Rickert*, 996 S.W.2d at 469.  Such reliance must be reasonable or justifiable. *Flegles* , 289 S.W.3d at 549. |
| Scienter | Knowledge or recklessness, coupled with intent to induce reliance is required for fraud claims. *Rickert*, 996 S.W.2d at 468.  Therefore, "[f]or a representation to qualify as a fraudulent misrepresentation, the party making the representation—at the time of making it—must know the representation is false or make it recklessly without any knowledge of its truth." *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 615 (Ky. Ct. App. 2011). Consequently, "[i]f the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action…." *Id.* |
| Proof | In Kentucky, proof of fraud requires "clear and convincing evidence."  *Flegles*, 289 S.W.3d at 549.  That being said, "[f]raud may be established by evidence which is wholly circumstantial." *Rickert*, 996 S.W.2d at 468.  Furthermore, "[a] pleading is sufficient if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Denzik v. Denzik*, 197 S.W.3d 108, 110 (Ky. 2006). |
| Statute of Limitations | The statute of limitations for fraud is five years.  Ky. Rev. St. Ann. § 413.120. |

17

## LOUISIANA

| Elements | "In the absence of a conspiracy, there is no distinct cause of action for aiding and abetting under Louisiana law."  *Guidry v. Bank of Laplace*, 661 So.2d 1052, 1057 (La. Ct. App. 1995).<br><br>Louisiana provides for a "charge of delictual fraud pursuant to Civil Code article 2315," which requires "(1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury."  *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993); *see also Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Ass'ns, Inc.*, 962 So. 2d 1089, 1091 (La. Ct. App. 2007) ("To succeed in a claim for intentional/fraudulent misrepresentations, the petition must contain allegations of: '(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury.'"). |
|---|---|
| Materiality | "Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute.  Agreements can be set aside if there is an error as to a material fact." *Mar-Len of Louisiana, Inc. v. Meyer and Assocs., Inc.*, 624 So. 2d 967, 969 (La. Ct. App. 1993)(internal citations omitted). |
| Reliance | "Fraud does not vitiate consent when the party against whom fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.  This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations."  La. Civ. Code art. 1954 (2015). |
| Scienter | The scienter required is a knowing misrepresentation and intent to deceive.  *Sys. Eng'g and Sec., Inc. v. Sci. & Eng's Ass'ns, Inc.*, 962 So. 2d 1089, 1091 (La. Ct. App. 2007). |
| Proof | "Fraud need only be proven by preponderance of the evidence and may be established by circumstantial evidence." *Van Meter v. Gutierrez*, 897 So.2d 781, 787 (La. Ct. App. 2005). |
| Statute of Limitations | The statute of limitations for a fraud claim is one year. *Winn Fuel Serv., Inc. v. Booth*, 34 So.3d 515, 519 (La. Ct. App. 2010); *see also* La. Civ. Code art. 3492 (2015). |

18

# MAINE

| Elements | "In Maine the tort of aiding and abetting a tortious action is drawn from section 876 of the Restatement of Torts."  *FDIC v. S. Prawer & Co.*, 829 F. Supp. 453, 457 (D. Me. 1993) (citing *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993)); *see also Bowers v. Allied Capital Corp.*, Civ. No. 91–0021–B, 1991 WL 335252 (D. Me. July 1, 1991).

"A defendant is liable for fraud or deceit if he (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage."  *Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979). |
|---|---|
| **Materiality** | "An action of deceit cannot be based on every false representation or statement.  To sustain an action, the statement must be as to matters of fact substantially affecting the subject matter and not as to matters of opinion, judgment or expectation."  *Clark v. Morrill*, 145 A. 744, 745 (Me. 1929). |
| **Reliance** | "A plaintiff may justifiably rely on the fraudulent misrepresentation of a defendant, whether made intentionally or recklessly, without investigating the truth or falsity of the representation. Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to him."  *Letellier*, 400 A.2d  at 376. |
| **Scienter** | Actual fraud, as opposed to constructive fraud is "distinguished by the presence…of an intent to deceive."  *Letellier*, 400 A.2d at 374.  It is "a necessary element of the cause of action that the misrepresentation have been made with knowledge of its falsity or in reckless disregard of whether it was true or false." *Bartner v. Carter*, 405 A.2d 194, 204 (Me. 1979). |
| **Proof** | "To prevail on a claim for intentional fraud, the plaintiff must prove [the elements] by clear and convincing evidence." *Rand v. Bath Iron Works Corp.*, 832 A.2d 771, 773 (Me. 2003). |
| **Statute of Limitations** | The statute of limitations for fraud is six years after discovery of the cause of action. 14 M.R.S. § 859. |

**MARYLAND**

| Elements | "Maryland has expressly recognized aider and abettor tort liability" in the context of fraud and breaches of fiduciary duty. *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1049 (Md. Ct. App. 1995). "A person may be held liable as a principal for assault and battery if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort." *Id.* "[T]ort liability for aiding and abetting can only exist where someone has committed the actual tort." *Id.* at 1050. |
| --- | --- |
| | "To establish fraud, a plaintiff must prove by clear and convincing evidence that '(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.'" *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 49 (Md. 2013) (citing *Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005), *on reconsideration in part*, 71 A.3d 150 (Md. 2013), *cert. denied*, 134 S. Ct. 648 (2013). |
| Materiality | "To be actionable, misrepresentations must be material to the transaction at issue, either because it would be material to reasonable people generally or because it was material to the plaintiff. This materiality component of the tort is rooted in the fourth element, requiring that the plaintiff justifiably relied on the misrepresentations." *Rozen v. Greenberg*, 886 A.2d 924, 930 (Md. Ct. App. 2005) (internal citations omitted). |
| Reliance | Fraud "requires proof that  the plaintiff relied on the misrepresentation and had the right to rely on it. In determining if reliance is reasonable, a court is required to view the act in its setting, which will include the implications and promptings of usage and fair dealing. A strict 'but for' analysis is not the exclusive test for the 'reliance element' in a fraud claim . . . [T]he misrepresentation need not have been the only motivation for the plaintiff's actions; it is sufficient that the misrepresentation substantially induced the plaintiff to act." *Sass v. Andrew*, 832 A.2d 247, 267 (Md. Ct. App. 2003) (internal citations). "A party is justified in relying on another's factual assertions unless the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, in which case he is required to make an investigation of his own. In determining if reliance is reasonable, a court is required to view the act in its setting and consider such factors as the background and experience of the party that relied upon the representation." *Dierker v. Eagle Nat. Bank*, 888 F. Supp. 2d 645, 654 (D. Md. 2012) (internal quotation marks and citations omitted). |
| Scienter | "A cause of action for fraud, however, has a strict requirement of scienter. Recovery in a tort action for fraud or deceit in Maryland is based upon a defendant's deliberate intent to deceive. As with the other elements of fraud, scienter must be proven by clear and convincing evidence." *First Union Nat. Bank v. Steele Software Sys. Corp.,* 838 A.2d 404, 433 (Md. Ct. Spec. App. 2003) (internal citations, quotation marks, and brackets omitted). "A defendant may be liable for fraud or deceit only if he knows that his representation is false, or is recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity. Moreover, in order to recover for fraud, the misrepresentation must be made with the deliberate intent to deceive." *Sass v. Andrew,* 832 A.2d 247, 260 (Md. Ct. Spec. App. 2003) (internal quotation marks and citation omitted). |
| Proof | To prevail on a fraud based claim, a party must prove each element of the fraud by clear and convincing evidence. *Exxon Mobil Corp. v. Albright*, 71 A.3d  at 49. |
| Statute of Limitations | A fraud claim must be brought within three years after discovery. Md. Code Ann., Cts & Jud. Proc., § 5-101. |

# MASSACHUSETTS

| Elements | To establish a claim for aiding and abetting fraud in Massachusetts, a plaintiff must allege that the plaintiff had actual or constructive knowledge of the fraud and substantially assisted that fraud. *See Askenazy v. Tremont Grp. Holdings, Inc.*, No. CIV.A. 201004801, 2012 WL 440675, at *15 (Mass. Super. Jan. 26, 2012) (asserting these two elements properly alleged aiding and abetting fraud). In Massachusetts, the tort of aiding and abetting requires an underlying tort, defendant's awareness of the illegal act, and substantial assistance in committing the illegal act. *Demoulas v. Demoulas Super Markets, Inc., No.* 902927B, 1993 WL 818844, at *3 (Mass. Super. Nov. 29, 1993).<br><br>"[T]o recover in an action for deceit, 'the plaintiff must prove that the defendant [or its agent], made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [its] damage.' *Reisman v. KPMG Peat Marwick LLP*, 87 N.E.2d 1060, 1066 (Mass. Ct. App. 2003). |
|---|---|
| Materiality | The plaintiff must "prove that the falsely represented facts were material." *Mylan Labs.*, 608 F. Supp. 2d 127, 156 (D. Mass 2008). "For a fact to be material, it must have the tendency to do harm so that the damage to the plaintiff flowed directly from the misrepresentation." *Id.* Moreover, "[m]ateriality depends upon whether a reasonable man would attach importance to the fact not disclosed in determining his choice of action in the transaction in question." *Id.* (quoting *St. Paul Fire and Marine Ins. Co. v. Ellis & Ellis*, 262 F.3d 53, 61 n.9 (1st Cir. 2001)). For instance, "information has been found material where it 'concerns the purpose, safety, efficacy, or *cost*, of the product or service.'" *Id.* (quoting *F.T.C. v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 299 (D.Mass 2008)). |
| Reliance | A plaintiff "must also prove that it relied upon the representation as true." *Mylan Labs.*, 608 F. Supp. 2d at 157. Moreover, such reliance must be reasonable. *Id.* "The reasonableness of reliance is a question of fact" whereby "[o]nly when a jury concludes that the falsity was 'readily apparent' or 'obvious,' is reliance unreasonable." *Id.* |
| Scienter | The plaintiff in a fraud claim must also establish that the defendant "possessed a fraudulent intent." *Mylan Labs.*, 608 F. Supp. 2d at 156. "[F]raudulent intent may be shown by proof that a party knowingly made a false statement and that the subject of that statement was susceptible of actual knowledge. No further proof of actual intent to deceive is required." *Fisch v. Bd. of Registration in Medicine*, 769 N.E.2d 1221, 1230 (Mass. 2002). "It is sufficient to show proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; actual intent to deceive on the part of the defendants need not be shown." *Russell v. Cooley Dickinson Hosp., Inc.*, 772 N.E.2d 1054, 1066 (Mass. 2002) (internal quotations omitted). |
| Proof | Fraud on the court requires clear and convincing evidence of fraud, but it is not clear that other forms of fraud do as well. *Cela v. LaFleur*, 2005 Mass. App. Div. 156, 158 (Dist. Ct. 2005). "In all averments of fraud, mistake, duress or undue influence, the circumstances constituting fraud, mistake, duress or undue influence shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Mass. R. Civ. P. 9(b). "At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when  it took place. In addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm." *Equip. & Sys. For Indus., Inc. v. Northmeadows Const. Co.*, 798 N.E.2d 571, 574 (Mass. Ct. App. 2003). |
| Statute of Limitations | "[T]he statute of limitations for fraud claims is three years after the plaintiff learns or reasonably should have learned of the alleged misrepresentations." *Young v. Deloitte & Touche, LLP*, No. 040807, 2004 WL 2341344, at *10 (Mass. Sup. Ct. Sept. 20, 2004). |

21

## MICHIGAN

| Elements | "The Michigan Supreme Court has never expressly recognized a common-law claim for aiding and abetting tortious conduct," although it appears that "the Michigan Court of Appeals has done so in several contexts." *El Camino Res. Ltd. v. Huntington Nat. Bank*, 712 F.3d 917, 922 (6th Cir. 2013). In *El Camino*, the Sixth Circuit predicted that the "Michigan Supreme Court, if faced with the opportunity to do so, would adopt the approach of aiding and abetting as set forth in § 876(b) of the Restatement (Second) of Torts," which would require "(1) knowledge of [the] wrongful conduct by the aider/abettor; and (2) substantial assistance of the wrongful conduct by the aider/abettor." *Id.*<br><br>"To prove a claim of fraudulent misrepresentation, or common-law fraud, a plaintiff must establish that: (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury." *Roberts v. Saffell*, 760 N.W.2d 715, 719 (Mich. Ct. App. 2008). |
|---|---|
| Materiality | "This Court does not conceive the test of materiality as requiring that the misrepresentation relate to the sole or major reason for the transaction, but only that it relate to a material or important fact." *Papin v. Demski*, 169 N.W.2d 351, 353 (Mich. Ct. App. 1969). |
| Reliance | "It is well settled in Michigan that the test for determining the existence of reliance is not whether the misrepresentation was the sole influence upon the complaining party in deciding to sign the agreement but rather is whether the . . . misrepresentation exerted a material influence upon the minds of [the complainants], although it might be only 1 of several motives, acting together, which produced the result." *United States Fidelity & Guar. Co. v. Black*, 313 N.W.2d 77, 86 (Mich. 1981) (internal citations omitted). |
| Scienter | "In a common-law fraud action, the plaintiff must establish that the defendant knowingly or recklessly misrepresented a material fact with the intent that the other party rely on it." *Roberts v. Saffell*, 760 N.W.2d at 720. "Likewise, for silent fraud, the plaintiff must prove that the defendant knew of a material fact but concealed or suppressed the truth through false or misleading statements or actions and with the intent to deceive." *Id.* |
| Proof | The elements of fraud must be established "by clear and convincing evidence." *Phillips v. Smeekens*, 213 N.W.2d 862, 864 (Mich. Ct. App. 1973). |
| Statute of Limitations | A fraud action must be commenced within six years after the cause of action accrued. MCLS § 600.5813. |

22

## MINNESOTA

| Elements | Under Minnesota law, "a tort claim for aiding and abetting has three elements: (1) the primary tortfeasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 733 (8th Cir. 2015) (citing *Witzman v. Lehrman, Lehrman, & Flom*, 601 N.W.2d 179, 187 (Minn. 1999) (en banc)); *Anderson v. U.S. Bank Nat. Ass'n*, No. A13-0677, 2014 WL 502955, at *4 (Minn. Ct. App. Feb. 10, 2014). <br><br> "A claim of common law fraud requires eight elements: (1) a representation, (2) that was false, (3) concerning a past or present material fact, (4) which was susceptible of knowledge, (5) made by a person who knew of its falsity or asserted the representation without awareness of its truthfulness, (6) the person intended to induce others to act, (7) the complaining party was inducted to act by the representation, and (8) the complaining party suffered damages from the reliance." *TranCentral, Inc. v. Great S. Xpress, Inc.*, No. A09-460, 2010 WL 346388, at *6 (Minn. Ct. App. Feb. 2, 2010) (citation omitted).  Additionally, Minnesota Rule 9.02 requires that "in all averments of fraud the circumstances [must] be stated with particularity." |
|---|---|
| Materiality | Minnesota law requires Plaintiffs to prove materiality to recover on an action for fraud.  *See Yost v. Millhouse*, 373 N.W.2d 826, 829-30 (Minn. Ct. App. 1985) (outlining the elements for fraud).  "A statement of fact is material if it would naturally affect the conduct of the party addressed." *Id.* (citing *Griffin v. Farrier*, 21 N.W. 533 (Minn. 1884)).  Consequently, "if a party is justified in his belief that a representation is true and this belief substantially affects his or her decision to act, the representation is material."  *Nave v. Dovolos*, 395 N.W.2d 393, 398 (Minn. Ct. App. 1986) (citation omitted). |
| Reliance | A plaintiff "must set forth evidence demonstrating both actual and reasonable reliance."  *Hoyt Props, Inc. v. Prod. Resource Grp., L.L.C.*, 736 N.W.2d 313, 321 (Minn. 2007) (citation omitted).  Parties can reasonably rely on representations unless "the falsity of the representation is known or obvious to the listener."  *Id.* (citation omitted).  Plaintiffs are "not under an obligation to conduct an investigation and thus may rely on the representation so long as it is not known by the listener to be false and is not obviously false."  *Id.* (citation omitted). |
| Scienter | "[S]cienter is an essential element" of fraud.  *Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986).  "[A] representation is made with fraudulent intent when it is known to be false or, in the alternative, when it is asserted as of the representer's own knowledge when he or she does not in fact know whether it is true or false."  *Id.* (citing *Re-Trac Manuf. Corp.*, 149 N.W.2d at 39).  Thus, "even if a misrepresentation is made without purpose to deceive or without knowledge of its falseness, 'the fraud is as great as if the party knew his statement to be untrue.'"  *Id.* (citation omitted).  In other words, "a bad motive is not an essential element of fraud."  *Spiess*, 41 N.W.2d at 566; *see Loop Corp. v. Mcilcroy*, No. A04-362, 2004 WL 2221619, at *3 (Minn. Ct. App. Oct. 5, 2004) (quoting *Juster Steel v. Carlson Cos.*, 366 N.W.2d 616, 618 (Minn. Ct. App. 1985)). |
| Proof | Plaintiffs must prove each element of fraud by "clear and convincing evidence."  *Hentges v. Schuttler*, 77 N.W.2d 743, 746 (Minn. 1956) (citations omitted). Fraud is almost never presumed.  *Parrish v. Peoples*, 9 N.W.2d 225, 227 (Minn. 1943); *but see Christensen v. Christensen*, 393 N.W.2d 207, 210 (Minn. 1986) (citing *Estate of Serbus v. Serbus*, 324 N.W.2d 381, 384 (Minn. 1982); *but see Hill v. Hill*, 356 N.W.2d 49, 53 (Minn. Ct. App. 1984) ("Fraud is presumed under common law if the parties stand in a confidential relationship to one another and there is inadequate consideration to support their agreement.").  Fraud need not be proved by direct evidence.  *See Berkey v. Judd*, 22 Minn. 287, 294 (Minn. 1875) ("Although it is true . . . that fraud is never to be presumed . . . this rule does not require direct, positive proof in all cases.").  Rather, "fraud may be proved by circumstantial evidence or 'collateral facts.'"  *Haberle v. Buchwald*, 480 N.W.2d 351, 357 (Minn. Ct. App. 1992) (quoting *Hollerman v. F.H. Peavey & Co.*, 130 N.W.2d 534, 541 (Minn. 1964)). |
| Statute of Limitations | Fraud claims are subject to a six-year statute of limitations that beings on discovery.  *See Minn. Stat. Ann.* § 541.05(6) (West 2015). |

## MISSISSIPPI

| | |
|---|---|
| **Elements** | As a preliminary matter, it is unclear (and Mississippi courts have apparently never decided) whether Mississippi permits aiding and abetting non-criminal acts. In *Dale v. Ala Acquisitions, Inc.*, a federal court predicted that the Mississippi Supreme Court would recognize aiding and abetting fraud, presumably in accordance with Restatement § 876.  203 F. Supp. 2d. 694, 700-01 (S.D. Miss. 2002).<br><br>"The elements of fraud are well settled: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speakers intent that the representation be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the representation's truth; (8) the hearer's right to rely thereon; and, (9) the hearer's consequent and proximate damages." *Gallagher Bassett Servs. v. Jeffcoat*, 887 So. 2d 777, 787 (Miss. 2004) (citing *Gamble ex rel. Gamble v. Dollar General Corp.*, 852 So. 2d 5, 10 (Miss. 2003)).  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." *Lampkin v. Thrash*, 81 So. 3d 1193, 1198 n.2 (Miss. 2012) (citing M.R.C.P. Rule 9(b)). |
| **Materiality** | Mississippi does not appear to have defined the materiality requirement in its case law.  In *Martin v. Winfield*, 455 So. 2d 762, 765 (1984), the Court held that materiality did not exist in a case where the defendant did not have special knowledge and there was no evidence that the plaintiff would have reasonably relied on the statements. |
| **Reliance** | "It is only if that untruth was designed to, and did, in fact, induce the hearer to change his position in justifiable reliance on the untruth that it becomes potentially actionable." *Lacy v. Morrison*, 906 So. 2d 126, 130 (Miss. Ct. App. 2004) (quoting *McGee v. Swarek*, 733 So. 2d 308, 312 (Miss. Ct. App. 1998)).  Regarding "right to rely," "[the court has] frequently considered fraud cases where persons with special knowledge or expertise employ sharp practices and deceptions to take advantage of unknowledgeable victims.  [The] court has been liberal in reviewing transactions, where one party might have the advantage over another in experience, knowledge, and wisdom, to determine whether an overreaching, deceit or fraud has been practiced on the disadvantaged person." *Martin v. Winfield*, 455 So. 2d at 765. |
| **Scienter** | For the scienter requirement, the plaintiff must allege "the speaker's knowledge of its falsity or ignorance of its truth" and "the speakers intent that the representation be acted upon by the hearer and in the manner reasonably contemplated." *Gallagher Bassett*, 887 So. 2d at 787.<br>"[F]raudulent representations upon which a party may predicate any demand for relief must relate to past or presently existing facts, as facts, and cannot consist of promises, *except in some cases when a contractual promise is made with the present undisclosed intention of not performing it.*" *Crystal Springs Ins. Agency, Inc. v. Commercial Union Ins. Co.*, 554 So. 2d 884, 886 (Miss. 1989).  "If mutual mistake or fraud is properly pled, prior oral representations/negotiations are admissible to prove the real intent of the contracting parties." *Turner v. Terry*, 799 So.2d 25, 34 (2001). |
| **Proof** | The elements of fraud must be demonstrated "by clear and convincing evidence." *Moore v. Bailey*, 46 So. 3d 375, 383-384 (Miss. Ct. App. 2010).  "Clear and convincing evidence is: that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Johnson v. Bay City South Mortg. Co.*, 928 So. 2d 888, 892 (Miss. Ct. App. 2005) (citation omitted).  "Clear and convincing evidence is such a high standard that even the overwhelming weight of the evidence does not rise to the same level." *Id.* |
| **Statute of Limitations** | The statute of limitations is three years. Miss. Code § 15-1-49.  Fraud claims accrue "upon the completion of the sale induced by false representation, or upon the consummation of the fraud." *Stephens v. Equitable Life Assur. Soc'y of the United States*, 850 So. 2d 78, 81 (Miss. 2003). |

## MISSOURI

| | |
|---|---|
| **Elements** | As a preliminary matter, it is not clear whether aiding and abetting fraud is a recognized claim in Missouri. Federal courts have acknowledged that "the Missouri Supreme Court has not squarely decided whether to recognize the tort of aiding and abetting." *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09CV01252ERW, 2012 WL 3984486, *6 (E.D. Mo. Sept. 11, 2012). However, courts have also stated that an "[a]ider and abetter has been defined as any person who is present at the commission of a tort, encouraging or exciting the same by words, gestures, looks, or signs, or who in any way or by any means countenances and approves the same." *Brandt v. Medical Defense Assoc.*, No. 60267, 1992 WL 77537, at *4 (Mo. Ct. App. Apr. 21, 1992).<br><br>The elements of fraud are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or his ignorance of the truth; (5) the speaker's intent that his representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Manzer v. Sanchez*, 985 S.W.2d 936, 940 (Mo. Ct. App. 1999). "All averments of fraud are to be stated with particularity, except malice, intent, knowledge and any other condition of mind which may be averred generally." *Id.* at 940; Mo. Sup. Ct. R. 55.15. |
| **Materiality** | "[A] representation is material if it relates directly to the matter in controversy and is of such a nature that the ultimate result would not have followed if there had been no representation, or if the one who acted upon it had been aware of its falsity." *Schoen v. Lange*, 256 S.W.2d 277, 281 (Mo. Ct. App. 1953). "The test of materiality is an objective one and cannot be stated in a single, definite rule but rather depends upon the circumstances of the transaction. The question is frequently for the jury whether the statement made might justifiably induce the action taken. Materiality is a question of fact to be determined by the fact-finder." *Carnahan v. American Family Mut. Ins. Co.*, 723 S.W.2d 612, 615 (Mo. Ct. App. 1987) (internal citations omitted). |
| **Reliance** | The reliance element includes both reasonable "reliance on the truth of the representation" and "the hearer's right to rely thereon." *Manzer v. Sanchez*, 985 S.W.2d at, 940. "Reliance is an essential element of fraud, and [plaintiff] could not recover for fraud unless she established that she relied on the truth of the representations claimed to be false. The reliance must be proven to be reasonable. [Plaintiff] can recover for fraud only if she was justified, under the circumstances of this case, in relying upon the misrepresentations that were the basis of her fraud claim." *Trimble v. Pracna*, 167 S.W.3d 706, 712 (Mo. 2005) (citations omitted). |
| **Scienter** | "The misrepresentation must be made with intent to deceive, or with what is recognized as the legal equivalent to a deliberately fraudulent intent to deceive." *Dudley v. Dumont*, 526 S.W.2d 839, 847 (Mo. Ct. App. 1975). "A promise accompanied by a present intent not to perform misrepresents a present state of mind—itself an existent fact—and therefore suffices as a basis for actionable fraud." *Rigby Corp. v. Boatmen's Bank & Trust Co.*, 713 S.W.2d 517, 539 (Mo. Ct. App. 1986); *see Roth v. Equitable Life Assur. Soc'y of the United States*, 210 S.W.3d 253, 259 (Mo. 2006). "[T]he intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance." *Thoroughbred Ford v. Ford Motor Co.*, 908 S.W.2d 719, 732 (Mo. Ct. App. 1995). |
| **Proof** | Each element of fraud must be proven "with clear and convincing evidence." *Kempton v. Dugan*, 224 S.W.3d 83, 87 (Mo. Ct. App. 2007). Fraud "may be proven in its entirety by circumstantial evidence . . . and other similar transactions in the course of a continuous, systematic course of dealing are admissible." *Chesus v. Watts*, 967 S.W.2d 97, 113 (Mo. Ct. App. 1998); *see Estate of Overbey v. Chad Franklin Nat'l Auto Sales North*, LLC, 361 S.W.3d 364, 371 (Mo. 2012). |
| **Statute of Limitations** | The limitations period for fraud is five years. § 516.120(5) R.S.Mo. The limitations period does not accrue until discovery by the aggrieved party within a period of 10 years from the fraud. *Id.* However, all fraud claims "must be brought within a maximum of 15 years." *Ellison v. Fry*, 437 S.W.3d 762, 770-71 (Mo. 2014). |

25

## MONTANA

| | |
|---|---|
| **Elements** | Under Montana law, an individual defendant can generally be held liable for the tortious conduct of another individual if she "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Sloan v. Fauque*, 784 P.2d 895, 896 (Mont. 1989) (quoting Restatement (Second) of Torts § 876). Thus, "where two or more persons commit tortious acts in concert, all are liable for the tortious acts of anyone." *Id.* "As provided in subsection (b) of the Restatement (Second) of Torts § 876 (1979), a person is subject to liability for the harm to a third person from the tortious conduct of another if: 1) the other's conduct is a breach of duty, 2) he knows that the other's conduct is a breach of duty, and 3) he provides substantial assistance or encouragement to the other for such conduct." *Newman v. Lichfield*, 272 P.3d 625, 633-34 (Mont. 2012) (emphasis removed).<br><br>The nine elements of actual fraud are: "(1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) speaker's intent it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury caused by the reliance on the representation." *Durbin v. Ross*, 916 P.2d 758, 762 (Mont. 1996). |
| **Materiality** | The representation must be material. *Durbin v. Ross*, 916 P.2d at 762; *see also Tschache v. Barclay*, 564 P.2d 1299, 1301-02 (Mont. 1977) (non-disclosure of a non-material fact could not serve as a basis for fraud). "Generally, fraud must be premised upon a misrepresentation of material fact, rather than law." *Ryckman v. Wildwood, Inc.*, 641 P.2d 467, 471 (Mont. 1982). |
| **Reliance** | Justifiable reliance is required. *Durbin*, 916 P.2d at 762; *see also Owen v. Skramovsky*, 313 P.3d 205, 211 (Mont. 2013) (dismissing Defendant's fraud counter-claim because it found its allegations "incredible"). "Fraud claims must establish both that a hearer relies on the representation and that the hearer has a right to rely on the representation. If a party has investigated a fraudulent representation, or has the means to determine the veracity of a representation, that party has no grounds to claim reliance." *Fossen v. Fossen*, 311 P.3d 743, 747 (Mont. 2013) (internal citations omitted). "If, however, a relation of trust and confidence exists between the parties, a misrepresentation or opinion by the party in whom the trust and confidence is reposed as to what the law is, if made for the purpose of deceiving the other or of gaining an unconscionable advantage over him, forms an exception to the foregoing rule, and constitutes a ground for relief. So, also, if one who knows the law deceives another by misrepresenting it to him, and, knowing him to be ignorant of it, takes advantage of him by reason of his ignorance, this is a misrepresentation within the exception. Still another exception, recognized by some courts, is when the person to whom the representation is made relies upon the superior knowledge and experience of the other party, and upon a statement by him that it is not necessary for him to consult counsel. A statement merely as to what the party making it intends to do is not a misrepresentation, since it is not an affirmation of the fact, but is only an assertion that a present mental condition or opinion exists in him." *Emerson-Brantingham Implement Co. v. Anderson*, 194 P. 160, 164 (Mont. 1920) (internal citations omitted). |
| **Scienter** | Knowledge of a statement's falsity or ignorance of its truth is required, and an intent to induce is required for actual fraud. *Durbin*, 916 P.2d at 762 ("While actual fraud hinges on the knowledge and intent of the defendant, constructive fraud hinges only on the knowledge of the defendant."); *W. Sec. Bank v. Eide Bailly LLP*, 249 P.3d 35, 46 (Mont. 2010). Only "intent to be relied on" is required, not intent to injure. *Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1183 (Mont. 2014); *Eide Bailly LLP*, 249 P.3d at 46. "A statement made with reckless disregard for the truth is sufficient." *Morrow*, 324 P.3d at 1183 (internal quotation marks omitted). |
| **Proof** | "A mere suspicion of fraud is not sufficient, fraud must be proven by a preponderance of the evidence." *In re Estate of Kindsfather*, 108 P.3d 487, 490 (Mont. 2005) (citations omitted). |
| **Statute of Limitations** | "Under Montana law, it is well settled that fraud claims are subject to a two-year statute of limitations." *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 440 (Mont. 2003); Mont. Code Ann. § 27-2-203. |

App. 74

NEBRASKA

| Elements | Under Nebraska law, a Plaintiff asserting a claim for aiding and abetting must demonstrate that (1) the primary tortfeasor engaged in tortious conduct; (2) the defendant knew that the primary tortfeasor's conduct constituted a breach of duty; and (3) the defendant provided substantial assistance or encouragement. *See Colombo Candy & Tobacco Wholesale Co. v. Ameristar Casino Council Bluffs, Inc.*, 972 F. Supp. 2d 1103, 1108 (D. Neb. 2013). Thus, "'[n]o particular acts are necessary, nor is it necessary that any physical part in the commission of the unlawful act is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient.'" *Id.* (quoting *Bergman v. Anderson*, 411 N.W.2d 336, 340 (Neb. 1987)). <br><br> "To sustain a cause of action for fraudulent representation, a plaintiff must show (1) that a representation was made, (2) that the representation was false, (3) that when made the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion, (4) that it was made with the intention that the plaintiff should rely upon it, (5) that the plaintiff reasonably did so rely, and (6) that he or she suffered damage as a result." *ServiceMaster Indus. Inc. v. J.R.L. Enters., Inc.*, 388 N.W.2d 83, 86 (Neb. 1986) (citations omitted); *see also Nielsen v. Adams*, 388 N.W.2d 840, 845 (Neb. 1986). Furthermore, Nebraska law requires Plaintiffs to plead fraud with particularity. *Nielsen v. Nielsen*, No. A-04-894, 2005 WL 1719731, at *3 (Neb. Ct. App. July 26, 2005) (citing Neb. Ct. R. of Pldg. In Civ. Actions). |
|---|---|
| Materiality | A misrepresentation is material where it "would be likely to affect the conduct of a reasonable man with reference to a transaction with another person." *Pasko v. Trela*, 46 N.W.2d 139, 143 (Neb. 1951); *see also Lincoln Ben. Life Co. v. Edwards*, 45 F. Supp. 2d 722, 748 (D. Neb. 1999). |
| Reliance | A plaintiff must demonstrate reasonable reliance—also known as justifiable reliance—when alleging a fraud claim. *See ServiceMaster*, 388 N.W.2d at 86. "Obviously, justifiable reliance must be decided on a case-by-case basis." *Lucky 7, L.L.C. v. THT Realty, L.L.C.*, 775 N.W.2d 671, 677 (Neb. 2009). In considering whether the Plaintiff "reasonably relied on a misrepresentation, courts consider the totality of the circumstances, including 'the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective knowledge and means of knowledge.'" *Id.* (quoting *Finomore v. Epstein*, 481 N.E.2d 1193, 1196 (Ohio 1984)). As a general matter, "the recipient of an intentionally false statement of material fact may justifiably rely on the statement if the recipient would have to investigate to discover the truth." *deNourie & Yost Homes, LLC v. Frost*, 854 N.W.2d 298, 313 (Neb. 2014) (citing *Omaha Nat. Bank v. Mfrs. Life Ins. Co.*, 332 N.W.2d 196, 202-203 (1983)). |
| Scienter | "[P]roof of scienter is necessary. However, as the case law demonstrates, this is scienter in terms of a knowledge requirement, not in terms of an 'intent to deceive.'" *Calvert Fire Ins. Co. v. Unigard Mut. Ins. Co.*, 526 F. Supp. 623, 637 (D. Neb. 1980); *Adams*, 388 N.W.2d at 845 (noting that an "intent to deceive" is not "a separate element" of fraud). A plaintiff must show that "the representation, when made, was known to be false *or* was made recklessly as a positive assertion without knowledge concerning the truth of the representation. . . ." *Edwin Bender and Sons v. Ericson Livestock Com'n Co., Inc.*, 421 N.W.2d 766, 771 (Neb. 1988) (citations omitted). |
| Proof | A plaintiff must prove each element of fraud by "clear and convincing evidence." *ServiceMaster*, 388 N.W.2d at 86. Where circumstantial evidence is relied on, the "inferences and presumptions of fraud . . . must not be guess work or conjecture but must be rational and logical deductions from the facts and circumstances from which they are inferred." *Id.* (quoting *Workman v. Workman*, 118 N.W.2d 764, 780 (Neb. 1962)). More specifically, "[c]ircumstantial evidence alone is not sufficient to sustain a finding of fraud unless the circumstances 'are of such a nature and so related to each other that the conclusion reached is the only one that can fairly and reasonably be drawn therefrom.'" *Id.* (quoting *Rettinger*, 15 N.W.2d at 411). |
| Statute of Limitations | The statute of limitations for fraud is four years. *McGinley v. McGinley*, 583 N.W.2d 77, 80 (Neb. Ct. App. 1998) (citing Neb. Rev. Stat. § 25-2070). |

27

NEVADA

| | |
|---|---|
| **Elements** | To establish an aiding and abetting fraudulent misrepresentation claim, a plaintiff must demonstrate (1) a third party committed a fraudulent misrepresentation; (2) defendant "was aware of [his] role in promoting the fraudulent misrepresentation at the time [he] provided assistance"; and (3) defendant "knowingly and substantially assisted" a third party in committing the fraud. *Dow Chem. Co. v. Mahlum*, 970 P.2d 112, 112 (Nev. 1998) (overruled on other grounds). "Under the Restatement, liability attaches for civil aiding and abetting if the defendant substantially assists or encourages another's conduct in breaching a duty to a third person." *Id.*<br><br>The elements of a fraud claim are: "1. A false representation made by the defendant; 2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); 3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; 4. Plaintiff's justifiable reliance upon the misrepresentation; and 5. Damage to the plaintiff resulting from such reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). |
| **Materiality** | The misrepresentation must relate to a material point, such that a false representation as to a mere matter of opinion does not amount to fraud. *Banta v. Savage*, 12 Nev. 151, 157 (1877). |
| **Reliance** | The plaintiff must also demonstrate "justifiable reliance upon the representation on the part of the plaintiff in taking action or refraining from it…." *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975). Justifiable reliance can be thought of in terms of cause and effect: "The causal connection between the wrongful conduct and the resulting damage, essential throughout the law of torts, takes in cases of misrepresentation the form of inducement of the plaintiff to act, or to refrain from acting, to his detriment. The false representation must have played a material and substantial part in leading the plaintiff to adopt his particular course; and when he was unaware of it at the time that he acted, or it is clear that he was not in any way influenced by it, and would have done the same thing without it for other reasons, his loss is not attributed to the defendant." *Id.* at 118. |
| **Scienter** | Fraud requires that the defendant have "knowledge or belief . . . that the representation is false—or, that he has not a sufficient basis of information to make it." *Lubbe* 540 P.2d at 117. An erroneous representation does not satisfy this knowledge requirement. *Id.* |
| **Proof** | A plaintiff has the burden of proving each element of fraud claim by clear and convincing evidence. *Bulbman*, 825 P.2d at 592. Therefore, "where there exists no more than a paucity of evidence to support the charge of fraud," a cause of action has not been properly pleaded. *Lubbe*, 540 P.2d at 117. |
| **Statute of Limitations** | The limitations period for fraud is three years after discovery. Nev. Rev. Stat. 11.190 (3)(d). |

28

## NEW HAMPSHIRE

| | |
|---|---|
| **Elements** | There is very limited case law on aiding and abetting in New Hampshire, and a review of case law indicates that New Hampshire has not addressed whether a person can be liable for aiding and abetting fraud.  It is possible that aiding and abetting-related claims are considered under civil conspiracy.  *See In re Estate of Raduazo*, 814 A.2d 147, 150 (N.H. 2002) (noting that the claims at issue in the underlying case included a "civil conspiracy (aiding and abetting)" claim).<br><br>In New Hampshire, anyone who "fraudulently makes a misrepresentation . . . for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." *Tessier v. Rockefeller*, 33 A.3d 1118, 1124 (N.H. 2011) (internal quotation marks omitted).  "[T]he representation [must be] made with knowledge of its falsity or with conscious indifference to its truth and with the intention of causing another person to rely on the representation." *Id.* (quotations omitted).  Additionally, Plaintiffs must plead fraud with particularity and "*specifically allege* the facts of the defendant's fraudulent actions." *Jay Edwards, Inc. v. Baker*, 534 A.2d 706, 709 (N.H. 1987) (emphasis in original)). |
| **Materiality** | An actionable misstatement must be "of a material fact." *Leclerc v. Prudential Ins. Co. of Am.*, 39 A.2d 763, 764 (N.H. 1944).  A misrepresentation is considered material if it substantially affects the plaintiff's decision.  *See Griswold v. Sabin*, 51 N.H. 167, 167 (N.H. 1871) ("With regard to the materiality of the misrepresentation, the jury were instructed that the rule is, that if the fraud be such that had it not been practised [sic] the contract would not have been made, then it is material."). |
| **Reliance** | To establish fraud, "a plaintiff must demonstrate justifiable reliance." *Snierson v. Scruton*, 761 A.2d 1046, 1049 (N.H. 2000) (citing *Gray*, 640 A.2d 276, 279 (N.H. 1994)).  "[W]here a seller makes material statements of fact concerning matters peculiarly within his own knowledge, the purchaser is justified in relying on them." *Bergeron v. Dupont*, 359 A.2d 627, 629 (N.H. 1976) (citations omitted).  Thus, "it is the duty of one who volunteers information . . . to exercise reasonable care to verify the truth of his statements before making them." *Maxwell Ice Co. v. Brackett, Shaw & Lunt Co.*, 116 A. 34, 35 (N.H. 1921) (citation omitted).  Unlike other states, New Hampshire does not allow defendants to avoid the reliance requirement through contractual disclaimers.  *See Van Der Stok v. Van Voorhees*, 866 A.2d 972, 976 (N.H. 2005) ("Accordingly, we conclude that the defendant was not precluded by the contractual disclaimer from establishing the defense of fraud, and therefore the trial court correctly denied summary judgment."). |
| **Scienter** | To establish fraud under New Hampshire law, the Plaintiff must demonstrate scienter.  *See Orion Seafood Intern., Inc. v. Supreme Grp. B.V.*, No. 11-cv-562-SM, 2012 WL 3765172, at *2 (D.N.H. Aug. 29, 2012) (referencing the "scienter element of fraud"). The Plaintiff is required to prove that the "defendant made a representation with knowledge of its falsity or with conscious indifference to its truth *with the intention to cause another to rely upon it*." *Snierson*, 761 A.2d at 1049 (emphasis added). |
| **Proof** | Fraud "must be established by clear and convincing proof." *Burroughs v. Wynn*, 370 A.2d 642, 643 (N.H. 1977) (citing *Sheris v. Thompson*, 295 A.2d 268, 271 (1971)).  Direct or circumstantial evidence is sufficient.  *Kelley v. Simoutis*, 20 A.2d 628, 629 (N.H. 1941).  When a plaintiff relies on circumstantial evidence, courts look for "objective 'badges of fraud'" to infer fraudulent intent.  *In re Coffey's Case*, 949 A.2d 102, 119 (N.H. 2008) (citations omitted).  "While 'the presence of a single badge of fraud may spur mere suspicion, the confluence of several can constitute conclusive evidence of an actual intent to defraud, absent significantly clear evidence of a legitimate supervening purpose.'" *Id.* at 120 (quoting *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir. 1991)). |
| **Statute of Limitations** | There is a three-year statute of limitations for fraud claims that begin to run at the time of "the act or omission," or from the date of discovery if " the act or omission . . . could not reasonably have been discovered at the time of the act or omission." N.H. Rev. Stat. Ann. § 508:4(I). |

29

**NEW JERSEY**

| Elements | "[A]iding and abetting fraud is a cognizable civil cause of action under New Jersey law." *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 782 (N.J. Super Ct. App. Div. 2006). "[A]iding and abetting liability is found in cases where one party knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other." *Id.* (internal quotation marks omitted). <br><br> "The elements of common-law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Allstate New Jersey Ins. Co. v. Lajara,* No. 073511, 2015 WL 4276162, at *8 (N.J. July 16, 2015) (citing *Banco Popular N. Am. v. Gandi,* A.2d 253, 260 (N. J. 2005)). |
|---|---|
| Materiality | Fraud requires a material misrepresentation. *Allstate New Jersey Ins. Co. v. Lajara,* No. 073511, 2015 WL 4276162, at *8 (N.J. July 16, 2015). "Fraud, to be actionable at law or in equity, must be of a material nature and must be injurious." *Springfield Twp. v. Bensley,* 88 A.2d 271, 277 (N.J. Super. Ct. Ch. Div. 1952). |
| Reliance | Plaintiff's reliance on a misrepresentation must be reasonable: "[w]ithout reasonable reliance on a material misrepresentation, an action in fraud must fail." *Triffin v. Automatic Data Processing, Inc.,* 926 A.2d 362, 369 (N.J. Super. Ct. App. Div. 2007). |
| Scienter | The plaintiff is required to establish the defendant's scienter—"that is, defendant's knowledge of the falsity and intent to obtain an undue advantage." *Desi, poLink Court Reporting & Litig. Support Servs. v. Rochman,* 64 A.3d 579, 586 (App. Div. 2013). |
| Proof | "Fraud is not presumed; it must be proven through clear and convincing evidence." *Stoecker v. Echevarria,* 975 A.2d 975, 987 (N.J. Super. Ct. App. Div. 2009) (citing *Stochastic Decisions, Inc. v. DiDomenico,* 565 A.2d 1133, 1137 (N.J. Super Ct. App. Div.1989)). |
| Statute of Limitations | There is a six-year statute of limitations for fraud in New Jersey. *D'Angelo v. Miller Yacht Sales*, 619 A.2d 689, 691 (N.J. Super. Ct. App. Div. 1993). |

App. 78

## NEW MEXICO

| | |
|---|---|
| **Elements** | New Mexico explicitly recognizes tort liability for a breach of fiduciary duty as well as general tort liability for aiding and abetting the commission of a tort. *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 947 P.2d 143, 147 (N.M. 1997). "New Mexico has adopted Restatement (Second) of Torts § 876, which recognizes the liability of third persons for the tort of another if the person knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Id.*<br><br>"In order to prevail on a fraud claim, a plaintiff must prove the existence of (1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." *Papatheofanis v. Allen*, 242 P.3d 358, 361 (N.M. Ct. App. 2010). |
| **Materiality** | "The Restatement explains that a fact is material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action or the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important." *Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 930 (N.M. Ct. App. 2003) (internal quotations omitted). |
| **Reliance** | A plaintiff must show that they detrimentally relied on the misrepresentation. *See Papatheofanis*, 242 P.3d at 361. |
| **Scienter** | A defendant must make have knowledge of the falsity of the representation or be reckless in making the representation, and have the intent to deceive and to induce reliance. *Papatheofanis*, 242 P.3d at 361. |
| **Proof** | "[T]he clear and convincing standard of proof is applicable to cases concerning undue influence . . . This standard requires the fact finder to reach an abiding conviction as to truth of facts found." *Montoya v. Torres*, 823 P.2d 905, 909 (N.M. Ct. App. 1991) (internal citations omitted). |
| **Statute of Limitations** | The limitations period for bringing a fraud action is four years. N.M. Stat. Ann. §37-1-4. |

31

## NEW YORK

| | |
|---|---|
| **Elements** | "A plaintiff alleging an aiding-and-abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance." *Oster v. Kirschner*, 77 A.D.3d 51, 55 (N.Y. App. Div. 2010); *see also* "*de Abreu v. Bank of Am. Corp.*, 812 F. Supp. 2d 316, 322 (S.D.N.Y. 2011). <br><br> In New York, fraud requires: "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Orlando v. Kukielka*, 40 A.D.3d 829, 830 (N.Y. App. Div. 2007) (internal citations omitted).  "Although fraud claims are subject to the heightened pleading requirements set forth in C.P.L.R. 3016 (b), the pleading requirements should not be narrowly construed, and a plaintiff alleging an aiding-and-abetting fraud claim may plead actual knowledge generally, particularly at the pre-discovery stage, so long as such intent may be inferred from the surrounding circumstances." *Holtkamp v. Parklex Associates*, 30 Misc. 3d 1226(A), 2011 WL 621122,  at *12 (N.Y. Sup. Ct. Feb. 22, 2011), *aff'd*, 94 A.D.3d 819 (2012). |
| **Materiality** | New York does not appear to explicitly state a definition of materiality in any case.  "Materiality is the key threshold question in these situations.  Without a material misrepresentation or misstatement, no action will lie for fraud or deceit." *Jonari Management Corp. v. St. Paul Fire & Marine Ins. Co.*, 87 A.D.2d 540, 541 (N.Y. App. Div. 1982).  "Ordinarily, the question of materiality of misrepresentation is a question of fact for the jury.  However, where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." *Tannenbaum v. Provident Mut. Life Ins.* Co., 53 A.D.2d 86, 98 (N.Y. App. Div. 1976). |
| **Reliance** | Justifiable reliance is required, and is generally a question of fact.  *See Braddock v. Braddock*, 60 A.D.3d 84, 88 (N.Y. App. Div. 2009).  Similarly, "whether a party could have ascertained the facts with reasonable diligence so as to negate justifiable reliance is a factual question." *Jablonski v. Rapalje*, 14 A.D.3d 484, 487 (N.Y. App. Div. 2004) (quoting *Country World v. Imperial Frozen Foods Co.*, 186 A.D.2d 781, 782, (1992)). |
| **Scienter** | "Actual knowledge, as opposed to constructive knowledge, of the wrongful conduct is required to sustain a claim for aiding and abetting liability." *Duran v. Bautista*, No. 654261/2012, 2015 WL 1567020 at *17-18 (N.Y. App. Div. Apr. 7, 2015).   "[I]n order to plead fraud, a plaintiff must allege a present intent to deceive, and that a mere misrepresentation of an intention to perform under the contract is insufficient to allege fraud." *B & F Prod. Dev., Inc. v. Fasst Prods. LLC*, No. 13303/08, 2009 WL 81145, at *4 (N.Y. Sup. Ct. Jan. 13, 2009). |
| **Proof** | "[F]raud must be made out by 'satisfactory' or 'clear and convincing' evidence." *Hector M. v. Commissioner of Social Services*, 102 Misc. 2d 676, 688 (N.Y. Fam. Ct. 1980) (citing *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 10 (1971); *Maryanne McKeown (Frederick) v Frederick*, 39 Misc. 3d 1241 (A), 2013 WL 3068697,  at *4 (N.Y. Sup. Ct. 2013) ("The elements of fraud are narrowly defined, requiring proof by clear and convincing evidence."). |
| **Statute of Limitations** | The limitations period is six years from the date the cause of action accrued, or two years from the time the plaintiff discovers the fraud or could with reasonable diligence have discovered it. NY CLS CPLR § 213(8). |

32

## NORTH CAROLINA

| Elements | North Carolina does not appear to recognize a cause of action for aiding and abetting fraud, as it could be redundant with a fraud claim. *See Sompo Japan Ins. Inc. v. Deloitte & Touche, LLP*, No. 03 CVS 5547, 2005 WL 1412741, at *1 (N.C. Super. June 10, 2005). North Carolina courts have also questioned whether aiding and abetting other torts are recognized claims. *See Bottom v. Bailey*, 767 S.E.2d 883, 889 (N.C. Ct. App. 2014).<br><br>The elements of a fraud claim are "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.*" Forbis v. Neal*, 649 S.E.2d 382, 387 (N. C. 2007). |
|---|---|
| **Materiality** | "A misrepresentation or omission is 'material' if, had it been known to the party, it would have influenced the party's judgment or decision to act." *Latta v. Rainey*, , 689 S.E.2d 898, 909 (N.C. Ct. App. 2010) (internal citations omitted). "Materiality is generally a question of fact for the jury." *Id.* |
| **Reliance** | Fraud requires reasonable or justifiable reliance. *Cobb v. Pennsylvania Life Ins. Co.*, 715 S.E.2d 541, 549-50 (N.C. Ct. App. 2011); *Pleasant Valley Promenade v. Lechmere, Inc.*, 464 S.E.2d 47, 57 (N.C. Ct. App. 1995). "Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate." *Cobb*, 715 S.E.2d at 549. "Actual reliance is demonstrated by evidence plaintiff acted or refrained from acting in a certain manner due to defendant's representations." *Pleasant Valley Promenade*, 464 S.E.2d at 57. "The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007). |
| **Scienter** | "In the context of actual fraud, the required scienter is not present without both knowledge and an intent to deceive, manipulate, or defraud." *Latta*, 689 S.E.2d at 909 (internal quotation marks and citations omitted). "Fraudulent intent usually is not shown by direct evidence but generally is proven by circumstances. Oftentimes the intent can be shown by presenting evidence of some motive on the part of the perpetrator. Whether the defendant acts with the requisite scienter for fraud is generally a question of fact for the jury." *Id.* |
| **Proof** | "While no aggravating factor is necessary beyond the fraud alleged in the complaint, it still is required for punitive damages that the fraud be proven by clear and convincing evidence. Therefore, it is possible for a jury to find someone liable for fraud by preponderance of the evidence, but not find an aggravating factor of fraud by clear and convincing evidence." *Hudgins v. Wagoner*, 694 S.E.2d 436, 446, n.8 (N.C. Ct. App. 2010) (internal citation omitted). |
| **Statute of Limitations** | The limitations period for fraud is three years after discovery. N.C. Gen. Stat. § 1-52. |

33

## NORTH DAKOTA

| | |
|---|---|
| **Elements** | As a preliminary matter, it is unclear whether North Dakota recognizes the cause of action of aiding and abetting fraud, as there is no case law dealing specifically with aiding and abetting a tort in North Dakota.  *See Ward v. Bullis*, 748 N.W.2d 397, 407 (N.D. 2008).<br><br>"A tort action for fraud requires [1] a contract between the parties; [2] a misrepresentation of facts, [3] suppression of facts, [4] misleading another, or promising without an intent to perform; [5] reliance on the false or misleading representation; and [6] proof of actual damages proximately caused by the misrepresentation or nondisclosure."  *Northstar Founders, LLC v. Hayden Capital USA*, LLC, 855 N.W.2d 614, 626 (N.D. 2014).  "Rule 9(b), N.D.R.Civ.P., requires a party alleging fraud to state the circumstances constituting fraud with particularity in the pleading." *Id.* |
| **Materiality** | "[P]roof of actual damage proximately caused by the misrepresentation or nondisclosure is an essential element of a tort action for fraud and deceit."  *Schneider v. Schaaf*, 603 N.W.2d 869, 874 (N.D. 1999). |
| **Reliance** | "A key element in proving fraud or deceit is reliance by the complaining party upon the false or misleading representations."  *Dvorak v. American Family Mut. Ins. Co.*, 508 N.W.2d 329, 332 (N.D. 1993); *see also Thimjon Farms P'ship v. First Int'l Bank & Trust*, 837 N.W.2d 327, 340 (N.D. 2013).  "In actions for fraud it is not required that a defendant's representations be the sole cause of the damage. If they are a substantial factor in inducing the plaintiff to act, even though he also relies in part upon the advice of others, reliance is sufficiently shown."  *Phoenix Assurance Co. v. Runck*, 366 N.W.2d 788, 792 (N.D. 1985). |
| **Scienter** | "The defendant must make the misrepresentation with the intent it will be repeated or communicated to another or must have information that gives him special reason to expect that it will be communicated to others, and will influence their conduct."  *Thimjon Farms P'ship v. First Int'l Bank & Trust*, 837 N.W.2d 327, 340 (N.D. 2013) (internal quotations omitted); *see also Ward Farms P'ship v. Enerbase Coop. Res.*, 863 N.W.2d 868, 872 (N.D. 2015).  "[B]ecause intent to defraud is generally not prone to direct proof, it may be inferred from the circumstances at the time of a transaction."  *Ward Farms*, 863 N.W.2d at 872. |
| **Proof** | "Fraud is never presumed; rather, it must be proven by clear and convincing evidence."  *Ward Farms*, 863 N.W.2d at 872. |
| **Statute of Limitations** | The limitations period is six years and accrues upon discovery by the aggrieved party. N.D. Cent. Code § 28-01-16(6). |

34

# OHIO

| Elements | "Ohio does not recognize a claim for aiding and abetting common-law fraud." *Fed. Mgt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842, 853 (Ohio Ct. App. 2000). Instead, Ohio courts interpret case law to mean "that one who engages in any way in fraudulent behavior is liable for fraud itself, not as an aider and abettor to fraud." *Id.*; *but see Woodworth v. Huntington Nat'l Bank*, No. 95APE02-219, 1995 WL 723664, at *4 (Ohio Ct. App. Dec. 7, 1995) ("[A]ssuming that the claim of aiding and abetting fraud is recognized in Ohio, a party will prevail on such a claim only if the defendant, with knowledge, actively assists in committing a fraud and shares in the benefits of such fraud."). Recently, in *DeVries Dairy, L.L.C. v. White Eagle Coop. Ass'n, Inc.*, the Supreme Court of Ohio held that Ohio law did not recognize a cause of action for tortious acts in concert under the Restatement. 974 N.E.2d 1194 (Ohio 2012) ("This court has never recognized a claim under 4 Restatement 2d of Torts, Section 876 (1979), and we decline to do so under the circumstances."). The Court of Appeals has since relied on *DeVries* to hold that aiding and abetting fraud is not a recognized claim in Ohio. *See Wells Fargo v. Smith*, No. 2012-04-006, 2013 WL 938069, at *7 (Ohio Ct. App. Mar. 11, 2013).<br><br>"Fraud consists of (a) a representation or, where there is a duty to disclose, a concealment of fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Wagner v. Ohio State Univ. Med. Ctr.*, 934 N.E.2d 394, 402 (Ohio Ct. App. 2010) (internal quotations omitted). |
|---|---|
| Materiality | A representation is material if it makes the plaintiffs more likely to engage in an action that causes them harm. *Burr v. Bd. of Cnty. Comm'rs of Stark Cnty.*, 491 N.E.2d 1101, 1105 (Ohio 1986). |
| Reliance | The question of justifiable reliance is one of fact, and the court must inquire into the relationship between the parties. *Mishler v. Hale*, 26 N.E.3d 1260, 1271 (Ohio 2014). "The court must consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances." *Id.* |
| Scienter | For a claim of fraudulent misrepresentation, the statements must be made with knowledge of their falsity and with intent of misleading the plaintiff. *Burr*, 491 N.E.2d at 1106. |
| Proof | "The elements of fraud must be established by clear and convincing evidence. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Rapport v. Kochovski*, 923 N.E.2d 1212, 1215 (Ohio Ct. App. 2009). "It is true that it is not necessary to separately allege all the six essential elements requisite to maintain an action for fraud if one or more of them may be reasonably inferred from the recital of the transaction as showing such essential ingredients." *Beamer v. Feick*, 177 N.E.2d 691, 693 (Ohio Ct. App. 1960) (internal citations omitted). |
| Statute of Limitations | There is a four year statute of limitations period for fraud claims. *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 713 (Ohio 1987) (citing R.C. 2305.09). |

## OKLAHOMA

| | |
|---|---|
| **Elements** | As a preliminary matter, it is unclear whether aiding and abetting fraud is recognized in Oklahoma, as there appear to be no discussion of civil aiding and abetting elements in Oklahoma common law.<br><br>"[T]he elements of fraud are: 1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his or her own detriment." *Estrada v. Kriz*, 345 P.3d 403, 408 (Okla. Civ. App. 2015) (quoting *Lopez v. Rollins*, 303 P.3d 911 (Okla. Civ. App. 2013)). The absence of any of these elements is fatal to the plaintiff's claim. *P.E.A.C.E. Cor. V. Okla. Nat'l Gas Co.*, 568 P.2d 1273, 1277 (Okla. 1977). Furthermore, because "the text of Federal Rule 9(b) is incorporated verbatim in the Oklahoma pleading code," each element of the claim must be pleaded with particularity. *Gay v. Akin*, 766 P.2d 985, 990 n.18 (Okla. 1988). "The specificity required is only so much as will apprise a defendant of the conduct complained of so the opposing party may prepare responsive pleadings and defenses." *Trimble*, 259 P.3d at 863 (citations omitted). All other elements (knowledge, for example) of the claim may be pled generally. *Id.* |
| **Materiality** | Misrepresentations are material if they are "so substantial and important as to significantly affect or influence the party to whom it is made." *Copeland v. Anderson*, 707 P.2d 560, 569 (Okla. Civ. App. 1985), *overruled on other grounds by Cooper v. Parker-Hughey*, 894 P.2d 1096 (Okla. 1995). In other words, the misrepresentation must "substantially affect[] the other person." *Patel v. OMH Med. Ctr., Inc.*, 987 P.2d 1185, 1199 (Okla. 1999). |
| **Reliance** | A plaintiff must prove detrimental "[r]eliance on an opponent's knowledgeable opinion." *Hall v. Edge*, 782 P.2d 122, 127 (Okla. 1989) (citation omitted). When considering detrimental reliance, courts generally look towards "words, deeds, conduct, representations or omissions." *Schulte v. Apache Corp.*, 949 P.2d 291, 299 (Okla. 1995). Additionally, any reliance on the defendant's misrepresentations must be "justifiable." *State ex rel. Sw. Bell Tel. Co. v. Brown*, 519 P.2d 491, 495 (Okla. 1974) (citations omitted). *Bankers Trust Co. v. Brown*, 107 P.3d 609, 614 (Okla. Civ. App. 2004) ("However, an action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence."). |
| **Scienter** | In Oklahoma, "[a]n essential element of actionable fraud is scienter or knowledge of its falsity or negligence in making it without a reasonable ground for believing it to be true." *Dawson v. Tindell*, 733 P.2d 407, 408 (Okla. 1987). In other words, "the statement must either be *known* to be false, or the speaker must make a positive assertion on a subject about which he or she knows *little or nothing*." *Eckert v. Flair Agency, Inc.*, 909 P.2d 1201, 1204 (Okla. Civ. App. 1995). Intending to induce another to enter into a contract satisfies this standard. *See generally Jeter v. De Graff*, 219 P. 345 (Okla. 1923). |
| **Proof** | "Fraud is never presumed; it must be proven by clear and convincing evidence." *Brown v. Founders Bank & Trust Co.*, 890 P.2d 855, 862 n.17 (Okla. 1994)); *see also Sellers v. Sellers*, 428 P.2d 230, 238 (Okla. 1967). However, fraud may be proved by circumstantial evidence. *Austin v. Wilkerson, Inc.*, 519 P.2d 899, 904 (Okla. 1974) (quoting *Griffith v. Scott*, 261 P. 371, 376 (Okla. 1927)). For example, "[p]rior similar dealings by the alleged wrongdoer may . . . be considered." *Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 177 (Okla. 1988). |
| **Statute of Limitations** | Civil actions based on fraud must be brought within two years. *Bennett v. McKibben*, 915 P.2d 400, 405 (Okla. Civ. App. 1996); Okla. Stat. Ann. tit. 12, § 95. |

## OREGON

| | |
|---|---|
| **Elements** | The Supreme Court of Oregon has recognized a person may be held liable for aiding and abetting a tort under the Restatement.  *See Granewich v. Harding*, 985 P.2d 788, 792-93 (Or. 1999).  The Court stated that "neither 'conspiracy' nor 'aid and assist' is a separate theory of recovery," but that "aiding and assisting in the commission of a tort [is] a way in which a person may become jointly liable for another's tortious conduct."  *Id.* at 792 (internal citations omitted).

"The essential elements of a common-law fraud claim are: [1] the defendant made a material misrepresentation that was false; [2] the defendant did so knowing that the representation was false; [3] the defendant intended the plaintiff to rely on the misrepresentation; [4] the plaintiff justifiably relied on the misrepresentation; and [5] the plaintiff was damaged as a result of that reliance."  *Strawn v. Farmers Ins. Co.*, 350 Ore. 336, 351-52 (2011).  Note that there does not appear to be special pleading standards for fraud in Oregon.  *See* O.R.C.P. 20. |
| **Materiality** | "A misrepresentation is material where it would be likely to affect the conduct of a reasonable man with reference to a transaction with another person."  *Millikin v. Green*, 530 P.2d 548, 550, (Or. 1978) (internal citation omitted); *see Myers v. MHI Invest., Inc.*, 606 P.2d 652, 656 (Or. Ct. App. 1980). |
| **Reliance** | To prevail on a fraud claim, "reliance in fact must be reasonable, but such reasonableness is measured in the totality of the parties' circumstances and conduct."  *Or. Pub. Emples. Ret. Bd. v. Simat, Helliesen & Eichner*, 83 P.3d 350, 361 (Or. Ct. App. 2009).  "[T]he matter seems to turn upon an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case."  *Cocchiara v. Lithia Motors, Inc.*, 353 Ore. 282, 298 (2013). |
| **Scienter** | "[T]he requisite intent to mislead in a fraud claim consists of a defendant misrepresenting a material fact for the purpose of misleading the other party."  *Schwarz v. Philip Morris Inc. (In re Estate of Schwarz)*, 206 Ore. App. 20, 41 (2006) (citing *U.S. National Bank v. Fought*, 630 P.2d 337 (Or. 1981).  "The intent which underlies an intentional misrepresentation is a more complex matter than . . . involves the intent that a representation shall be made, that it shall be directed to a particular person or class of persons, that it shall convey a certain meaning, that it shall be believed, and that it shall be acted upon in a certain way.  The intent which becomes important is the intent to deceive, to mislead, to convey a false impression."  *Riley Hill General Contractor, Inc. v. Tandy Corp.*, 303 Ore. 390, 406 (1987) (citing Prosser & Keeton, Torts 727, § 105 (5th ed. 1984)). |
| **Proof** | "We conclude that the standard of proof in a civil action for common law deceit must be clear and convincing." *Riley Hill General Contractor, Inc. v. Tandy Corp.*, 303 Ore. 390, 407 (1987).  "As our discussion above of the origins of the words points out, the evidence must be free from confusion, fully intelligible, distinct and establish to the jury that the defendant intended to deceive the plaintiff or did so with a reckless disregard for the truth. To be both clear and convincing, the truth of the facts asserted must be highly probable."  *Id.* |
| **Statute of Limitations** | The limitations period for fraud is two years, beginning when the fraud is discovered or by exercise of reasonable care should have been discovered. Or. Rev. Stat. § 12.110(1). |

37

## PENNSYLVANIA

| | |
|---|---|
| **Elements** | As a preliminary matter, it is not clear whether aiding and abetting fraud is a recognized claim in Pennsylvania. Pennsylvania courts have recognized aiding and abetting liability in other contexts, requiring that the defendant have "knowledge of the breach by the aider and abettor," and give "substantial assistance or encouragement . . . in effecting that breach." *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003) (adopting Section 876 of the Restatement (Second) of Torts). One federal court in Pennsylvania has stated that "[r]ecent developments indicate that Pennsylvania law now recognizes a civil claim for aiding and abetting fraud." *Panthera Rail Car LLC v. Kasgro Rail Corp.*, No. CIV.A. 13-679, 2013 WL 4500468, at *8 (W.D. Pa. Aug. 21, 2013). <br><br> "The elements of intentional misrepresentation are as follows: (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance." *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)). |
| **Materiality** | "A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation." *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1186 (Pa. Super. Ct. 2005); *see also GMH Assocs., Inc. v. Prudential Realty Grp.*, 752 A.2d 889, 902 (Pa. Super. Ct. 2000). However, "[o]ne deceived need not prove that fraudulent misrepresentation was the sole inducement to the investment of money, a material inducement is sufficient." *Eigen*, 874 A.2d at 1186. |
| **Reliance** | "The recipient of an allegedly fraudulent misrepresentation is under no duty to investigate its falsity in order to justifiably rely. Instead, reliance is justified unless the recipient knows the representation to be false or if its falsity is obvious." *Egan v. USI Mid-Atl., Inc.*, 92 A.3d 1, 16 (2014), *appeal granted*, 108 A.3d 30 (Pa. 2015). "Whether a plaintiff has sufficiently demonstrated justifiable reliance rests on the following principles: … The recipient of a fraudulent transaction can recover against its maker if, but only if, (a) he relies on the misrepresentation in acting or refraining from action, and (b) his reliance is justifiable. Whether the party claiming to have been defrauded relied upon a false representation is a question of fact. The rules for determining whether a person's reliance upon a fraudulent misrepresentation was justifiable have been set forth in the Restatement (Second) of Torts … [T]he recipient of a fraudulent misrepresentation … cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent if he had used his opportunity to make a cursory examination or investigation." *Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 840 (2005) (internal citations omitted). |
| **Scienter** | "[F]raud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture. That is, there must be a deliberate intent to deceive." *Rohm & Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1179 (Pa. 2001). "Where a plaintiff asserts fraudulent misrepresentation without showing that the defendant intended to mislead the plaintiff into reliance on the misrepresentation, the defendant is entitled to judgment as a matter of law." *Kostryckyj v. Pentron Lab. Technologies, LLC*, 52 A.3d 333, 339 (Pa. Super Ct.2012). |
| **Proof** | Fraud must be proven by clear and convincing evidence. *Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. Super. Ct. 2014); *see also Ellison v. Lopez*, 959 A.2d 395, 398 (Pa. Super. Ct. 2008) (internal citation omitted). "Concerning the proof of fraud, our cases have consistently enunciated a very high standard." *Kostryckyj v. Pentron Lab. Technologies, LLC*, 52 A.3d 333, 338 (Pa. Super. Ct. 2012) (citing cases using "clear, precise and convincing" and "clear, precise and indubitable" and "clear and satisfactory" standards). |
| **Statute of Limitations** | The statute of limitations for fraud is two years. 42 Pa. Cons. Stat. Ann. § 5524. |

38

App. 86

**RHODE ISLAND**

| Elements | "An individual will be held liable for harm resulting to a third person from the tortious conduct of another if he or she knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself."  *Curtin v. Lataille*, 527 A.2d 1130, 1132 (R.I. 1987); *see also Groff v. Maurice*, No.  86-3808, 1993 WL 853801, at *3 (R.I. Super. Apr. 7, 1993). <br><br> "To establish a prima facie fraud claim, the plaintiff must prove that the defendant made a false representation intending thereby to induce plaintiff to rely thereon and that the plaintiff justifiably relied thereon to his or her damage."  *Parker v. Byrne*, 996 A.2d 627, 634 (R.I. 2010). |
|---|---|
| Materiality | "A misrepresentation becomes material when it is likely to affect the conduct of a reasonable person with reference to a transaction with another person."  *Dudzik v. Leesona Corp.*, 473 A.2d 762, 766-67 (R.I. 1984). |
| Reliance | "In order for fraudulent misrepresentation or deceit to be found, the complaining party must show not only that the defendant had an intention to deceive, but the complainant also must present sufficient proof that the party detrimentally relied upon the fraudulent representation." *Asermely v. Allstate Ins. Co.*, 728 A.2d 461, 464 (R.I. 1999). |
| Scienter | Knowledge of the statement's falsity satisfies the scienter requirement of fraud claims.  *Women's Dev. Corp.*, 764 A.2d 151,  161 (R.I. 2001).  Moreover, intent to induce reliance must be alleged. *Id.* |
| Proof | "[F]raud in a civil suit need only be proven by a fair preponderance of the evidence." *Ostalkiewicz v. Guardian Alarm, Div. of Colbert's Sec. Servs.*, Inc., 520 A.2d 563, 569 (R.I. 1987). |
| Statute of Limitations | The limitations period is ten years.  R.I. Gen. Laws § 9-1-13(a). |

39

## SOUTH CAROLINA

| Elements | As a preliminary matter, it is not clear whether South Carolina recognizes aiding and abetting common law fraud as a cause of action.  However, in the context of aiding and abetting tort liability generally, South Carolina has recognized claims, and required that the plaintiff prove that the defendant knowingly participated in the breach.  *See Gordon v. Busbee*, 723 S.E.2d 822, 830 (S.C. Ct. App. 2011).<br><br>"To prevail on a cause of action for fraud, a Plaintiff must prove by clear, cogent and convincing evidence the following elements: (1) a representation;  (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury."  *Moseley v. All Things Possible, Inc.*, 694 S.E.2d 43, 45 (S.C. Ct. App. 2010). |
|---|---|
| Materiality | "[W]hether a misrepresentation . . . will give rise either to a cause of action for rescission or to one for fraud and deceit must depend upon the materiality of the representation in the circumstances of the particular case."  *Finley v. Dalton*, 164 S.E.2d 763, 765 (S.C. 1968). |
| Reliance | "The right to rely must be determined in light of the representee's duty to use reasonable prudence and diligence under the circumstances."  *Florentine Corp. v. Peda I, Inc.*, 339 S.E.2d 112, 114 (S.C. 1985). |
| Scienter | For a fraud claim, the defendant must have made the representation with knowledge of its falsity or with reckless disregard for its truth, and with the intent that the representation be acted upon.  *See Moseley*, 694 S.E.2d at 45. |
| Proof | "To prevail on a cause of action for fraud, a Plaintiff must prove [the elements] by clear, cogent and convincing evidence."  *Moseley*, 694 S.E.2d at 45. |
| Statute of Limitations | The limitations period in South Carolina is three years.  S.C. Code Ann. § 15-3-530(7). |

40

SOUTH DAKOTA

| Elements | In *Wildeboer v. S. Dakota Junior Chamber of Commerce, Inc*., 561 N.W.2d 666, 674 n. 10 (S.D. 1997), the South Dakota Supreme Court noted that tort law recognizes joint tortfeasor liability for one who gives substantial assistance or encouragement to another who he knows intends to commit a tort.  The South Dakota Supreme Court stated that it often consults and utilizes the Restatement, which has aiding and abetting tort liability, but does not firmly adopt the cause of action.  *Id.*  And in the context of aiding and abetting a breach of fiduciary duty, a plaintiff must demonstrate (1) substantial assistance and (2) knowledge.  *See Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 774 (S.D. 2002).<br><br>A common law fraud claim requires that "a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with the intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage."  *Delka v. Cont'l Cas. Co.*, 748 N.W.2d 140, 152 (S.D. 2008). |
|---|---|
| Materiality | To be actionable, "fraud must be based upon the misrepresentation of material fact."  *Cleveland v. BDL Enterprises, Inc.*, 663 N.W.2d 212, 219 (S.D. 2003). |
| Reliance | The plaintiff must demonstrate that he/she acted in reliance on the  untrue statement.  *N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Servs., Inc.*, 751 N.W.2d 710, 714 (S.D. 2008). "For a theory based upon fraud to succeed, it is not enough that one party intend to defraud another.  It is also necessary that the fraudulent behavior induced the other party to act to its detriment." *Fenske Media Corp. v. Banta Corp.*,  676 N.W.2d 390, 394 (S.D. 2004) (internal citations omitted).  The inducement must be "such that a person of ordinary business intelligence would be entitled to rely on it."  *Sperry Corp., Sperry New Holland Div. v. Schaeffer*, 394 N.W.2d 727, 730 (S.D. 1986). |
| Scienter | For intentional misrepresentation, the statement must have been made with knowledge of falsity or reckless disregard and with intent to induce reliance.  *Delka*, 748 N.W.2d at 151-52. |
| Proof | It is the plaintiff's burden to prove each element of a fraud claim by a preponderance of the evidence.  *Sejnoha v. City of Yankton*, 622 N.W.2d 735, 739 (S.D. 2001).  This requires pleading particular facts and alleging the essential elements of actionable fraud.  *N. Am. Truck & Trailer, Inc.*, 751 N.W.2d at 713. |
| Statute of Limitations | The statute of limitations is six years after discovery or actual or constructive notice. S.D. Codified Laws §§15-2-3, 13; *see also Bruske v. Hille*, 567 N.W.2d 872, 875 (S.D. 1997). |

41

**TENNESSEE**

| | |
|---|---|
| **Elements** | "Tennessee has adopted the Restatement of Torts § 876(b) theory of aiding and abetting, under which the plaintiff must show that 'the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts.'" *Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*, 21 F. Supp. 2d 785, 795 (W.D. Tenn. 1998) (quoting *Cecil v. Hardin*, 575 S.W.2d 268, 272 (Tenn. 1978)). <br><br> There are six elements of intentional misrepresentation: "(1) that [defendant] made a representation of an existing or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that [defendant] made the representation recklessly, with knowledge that it was false, or without belief that the representation was true; (5) that [plaintiff] reasonably relied on the representation; and (6) that [plaintiff was] damaged by relying on the representation." *Davis v. McGuigan*, 325 S.W.3d 149, 154 (Tenn. 2010). |
| **Materiality** | "Quoting the Restatement (Second) of Torts Section 538, we have opined that a fact is material if: (a) a reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his or her choice of action, although a reasonable person would not so regard it." *PNC Multifamily*, 387 S.W.3d at 550. |
| **Reliance** | Fraud requires reasonable or justifiable reliance. *See Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000); *see also Davis*, 325 S.W.3d at 154. "[A] plaintiff's damages must have been caused by his reasonable reliance on the nondisclosure, i.e., the plaintiff was not aware of the material fact and would have acted differently if the plaintiff knew of the concealed or suppressed fact." *PNC Multifamily Capital*, 387 S.W.3d at 551. "Whether a person's reliance on a representation is reasonable generally is a question of fact requiring the consideration of a number of factors. The factors include the plaintiff's sophistication and expertise in the subject matter of the representation, the type of relationship—fiduciary or otherwise—between the parties, the availability of relevant information about the representation, any concealment of the misrepresentation, any opportunity to discover the misrepresentation, which party initiated the transaction, and the specificity of the misrepresentation." *Davis*, 325 S.W.3d at 158 (internal citations omitted). |
| **Scienter** | For intentional misrepresentation, the statement must have been made with knowledge of falsity or recklessness or without belief that it was true. *Davis*, 325 S.W.3d at 154. "Fraud involves a question of fact, and the facts must show an intent to deceive on a material matter." *Wilder v. Tennessee Farmers Mut. Ins. Co.*, 912 S.W.2d 722, 726 (Tenn. Ct. App. 1995). |
| **Proof** | "[T]he clear and convincing standard of proof is appropriate to those cases where a party seeks the reform or rescission of a written instrument due to fraudulent inducement. But in all other cases involving claims of fraud, the standard of proof is preponderance of evidence." *Elchlepp v. Hatfield*, 294 S.W.3d 146, 150 (Tenn. Ct. App. 2008). |
| **Statute of Limitations** | Fraud has a three year statute of limitations. *Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977). |

**TEXAS**

| | |
|---|---|
| **Elements** | As a preliminary matter, this Court has acknowledged that it is "admittedly unclear" whether aiding and abetting fraud is cognizable under Texas law. *Troice v. Proskauer Rose LLP*, No. 3:09-cv-1600, 2015 WL 1219522, at \*10 (N.D. Tex. Mar. 4, 2015). Assuming the claim is cognizable, "aiding and abetting liability requires (1) the commission of a tort by a primary violator; (2) knowledge of this tort on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Id.* (citing *In re Ramirez*, 413 B.R. 621, 629 (Bankr. S.D. Tex. 2009)). <br><br> Under Texas law "[c]ommon law fraud consists of six elements: '(1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury.'" *O'Hare v. Graham*, 455 F. App'x 377, 379 (5th Cir. 2011) (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998)). |
| **Materiality** | To establish fraud, the alleged misrepresentation must "involve material facts, not mere opinion or puffery." *Matis v. Golden*, 228 S.W.3d 301, 307 (Tex. App.—Waco 2007, no pet.) (citing *Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 163 (Tex. 1995)). A misrepresentation is deemed material "if it is important to the party to whom it is made in making a decision regarding the particular transaction." *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 613 (Tex. App.—Waco 2000, pet. denied). Whether a statement is an actionable factual allegation or merely an opinion generally hinges on the circumstances in which a statement is made. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995). Relevant circumstances include "the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future." *Id.* |
| **Reliance** | A plaintiff must "demonstrate that he [or she] relied upon the fraudulent misrepresentation to his [or her] detriment." *Burleson*, 72 S.W.3d at 614. A plaintiff "must have both actually and *justifiably* relied on the alleged misrepresentation to suffer a compensable injury." *Miller Global Props., LLC v. Marriott Int'l, Inc.*, 418 S.W.3d 342, 347-48 (Tex. App.—Dallas 2013, pet. denied) (citation omitted) (emphasis in original). "Reliance is established by showing that the defendant's actions and representations induced the plaintiff to act or to refrain from action." *Matis*, 228 S.W.3d at 311. |
| **Scienter** | "Fraud claims require scienter." *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 659 (Tex. App.—Texarkana 2013, no pet.) (internal quotation marks omitted). More specifically, this requires a showing that either "the representation was made with knowledge of falsity, or the representation was recklessly made without any knowledge of the truth and as a positive assertion." *Forgetaboutit, Inc. v. Warner*, No. 09-04-503 CV, 2005 WL 3219578, at \*2 (Tex. App.—Beaumont Dec. 1, 2005, no pet.). "[T]he speaker must have known he did not have sufficient information or basis to make the statement, but made it anyway as a positive assertion and with the intent it be relied upon." *Id.* (citations omitted). |
| **Proof** | Plaintiffs seeking exemplary damages must "establish the elements of fraud by clear and convincing evidence." *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 239 (Tex. App.—El Paso 2012, pet. denied) (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(1)). In other words, plaintiffs must provide "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.001(2)). Because "[f]raud is usually not discernible by direct evidence," it may also be proven by circumstantial evidence. *Cotton v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 707 (Tex. App.—Fort Worth 2006, pet. denied) (citation omitted). |
| **Statute of Limitations** | "Texas law prescribes a four-year statute of limitations for fraud actions, including claims for fraudulent concealment." *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "A cause of action for fraud accrues on the date that the defendant makes the allegedly false representations." *Id.* |

43

# UTAH

| | |
|---|---|
| **Elements** | A review of case law do not conclusively establish whether aiding and abetting fraud is a recognized claim under Utah law. Although Utah appears to recognize other aiding and abetting claims, *see Mower v. Simpson*, 278 P.3d 1076, 1087 (Utah Ct. App. 2012), one Utah appellate court has declined to address whether aiding and abetting fraud is a recognized claim, *see Coroles v. Sabey*, 79 P.3d 974, 984 n. 20 (Utah Ct. App. 2003) (noting that "even if it does exist, Plaintiffs have not adequately pleaded" aiding and abetting fraud). |
| | In Utah, fraud requires: "(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby inducted to act (9) to that party's injury and damage." *Armed Forces Ins. Exchange v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (internal quotation marks omitted). A plaintiff must plead the elements "with sufficient particularity to show what facts are claimed to constitute such charges." *Williams v. State Farm Ins. Co.*, 656 P.2d 966, 971 (Utah 1982). |
| **Materiality** | A plaintiff must demonstrate "materiality" to succeed on a fraud claim. *See Mugleston v. Dep't of Workforce, Workforce Appeals Bd.*, No. 20090186-CA, 2009 WL 1567737, at *1 (Utah Ct. App. June 4, 2009). The Utah Supreme Court has stated that "[t]o be material, the information must be 'important.'" *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 289 (Utah 2006). "Importance, in turn, can be gauged by the degree to which the information could be expected to influence the judgment of a person buying property or assenting to a particular purchase price." *Id*; *see also Demarco v. Lapay*, No. 2:09-cv-190TS, 2012 WL 3597540, at *5 (D. Utah Aug. 20, 2012) (looking towards *Yazd* to define "materiality" under Utah law). |
| **Reliance** | A plaintiff must be able to "demonstrate that he or she, acting reasonably and in ignorance of the statement's falsity, did in fact rely upon the misrepresentation." *Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d 634, 638 (Utah Ct. App. 1987) (citation omitted). "Thus, 'not only must there be reliance, but the reliance must be justifiable under the circumstances.'" *Robinson v. Tripco Inv., Inc.*, 21 P.3d 219, 224 (Utah Ct. App. 2000) (citing *Conder*, 739 P.2d at 638). When determining whether the Plaintiff's reliance was reasonable, courts generally consider the facts and circumstances of each case in their totality. *See id.* (citing *Conder*, 739 P.2d at 638). Plaintiffs "may justifiably rely on positive assertions of fact without independent investigation." *Conder*, 739 P.2d 638 (citation omitted). But when the facts "should make it apparent to [somebody of the plaintiff's] knowledge and intelligence, or [the plaintiff] has discovered something which should serve as a warning that he [or she] is being deceived," a plaintiff must make their own investigation. *Id.* (citations omitted). |
| **Scienter** | Scienter has been defined as "knowledge on the part of a person making representations, at the time they are made, that they are false." *Christensen v. Bd. of Review of Indus. Comm'n*, 579 P.2d 335, 338 (Utah 1978). "The false statement must have been made intentionally to deceive or with what is recognized as the legal equivalent to a deliberately fraudulent intent to deceive[.] Proof of a mere naked falsehood or misrepresentation is not enough, even though the complaining party relied thereon. The rule is also firmly established the existence of a fraudulent intent or an intent to deceive is an indispensable element." *Id.* (quoting *Cohen v. Metro. Life Ins. Co.*, 444 S.W.2d 498, 505 (Mo. Ct. App. 1969)). |
| **Proof** | Fraud "must be established by clear and convincing evidence." *Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 462 (Utah Ct. App. 1989). Fraud is generally "considered a question of fact, and 'may be inferred from the presence of certain indicia of fraud or badges of fraud.'" *Territorial Sav. & Loan Ass'n*, 781 P.2d at 462 (citations omitted). "Badges of fraud are said to be facts which throw suspicion on a transaction, and which call for an explanation." *Id.* (quoting *Mont. Nat'l Bank v. Michels*, 631 P.2d 1260, 1263 (Mont. 1981)). " |
| **Statute of Limitations** | There is a three year statute of limitations for fraud. *See Jensen v. IHC Hosps., Inc.*, 944 P.2d 327, 336 (Utah 1997). |

44

VERMONT

| Elements | "Aiding and abetting another in the commission of a tort . . . requires only that [a party] show: (1) the existence of a primary violation, (2) knowledge of that violation on the part of the aider and abettor, and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Montgomery v. Devoid*, 915 A.2d 270, 278 (Vt. 2006).<br><br>"The essential elements of a fraud claim are (1) intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party acts in reliance on that fact; and (5) is thereby harmed." *In re Estate of Alden v. Dee*, 35 A.3d 950, 960-61 (Vt. 2011) (citing *Lewis v. Cohen*, 603 A.2d 352, 354 (Vt. 1991)). "Fraudulent misrepresentation can be accomplished affirmatively by false statement or by the concealment of facts by one who has a duty to disclose those facts. The duty to disclose arises out of a special relationship of confidence or trust — such as the fiduciary relationship between trustee and beneficiary." *Id.* (internal citations omitted). "V.C.R.P. 9(b) [ ] requires that when fraud is alleged the circumstances constituting fraud . . . shall be stated with particularity. The rule requires that the facts and circumstances sufficient to satisfy all of the elements of fraud be specifically pled." *Silva v. Stevens*, 589 A.2d 852, 859 (Vt. 1991). |
|---|---|
| Materiality | "A central element of a fraud claim is that a misrepresentation be made as to a material fact, knowledge of which would be otherwise . . . unavailable to the purchasers in the exercise of their due diligence." *Lewis v. Cohen*, 603 A.2d 352, 354 (U.S. 1991). |
| Reliance | "Liability in fraud extends only to harm that is caused by the buyer's justifiable reliance upon the misrepresentation." *Sugarline Assocs. v. Alpen Assocs.*, 586 A.2d 1115, 1120 (Vt. 1990). Further, "a duty to investigate is triggered when [ ] the buyer is put on notice by the seller's declaration of ignorance of the material facts." *Id.* at 1121. "When the nature of a misrepresentation or fraudulent concealment itself led the plaintiff to forebear a full inquiry, such reliance will not bar recovery. When it is established that a plaintiff has been induced to act by fraudulent misrepresentations, it is no excuse for the defendant, nor does it lie in his mouth to say, that the plaintiff might, but for his own neglect, have discovered the wrong and prevented its accomplishment." *Sutfin v. Southworth*, 539 A.2d 986, 988(Vt. 1987). "[W]here it is clear from the full text of a representation or from facts about the relationship of the parties that reliance should only follow an independent inquiry, such an inquiry must be made." *Silva*, 589 A.2d at 859. |
| Scienter | "[If plaintiff misleads or misrepresents] with intent to deceive and overreach and to prevent investigation, he is guilty of fraud." *Cushman v. Kirby*, 536 A.2d 550, 552 (Vt. 1987). "Actual fraud is deceitful misrepresentation or concealment with evil intent." *Proctor Trust Co. v. Upper Valley Press*, 405 A.2d 1221. 1226 (Vt. 1979). |
| Proof | "[I]n all cases where fraud is alleged, it must be proved by clear and convincing evidence." *Bennington Hous. Auth. v. Bush*, 933 A.2d 207 (Vt. 2007). "[C]lear and convincing is [a] rigorous standard but does not require wholly uncontradicted or unimpeached evidence; nor is [the] reviewing court free to ignore trial court's findings, which must be upheld as long as they are not clearly erroneous, even when standard of proof is clear and convincing evidence." *Gavala v. Claassen*, 819 A.2d 760, 762 (Vt. 2003). |
| Statute of Limitations | The limitations period for fraud is six years. 12 Vt. Stat. § 511; *Estate of Alden v. Dee*, 35 A.3d 950, 956 (Vt. 2011). |

45

## VIRGINIA

| Elements | Virginia courts have not explicitly recognized the separate tort of aiding and abetting a tort.  "In *Halifax* the Court did not explicitly recognize a cause of action for aiding and abetting a breach of fiduciary duty, but merely adopted the trial court's reasoning and assumed *arguendo* for purposes of analysis that Virginia recognized such a cause of action.  The Court determined that if aider and abettor liability for a breach of fiduciary duty did exist in Virginia, the party asserting the cause of action would need to plead (1) actual knowledge of the underlying fiduciary duty and (2) actual knowledge of the breach of that fiduciary duty by the primary tortfeasor."  *Best Med. Int'l., Inc. v. Wittmer*, No. CL-2006-14367, 2007 WL 6013714, at *2 (Va. Cir. Ct. Aug. 8, 2007). <br><br> "An action for fraud requires a showing that there was a false representation of a material fact, made intentionally and knowingly with the intent to mislead, and relied upon by the party misled to his detriment.  Concealment of a material fact may constitute the element of misrepresentation." *Beck v. Smith*, 538 S.E.2d 312, 315 (Va. 2000) (internal citations omitted). |
|---|---|
| **Materiality** | "Under Virginia law, recovery for fraud requires proof that the fact misrepresented be material and substantially affect the interests of the plaintiff.  A fact is material if it influences a person to enter into a contract, or if it deceives him and induces him to act, or if without it the transaction would not have occurred." *Glaser v. Enzo Biochem, Inc.*, 126 Fed. Appx. 593, 600 (4th Cir. 2005). |
| **Reliance** | "[T]o establish fraud, it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation . . . Absent such reasonable or justifiable reliance, no fraud is established."  *Murayama 1997 Trust v. NISC Holdings, LLC*, 727 S.E.2d 80, 86 (Va. 2012) (internal citations omitted). |
| **Scienter** | The scienter required in a fraud action is that which occurs when a false representation of a material fact is made intentionally and knowingly, with the intent to mislead.  *See Beck v. Smith*, 538 S.E.2d 312, 315 (Va. 2000). |
| **Proof** | "Fraud, whether actual or constructive, must be proved by clear and convincing evidence." *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000). |
| **Statute of Limitations** | The limitations period for fraud is two years.  Va. Code Ann. § 8.01-243. |

46

## WASHINGTON

| Elements | "[U]nder some circumstances Washington recognizes a civil cause of action for aiding and abetting fraud." *Washington Const., Inc. v. Sterling Sav. Bank*, 2011 WL 4043579 *10, n. 8 (Wash. App. Sept. 13, 2011).  In such cases, treated as concerted action cases, the plaintiff must show (1) tacit agreement to commit a tortious act, (2) knowledge of the third party's tortious action; and (3) substantial assistance. *Martin v. Abbott Labs.*, 689 P.2d 368, 377, 378 (Wash. 1984); *Cain v. Dougherty*, 341 P.2d 879, 881 (Wash. 1959).  With respect to aiding and abetting liability generally, courts have recognized causes of action where: "[A] person who knowingly assists another in the commission of a tort, or who knowingly assists another in violating his fiduciary or trust obligation, is liable for losses proximately caused thereby.  A person is liable as an aider and abettor, under both civil and criminal law, if they knowingly assist in attempting to conceal a wrongful act, conceal evidence of a wrongful act, or conceal assets that were wrongfully taken." *Vanguard Int'l, Inc. v. Guangdong Fully, Ltd.*, 142 Wash. App. 1026 (2008) (internal citations and quotations omitted).<br><br>"To establish fraud, a litigant must show: (1) a representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of  its truth, (5) [the speaker's] intent that [the fact] should be acted upon by the person to whom it is made, (6) ignorance of [the fact's] falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth of the representation, (8) [the right of the person] to rely on it, and (9) [the person's] consequent damage." *Cedell v. Farmers Ins. Co. of Washington*, 237 P.3d 309, 314-15 (Wash. Ct.  App. 2010) (internal citation omitted). |
|---|---|
| Materiality | Materiality exists if the issue in question goes to the purpose of the bargain.  *Holland Furnace Co. v. Korth*, 262 P.2d 772, 776 (Wash. 1953). |
| Reliance | The plaintiff must demonstrate that he relied on the statement and that such reliance was reasonable.  *Stieneke v. Russi*, 190 P.3d 60, 70 (Wash. Ct. App. 2008).  "As a general rule, a party has no right to rely on an oral representation that contradicts unequivocal written evidence that demonstrates the falsity of the alleged representation."  *Cornerstone Equip. Leasing, Inc. v. MacLeod*, 247 P.3d 790, 794 (Wash. Ct. App. 2011). |
| Scienter | The plaintiff must demonstrate that the defendant "knowingly presented a false, material fact." *Arnett v. Mortgage Elec. Registration Sys., Inc.,* No. 14-CV-05298-BJR, 2014 WL 5111621, at *5 (W.D. Wash. Oct. 10, 2014). |
| Proof | "Each element of fraudulent concealment must be established by clear, cogent, and convincing evidence."  *Stieneke v. Russi*, 190 P.3d 60, 61 (Wash. Ct. App. 2008). |
| Statute of Limitations | The limitations period is three years after discovery.  Wash. Rev. Code Ann. § 4.16.080. |

47

## WEST VIRGINIA

| Elements | "Comment d. to Section 876(b) of the Restatement identifies six criteria to use when determining whether a person shall be liable for assisting or encouraging a tort . . . (a) the nature of the act encouraged; (b) the amount of assistance given by the defendant; (c) the defendant's presence or absence at the time of the tort; (d) the defendant's relation to the other tortfeasor; (e) the defendant's state of mind; and (f) the foreseeability of the harm that occurred.  We adopt these factors, but conclude that they are not necessarily exhaustive."  *Courtney v. Courtney*, 413 S.E.2d 418, 426 (W. Va. 1991).  "The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it."  *Trafalgar House Constr., Inc. v. ZMM, Inc.*, 567 S.E.2d 294, 300 (W.Va. 2002). |
|---|---|
| Materiality | "[I]n order to constitute fraud any misrepresentation must be material and not of a minor nature."  *Reece v. Yeager Ford Sales, Inc.*, 184 S.E.2d 722, 725 (W. Va. 1971). |
| Reliance | Plaintiff relied upon it and was justified under the circumstances in relying upon it, and was damaged because he relied upon it.  *Trafalgar House Constr.*, 567 S.E.2d at 300. |
| Scienter | "[A] false representation may be made scienter, in contemplation of law, in any of the following ways: (1) With actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; or (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity."  *State v. Berkeley*, 23 S.E. 608, 609 (W. Va. 1985). |
| Proof | The elements of fraud claim must be proved by clear and convincing evidence. *Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc.*, 425 S.E.2d 144, 148 (W. Va. 1992). |
| Statute of Limitations | The limitations period for fraud is two years.  *Trafalgar House Constr.*, 567 S.E.2d at 299. |

48

WISCONSIN

| Elements | "In Wisconsin, a person may be held civilly liable for aiding and abetting if he or she: (1) undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) consciously desires or intends that his or her conduct will yield such assistance." *Edwardson v. Am. Family Mut. Ins. Co.*, 589 N.W.2d 436, 440 (Wis. Ct. App. 1998).<br><br>"At common law, a plaintiff  alleging fraud must prove: 1) a representation of material fact; 2) the representation's falsity; 3) the intent to deceive (or reckless disregard for truth or falsity); 4) intent to defraud or to induce action; 5) justifiable reliance by the deceived party."  *State v. Abbott Labs.*, 816 N.W.2d 145, 161; *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 211 (Wis. 2005). |
|---|---|
| Materiality | The representation must concern a materiality fact.  *Abbott Labs.*, 816 N.W.2d at 161.  "A fact is material if a reasonable purchaser would attach importance to its existence or nonexistence in determining the choice of action in the transaction in question; or if the vendor knows or has reason to know that the purchaser regards or is likely to regard the matter as important in determining the choice of action, although a reasonable purchaser would not so regard it."  *Ollerman v. O'Rourke Co.*, 288 N.W.2d 95, 107 (Wis. 1980).  "A representation is material if a reasonable person would attach importance to the existence of the matter or if the maker knows or has reason to know that the recipient regards it as important."  *Radford v. J.J.B. Enterprises, Ltd.,* 472 N.W.2d 790, 794 (Wis. Ct. App. 1991). |
| Reliance | Justifiable reliance is required.  *Forst v. Smithkline Beecham Corp.*, 602 F. Supp. 2d 960, 971 (E.D. Wis. 2009).  "[T]he law in Wisconsin is that a plaintiff is justified in relying on a defendant's representations unless their falsity is obvious."  *Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 999 (E.D. Wis. 2000) (citing *Household Fin. Corp. v. Christian*, 98 N.W.2d 390 (1959). |
| Scienter | For intentional misrepresentation, "[1] the defendant must have made the misrepresentation with knowledge that it was false or recklessly without caring whether it was true or false; and [2] the defendant must have made the misrepresentation with intent to deceive and to induce the plaintiff to act on it to his detriment or damage."  *Tietsworth v. Harley- Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004).  "Intentional misrepresentation has two elements beyond those common to all forms of misrepresentation.  First, the defendant must either have known the representation was untrue or have made the representation recklessly without caring whether it was true or false; second, the defendant must have made the representation with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage.  These elements (and the three common elements) must be proven by the 'middle' burden of proof, that is, with evidence that clear, satisfactory, and convincing."  *Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 1000 (E.D. Wis. 2000) (citing *Whipp*, 43 Wis.2d at 168, 168 N.W.2d 201; Wis. JI—Civil 205 (1998), 2401 cmt. at 5 (1997)). |
| Proof | Each element of fraud must be proven by clear, satisfactory, and convincing evidence.  *Prod. Specialties Grp., Inc. v. Minsor Sys., Inc.*, 513 F.3d 695, 699 (7th Cir. 2008); *Digicorp, Inc. v. Ameritech Corp.*, 662 N.W.2d 652, 663 (Wis. 2003). |
| Statute of Limitations | The statute of limitations for an action based on fraud is six years.  Wis. Stat. §893.93(1)(b); *Forst*, 602 F. Supp. 2d at 964; *John Doe 1 v. Archdiocese of Milwaukee*, 734 N.W.2d 827, 839 (Wis. 2007).  "Under Wisconsin law, a cause of action accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." *Forst,* 602 F. Supp. 2d at 964 (internal quotation marks omitted). |

**WYOMING**

| Elements | As a preliminary matter, a review of case law indicates that Wyoming does not recognize aiding and abetting liability for torts.<br><br>"The elements of intentional misrepresentation or fraud are as follows: (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages. In order to prove intentional misrepresentation, the plaintiff must show that the misrepresentation was made intentionally, with knowledge of its falsity, or that the maker of the misrepresentation was at least aware that he did not have a basis for making the statement." *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 228 P.3d 40, 48-49 (Wyo. 2010) (internal citations omitted). |
|---|---|
| Materiality | "One of the elements necessary to establish actionable fraud is that the fact which is represented or concealed have materiality." *Reynolds v. Tice*, 595 P.2d 1318, 1321-22 (Wyo. 1979). |
| Reliance | "[T]o prove a fraud claim the injured party must establish by clear and convincing evidence that it relied upon the false representation. To that end, the injured party must show that the false representation pertained to a material fact." *Universal Drilling Co., LLC v. R&R Rig Serv., LLC*, 271 P.3d 987, 998 (Wyo. 2012). |
| Scienter | "In order to prove intentional misrepresentation, the plaintiff must show that the misrepresentation was made intentionally, with knowledge of its falsity, or that the maker of the misrepresentation was at least aware that he did not have a basis for making the statement." *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 228 P.3d 40, 48-49 (Wyo. 2010). |
| Proof | "Fraud must be proven by clear and convincing evidence." *Excel Constr.*, 228 P.3d at 49. |
| Statute of Limitations | The statute of limitations for fraud is four years. Wyo. Stat. Ann. § 1-3- 105(a)(iv). |

50

# EXHIBIT 10

## DEFENDANTS' ANALYSIS OF STATE LAW VARIATIONS

### AIDING AND ABETTING CONVERSION

#### ALABAMA

| | |
|---|---|
| **Elements** | As a preliminary matter, it is questionable whether Alabama recognizes claims for aiding and abetting common law torts. In *Continental Cas. Co. v. Compass Bank*, No. CIV.A. 04-0766-KD-C, 2006 WL 566900, at *11 (S.D. Ala. Mar. 6, 2006), a federal district court stated that "it does not appear that Alabama recognizes the claim of aiding and abetting common law torts," and that, "[w]hen aiding and abetting is discussed in Alabama cases it is almost exclusively in the context of a criminal case or in reference to a specific civil statutory provision." |
| | For a conversion claim to stand under Alabama law, "there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property." *Covington v. Exxon Co., U.S.A.*, 551 So. 2d 935, 938 (Ala. 1989) (citations omitted). "The gist of the action [of conversion] is the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession." *Ott v. Fox*, 362 So.2d 836, 839 (Ala. 1978) (citations omitted). |
| **Proof of Claim** | For a conversion claim, "[t]he intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods [of the plaintiff] which is in fact inconsistent with the plaintiff's rights." *Indus. Techs., Inc. v. Jacobs Bank*, 872 So. 2d 819, 826 (Ala. 2003) (internal quotation marks omitted). |
| | An action for the conversion of money generally will not lie unless the money at issue is "capable of identification." *Hensley v. Poole*, 910 So. 2d 96, 101 (Ala. 2005) (internal quotation marks omitted). The fact that an *amount* of money is identifiable is insufficient. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1304 (11th Cir. 2010) ("an action for the conversion of money requires the money itself, not just the amount of it, to be specific and capable of identification"). |
| | The Supreme Court of Alabama has held that "[a] certificate of deposit represents a contractual relationship between the issuer of the certificate and the purchaser of it" and that "failure of the issuer to make good on its contractual duty to pay is a breach of the contract," but is *not* conversion. *SouthTrust Bank v. Donely*, 925 So. 2d 934, 942 (Ala. 2005); *see also id.* ("Donely alleges that when she presented her CDs to SouthTrust for payment, SouthTrust refused to disburse the funds to her. Thus, Donely has alleged that SouthTrust has failed to pay her a debt, and the proper action for that claim is a breach-of-contract action, not a conversion action."). |
| **Statute of Limitations** | There is a six-year statute of limitations on actions for conversion of personal property. Ala. Code § 6-2-34(3). |
| | There is, however, a three-year statute of limitations for conversion of an instrument. Ala. Code § 7-3-118(g). |

ALASKA

| Elements | A review of the case law does not yield any analysis by Alaska courts of a cause of action for aiding and abetting conversion.  More generally, the Supreme Court of Alaska has indicated that "aiding and abetting liability occurs when the actor knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other."  *Beal v. McGuire*, 216 P.3d 1154, 1174 (Alaska 2009) (internal quotation marks omitted). "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.  To establish a claim for conversion, the plaintiff must prove (1) that she had a possessory interest in the property; (2) that the defendant interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiff's possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property."  *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000) (citations and internal quotation marks omitted). |
|---|---|
| Proof of Claim | For purposes of the conversion claim, "'an intentional act' is defined to encompass either an intent to interfere with property or an act done with knowledge on the part of the defendant 'that the act or omission would result in such interference.'  Furthermore, an act may be intentional even if the defendant mistakenly believed that he or she had a right to interfere with the property, or was unaware of the rights of the plaintiff in the property."  *In re Avery*, 461 B.R. 798, 819 (Bankr. D. Alaska 2011) (quoting *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1088 n.12 (Alaska 2002)) (internal quotation marks omitted). In Alaska, "a future possessory interest is sufficient for a plaintiff to maintain an action for conversion."  *McKibben v. Mohawk Oil Co.*, 667 P.2d 1223, 1229 (Alaska 1983), *overruled on other grounds by Wien Air Alaska v. Bubbel*, 723 P.2d 627 (Alaska 1986). Additionally, the Supreme Court of Alaska has recognized "an action for conversion where the allegedly converted property is money."  *Burseth v. Weyerhaeuser Mortgage Co.*, No. S-5075, 1993 WL 13563649, at *5 (Alaska Oct. 13, 1993) (citing *Vest v. First Nat'l Bank*, 659 P.2d 1233 (Alaska 1983)). |
| Statute of Limitations | There is a two-year statute of limitations for conversion.  Alaska Stat. Ann. § 09.10.070(3) ("taking, detaining, or injuring personal property, including an action for its specific recovery"); *see also Domke v. Alyeska Pipeline Serv. Co.*, 137 P.3d 295, 303 n.18 (Alaska 2006)  (noting that conversion claim would likely be governed by two-year statute of limitations). There is, however, a three-year statute of limitations on an action for conversion of an instrument.  Alaska Stat. Ann. § 45.03.118. |

2

## ARIZONA

| Elements | The claim of aiding and abetting conversion has been alleged in Arizona courts. *See, e.g., Fransen v. Bierman*, No. 1 CA-CV 11-0602, 2012 WL 4372498, at *1 (Ariz. Ct. App. Sept. 25, 2012) (finding no conversion). A review of the case law does not, however, yield substantive analysis by Arizona courts of aiding and abetting conversion.<br><br>Arizona courts do recognize claims for aiding and abetting a tort. Such a claim requires proof that "(1) the primary tortfeasor has committed a tort causing injury to the plaintiff; (2) the defendant knew the primary tortfeasor breached a duty; (3) the defendant substantially assisted or encouraged the primary tortfeasor in the breach; and (4) a causal relationship exists between the assistance or encouragement and [the primary tortfeasor's] breach." *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 988 (Ariz. Ct. App. 2008) (citing Restatement (Second) of Torts § 876 (1979)).<br><br>Under Arizona law, conversion is "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (quotation marks omitted). |
|---|---|
| **Proof of Claim** | "Because aiding and abetting is a theory of secondary liability, the party charged with the tort must have knowledge of the primary violation . . . ." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002) ("[A]iding and abetting liability is based on proof of scienter . . . the defendants must *know* that the conduct they are aiding and abetting is a tort") (emphasis in original) (citations and internal quotation marks omitted).<br><br>There is also a scienter requirement for the conversion claim. "Conversion [ ] requires conduct intended to affect the property of another. The intent required is an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (internal quotation marks omitted). "The intent required, however, is not necessarily a matter of conscious wrongdoing." *Sterling Boat Co. v. Ariz. Marine, Inc.*, 653 P.2d 703, 706 (Ariz. Ct. App. 1982).<br><br>"[M]oney can be the subject of conversion provided that it can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Autoville, Inc. v. Friedman*, 510 P.2d 400, 402 (Ariz. Ct. App. 1973); *accord M.A.C. Homes Const., L.L.C. v. Bank of Am., N.A.*, No. 1 CA-CV 10-0878, 2012 WL 640886, at *3 (Ariz. Ct. App. Feb. 28, 2012). |
| **Statute of Limitations** | There is a two-year statute of limitations for conversion. *Merrick v. Hurley*, No. 1 CA-CV 14-0259, 2015 WL 2384050, at *1 (Ariz. Ct. App. May 12, 2015) (applying Ariz. Rev. Stat. Ann. § 12-542(5)).<br><br>There is, however, a three-year statute of limitations on actions for conversion of an instrument. Ariz. Rev. Stat. Ann. § 47-3118(g). |

3

## ARKANSAS

| Elements | A review of the case law does not yield any analysis by Arkansas courts of a cause of action for aiding and abetting conversion. The Court of Appeals of Arkansas has cited the Restatement (Second) of Torts with approval as setting forth elements for aiding and abetting liability. *See Springdale Diagnostic Clinic v. Nw. Physicians, L.L.C.*, No. CA03-103, 2003 WL 22138591, at *4 (Ark. Ct. App. Sept. 17, 2003) ("'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . .'") (quoting Restatement (Second) of Torts § 876 (1979)).<br><br>"In order to establish liability for the tort of conversion, a plaintiff must prove [1] that the defendant wrongfully committed a distinct act of dominion over the property of another, [2] which is a denial of or is inconsistent with the owner's rights." *C.A.R. Transp. Brokerage Co. v. Seay*, 255 S.W.3d 445, 449 (Ark. 2007). |
|---|---|
| Proof of Claim | "Conversion can only result from conduct intended to affect property. The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights." *Grayson v. Bank of Little Rock*, 971 S.W.2d 788, 792 (Ark. 1998) (quotation marks omitted).<br><br>The Supreme Court of Arkansas has found that a bank may be liable for conversion for wrongfully refusing to pay a certificate of deposit at maturity. *See First Nat'l Bank of Brinkley v. Frey*, 668 S.W.2d 533 (Ark. 1984). |
| Statute of Limitations | There is a three-year statute of limitations for conversion. *Johnson v. Gilliland*, 896 S.W.2d 856, 858 (Ark. 1995) (applying Ark. Code Ann. § 16-56-105(6)).<br><br>There is also a three-year statute of limitations for conversion of an instrument. Ark. Code Ann. §4-3-118(g). |

4

## CALIFORNIA

| Elements | "California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort.  Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person [ ] knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act . . . ."  *Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 405 (Ct. App. 2005); *see also Fox v. Cal. Physicians' Serv.*, No. A122803, 2009 WL 1163880, at *5 (Cal. Ct. App. Apr. 30, 2009) (applying these elements to a claim of aiding and abetting conversion).<br><br>To prove a conversion claim, a plaintiff must show: "(1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages."  *Hartford Fin. Corp. v. Burns*, 158 Cal. Rptr. 169 (Ct. App. 1979) (internal quotation marks omitted). |
|---|---|
| Proof of Claim | "A civil cause of action for aiding and abetting necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act."  *Fox v. California Physicians' Serv.*, No. A122803, 2009 WL 1163880, at *4 (Cal. Ct. App. Apr. 30, 2009) (quotation marks omitted).<br><br>For a conversion claim to stand, a plaintiff must allege that he has ownership or right to possession of the property at the time of the conversion.  *Moore v. Regents of Univ. of Cal.*, 793 P.2d 479, 507 (Cal. 1990).  The defendant's exercise of dominion over the property "must be knowingly or intentionally done, but a *wrongful* intent is not necessary."  *Taylor v. Forte Hotels Int'l*, 1 Cal. Rptr. 2d 189, 192 (Ct. App. 1991), *as modified on denial of reh'g* (Nov. 20, 1991).<br><br>Money cannot be the subject of a conversion action, "*unless there is a specific, identifiable sum involved*."  *Sanowicz v. Bacal*, 184 Cal. Rptr. 3d 517, 529 (Ct. App. 2015) (quotation marks omitted).  To meet this standard, a plaintiff may show "actual possession by [defendant] of an amount of money [ ] of which is due [plaintiff] which [defendant] refused" to pay on plaintiff's demand.  *Id.* |
| Statute of Limitations | There is a three-year statute of limitations for conversion.  *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 49 Cal. Rptr. 3d 493, 499 (Ct. App. 2006), *as modified* (Oct. 30, 2006) (applying Cal. Civ. Proc. Code § 338(c)).<br><br>There is also a three-year statute of limitations for conversion of an instrument.  Cal. Com. Code § 3118(g). |

5

## COLORADO

| | |
|---|---|
| **Elements** | A review of the case law has not yielded substantive analysis by Colorado state courts of aiding and abetting conversion specifically.<br><br>Colorado courts have found that "[l]iability for aiding or abetting a tortious act will be found if the party whom the defendant aids performs a wrongful act that causes an injury, the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation."  *Holmes v. Young*, 885 P.2d 305, 308 (Colo. App. 1994) (addressing claim of aiding and abetting breach of fiduciary duty).<br><br>"Conversion is defined as any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another.  Although the act of conversion takes place at the time the converter takes dominion over the property, predicates to a successful claim for conversion are the owner's demand for the return of property, and the controlling party's refusal to return it."  *Glenn Arms Associates v. Century Mortg. & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984) (internal citations omitted). |
| **Proof of Claim** | For aiding and abetting liability, "[t]here is a divergence of authority [in Colorado] as to whether actual knowledge is required or whether constructive knowledge of the breach will suffice."  *Holmes v. Young*, 885 P.2d 305, 310 (Colo. App. 1994).<br><br>For a conversion claim, a plaintiff must show a defendant "intentionally exercised dominion or control over a chattel."  *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1199 (Colo. App. 2009) (quotation marks omitted).  However, conversion "does not require that a tortfeasor act with the specific intent to permanently deprive the owner of his or her property."  *Id.* (citing *Itin v. Ungar*, 17 P.3d 129, 136 n.10 (Colo. 2000)).<br><br>"An action will lie for the conversion of money where there is an obligation to return or otherwise particularly treat specific money."  *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1195 (Colo. App. 2008), *as modified on denial of reh'g* (Dec. 24, 2008).  One court has held that there was no factual basis for an investor's conversion claim because the investor "cannot establish that [defendant] was obligated to return the identical funds deposited."  *F.D.I.C. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1085 (D. Colo. 1997). |
| **Statute of Limitations** | Courts have applied a three-year statute of limitations for converting goods or chattels.  *See Curtis v. Counce*, 32 P.3d 585, 588 (Colo. App. 2001) (applying Colo. Rev. Stat. Ann. § 13-80-101(1)(h)); Colo. Rev. Stat. Ann. § 13-80-101(1)(h) ("The following civil actions . . . , regardless of the theory upon which suit is brought . . . shall be commenced within three years after the cause of action accrues, and not thereafter . . . [a]ll actions… for taking, detaining, or converting goods or chattels").  There is also some authority that a two-year statute of limitations applies.  *See McGee v. Hardina*, 140 P.3d 165, 167 (Colo. App. 2005) (applying Colo. Rev. Stat. Ann § 13-80-102(1)(h)); Colo. Rev. Stat. Ann. § 13-80-102(1)(a) ("The following civil actions, regardless of the theory upon which suit is brought . . . must be commenced within two years after the cause of action accrues, and not thereafter . . . (a) Tort actions").<br><br>There is a three-year statute of limitations for conversion of an instrument.  Colo. Rev. Stat. Ann. § 4-3-118. |

6

## CONNECTICUT

| Elements | In Connecticut, the elements of aiding and abetting a tort are: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Flannery v. Singer Asset Fin. Co., LLC*, 94 A.3d 553, 579 (Conn. 2014) (quotation marks omitted); *see also Tuckerbrook Alternative Invs., LP v. Alkek & Williams, LTD*, No. FSTX08CV116010952, 2015 WL 1588550, at *25 (Conn. Super. Ct. Mar. 16, 2015) ("In order for a party to be liable for aiding and abetting a conversion the plaintiff must show first that there was a conversion, and second that the party knowingly participated in the conversion and finally that the plaintiffs were damaged from the conversion and from the participation of the party."). |
|---|---|
| | "To establish a prima facie case of conversion, the plaintiff [has] to demonstrate that (1) the material at issue belonged to the plaintiff, (2) that [defendant] deprived the plaintiff of that material for an indefinite period of time, (3) that [defendant's] conduct was unauthorized and (4) that [defendant's] conduct harmed the plaintiff." *News Am. Mktg. In-Store, Inc. v. Marquis*, 862 A.2d 837, 848 (Conn. App. Ct. 2004), *aff'd*, 276 885 A.2d 758 (Conn. 2005). |
| **Proof of Claim** | A federal court in Connecticut has suggested that knowledge requirement of an aiding and abetting claim may be satisfied by reckless indifference. *See Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 121 (D. Conn. 2010) ("[W]hat must be proven for aider-abettor liability is that the individual gave substantial assistance to the tortfeasor in carrying out the tort with the knowledge—or reckless indifference to the possibility—that the assistance would aid in carrying out that tort."). |
| | "The intent required for a conversion is merely an intent to exercise dominion or control over an item even if one reasonably believes that the item is one's own." *Plikus v. Plikus*, 599 A.2d 392, 395 (Conn. App. Ct. 1991). Additionally, in an action for conversion, plaintiff must prove "an immediate right to possession at the time of conversion." *Devitt v. Manulik*, 410 A.2d 465, 467 (Conn. 1979); *accord. Tzovolos v. Wiseman*, 16 A.3d 819, 844 (Conn. Super. Ct. 2007), *aff'd*, 12 A.3d 563 (Conn. 2011). |
| | Under Connecticut law, in "order to establish a valid claim of conversion or statutory theft for money owed, a party must show ownership or the right to possess specific, identifiable money, rather than the right to the payment of money generally." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 934 A.2d 227, 236 (Conn. 2007). "Money is not specific or identifiable if it has been commingled with other funds and therefore is deemed a debt rather than money converted." *Media Horizons, Inc., LLC v. Kane*, No. FSTCV146022064S, 2014 WL 6419991, at *3 (Conn. Super. Ct. Oct. 6, 2014). |
| **Statute of Limitations** | There is a three-year statute of limitations for conversion. *See Cyrankowski v. Desrocher*, No. HHDCV106015281S, 2011 WL 3427219, at *2 (Conn. Super. Ct. July 7, 2011) (applying Conn. Gen. Stat. Ann. § 52-577). |
| | There is also a three-year statute of limitations for conversion of an instrument. Conn. Gen. Stat. Ann. § 42a-3-118(g). |

7

## DELAWARE

| Elements | A review of the case law has not yielded substantive analysis by Delaware state courts of aiding and abetting conversion.<br><br>"Delaware courts have set out the elements for aiding and abetting a tort generally as: (i) underlying tortious conduct, (ii) knowledge, and (iii) substantial assistance." *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, No. CV 7906-VCG, 2014 WL 6703980, at *23 (Del. Ch. Nov. 26, 2014), *judgment entered*, (Del. Ch. Dec. 8, 2014) (addressing aiding and abetting fraud claim).<br><br>"[A]ny act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it, is a conversion." *Drug, Inc. v. Hunt*, 168 A. 87, 93 (1933); *accord. Israel Disc. Bank of N.Y. v. First State Depository Co.*, LLC, No. CIV.A. 7237-VCP, 2013 WL 2326875, at *20 (Del. Ch. May 29, 2013), *judgment entered*, (Del. Ch. Aug. 14, 2013). |
|---|---|
| Proof of Claim | For an aiding and abetting claim, "the alleged aider and abettor must know of the wrongful act and know that their conduct has assisted or facilitated the wrongful act." *Microsoft Corp. v. Amphus, Inc.*, C.A. No. 8092-VCP, 2013 WL 5899003, at *14 (Del. Ch. Oct. 31, 2013) (addressing a claim of aiding and abetting breach of fiduciary duty).<br><br>"Conversion need not be accompanied by a subjectively wrongful intent to be actionable . . . . A person who mistakenly believes that his or her conduct is legal may nonetheless commit conversion." *Segovia v. Equities First Holdings*, LLC, No. CIV.A.06C09-149-JRS, 2008 WL 2251218, at *19 (Del. Super. May 30, 2008) (internal citations omitted).<br><br>"Under Delaware law, an action in conversion will not lie to enforce a claim for the payment of money." *AM Gen. Holdings LLC ex rel. Ilshar Capital LLC v. Renco Grp., Inc.*, No. CV 7639-VCN, 2013 WL 5863010, at *16 (Del. Ch. Oct. 31, 2013) (quotation marks omitted).  Courts have suggested that there may be a "limited exception" to this rule if there is an "obligation to return the identical money delivered by the plaintiff to the defendant."  *Id.* (noting that such an exception applies in other jurisdictions). |
| Statute of Limitations | There is a three-year statute of limitations for conversion.  *See Spano v. Morse*, No. CIV.A. 20121, 2003 WL 22389542, at *1 (Del. Ch. Oct. 8, 2003) (applying Del. Code Ann. tit. 10, § 8106(a)).<br><br>There is also a three-year statute of limitations for conversion of an instrument.  Del. Code Ann. tit. 6, § 3-118(g). |

8

## FLORIDA

| Elements | A review of Florida state case law has not yielded a substantive analysis of aiding and abetting conversion.  Federal courts applying Florida law require three elements to prove an aiding and abetting conversion claim:  "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."  *Richter v. Wells Fargo Bank NA*, 2015 WL 163086, at *5 (M.D. Fla. Jan. 13, 2015). "In order to establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so."  *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003) (citations omitted). |
|---|---|
| Proof of Claim | Aiding and abetting liability requires proof of actual knowledge.  *See Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) ("In actions involving the liability of a bank for aiding and abetting its customer's Ponzi scheme, the second element, knowledge, will only be satisfied if the bank had 'actual knowledge of [the] fraudulent activities.'"). "For money to be the object of conversion there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified."  *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 2008) (quotation marks omitted).  "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit."  *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. Dist. Ct. App. 2006) (quotation marks omitted); *see also Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, No. 6:12-CV-621-ORL-36, 2013 WL 406815, at *4 (M.D. Fla. Feb. 1, 2013) ("[W]hen a customer . . . deposits funds into his or her account, the bank takes title to the money and owes a debt to its customer corresponding to the amount of the deposit.  Because a depositor loses title to funds when they are deposited into an account, the funds become the property of the bank and the depositor no longer has sufficient interest in that property to assert a claim of conversion.") (citations omitted); *but see Perera v. Wachovia Bank, N.A.*, No. 09-23773CVLENARD, 2010 WL 1375635, at *5 (S.D. Fla. Mar. 15, 2010) *report and recommendation adopted*, No. 09-23773-CIV, 2010 WL 1408349 (S.D. Fla. Apr. 6, 2010) ("money in a bank account can properly be the subject of conversion when the account and amount are separate and ascertainable"). |
| Statute of Limitations | There is a four-year statute of limitations for conversion.  *See  Feingold v. Am. Rack & Stack, Inc.*, 734 So.2d 479, 480 (Fla. Dist. Ct. App. 1999) (applying Fla. Stat. Ann. § 95.11(3)(h)). There is not a separate statute of limitations for conversion of an instrument.  *See* Fla. Stat. Ann. § 673.1181 ("Chapter 95 governs when an action to enforce an obligation, duty, or right arising under this chapter must be commenced"). |

9

## GEORGIA

| Elements | A review of Georgia case law has not yielded a substantive analysis of aiding and abetting conversion.  One court suggests that the Restatement of Torts may be broadly applicable to aiding and abetting claims.  *See Madden v. Fulton Cnty.*, 115 S.E.2d 406, 409 (Ga. Ct. App. 1960) ("[W]e recognize the principle in the law of torts that persons acting in concert under ce[r]tain situations may be liable for the acts of others . . . For harm resulting to a third person from the tortious conduct of another, a person is liable if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself") (quoting Restatement (First) Torts § 876 (1939)).<br><br>"To establish a prima facie case for conversion, the plaintiff must show title to the property, possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit."  *Habel v. Tavormina*, 597 S.E.2d 645, 648 (Ga. Ct. App. 2004) (quotation marks omitted). |
|---|---|
| Proof of Claim | In establishing conversion,  "[i]t is immaterial that such dominion was exercised in good faith, for [w]hoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith."  *Trey Inman & Associates, P.C. v. Bank of Am., N.A.*, 702 S.E.2d 711, 716 (Ga. Ct. App. 2010) (citations and quotations omitted).<br><br>The general rule is that "money is not subject to an action for conversion."  *Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 770 (Ga. Ct. App. 2001).  "There exists an exception for the conversion of money; such money must comprise a specific, separate, identifiable fund to support an action for conversion."  *Id.*  "Conversion is also available for specific amounts of money placed on deposit with a bank."  *Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 583 S.E.2d 6, 9 (Ga. 2003). |
| Statute of Limitations | There is a four-year statute of limitations on "[a]ctions for the recovery of personal property, or for damages for the conversion or destruction of the same."  Ga. Code Ann. § 9-3-32.<br><br>There is, however, a three-year statute of limitations for conversion of an instrument.  Ga. Code Ann. § 11-3-118. |

10

# HAWAII

| Elements | A review of Hawaii case law has not yielded a substantive analysis of aiding and abetting conversion. Additionally, "Hawai'i courts have not explicitly articulated a test for civil aiding and abetting." *Stanton v. Bank of America, N.A.*, Civ. No. 09-00404 DAE-LEK, 2010 WL 4176375, at *14 (D. Haw. Oct. 19, 2010). A federal court has indicated that Hawaii would apply the standard set forth in the Restatement (Second) of Torts to aiding and abetting claims. *See id.* ("This Court . . . finds the weight of authority in support of a cause of action for civil aiding and abetting an intentional tort under Hawai'i law as defined by the Restatement (Second) of Torts § 876 subsections (b) and (c)."); *id.* ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself") (citing Restatement (Second) of Torts § 876 (1977)).

"Conversion encompasses the following acts: (1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand." *Freddy Nobriga Enterprises, Inc. v. State, Dept. of Hawaiian Home Lands*, 295 P.3d 993, 1000 (Haw. Ct. App. 2013). |
|---|---|
| Proof of Claim | In interpreting a claim for aiding and abetting an intentional tort, a federal court has predicted that the Supreme Court of Hawaii would likely require a plaintiff show a defendant had "actual knowledge of the specific primary wrong the defendant substantially assisted," *Stanton v. Bank of America, N.A.*, Civ. No. 09-00404 DAE-LEK, 2010 WL 4176375, at *16 (quotation marks omitted).

In order to establish liability for conversion, plaintiff must prove that defendant had "a constructive or actual intent to injure." *Brooks v. Dana Nance & Co.*, 153 P.3d 1091, 1100 (Haw. 2007) (quotation marks omitted); *accord. Newcomb v. Cambridge Home Loans, Inc.*, 861 F. Supp. 2d 1153, 1164 (D. Haw. 2012); *but see Freddy Nobriga Enterprises, Inc. v. State, Dept. of Hawaiian Home Lands*, 295 P.3d 993, 99–1000 (Haw. Ct. App. 2013) ("conversion does not require wrongful intent").

Hawaii courts have not resolved the question of whether (or when) money can be the subject of a conversion claim. *See generally Casados v. Drury*, No. CIV. 13-00283 LEK, 2014 WL 2968221, at *9 (D. Haw. June 30, 2014), *reconsideration denied in part*, No. CIV. 13-00283 LEK-RL, 2014 WL 3778557 (D. Haw. July 31, 2014) (noting that "a number of jurisdictions allow claims for conversion of money where there is a specific, identifiable sum involved"). |
| Statute of Limitations | Actions "for taking or detaining any goods or chattels…" are subject to a six-year statute of limitations. Haw. Rev. Stat. § 657-1(3); *see Breeden v. Acheson*, 257 P.3d 1220 (Haw. Ct. App. 2011) (applying six-year statute of limitations to a conversion claim).

There is, however, a three-year statute of limitations for conversion of an instrument. Haw. Rev. Stat. § 490:3-118(g). |

11

## IDAHO

| Elements | A review of Idaho case law has not yielded a substantive analysis of aiding and abetting conversion.  Idaho state courts do not seem to have engaged in substantive analysis of aider-abettor liability generally, but have outlined the following three elements of aiding and abetting liability in the context of aiding and abetting securities fraud: "(1) the existence of an independent primary wrong; (2) the actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong." *State, Dept. of Finance v. Tenney*, 858 P.2d 782, 788 (Idaho Ct. App. 1993).<br><br>Under Idaho law, "three elements . . . are required for a claim of conversion to be valid: (1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property." *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010). |
|---|---|
| **Proof of Claim** | "An actor may be liable [for conversion] where he has in fact exercised dominion or control, although he may be quite unaware of existence of rights with which he interferes, and a defendant's intention, good or bad faith, and his knowledge or mistake are immaterial." *Peasley Transfer & Storage Co. v. Smith*, 979 P.2d 605, 616 (Idaho 1999) (citing *Carver v. Ketchum*, 26 P.2d 139, 141 (Idaho 1933)).<br><br>"Idaho case law clearly states that '[n]ormally, conversion for misappropriation of money does not lie unless it can be described or identified as a specific chattel.'" *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) (quoting *Warm Springs Props., Inc. v. Andora Villa, Inc.*, 526 P.2d 1106, 1108 (Idaho 1974)). |
| **Statute of Limitations** | There is a three-year statute of limitations for conversion.  *See In re Squires*, No. 13-20716-TLM, 2014 WL 177416, at *4 (Bankr. D. Idaho Jan. 15, 2014) (applying Idaho Code Ann. § 5-218(3)).<br><br>There is also three-year statute of limitations on an action for conversion of an instrument.  Idaho Code Ann. § 28-3-118(7). |

12

## ILLINOIS

| Elements | In Illinois, a claim for aiding and abetting a tort requires proof of the following elements: (1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation. *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. Ct. App. 2003); *see also Fintec Grp., Inc. v. U.S. Bank, N.A.*, No. 13 C 8076, 2014 WL 4784141, at *7 (N.D. Ill. Sept. 25, 2014) (applying elements to claim of aiding and abetting conversion).<br><br>"To sufficiently allege conversion . . . a plaintiff must allege (1) the defendant's unauthorized and wrongful assumption of control, dominion or ownership over the plaintiff's personal property, (2) the plaintiff's right in the property, (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally and (4) the plaintiff's demand for possession of the property." *Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 668 N.E.2d 1129, 1133 (Ill. Ct. App. 1996). |
|---|---|
| **Proof of Claim** | "Relief in an action for conversion may be had without establishing malice, culpability or conscious wrongdoing." *Douglass v. Wones*, 458 N.E.2d 514, 519 (Ill Ct. App. 1983) "Thus, knowledge is not an element of the cause of action." *Id.*<br><br>"Money may be the subject of conversion, but it must be capable of being described as a specific chattel, although it is not necessary for purposes of identification that money should be specifically earmarked. However, an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money. *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985). The Appellate Court of Illinois has found that "the failure to segregate [moneys] does not make them unidentifiable and therefore, not subject to conversion." *Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 668 N.E.2d 1129, 1137 (Ill Ct. App. 1996). Instead, "money may be identified not only by segregation but also by its source or description." *Id.*; *see also Baehr v. Libertyville Cmty. Bank & Trust*, No. 2-10-0540, 2011 WL 10453465, at *2 (Ill. App. Ct. Mar. 30, 2011) (affirming finding of conversion when bank removed funds from plaintiff's passbook account without plaintiff's authorization). |
| **Statute of Limitations** | There is a five-year statute of limitations for conversion. *Krumpholz Properties, LLC v. Krumpholz*, No. 2-10-0828, 2011 WL 10455182, at *9 (Ill. App. Ct. July 12, 2011) (applying 735 Ill. Comp. Stat. Ann. 5/13-205).<br><br>There is, however, a three-year statute of limitations for conversion of an instrument. 810 Ill. Comp. Stat. Ann. 5/3-118(g). |

13

INDIANA

| Elements | A review of Indiana case law has not yielded a substantive analysis of aiding and abetting conversion, and it is uncertain whether such a cause of action is recognized under Indiana law. Some federal courts have indicated that Indiana may adopt "section 876 of the Restatement (Second) of Torts concerning aiding and abetting and concerted action generally for both intentional torts and negligence actions." *Pinkney v. Thomas*, 583 F. Supp. 2d 970, 978 (N.D. Ind. 2008); *see id.* ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself") (quoting Restatement (Second) of Torts § 876 (1965)).  However, in *Crystal Valley Sales, Inc. v. Anderson*, the Court of Appeals noted that "Indiana does not recognize [ ] a cause of action" for aiding and abetting a breach of fiduciary duty.  22 N.E.3d 646, 656 (Ind. Ct. App. 2014). <br><br> "In order to maintain an action for conversion, the plaintiff must establish the appropriation of personal property by another for that party's own use and benefit in exclusion and defiance of the owner's rights.  The essential elements of the plaintiff's claim are an immediate, unqualified right to possession resting on a superior claim of title."  *Shourek v. Stirling*, 621 N.E.2d 1107, 1109 (Ind. 1993). |
|---|---|
| Proof of Claim | "Mens rea . . . is not an element of tortious conversion… Good faith is no defense." *Computers Unlimited, Inc. v. Midwest Data Sys., Inc.*, 657 N.E.2d 165, 171 (Ind. Ct. App. 1995). <br><br> Under Indiana law, "money may be the subject of an action for conversion only if it is capable of being identified as a special chattel.  In other words, it must be a determinate sum with which the defendant was entrusted to apply to a certain purpose." *Bowden v. Agnew*, 2 N.E.3d 743, 750 (Ind. Ct. App. 2014) (quotation marks and citations omitted).  On the other hand, "[i]t is well established that refusal to pay a debt will not generally support a conversion claim." *Id.* |
| Statute of Limitations | The statute of limitations for conversion of personal property is two years.  *See Rush v. Leiter*, 271 N.E.2d 505, 508 (Ind. Ct. App. 1971) (applying Ind. Code Ann. § 34-11-2-4). <br><br> There is, however, a three-year statute of limitations for conversion of an instrument.  Ind. Code Ann. § 26-1-3.1-118(g)(1). |

14

# IOWA

| Elements | A review of Iowa case law has not yielded a substantive analysis of aiding and abetting conversion.  The case law does indicate that "Iowa law follows the Restatement (Second) of Torts § 876 for an aiding and abetting claim."  *CNH Capital Am. LLC v. McCandless*, No. C05-2087, 2007 WL 1498357, at *8 (N.D. Iowa May 18, 2007) (citing *Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994)); *id.* ("Aiding and abetting requires a wrong to the primary party, knowledge of the wrong on the part of the aider, and substantial assistance by the aider in the achievement of the primary violation.") (quotation marks omitted) (citing Restatement (Second) of Torts § 876(b) (1979)).<br><br>"A conversion occurs when a person or entity exercises wrongful control or dominion over the property of another in denial of or inconsistent with the other's possessory right to the property." *Larson v. Great West Cas. Co.*, 482 N.W.2d 170, 173 (Iowa Ct. App. 1992) (citing *Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d 235, 247 (Iowa 1988); *Welke v. City of Davenport*, 309 N.W.2d 450, 451 (Iowa 1981)).  "The essential elements of conversion are: 1) ownership by the plaintiff or other possessory right in the plaintiff greater than that of the defendant; 2) exercise of dominion or control over chattels by defendant inconsistent with, and in derogation of, plaintiff's possessory rights thereto; and 3) damage to plaintiff."  *Matter of Estate of Bearbower*, 426 N.W.2d 392, 394 (Iowa 1988).<br><br>"Liability may be imposed for conversion only when the intentional and wrongful interference with the property is so serious that the actor may justly be required to pay full value." *Larson*, 482 N.W.2d at 173 (citing *Kendall/Hunt*, 424 N.W.2d at 247).  "When determining whether the interference was serious enough to give rise to a conversion, Iowa courts consider the following factors: "(a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right of control; (c) the actor's good faith; (d) the extend and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; (f) the inconvenience and expense caused to the other."  *Id.* at 174 (citing *Kendall/Hunt*, 424 N.W.2d at 247). |
|---|---|
| Proof of Claim | There is an intent requirement for conversion under Iowa law.  "An act which is merely negligent with respect to an item of property will not constitute a conversion, even though the act may result in the loss or destruction of the property.  The act constituting the wrongful exercise of dominion and control must be intentional."  *Larson v. Great W. Cas. Co.*, 482 N.W.2d 170, 173–74 (Iowa Ct. App. 1992) (citing Restatement (Second) of Torts § 224 (1965)).<br><br>A review of Iowa case law indicates that money may be the subject of a conversion claim.  Courts have not discussed the restrictions on such conversion claims that apply in other states. *See generally Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 594 (Iowa 1999), *as amended on denial of reh'g*, (Feb. 4, 2000) (finding evidence sufficient to establish conversion where employee retained money paid to him by a third party "in contravention to the possessory interest" of his employer in that money). |
| Statute of Limitations | There is a five-year statute of limitations for conversion.  *See Barringer v. Bump*, 705 N.W.2d 507 (Iowa Ct. App. 2005) (applying Iowa Code § 614.1(4)).  Courts have applied this same statute of limitations to claims for conversion of an instrument.  *See Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 477 (Iowa 1990). |

## KANSAS

| Elements | A review of Kansas case law has not yielded a substantive analysis of aiding and abetting conversion.  The Supreme Court of Kansas has, however, indicated the Restatement (Second) of Torts may be broadly applicable to aiding and abetting claims.  *See State ex rel. Mays v. Ridenhour*, 811 P.2d 1220, 1231–32 (Kan. 1991) ("[A]iding and abetting is a theory used to impose vicarious liability for concerted action. . . . . 'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself [aiding and abetting]") (quoting Restatement (Second) of Torts § 876 (1977)).<br><br>"Conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights."  *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005). |
|---|---|
| **Proof of Claim** | For a conversion claim, "[t]he intent required . . . is satisfied merely by the use or disposition of goods belonging to another."  *Matter of Conservatorship of Marcotte*, 756 P.2d 1091, 1095 (Kan. 1988).  Accordingly, "[g]ood faith is not a defense to a charge of conversion."  *Id.*<br><br>"An action will not lie for conversion of a mere debt . . . . Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor."  *Carmichael v. Halstead Nursing Ctr., Ltd.*, 501, 701 P.2d 934, 938 (Kan. 1985) (quotation marks omitted).  "[T]he relationship between a general depositor and his or her bank is that of creditor and debtor, and money deposited, unless segregated into a special account and designated to be kept separate, becomes the property of the bank.  Therefore, unless intended to remain separate, money deposited in a bank ordinarily cannot be the subject of an action for conversion."  *Moore v. State Bank of Burden*, 729 P.2d 1205, 1210 (1986) (citation omitted). |
| **Statute of Limitations** | "In Kansas, the statute of limitations for conversion is two years."  *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (applying Kan. Stat. Ann. § 60-513(a)(2)).<br><br>There is, however, a three-year statute of limitations for an action for conversion of an instrument.  Kan. Stat. Ann. §84-3-118(g). |

16

## KENTUCKY

| Elements | As a preliminary matter, it is not clear whether Kentucky recognizes aiding and abetting conversion, as a review of case law does not indicate that Kentucky courts have addressed the issue. *See Budsgunshop.com, LLC v. Security Safe Outlet, Inc.*, No. 10-cv-00390-KSF, 2012 WL 1899851, at *18-19 (E.D. Ky. May 23, 2012) (court was unable to find a Kentucky state court case recognizing a civil action for aiding and abetting conversion). |
|---|---|
| | "Conversion is an intentional tort that involves the wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014). |
| | "In Kentucky, a claim of conversion consists of the following elements: (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property. *Id.*(internal quotations omitted) (citing *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n. 12 (Ky.2005)). "Acts rightfully done do not constitute a conversion." *Greasy Creek Coal & Land Co. v. Greasy Creek Coal Co.*, 225 Ky. 77, 7 S.W.2d 853, 855 (1928). Therefore, if the defendant had a right to do an act, it cannot be held liable for it under conversion theory. |
| **Proof of Claim** | If recognized, aiding and abetting conversion would likely require that the defendant had knowledge of the underlying conversion and rendered substantial assistance in furtherance of the conversion. *See Peoples Bank*, 277 S.W.3d at 261. For a conversion claim, generally, "neither motive, intent, nor good faith is material to the action." *State Auto. Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. Ct. App. 1990). Moreover, "[a] wrongful intent is not an essential element of the conversion." *Urban v. Lansing's Adm'r*, 239 Ky. 218, 39 S.W.2d 219, 221 (1931). In fact, "[t]he motive with which one acts in converting the property of another to his own use is immaterial in an action of trover except in so far as it may affect a recovery of exemplary damages." *Id.* at 221-222. "[T]he measure of damages in conversion is the value of the property at the time of conversion." |
| | *State Auto.*, 792 S.W.2d at 627 (citing *Nolin Prod. Credit v. Canmer Deposit Bank*, Ky.App., 726 S.W.2d 693 (1986)). |
| **Statute of Limitations** | The two (2) year statute of limitations on an action "for the taking, detaining or injuring of personal property, including an action for specific recovery" under Ky. Rev. Stat. Ann. § 413.125 applies to conversion. |
| | *Madison Capital Co., LLC v. S & S Salvage*, LLC, 794 F. Supp. 2d 735, 741 (W.D. Ky. 2011) *aff'd*, 507 F. App'x 528 (6th Cir. 2012). |
| | There is, however, a three (3) year statute of limitations for conversion of an instrument. Ky. Rev. Stat. Ann. § 355.3-118(7)(a) (West). |

17

## LOUISIANA

| | |
|---|---|
| **Elements** | As a preliminary matter, Louisiana courts have held that aiding and abetting is not a recognized claim under Louisiana law. Specifically, the Court of Appeals has stated that "[i]n the absence of a conspiracy, there is no distinct cause of action for aiding and abetting under Louisiana law." *Guidry v. Bank of LaPlace*, 661 So. 2d 1052, 1057 (La. Ct. App. 1995). Federal courts have acknowledged that Louisiana does not likely recognize aiding and abetting claims. *See Murray v. Cannon Cochran Mgmt. Servs., Inc.*, No. 14-310-JWD-RLB, 2014 WL 5794997, at *14-15 (M.D. La. Nov. 6, 2014) (dismissing aiding and abetting breach of fiduciary duty claim); *Broyles v. Cantor Fitzgerald & Co.*, No. 10-854-JJB, 2013 WL 2422858, at * 2 (M.D. La. June 3, 2013) (acknowledging that "Louisiana does not recognize a claim for aiding and abetting a breach of fiduciary duty"); *Babin v. Caddo East Estates I, Ltd.*, 496 B.R. 804, 810-11 (E.D. La. 2013) (noting that Louisiana "may not recognize a freestanding claim for aiding and abetting but does recognize claims for conspiracy under Article 2324). Conversion is a delictual action under Louisiana law. *Dual Drilling Co. v. Mills Equipment Investments, Inc.*, 721 So.2d 853, 857 (La. 1998).

A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. *Labbe v. Premier Bank*, 618 So. 2d 45, 46 (La. Ct. App. 1993). "A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel." *Id.* |
| **Proof of Claim** | "It is well settled that issues of fault, intent, negligence, knowledge or ignorance, and/or good faith are not involved in actions for tortious conversion." *Hagberg v. Manuel*, 525 So.2d 19, 22 (La. Ct. App. 1988); *but see Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 721 So.2d 853, 857 (La. 1998) ("The conversion action is predicated on the fault of the defendant and directed to the recovery of the movable or, in the alternative, the plaintiff may demand compensation."); *see also Louisiana State Bar Ass'n v. Hinrichs*, 486 So.2d 116 (La. 1986) ("A mistake of law or fact is no defense. Persons deal with the property in chattels or exercise acts of ownership over them at their peril, and must take the risk that there is no lawful justification for their acts."). "In an action for conversion . . . it is incumbent upon a plaintiff to prove his claim by a preponderance of the evidence." *Crawford v. Reagan*, 779 So.2d 1116, 1119 (La. Ct. App. 2001). |
| **Statute of Limitations** | There is a one (1) year prescription period for conversion. *Johnson v. Concordia Bank & Trust Co.*, 95-1187 (La. App. 3 Cir. 3/27/96), 671 So. 2d 1093, 1098 ("[s]ince conversion is a tort, the prescriptive period for delictual actions applies…"); La. Civ. Code Ann. art. 3492 ("[d]elictual actions are subject to a liberative prescription of one year").

There is also a one (1) year prescription period for conversion of an instrument. La. Rev. Stat. Ann. 10:3-420. |

18

MAINE

| Elements | A review of case law indicates that Maine recognizes a claim for aiding and abetting conversion. *See Leighton v. Fleet Bank of Maine*, 634 A.2d 453, 457 (Me. 1993); *Lewiston Trust Co. v. Deveno*, 74 A.2d 457, 458-59 (Me. 1950) ("The principle is undoubted that one who aids or assists another in the conversion of property is a party to it with the one aided or assisted."). However, a review does not yield substantive discussion by Maine state courts of the elements of aiding and abetting conversion.<br><br>The claim of aiding and abetting a tort is recognized in Maine. *See, e.g.*, *Barnes v. McGough*, 623 A.2d 144, 145 (Me.1993). Although a review of the Maine state court case law does not yield substantive analysis of aiding and abetting tort, federal courts have outlined the required elements. *See, e.g.*, *Forum Fin. Grp. Liab. Co. v. President, Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 97 (D. Me. 2001) ("Maine has recognized the tort of aiding and abetting tortious action on the basis of section 876 of the RESTATEMENT OF TORTS . . . [which] provides: '[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to a third person.'").<br><br>Under Maine law, "[t]o prevail on its cause of action for the conversion of money… [plaintiff] must establish [1] that it had a property interest in the money, [2] the right to its possession at the time of the alleged conversion and, if [defendant] acquired possession rightfully, a demand by [plaintiff] for possession and a refusal by [defendant] to surrender." *Keyes Fibre Co. v. Lamarre*, 617 A.2d 213, 214 (Me. 1992) (citing *Chiappetta v. LeBlond*, 505 A.2d 783, 785 (Me. 1986)). |
|---|---|
| Proof of Claim | A review of the case law has not yielded substantive analysis of the required knowledge or intent to establish liability for aiding and abetting a tort under Maine law. As noted, Maine courts have looked to the Restatement for aiding and abetting tortious conduct, which would require knowledge of the wrongful conduct. *See, e.g.*, *Forum Fin. Grp.*, 173 F. Supp. 2d at 97. Establishing a claim of aiding and abetting conversion is predicated on establishing the underlying conversion. *See Leighton,* 634 A.2d at 457. "The converter need not intend any conscious wrongdoing, as conversion entails 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights . . . . A mistake of law or fact is no defense.'" *Ocean Nat. Bank of Kennebunk v. Diment*, 462 A.2d 35, 39 (Me. 1983) (quoting. W. Prosser, *Handbook of the Law of Torts* § 15 at 83 (4th ed. 1971)). "Simply put, conversion requires an actual interference with the property owner's rights beyond a brief and ultimately-harmless withholding." *Lougee Conservancy v. CitiMortgage, Inc.*, 48 A.3d 774, 783 (Me. 2012). The question of whether conversion is established "is necessarily a fact specific inquiry and a question of degree." *Id.* "To determine whether an interference is sufficiently serious as to amount to conversion, the court should consider the extent and duration of the actor's exercise of dominion or control; the actor's good faith; the extent and duration of the resulting interference with the other's right to control; the harm done; and the inconvenience and expense caused to the owner." *Id.* (citing Restatement (Second) of Torts § 222A). |
| Statute of Limitations | "The statute of limitations on claims of conversion is six years from when the cause of action accrues." *Thurlow v. Connolly*, No. CIV. A. CV-04-745, 2005 WL 2722917, at *6 (Me. Super. July 11, 2005). Under Maine law, all civil actions must be commenced within 6 years "except as otherwise specially provided." Me. Rev. Stat. tit. 14, § 752. There is, however, a three (3) year statute of limitations for an action for conversion of an instrument. Me. Rev. Stat §3-1118(7). |

19

## MARYLAND

| Elements | A review of case law suggests that aiding and abetting conversion is recognized in Maryland. *See, e.g., George Wasserman & Janice Wasserman Goldstein Family LLC v. Kay*, 14 A.3d 1193 (Md. Ct. Spec. App. 2011) (finding that plaintiffs failed to state claim for aiding and abetting conversion, as they failed to establish the underlying tort of conversion since the allegedly converted funds did not meet the test of being "specific, segregated, or identifiable"). The case law does not, however, yield substantive analysis by Maryland state courts of the elements of aiding and abetting conversion specifically. "Maryland has expressly recognized aider and abettor tort liability." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1049 (Md. 1995).<br><br>To establish a claim for aiding and abetting tortious conduct, a plaintiff must establish that "(1) there is a violation of the law by the principal; (2) defendant knew about the violation, and (3) defendant gave substantial assistance or encouragement to the principal to engage in the tortious conduct." *Id.* at 186 (internal quotations omitted) (addressing a claim of aiding and abetting breach of fiduciary duty). In Maryland, "[c]onversion is an intentional tort, consisting of two elements, a physical act combined with a certain state of mind. It is defined as any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it. The act of ownership for conversion can occur either by initially acquiring the property or by retaining it longer than the rightful possessor permits." *Lasater v. Guttman*, 5 A.3d 79, 88 (Md. Ct. Spec. App. 2010) (internal citations omitted). |
|---|---|
| Proof of Claim | Aiding and abetting liability generally requires that "the aider or abettor must have engaged in assistive conduct that he would know would contribute to the happening of that act." *Saadeh v. Saadeh, Inc.*, 819 A.2d 1158, 1171 (Md. Ct. Spec. App. 2003) (addressing claim of aiding and abetting battery). "[C]ivil aider and abettor liability… requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable." *Alleco Inc.*, 665 A.2d at 1050. Express allegations of knowledge are required. *See Wiseman v. First Mariner Bank*, C.A. No. ELH-12-2423, 2013 WL 5375248, at *29 (D. Md. 2013) (finding that where complaint contained no allegations that defendant was told about the tortious conduct, or had any communications about it, claim for aiding and abetting liability are dismissed.). As for the underlying conversion, "[b]esides the physical act of exerting unlawful control, there is an intent element to the tort of conversion, and a wide range of different states of mind qualify. At a minimum, a defendant liable of conversion must have an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights . . . The defendant may have the requisite intent even though he or she acted in good faith and lacked any consciousness of wrongdoing, as long as there was an intent to exert control over the property." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 262, 841 A.2d 828, 836 (2004) (internal quotations and citations omitted). "The general rule is that monies are intangible, and therefore, not subject to a claim for conversion." *Lasater*, 5 A.3d at 88. "An exception to this rule exists, however, if the monies alleged to have been converted are specific segregated or identifiable funds." *Id.* |
| Statute of Limitations | Conversion is subject to a three (3) year statute of limitations under MD Code, Courts and Judicial Proceedings, § 5-101. *Llanten v. Cedar Ridge Counseling Centers, LLC*, 214 Md. App. 164, 171, 75 A.3d 1030, 1034 cert. denied sub nom. *Llanten v. Cedar Ridge Counseling Centers*, 436 Md. 328, 81 A.3d 458 (2013).<br><br>There is also a three-year statute of limitations for conversion of an instrument. Md. Code Ann., Com. Law § 3-118(g) (West). |

20

## MASSACHUSETTS

| Elements | A review of case law suggests that aiding and abetting conversion is recognized as a claim under Massachusetts law. *See, e.g.*, *Go-Best Assets Ltd. v. Citizens Bank of Massachusetts*, 972 N.E.2d 426, 438 (Mass. 2012) (finding that plaintiff had failed to show that bank had "actively participated in or substantially assisted any… conversion committed…").  "[U]nder Massachusetts law liability for aiding and abetting a tort attaches where: (1) the defendant provides 'substantial assistance or encouragement to the other party;' and (2) the defendant has 'unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions.'" *Go-Best Assets Ltd. v. Citizens Bank of Massachusetts*, 947 N.E.2d 581, 592 (Mass. App. Ct. 2011) *rev'd*, 972 N.E.2d 426 (Mass. 2012).  In Massachusetts, "[t]he elements of conversion may be established by a showing that [1] one person exercised dominion over the personal property of another, [2] without right, and [3] thereby deprived the rightful owner of its use and enjoyment." *In re Hilson*, 863 N.E.2d 483, 491 (Mass. App. Ct. 2007). |
|---|---|
| **Proof of Claim** | For aiding and abetting liability to attach, the alleged aider and abettor must know that the primary tortfeasor  was committing conversion. *See Go-Best Assets Ltd. v. Citizens Bank of Massachusetts*, 972 N.E.2d 426, 438 (Mass. 2012) ("[t]o prove that the bank aided and abetted a tort, the plaintiff must show… that the bank knew he was committing the tort").  Actual knowledge of wrongdoing is required. *See id.*  In an action against a bank alleging aiding and abetting misappropriation of funds (including a claim of aiding and abetting conversion), evidence of  dishonored checks and negative account balances was found insufficient to "support an inference that the bank had actual knowledge of an attorney's intended or apparent misappropriation of client funds." *Id.* at 56.  "[A] risk of misappropriation alone" is not sufficient to support an inference of actual knowledge. *Id.*  Federal courts applying Massachusetts law have provided guidance on assessing the sufficiency of "substantial assistance" in the context of aiding and abetting liability.  *See, e.g.*, *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981) *certified question answered*, 386 Mass. 540, 437 N.E.2d 171 (1982) ("the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered") (citations and internal quotations omitted).

As for the underlying conversion, "[t]he elements of conversion require that a defendant be proved to have intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he had no right of possession at the time." *Grand Pac. Fin. Corp. v. Brauer*, 783 N.E.2d 849, 857 (Mass. App. Ct. 2003) (internal quotations omitted).  "There is no requirement that the one converting property be shown to have had the intent to deprive permanently the rightful owner of its use and enjoyment, as in stealing." *In re Hilson*, 863 N.E.2d 483, 491 (Mass. 2007) (citations omitted).  Under Massachusetts law, money may be the subject of conversion. *Id.* at 611.  However, "[c]onversion occurs only when a defendant exercises wrongful control over specific personal property, not a debt; therefore, bank accounts cannot be the subject of a conversion." *Gossels v. Fleet Nat. Bank*, 453 Mass. 366, 372, 902 N.E.2d 370, 378 (2009). |
| **Statute of Limitations** | Conversion is subject to a three (3) year statute of limitations under Mass. Gen. Laws Ann. ch. 260, § 2A. *Patsos v. First Albany Corp.*, 741 N.E.2d 841, 846 n.6 (Mass. 2001).

There is also a three (3) year statute of limitations for conversion of an instrument.  Mass. Gen. Laws Ann. ch. 106, § 3-118(g) (West). |

21

## MICHIGAN

| Elements | The Sixth Circuit has stated that "[t]he Michigan Supreme Court has never expressly recognized a common-law claim for aiding and abetting tortious conduct," but nevertheless acknowledged various Court of Appeals cases and predicted that the Michigan Supreme Court "would adopt the approach of aiding and abetting as set forth in § 876(b) of the Restatement (Second) of Torts." *El Camino Resources Ltd. v. Huntington Nat'l Bank*, 712 F.3d 917, 922 (6th Cir. 2013). Additionally, the Michigan Court of Appeals has stated that "[a] person may be liable for conversion 'by actively aiding or abetting or conniving with another in such an act. Indeed, one may be liable for assisting another in a conversion though acting innocently.'" *Prime Fin. Servs. LLC v. Vinton*, 761 N.W.2d 694, 714 (Mich. Ct. App. 2008) (quoting *Trail Clinic, PC v. Bloch*, 319 N.W.2d 638. 641 (Mich. Ct. App. 1982)). <br><br> In Michigan, "[t]he tort of conversion is 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94, 111 (1999) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600 (1992)). |
|---|---|
| Proof of Claim | In *El Camino*, the Sixth Circuit predicted that the Michigan Supreme Court would assess aiding and abetting tortious conduct in accordance with the Restatement. *See* 912 F.3d at 922. If so, a plaintiff would have to show that the defendant had knowledge of the wrongful conduct, and provided substantial assistance to the primary wrongdoer. *Id.* In particular, the Sixth Circuit held that *actual* knowledge would likely be required by the Michigan Supreme Court. *Id.* at 922-23. "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care . . . the defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Id.* at 111-12 (internal citations and quotation marks omitted). |
| Statute of Limitations | The three (3) year statute of limitations under Mich. Comp. Laws Ann. § 600.5805 (10) is applicable to conversion. *Tillman v. Great Lakes Truck Ctr., Inc.*, 277 Mich. App. 47, 50, 742 N.W.2d 622, 624 (2007) (applying the three-year period of limitations under § 600.5805(10) to conversion claim and declining to apply six-year statute of limitations). <br><br> There is also a three (3) year statute of limitation for conversion of an instrument. Mich. Comp. Laws Ann. § 440.3118(7) (West). |

22

## MINNESOTA

| Elements | Aiding and abetting conversion appears to be a recognized claim in Minnesota, as Minnesota permits aiding and abetting torts generally.  Under Minnesota law, "a tort claim for aiding and abetting has three elements: (1) the primary tortfeasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach."  *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 733 (8th Cir. 2015) (citing *Witzman v. Lehrman, Lehrman, & Flom*, 601 N.W.2d 179, 187 (Minn. 1999) (en banc)).  And Minnesota cases have involved claims of aiding and abetting conversion.  *See, e.g.*, *Zayed*, 779 F.3d 727. <br><br> In Minnesota, "[c]onversion occurs where one willfully interferes with the personal property of another 'without lawful justification,' depriving the lawful possessor of 'use and possession.'"  *Williamson v. Prasciunas*, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003) (quoting *DLJ, Inc., v. Russ*, 566 N.W.2d 60, 721 (Minn. 1997)).  "The elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest."  *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994) (citing *Larson v. Archer–Daniels–Midland Co.*, 32 N.W.2d 649, 650 (1948); *Mertes v. Estate of E.L. King*, 501 N.W.2d 660, 665 (Minn. Ct. App. 1993)). |
|---|---|
| **Proof of Claim** | "'An aider and abettor's knowledge of the wrongful purpose is a 'crucial element in aiding or abetting' cases.'"  *Zayed*, 779 F.3d at 733 (quoting *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012)).  "[A]iding and abetting liability is based on proof of a scienter- the defendants must *know* that the conduct they are aiding and abetting is a tort."  *Witzman*, 601 N.W.2d at 186 (emphasis in original) (citation omitted).  Minnesota courts consider the knowledge requirement in tandem with the substantial assistance requirement.  *See id.* at 188 ("'We evaluate [these elements] in tandem." (quoting *In re TMJ Implants Prods. Liability Litig.*, 113 F.2d 455, 459 (8th Cir. 1991))).  "Thus, 'where there is a minimal showing of substantial assistance, a greater showing of scienter is required.'"  *Id.* (quoting *Camp v. Dema*, 948 F.2d 455, 459 (8th Cir. 1991)).  "Whether the requisite degree of knowledge or assistance exists depends on the particular facts and circumstances of each case."  *Id.*  "Factors such as the relationship between the defendant and the primary tortfeasor, the nature of the primary tortfeasor's activity, the nature of the assistance provided by the defendant, and the defendant's state of mind all come into play."  *Id.* (citation omitted).  In addition, "in cases where aiding and abetting liability is alleged against professionals, [Minnesota] narrowly and strictly interpret[s] the elements of the claim and require[s] the plaintiff to plead with particularity facts establishing each of these elements."  *Id.* at 187.  Substantial assistance in professional services cases typically "means something more than the provision of routine professional services."  *Id.* at 189.  As for the actual conversion, in Minnesota "[g]ood faith is not a defense to a claim of conversion."  *Williamson*, 661 N.W.2d at 649 (citing *Dairy Farm Leasing Co. v. Haas Livestock Selling Agency*, 458 N.W.2d 417, 419 (Minn. Ct. App. 1990)). |
| **Statute of Limitations** | There is a six (6) year statute of limitations for conversion.  *See, e.g.*, *Thornberg v. State Farm Fire & Cas. Co.*, No. 14-CV-122 SRN, 2015 WL 3612550, at *4 (D. Minn. June 9, 2015) (noting that Minn. Stat. § 541.05 "[o]n its face" applies to conversion of personal property). <br><br> There is, however, a three (3) year statute of limitations for conversion of an instrument.  Minn. Stat. Ann. § 336.3-118(g) (West). |

23

## MISSISSIPPI

| Elements | As a preliminary matter, it is not clear whether aiding and abetting conversion is a recognized claim in Mississippi.  Although cases have involved aiding and abetting tort claims, *see Bowden v. Young*, 120 So.3d 971, 980-981 (Miss. 2013), it does not appear that Mississippi courts have specifically addressed whether it is a cognizable cause of action.  Federal courts in Mississippi have acknowledged that it remains an open question, *see Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822-23 (N.D. Miss. 2011); *In re Evans*, 464 B.R. 272, 291-92 (S.D. Miss. Bank. 2011), and in *Dale v. Ala Acquisitions, Inc.*, a federal court predicted that the Mississippi Supreme Court would recognize aiding and abetting fraud.  203 F. Supp. 2d 694, 700-701 (S.D. Miss. 2002).  In addition, the elements of conversion under Mississippi law are (1) "wrongful possession, or the exercise of dominion in exclusion or defiance of the owner's rights," and (2) "an unauthorized and injurious use, or of a wrongful detention after demand."  *First Investors Corp. v. Rayner*, 738 So. 2d 228, 234 (Miss. 1999) (internal quotations omitted) (quoting *Mississippi Motor Fin., Inc. v. Thomas*, 149 So.2d 20 (Miss. 1963)). |
|---|---|
| Proof of Claim | Assuming aiding and abetting is a claim in Mississippi, the federal court in *Dale* looked to the Restatement for reference.  *Dale*, 203 F. Supp. 2d at 700-01.  The Restatement would require that the plaintiff prove that the defendant had knowledge of the wrongful conduct.  *See id.*  Under Mississippi law, "conversion requires the intent to exercise dominion or control over goods inconsistent with the true owner's right."  *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss. 1998) (citing *Walker v. Brown*, 501 So.2d 358, 361 (Miss. 1987)). |
| Statute of Limitations | The three (3) year statute of limitations for conversion is governed by the general provision under Miss. Code Ann. § 15-1-49.  *See, e.g., Anderson v. LaVere*, 136 So. 3d 404, 411 (Miss. 2014).

There is also a three (3) year statute of limitations for conversion of an instrument.  Miss. Code Ann. § 75-3-118 (g)(West). |

24

## MISSOURI

| | |
|---|---|
| **Elements** | It is not clear whether aiding and abetting conversion is a recognized cause of action in Missouri. Federal courts have acknowledged that "the Missouri Supreme Court has not squarely decided whether to recognize the tort of aiding and abetting." *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09CV01252ERW, 2012 WL 3984486, *6 (E.D. Mo. Sept. 11, 2012). Some federal courts in Missouri have recognized such claims. *See, e.g.*, *Lonergan v. Bank of America, N.A.*, No. 12-CV-04226-NKL, 2013 WL 176024, at *11-12 (W.D. Mo. Jan. 16, 2013) (recognizing a claim for aiding and abetting a tort). Where recognized, Missouri courts have looked to the Restatement § 876(b), and required that a plaintiff show knowledge and substantial assistance in furtherance of the tort. *See Nickell v. Shanahan*, No. ED 99163, 2013 WL 2402852, at *7 (Mo. Ct. App. June 4, 2013).<br><br>In addition, in Missouri, "'[c]onversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights.'" *Walker v. Hanke*, 992 S.W.2d 925, 930 (Mo. Ct. App. 1999) (quoting *Dayton Constr., Inc. v. Meinhardt*, 882 S.W.2d 206, 208 (Mo.App.1994)). "The following three elements must be established to prove conversion: (1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." *JEP Enterprises, Inc. v. Wehrenberg, Inc.*, 42 S.W.3d 773, 776 (Mo. Ct. App. 2001) (citing *Manzer v. Sanchez*, 985 S.W.2d 936, 940 (Mo. App. E.D. 1999)). |
| **Proof of Claim** | If recognized, a plaintiff alleging an aiding and abetting conversion claim would likely have to prove that the defendant had knowledge of the conversion, and gave substantial assistance or encouragement in furtherance of the conversion. *See Nickell*, 2013 WL 2402852 at *7. "'Conversion can be proved in three ways: (1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the owner's rights; or (3) by refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper.'" *Dean Mach. Co. v. Union Bank*, 106 S.W.3d 510, 522 (Mo. Ct. App. 2003) (quoting *Moore Equip. Co. v. Halferty*, 980 S.W.2d 578, 582 (Mo. App. W.D. 1998)). "[M]isappropriated funds placed in the custody of another for a definite purpose may be subject to a suit for conversion, when the plaintiff delivers funds to the defendant for a specific purpose, and the defendant diverts those funds to another, different purpose." *Gadberry v. Bird*, 191 S.W.3d 673, 675-76 (Mo. Ct. App. 2006) (citing *Johnson v. GMAC Mortg. Corp.*, 162 S.W.3d 110, 125 (Mo. App. W.D. 2005)). |
| **Statute of Limitations** | Conversion is subject to a five (5) year statute of limitations under Mo. Ann. Stat. § 516.120. *See Gaydos v. Imhoff*, 245 S.W.3d 303, 306 (Mo. Ct. App. 2008) ("[u]nder Section 516.120, all actions upon contracts . . . including actions for conversion, must be brought within a five-year statute of limitations").<br><br>There is a three (3) year statute of limitations for conversion of an instrument. Mo. Ann. Stat. § 400.3-118(g) (West). |

25

## MONTANA

| Elements | Montana generally recognizes aiding and abetting tort liability.  *See, e.g.*, *Newman v. Lichfield*, 272 P.3d 625, 632-34 (Mont. 2012); *Sloan v. Fauque*, 784 P.2d 895, 895-97 (Mont. 1989).  "As provided in subsection (b) of the Restatement (Second) of Torts § 876 (1979), a person is subject to liability for the harm to a third person from the tortious conduct of another if: 1) the other's conduct is a breach of duty, 2) he knows that the other's conduct is a breach of duty, and 3) he provides substantial assistance or encouragement to the other for such conduct."  *Newman*, 272 P.3d at 633-34. <br><br> In addition, in Montana, "[a] plaintiff alleging a claim of conversion must establish the following four elements: (1) property ownership by the plaintiff; (2) plaintiff's right of possession of the property; (3) defendant's unauthorized control over the property; and (4) damages."  *Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 343 (Mont. 2013) (citing *St. Peter & Warren, P.C. v. Purdom*, 140 P.3d 478, 481 (Mont. 2006)). |
|---|---|
| **Proof of Claim** | Aiding and abetting liability requires that the defendant have knowledge of the primary actor's wrongful conduct.  *See Newman*, 272 P.3d at 633-34.  "Proof of a claim for conversion requires that plaintiff own the property; that plaintiff have the right to possess the property; that defendant exercise unauthorized control over the property; and that plaintiff suffer damages."  *Salminen v. Morrison & Frampton, PLLP*, 339 P.3d 602, 608 (Mont. 2014).  "It is incumbent upon the plaintiff in an action on claim and delivery to prove ownership or right of possession in himself and wrongful possession by the defendant by a preponderance of the evidence."  *Interstate Mfg. Co. v. Interstate Prods. Co.*, 408 P.2d 478, 451 (Mont. 1965). |
| **Statute of Limitations** | There is a two (2) year statute of limitations for conversion.  *See, e.g.*, *Johnson Farms, Inc. v. Halland*, 291 P.3d 1096, 1102 (Mont. 2012) (applying the two year statute of limitations under MCA § 27–2–207(2) to a conversion action). <br><br> There is, however, a three (3) year statute of limitations for conversion of an instrument.  Mont. Code Ann. § 30-3-122(7). |

26

## NEBRASKA

| Elements | Although Nebraska courts do not extensively discuss the claim, it appears that aiding and abetting conversion is a recognized cause of action in Nebraska. *See, e.g.*, *Sprague v. Allied Mills*, 261 N.W. 892, 893 (Neb. 1935) ("'A person who aids in the conversion of property is responsible to the owner for its value.'" (quoting *McCormick v. Stevenson*, 12 N.W. 828 (Neb. 1882))); *D.M. Osborne & Co. v. Plano Mfg. Co.*, 70 N.W. 1124, 1126 (Neb. 1897) ("There are no accessories in conversion,--all are principals; and every person who knowingly aids and abets another in the conversion of the property of a third person renders himself liable to such third person for the value of the property so converted."). <br><br> Under Nebraska law, a plaintiff asserting a claim for aiding and abetting must demonstrate that (1) the primary tortfeasor engaged in tortious conduct; (2) the defendant knew that the primary tortfeasor's conduct constituted a breach of duty; and (3) the defendant provided substantial assistance or encouragement.  *See Colombo Candy & Tobacco Wholesale Co. v. Ameristar Casino Council Bluffs, Inc.*, 972 F. Supp. 2d 1103, 1108 (D. Neb. 2013). <br><br> In addition, under Nebraska law, conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Terra W. Corp. v. Berry and Co.*, 295 N.W.2d 693, 696 (Neb. 1980) (citing *Polley v. Shoemaker*, 266 N.W.2d 222 (Neb. 1978); *Jessen v. Blackard*, 65 N.W.2d 345 (1954)).  For a conversion claim to be actionable, "the plaintiff must have the actual custody of the property or some species of property right, general or special, with an immediate right of possession." *Id.*  "The essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property." *Id.*  "Hence, a plaintiff in conversion must show (1) an immediate right to possession of the property and (2) its wrongful possession by the tortfeasor." *Barelmann v. Fox*, 478 N.W.2d 548, 558 (Neb. 1992) (citing *Terra W. Corp.*, 295 N.W.2d at 696). |
|---|---|
| Proof of Claim | "'For aiding and abetting liability, the knowledge element is critical.'" *Colombo Candy*, 972 F. Supp. 2d at 1108 (quoting *Camp v. Dema*, 948 F.2d 455, 459 (8th Cir. 1991)).  The defendant must have knowledge of the wrongful act.  *See id.*  As for the assistance rendered for liability to attach, "'[n]o particular acts are necessary, nor is it necessary that any physical part in the commission of the unlawful act is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient.'" *Id.* (quoting *Bergman v. Anderson*, 411 N.W.2d 336, 340 (1987)). |
| Statute of Limitations | "[U]nder Nebraska law, the statute of limitations for a conversion claim is 4 years." *Brook Valley Ltd. P'Ship v. Mut. of Omaha Bank*, 825 N.W.2d 779, 786 (Neb. 2013) (citing Neb.Rev.Stat. § 25–207 (Reissue 2008), which applies to, *inter alia*, "an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property"). <br><br> There is, however, a three-year statute of limitations on an action for conversion of an instrument.  Neb. Rev. Stat. § UCC § 3-118(g). |

27

NEVADA

| Elements | A review of case law indicates that Nevada courts have not addressed whether aiding and abetting conversion is a claim under state law.  However, with regard to aiding and abetting tort liability generally, Nevada courts appear to look to the Restatement.  *See Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998) (aiding and abetting fraudulent misrepresentation) (overruled on other grounds); *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*, 335 P.3d 190, 198 (Nev. 2014) (aiding and abetting the breach of a fiduciary duty).  "Under the Restatement, liability attaches for civil aiding and abetting if the defendant substantially assists or encourages another's conduct in breaching a duty to a third person." *Mahlum*, 970 P.2d at 112.<br><br>"In Nevada, conversion is defined as 'a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights.'" *Dynamic Transit v. Trans Pac. Ventures*, 291 P.3d 114, 118 (Nev. 2012) (quoting *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006)). |
|---|---|
| Proof of Claim | In the context of aiding and abetting torts, Nevada requires that the defendant have knowledge and substantially assist the primary actor.  *See, e.g.*, *Guilfoyle*, 335 P.3d at 198.  In contrast, "[l]iability for a claim of conversion is predicated upon 'an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge.'" *Dynamic Transit*, 291 P.3d at 118 (quoting *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000)). |
| Statute of Limitations | There is a three (3) year statute of limitations for conversion.  *See Shupe & Yost, Inc. v. Fallon Nat. Bank of Nevada*, 109 Nev. 99, 102, 847 P.2d 720, 721 (1993) (finding that the district court "did not err when it applied the three-year statute of limitations for conversion under NRS 11.190(3)(c)").<br><br>There is also a three-year statute of limitations for conversion of an instrument.  Nev. Rev. Stat. Ann. § 104.3118 (7) (West). |

28

NEW HAMPSHIRE

| Elements | As a preliminary matter, it is not clear whether New Hampshire recognizes aiding and abetting conversion.  A review of case law indicates that courts in New Hampshire have not addressed whether a person can be liable for aiding and abetting torts, nor have plaintiffs brought such claims.  It is possible that aiding and abetting-related claims are considered under civil conspiracy.  *See In re Estate of Raduazo*, 814 A.2d 147, 150 (N.H. 2002) (noting that the claims at issue in the underlying case included a "civil conspiracy (aiding and abetting)" claim).  Under New Hampshire law, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  *Muzzy v. Rockingham Cnty. Trust Co.*, 309 A.2d 893, 894 (N.H. 1973) (citing Restatement (Second) of Torts § 222A(1)). |
|---|---|
| Proof of Claim | As noted, New Hampshire does not have any case law addressing the requirements for civil aiding and abetting liability.  As for the conversion claim, to determine whether the defendant's conduct was so inconsistent with plaintiff's rights, so as to constitute a conversion, a court will consider, among other things, "the extent and duration of the actor's exercise of dominion and control, his intent to assert a right in fact inconsistent with the other's right of control and his good faith."  *Muzzy*, 309 A.2d at 894-95 (citing Restatement (Second) of Torts § 222A(2)).  The plaintiff has the burden of proving each element of their claim.  *See Wujnovick v. Colcord*, 202 A.2d 484, 485 (N.H. 1964) (stating in a conversion case that "[i]t is all too elementary to require citation that the ultimate burden of proving his case was on the plaintiff"). |
| Statute of Limitations | The three (3) year statute of limitations under N.H. Rev. Stat. Ann. § 508:4 applies to conversion.  *See Sykes v. RBS Citizens, N.A.*, 2 F. Supp. 3d 128, 149 (D.N.H. 2014) (dismissing a conversion claim because it was not filed within three years).<br><br>There is also a three (3) year statute of limitations on an action for conversion of an instrument.  N.H. Rev. Stat. Ann. § 382-A:3-118(g). |

29

**NEW JERSEY**

| | |
|---|---|
| **Elements** | "New Jersey and the Third Circuit have adopted the aiding and abetting standard of the Restatement (Second) of Torts. . . .The Restatement 'provides that a person is liable for harm resulting to a third person from the conduct of another when he 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" *Cevdet Aksut Ve Ogullari Koll. Sti v. Cavusoglu*, 2015 WL 4317750, at *10 (D.N.J. July 14, 2015) (quoting *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir.1998)) (internal citations omitted).  New Jersey courts have not extensively addressed aiding and abetting conversion.  *See Reliable Woodworking Co. v. Lindeman*, 143 A. 333, 333-34 (N.J. 1928) ("The rule of law is that every person is liable in trover who personally or by agent commits an act of conversion, or who participates by instigating, aiding, or assisting another."). <br><br> In New Jersey, the elements of aiding and abetting a tort are: "(1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing."  *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) (addressing an aiding and abetting fraud claim).  In New Jersey, "[c]onversion has been defined as an unauthorized assumption and exercise of the rights of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights."  *LaPlace v. Briere*, 962 A.2d 1139, 1144-45 (N.J. Super. Ct. App. Div. 2009) (internal quotations omitted). |
| **Proof of Claim** | For aiding and abetting liability generally, "'it is essential that the conduct of the actor be in itself tortious.  One who innocently, rightfully and carefully does an act that has the effect of furthering the tortious conduct or cooperating in the tortious design of another is not for that reason subject to liability.'"  *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 782-83 (N.J. Super. Ct. App. Div. 2006) (quoting Restatement (Second) of Torts (1979) § 876(b)).  Whether the assistance a defendant provides to a wrongdoer is substantial enough to establish aider-abettor liability is "fact-sensitive" and involves consideration of the following factors: "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other [tortfeasor] . . . his state of mind . . . [and] the duration of the assistance provided."  *Podias v. Mairs*, 394 N.J. Super. 338, 353, 926 A.2d 859, 867 (N.J. Super. Ct. App. Div. 2007) (addressing aiding and abetting liability in the context of a negligence action).  In contrast, "[c]onversion is an intentional tort in that the defendant must have intended 'to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'  However, the defendant need not knowingly or intentionally act wrongfully for a conversion to occur."  *LaPlace v. Briere*, 962 A.2d 1139, 1144-45 (N.J. Super. Ct. App. Div. 2009) (quoting Prosser and Keeton on Torts § 15 (5th ed. 1984)).  Generally, "elements of good faith, intent or negligence do not play a part in an action for damages in conversion."  *Barco Auto Leasing Corp. v. Holt*, 548 A.2d 1161, 1165 (N.J. Super. Ct. App. Div. 1988).  In the case of an action for conversion of funds, "the funds must be identifiable . . . [and] the injured party must establish that the tortfeasor exercised dominion over its money and repudiated the superior rights of the owner . . . The repudiation must be manifested in the injured party's demand for funds and the tortfeasor's refusal to return the monies sought."  *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1190 (N.J. Super. Ct. App. Div. 2011) (internal citations omitted). |
| **Statute of Limitations** | The statute of limitations for "converting personal property" is six (6) years.  N.J. Stat. Ann. § 2A:14-1 (West). <br><br> There is, however, a three (3) year statute of limitations for conversion of an instrument.  N.J. Stat. Ann. § 12A:3-118(g); *N.J. Lawyers' Fund for Client Prot. v. Pace*, 892 A.2d 661, 661 (N.J. 2006). |

NEW MEXICO

| Elements | It does not appear that courts in New Mexico have enumerated the elements of an aiding and abetting conversion claim.  However, the Supreme Court of New Mexico has held that "New Mexico recognizes tort liability for aiding and abetting another's tortious conduct."  *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 947 P.2d 143, 147 (N.M. 1997).  And, in New Mexico, "[c]onversion is defined as the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized  and injurious use of another's property, or a wrongful detention after demand has been made. The elements of the tort of conversion by demand and refusal are: (1) that the plaintiff had the right of possession of personal property; (2) that the plaintiff demanded that the defendant return the property to plaintiff; and (3) that the defendant refused to return the property to plaintiff."  *Nosker v. Trinity Land Co.*, 757 P.2d 803, 807-08 (N.M. Ct. App. 1988). |
|---|---|
| Proof of Claim | "New Mexico has adopted Restatement (Second) of Torts Section 876, which recognizes the liability of third persons for the tort of another if the person 'knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to himself.'"  *GCM, Inc.*, 947 P.2d at 147 (quoting *Rael v. Cadena*, 604 P.2d 822, 822-23 (N.M. Ct. App. 1979)). |
| Statute of Limitations | There is a four (4) year statute of limitations on actions "for the conversion of personal property." N.M. Stat. Ann. § 37-1-4 (West).  *See, e.g., Wilde v. Westland Dev. Co.*, 241 P.3d 628, 635 (N.M. Ct. App. 2010).

There is, however, a three (3) year statute of limitations for conversion of an instrument.  N.M. Stat. Ann. §55-3-118(g) (West). |

31

## NEW YORK

| Elements | New York law "permits a claim for aiding and abetting conversion." *Dickinson v. Igoni*, 76 A.D.3d 943, 945 (N.Y. App. Div. 2010) (internal quotations omitted) (dismissing claim for aiding and abetting conversion of equity in real property on grounds that there is no underlying tort committed, since "[a]n action sounding in conversion does not lie where the property involved is real property"). |
|---|---|
| | In order to establish a claim for aiding and abetting conversion, the plaintiff must prove: "(1) the existence of a violation committed by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the violation." *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02 Civ. 2561, 2006 WL 335357, at *5 (S.D.N.Y. Feb. 15, 2006).  In addition, in New York, "[c]onversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex.*, 660 N.E.2d 1121, 1126 (N.Y. 1995) (quoting *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105, 156 N.E. 629).  Under New York law, the two key elements of conversion are: "(1) plaintiff's possessory right or interest in property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Pappas v. Tzolis*, 20 N.Y.3d 228, 234, 982 N.E.2d 576 (2012). |
| Proof of Claim | Aiding and abetting conversion requires that the "aider-abettor ha[ve] actual knowledge that the person who directly converted the plaintiff's property did not own that property." *Torrance Const., Inc. v. Jaques*, 8 N.Y.S.3d 441, 444 (N.Y. App. Div. 2015).  A plaintiff must show that the defendant "aided and assisted" the converter "with culpable knowledge that such funds did not belong to [the converter]." *Weisman, Celler, Spett & Modlin v. Chadbourne & Parke*, 706 N.Y.S. 2d 414, 414 (N.Y. App. Div. 2000).  "New York has not adopted a constructive knowledge standard for imposing aiding and abetting liability . . . . Thus, New York law requires *actual* knowledge of the wrongful conduct." *Dangerfield*, 2006 WL 335357, at *5 (emphasis in original). |
| | "A wrongful intent is not an essential element of the conversion." *Leve v. C. Itoh & Co.*, (Am.), 136 A.D.2d 477, 478 (N.Y. App. Div. 1988).  "An action for conversion of money may be made out 'where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question.'" *Thys v. Fortis Sec. LLC*, 74 A.D.3d 546, 547 (N.Y. App. Div. 2010) (quoting *Manufacturers Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113, 124 (N.Y. App. Div. 1990)). |
| | A defendant is considered to have rendered "substantial assistance" where the defendant "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [underlying harm] to occur . . . . However, the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Kaufman v. Cohen*, 760 N.Y.S.2d 157 (2003).  In contrast to aiding and abetting liability, "a cause of action for conversion need not allege or prove a tortious taking or even that defendants acted in bad faith." *Pokoik v. Gittens*, 171 A.D.2d 470, 471 (N.Y. App. Div. 1991). |
| Statute of Limitations | "For conversion, a three-year statute of limitations applies." *Torrance Const., Inc. v. Jaques*, 127 A.D.3d 1261, 1265 (N.Y. App. Div. 2015) (citing C.P.L.R. § 214(3)).  "A claim that a person aided and abetted a tort is governed by the same statute of limitations that is applicable to the underlying tort allegedly aided and abetted." *Pomerance v. McGrath*, 124 A.D.3d 481, 484 (N.Y. App. Div.).  Aiding and abetting conversion is, therefore, governed by the three-year statute of limitations for conversion under N.Y. C.P.L.R. § 214(3). *See Doukas v. Ballard*, 972 N.Y.S.2d 143 (N.Y. Sup. Ct. 2013). |

32

## NORTH CAROLINA

| Elements | It is not clear that North Carolina recognizes a claim for aiding and abetting conversion.  A review of case law indicates that North Carolina courts have not addressed whether it is a viable claim, and there is debate as to whether the state recognizes aiding and abetting other torts.  For example, in *Land v. Land*, the Court of Appeals expressly avoided answering whether aiding and abetting breach of fiduciary duty was a claim, but noted that it was "an 'unclear' issue."  No. COA11-1027, 2012 WL 3192605, at *8-9 (N.C. Ct. App. Aug. 7, 2012); *see also Ehrenhaus v. Baker*, 717 S.E.2d 9, 29 (N.C. Ct. App. 2011) ("First, it is unclear whether [ ] a cause of action [for aiding and abetting breach of fiduciary duty] exists in North Carolina.").  "'[C]onversion is defined as an authorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'"  *Spinks v. Taylor*, 278 S.E.2d 501, 506 (N.C. 1981) (quoting *Peed v. Burleson, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)). |
|---|---|
| **Proof of Claim** | As noted, it is not clear whether aiding and abetting tort liability is recognized in North Carolina, and thus it is similarly unclear what is required for liability to attach.  As for conversion, North Carolina has "two essential elements" – "there must be ownership in the plaintiff and a wrongful conversion by defendant."  *Lake Mary L.P. v. Johnston*, 551 S.E.2d 546, 552 (N.C. Ct. App. 2001). |
| **Statute of Limitations** | The three (3) year statute of limitations under  N.C. Gen. Stat. Ann. § 1-52(4) applies to conversion.  *See, e.g., Eubank v. Van-Riel*, 727 S.E.2d 25, 2012 (N.C. Ct. App. 2012) (applying three-year statute of limitations under§ 1-52(4) to plaintiff's conversion claim). <br><br> There is also a three (3) year statute of limitations for conversion of an instrument.  N.C. Gen. Stat. Ann. § 25-3-118(g). |

33

## NORTH DAKOTA

| | |
|---|---|
| **Elements** | As a preliminary matter, it is not clear whether North Dakota recognizes a claim for aiding and abetting conversion, or aiding and abetting torts generally.  Although North Dakota's comparative fault statute provides for joint and several liability among persons who contributed to the injury where the persons aided or encouraged the act, as a departure from the baseline of several liability, *see Case Credit Corp. v. Oppegard's, Inc.*, 701 N.W.2d 891, 894-95 (N.D. 2005), a review of case law does not indicate any aiding and abetting claims or elements.<br><br>"Conversion consists of a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner."  *Ritter, Laber & Associates, Inc. v. Koch Oil, Inc.*, 680 N.W.2d 634, 638 (N.D. 2004). |
| **Proof of Claim** | North Dakota case law does not appear to address the elements of aiding and abetting.  As for the underlying claim, "[c]onversion does not require bad intent on the part of the converter, but only an intent to control or interfere with an owner's rights to use to an actionable degree."  *Buri v. Ramsey*, 693 N.W.2d 619, 624 (N.D. 2005).  "The gist of a conversion is not in acquiring the complainant's property, but in wrongfully depriving him of it, whether temporarily or permanently, and it is of little relevance that the converter received no benefit from such deprivation."  *Doeden v. Stubstad*, 755 N.W.2d 859, 864 (N.D. 2008). |
| **Statute of Limitations** | There is a six (6) year statute of limitations for an action "for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property.  N.D. Cent. Code § 28-01-16(4). |

34

## OHIO

| Elements | As a preliminary matter, Ohio does not appear to recognize claims for aiding and abetting tortious acts.  In *DeVries Dairy, L.L.C. v. White Eagle Coop. Ass'n, Inc.*, the Ohio Supreme Court held that Ohio law does not provide for a cause of action for tortious acts in concert under § 876 of the Restatement.  974 N.E.2d 1194 (Ohio 2012).  The court stated that it had "never recognized a claim" under the Restatement and declined to do so in that case.  *Id.*  Since *DeVries*, the Court of Appeals has held that "Ohio does not recognize a cause of action for aiding and abetting a tortious act." *Wells Fargo v. Smith*, No. 2012-04-006, 2013 WL 938069, at *7 (Ohio Ct. App. Mar. 11, 2013) (affirming grant of summary judgment on aiding and abetting fraud claim). |
|---|---|
| | Ohio defines conversion as the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Gurry v. C.P.*, 972 N.E.2d 154, 158 (Ohio Ct. App. 2012) (internal quotations and citations omitted).  "To prevail on a conversion claim, a plaintiff must show: (1) ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of the plaintiff's property right, and (3) damages." *Pepin v. Hansing*, No. 13CA3552, 2013 WL 5433354, at *4 (Ohio Ct. App. Sept. 20, 2013) (citations omitted). |
| **Proof of Claim** | As noted, Ohio does not appear to recognize aiding and abetting tort liability.  Assuming it is, one pre-*DeVries* case from the Court of Appeals noted that civil aiding and abetting liability would require "unlawful intent," specifically knowledge of the underlying wrongful conduct, as well as substantial assistance.  *See Whelan v. Vanderwist of Cincinnati*, No. 2010-G-2999, 2011 WL 6938600, at *3-5 (Ohio Ct. App. Dec. 30, 2011) ("[E]ven if an aiding and abetting claim was recognized in Ohio, the facts as alleged . . . fail to state a viable claim.").  As for the conversion, to state a claim for conversion, plaintiff "need not demonstrate that defendant acted in bad faith.  [N]either motive nor mistake is a defense to a claim of conversion." *Dice v. White Family Cos.*, 878 N.E.2d 1105, 1111 (Ohio Ct. App. 2007) (citations and internal quotations omitted). |
| **Statute of Limitations** | "An action for conversion must be brought within four years after the cause of action accrued." *DeLorean Cadillac, Inc. v. Weaver*, No. 71827, 1997 WL 607533, at *2 (Ohio Ct. App. Oct. 2, 1997) (citing R.C. 2305.09(B)). |
| | There is, however, a three (3) year statute of limitations for conversion of an instrument.  Ohio Rev. Code Ann. § 1303.16(g) (West). |

35

## OKLAHOMA

| Elements | It is unclear whether Oklahoma recognizes a cause of action for aiding abetting conversion. Some case law suggests that the cause of action could be recognized. *See Atlas Hotel Supply Co. v. Baney*, 543 P.2d 289, 292-93 (Okla. 1975) (finding ample evidence to support a finding that the defendant 'aided' and 'assisted' in the commission of the tort of conversion" (internal citations omitted). <br><br> Oklahoma "has long held that conversion is 'any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'" *Installment Fin. Corp. v. Hudiburg Chevrolet, Inc.*, 794 P.2d 751, 753 (Okla. 1990) (citing *Steenbergen v. First Fed. Sav. and Loan of Chickasha*, 753 P.2d 1330, 1332 (Okla. 1987); *Benton v. Ortenberger*, 371 P.2d 715, 716 (Okla. 1962)). "The term 'dominion' implies 'both title and possession and appears to require complete retention of control over disposition.'" *Id.* (quoting *Eastex Aviation, Inc. v. Sperry & Hutchinson*, 522 F.2d 1299, 1305 (5th Cir. 1975)). "In terms of essential elements, one seeking damages for conversion must plead and prove (a) he owns or has a right to possess the property in question, (b) that defendant wrongfully interfered with such property right, and (c) the extent of his damages." *White v. Webber-Workman Co.*, 591 P.2d 348, 350 (Okla. Ct. App. 1979). |
|---|---|
| Proof of Claim | In the criminal context, Oklahoma holds liable as principals all persons who knowingly, and with criminal intent, aid and abet the commission of a crime. *See Littlejohn v. State*, 181 P.3d 736, 740 (Okla. Civ. App. 2008). As for the conversion, "[i]t is not necessary to constitute a conversion that the property come into the defendant's possession wrongfully." *Steenbergen*, 753 P.2d at 1332 (citing *Fed. Nat'l Bank of Shawnee v. Lindsey*, 43 P.2d 1036 (Okla. 1935)). "Nor is it necessary that the alleged converter apply the property to his own use . . . or be in bad faith." *Id.* (citation and internal citation omitted). "In actions for conversion the burden of proof is on the plaintiff to prove every fact essential to his right to recover." *Benton*, 371 P.2d at 717. In other words, the Plaintiff must show "title or ownership in himself, of the property involved," "conversion of the property involved," an "affirmative wrongful act" by the Defendant, and damages. *Id.* All of these elements must be proved "by a preponderance of the evidence, and if the evidence is evenly balanced on the right of possession he cannot recover." *Id.* |
| Statute of Limitations | "A claim for conversion must be filed within two years from the time the cause of action accrued." *Tillman v. Shofner*, 90 P.3d 582, 583 (Okla. Civ. App. 2004) (citing 12 O.S. § 95(3)). <br><br> There is, however, a three (3) year statute of limitations for conversion of an instrument. Okla. Stat. Ann. tit. 12A, § 3-118(g) (West). |

36

## OREGON

| Elements | The Supreme Court of Oregon has recognized a person may be held liable for aiding and abetting a tort under the Restatement. *See Granewich v. Harding*, 985 P.2d 788, 792-93 (Or. 1999). <br><br> Additionally, in Oregon, "[t]o succeed in a conversion claim, the plaintiff must prove 'an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel.'" *Cron v. Zimmer*, 296 P.3d 567, 576-77 (Or. Ct. App. 2013) (quoting *Mustola v. Toddy*, 456 P.2d 1004 (Or. 1969)). "For the purposes of a conversion claim, money can be chattel." *Id.* at 129 (citing *In re Martin*, 970 P.2d 638, 642 n. 1 (Or. 1998)). |
|---|---|
| Proof of Claim | The Supreme Court of Oregon has looked to the Restatement § 876(b), which provides for liability where the defendant "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement" to the primary violator. *Granewich*, 985 P.2d at 792 (quoting Restatement § 876). As for conversion, "'[b]ad faith is not required; the gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights.'" *Davis v. F.W. Fin. Servs., Inc.*, 317 P.3d 916, 926 (Or. Ct. App. 2013) (quoting *Naas v. Lucas*, 739 P.2d 1051 (Or. Ct. App. 1987)). To determine the seriousness of an interference and whether the defendant must pay the full value of property, Oregon courts will consider the following factors, among others: "'(a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right or control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; (f) the inconvenience and expense caused to the other.'" *Scott v. Jackson Cnty.*, 260 P.3d 744, 752 (Or. Ct. App. 2011) (quoting Restatement (Second) of Torts § 222A (1965)). |
| Statute of Limitations | There is a six (6) year statute of limitations under Or. Rev. Stat. Ann. § 12.080(4) for conversion. *See Rice v. Rabb*, 354 Or. 721, 723 (2014). Under Oregon law, claims for conversion "accrue when the plaintiff knows or should reasonably know of the elements of such a claim." *Id.* at 733-34. <br><br> There is also a six (6) year statute of limitations for conversion of an instrument. Or. Rev. Stat. Ann. § 73.0118(7)(a) (West). |

37

## PENNSYLVANIA

| Elements | Although Pennsylvania courts do not appear to have addressed whether aiding and abetting conversion is a claim, they have recognized aiding and abetting tort liability in other contexts. *See Koken v. Steinberg*, 825 A.2d 723, 731-32 (Pa. Commw. Ct. 2003). <br><br> Additionally, "[c]onversion under Pennsylvania law is 'the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification.'" *Underhill Coal Mining Co. v. Hixon*, 652 A.2d 343, 345 (Pa. Super. Ct. 1994) (citing *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964); *Bank of Landisburg v. Burruss*, 524 A.2d 896 (Pa. Super. Ct. 1987)). |
|---|---|
| Proof of Claim | Assuming aiding and abetting conversion is a claim, a plaintiff would likely have to meet the Restatement's requirement of knowledge and substantial assistance.  *See Koken*, 825 A.2d at 732.  As for the underlying conversion, "[t]he intent required is not necessarily a matter of conscious wrongdoing.  It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 254 A.2d 637, 638 (Pa. 1969). |
| Statute of Limitations | "Conversion actions are subject to the two year period of limitation set forth at 42 Pa.C.S. § 5524(3)…"  *Bednar v. Marino*, 646 A.2d 573, 578 (Pa. Super. Ct. 1994). <br><br> There is, however, a three (3) year statute of limitations for conversion of an instrument.  13 Pa. Cons. Stat. Ann. § 3118(g) (West). |

38

## RHODE ISLAND

| Elements | Although it is unclear whether aiding and abetting conversion is a claim, the Supreme Court of Rhode Island has endorsed the Restatement test for aiding and abetting tort liability generally. *See Curtin v. Lataille*, 527 A.2d 1130, 1132-33 (R.I. 1987).<br><br>In Rhode Island, "the gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." *Fuscellaro v. Industrial National Corp.*, 368 A.2d 1227, 1230 (R.I. 1977). "To maintain an action for conversion, plaintiff must establish that [it] was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." *Montecalvo v. Mandarelli*, 682 A.2d 918, 928 (R.I. 1996). The "intentional exercise of control over the plaintiff's chattel must so seriously interfere [ ] with the right of another to control it that the [defendant] may justly be required to pay the other the full value of the chattel." *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 97 (R.I. 2006) (internal quotations omitted). |
|---|---|
| **Proof of Claim** | Aiding and abetting liability requires that the defendant "share in the criminal intent of the principal, and [ ] that there exist a community of unlawful purpose." *Curtin*, 527 A.2d at 1132 (citing *State v. Gazerro*, 420 A.2d 816, 828 (R.I. 1980)). The Supreme Court of Rhode Island has stated that, in determining whether "the assistance of encouragement is substantial," factors to consider are "the presence and the state of mind of the alleged aider," "the relationship between [the aider] and the principle," and "the nature of the act encouraged and the amount of assistance given." *Curtin*, 527 A.2d at 1132. As for the conversion, "[i]t has long been the law in Rhode Island that in order to sustain an action for conversion of personal chattels, a plaintiff must demonstrate an ownership or possessory interest in the property at the time of the conversion." *DeChristofaro v. Machala*, 685 A.2d 258, 263 (R.I. 1996) (citing *Larson v. Dawson*, 53 A. 93, 94 (R.I. 1902)). "A plaintiff must also identify the allegedly converted property with reasonable certainty, in order to render it capable of identification, for the purpose of determining whether the property in fact belonged to the plaintiff at the time of its conversion." *Id.* "Money, where specifically identifiable, is usually regarded as a form of property subject to conversion… This Court has held that the question of whether money can be the subject matter of an action for conversion generally depends on whether the defendant is under any obligation to deliver specific money to the plaintiff." *Id.* (internal citations omitted). |
| **Statute of Limitations** | In Rhode Island, all civil actions must be brought within ten (10) years unless specifically provided by statute or rule. R.I. Gen. Laws § 9–1–13 (West). A claim for conversion is subject to this 10 year statute of limitations under R.I. Gen. Laws § 9–1–13(a). *Waters v. Walt Disney World Co.*, 237 F. Supp. 2d 162, 166 (D.R.I. 2002).<br><br>There is, however, a three (3) year statute of limitations for conversion of an instrument. R.I. Gen. Laws Ann. § 6A-3-118(g) (West). |

39

SOUTH CAROLINA

| Elements | As a preliminary matter, it is not clear whether aiding and abetting conversion is a valid claim in South Carolina. However, in other contexts, courts have recognized aiding and abetting liability, and required that the plaintiff prove that the defendant knowingly participated in the breach. *See Gordon v. Busbee*, 723 S.E.2d 822, 830 (S.C. Ct. App. 2011).<br><br>Additionally, in South Carolina, "'[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights. To establish the tort of conversion, it is essential that the plaintiff establish either title to or right to the possession of the personal property.'" *Regions Bank v. Schmauch*, 582 S.E.2d 432, 442 (S.C. Ct. App. 2003) (quoting *Crane v. Citicorp Nat'l Servs., Inc.*, 437 S.E.2d 50 (S.C. 1993)). |
|---|---|
| **Proof of Claim** | Assuming that aiding and abetting conversion is a recognized claim, a plaintiff would likely have to prove that the defendant had actual knowledge of the underlying conversion. *See Gordon*, 723 S.E.2d at 830. "Money may be the subject of conversion when it is capable of being identified and there may be conversion of determinate sums even though the specific coins and bills are not identified." *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 498, 392 S.E.2d 789, 792 (1990) (citing *Owens v. Andrews Bank & Trust Co.*, 265 S.C. 490, 220 S.E.2d 116 (1975)). |
| **Statute of Limitations** | There is a three (3) year statute of limitations on an action "for taking, detaining, or injuring any goods or chattels including an action for the specific recovery of personal property." S.C.Code Ann. § 15-3-530(4). The three-year statute of limitations under S.C.Code Ann. § 15-3-530 is applicable to conversion. *See Walsh v. Woods*, 594 S.E.2d 548, 551 (S.C. Ct. App. 2004).<br><br>There is also a three (3) year statute of limitations for conversion of an instrument. S.C. Code Ann. § 36-3-118(g). |

## SOUTH DAKOTA

| | |
|---|---|
| **Elements** | A review of case law suggests that the claim of aiding and abetting conversion is recognized in South Dakota.  The Supreme Court of South Dakota has stated that, "[I]t is true that any person aiding in the conversion of property is responsible to the owner."  *Richstein v. Roesch*, 25 N.W.2d 558, 560 (S.D. 1946).  In another case, the court treated the defendant who aided in conversion as a joint tortfeasor, stating "any person aiding in the conversion of property is responsible to the owner" if the defendant "knowingly participated" in the conversion.  *Richstein v. Roesch*, 25 N.W.2d 558, 560 (S.D. 1946).  In *Skinner v. First Nat. Bank & Trust Co. of Watertown*, the court stated that "in regard to the liability of any person who aids in an act of conversion: Every person is liable in trover who personally or by agent commits an act of conversion or who participates by instigating, aiding or assisting another, or who benefits by its proceeds in whole or in part." 249 N.W. 821, 823 (S.D. 1933).<br><br>In South Dakota, "[c]onversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right."  *First Am. Bank & Trust, N.A. v. Farmers State Bank of Canton*, 756 N.W.2d 19, 31 (S.D. 2008).  "[I]n order to prove conversion, the plaintiff must show (1) [plaintiff] owned or had a possessory interest in the property; (2) [plaintiff's] interest in the property was greater than the [defendant's]; (3) [defendant] exercised dominion or control over or seriously interfered with [plaintiff's] interest in the property; and (4) such conduct deprived [plaintiff] of its interest in the property."  *W. Consol. Co-op. v. Pew*, 795 N.W.2d 390, 397 (S.D. 2011) (citing *First Am. Bank & Trust, N.A.*, 756 N.W.2d at 31). |
| **Proof of Claim** | Civil aiding and abetting liability requires that the defendant have knowledge of the wrong, and in some cases that requires actual knowledge.  *Glover*, 652 S.W.2d at 775.  Moreover, in the context of a breach of fiduciary duty, South Dakota requires that the aider give substantial assistance to the *breach* itself, not simply to the person committing the breach.  *Id.*  In contrast, general conversion liability does not require knowledge or intent on the part of the defendant.  *Pew*, 795 N.W.2d at 397.  "The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the *unwarranted* interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action."  *Id.* |
| **Statute of Limitations** | The six (6) year statute of limitations under S.D. Codified Laws § 15-2-13(4) governs conversion.  *See, e.g.*, *Stormo v. City of Sioux Falls*, No. CIV. 12-4057-KES, 2012 WL 5879438, at *4 (D.S.D. Nov. 21, 2012) (citing SDCL 15-2-13(4)); *Wang v. Farmers State Bank of Winner*, 447 N.W.2d 516, 518 (S.D. 1989) (citing SDCL 15-2-13(4)).<br><br>There is, however, a three (3) year statute of limitations for conversion of an instrument.  S.D. Codified Laws § 57A-3-118(g). |

41

## TENNESSEE

| Elements | The elements of an aiding and abetting conversion claim do not appear to have been enumerated in Tennessee law.  However, "Tennessee has adopted the Restatement of Torts § 876(b) theory of aiding and abetting, under which the plaintiff must show that 'the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts.'" *Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*, 21 F. Supp. 2d 785, 795 (W.D. Tenn. 1998) (quoting *Cecil v. Hardin*, 575 S.W.2d 268, 272 (Tenn. 1978)). <br><br> In addition, in Tennessee, "[c]onversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) (citations omitted). |
|---|---|
| Proof of Claim | The common law civil aiding and abetting liability requires that "the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts." *PNC Multifamily*, 387 S.W.3d at 552.  However, as for conversion, "[a] wrongful intent on the part of the defendant is not an element of conversion and, therefore, need not be proved." *PNC Multifamily*, 387 S.W.3d at 554.  "To be liable [for conversion], the defendant need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so; good faith is generally immaterial." *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).  "There is some relaxation of this rule, however, in cases absolving of liability for conversion agents who themselves acted in good faith, without actual notice of the interference with the plaintiff's rights." *Id.* (citing *J. T. Fargason Co. v. Ball*, 159 S.W. 221 (Tenn. 1913)). |
| Statute of Limitations | There is a three (3) year statute of limitations for "[a]ctions for the detention or conversion of personal property.  T.C.A. § 28-3-105(2)). <br><br> There is also a three (3) year statute of limitations for conversion of an instrument.  Tenn. Code Ann. § 47-3-118(g) (West). |

42

**TEXAS**

| | |
|---|---|
| **Elements** | As a preliminary matter, it is not clear that aiding and abetting conversion is a cognizable claim in Texas. As this Court itself has acknowledged, the "law is admittedly unclear" as to whether Texas law even recognizes common law aiding and abetting as a cause of action. *OSIC v. Greenberg Traurig, LLP*, 12-cv-4641 (Dkt. No. 123) at 18.<br><br>Nevertheless, to the extent some courts may recognize a cause of action for aiding and abetting conversion, *see Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942), this Court has previously held that, under Texas law, "aiding and abetting liability requires (1) the commission of a tort by a primary violator; (2) knowledge of this tort on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Troice v. Proskauer Rose LLP*, No. 3:09-cv-1600, 2015 WL 1219522, at *10 (N.D. Tex. Mar. 4, 2015) (citing *In re Ramirez*, 413 B.R. 621, 629 (Bankr. S.D. Tex. 2009)).<br><br>And in Texas, "[c]onversion is defined as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997) (citing *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex. 1992)). To establish a conversion claim, a "plaintiff must prove: (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property." *Ojeda v. Wal-Mart Stores, Inc.*, 956 S.W.2d 704, 707 (Tex. App.—San Antonio 1997, pet denied). |
| **Proof of Claim** | "Aiding and abetting liability requires . . . knowledge of [an underlying] tort on the part of the aider and abettor." *Proskauer*, 2015 WL 1219522, at *10 (citing *In re Ramirez*, 413 B.R. at 629). "'Money is subject to conversion only when it can be identified as a specific chattel, and not where the indebtedness may be discharged by the payment of money generally.'" *Engenium Solutions, Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 797 (S.D. Tex. 2013) (quoting *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161-64 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). "Generally, when a depositor deposits funds into a bank account, those funds are unrestricted. The bank's obligation is to pay those funds back pursuant to the depositor's instruction." *Mauriceville Nat'l Bank v. Zernial*, 892 S.W.2d 858, 860 (Tex. 1995). "Actions for conversion of money are available in Texas only where 'money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper.'" *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (quoting *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied)). |
| **Statute of Limitations** | There is a two (2) year statute of limitations for "conversion of personal property." Tex. Civ. Prac. & Rem. § 16.003(a) (West).<br><br>There is, however, a three (3) year statute of limitations for conversion of an instrument. Tex. Bus. & Com. Code Ann. § 3.118(g) (West). |

43

UTAH

| Elements | As a preliminary matter, it is not clear whether Utah recognizes aiding and abetting conversion. In *Albright v. Attorney's Title Ins. Fund*, the federal district court for the District of Utah stated that "[a]lthough Utah appears to recognize aiding and abetting liability for intentional torts . . . Utah courts have not specifically recognized a cause of action for aiding and abetting conversion." No. 03CV517, 2008 WL 2952260, at *12 (D. Utah July 28, 2008) (dismissing aiding and abetting conversion claim where defendant did not have knowledge of the wrong). The *Albright* court cited *Russell/Packard Development, Inc. v. Carson*, where the Court of Appeals of Utah stated that "[p]arties who knowingly join a fiduciary in fraudulent acts, whereby the fiduciary breaches his or her fiduciary duties, are jointly and severally liable with the fiduciary." 78 P.3d 616, 626 (Utah Ct. App. 2003).<br><br>Under Utah law, "'[a] conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.'" *Jones v. Salt Lake City Corp.*, 78 P.3d 988, 992 (Utah Ct. App. 2003) (quoting *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 295–96 (Utah 1999)). "Specifically, 'a party alleging conversion mush show that he or she is entitled to *immediate possession* of the property at the time of the alleged conversion.'" *Id.* (citing *Fibro Trust*, 974 P.2d at 292). "It requires such a serious interference with the owner's right that the person interfering therewith may reasonably be required to buy the goods." *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958). |
|---|---|
| Proof of Claim | Utah courts would appear to require that an aider and abettor have awareness of the underlying wrong for civil liability. *Mower*, 278 P.3d at 1087-88. As for the underlying conversion, "'[a]lthough conversion results only from intentional conduct it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control over the goods inconsistent with the owner's right.'" *Phillips v. Utah State Credit Union*, 811 P.2d 174, 179 (Utah 1991) (quoting *Allred v. Hinkley*, 8 Utah 2d 73, 76, 328 P.2d 726, 728 (1958)). The plaintiff must be able to demonstrate "'an act of willful interference with property, done without lawful justification, by which the person entitled to property is deprived of its use and possession,' and that the party 'is entitled to immediate possession of the property at the time of the alleged conversion.'" *Jones & Trevor Mktg., Inc. v. Lowry*, 233 P.3d 538, 544 n.13 (Utah Ct. App. 2010 (quoting *Bennett v. Huish*, 155 P.3d 917, 928 (Utah Ct. App. 2007)). |
| Statute of Limitations | The statute of limitations governing conversion is four (4) years. *See Carson*, 78 P.3d at 620 (noting that a four year statute of limitations applies to conversion and citing a prior incarnation of what is currently Utah Code Ann. § 78B-2-307); *but see Ockey v. Lehmer*, 189 P.3d 51, 60 (Utah 2008) (citing Utah Code § 78B-2-305(2) and indicating that there is a three year statute of limitations for conversion).<br><br>There is, however, a three (3) year statute of limitations for conversion of an instrument. Utah Code Ann. § 70A-3-118(7)(West). |

44

## VERMONT

| Elements | In Vermont, the elements of aiding and abetting a conversion are (1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. *Montgomery v. Devoid*, 915 A.2d 270, 278 (Vt. 2006).<br><br>In addition, under Vermont law, to establish a claim for conversion, a plaintiff must demonstrate "only that another has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title.'" *Id.* (quoting *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294, 299, 629 A.2d 325, 328 (1993)). |
|---|---|
| Proof of Claim | Liability for aiding and abetting conversion requires that the defendant have had actual knowledge of the conversion. *See Montgomery*, 915 A.2d at 278. In *Montgomery*, the Supreme Court of Vermont found that assistance was not substantial where there was "initial lack of knowledge regarding the source of the [converted property]… fleeting control over the [converted property]… and the "relatively innocuous effect" of conduct." *Id.* ("their conduct is too removed and tenuous to provide a necessary causal link for their assistance to qualify as substantial"). The Court also stated that, in accord with the Restatement (Second) of Torts, it would consider the following factors when "determining the seriousness of the interference and the justice of imposing liability on the interfering party…: '(a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the other's right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the other's right of control; (E) the harm done to the chattel; (f) the inconvenience and expense caused to the other.'" *Id.* at 275-76. Under Vermont law, "[t]o make out a claim for conversion… plaintiff must show an immediate right to possession." *Miller v. Merchants Bank*, 415 A.2d 196, 199 (Vt. 1980). |
| Statute of Limitations | Vermont has a general, catch-all six (6) year statute of limitations on civil actions. Vt. Stat. Ann. tit. 12, § 511 (West), as well as a three (3) year statute of limitations on actions concerning damage to personal property, specifically. Vt. Stat. Ann. tit. 12, § 512(5) (West). A review of Vermont case law and secondary sources does not clarify which provision applies to conversion claims. Vermont also has a three (3) year statute of limitation for conversion of an instrument. Vt. Stat. Ann. tit. 9A, § 3-118(g) (West). |

## VIRGINIA

| Elements | As a preliminary matter, it is not clear whether Virginia recognizes liability for aiding and abetting torts. In *Halifax Corp v. Wachovia Bank*, the Supreme Court of Virginia declined to directly address whether aiding and abetting a breach of fiduciary duty was a cognizable claim, finding that even if recognized, the plaintiff had failed to adequately plead the cause of action. 604 S.E.2d 403, 412-15 (Va. 2004). In *Calderon v. Aurora Loan Services, Inc.*, a federal district court looked to *Halifax* and dismissed claims for aiding and abetting a tort. No. 10cv129 (JCC), 2010 WL 2306343, at *6 (E.D.Va. June 3, 2010); *see also MicroStrategy Servs. Corp. v. OpenRisk, LLC*, No. 14cv1244 (JCC/IDD), 2015 WL 1221263, at *3 (E.D.Va. Mar. 17, 2015) (dismissing aiding and abetting breach of fiduciary duty claim); *but see AvalonBay Cmtys., Inc. v. Willden*, No. 08-cv-777, 2009 WL 2431571, at *11 (E.D.Va. Aug. 7, 2009) (relying on *Halifax* and finding that "Virginia law allows a third party to be liable for another party's breach of fiduciary duty when the third party knowingly participated in the breach").<br><br>In Virginia, "[c]onversion 'encompasses any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it.'" *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 443 (Va. 2003) (quoting *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 905 (Va. 1994)). |
|---|---|
| Proof of Claim | If recognized, civil aiding and abetting liability would likely require that the aider "affirmatively aid the [tort] with the requisite mens rea, or culpable statement of mind." *AvalonBay*, 2009 WL 2431571 at *11 (citing *Halifax*, 604 S.E.2d at 413-14). In other words, the plaintiff would have to show that the defendant knowingly participated in the tort. *See id.* With regard to the underlying tort, "[a]n action for conversion can be maintained only by the person having a property interest in and entitled to the immediate possession of the item alleged to have been wrongfully converted." *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000) (citing *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 906 (Va. 1994)). "To assert a claim for conversion, a plaintiff must prove by a preponderance of the evidence (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956)). |
| Statute of Limitations | The five (5) year statute of limitations under Va. Code Ann. § 8.01-243(B) applies to a conversion action. *See, e.g., Willard v. Moneta Bldg. Supply, Inc.*, 551 S.E.2d 596, 599 (Va. 2001) (noting that it is "well-established by our cases that actions for… conversion constitute claims of injury to property" and applying the statute of limitations under § 8.01-243(B)). |

46

WASHINGTON

| Elements | Washington does not appear to have enumerated the elements of an aiding and abetting conversion claim. However, Washington recognizes that a "person who knowingly assists another in the commission of a tort … is liable for losses proximately caused thereby." *Vanguard Int'l, Inc. v. Guangdong Fully, Ltd.*, No. 57396-9-I, 2008 WL 116268, at *4 (Wash. Ct. App. Jan. 14, 2008) (quoting *LaHue v. Keystone Inv. Co.*, 496 P.2d 343, 353 (Wash. Ct. App. 1972)). Courts in Washington appear to have recognized that an aider and abettor may be liable for conversion. *See Martin v. Sikes*, 229 P.2d 546, 278 (Wash. 1951) ("On the other hand, it is quite clear that, to support an action for conversion, it is not always necessary to show that the defendant himself has personally acquired the possession, as when . . . the defendant has participated in the wrongful act of a third party who himself has taken possession, to the extent of aiding or abetting the consummation of the wrong." (internal citations omitted)).<br><br>Under Washington law, "[c]onversion is the willful interference with another's property without lawful justification, resulting in the deprivation of the owner's right to possession." *Lowe v. Rowe*, 294 P.3d 6, 11 (Wash. Ct. App. 2012) (citing *Brown v. Brown*, 239 P.3d 602 (Wash. Ct. App. 2010)). |
|---|---|
| Proof of Claim | For general civil aiding and abetting liability, the plaintiff must demonstrate that the defendant knowingly assisted in the tortious conduct. *See Vanguard Int'l, Inc. v. Guangdong Fully, Ltd.*, No. 57396-9-I, 2008 WL 116268, at *4 (Wash. Ct. App. Jan. 14, 2008). However, "[w]rongful intent is not a necessary element of conversion, and good faith cannot be shown as a defense to conversion." *Paris Am. Corp. v. McCausland*, 759 P.2d 1210, 1215 (Wash. Ct. App. 1988) (citing *Clapp v. Johnson*, 57 P.2d 1235 (Wash. 1936)). "'[N]either good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action [in conversion].'" *In re Marriage of Langham & Kolde*, 106 P.3d 212, 216 (Wash. 2005) (quoting *Judkins v. Sadler–MacNeil*, 376 P.2d 837 (Wash. 1962)). "In order to make a prima facie case in conversion, the burden is on the plaintiff to prove a right to possess the property converted." *Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc.*, 626 P.2d 30, 35 (Wash. Ct. App. 1981). "[T]he plaintiff need only establish some property interest in the goods allegedly converted." *Id.* |
| Statute of Limitations | "Conversion claims are subject to a three-year statute of limitations." *Crisman v. Crisman*, 931 P.2d 163, 165 (Wash. Ct. App. 1997) (citing RCW 4.16.080(2)), *as amended on denial of reconsideration* (Feb. 14, 1997).<br><br>There is a three (3) year statute of limitations for conversion of an instrument. Wash. Rev. Code Ann. § 62A.3-118 (g) (West). |

47

## WEST VIRGINIA

| Elements | Federal courts in West Virginia have held that the State of West Virginia recognizes civil aiding and abetting claims liability for torts. *See, e.g., Clark v. Milam*, 847 F. Supp. 409, 419 (S.D.W. Va. 1994). Specifically, "'[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'" *United Bankshares, Inc. v. St. Paul Mercury Ins. Co.*, No. 6:10-CV-00188, 2010 WL 4630212, at *8 (S.D.W. Va. Nov. 4, 2010). |
| :--- | :--- |
| | Under West Virginia law, "'[a]ny distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved the plaintiff is entitled to recovery irrespective of good or bad faith, care or negligence, knowledge or ignorance.'" *Miami Coal Co. v. Hudson*, 332 S.E.2d 114, 121 (1985) (quoting *Pine and Cypress Manufacturing Co. v. American Engineering and Construction Co.*, 97 W.Va. 471, 472, 125 S.E. 375 (1924)). |
| **Proof of Claim** | Civil aiding and abetting liability requires that the defendant have knowledge of the wrong and give substantial assistance in furtherance of the conduct. *See United Bankshares, Inc. v. St. Paul Mercury Ins. Co.*, No. 6:10-CV-00188, 2010 WL 4630212, at *8 (S.D.W. Va. Nov. 4, 2010). The Supreme Court of Appeals of West Virginia has looked to § 876(b) of the Restatement for criteria in determining whether a person is liable for aiding and abetting a tort. *See Courtney v. Courtney*, 413 S.E.2d 418, 426 (W. Va. 1991). Specifically, the court will consider the nature of the act encouraged, the amount of assistance given, the defendant's presence at the time of the tort, the defendant's relation to the other tortfeasor, the defendant's state of mind, and the foreseeability of the harm. *Id.* (quoting *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1163 (3d Cir. 1986)); *Clark*, 847 F. Supp. at 419. |
| **Statute of Limitations** | The statute of limitations for conversion is two (2) years. *See, e.g., Dunn v. Rockwell*, 689 S.E.2d 255, 268 (W. Va. 2009) (applying the two year statute of limitations under W. Va. Code § 55–2–12 to a conversion claim). |
| | There is, however, a three (3) year statute of limitations for conversion of an instrument. W. Va. Code Ann. § 46-3-118(g) (West). |

48

WISCONSIN

| Elements | Wisconsin does not appear to have enumerated the elements to an aiding and abetting conversion claim. However, in Wisconsin, "a person may be held civilly liable for aiding and abetting if he or she: (1) undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) consciously desires or intends that his conduct will yield such assistance." *Knox Enters. v. Jetzer*, 787 N.W.2d 60 (Wis. Ct. App. 2010) (citing *Edwardson v. Am. Fam. Mut. Ins. Co.*, 589 N.W.2d 436 (Wis. Ct. App. 1998)).<br><br>Under Wisconsin law, "[t]he elements of tortious conversion comprise: (1) intentionally controlling/taking property belonging to another; (2) controlling/taking property without the owner's consent; and (3) those acts resulting in serious interference with the rights of the owner to possess the property." *Bruner v. Heritage Companies*, 593 N.W.2d 814, 818 (Wis. Ct. App. 1999) (citing *Eden Stone Co. v. Oakfield Stone Co.*, 479 N.W.2d 557, 565 (Wis. Ct. App. 1991)). |
|---|---|
| Proof of Claim | Money may be the subject of a conversion. *Methodist Manor of Waukesha, Inc. v. Martin*, 647 N.W.2d 409, 412 (Wis. Ct. App. 2002) (citing *Regas v. Helios*, 186 N.W. 165, 166 (Wis. 1922)). "Intent is…an essential element of an aiding and abetting claim: Mere presence, with no effort to prevent unlawful conduct, is not aiding and abetting unless an intent to assist is communicated." *Grad v. Associated Bank, N.A.*, 801 N.W.2d 349, 349 (Wis. Ct. App. 2011) (internal quotation marks omitted).  In contrast, under Wisconsin law, "wrongful intent or knowledge that what is being taken rightfully belongs to another" is not a required element of tortious conversion. *See Bruner v. Heritage Companies*, 593 N.W.2d 814, 818 (Wis. Ct. App. 1999). |
| Statute of Limitations | "An action to recover damages for the wrongful taking, conversion or detention of personal property shall be commenced within 6 years after the cause of action accrues or be barred."  Wis. Stat. § 893.51(1).<br><br>There is, however, a three (3) year statute of limitations for conversion of an instrument.  Wis. Stat. Ann. § 403.118(7) (West). |

49

## WYOMING

| Elements | As a preliminary matter, a review of case law does not indicate that Wyoming courts have addressed whether aiding and abetting conversion is a cognizable claim.  More generally, Wyoming does not appear to have addressed whether there is civil aiding and abetting liability for intentional torts.<br><br>In Wyoming, a civil claim for conversion requires that the plaintiff show: "(1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property."  *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 975 (Wyo. 1994). |
|---|---|
| **Proof of Claim** | Money may be the subject of a conversion action, but the money needs to be "identifiable" and "there must also be an obligation to deliver that money in a specific manner."  *Ferguson*, 884 P.2d at 978 (citations omitted).  Moreover, in the criminal context, Wyoming requires that an aider "share the principal's criminal intent," although "the prosecution is not required to prove that the aider and abettor possessed the identical intent to that possessed by the principal."  *Fales v. State*, 908 P.2d 404, 408 (Wyo. 1995) (citing *Jahnke v. State*, 692 P.2d 911, 921 (Wyo. 1984)). |
| **Statute of Limitations** | "The statute of limitations for the torts of conversion and trespass to chattels is four years."  *Cross v. Berg Lumber Co.*, 7 P.3d 922, 930 (Wyo. 2000) (citing Wyo. Stat. Ann. § 1-3-105(a)(iv)(B) (Lexis 1999)).<br><br>There is, however, a three (3) year statute of limitations for an action for conversion of an instrument.  Wyo. Stat. Ann. § 34.1-3-118(7) (West). |

50

# EXHIBIT 11

<u>**DEFENDANTS' ANALYSIS OF STATE LAW VARIATIONS**</u>

**AIDING AND ABETTING
BREACH OF FIDUCIARY DUTY**

**ALABAMA**

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | As a preliminary matter, it is questionable whether Alabama recognizes claims for aiding and abetting common law torts.  For example, in *Continental Casualty Co. v. Compass Bank*, No. CIV.A. 04-0766-KD-C, 2006 WL 566900, at *11 (S.D. Ala. Mar. 6, 2006), a federal district court granted summary judgment on the basis that "Alabama law does not recognize the common law cause of action of 'aiding and abetting breach of fiduciary duty.'"  The court noted that it was "[U]nable to find any substantial support for the plaintiff's argument that the common law tort of aiding and abetting a fiduciary breach exists under Alabama law." *Id.*  Specifically, the court stated that "it does not appear that Alabama recognizes the claim of aiding and abetting common law torts" and that, "[w]hen aiding and abetting is discussed in Alabama cases it is almost exclusively in the context of a criminal case or in reference to a specific civil statutory provision." *Id.*; *but see Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co.*, 390 So. 2d 601, 604 (Ala. 1980) (noting that the claims tried included "aiding and abetting Sandner in violating a fiduciary obligation he owed Shades Ridge"). <br><br> Generally, in a breach of fiduciary duty claim, "[t]he elements of such a claim are as follows: (1) the existence of a fiduciary duty between the parties; (2) the breach of that duty; and (3) damages suffered as a result of the breach." *Regions Bank v. Lowry*, 101 So. 3d 210, 219 (Ala. 2012). |
| **Existence of Fiduciary Duty** | "Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank. A fiduciary duty may arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances." *Baylor v. Jordan*, 445 So. 2d 254, 256 (Ala. 1984). |
| **Knowledge / Intent** | Does not appear to be applicable under Alabama law. |
| **Substantial Assistance / Proof** | Does not appear to be applicable under Alabama law. |
| **Statute of Limitations** | If a claim is recognized, the limitations period in Alabama would likely be two years.  "[A] cause of action for breach of fiduciary duty sounds in tort and, for purposes of the statute of limitations, is governed by § 6-2-38(l)." *Hensley v. Poole*, 910 So. 2d 96, 101 (Ala. 2005).  However, in this case, the court refuses to decide whether a claim for breach of fiduciary duties that sounds in conversion has a six-year statute of limitations. |

1

ALASKA

| Recognition as Cause of Action / Elements | Some cases suggest that a cause of action for aiding and abetting a breach of fiduciary duty exists, requiring the plaintiff to demonstrate that the defendant knowingly assisted in the breach of fiduciary duty. *See Beal v. McGuire*, 216 P.3d 1154, 1174 (Alaska 2009); *Wirum & Cash, Architects v. Cash*, 837 P.2d 692, 712 (Alaska 1992). Generally speaking, "aiding and abetting liability occurs when the actor knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other." *Beal v. McGuire*, 216 P.3d 1154, 1174 (Alaska 2009). <br><br> Moreover, in Alaska, "[a] claim of breach of fiduciary duty requires proof of three elements: the existence of a fiduciary duty, breach of that duty, and damages caused by that breach." *Rickerson v. Merrill Lynch Credit Corp.*, 2013 WL 6065240 (Alaska Super.). |
|---|---|
| Existence of Fiduciary Duty | "Whether there was a breach [of fiduciary duties] depends in part on what duties were owed." *Beal*, 216 P.3d at 1167. "The relationship between a bank and its customers is traditionally a debtor-creditor relationship which does not impose a fiduciary duty on the bank toward its customers." *Christianson v. First Nat. Bank Alaska*, No. S-13985, 2012 WL 6062124, at *21 (Alaska Dec. 5, 2012). However, "[a] fiduciary duty may arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances." *Baylor v. Jordan*, 445 So. 2d 254, 256 (Ala. 1984). "To prove a fiduciary relationship between a bank and a customer, the customer must show there was a mutual understanding between it and the bank that there was a fiduciary relationship between them, as opposed to merely proving a subjective belief on the customer's part that there was one. The relationship must be reciprocal and it is not enough to show that plaintiffs reposed its trust in the defendant; the latter must also have accepted the fiduciary relationship. [A] fiduciary relationship may arise between a lender and a borrower where the lender gains substantial control over the borrower's business affairs. [C]ontrol entails evidence that the lender was involved in the actual day-to-day management and operations of the borrower or that the lender had the ability to compel the borrower to engage in unusual transactions. Moreover, action taken by the creditor to minimize risk does not constitute total and absolute control." *Christianson*, 2012 WL 6062124, at *21 (internal citations omitted); *see also Faith, Hope & Love, Inc. v. First Alabama Bank of Talladega Cnty., N.A.*, 496 So. 2d 708, 712 (Ala. 1986) (finding insufficient evidence that the plaintiff relied on the bank's advice to his detriment therefore dismissing the claim of breach of fiduciary duty). |
| Knowledge / Intent | For general aiding and abetting liability, knowledge is required, as with aiding and abetting breach of fiduciary duty. *Beal*, 216 P.3d at 1174. |
| Substantial Assistance / Proof | The plaintiff has "the burden of establishing by a preponderance of the evidence" that the defendant breached a fiduciary duty. *Ben Lomond, Inc. v. Schwartz*, 915 P.2d 632, 635 (Alaska 1996). |
| Statute of Limitations | "The statute of limitations for a tort action is two years. Ordinarily, the period of limitations for a tort begins to run on the date the plaintiff is injured." *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1153 (Alaska 2009). |

ARIZONA

| Recognition as Cause of Action / Elements | When discussing a claim for aiding and abetting breach of a fiduciary duty, the Arizona Court of Appeals states, "[s]uch a claim requires proof of the following elements: (1) the primary tortfeasor must commit a tort causing injury to the plaintiff; (2) the defendant must know the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in achieving the breach." *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 276 P.3d 11, 40 (Ct. App. 2012); *see also Dawson v. Withycombe*, 216 Ariz. 84, 102 (Ari. 2007) ("it must be shown that the person knew the primary tortfeasor's conduct constituted a tort, and that the person substantially assisted or encouraged the primary tortfeasor in accomplishing the tort"). |
|---|---|
| Existence of Fiduciary Duty | "It is well settled in Arizona 'that the relationship between a Bank and an ordinary depositor, absent any special agreement, is that of debtor and creditor.'" *Valley Nat. Bank of Phoenix v. Electrical Dist.* No. 4367 P.2d 655, 662 (Ariz. 1961); *see Travelers Indem. Co. v. State*, 680 P.2d 1255, 1257 (Ariz. Ct. App.1984). Only once has an Arizona court held that a fiduciary relationship existed between a bank and its customer. *Stewart v. Phoenix Nat. Bank*, 49 Ariz. 34, 64 P.2d 101 (1937). "In Stewart, the supreme court concluded that a fiduciary duty was owed by a bank to its customer because (1) the bank acted as the customer's financial advisor for many (twenty-three) years, and (2) the customer relied upon the bank's financial advice." *McAlister v. Citybank (Arizona)*, 829 P.2d 1253, 1258, (Ariz. Ct. App. 1992). |
| Knowledge / Intent | "To be sure, "[b]ecause aiding and abetting is a theory of secondary liability, the party charged with the tort must have knowledge of the primary violation, and such knowledge may be inferred from the circumstances." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 485, ¶ 31, 36 (2002). However, proof of "actual and complete knowledge" of the primary violation "is not uniformly necessary." *Id.* at 488, ¶ 45. "The knowledge requirement can be satisfied even though the aider and abettor did not know all the details of the primary violation." *Sec. Title Agency, Inc. v. Pope*, 200 P.3d 977, 988 (Ariz. Ct. App. 2008). |
| Substantial Assistance / Proof | "Proof of substantial assistance requires a showing that the defendant's assistance was a substantial factor in causing the plaintiff's harm." *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 407, 276 P.3d 11, 41 (Ct. App. 2012). |
| Statute of Limitations | "[T]he statute of limitations is two years for breach of fiduciary duty . . ." *Serrano v. Serrano*, No. 1 CA-CV 10-0649, 2012 WL 75639, at *6 (Ariz. Ct. App. Jan. 10, 2012) (citing A.R.S. § 12–542(3) (2003)). |

3

## ARKANSAS

| Recognition as Cause of Action / Elements | In addressing an accusation that appellees aided and abetted doctors in breaching their fiduciary duties, Arkansas' Court of Appeals stated ,"[i]t is settled law that all who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor." *Springdale Diagnostic Clinic v. Nw. Physicians*, L.L.C., No. CA03-103, 2003 WL 22138591, at *4 (Ark. Ct. App. Sept. 17, 2003). The court goes on to approvingly cite Section 876 of the Restatement (Second) of Torts (1979) which provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." *Id.* |
|---|---|
| Existence of Fiduciary Duty | "In order for a bank's relationship with a customer to rise to the level that the bank owed the customer a fiduciary duty, there must be some factual underpinnings that establish a relationship of trust and confidence between a bank and its customers which is more than a debtor/creditor relationship." *Tedder v. Simmons First Bank of NWA*, No. CA02-201, 2003 WL 355699, at *4 (Ark. Ct. App. Feb. 19, 2003). This position has been confirmed in other court decisions such as *Hodge v. First Nat. Bank in Osceola*, No. CA 93-627, in which the court stated, "[g]enerally, the relationship between a bank and its customer is merely that of debtor and creditor." 1994 WL 188860, at *3 (Ark. Ct. App. May 4, 1994). The Court goes on to explain that by offering evidence one has sought and received financial advice in the past from a bank, one can demonstrate the bank has a fiduciary duty. *Id.* |
| Knowledge / Intent | The commentary to the Restatement explains that "advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance." The commentary goes on to state that if the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor "both when the act done is an intended trespass and when it is merely a negligent act." Restatement (Second) of Torts § 876 (1979). |
| Substantial Assistance / Proof | Under Arkansas law, plaintiffs must prove that a defendant breached his fiduciary duties by a preponderance of the evidence. *Mercy Health Sys. of Nw. Arkansas v. McGraw*, 429 S.W.3d 298 (Ark. Ct. App. 2013). |
| Statute of Limitations | Arkansas Code Annotated § 16–56–105 provides the applicable three-year statute of limitations for breach of fiduciary duty. *Jamison v. Estate of Goodlett*, 938 S.W.2d 865, 871 (Ark. Ct. App. 1997). |

4

CALIFORNIA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | "The elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Nasrawi v. Buck Consultants LLC*, 179 Cal. Rptr. 3d  813, 824 (Cal. Ct. App. 2014), review denied (Feb. 25, 2015).  Importantly, "[s]ome cases suggest a complaint must allege a fifth element—that the aider and abettor had the specific intent to facilitate the wrongful conduct." 179 Cal. Rptr. 3d at 824.<br><br>In California, "The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."  *Gutierrez v. Girardi*, 125 Cal. Rptr. 3d 210, 215 (Cal. Ct. App. 2011) (citing *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 (1995)). |
| **Existence of Fiduciary Duty** | "[A] fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." *Cleveland v. Johnson*, 147 Cal. Rptr. 3d 772, 791 (Cal. Ct. App. 2012).  "California courts have determined that the relationship of a bank-commercial borrower does not constitute a special relationship for the purposes of the covenant of good faith and fair dealing." *Kim v. Sumitomo Bank*, 21 Cal. Rptr. 2d 834, 837 (Cal. Ct. App. 4th 1993). |
| **Knowledge / Intent** | Actual knowledge of a third party's breach of a fiduciary duty is a required element of aiding and abetting a breach of fiduciary duty claim. *Nasrawi*, 179 Cal. Rptr. 3d at  824.  Additionally, some cases in California have required an allegation that the defendant had specific intent to facilitate the wrongful conduct.  *Id.* |
| **Substantial Assistance / Proof** | "The California Supreme Court has consistently held that 'a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action." *Schulz v. Neovi Data Corp*., 60 Cal. Rptr. 3d 810, 817 (Cal. Ct. App. 4th 2007).  Specifically, when a plaintiff is "within the sensitive context of a claim against a bank for aiding and abetting a customer's wrongdoing [there is] a strict application of the pleading requirement for the knowledge element of the aiding and abetting claim." *Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 408 (Cal. Ct. App. 2005).  Therefore, "a court must carefully scrutinize whether the plaintiff has alleged the bank had actual knowledge of the underlying wrong it purportedly aided and abetted." *Id.*  Alleging that a bank "knew something fishy was going on" does not adequately allege knowledge.  *Id.* |
| **Statute of Limitations** | The limitations period for aiding and abetting a breach of fiduciary duty is three years. Cal. Code Civ Proc § 338; *see also William L. Lyon & Assoc., Inc. v. Superior Court*, 204 Cal. App. 4th 1294, 1313 (Cal. App. 3d Dist. 2012).  "The statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort. Thus, the statute of limitations for aiding and abetting a breach of fiduciary duty is the same as the statute of limitations for breach of fiduciary duty. The statute of limitations for breach of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or nonfraudulent." *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 171 Cal. Rptr. 3d 548, 570 (Cal. Ct. App. 4th 2014), as modified (May 27, 2014). |

5

## COLORADO

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | "The elements of the tort of aiding and abetting a breach of fiduciary duty include: (1) breach by a fiduciary of a duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages. *Nelson v. Elway*, 971 P.2d 245, 249 (Colo. App. 1998). "The gravamen of a claim of aiding and abetting a breach of fiduciary duty is the defendant's 'knowing participation' in the fiduciary's breach of trust; wrongful intent is not necessary as the factfinder is required only to find that the [defendant] knew of the breach of duty and participated in it." *Id.* at 309. In Colorado, " [a] person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused. *Holmes v. Young*, 885 P.2d 305, 308 (Colo. App. 1994). |
| **Existence of Fiduciary Duty** | In Colorado, "[a] fiduciary relationship exists when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of their relationship. A fiduciary relationship can arise when one party occupies a superior position relative to another. It may be based upon a professional, business, or personal relationship." *Johnston v. CIGNA Corp.*, 916 P.2d 643, 646 (Colo. App. 1996); *see also W. Fire Truck, Inc. v. Emergency One, Inc.*, 134 P.3d 570, 575 (Colo. App. 2006). |
| **Knowledge / Intent** | "The gravamen of a claim of aiding and abetting a breach of fiduciary duty is the defendant's 'knowing participation' in the fiduciary's breach of trust; wrongful intent is not necessary as the factfinder is required only to "find that the [defendant] knew of the breach of duty and participated in it." *Holmes v. Young*, 885 P.2d at 309. |
| **Substantial Assistance / Proof** | "Restatement (Second) of Torts § 876(b) (1977), upon which the tort is premised, includes as an additional element that a defendant must give substantial assistance to the other's breach." *Nelson v. Elway*, 971 P.2d 245, 249-50 (Colo. App. 1998). |
| **Statute of Limitations** | There is a five-year statute of limitations for a breach of fiduciary duty claim that accrues when, "the plaintiffs have knowledge of facts which, in the exercise of reasonable diligence, would enable them to discover the occurrence of the act or breach complained of." *Johnston v. CIGNA Corp.*, 916 P.2d 643, 652 (Colo. App. 1996). |

6

**CONNECTICUT**

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | The Connecticut Supreme Court does not appear to have definitively determined that there is a cause of action for aiding and abetting breach of a fiduciary duty.  In *Flannery v. Signer Asset Fin. Co.*, the court stated "The Appellate Court assumed, without deciding, that Connecticut recognizes an action for aiding and abetting in the breach of a fiduciary duty."  94 A.3d 553, 560 n.12 (Conn. 2014).  In *Efthimiou*, although recognition of such a cause of action was unnecessary for the disposition of the appeal, the court noted that "[a]iding-abetting includes the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."  *Id.* at 226. |
| **Existence of Fiduciary Duty** | "The Connecticut Supreme Court has refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations, choosing instead to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other."  *Esposito v. Connecticut Coll.*, No. 543055, 1999 WL 81305, at *3 (Conn. Super. Ct. Feb. 10, 1999).  It is a factual inquiry.  *Id.*  "To assert a claim for breach of a fiduciary duty the plaintiff has the burden of proving the existence of a fiduciary relationship.  A fiduciary relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other."  *Id.*

"Generally there exists no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer."  *Southbridge Associates, LLC v. Garofalo*, 728 A.2d 1114, 1119 (Conn. App. Ct. 1999).  Nevertheless, "[a] bank, as a mortgagee lender, may be the fiduciary of the mortgagor borrower when the bank becomes the borrower's financial advisor."  *Id.*  "A fiduciary duty may arise only in exceptional circumstances, such as when there is a long history of dealings between the parties and the bank acts as an advisor or when the bank gains the confidence of the account holder."  *Siemiatkoski v. Windsor Federal Savings & Loan Ass'n.*, Superior Court, complex litigation docket at Hartford, Docket No. X07 CV 06 5001791, 2008 Conn. Super. LEXIS 2352 (September 10, 2008, Berger, J.). |
| **Knowledge / Intent** | A trial court, recognizing a cause of action for aiding and abetting breach of a fiduciary duty, stated that "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance."  *Katcher v. 3V Capital Partners LP*, 2011 Conn. Super. LEXIS 466, at  *39 (Conn. Super. Ct. Feb. 1, 2006). |
| **Substantial Assistance / Proof** | Connecticut's  Supreme Court has stated, "Once a fiduciary relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence.  Proof of a fiduciary relationship, therefore, generally imposes a twofold burden on the fiduciary.  First, the burden of proof shifts to the fiduciary; and second, the standard of proof is clear and convincing evidence."  *Murphy v. Wakelee*, 721 A.2d 1181, 1183-84 (Conn. 1998).  The burden shifting scheme does not apply to breaches of fiduciary duty that are not based on self-dealing, conflict of interest, or fraud.  *See id.* |
| **Statute of Limitations** | The limitations period for aiding and abetting a breach of fiduciary duty is three years.  *Flannery v. Singer Asset Fin. Co.*, 94 A.3d 553, 567 n. 23 (Conn. 2014).  "A claim of aiding and abetting the breach of a fiduciary duty is subject to the same statute of limitations as the claim of breach of a fiduciary duty against the principal tortfeasor, here, § 52-577."  *Id.* |

7

## DELAWARE

| Recognition as Cause of Action / Elements | Under Delaware law, a claim for aiding and abetting breach of fiduciary duty has four elements: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *Stewart v. Wilmington Trust SP Servs., Inc.*, 112 A.3d 271, 320 (Del. Ch. 2015) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)); *see Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618, 643 (Del. Ch. 2013) (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 72 (Del. 1995)); *see also York Lingings v. Roach*, No. 16622-NC, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999). <br><br> "To state a claim for breach of a fiduciary duty, the factual allegations in a complaint must be such that they reasonably could support a finding that a fiduciary duty existed and the defendant breached that duty." *Stewart v. Wilmington Trust SP Servs., Inc.*, 112 A.3d 271, 297 (Del. Ch. 2015) appeal granted, No. CV 9306-VCP, 2015 WL 1898002 (Del. Ch. Apr. 27, 2015). |
|---|---|
| Existence of Fiduciary Duty | "Fiduciary relationships are traditionally understood to 'include those arising from express and implied trusts, corporations, general partnerships, limited partnerships, decedents' estates, and dealings between principal and agent.'" *Vague v. Bank One Corp.*, No. 18741, 2006 WL 290299, at *10 n.80 (Del. Ch. Feb. 1, 2006)) (citation omitted).  And although a fiduciary duty "between a bank and its customer can arise under certain limited circumstances, [one cannot arise] when the bank and another party merely enter[ed] into an arms-length contract." *Satellite Fin. Planning Corp. v. First Nat. Bank of Wilmington*, 633 F. Supp. 386, 401 (D. Del. 1986)). |
| Knowledge / Intent | "A third party may be liable for aiding and abetting a breach of fiduciary duty if the third party 'knowingly participates' in the breach.'" *Beard Research, Inc. v. Kates*, 8 A.3d 573, 603 (Del. Ch. 2010) (citing Malpiede, 780 A.2d at 1096; *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, 372 A.2d 168, 170–171 (Del. 1976)).  Knowing participation "requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach." *Id.* |
| Substantial Assistance / Proof | A plaintiff must prove a claim for aiding and abetting a breach of fiduciary duty by a preponderance of the evidence. *In re Nine Sys. Corporation Shareholders Litig.*, No. CIV.A. 3940-VCN, 2014 WL 4383127, at *49 (Del. Ch. Sept. 4, 2014). |
| Statute of Limitations | Delaware imposes a three-year statute of limitations for aiding and abetting breach of fiduciary duty.  *See In re Fruehauf Trailer Corp.*, 250 B.R. 168, 184 (D. Del. 2000) (citing *Fike v. Ruger*, 754 A.2d 254, 259–60 (Del. Ch. 1999) (applying Delaware law). |

## FLORIDA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | Federal courts in Florida have stated that "[a]n individual commits the intentional tort of aiding and abetting a breach of fiduciary duty if: (1) the primary wrongdoer owes a fiduciary duty to the company; (2) the primary wrongdoer breaches her fiduciary duty; (3) the alleged aider and abettor has knowledge of this breach; and (4) the aider and abettor substantially assisted or encouraged the wrongdoing." *Elandia Intern., Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1331 (S.D. Fla. 2010) (citing *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 919 (Bankr. S.D. Fla. 2002)).

Plaintiffs must establish three elements for a breach of fiduciary duty claim to be actionable: "the existence of a fiduciary duty, a breach of that duty, and plaintiff's damages proximately caused by the breach." *Moscowitz v. Oldham*, 48 So.3d 136, 138 (Fla. Dist. Ct. App. 2010) (quoting *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)). "Where a breach of fiduciary duty is shown but no actual damages are proved, nominal damages may be awarded." *Minotty v. Baudo*, 42 So.3d 824, 836 (Fla. Dist. Ct. App. 2010) (citing *Stevens v. Cricket Club Condo, Inc.*, 784 So.2d 517, 519 (Fla. Dist. Ct. App. 2001)). |
| **Existence of Fiduciary Duty** | "A fiduciary relationship may be either express or implied." *Maxwell v. First United Bank*, 782 So.2d 931, 933 (Fla. Dist. Ct. App. 2001) (citing *Capital Bank v. MVB, Inc.*, 644 So.2d 515 (Fla. Dist. Ct. App. 1994)). "Express fiduciary relationships are created by contract" while fiduciary relationships that are implied are "based on the circumstances surrounding the transaction and the relationship of the parties." *Id.* at 933–34 (citing *Capital Bank*, 644 So.2d at 515; *see also Hooper v. Barnett Bank of W. Fla.*, 474 So.2d 1253 (Fla. Dist. Ct. App. 1985)). More specifically, implied fiduciary relationships "may be found when 'confidence is reposed by one party and a trust accepted by the other.'" *Id.* at 934 (quoting *Capital Bank*, 644 So.2d at 518). "The relationship between bank and borrower is generally that of creditor and debtor, to which the bank owes no fiduciary duty." *Id.* (citation omitted). But that standard is not absolute. Rather, in certain situations, "a fiduciary duty may be found in a creditor/debtor relationship." *Id.* (citations omitted). |
| **Knowledge / Intent** | Plaintiffs must prove "actual knowledge" of the underlying breach. *Court-Appointed Receiver of Lancer Mgmt. Grp. LLC v. Lauer*, No. 05-60584-CIV, 2010 WL 1372442, at *2, 5 (S.D. Fla. Mar. 31, 2010); *see Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1341 (S.D. Fla. 2014) (citing *Lawrence*, 455 F. App'x at 907). Allegations of essentially "routine banking transactions . . . do not amount to actual knowledge" of a breach. *Id.* (citing *Lamm v. State St. Bank & Trust*, 749 F.3d 938, 950 (11th Cir. 2014); *see Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014)). Additionally, "to satisfy the substantial assistance element, the plaintiff must allege (1) recklessness and a duty to disclose and/or (2) conscious intent." *Court-Appointed Receiver of Lancer Mgmt. Grp. LLC v. Lauer*, No. 05-60584-CIV, 2010 WL 1372442, at *4 (citing *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir. 1985)). |
| **Substantial Assistance / Proof** | Plaintiffs are required to establish each element of a breach of fiduciary duty by "a preponderance of the evidence." *Brigham v. Brigham*, 11 So.3d 374, 381 (Fla. Dist. Ct. App. 2009). |
| **Statute of Limitations** | "[B]reach of fiduciary duty is an intentional tort subject to a four-year statute of limitations." *Patten v. Winderman*, 965 So.2d 1222, 1224 n.1 (Fla. Dist. Ct. App. 2007) (citations omitted). |

9

## GEORGIA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | "A plaintiff may recover for aiding and abetting breach of fiduciary duty upon proof of the following elements: (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Wright v. Apartment Inv. & Mgmt. Co.*, 726 S.E.2d 779, 788 (Ga. Ct. App. 2012).

"[R]egardless of whether denominated 'aiding and abetting a breach of fiduciary duty,' 'procuring a breach of fiduciary duty,' or 'tortious interference with a fiduciary relationship,' Georgia law authorizes a plaintiff to recover upon proof of the following elements: (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Insight Tech., Inc. v. FreightCheck, LLC*, S.E.2d 373, 379 (2006). |
| **Existence of Fiduciary Duty** | "Whether or not a fiduciary relationship exists can be a question of fact, but the courts have held the following relationships to give rise to some degree of fiduciary duty: agents; attorneys at law and in fact clergy; corporate directors and officers; personal representatives, such as executors and administrators; guardians; partners; physicians; spouses; and trustees. Moreover, fiduciary duties may adhere to a nontrustee whose control of entities within a trust is such that his actions may be attributed to the trustee itself. On the other hand, neither blood relationship, close personal friendship, nor prior business dealings furnish a basis for the creation of a confidential relationship absent other conduct. The mere circumstance that two people have come to repose a certain amount of trust and confidence in each other as the result of business dealings is not, in and of itself, sufficient to find the existence of a confidential or fiduciary relationship." Ga. Law of Torts § 33:8 (internal citations omitted). "There is no confidential relationship between a bank and its customers merely because the customer had advised with, relied upon, and trusted the bankers in the past." *Pardue v. Bankers First Fed. Sav. & Loan Ass'n*, 334 S.E.2d 926, 927 (1985). |
| **Knowledge / Intent** | A plaintiff must establish that the defendant had knowledge of a fiduciary duty owed between the primary wrongdoer and the plaintiff and that the defendant acted with malice and with the intent to injure the plaintiff. *Wright v. Apartment Inv. & Mgmt. Co.*, 726 S.E.2d 779, 788 (Ga. Ct. App. 2012). "An act is done with 'malice' if it is an unauthorized interference or an interference without legal justification or excuse." *Kahn v. Britt*, 330 Ga. App. 377, 389, 765 S.E.2d 446, 458 (2014), reconsideration denied (Dec. 15, 2014). |
| **Substantial Assistance / Proof** | "To support an award of punitive damages, there must be clear and convincing evidence that the defendant's actions showed 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.' A breach of fiduciary duties is sufficient to support an award of punitive damages." *Kahn v. Britt*, 765 S.E.2d at 460 (citing OCGA § 51–12–5.1(b). |
| **Statute of Limitations** | The limitations period for a breach of fiduciary duty in Georgia is four years. O.C.G.A. § 9-3-25; *see also Hendry v. Wells*, 650 S.E.2d 338, 343-44 (four-year statute of limitations applicable to breach of fiduciary duty claims). |

HAWAII

| Recognition as Cause of Action / Elements | Hawaii has not clearly recognized a cause of action for aiding and abetting a breach of fiduciary duty, but has looked to other states analyses for a framework for potentially approaching such claims. *See Combs v. Case Bigelow & Lombardi*, 2010 WL 370275 at *8 (Haw. Ct. App. 2010) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (N.Y.App.Div.2003) ("A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach.")).  Further, Hawaii has "conclude[d] that a third party's interference with one's fiduciary duty to another is actionable under Hawaii law." *Television Events & Mktg., Inc. v. Amcon Distrib. Co.*, 488 F. Supp. 2d 1071, 1076 (D. Haw. 2006). |
|---|---|
| Existence of Fiduciary Duty | Whether a fiduciary duty exists is a question of law.  *Lahaina Fashions, Inc. v. Bank of Hawaii*, 297 P.3d 1106, 1121 (Haw. Ct. App.), reconsideration denied (Mar. 13, 2013), reconsideration denied, 129 Haw. 294, 298 P.3d 1058 (Ct. App. 2013) and  cert. granted sub nom. *Lahaina Fashions, Inc. v. Bank of Hawaii*, No. SCWC-30644, 2013 WL 3776241 (Haw. July 17, 2013) and aff'd, 319 P.3d 356 (2014) reconsideration denied sub nom. *Lahaina Fashions, Inc. v. Bank of Hawaii*, 318 P.3d 885 (2014) and cert. denied sub nom. *Lahaina Fashions, Inc. v. Bank of Hawaii*, 189 L. Ed. 2d 786 (2014).  A fiduciary is, "[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor.  [T]he relation between the vendor and the purchaser is not a trust; nor is it a fiduciary relationship." *Id.*  at 1122. |
| Proof of Claim | Although it is not a clearly-recognized cause of action, at least one court has found that an aider "may be liable for 'substantially' or 'intentionally' assisting or 'colluding' with" a third-party to breach that party's fiduciary duty.  *Television Events & Mktg., Inc. v. Amcon Distrib. Co.*, 488 F. Supp. 2d 1071, 1078 (D. Haw. 2006). |
| Statute of Limitations | There is a two year statute of limitations for breach of fiduciary duty claims.  *Lahaina Fashions, Inc. v. Bank of Hawaii*, 297 P.3d at 1111. |

11

IDAHO

| Recognition as Cause of Action / Elements | Although no Idaho cases appear to have interpreted aider-abettor liability generally, "federal courts have articulated the following three elements for aider-abettor liability: (1) the existence of an independent primary wrong; (2) the actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong." *State, Dept. of Finance v. Tenney*, 858 P.2d 782, 788 (Idaho Ct. App. 1993) (citing *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir. 1982)).<br><br>"To establish a claim for breach of fiduciary duty, [the] plaintiff must establish that the fiduciary duty was breached." *Country Cove Dev., Inc. v. May*, 150 P.3d 288, 294 (Idaho 2006) (quoting *Sorensen v. Saint Alphonsus Reg'l Med. Ctr., Inc.*, 118 P.3d 86, 92 (Idaho 2005)).  Thus, the plaintiff must establish "first, that the defendant owed him a fiduciary duty, and second, that the latter breached this duty."  *Jordan v. Hunter*, 865 P.2d 990, 995 (Idaho Ct. App. 1993). Generally, these claims need not be pled with particularity. |
|---|---|
| Existence of Fiduciary Duty | A fiduciary relationship is generally characterized "by one party placing property or authority in the hands of another, or being authorized to act on behalf of the other." *High Valley Concrete, L.L.C. v. Sargent*, 234 P.3d 747, 752 (Idaho 2010).  "As a general rule, mere respect for another's judgment or trust in [his] character is usually not sufficient to establish such a relationship. *The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party.*"  *Id.* (emphasis in original).  The following are examples of relationships that may impose fiduciary obligations: "members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends."  *Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints*, 42 P.3d 715, 721 (Idaho Ct. App. 2002).  A fiduciary relationship does not exist, however, when parties are acting at arm's length.  *See id.* at 721 (citations omitted) ("Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's length business transaction."); *see also Anderson v. Michel*, 398 P.2d 228, 236–37 (Idaho 1965) ("Except under special circumstances, no fiduciary obligations exist between a buyer and seller of any property."). |
| Knowledge / Intent | Although no Idaho cases appear to address the knowledge element directly, at least one implies that mere negligence suffices.  *See, e.g., Spur Prods. Corp. v. Stoel Rives LLP*, 153 P.3d 1158, 1161 n.1 (Idaho 2006) (characterizing breach of fiduciary duty as a "negligence claim"). |
| Substantial Assistance / Proof | Under Idaho law, plaintiffs must establish a breach of fiduciary duty by substantial and competent evidence.  *See High Valley Concrete, L.L.C.*, 234 P.3d at 752 (quoting *Tolley v. THI Co.*, 92 P.3d at 511) ("'To establish a claim for breach of fiduciary duty, plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached.'"). Breach of fiduciary duty can be proved by either direct or circumstantial evidence.  *See Idaho First Nat'l Bank*, 824 P.2d at 853 (quoting *Burwell v. South Carolina Nat. Bank*, 340 S.E.2d 786, 790 (1986)) ("The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party."). |
| Statute of Limitations | Under Idaho law, breach of fiduciary duty "is not covered by any of the specific statute[s] of limitations."  *Jones v. Runft, Leroy, Coffin & Matthews, Chartered*, 873 P.2d 861, 868 (Idaho 1993).  Thus, the residual four-year statute of limitations applies.  *See id.* (referencing Idaho Code Ann. § 5-224 (2015)). |

ILLINOIS

| Recognition as Cause of Action / Elements | In Illinois, a claim for aiding and abetting a breach of fiduciary duty includes the following elements: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. Ct. App. 2003) *see also Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (noting that recent Illinois decisions recognize aiding and abetting liability and listing the elements of aiding and abetting).<br><br>Under Illinois law,  recovery for a breach of fiduciary duty requires proof of three elements: "[I]n order to state a claim for breach of fiduciary duty, it must be alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000). |
|---|---|
| Existence of Fiduciary Duty | In Illinois, a fiduciary relation does not exist as a matter of law between a bank and its depositor. "[N]o fiduciary duty will be found to exist absent facts showing that the depositor was subject to domination and influence on the part of the bank." *Paskas v. Illini Fed. Sav. & Loan Ass'n*, 440 N.E.2d 194, 199 (Ill. Ct. App. 1982).  Further, "the relationship between a bank and its depositor is contractual in nature." *In re Johnson*, 355 B.R. 103, 109 (Bankr. C.D. Ill. 2006), *aff'd*, 371 B.R. 336 (C.D. Ill. 2007). |
| Knowledge / Intent | To state a claim for aiding and abetting a breach of fiduciary duty, plaintiffs are required to allege that defendant was aware of the breach of fiduciary duty at the time he provided the assistance which plaintiffs alleged in the complaint, and allege that the defendant knowingly and substantially assisted the principal violation, causing damages.  *Rhombus Asset Mgmt., Inc. v. Pawlan Law, LLC*, 2014 IL App (1st) 122350-U, ¶ 82. |
| Substantial Assistance / Proof | "To state a claim for breach of fiduciary duty, a plaintiff must establish a fiduciary duty on the part of the defendant, the defendant's breach of that duty, and damages that were proximately caused by the defendant's breach. Once a plaintiff establishes that the fiduciary has engaged in self-dealing involving a breach of the duty of loyalty, however, the burden of proof shifts to the fiduciary to prove by clear and convincing evidence that the transactions were equitable and just." *Clarke v. Clarke*, 2013 IL App (2d) 120157-U, ¶ 75. |
| Statute of Limitations | The five-year statute of limitations for "all civil actions not otherwise provided for" applies to a cause of action for breach of an implied fiduciary duty.  Ill. Comp. Stat. 5/13-205; *see also Armstrong v. Guigler*, 174 Ill. 2d 281, 295 (Ill. 1996). |

13

INDIANA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | As a preliminary matter, Indiana courts do not appear to recognize a claim for aiding and abetting a breach of fiduciary duty. For example, in *Crystal Valley Sales, Inc. v. Anderson*, the Court of Appeals noted that "Indiana does not recognize [ ] a cause of action" for aiding and abetting a breach of fiduciary duty. 22 N.E.3d 646, 656 (Ind. Ct. App. 2014). The court stated that "the decision to adopt a new cause of action for aiding and abetting in the breach of fiduciary duty is a decision better left to the legislature or our supreme court." *Id.*<br><br>In Indiana, to establish a breach of fiduciary duty, one must show "(1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Good v. Indiana Teachers Ret. Fund*, 31 N.E.3d 978, 983 (Ind. Ct. App.) transfer denied, 30 N.E.3d 1229 (Ind. 2015). |
| **Existence of Fiduciary Duty** | "This court has directly held that in breach of fiduciary duty and constructive fraud cases, "the parties cannot rely on a contractual relationship to create a duty. Contractual agreements do not give rise to a fiduciary relationship creating a duty. More specifically, the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence . . . Absent special circumstances, a lender does not owe a fiduciary duty to a borrower." *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 639 (Ind. Ct. App. 2015) (internal citations omitted)." |
| **Knowledge / Intent** | As noted, Indiana courts do not recognize aiding and abetting breach of fiduciary duty, and thus there is no applicable knowledge requirement. |
| **Substantial Assistance / Proof** | As noted, Indiana courts do not recognize aiding and abetting breach of fiduciary duty, and thus there is no applicable substantial assistance requirement. |
| **Statute of Limitations** | "Where . . . the alleged injury is to personal property, the statute of limitations for a claim of breach of fiduciary duty is two years." *In re Julie R. Waterfield Irrevocable Trust Agreement Dated Oct. 21, 1997*, 960 N.E.2d 800, 807 (Ind. Ct. App. 2011) (citing Ind. Code Ann. § 34-11-2-4). "Pursuant to Indiana code section 34–11–2–4(2), a cause of action in a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 610 (Ind. Ct. App. 2008). |

14

# IOWA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | "In order to establish a civil claim for aiding and abetting under Iowa law, [the Plaintiff] must prove '1) a wrong to the primary party; 2) knowledge of the wrong on the part of the aider; and 3) substantial assistance by the aider in the achievement of the primary violation.'" *Graves v. City of Durant*, 2010 WL 785850 at *13 (N.D. Iowa Mar. 5, 2010) (quoting *PFS Distrib. Co. v. Raduechel*, 492 F. Supp. 2d 1061, 1084 (S.D. Iowa 2007)); *see also* Iowa Code Ann. § 216.11 (West 2015) ("It shall be an unfair or discriminatory practice for . . . [a]ny person to intentionally aid, abet, compel, or coerce another person to engage in any of the practices declared unfair or discriminatory by this chapter.").

Under Iowa law, a plaintiff must prove the following four elements to prevail on a breach of fiduciary duty claim: "(1) [Defendant] owed a fiduciary duty to [Plaintiff]; (2) [Defendant] breached the fiduciary duty it owed to [Plaintiff]; (3) the breach of fiduciary duty was a proximate cause to [Defendant]; and (4) the amount of damages, if any." *See Top of Iowa Co-Op v. Schewe*, 149 F. Supp. 2d 709, 717 (N.D. Iowa 2001) (applying Iowa law). |
| **Existence of Fiduciary Duty** | Iowa generally defines a fiduciary as follows: "a fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relationship." *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986) (quoting Restatement (Second) of Torts § 874 cmt. a (1975). "Our supreme court has stated that in a borrower-lender context, there is generally no fiduciary relationship outside of the actual servicing of the loan." *Fredricksburg Farmers Co-op. v. Stanley & Elwood Farms*, No. 00-0278, 2001 WL 1580488, at *3 (Iowa Ct. App. Dec. 12, 2001) (citing *Weltzin v. Cobank*, ACB, 633 N.W.2d 290, 294 (Iowa 2001)). |
| **Knowledge / Intent** | Most Iowa cases seem to not address the requisite level of scienter. Some courts, however, analogize breach of fiduciary duty claims to negligence claims. *See, e.g., Union Cnty., Iowa v. Piper Jaffray & Co., Inc.*, 788 F. Supp. 2d 902, 908 n.3 (S.D. Iowa 2011) (comparing breach of fiduciary and negligence elements); *see also Waitt v. Speed Control, Inc.*, No. C-00-4060-MWB, 2002 WL 1711817, at *27 (N.D. Iowa June 28, 2002) (addressing a claim for "breach of fiduciary duty and/or negligence").

Aiding and abetting requires "that there be 'substantial evidence that the defendant encouraged or assisted another in committing [the underlying] violations.'" *Reilly v. Anderson*, 727 N.W.2d 102, 115 (Iowa 2006) (citations omitted). This standard simply requires the defendant to (1) know that the third-party tortfeasors actions were tortious and (2) give substantial assistance to the underlying violation. *See id.* |
| **Substantial Assistance / Proof** | Breach of fiduciary duty claims "must be proved only by the greater weight or preponderance of the evidence." *Schewe*, 149 F. Supp. 2d at 725 (citing *St. Paul Reinsur Co., Ltd. v. Commercial Fin. Corp.*, 144 F. Supp. 2d 1057, 1083 (N.D. Iowa 2001)). |
| **Statute of Limitations** | Iowa imposes a five-year statute of limitations for breach of fiduciary duty claims. *See Greene v. Heithoff*, No. 10-1608, 2011 WL 5515167, at *10 n. 6 (Iowa Ct. App. 2011) (citation omitted) (limiting a breach of fiduciary duty claim under Iowa's five-year statute of limitations). |

15

## KANSAS

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | In *State ex rel. Mays v. Ridenhour*, 811 P.2d 1220, 1232 (Kan. 1991), the Kansas Supreme Court cited a D.C. Circuit decision regarding the elements of aiding and abetting liability:  "(1) The party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation."  In *Knight v. Cordry*, No. 67,822 1993 Kan. App. Unpub. LEXIS 781, at *13 (Kan. Ct. App. May 7 1993), the Kansas Appeals Court cites to these elements as the "elements of aiding and abetting to establish vicarious civil liability for a tort." <br><br> A federal court applying Kansas law stated that under Kansas law, "the elements of breach of fiduciary duty include (1) the existence of a fiduciary relationship, (2) a duty arising out of the fiduciary relationship, (3) a breach of the duty and (4) damages proximately caused by the breach of duty."  *Cincinnati Ins. Co. v. Gage Ctr. Dental Group*, No. 12-2387-KHV, 2013 U.S. Dist. LEXIS 156844, at *36 (Nov. 1, 2013).  "[T]he overall test of good faith . . . is the essential inquiry on any charge of breach of fiduciary duty."  *IBD, Inc. v. Enter. Bus. Solutions, LLC*, 203 P.3d 1281, 2009 WL 929072 at *9 (Kan. Ct. App. April 3, 2009). |
| **Existence of Fiduciary Duty** | "The relationship between a bank and its customers is ordinarily that of creditor-debtor and not of a fiduciary nature."  *Bank of America, N.A. v. Narula*, 261 P.3d 898, 918 (Kan. 2011).  The existence of fiduciary duty is usually a question of fact,  however, "[a] fiduciary duty may be implied in law due to the facts surrounding the involved transaction and the relationship of the parties to each other and to the transaction.  The question is whether a special confidence is placed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one placing the confidence."  *Id.* at 918. |
| **Knowledge / Intent** | In *Knight v. Cordry*, No. 67,822 1993 Kan. App. Unpub. LEXIS 781, at *13 (Kan. Ct. App. May 7 1993), the court looks for evidence that the defendants were aware of their role as part of an overall tortious activity or evidence of them knowingly and substantially assisting in the underlying tort.  The court establishes that actions taken by the defendants, such as speaking with the person who committed the underlying tort (malicious prosecution), were innocent.  *Id.* |
| **Substantial Assistance / Proof** | "Our research has revealed no Kansas case which indicates there is a clear and convincing standard for breach of fiduciary duties.  This leads us to conclude that issue is judged, as are most issues in this state, by a preponderance of the evidence standard."  *Cimarron Feeders v. Bolle*, 17 P.3d 957, 963-64 (Kan. App. Ct. 2001). <br><br> "[M]any variables enter into the equation of determining how much aid is 'substantial aid.'  Generally, the cases support using the following five factors identified in the Restatement to determine whether the evidence establishes substantial aid: [T]he nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind.  The court in Halberstam added a sixth factor: duration of the assistance provided.  The court noted that the length of time an alleged aider and abettor has been involved with the tortfeasor affects the quality and extent of their relationship and probably influences the amount of aid provided.  The court concluded that it also provided evidence of the defendant's state of mind."  *State ex rel. Mays v. Ridenhour*, 811 P.2d 1220, 1232 (Kan. 1991) (citing Restatement (Second) of Torts § 876, Comment d). |
| **Statute of Limitations** | The limitations period for a breach of fiduciary duty is two years.  *See Mynatt v. Collis*, 57 P.3d 513, 525  (Kan. 2002). |

16

KENTUCKY

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | "Kentucky law has never recognized a civil cause of action for aiding and abetting a breach of fiduciary duty." *Peoples Bank of N. Kentucky, Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 260 (Ky. Ct. App. 2008). "The closest analogue to such a claim is civil conspiracy, which has been defined as a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means. In order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Id.* at 261-62. "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person." *Id.* at 261 (citing *Farmer v. City of Newport*, 748 S.W.2d 162, 164 (Ky. Ct. App. 1988)). <br><br> The basic elements of a breach of fiduciary duty cause of action include: "(1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation." *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013), as modified (Feb. 20, 2014). |
| **Existence of Fiduciary Duty** | "An ordinary business relationship or an agreement reached through arm's length transactions cannot be turned into a fiduciary one absent factors of mutual knowledge of confidentiality or the undue exercise of power or influence." *Helm Co., LLC v. Al J. Schneider Co.*, No. 2013-CA-001192-MR, 2014 WL 4802909, at *8 (Ky. Ct. App. Sept. 26, 2014), review denied (Aug. 12, 2015). In the absence of a breach of a fiduciary duty, the cause of action is untenable. *Id.* at *11. "Courts traditionally view a relationship between a bank and a depositor to be one of debtor-creditor and do not ordinarily impose a fiduciary duty of disclosure upon the bank. However, services to borrowers and pledgors may support a finding that a bank, in taking a borrower's note and collateral, falls under a fiduciary duty to disclose material facts affecting the loan transaction. In view of changes in the nature of commercial transactions bankers may sometimes be placed in a position of trust with respect to their customer." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). "As a general rule, banks do not owe a fiduciary duty to their customers." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 4 (Ky. Ct. App. 2012). |
| **Knowledge / Intent** | To establish a claim for aiding and abetting breach of fiduciary duty, which is most similar to a claim for civil conspiracy, the plaintiff must demonstrate that the defendant intentionally joined in the breach of fiduciary duty action and knows that the other's action constitutes a breach of a fiduciary duty. *Peoples Bank of N. Kentucky, Inc.*, 277 S.W.3d at 260-61. |
| **Substantial Assistance / Proof** | The cases do not state any standard of proof is required beyond the Kentucky Rules of Civil Procedure which "require put the opposing party on fair notice." *Todd v. Kentucky Heartland Mortgage, Inc.*, No. 2002-CA-002038-MR, 2003 WL 21770805, at *1 (Ky. Ct. App. Aug. 1, 2003). Therefore, for "a complaint to be deemed sufficient, [o]nly a concise statement of facts is required. Likewise, to state a claim for relief, a complaint need only give fair notice of a cause of action and the relief sought. *Id.* |
| **Statute of Limitations** | One year from occurrence or from the date when the cause of action was or reasonably should have been discovered by the injured party. *Peoples Bank of N. Kentucky, Inc.*, 277 S.W.3d 255, 263 (citing KRS 413.245). |

17

# LOUISIANA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | Aiding and abetting a breach of fiduciary duty is not an accepted cause of action in Louisiana. *See Broyles v. Cantor Fitzgerald & Co.*, No. CIV.A. 10-854-JJB, 2014 WL 6886158, at *5 (M.D. La. Dec. 8, 2014) ("This Court has ruled before that aiding and abetting the breach of a fiduciary duty is not a cause of action recognized in Louisiana.").  A cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority.  *TTV, L.L.C. v. Simmons*, 2010-1163, 58 So. 3d 684, 691 (La. Ct. App. 3 Cir. 3/9/11). |
| **Existence of Fiduciary Duty** | "Although not every contractual relationship involves a fiduciary relationship, the defining characteristic of the latter is a special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor. A fiduciary cannot further his own interests and enjoy the fruits of an advantage of such a relationship and must make a full disclosure of all material facts surrounding the transaction that might affect the decision of his principal." *Louisiana State Univ. Sys. Research & Tech. Found. v. Qyntessa Biologics, L.L.C.*, 2014-0311, 168 So. 3d 468, 474, 2014 WL 7013905 at * 4(La. Ct. App. 2014).

"Pursuant to La.R.S. 6:1124, no fiduciary relationship exists between a bank and its customers or third parties unless it is agreed in writing that a relationship of agency or trust exists between the parties." *Singleton v. Am. Sec. Bank of Ville Platte, Inc.*, 2002-1109, 849 So. 2d 72, 78 (La. App. 3 Cir. 4/30/03).  Furthermore, the Louisiana Court of Appeals for the Fourth Circuit held that a bank has no implied fiduciary duty to its customers absent a written agreement to that effect." *BizCapital Bus. & Indus. Dev. Corp. v. Union Planters Corp.*, 2003-2208, 884 So. 2d 623, 627 (La. Ct. App. 2004) (La. App. 4 Cir. 9/8/04).

"Under La. R.S. 12:91, officers and directors of a corporation stand in a fiduciary relation to the corporation's shareholders as well as to the corporation itself." *Eckert v. Roux*, 09-1016, 39 So. 3d 636, 640 (La. Ct. App. 2010); *see* La. Rev. Stat. Ann. 12:226.  Further, Louisiana has recognized fiduciary obligations for, attorneys, stockbrokers, trustees, usufructuaries, executors, administrators and directors and officers of a corporation." *Wadsworth v. ABC Ins. Co.*, 98-0486 732 So. 2d 56, 58 (La. Ct. App. 1998). |
| **Knowledge / Intent** | "The standard of a fiduciary's duty to his beneficiary, depending on the facts of the case, lies somewhere between simple negligence and willful misconduct or fraud with the intent to deceive; the actual intent to deceive is not required where one party is placed in such an advantageous position to the other." *Barksdale v. Lincoln Builders, Inc.*, 32,857, 764 So. 2d 223, 230-31 (La. App. 2 Cir. June 21, 2000) writ denied, 2000-2646, 785 So. 2d 821 (La. 2/9/01). |
| **Substantial Assistance / Proof** | Under Louisiana law, breach of fiduciary duty must be proven by a preponderance of the evidence.  "The burden of proof in a breach of fiduciary duty claim [is] on the person seeking to establish that claim." *Duncan v. Moreno Energy, Inc.*, 2013-668 (La. App. 3 Cir. 12/11/13), 129 So. 3d 849, 858. |
| **Statute of Limitations** | The limitations period for a breach of fiduciary duty claim is ten years.  *Short v. Giffin*, 96-0361 (La. App. 4 Cir. 8/21/96), 682 So. 2d 249, 253 (La. Ct. App. 1996) writ denied, 96-3063 (La. 3/7/97), 689 So. 2d 1372; *see also Thomas v. Fid. Brokerage Servs., Inc.*, 977 F. Supp. 791, 798 n. 6  (W.D. La. 1997).  However, in some cases where the allegations "are delictual in nature" the limitations period is one year.  *Pineda v. Ruppel*, 639 So. 2d 858, 860 (La. Ct. App. 1994) (citing La. Civ. Stat. Art. 3492 ). |

## MAINE

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | There does not appear to be case law analyzing aiding and abetting a breach of fiduciary duty. However, Maine recognizes aiding and abetting tort liability generally:  "In Maine the tort of aiding and abetting a tortious action is drawn from section 876 of the Restatement of Torts." *FDIC v. S. Prawer & Co.*, 829 F. Supp. 453, 457 (D. Me. 1993) (citing *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993); *see also Bowers v. Allied Capital Corp.*, Civ. No. 91–0021–B, 1991 WL 335252 (D. Me. July 1, 1991). <br><br> In one case, a Maine court stated that a "[p]urchaser of apartment building did not sufficiently allege the existence of a fiduciary relationship between herself and attorney or attorney's title company and, thus, did not state a claim against them for breach of fiduciary duty; purchaser's allegations that she 'had inferior knowledge and experience' and 'relied upon' attorney and title company did not satisfy the  requirement that purchaser have actually placed trust or confidence in attorney and title company."  *Ramsey v. Baxter Title Co.*, 2012 ME 113, 54 A.3d 710. |
| **Existence of Fiduciary Duty** | "[I]t is well settled that officers and directors of a corporation owe a fiduciary duty to both the corporation and its shareholders . . . [d]epositors in a mutual savings bank, however, are not shareholders . . . [T]heir essential relationship to the bank is that of creditors" and "[f]iduciary duties are not inherent in a debtor-creditor relationship."  *Guitard v Gorham Sav. Bank*, No. CIV.A. CV-00-326, 2002 WL 746106, at *2 (Me. Super.Apr. 9, 2002).   Instead, it is merely "conceivable that a bank may owe a fiduciary duty to depositors under certain circumstances." *Id.*  Further, "[a]lthough [Maine] recognize[s] a duty of good faith on the part of banks, requiring 'honesty in fact,' we have specifically declined to adopt a more general common law duty of good faith under the U.C.C. *Leighton v. Fleet Bank of Maine*, 634 A.2d 453, 456 (Me. 1993). "For a fiduciary relationship to exist, there must be the actual placing of trust or confidence by one party and a great disparity of position and influence between the parties."  *Green v. Suburban Mortg. Associates Inc.*, 2007 WL 4462540 (Me. Super.  Nov. 7, 2007). |
| **Knowledge / Intent** | Although Maine courts have not substantively analyzed the requisite knowledge for aiding and abetting tort liability, federal courts have  looked to § 876 of the Restatement, which requires that an aider have knowledge of the principal's wrongdoing.  *See Forum Fin. Grp., Ltd. Liabil. Co. v. President, Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 97 (D. Me. 2001). |
| **Substantial Assistance / Proof** | There does not appear to be case law analyzing this cause of action under Maine law. |
| **Statute of Limitations** | There is a six-year statute of limitations for breaches of fiduciary duty.  *Green v. Suburban Mortg. Associates Inc.*, 2007 WL 4462540 (Me. Super.  Nov. 7, 2007). |

19

# MARYLAND

| Recognition as Cause of Action / Elements | Aiding and abetting a breach of fiduciary duty is recognized as cause of action in Maryland. *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1050 (Md. 1995). <br><br> In Maryland, the elements of breach of fiduciary duty are, "(1) the existence of a fiduciary relationship, (2) a breach of duty owed by the fiduciary to the beneficiary, and (3) harm resulting from the breach." *Id.* at 1046 (citing Restatement Second of Torts § 874). Maryland does not recognize a breach of fiduciary duty as a separate court action and instead treats it as a claim for negligence. *Vinogradova v. Suntrust Bank, Inc.*, 875 A.2d 222, 231 (Md. Ct. App. 2005); *see also George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 14 A.3d 1193, 1219 (Md. Ct. App. 2011). |
|---|---|
| Existence of Fiduciary Duty | In Maryland, "A fiduciary relationship [ ] , such as between trustee and beneficiary, guardian and ward, agent and principal, attorney and client, partners in a partnership, corporate directors and their corporation, involves a duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters within the scope of the relation." *Lasater v. Guttmann*, 5 A.3d 79, 93 (Md. 2010). |
| Knowledge / Intent | Maryland courts do not appear to have addressed the necessary knowledge or intent required for aiding and abetting tort liability. |
| Substantial Assistance / Proof | Aiding and abetting occurs when, "a person [ ] is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or [ ] in any way or by any means countenances and approves the same." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1050 (Md. 1995). In determining whether a defendant aided and abetted a breach of fiduciary duty, Maryland courts appear to analyze the underlying breach first, and then analyze whether the defendant has indeed aided the breach. *Id.* ("[T]he plaintiffs failed to allege adequately that Weisman had committed either fraud or a breach of fiduciary duty causing harm to the plaintiffs. Since tort liability for aiding and abetting can only exist where someone has committed the actual tort, and since the allegations were insufficient to show that Weisman had committed a tort, the aiding and abetting counts were properly dismissed."). |
| Statute of Limitations | "A civil action at law shall be filed within three years from the date it accrues." Md.Code § 5–101 (1957, 1998 Repl.Vol.). Thus, the operative date for determining when limitations runs on a cause of action is the date of accrual." *Moreland v. Aetna U.S. Healthcare, Inc.*, 831 A.2d 1091, 1096 (Md. Ct. App. 2003). "Knowledge of facts, however, not actual knowledge of their legal significance, starts the statute of limitations running." *Id.* at 1095. |

20

## MASSACHUSETTS

| Recognition as Cause of Action / Elements | A complaint for aiding and abetting breach of fiduciary duty "must allege facts that satisfy the four elements of an aiding and abetting claim: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *Sanderson v. Verdasys, Inc.*, No. CIV.A .12-621-BLS1, 2012 WL 5392614, at *16 (Mass. Super. Nov. 2, 2012); *see also Arcidi v. Nat'l Ass'n of Gov't Employees, Inc.*, 856 N.E.2d 167, 174 (2006). "[In Massachusetts, the tort of aiding and abetting requires an underlying tort, defendant's awareness of the illegal act, and substantial assistance in committing the illegal act." *Demoulas v. Demoulas Super Markets, Inc.*, No. 902927B, 1993 WL 818844, at *3 (Mass. Super. Nov. 29, 1993). |
|---|---|
| Existence of Fiduciary Duty | In Massachusetts, "a bank upon which a check is drawn is not liable for the embezzlement of the proceeds by a payee who is a fiduciary, or by an agent of the payee authorized to collect the check, merely because the fiduciary or agent causes the check or its proceeds to be deposited in his personal account, much less because he collects the check in cash. Cases are distinguishable in which a bank has been held liable for accepting in payment of the personal obligation of a fiduciary or agent funds which it knows are not his own, or for assisting him in a known or apparent misappropriation of funds." *Boston Note Brokerage Co. v. Pilgrim Trust Co.*, 61 N.E.2d 113, 115 (1945). |
| Knowledge / Intent | The plaintiff must allege that the defendant had "actual knowledge" of the third party's action amounting to a breach of a fiduciary duty. *Cahaly v. Benistar Property Exchange Trust Co.*, 2004 WL 2550448, at *1, ( Mass. Super. Aug. 30, 2004). "To prove that the bank aided and abetted a tort, the plaintiff must show: (1) that Goldings committed the relevant tort; (2) that the bank knew he was committing the tort; and (3) that the bank actively participated in or substantially assisted in his commission of the tort." *Go-Best Assets Ltd. v. Citizens Bank of Massachusetts*, 972 N.E.2d 426, 438 (Mass. 2012). |
| Substantial Assistance / Proof | To be found liable for a breach of fiduciary duty, "the defendant must actively participate or substantially assist in or encourage the breach to the degree that he or she could not reasonably be held to have acted in good faith." *Arcidi v. Nat'l Ass'n of Gov't Employees, Inc.*, 856 N.E.2d 167, 174 (2006). |
| Statute of Limitations | The statute of limitations for aiding and abetting a breach of fiduciary duty in Massachusetts is three years. M.G.L.A. 260 § 2A; *see also O'Connor v. Redstone*, 452 Mass. 537, 551 (Mass. 2008). |

21

## MICHIGAN

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | Although the Michigan Supreme Court does not appear to have expressly recognized common law aiding and abetting claims, *see El Camino Res. Ltd. v. Huntington Nat. Bank*, 712 F.3d 917, 922 (6th Cir. 2013), lower courts have recognized aiding and abetting a breach of fiduciary duty as a cause of action in Michigan. *Echelon Homes, L.L.C. v. Carter Lumber Co.*, No. 267233, 2006 WL 1867716, at *2 (Mich. Ct. App. July 6, 2006). |
| | In order to recover on a claim of breach of fiduciary duty, plaintiffs "have the burden of proving" that: (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) such breach proximately caused the injury of which the plaintiff complains. *In re Estate of Byrne*, No. 307641, 2014 WL 1233708, at *4 (Mich. Ct. App. Mar. 25, 2014); *see also Saad v. Hometown Grp. Real Estate, Inc.*, No. 226764, 2002 WL 1424434, at *1 (Mich. Ct. App. June 28, 2002) (noting "plaintiffs' claims of negligence and breach of fiduciary duty require, among other elements, that defendants owed plaintiffs a duty"). |
| **Existence of Fiduciary Duty** | After noting that a fiduciary duty "arises out of the relation subsisting between two persons of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith," the court concluded the trial court erred in finding a bank owed a fiduciary duty to the customers of its depositor. *Portage Aluminum Co. v. Kentwood Nat. Bank*, 106 Mich. App. 290, 294, 307 N.W.2d 761, 763 (1981). More generally, "[a] fiduciary relationship arises when one reposes faith, confidence, and trust in another's judgment and advice. Where a confidence has been betrayed by the party in the position of influence, this betrayal is actionable, and the origin of the confidence is immaterial." *Yatooma v. Zousmer*, 2012 WL 1697004, at *5. |
| **Knowledge / Intent** | "[A] person who knowingly joins a fiduciary in an enterprise where the personal interest of the latter is or may be antagonistic to his trust becomes jointly and severally liable with him for the profits of the enterprise. *Yatooma v. Zousmer*, No. 302591, 2012 WL 1697004, at *6 (Mich. Ct. App. May 15, 2012). |
| **Substantial Assistance / Proof** | Proof of breach of fiduciary duty lies with plaintiffs. *Garwin v. Anderson*, 334 Mich. 287, 297, 54 N.W.2d 667, 671 (1952)(holding that in a stockholders' derivative suit against corporate directors and officers to recover for alleged breach of fiduciary duty, burden was on stockholders to prove that directors and officers breached their fiduciary duty). |
| **Statute of Limitations** | If a general breach of a fiduciary duty is alleged, a three-year statute of limitations applies. If a specific allegation is made against a trustee "a claim against a trustee for breach of trust is barred as to any beneficiary who received a final account or other statement fully disclosing the matter and showing termination of the trust relationship between the trustee and the beneficiary unless a proceeding to assert the claim is commenced within 6 months after receipt of the final account or statement. Notwithstanding lack of full disclosure, a trustee who issued a final account or statement in good faith which was received by the beneficiary and which informed the beneficiary of the location and availability of records for his examination is not liable after 3 years." *James v. Logee*, 150 Mich.App. 35, 38 (Mich. App. 1986). |

22

**MINNESOTA**

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | "To state a claim for aiding and abetting a breach under Minnesota law, [the Plaintiff] must . . . plead facts showing that [the Defendant] (1) had knowledge of the breach and (2) substantially assisted it." *Varga v. U.S. Bank Nat'l Ass'n*, 952 F. Supp. 2d 950, 857 (D. Minn. 2013) (citing *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187-88 (Minn. 1999). "Knowledge and substantial assistance are evaluated 'in tandem,' with a greater showing of one requiring a lesser showing of the other." *Id.* (citing *Witzman*, 601 N.W.2d at 188). Under Minnesota law, "a tort claim for aiding and abetting has three elements: (1) the primary tortfeasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 733 (8th Cir. 2015).

Plaintiffs "must allege four elements to state a claim for . . . breach of fiduciary duty: duty, breach of that duty, causation and damages." *Conwed Corp. v. Employers Reinsurance Corp.*, 816 F. Supp. 1360, 1362 n.3 (D. Minn. 1993). |
| **Existence of Fiduciary Duty** | Under Minnesota law, "[a] fiduciary relationship exists 'when confidence is reposed on one side and there is resulting superiority and influence on the other; and the relation and duties involved in it need not be legal, but may be moral, social, domestic, or merely personal." *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985) (quoting Stark v. Equitable Life Assur. Society, 285 N.W. 466, 470 (1939)). Although "the existence of a fiduciary relationship is generally a question of fact, . . . the Court is not precluded from resolving the issue as a matter of law if the undisputed facts show that no fiduciary relationship existed." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 837 (D. Minn. 2012) (citing *Minn. Timber Producers v. Am. Mut. Ins.*, 766 F.2d 1261, 1267 (8th Cir. 1986)). As for the banking industry, "[i]t is well-established that a lender-borrower relationship does not give rise to fiduciary obligations, absent special circumstances." *Id.* at 837–38. Some special circumstances recognized under Minnesota law are when "(1) confidence is placed in the lender which results in superiority and influence over the other party; (2) combined with a confidential relationship, the lender has greater access to facts and legal resources; and (3) a disparity of business experience is combined with invited confidence." *Id.* at 838 (internal citations omitted). |
| **Knowledge / Intent** | When asserting a claim for aiding and abetting a breach of fiduciary duty, plaintiffs must demonstrate both "knowledge and substantial assistance." *Park Midway Bank, N.A. v. R.O.A., Inc.*, No. A11-2092, 2012 WL 3263866, at *4 (Minn. Ct. App. Aug. 13, 2012). When proving knowledge, plaintiffs must "point to specific facts in the record demonstrating that [the Defendant] had actual knowledge that the [primary tortfeasor was] engaging in tortious conduct." *Id.* (citations omitted). |
| **Substantial Assistance / Proof** | Plaintiffs must prove a breach of fiduciary duty claim by a preponderance of the evidence. *See Mesenbrink v. Riverwood ENT, LLC*, No. A09-334, 2009 WL 3818378, at *3 (Minn. Ct. App. 2009) ("A cause for breach of fiduciary duty requires a showing of damages . . . 'In the ordinary civil action, . . . the plaintiff has the burden of proving every essential element of his case, including damages, by a fair preponderance of the evidence.'") (quoting *Carpenter v. Nelson*, 101 N.W.2d 918, 921 (1960))). The claim can be proved by either direct or circumstantial evidence. *See In re Northgate Comp. Sys., Inc.*, 240 B.R. 328, 359-360 (Bankr. D. Minn. 1999). |
| **Statute of Limitations** | Minnesota imposes a six-year statute of limitations for "allegations of breach of fiduciary duty based on . . . fraud claims." *O'Leary ex rel. Lakeland Printing Co., Inc. v. Carefree Living of Am. (Minnetoka)*, No. C5-00-2072, 2001 WL 1083757, at *3 (Minn. Ct. App. Sep. 18, 2001) (citations omitted). |

## MISSISSIPPI

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | It's unclear whether Mississippi recognizes aiding and abetting a tort.  In *Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011), a federal district court stated that "[t]he Mississippi Supreme Court has never recognized aiding and abetting as a civil cause of action." Nevertheless, some courts have indicated that such a cause of action is recognized.  *Nickell v. Shanahan*, No. ED 99163, 2013 WL 2402852, at *7 (Mo. Ct. App. June 4, 2013).<br><br>A party alleging a breach of fiduciary duty must show: (1) the opposing party owed him a duty; (2) the opposing party breached that duty; and (3) the breach of that duty was the cause of the alleged damages.  *See Callicutt v. Prof'l Servs. of Potts Camp, Inc.*, 974 So. 2d 216, 221 (Miss. 2007). |
| **Existence of Fiduciary Duty** | Generally, single-loan situations are not enough to establish that a fiduciary duty exists between a bank and a customer.  However, relationships with a bank founded on special trust that involve past dealings and significant involvement in the transactions may be enough to establish a fiduciary duty.  *See Saucier v. Peoples Bank*, 150 So. 3d 719, 728 (Miss. Ct. App. 2014). |
| **Knowledge / Intent** | Does not appear to be applicable under Mississippi law. |
| **Substantial Assistance / Proof** | "The party asserting the existence of a fiduciary relationship bears the burden of proving its existence by clear and convincing evidence.  We use a three-part test for determining whether a fiduciary relationship exists in a commercial transaction: whether (1) the parties have shared goals in each other's commercial activities, (2) one of the parties places justifiable confidence or trust in the other party's fidelity, and (3) the trusted party exercises effective control over the other party."  *Amsouth Bank v. Gupta*, 838 So. 2d 205, 216 (Miss. 2002).  "If a complaint is intended to allege a breach of fiduciary duty, it would be necessary to state with particularity the facts which purportedly created the duty that was breached, so that the court could determine as a matter of law whether there was such a duty."  *Wilbourn v. Stennett*, 687 So. 2d 1205, 1216, (Miss. 1996). |
| **Statute of Limitations** | "Fidelity and American Bankers first argue on appeal that Wells's and Oliver's claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, fraud, conspiracy, and punitive damages are barred by the statute of limitations. Wells and Oliver do not dispute that the three-year statute of limitations in Miss. Code Ann. § 15-1-49 (1995) is applicable to all of these causes of action."  *Am. Bankers' Ins. Co. v. Wells*, 819 So. 2d 1196, 1200, (Miss. 2001). |

24

## MISSOURI

| Recognition as Cause of Action / Elements | Federal courts have noted that "the Missouri Supreme Court has not squarely decided whether to recognize the tort of aiding and abetting." *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09 CV 01252 ERW, 2012 WL 3984486, *6 (E.D. Mo. Sept. 11, 2012). When tasked with determining whether the Missouri Supreme Court would likely adopt such a cause of action, the court determined that Missouri's failure to adopt other causes of action under the Restatement § 876 made it unlikely that it would adopt aiding and abetting liability. *Id.* at *33. However, other federal courts have predicted that aiding and abetting tort liability is recognized. *See Lonergan v. Bank of America, N.A.*, No. 12-CV-04226-NKL, 2013 WL 176024, at *11-12 (W.D. Mo. Jan. 16, 2013). And in *Nickell v. Shanahan*, the Court of Appeals found that Missouri recognizes aiding and abetting a breach of fiduciary duty in accordance with the Restatement § 876. No. ED 99163, 2013 WL 2402852, at *6-10 (Mo. Ct. App. June 4, 2013). However, the court in *Nickell* didn't explicitly state the elements of this cause of action.<br><br>For a general breach of a fiduciary duty, "the proponent must establish that a fiduciary duty existed between it and the defending party, that the defending party breached the duty, and that the breach caused the proponent to suffer harm." *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. 2012). |
|---|---|
| Existence of Fiduciary Duty | In determining whether a fiduciary relationship existed, the ultimate question is "whether or not trust is reposed with respect to property or business affairs of the other." *Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 391 (Mo. App. E.D. 2010). "However, a fiduciary duty may not be created unilaterally." *Hibbs v. Berger*, 430 S.W.3d 296, 313 (E.D. 2014). A fiduciary duty "derives from the conduct or undertaking of the purported fiduciary duty which is recognized by the law as justifying such reliance." *Pool v. Farm Bureau Town & Country Ins. Co. of Mo.*, 311 S.W.3d 895, 907 (Mo. App. S.D. 2010). |
| Knowledge / Intent | Assuming aiding and abetting breach of fiduciary duty is a recognized claim, a plaintiff would likely have to prove that the defendant had knowledge that the primary wrongdoer's conduct constituted a breach of fiduciary duty. *See Nickell*, 2013 WL 2402852, at *7. |
| Substantial Assistance / Proof | Assuming aiding and abetting breach of fiduciary duty is a recognized claim, a plaintiff would likely have to establish that the aider "gave substantial assistance or encouragement" to the primary wrongdoer in his or her breach of fiduciary duty. *See Nickell*, 2013 WL 2402852, at *7. |
| Statute of Limitations | "A claim for breach of fiduciary duty is governed by the five-year statute of limitations found in section 516.120(4)." *Community Title Co. v. U.S. Title Guar. Co.*, 965 S.W.2d 245, 253 (Mo. Ct. App. 1998)(citing Mo. Ann. Stat. § 516.120). |

25

## MONTANA

| Recognition as Cause of Action / Elements | Although Montana case law does not address aiding and abetting a breach of fiduciary specifically, courts generally define "aiding and abetting" as the joint involvement in acts using the Restatement Second of Torts Section 876 analysis, which states: "a person is subject to liability for the harm to a third person from the tortious conduct of another if: 1) the other's conduct is a breach of duty, 2) he knows that the other's conduct is a breach of duty, and 3) he provides substantial assistance or encouragement to the other for such conduct."  *Newman v. Lichfield*, 272 P.3d 625, 633-34 (Mont. 2012).<br><br>In addition, Montana recognizes "breach of fiduciary duty" as a cause of action, but does not lay out general elements that would constitute a breach.  Once a court finds that a fiduciary relationship exists,  the breach of fiduciary duty is usually analyzed on a case-by-case basis. *Joyce v. Garnaas*, 1999 MT 170, ¶ 36, 295 Mont. 198, 210-11, 983 P.2d 369, 377 (Mont. 1999) ("The elements of the action for breach of fiduciary duty require an ongoing attorney-client relationship and a further affirmative act or omission such as a misrepresentation, or concealment, or failure to inform regarding the subject of the representation."). |
|---|---|
| Existence of Fiduciary Duty | "[A] line of authority . . .  has held that the existence of a special relationship giving rise to a fiduciary duty is a question of law.  We first recognized that such a relationship could arise between a bank and its customers in *Deist v. Wachholz* in which this Court stated: The relationship between a bank and its customer is generally described as that of debtor and creditor and as such does not give rise to fiduciary responsibilities. . . . [M]odern banking practices involve a highly complicated structure of credit and other complexities which often thrust a bank into the role of an advisor, thereby creating a relationship of trust and confidence which may result in a fiduciary duty upon the bank to disclose facts when dealing with the customer.  The existence of a fiduciary duty to a loan customer depends upon satisfactory proof of a special relationship."  *Gliko v. Permann*, 130 P.3d 155, 159 (Mont. 2006) (internal citations omitted).  "[W]here it is alleged [that] a bank has acted as the financial advisor of one of its depositors for many years, and that the latter has relied upon such advice, it is a sufficient allegation that a confidential relationship in regard to financial matters does exist and that, if it is proved, the bank is subject to the rules applying to confidential relations in general."  *Deist v. Wachholz*, 678 P.2d 188, 193 (Mont. 1984).  Further, the court found that "because the officers of the Conrad National Bank were Joan's financial and business advisors and because she reposed trust and confidence in them, the officers of the bank owed to Joan Deist a fiduciary duty."  *Id.* at 194. |
| Knowledge / Intent | Montana courts look to the Restatement § 876 and require that an aider and abettor have knowledge that the primary wrongdoer's conduct "is a breach of duty."  *Newman*, 272 P.3d at 633-34. |
| Substantial Assistance / Proof | Substantial assistance or encouragement is required to prove an "aiding and abetting" claim. *Hansen v. Bozeman Police Dep't*, 350 P.3d 372, 376 (Mont. 2015). |
| Statute of Limitations | "Mont. Code Ann. § 27–2–204 provides a three-year statute of limitations on claims for breach of fiduciary duty."  *In re Yellowstone Mountain Club, LLC*, 415 B.R. 769, 776 (Bankr. D. Mont. 2009); *see also Chief Dull Knife Coll. v. McDonald*, 222 P.3d 644 (Mont. 2009). |

NEBRASKA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | Under Nebraska law, a plaintiff asserting a claim for aiding and abetting must demonstrate that (1) the primary tortfeasor engaged in tortious conduct; (2) the defendant knew that the primary tortfeasor's conduct constituted a breach of duty; and (3) the defendant provided substantial assistance or encouragement.  *See Colombo Candy & Tobacco Wholesale Co. v. Ameristar Casino Council Bluffs, Inc.*, 972 F. Supp. 2d 1103, 1108 (D. Neb. 2013) (outlining what the Plaintiff had to prove for their aiding and abetting claims).  Thus, "'[n]o particular acts are necessary, nor is it necessary that any physical part in the commission of the unlawful act is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient.'"  *Id.* (quoting *Bergman v. Anderson*, 411 N.W.2d 336, 340 (1987)). <br><br> Until recently, "[t]he elements of a breach of fiduciary duty claim ha[d] not . . . been clearly outlined in Nebraska case law."  *McFadden Ranch, Inc. v. McFadden*, 807 N.W.2d 785, 789 (Neb. Ct. App. 2011).  But because breach of fiduciary duty is similar to professional malpractice, Nebraska recently held "that the elements of negligence constitute the elements of a breach of fiduciary duty cause of action."  *Id.*  Consequently, "in order to recover on a breach of fiduciary duty claim, a plaintiff must prove (1) that the defendants owed it a fiduciary duty, (2) that they breached the duty, (3) that the breach was the cause of the injury to the company, and (4) that the company was damaged."  *Winkler v. Price*, No. 8:13-CV-52, 2013 WL 3776540, at *4 (D. Neb. July 17, 2013). |
| **Existence of Fiduciary Duty** | A fiduciary duty, which arises out of "a confidential relationship, 'exists between two persons if one has gained the confidence of the other and purports to act or advise with the other's interest in mind.'"  *Paris v. Crawford State Bank*, No. A-91-869, 1993 WL 578, at *3 (Neb. Ct. App. 1993) (quoting *Bloomfield v. Neb. State Bank*, 465 N.W.2d 144, 149 (Neb. 1991)).  With respect to the banking industry, courts generally view the lender-borrower relationship as a "debtor-creditor relationship, not a fiduciary one."  *Id.* (citing *Daniels v. Army National Bank*, 822 P.2d 39 (Kan. 1991)). |
| **Knowledge / Intent** | "The Nebraska Supreme Court has likened a claim for breach of fiduciary duties to professional malpractice."  *In re Louise V. Steinhoefel Trust*, 854 N.W.2d 792, 798 (Neb. Ct. App. 2014) (citing *Cmty. First State Bank v. Olsen*, 587 N.W.2d 364 (Neb. 1998)).  Thus, the Plaintiff does not have to establish scienter, rather, the Plaintiff merely has to "prove the elements of negligence."  *Id.*; *see also id.* at 799 ("A violation by a trustee of a duty required by law, whether willful, fraudulent, or resulting from neglect, is a breach of trust, and the trustee is liable for any damages proximately caused by the breach."). |
| **Substantial Assistance / Proof** | Plaintiffs must establish each element by a preponderance of the evidence.  *See In-Custody Intern. Corp. v. Taper*, No: 8:07-cv-176, 2008 WL 391117, at *3 (D. Neb. Aug. 18, 2008)) (applying Nebraska law in requiring the plaintiffs to establish their breach of fiduciary duty claims "by a preponderance of the evidence"). |
| **Statute of Limitations** | The statute of limitations for professional negligence claims applies to breach of fiduciary duty claims.  *See Cmty. First State Bank v. Olsen*, 587 N.W.2d 364, 368 (Neb. 1998) (finding "no reason why claims for breach of fiduciary duties should not" be subject to the same statute of limitations as professional negligence claims).  Thus, the applicable statute of limitations is two years from the latest act or omission.  Neb. Rev. Stat. Ann. § 25-222 (West 2015).  If the cause of action is not discoverable within two years, however, a one-year statute of limitations from the date of discovery applies.  *Id.*  Furthermore, a ten-year statute of repose applies.  *See id.* ("[I]n no event may any action be commenced to recover damages for professional negligence . . . more than ten years after the date of rendering or failure to render such professional service which provides basis for the cause of action."). |

27

NEVADA

| Recognition as Cause of Action / Elements | In Nevada, a claim for "[a]iding and abetting the breach of a fiduciary duty has four required elements: (1) there must be a fiduciary relationship between two parties, (2) that the fiduciary breached, (3) the defendant third party knowingly and substantially participated in or encouraged that breach, and (4) the plaintiff suffered damage as a result of the breach." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014)  <br><br> Generally, "a fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Restatement (Second) of Torts § 874 cmt. a (1979). Thus, a breach of fiduciary duty claim seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship." *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009). |
|---|---|
| Existence of Fiduciary Duty | "Under the Restatement (Second) of Torts, a "fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Stalk v. Mushkin*, 125 Nev. 21, 28, 199 P.3d 838, 843 (2009) (citing Restatement (Second) of Torts § 874 cmt. a (1979)). |
| Knowledge / Intent | The plaintiff must establish evidence that the defendant knowingly assisted in the injury. *See Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112-13 (Nev. 1998). |
| Substantial Assistance / Proof | The plaintiff must demonstrate all elements by a preponderance of the evidence. *Bedore v. Familian*, 122 Nev. 5, 12, 125 P.3d 1168, 1172 (2006). Notably, "[t]he second and third elements [of aiding and abetting] should be weighed together, that is, greater evidence supporting the second element requires less evidence of the third element, and vice versa." *Mahlum*, 970 P.2d at 112. |
| Statute of Limitations | The statute of limitations is three years. Nev. Rev. Stat. § 11.190(3)(d); *Kahn v. Dodds (In re AMERCO Derivative Litig.)*, 252 P.3d 681, 703 (Nev. 2011). "The statute of limitations does not commence to run, however, until [plaintiff] knew or reasonably should have known facts giving rise to [defendant's] alleged breach of fiduciary duty." *Golden Nugget, Inc. v. Ham*, 646 P.2d 1221, 1223 (Nev. 1982). |

28

NEW HAMPSHIRE

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | New Hampshire has not addressed whether a claim for aiding and abetting a breach of fiduciary duty exists under New Hampshire law. Federal courts, however, have assumed that New Hampshire would recognize the claim. *See, e.g., Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 82-83 (1st Cir. 2001); *In re Felt Mfg. Co., Inc.*, 371 B.R. 589, 615 (Bankr. D.N.H. 2007) (predicting "that the New Hampshire Supreme Court would concur with the majority of jurisdictions that have considered the issue and recognize a claim for aiding and abetting in the context of breach of fiduciary duty"). In predicting that the NH Supreme Court would recognize a claim for aiding and abetting, federal courts have stated that the elements of this cause of action would be the same as those under Restatement (Second) of Torts § 876(b): (1) that there is a harm resulting to a third person from the tortious conduct of another; (2) knowledge that the other's conduct constitutes a breach of duty; and (3) substantial assistance or encouragement is given to the other. *In re Felt Mfg. Co., Inc.*, 371 B.R. 589, 615 (Bankr. D.N.H. 2007). A breach of fiduciary duty claim would require the plaintiff to prove two elements: (1) a fiduciary relationship; and (2) a breach of that relationship. *See Schneider v. Plymouth State College*, 744 A.2d 101, 106 (N.H. 1999). |
| **Existence of Fiduciary Duty** | A fiduciary relationship is "a comprehensive term and exists wherever influence has been acquired and abused or confidence has been reposed and betrayed." *Cornwell v. Cornwell*, 359 A.2d 683, 686 (N.H. 1976). "A fiduciary relation does not depend upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Lash v. Cheshire Cnty. Sav. Bank, Inc.*, 474 A.2d 980, 981 (N.H. 1984) (quoting *Ford v. Guarantee Abstract & Title Co.*, 553 P.2d 254, 267 (Kan. 1976)). "The party reposing confidence becomes dependent on the fiduciary because he or she must rely on the fiduciary for a particular service." *Schneider v. Plymouth State College*, 744 A.2d 101, 105 (N.H. 1999) (citation omitted). In the context of a banking relationship, "the relationship between a bank and a customer is not a fiduciary one unless the law otherwise specifies." *Ahrendt v. Granite Bank*, 740 A.2d 1058, 1061 (N.H. 1999) (citing *Lash*, 474 A.2d at 982). Instead, "the relationship between a bank and its depositor is a debtor-creditor relationship." *Id.* |
| **Knowledge / Intent** | Although the New Hampshire Supreme Court has not addressed this cause of action, federal courts that have concluded that it would adopt the majority rule with respect to the "knowledge" element of aiding and abetting a fiduciary duty, holding that "to act knowingly means to act with actual knowledge." This means that the defendant knew two things: (1) that it owed a fiduciary duty to the plaintiff; and (2) that the defendant was breaching that duty. *See Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 83 (1st Cir. 2001). |
| **Substantial Assistance / Proof** | The burden is on the plaintiff to establish a breach of fiduciary duty claim. *See Schneider v. Plymouth State College*, 744 A.2d 101, 106 (N.H. 1999). Plaintiffs must establish this claim by a preponderance of the evidence. *See Hancock v. R.A. Earnhardt Textile Mach. Div.*, 653 A.2d 558 , 559 (1995) (citation omitted) ("In a civil action the burden of proof is generally on the plaintiff to establish its case by a preponderance of the evidence."). |
| **Statute of Limitations** | Although not much case law exists, it appears that a three-year statute of limitations would apply. *See Plaisted v. LaBrie*, 70 A.3d 447, 450 (referencing N.H. Rev. Stat. § 508:4 and holding that a three-year statute of limitations would apply to an action predicated upon establishing a breach of contract or fraud); *see also Conrad v. Hazen*, 665 A.2d 372, 374 (N.H. 1995) (referencing the three-year statute of limitations for personal actions in a breach of fiduciary duty claim). |

## NEW JERSEY

| Recognition as Cause of Action / Elements | "To establish a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: (1) a breach of fiduciary duty; (2) the defendant's knowledge of and substantial assistance in that breach; and (3) damages resulting from the breach." *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 307 (D.N.J. 2012) (citing New Jersey state court cases). |
|---|---|
| Existence of Fiduciary Duty | Under New Jersey law, "the essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 150 N.J. 550, 563 (N.J. 1997). In New Jersey, "there is no presumed fiduciary relationship between a bank and its customer." *United Jersey Bank v. Kensey*, 206 N.J. Super. 540, 552 (N.J. App. Div. 1997). |
| Knowledge / Intent | New Jersey law requires that a defendant had "actual knowledge" of the breach of fiduciary duty. *Wiatt v. Winston & Strawn*, 838 F. Supp. 2d 296, 307 (finding that the law in New Jersey is the same as that in New York); *see also McCormac v. Qwest Comm'cns Intern., Inc.*, 387 N.J.Super. 469, 481-83 (N.J. App. Div. 2006). |
| Substantial Assistance / Proof | To assess whether a defendant has provided "substantial assistance" to the principal violator, New Jersey relies on the five factors listed in the comments of section 876 of the Restatement (Second) of Torts: "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (N.J. 2004).<br><br>A plaintiff must allege the elements of aiding and abetting a breach of fiduciary duty. *Valcom, Inc. v. Vellardita*, 2014 WL 1628431, *13 (D.N.J. Apr. 23, 2014). "As a general rule, the preponderance of the evidence standard applies in civil actions." *Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 169 (N.J. 2006). |
| Statute of Limitations | The statute of limitations for a breach of fiduciary duty causing purely economic loss is six years. *Balliet v. Fennell*, 845 A.2d 168, 170, 172 (N.J. Super. Ct. App. Div. 2004). The statute of limitations accrues when the plaintiff has actual or constructive knowledge for a claim of breach of fiduciary duty. *Fleming Cos. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995). |

30

## NEW MEXICO

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | New Mexico recognizes tort liability for the aiding and abetting of a breach of fiduciary duty.  To state such a claim, a plaintiff must allege and prove the following: (1) a fiduciary of the plaintiff breached a duty owed to the plaintiff; (2) the defendant knew of such a duty; (3) the defendant intentionally provided substantial assistance or encouragement to the fiduciary to commit an act which the defendant knew to be a breach of duty; and (4) damages to the plaintiff were proximately caused thereby.  An individual claim for aiding and abetting the breach of fiduciary duty, as opposed to a partnership claim, requires the individual plaintiff to show direct injury. *Richter v. Van Amberg*, 97 F. Supp. 2d 1255, 1265 (D.N.M. 2000); *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 124 N.M. 186, 190 (N.M. 1997); *see also Advanced Optics Electronics, Inc. v. Robins*, 769 F. Supp. 2d 1285, 1305 (D.N.M. 2010) (noting that New Mexico has both implicitly and explicitly endorsed tort liability for intentionally causing a fiduciary to breach his or her duties). |
| **Existence of Fiduciary Duty** | "Ordinarily, a bank does not act in a fiduciary capacity towards it customers or depositors absent special circumstances.  The relationship normally is a contractual one."  *Beverly Hills Sav. v. Highfield Assoc.*, 1987 WL 61954, *4 (D.N.M. Aug. 28, 1987). |
| **Knowledge / Intent** | Under the law of New Mexico a defendant must know of the duty breached.   *Richter v. Van Amberg*, 97 F. Supp. 2d 1255, 1265 (D.N.M. 2000).  For example, in *Richter v. Van Amberg*, the court dismissed the case in part because, "assuming that Mr. Gibbens breached his fiduciary duties toward Plaintiff Richter in these circumstances, no evidence suggests that Mr. Van Amberg knew of the particular duty, let alone encouraged Mr. Gibbens to breach such fiduciary duties." |
| **Substantial Assistance / Proof** | The burden of proving a breach of fiduciary duty lies with the plaintiff. However, if a plaintiff demonstrates self-dealing, the burden of proof shifts to the fiduciary.  *Mayeux v. Winder*, 139 N.M. 235, 243 (N.M. Ct. App. 2005). |
| **Statute of Limitations** | "Under NMSA 1978, § 37-1-4 (1880), the statute of limitations for bringing an action for damages based upon allegations of conspiracy to defraud and fraud, and breach of fiduciary duty is four years."  *Durham v. Sw. Developers Joint Venture*, 128 N.M. 648, 658 (N.M. Ct. App. 1999).  *But see Gallagher v. Santa Fe Fed. Employees Fed. Credit Union*, 132 N.M. 552 (N.M. Ct. App. 2002) (holding a three-year statute of limitations applicable to claims for conversion under the Uniform Commercial Code (UCC) applied to claims against drawee bank for negligence, breach of fiduciary duty, money had and received, or in implied contract, where all claims were based on bank's failure to refuse payment on checks with a forged endorsement). |

31

### NEW YORK

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | "To recover damages for aiding and abetting a breach of fiduciary duty, a plaintiff must plead and prove that a fiduciary duty owed to plaintiff was breached, that the defendant 'knowingly induced or participated in the breach,' and that the plaintiff sustained damages as a result of the breach." *Baron v. Galasso*, 921 N.Y.S.2d 100, 104 (N.Y. App. Div. 2011) (citation omitted). "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Id.* (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 170 (N.Y. App. Div. 2003)). |
| **Existence of Fiduciary Duty** | "A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Roni LLC v. Arfa*, 963 N.E.2d 123, 124-25 (N.Y. 2011) (internal citations omitted).<br><br>"The legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or its guarantors." *Marine Midland Bank, N. A. v. Hallman's Budget Rent-A-Car*, 613 N.Y.S.2d 92, 92 (N.Y. App. Div. 1994) (citation omitted). "[I]n unusual circumstances, a fiduciary relationship may arise even between a bank and a customer if there is either 'a confidence reposed which invests the person trusted with an advantage in treating with the person so confiding,' or an assumption of control and responsibility, the mere fact that a corporation has borrowed money from the same bank for several years is insufficient to transform the relationship into one in which the bank is a fiduciary." *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993) (internal citations omitted) (relying upon New York law). |
| **Knowledge / Intent** | "Although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty." *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (N.Y. App. Div. 2003). "Actual knowledge, as opposed to merely constructive knowledge, is required and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty." *Global Minerals & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 217 (N.Y. App. Div. 2006). "[A]n allegation that the defendant 'knew or should have known' about the breach of duty is insufficient to support a claim" for aiding and abetting breach of fiduciary duty. *Baron v. Galasso*, 921 N.Y.S.2d 100, 104 (2011). |
| **Substantial Assistance / Proof** | "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Sanford/Kissena Owners Corp. v. Daral Properties, LLC*, 923 N.Y.S.2d 692, 695 (N.Y. App. Div. 2011). "Mere inaction" only constitutes substantial assistance where "the defendant owes a fiduciary duty directly to the plaintiff." *Baron v. Galasso*, 921 N.Y.S.2d at 104 (quoting *Kaufman*, 760 N.Y.S.2d at 170).<br><br>The party asserting a cause of action for aiding and abetting a breach of fiduciary duty bears the burden of proof. *See, e.g.*, *Baron v. Galasso*, 921 N.Y.S.2d at 104. |
| **Statute of Limitations** | Generally, a claim for damages for breach of fiduciary duty is subject to a three-year statute of limitations. *See* N.Y. C.P.L.R. § 214[4]; *Baron v. Galasso*, 921 N.Y.S.2d 100, 103 (N.Y. App. Div. 2011) (aiding and abetting breach of fiduciary duty subject to three-year statute of limitations). However, where the claim is based on allegations of fraud, it is subject to a six-year statute of limitations. *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164 (N.Y. App. Div. 2003). |

32

## NORTH CAROLINA

| Recognition as Cause of Action / Elements | As a preliminary matter, it is questionable whether North Carolina recognizes a claim for aiding and abetting a breach of fiduciary duty.  In *Land v. Land*, the Court of Appeals declined to address whether aiding and abetting breach of fiduciary duty was a cognizable claim, while noting that it was "an 'unclear' issue."  No. COA11-1027, 2012 WL 3192605, at *8-9 (N.C. Ct. App. Aug. 7, 2012).  In *Laws v. Priority Trustee Services of N.C.*, the federal district court dismissed a claim for aiding and abetting breach of fiduciary duty on the basis that "no such cause of action exists in North Carolina."  *Laws v. Priority Tr. Servs. of N.C.*, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009), *aff'd sub nom.*, *Laws v. Priority Tr. Servs. of N. Carolina, LLC*, 375 F. App'x 345 (4th Cir. 2010).  The court stated:  "The only North Carolina Court of Appeals decision recognizing such a claim, *Blow v. Shaughnessy*, 88 N.C.App. 484, 489, 364 S.E.2d 444, 447–48 (1988), involved allegations of securities fraud, and its underlying rationale was eliminated by the United States Supreme Court in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994)."  *Id.*  In *Bottom v. Bailey*, the Court of Appeals declined to address whether aiding and abetting breach of fiduciary duty is a cause of action, finding that—even if recognized—the plaintiff failed to state a claim. 767 S.E.2d 883, 890 (N.C. Ct. App. 2014).  Another North Carolina court has stated that it "remains an open question whether North Carolina law recognizes" this claim, but if it did, the elements would be: (1) violation of a fiduciary duty by the primary party; (2) knowledge of the violation by the aiding and abetting party; and (3) substantial assistance by the aider and abettor in achieving the primary violation.  *Tong v. Dunn*, 2012 WL 944581, *4-5 (N.C. Super. Ct. Mar. 19, 2012) (internal citations omitted). |
|---|---|
| Existence of Fiduciary Duty | The Supreme Court of North Carolina has defined a fiduciary relationship as one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence  . . . , [and] it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other."  *Dalton v. Camp*, 548 S.E.2d 704, 707-08 (N.C. 2001) (quoting *Abbitt v. Gregory*, 160 S.E. 896, 906 (N.C. 1931)).  "Ordinary borrower-lender transactions . . . are considered arm's length and do not typically give rise to fiduciary duties. . . .  Nonetheless, because a fiduciary relationship may exist 'under a variety of circumstances' it is possible, at least theoretically, for a particular bank-customer transaction to give rise to a fiduciary relation given the proper circumstances ."  *Dallaire v. Bank of America, N.A.*, 760 S.E.2d 263, 266-67 (N.C. 2014) (internal quotations omitted) (finding that a loan officer's mere assertion that the plaintiffs could obtain a first priority loan did not give rise to the "special confidence" required for a fiduciary relationship). |
| Knowledge / Intent | Although North Carolina courts do not appear to have addressed whether this is a recognized claim, they have assumed that, if recognized, it would require knowledge of the underlying breach.  *See Bottom*, 767 S.E.2d at 889. |
| Substantial Assistance / Proof | Although North Carolina courts do not appear to have addressed whether this is a recognized claim, they have assumed that, if recognized, it would require "substantial assistance by the aider and abettor in the achievement of the primary violation."  *Bottom*, 767 S.E.2d at 889 (internal quotation marks omitted). |
| Statute of Limitations | In North Carolina, the statute of limitations for a breach of fiduciary duty claim is three years. N.C. Gen. Stat. § 1-52; *Tierney v. Garrad*, 477 S.E.2d 73, 75 (N.C. Ct. App. 1996). |

33

## NORTH DAKOTA

| Recognition as Cause of Action / Elements | It is unclear if North Dakota recognizes the cause of action of aiding and abetting a breach of fiduciary duty. *See Ward v. Bullis*, 748 N.W.2d 397, 407 (N.D. 2008). |
|---|---|
| | Under North Dakota law, to establish a claim for breach of fiduciary relationship, the plaintiff must prove by a greater weight of the evidence: "1. A fiduciary relationship between the plaintiff and defendant[;] 2. A duty by the defendant to the plaintiffs arising from that relationship[;] 3. The defendants [sic] breach of that duty[;] 4. Damage to the plaintiffs proximately caused by that breach of duty." *Meyer v. Maus*, 626 N.W.2d 281, 286 (N.D. 2001). |
| Existence of Fiduciary Duty | "The relationship between a bank and its customers is viewed as a debtor-creditor relationship which does not ordinarily impose a fiduciary duty upon a bank. Some courts have recognized that a fiduciary relationship may arise under circumstances which reflect a borrower's reposing of faith, confidence and trust in a bank with a resulting domination, control or influence exercised by the bank over the borrower's affairs. Furthermore, the borrower or party reposing the confidence must be in a position of inequality, dependence, weakness, or lack of knowledge. In a commercial context, the mere rendering of advice by the lender to the borrower, even if given in a sincere effort to help the borrower prosper, does not transform a business relationship into a fiduciary relationship. Rather, actual day-to-day involvement in management and operations of the borrower or the ability to compel the borrower to engage in unusual transactions is required for the purposes of showing that a lending institution had "control" over a borrower." *Union State Bank v. Woell*, 434 N.W.2d 712, 721 (N.D. 1989). |
| Knowledge / Intent | In North Dakota, aiding and abetting liability, if recognized, would require the existence of "a common plan to commit a tortious act" and evidence that "the participants knew of the plan and its purpose." *See Ward v. Bullis*, 748 N.W.2d 397, 407-08 (N.D. 2008). |
| Substantial Assistance / Proof | The Supreme Court of North Dakota has held that a plaintiff bears the burden of proving a breach of fiduciary duty "by a greater weight of the evidence." *Meyer v. Maus*, 626 N.W.2d 281, 826 (N.D. 2001). |
| | If North Dakota recognizes aiding and abetting a breach of fiduciary duty, the plaintiffs would have to show that "the participants took affirmative steps to encourage the achievement of the result." *See Ward v. Bullis*, 748 N.W.2d 397, 408 (N.D. 2008). |
| Statute of Limitations | "An action for breach of fiduciary duty falls within the plain language of § 28-01-16. That provision requires the following actions to be commenced within six years after the claim for relief has accrued." *Roemmich v. Eagle Eye Dev., LLC*, 526 F.3d 343, 349 (8th Cir. 2008) (applying N.D. state law). |

34

# OHIO

| Recognition as Cause of Action / Elements | Ohio does not recognize a cause of action for aiding and abetting a breach of fiduciary duty. *DeVries Dairy, L.L.C. v. White Eagle Coop. Assn., Inc.*, 974 N.E.2d 1194 (Ohio 2012) (holding that Ohio has never recognized an action for tortious acts in concert under the Restatement (Second) of Torts § 876); *see also Antioch C. Litig. Trust v. Morgan*, 2012 WL 6738676, *2 (S.D. Ohio Dec. 31, 2012) (preventing plaintiffs from asserting a claim for aiding and abetting a breach of fiduciary duty based on the Ohio Supreme Court's ruling in *DeVries*). |
|---|---|
| | Additionally, in Ohio, "the party asserting [breach of fiduciary duty]  must establish the existence of a fiduciary duty, a breach of that duty, and an injury proximately resulting therefrom."  *Spalla v. Fransen*, 2010-Ohio-3461, ¶ 28, 188 Ohio App. 3d 666, 673, 936 N.E.2d 559, 564 (internal quotations omitted).  Thus, "[t]o succeed on a claim of breach of fiduciary duty, the plaintiff must prove the existence of a duty arising out of a fiduciary relationship, failure to observe that duty, and injury resulting proximately therefrom."  *Id.* |
| Existence of Fiduciary Duty | Under Ohio law, a fiduciary is defined as "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking."  *Hurst v. Ent. Title Agency*, 809 N.E.2d 689, 697 (Ohio Ct. App. 2004).  "A breach-of-fiduciary duty claim essentially is a negligence claim involving a higher standard of care.  Thus, the party asserting such breach must establish the existence of a fiduciary duty, a breach of that duty, and an injury proximately resulting therefrom."  *Id.* |
| | "[I]t is clear that a fiduciary duty does not arise between a bank and a prospective borrower unless there are special circumstances."  *Groob v. KeyBank*, 843 N.E.2d 1170, 1175 (Ohio 2006).  Moreover, "[a] bank does not owe a fiduciary duty to a prospective borrower unless it is aware of a special repose or trust."  *Id.* (emphasis in original). |
| Knowledge / Intent | For aiding and abetting claims, general awareness of the defendant's role in an overall tortious activity is required, as well as the defendant's knowing assistance in the tortious activity.  *Whelan v. Vanderwist of Cincinnati*, 2011 WL 6938600, *3 (Ohio Ct. App. Dec. 30, 2011) (internal quotations omitted). |
| Substantial Assistance / Proof | The burden of proving a breach of fiduciary duty falls upon "the one seeking recovery [who] must show the existence of a duty on the part of the one sued not to subject the former to the injury complained of, a failure to observe such duty, and an injury resulting proximately therefrom."  *Stamper v. Parr-Ruckman Home Town Motor Sales, Inc.*, 265 N.E.2d 785, 786 (Ohio 1971). |
| Statute of Limitations | In Ohio, the statute of limitations for a breach of fiduciary duty claim is four years.  Ohio Rev. Code Ann. § 2305.09; *Cundall v. U.S. Bank*, 909 N.E.2d 1244, 1249 (Ohio 2009). |

35

## OKLAHOMA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | It is unclear whether Oklahoma recognizes a cause of action for aiding and abetting a breach of fiduciary duty. *See Louisiana Mun. Police Employees' Retirement Sys. V. Continental Res., Inc.*, 2013 WL 2387773, *2 n.2 (W.D. Okla. May 30, 2013) (noting that the defendants raised the argument that Oklahoma does not recognize this cause of action, but declining to address the argument because no primary breach of fiduciary duty occurred).<br><br>Under Oklahoma law, the four elements of an actionable breach of fiduciary duty claim are: (1) the existence of a fiduciary relationship, (2) a duty arising out of the fiduciary relationship, (3) a breach of the duty, and (4) damages proximately caused by the breach of duty. Damages are an essential element of a breach of duty claim." *F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1299 (N.D. Okla. 1998). |
| **Existence of Fiduciary Duty** | A "fiduciary or confidential relationship . . . includes legal, contractual, formal, and informal relations and exists when one person trusts and relies upon another." *Horton v. Hamilton*, 345 P.3d 357, 364 (Okla. 2015). "Such a relationship exists when one person acquires influence over another such that the influenced allows the influencer to substitute his or her will for the influenced's own." *Id.* "Oklahoma recognizes the common law rule that the relationship between a bank and its customer is not fiduciary in nature, but is that of creditor-debtor." *First Nat'l Bank & Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 510–11 (Okla. 1993). Whether there is a fiduciary duty is a fact-specific inquiry; if a party points to specific facts supporting the theory "that a special relationship existed between him [or her] and the Bank," a claim for breach of fiduciary duty may be cognizable. *Beshara v Southern Nat. Bank*, 928 P.2d 280, 288-89 (Okla. 1996). |
| **Knowledge / Intent** | Oklahoma courts consider breach of fiduciary duty to be a negligence claim. *See Horton*, 345 P.3d at 364–65 ("Other than a heightened duty of care, breach of fiduciary duty is identical to negligence and gross negligence."). Oklahoma courts generally require fiduciaries to merely "act reasonably." *Swickey v. Silvey Cos.*, 979 P.2d 266, 269 (Okla. Civ. App. 1999). |
| **Substantial Assistance / Proof** | Under Oklahoma law, plaintiffs have the burden of proving each element of their claim. *Isle v. Brady*, 288 P.3d 259, 268 (Okla. Civ. App. 2012). |
| **Statute of Limitations** | Oklahoma imposes a two-year statute of limitations, which begins to run when the plaintiff knew or should have known of his or her injuries. *See Hebble v. Shell Western E & P, Inc.*, 238 P.3d 939, 943-44 (Okla. Civ. App. 2009). |

## OREGON

| Recognition as Cause of Action / Elements | Oregon recognizes a claim for aiding and abetting a breach of a fiduciary duty as a "subcategory of a broader theory of vicarious tort liability." *Granewich v. Harding*, 985 P.2d 788, 793 n.3 (Or. 1999). "A person may be jointly liable with another for substantially assisting in the other's breach of a fiduciary duty owed to a third party, if the person knows that the other's conduct constitutes a breach of that fiduciary duty. *Reynolds v. Shrock*, 142 P.3d 1062, 1069 (Or. 2006). |
|---|---|
| Existence of Fiduciary Duty | The existence of a fiduciary relationship depends on control and dependency. The Oregon Appeals Court has found that "[i]f the parties construct an essentially fiduciary-type dependency relationship, duties will arise from that relationship." *Hampton Tree Farms, Inc. v. Jewett*, 865 P.2d 420, 428-29 (Or. Ct. App. 1993), |
| Knowledge / Intent | In Oregon, "[t]o hold one responsible for a tort not committed by his orders, his adoption of and assent of the same must be clear and explicit and founded on a clear knowledge of the tort which has been committed." *Stull v. Porter*, 100 Ore. 514, 518 (Or. 1921). |
| Substantial Assistance / Proof | "It is not sufficient for the plaintiffs to merely allege breach. Plaintiffs must show in what respect the fiduciary duty was breached, and breach must be proved by a preponderance of the evidence." *Lindland v. United Bus. Invest., Inc.*, 693 P.2d 20, 25 (Or. 1984). |
| Statute of Limitations | Oregon applies a statute of limitations of two years to breach of fiduciary duty claims. *See F.D.I.C. v. Smith*, 980 P.2d. 141, 147 (Or. 1999). |

37

## PENNSYLVANIA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | Pennsylvania courts have recognized aiding and abetting liability in the context of a breach of fiduciary duty, requiring that the defendant have "knowledge of the breach by the aider and abettor," and give "substantial assistance or encouragement . . . in effecting that breach." *Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003) (adopting Section 876 of the Restatement (Second) of Torts); *see also In re Jamuna Real Estate, LLC*, 416 B.R. 412, 434 (E.D.Pa. Bankr. 2009) ("[A] plaintiff must show (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider or abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach."). |
| **Existence of Fiduciary Duty** | Under Pennsylvania law, a fiduciary relationship can be established in two primary ways. "The first is to demonstrate a legal relation ordinarily known as confidential at law. *See Leedom*, 274 Pa. at 25, 117 A. at 412 (explaining that a confidential relationship 'generally exists between trustee and cestui que trust, guardian and ward, attorney and client, and principal and agent')." *Basile v. H&R Block*, 52 A.3d 1202, 1210 (Pa. 2012). In the absence of this legal presumption, the existence of a fiduciary relationship is a fact-specific inquiry. *Id.* |
| **Knowledge / Intent** | For aiding and abetting liability to attach, a plaintiff must show that the defendant had knowledge of the breach. *See Koken*, 825 A.2d at 732. |
| **Substantial Assistance / Proof** | For purposes of aiding and abetting a breach of fiduciary duty, "substantial assistance" means that the aid must "proximately cause the violation." *Jamuna Real Estate, LLC*, 416 B.R. at 437. Plaintiffs must plead the elements of the claim. *Id.* at 434. |
| **Statute of Limitations** | Pennsylvania law applies a two-year statute of limitations to claims of aiding and abetting a breach of fiduciary duty. *Pierce v. Rossetta Corp.*, No. 88-5873, 1992 WL 165817, at *10 (E.D.Pa. June 12, 1992). |

38

**RHODE ISLAND**

| Recognition as Cause of Action / Elements | In general under Rhode Island law, "[a]n individual only will be held liable for harm resulting to a third person from the tortious conduct of another if he or she knows that the others conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself." *Groff v. Maurice*, No.  86-3808, 1993 WL 853801, at *3 (R.I. Super. Apr. 7, 1993).<br><br>"In general, the elements of a fiduciary duty claim consist of (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Chain Store Maint., Inc. v. Nat'l Glass & Gate Serv., Inc.*, No. CIV.A. PB 01-3522, 2004 WL 877599, at *13 (R.I. Super. Apr. 21, 2004) (internal quotations omitted). |
|---|---|
| Existence of Fiduciary Duty | "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.  Moreover, [a] fiduciary relation arises whenever confidence is reposed on one side, and domination and influence result on the other or when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other.  Factors that demonstrate the existence of a fiduciary relationship include the acting of one person for another; the having and exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another. *Chain Store Maint., Inc. v, Nat'l Glass & Gate Serv., Inc.*, No. CIV.A. PB 01-3522, 2004 WL 877599, at *13 (R.I. Super. Apr. 21, 2004)  (internal quotations and citations omitted).<br><br>"[I]in general, a depositor relationship does not in and of itself give rise to a fiduciary relationship." *Santucci v. Citizens Bank of R.I.*, 799 A.2d 254, 258 (R.I. 2002) (internal quotation omitted) (upholding a lower court's decision finding no fiduciary relationship between a bank and its customer). |
| Knowledge / Intent | Under Rhode Island law, aiding and abetting liability generally requires knowledge of the third party committing a breach of duty.  *Groff v. Maurice*, No. 86-3808, 1993 WL 853801, at *3 (R.I. Super. Apr. 7, 1993). |
| Substantial Assistance / Proof | Standard of proof, beyond general pleading requirements, is not discussed in the case law. |
| Statute of Limitations | Rhode Island has a ten-year statute of limitations for civil actions claiming a breach of fiduciary duty. *Mendes v. Factor*, 41 A.3d 994, 1003 (R.I. 2012). |

39

## SOUTH CAROLINA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | "The elements for the cause of action of aiding and abetting a breach of fiduciary duty are: (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages." *Vortex Sports & Entm't, Inc. v. Ware*, 662 S.E.2d 444, 448 (S.C. Ct. App. 2008). |
| **Existence of Fiduciary Duty** | In South Carolina, "[t]he determination of whether a fiduciary relationship exists is an equitable issue to be determined by the court. . . . [T]he evidence must show the entrusted party actually accepted or induced the confidence placed in him." *Cowburn v. Leventis*, 619 S.E.2d 437, 447 (S.C. Ct. App. 2005) (internal quotations and citations omitted) (finding that there was no "fiduciary duty upon a broker to investigate for any unknown potential risks of investment"). As to a fiduciary duty owed by a bank to its customer, the Supreme Court of South Carolina has held that "the normal bank-depositor arrangement creates a creditor-debtor relationship rather than a fiduciary one," but noted that "[i]n limited circumstances . . . a fiduciary relationship may be created between a bank and a customer if the bank undertakes to advise the customer as a part of the services the bank offers. Such a relationship charges the bank with a duty to disclose material facts which may affect its customers' interest." *Burwell v. S. Carolina Nat. Bank*, 340 S.E.2d 786, 790 (S.C. 1986). |
| **Knowledge / Intent** | "[A]ctual knowledge of duty and subsequent breach is required." *Simmons v. Danhauer & Assocs. LLC*, 477 F. App'x 53, 56 (4th Cir. 2012). Under South Carolina law, "knowing participation" requires "more than just mere tangential involvement, but actual encouragement or active procurement of the breach of fiduciary duty." *Id.* As multiple courts have noted, "the gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." *See e.g.*, *Vortex Sports*, 662 S.E.2d at 448. |
| **Substantial Assistance / Proof** | "A claim of breach of fiduciary duty is an action at law and the trial judge's findings will be upheld unless withouot evidentiary support. However, a breach of fiduciary duty [claim] may sound in equity if the relief sought is equitable." *Ex parte Wheeler v. Green*, 673 S.E.2d 836, 839 (S.C. Ct. App. 2009) (internal quotations and citations omitted). |
| **Statute of Limitations** | In South Carolina, the statute of limitations for a breach of fiduciary duty claim is three years. S.C. Code Ann. §15-3-530; *Magnolia North Prop. Owners' Ass'n v. Heritage Cmtys., Inc.*, 397 S.C. 348 (S.C. Ct. App. 2012); *see also Roof v. Swanson*, 543 S.E. 2d 278,281 (S.C. Ct. App. 2001) ("[W]e hold that section 33-8-300(e) requires a plaintiff to commence suit within either: (1) three years after the cause of action accrues; or (2) two years after the date the plaintiff discovers or reasonably should discover the breach. Whichever period occurs or expires first controls"). |

40

## SOUTH DAKOTA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | A review of case law indicates that South Dakota may recognize a claim for aiding and abetting tortious conduct. *See N. Valley Commc'ns, LLC v. MCI Commc'ns Servs., Inc.*, No. CIV. 07-1016, 2008 WL 2627519, at *8 (D.S.D. June 26, 2008) ("[I]n *Chem-Age Industries, Inc. v. Glover*, 652 N.W.2d 756, 773 (S.D. 2007), the South Dakota Supreme Court cited with approval Restatement (Second) of Torts § 876(b) in finding that South Dakota law recognizes a claim for aiding and abetting the breach of a fiduciary duty."). In *Chem-Age*, the South Dakota Supreme Court held that "to establish a cause of action for aiding or assisting in the breach of a fiduciary duty, a plaintiff must prove that (1) the fiduciary breached an obligation to plaintiff; (2) defendant substantially assisted the fiduciary in the achievement of the breach; (3) defendant knew that the fiduciary's conduct constituted a breach of duty; and (4) damages were sustained as a result of the breach." *Chem-Age Indus.*, 652 N.W.2d at 775. |
| **Existence of Fiduciary Duty** | A bank cannot have breached a fiduciary duty unless it establishes "a relationship of trust, faith, and confidence." *Cowan Bros. v. Am. State Bank*, 743 N.W.2d 411, 421 (S.D. 2007). Specifically, the South Dakota Supreme Court has stated that "[w]e have held in bank cases, for example, that to establish a fiduciary relationship with a customer, that person must repose a faith, confidence and trust in the bank which results in dominion, control or influence over the borrower's affairs. Also, the customer must be in a position of inequality, dependence, weakness or lack of knowledge." *High Plains Genetics Research, Inc. v. J K Mill-Iron Ranch*, 535 N.W.2d 839, 842 (S.D. 1995) (internal quotations and citations omitted). |
| **Knowledge / Intent** | "Knowing participation in a fiduciary's breach of duty requires both knowledge of the fiduciary's status as a fiduciary and knowledge that the fiduciary's conduct contravenes a fiduciary duty." *Chem-Age Indus.*, 652 N.W.2d at 775. "Although in some instances actual knowledge may be required, constructive knowledge will often suffice. Constructive knowledge is adequate when the aider and abettor has maintained a long-term or in-depth relationship with the fiduciary." *Id.* (internal citations omitted). |
| **Substantial Assistance / Proof** | Nothing beyond general pleading requirements is stated as a requirement. |
| **Statute of Limitations** | There is no specific provision under South Dakota law stating the statute of limitations for a breach of fiduciary duty, but the Supreme Court of South Dakota has applied a six-year limitations period to a breach of agency and breach of fiduciary duty claim. *See Saiz v. Horn*, 668 N.W.2d 332, 334 (S.D. 2003). |

41

## TENNESSEE

| Recognition as Cause of Action / Elements | In Tennessee, a claim for aiding and abetting a breach of fiduciary duty "requires that 'the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts.'" *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 552 (Tenn. Ct. App. 2012) (quoting *Carr v. United Parcel Service*, 955 S.W.2d 832, 836 (Tenn. 1997)). |
|---|---|
| Existence of Fiduciary Duty | Tennessee law provides for two types of fiduciary relationships:  (1) "relationships that are fiduciary per se, sometimes referred to as legal fiduciary, such as between a guardian and ward, an attorney and client, or conservator and incompetent," and (2) relationships that are not per se fiduciary in nature, but arise in situations where one party exercised 'dominion and control over another.'"  *Orlowski v. Bates*, No. 2:11-CV-01396-JPM, 2015 WL 1485980, at *9 (W.D. Tenn. Mar. 31, 2015) (quoting *Foster Bus. Park, LLC v. Winfree*, No. M2006-02340-COA-R3-CV, 2009 WL 113242, at *12 (Tenn. Ct. App. Jan. 15, 2009)).  "[I]n Tennessee a fiduciary duty does not exist as a matter of law between a bank and its customers. . . However, the law does not foreclose banks from entering into fiduciary relationships."  *Power & Telephone Supply Co., Inc. v. Suntrust Banks, Inc.*, No. 03-2271 M1/V, 2005 WL 1329208, at *2 (W.D. Tenn. May 10, 2005). |
| Knowledge / Intent | Federal district courts in Tennessee have predicted that a Tennessee state court would follow other courts applying section 876 of the Restatement (Second) of Torts to find that actual knowledge is required to establish aider and abettor liability.  *Lawyers Title Ins. Corp. v. United American Bank of Memphis*, 21 F. Supp. 2d 785, 796-97 (W.D. Tenn. 1998). |
| Substantial Assistance / Proof | "A claim for aiding and abetting a breach of fiduciary duty requires "an allegation of 'substantial' assistance on the part of the alleged tortfeasor."  *PNC Multifamily*, 387 S.W.3d at 552.  An aider may be liable if he/she "(a) orders or induces such conduct, knowing of the conditions under which the act is done or intending the consequences which ensue, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."  *Id.* (quoting Restatement of Torts § 876)). |
| Statute of Limitations | There is a one-year statute of limitations for breach of fiduciary duty claims.  Tenn. Code Ann. § 48-18-601. |

**TEXAS**

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | As this Court itself has acknowledged, the "law is admittedly unclear" as to whether Texas law even recognizes common law aiding and abetting as a cause of action. *OSIC v. Greenberg Traurig, LLP*, 12-cv-4641 (Dkt. No. 123) at 18 (ruling on, among others, a claim of aiding and abetting a breach of fiduciary duty). Indeed, the Texas Supreme Court has expressly declined to determine whether Texas law supports a claim for aiding and abetting. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001); *Juhl v. Airington*, 936 S.W.2d 640, 643-44 (Tex. 1996). Moreover, multiple appellate courts have ruled that it is questionable whether Texas recognizes such a cause of action. *See, e.g.*, *O'Kane v. Coleman*, No. 14-06-00657-CV, 2008 WL 2579832, at *5 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.); *Span Enters. v. Wood*, 274 S.W.3d 854, 858-59 (Tex. App.—Houston [1st Dist.] 2008, no pet.).<br><br>Nevertheless, to the extent some courts may recognize a cause of action for aiding and abetting a breach of fiduciary duty under Texas law, *see Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942), the elements are as follows: (1) existence of a fiduciary relationship; (2) the defendant's knowledge of the fiduciary relationship; and (3) the defendant's awareness that it was participating in the breach of fiduciary duty. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721 (Tex. App.—Austin 2001, pet. denied)). |
| **Existence of Fiduciary Duty** | There are two general categories of fiduciary relationships recognized under Texas law. The first type of fiduciary relationships are formal ones recognized as a matter of law, *e.g.*, relationships between attorneys and clients, principals and agents, trustees and beneficiaries, or between partners or joint venturers. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). The second type of fiduciary relationship arises from an informal, "confidential" relationship between the parties. *E.g.*, *Ritchie v. Rupe*, 443 S.W.3d 856, 874 n.27 (Tex. 2014).<br><br>As for the banking industry, "[t]he relationship between a borrower and lender is usually neither a fiduciary relationship nor a special relationship." *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (citing *Mfrs. Hanover Trust Co. v. Kingston Inv. Corp.*, 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no pet.)). |
| **Knowledge / Intent** | Assuming that aiding and abetting liability is recognized, a plaintiff would have to establish that the defendant "knowingly participated" in the underlying breach. *In re ParkCentral Global Litig.*, 884 F. Supp. 2d 464, 481 (N.D. Tex. 2012). In other words, "the plaintiff must show the defendant knew of the fiduciary relationship and was aware of his participation in the third party's breach of its duty." *Darocy v. Abildtrup*, 345 S.W.3d 129, 138 (Tex. App.—Dallas 2011, no pet.) (citing *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 722 (Tex. App.—Austin 2001, pet. denied)). |
| **Substantial Assistance / Proof** | In Texas, "[t]o recover for a breach of fiduciary duty, a plaintiff has the burden of proving each element." *Wells Fargo Bank, N.A. v. Crocker*, No. 13-07-00732-CV, 2009 WL 5135176, at *3 (Tex. App.—Corpus Christi Dec, 29, 2009, pet. denied) (citing *Avary v. Bank of America, N.A.*, 72 S.W.3d 779, 791 (Tex. App.—Dallas 2002, pet. denied) (stating that the plaintiff "was required to produce more than a scintilla of evidence" of a defendant bank's breach of fiduciary duty)). |
| **Statute of Limitations** | Assuming the claim is recognized, aiding and abetting breach of fiduciary duty claims are subject to a four-year statute of limitations. *See USPPS, Ltd. v. Avery Dennison Corp.*, No. SA-07-CA-963-FB, 2008 WL 7984967, at *15 (W.D. Tex. Apr. 9, 2008) (relying on Tex. Rev. Civ. Stat. Ann. § 16.004(5) (West 2015)). |

43

UTAH

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | Utah appears to recognize a claim for aiding and abetting a breach of fiduciary duty. *Mower v. Simpson*, 278 P.3d 1076, 1087 (Utah Ct. App. 2012). "Parties who knowingly join a fiduciary in fraudulent acts, whereby the fiduciary breaches his or her fiduciary duties, are jointly and severally liable with that fiduciary." *Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616, 626 (Utah Ct. App. 2003) (citation omitted). <br><br> "A claim for breach of fiduciary duty requires proof of four elements: (1) a fiduciary relationship; (2) breach of the fiduciary's duty; (3) causation, both actual and proximate; and (4) damages." *Old Republican Nat. Title Ins. Co. v. Home Abstract and Title Co., Inc.*, No. 1:12-cv-00171, 2014 WL 2918551, at *15 (D. Utah June 27, 2014). |
| **Existence of Fiduciary Duty** | Whether a fiduciary duty exists is "purely a legal question." *Gilbert Dev. Corp. v. Wardley Corp.*, 246 P.3d 131, 139 (Utah Ct. App. 2010) (citation omitted). Utah courts determine whether a fiduciary duty exists by examining "the legal relationships between the parties, followed by an analysis of the duties created by those relationships." *Yazd v. Woodside Homes Corp.*, 143 P.3d 283, 286 (Utah 2006). "A person who possesses important, even vital, information of interest to another has no legal duty to communicate the information where no relationship between the parties exists." *Id.* at 287. As applied to banking institutes, fiduciary relationships generally do not exist between a bank and its customers. *State Bank of S. Utah v. Troy Hoygro Sys. Inc.*, 894 P.2d 1270, 1275 (Utah Ct. App. 1995) (citing *First Nat'l Bank of Meeker v. Theos*, 794 P.2d 1055, 1060 (Colo. App. 1990)). "Nevertheless other courts have found various circumstances when such a fiduciary relationship may exist." *Id.* Generally this would require a showing that "one party, having gained the trust and confidence of another exercises extraordinary influence over the other party." *Id.* (quoting *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985)). |
| **Knowledge / Intent** | The Utah Court of Appeals has stated that "the gravamen of the claim of aiding and abetting a breach of fiduciary duty is the defendant's knowing participation in the fiduciary's breach." *Mower v. Simpson*, 278 P.3d 1076, 1088 (Utah Ct. App. 2012) (citation omitted). Thus, the defendant must have "knowingly join[ed] a fiduciary in fraudulent acts" for an aiding and abetting breach of fiduciary claim to be cognizable. *Russell/Packard Dev., Inc. v. Carson*, 78 P.3d 616, 626 (Utah Ct. App. 2003). |
| **Substantial Assistance / Proof** | Plaintiffs asserting a breach of fiduciary duty claim must prove each element by a preponderance of the evidence. *Gilbert Dev. Corp. v. Wardley Corp.*, 246 P.3d 131, 139 (Utah Ct. App. 2010). Additionally, "the evidence supporting damages must rise above mere speculation." *Stevensen 3rd East, LC v. Watts*, 210 P.3d 977, 987 (Utah Ct. App. 2009) (citation omitted). |
| **Statute of Limitations** | Utah law imposes a four-year statute of limitations for aiding and abetting breach of fiduciary duty. *United Park City Mines Co. v. Greater Park City Co.*, 870 P.2d 880, 890 (Utah 1993) (citing Utah Code Ann. § 78B-2-307). The statute of limitations begins running "upon the happening of the last event necessary to complete the cause of action." *Id.* (citing *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983)). |

VERMONT

| Recognition as Cause of Action / Elements | "Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby . . . The necessary elements to support a claim of assisting in the breach of a fiduciary duty are: (1) a breach by the fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damage as a result of the breach."  *Cooper v. Cooper*, 783 A.2d 430, 443 (Vt. 2001) (internal quotations and citations omitted). |
|---|---|
| Existence of Fiduciary Duty | "The existence or nonexistence of a duty is a question of law to be decided by the court.  *See Denis Bail Bonds, Inc. v. State*, 622 A.2d 495, 499 (Vt. 1993).  In order for the Bank to have become a fiduciary, the relationship had to ripen into one in which [plaintiffs] were dependent on, and reposed trust and confidence in, the Bank in the conduct of its affairs."  *McGee v. Vermont Fed. Bank, FSB*, 726 A.2d 42, 44 (Vt. 1999). |
| Knowledge / Intent | "The claimant need not prove intent on the part of the defendant to injure the party owed the duty by the fiduciary. . . . The gravamen of the claim of participation in a breach of fiduciary duty is the 'knowing participation' of the third party in the fiduciary's breach of trust."  *Cooper v. Cooper*, 783 A.2d 430, 443 (Vt. 2001). |
| Substantial Assistance / Proof | A Vermont jury instruction for breach of a fiduciary duty stated that the claim must be proven by a preponderance of the evidence.  *See Smith v. Walowit Realty, Inc.*, No. 409-8-08, 2012 WL 10219256 (Vt. Super. Ct. 2012). |
| Statute of Limitations | There is a general six-year statute of limitations on civil actions.  *See Kaplan v. Morgan Stanley & Co., Inc.*, 987 A.2d 258, 263 (Vt. 2009). |

45

# VIRGINIA

| Recognition as Cause of Action / Elements | There does not appear to be agreement whether a separate tort action for aiding and abetting a tort exists. In *Halifax Corp. v. Wachovia Bank*, 604 S.E.2d 403 (Va. 2004) the Supreme Court of Virginia did not explicitly recognize a cause of action for aiding and abetting a breach of fiduciary duty, but merely adopted the trial court's reasoning and assumed that Virginia recognized such a cause of action.  The Court determined that if aider and abettor liability for a breach of fiduciary duty did exist in Virginia, the party asserting the cause of action would need to plead: (1) actual knowledge of the underlying fiduciary duty and (2) actual knowledge of the breach of that fiduciary duty by the primary tortfeasor. *Id.* at 660.  In *Calderon v. Aurora Loan Serv., Inc.*, No. 1:10 CV 129 (JCC), 2010 WL 2306343, at *6 (E.D. Va. June 3, 2010), the court noted that, "the Supreme Court of Virginia recently acknowledged that the existence of such a tort was not clearly established" and that "[t]he Plaintiffs have offered no statute or basis in common law that would establish a cause of action for aiding and abetting," and dismissed the complaint.  However, in *Sherry Wilson & Co. v. Generals Court, L.C.*, No. 21696, 2002 WL 32136374, at *1 (Va. Cir. Ct. Sept. 27, 2002), the court found that "[o]n two occasions the Supreme Court of Virginia has recognized the right of an injured plaintiff to recover damages against person who aids and abets the principal actor." *See also St. Paul Fire & Marine Ins. Co. v. Hoskins*, No. 5:10CV087, 2012 WL 748574, at *5 (W.D. Va. Mar. 7, 2012). |
|---|---|
| Existence of Fiduciary Duty | "The relation between a bank and a depositor is that of debtor and creditor. The deposit creates an ordinary debt, not a privilege or right of a fiduciary character." *Deal's Adm'r v. Merchants & Mechanics Sav. Bank*, 91 S.E. 135, 135 (Va. 1917).  "Although this case is quite dated, the Plaintiff has not pointed out, nor could the Court locate, any evidence that the Supreme Court has retreated from this rule or that the legislature has altered it through the U.C.C." *Siver v. Wachovia Bank, N.A.*, 48 Va. Cir. 481 (1999).  Recently, a Virginia circuit court acknowledged, "under normal circumstances, the existence of the debtor-creditor relationship does not create a privilege or right of a fiduciary character," but qualified this statement, writing an agency relationship and thus a fiduciary obligation, "may be created by implication from the conduct of the parties and the nature and circumstances of the particular acts done." *Daisy J., Inc. v. First Bank & Trust Co.*, 50 Va. Cir. 596 (Va. Cir. Ct. 1998). |
| Knowledge / Intent | If recognized, civil aiding and abetting liability would likely require that the aider "affirmatively aid the [tort] with the requisite mens rea, or culpable statement of mind." *AvalonBay Cmtys, Inc. v. Willden*, No. 1:08-cv-777, 2009 WL 2431571 at *11 (citing *Halifax Corp.*, 604 S.E.2d at 413-14).  In other words, the plaintiff would have to show that the defendant knowingly participated in the tort.  *See id.*  For instance, the Supreme Court of Virginia has stated that "[a] bank participates in numerous transactions every day involving the acceptance and deposit of checks. Yet, unless it actually knows a breach of fiduciary duty is occurring and participates with mens rea in the consummation of the breach, it should not be held liable for aiding and abetting the breach." *Halifax Corp.*, 604 S.E.2d at 414. |
| Substantial Assistance / Proof | Under Virginia law plaintiffs must prove by a preponderance of the evidence defendants breached their fiduciary duties. *DPR Inc. of Virginia v. Dinsmore*, 82 Va. Cir. 451 (Va. Cir. Ct. 2011). |
| Statute of Limitations | Virginia applies a six-year statute of limitations to civil actions.  Va. Code. Ann. § 511; *Kaplan v. Morgan Stanley & Co., Inc.*, 987 A.2d 258, 261 (Vt. 2009). |

WASHINGTON

| Recognition as Cause of Action / Elements | In Washington, "[t]he general rule is well settled that a person who knowingly assists another in the commission of a tort, or who knowingly assists another in violating his fiduciary or trust obligation, is liable for losses proximately caused thereby.  A person is liable as an aider and abettor . . . if they knowingly assist in attempting to conceal a wrongful act, conceal evidence of a wrongful act, or conceal assets that were wrongfully taken." *Vanguard Int'l, Inc. v. Guangdong Fully, Ltd.*, No. 57396-9-I, 2008 WL 116268, at *4 (Wash. Ct. App. 2008) (internal citations and quotations omitted).<br><br>Under Washington state common law, in order to prevail on a breach of fiduciary duty claim, a plaintiff must demonstrate: "(1) the existence of a duty owed [to them]; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach was the proximate cause of the injury." *Miller v. U.S. Bank of Washington, N.A.*, 865 P.2d 536, 543 (Wash. Ct. App. 1994). |
|---|---|
| Existence of Fiduciary Duty | "Whether a legal duty exists is a question of law." *Miller v. U.S. Bank of Washington, N.A.*, 865 P.2d 536, 543 (Wash. Ct. App. 1994).  "As a general rule, participants in a business transaction deal at arm's length and do not enter into a fiduciary relationship.  The rule applies to transactions between a bank and a depositor." *Annechino v. Worthy*, 252 P.3d 415, 417 (Wash. Ct. App. 2011) (internal citations omitted). |
| Knowledge / Intent | For aiding and abetting liability generally, the plaintiff must demonstrate that the defendant knowingly assisted the third party in breaching the fiduciary duty owed to plaintiff. *Vanguard Int'l, Inc. v. Guangdong Fully, Ltd.*, 142 Wash. App. 1026 (Wash. Ct. App. 2008) (internal citations and quotations omitted). |
| Substantial Assistance / Proof | For aiding and abetting liability to attach, a defendant must "assist" the primary wrongdoer.  *See Vanguard*, 2008 WL 116268, at *4.  Nothing beyond general pleading requirements is stated as a requirement. |
| Statute of Limitations | In Washington, the statute of limitations for the claim of breach of fiduciary duty is three years.  Wash. Rev. Code. Ann. § 4.16.080(3); *Hudson v. Condon*, 6 P.3d 615, 619 (Wash. Ct. App. 2000). |

47

## WEST VIRGINIA

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | West Virginia recognizes a claim for aiding and abetting a breach of fiduciary duty. *Price v. Halstead*, 355 S.E.2d 380, 386-87 (W. Va. 1987) (citing Section 876(b) of the Restatement (Second) of Torts (1979) to hold that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself"). The Supreme Court of Appeals of West Virginia has stated that to determine whether a cause of action for aiding and abetting a breach of fiduciary duty exists, the court must consider if: (1) third party knew or reasonably should have known of existence of fiduciary relationship; (2) third party intended to induce physician to wrongfully disclose information about patient or third party should have reasonably anticipated that its actions would induce physician to wrongfully disclose such information; and (3) third party did not reasonably believe that physician could disclose that information to third party without violating duty of confidentiality that physician owed patient; and physician wrongfully divulges confidential information to third party. *Morris v. Consolidation Coal Co.*, 446 S.E.2d 648, 656 (W. Va. 1994). |
| **Existence of Fiduciary Duty** | Under West Virginia law, "[t]he fiduciary duty is a duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person. It is the highest standard of duty implied by law." *Elmore v. State Farm Mut. Auto. Ins. Co.*, 504 S.E.2d 893, 898 (W. Va. 1998) (citing Black's Law Dictionary 625 (6th ed. 1990).

"[T]he normal relationship of creditor and debtor does not generally give rise to a fiduciary relationship. This general principle is followed by a majority of jurisdictions and applies unless there is confidence justifiably reposed by the customer and the bank invites, accepts, knows or has reason to know that the customer is placing his trust and confidence in it. As otherwise stated . . ., "[a] fiduciary duty will arise between a bank and commercial borrower only where (1) the borrower reasonably reposes its faith in the bank; (2) the borrower is in a position of inequality, weakness, or lack of knowledge; and (3) the Bank exercises actual control over the borrower." *Hydroplate, Inc. v. First Cmty Bank of Princeton*, Civ. A. No. 1:91-0290, 1993 WL 669422, at *7 (S.D. W. Va. July 29, 1993) (internal quotations and citations omitted). |
| **Knowledge / Intent** | The Supreme Court of Appeals of West Virginia stated that the knowledge requirement under aiding and abetting a breach of fiduciary duty is met if "third party should have reasonably anticipated that its actions would" breach a fiduciary duty. *Morris v. Consolidation Coal Co.*, 446 S.E.2d 648, 656 (W. Va. 1994). |
| **Substantial Assistance / Proof** | Under West Virginia law plaintiffs must prove by a preponderance of the evidence Defendants breached their fiduciary duties. *Douglas v. Manor Care, Inc.*, No. 10-C-952, 2011 WL 10604177, at *1 (W. Va. Cir. Oct. 20, 2011). |
| **Statute of Limitations** | "Pursuant to W. Va.Code § 55-2-12, a two-year statute of limitations applies to Petitioners' fraud in the inducement claim, negligence, claim, intentional or negligent infliction of emotional distress claim, breach of fiduciary duty claim, and constructive fraud claim." *Evans v. United Bank, Inc.*, No. 14-0291, 2015 WL 3822895 (W. Va. June 16, 2015). |

48

## WISCONSIN

| | |
|---|---|
| **Recognition as Cause of Action / Elements** | Wisconsin recognizes the claim of aiding and abetting a breach of fiduciary duty. *Burbank Grease Servs., LLC v. Sokolowski*, 717 N.W.2d 781, 796 (Wis.2006) ("If a duty of loyalty exists, and a third party encourages and profits from a breach of the duty of loyalty, a claim of aiding and abetting the breach will lie."). "[A] person is liable in a civil action for aiding and abetting if: (1) The person undertakes conduct that as a matter of objective fact aids another in the commission of an unlawful act; and (2) the person consciously desires or intends that his conduct will yield such assistance." *Winslow v. Brown*, 371 N.W.2d 417, 423 (Wis. Ct. App. 1985).<br><br>"The elements of a claim for breach of fiduciary duty are: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused the plaintiff's damage." *Berner Cheese Corp. v. Krug*, 752 N.W.2d 800, 809 (Wis. 2008). |
| **Existence of Fiduciary Duty** | "The expression, fiduciary duty, relates to those obligations that are peculiar to a fiduciary and are based on the conscious undertaking of a special position with regard to another. A consistent facet of a fiduciary duty is the constraint on the fiduciary's discretion to act in his own self-interest because by accepting the obligation of a fiduciary he consciously sets another's interests before his own." *Zastrow v. Journal Commc'ns, Inc.*, 718 N.W.2d 51, 59 (Wis. 2006). Without facts to establish "anything beyond a typical lender-borrow relationship a fiduciary relationship [does] not exist between a farmer and his principal lender. . . . [A] fiduciary duty can arise 'from a formal commitment to act for the benefit of another.'" *Bank One Elkhorn, N.A. v. Jacobson*, No. 89-1368, 1990 WL 70457, at *2 (Wis. Ct. App. Mar. 28, 1990) (quoting *Prod. Credit Ass'n of Lancaster v. Croft*, 423 N.W.2d 544, 547 (Wis. Ct. App. 1988)). |
| **Knowledge / Intent** | The Court of Appeals of Wisconsin has indicated that the intent to assist the tortious conduct is "a necessary element of aiding and abetting liability." *Grad v. Associated Bank, N.A.*, No. 2010AP1461, 2011 WL 2184335, at *1 (Wis. Ct. App. June 7, 2011). |
| **Substantial Assistance / Proof** | Aiding and abetting liability requires that the aider "undertake[] conduct that as a matter of objective fact aids another in the commission of an unlawful act." *Edwardson v. Am. Fam. Ins. Co.*, 589 N.W.2d 436, 440 (Wis. Ct. App. 1998). |
| **Statute of Limitations** | Wisconsin imposes a two-year statute of limitations for a breach of fiduciary duty. *Zastrow v. Journal Commc'ns, Inc.*, 718 N.W.2d 51, 55-56 (Wis. 2006). |

49

## WYOMING

| Recognition as Cause of Action / Elements | As a preliminary matter, it is unclear if Wyoming recognizes a cause of action for aiding and abetting a breach of fiduciary duty, as Wyoming courts have not addressed whether aiding and abetting tortious acts is cognizable under state law.  One federal court has "[a]ssum[ed] without deciding . . . that Wyoming would apply [Restatement] § 876" to a negligence case, finding that any encouragement was "too slight."  *See Keith v. J.A.*, 295 Fed. Appx. 309, 311 (10th Cir. 2008).  In the criminal context, aiding and abetting liability requires "that the aider and abettor associated himself with and participated in the accomplishment and success of the criminal venture."  *Black v. State*, 46 P.3d 298, 301 (Wyo. 2002). |
|---|---|
| Existence of Fiduciary Duty | Under Wyoming law, "[t]wo basic types of fiduciary relationships exist. The first type is based on formal legal relationships, such as trustee-beneficiary, partnership, attorney-client, and principal-agency relationships.  The second type is an informal fiduciary relationship, which is implied in law due to the factual situation surrounding the involved transaction, and the relationship of the parties to each other and to the transaction.  This second type of relationship is often called a confidential relationship and would be considered a similar relation of trust and confidence."  *Lee v. LPP Mortgage Ltd.*, 74 P.3d 152, 162 (Wyo. 2003).  A contractual relationship between a lender and its customer imposes duties upon the lender "no higher than the morals of the market place."  *Martinez v. Associates Fin. Servs. Co. of Colorado*, 891 P.2d 785, 788 (Wyo. 1995 ).  In *Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d 640, 661 (Wyo. 2003), the Supreme Court of Wyoming noted that a fiduciary relationship may be created "when the lender goes beyond simply providing money to the borrower and offers advice and consultation."  Factors that the court may consider "include the lender's involvement in the operation of the borrower's business, the borrower's lack of sophistication, and the borrower's involvement in a business with a special nature."  *Id.* |
| Knowledge / Intent | Wyoming does not appear to have addressed the knowledge or intent requirements for aiding and abetting tort liability, as courts have not addressed whether such a cause of action exists. |
| Substantial Assistance / Proof | Under Wyoming law, a plaintiff must prove by a preponderance of the evidence that a defendant breached his or her fiduciary duty.  *Orthopaedics of Jackson Hole, P.C. v. Ford*, 250 P.3d 1092, 1095 (Wyo. 2011). |
| Statute of Limitations | Wyoming imposes a four-year statute of limitation on breach of fiduciary duty claims.  Wyo. Stat. Ann. § 1-3-105(a)(iv)(C). |

50

# EXHIBIT 12

## DEFENDANTS' ANALYSIS OF STATE LAW VARIATIONS

### CIVIL CONSPIRACY

#### ALABAMA

| | |
|---|---|
| **Elements** | "The elements of civil conspiracy in Alabama are: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." *Ex parte Alamo Title Co.*, 128 So.3d 700, 713 (Ala. 2013).  Civil conspiracy is not an independent cause of action in Alabama; there must be an underlying tort or wrong. *McLemore v. Ford Motor Co.*, 628 So.2d 548, 551 (Ala. 1993).  Where the underlying cause of action fails, so too does the conspiracy claim. *Allied Supply Co. v. Brown*, 585 So.2d 33, 36 (Ala. 1991). |
| **Agreement** | Conspiracy requires "a meeting of the minds" between conspirators. *Bayles v. Marriott*, 816 So.2d 38, 43 (Ala. Civ. App. 2001).  "One cannot inadvertently become a member of a civil conspiracy." *First Bank of Childersburg v. Florey*, 676 So.2d 324, 327 (Ala. Civ. App. 1996). To establish an agreement, "[t]he plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy." *Id.* The test of intent is "what is in truth the object in the minds of the combiners when they acted as they did." *AmSouth Bank, N.A. v. Spigener*, 505 So.2d 1030, 1040 (Ala. 1986) (internal quotation marks omitted). |
| **Proof** | Conspiracy may be proven by circumstantial evidence. *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So.2d 243, 247 (Ala. 2000).  Courts may draw inferences from the relationship of the alleged conspirators in order to establish the existence of a conspiracy. *Eidson v. Olin Corp.*, 527 So.2d 1283, 1285 (Ala. 1988).  Nevertheless, the evidence cannot be mere suspicion or conjecture: "[I]f circumstantial evidence supports equal inferences of lawful action and unlawful action, then the claim of conspiracy is not proven." *Florey*, 676 So.2d at 328 (internal citations omitted). "Proof that a defendant had some collateral involvement in a transaction, and had good reason to believe that there existed a conspiracy among other parties to it, is insufficient of itself to establish that the defendant was a conspirator." *Id.* |

1

ALASKA

| Elements | In Alaska, the elements of a civil conspiracy are 1) an unlawful agreement; 2) the specific intent of each participant in the scheme to achieve an unlawful purpose through that agreement; 3) acts committed pursuant to that unlawful agreement; 4) damages caused by the acts committed pursuant to the unlawful agreement. *See Summers v. Hagen*, 852 P.2d 1165, 1170-71 (Alaska 1993). |
|---|---|
| Agreement | Conspirators must "concur[] in the tortious scheme with knowledge of its unlawful purpose." *Rumac, Inc. v. Craig Enter., Inc.*, No. S-2279, 1988 WL 1514916, at *3 (Alaska Aug. 24, 1988). A civil conspiracy requires the specific intent of each participant to achieve an unlawful purpose of the agreement. *See Summers*, 852 P.2d at 1169-70; *see also In re Sammons*, 508 B.R. 426, 432 n. 13 (Bankr. D. Alaska 2014) ("Civil conspiracy requires intent and knowledge by all participants."). |
| Proof | To demonstrate a civil conspiracy, a plaintiff must put forth evidence that is more than a cursory statement. *See Rumac, Inc.*, 1988 WL 1514916 at *3 (deeming an allegation a civil conspiracy to be abandoned because the evidence was "no more than cursory statement[s]"). Not all members of a civil conspiracy must be named or joined as defendants in order for one conspirator to be liable. *Patterson v. State, Dep't of Agric.*, 880 P.2d 1038, 1044 n.12 (Alaska 1994). |

2

ARIZONA

| Elements | A civil conspiracy in Arizona is defined by "two or more people [ ] agree[ing] to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (Ariz. 2002) (quoting *Baker v. Stewart Title & Trust of Phoenix*, 5 P.3d 249, 256 (Ariz. Ct. App. 2000)). "[T]here is no claim for relief for civil conspiracy in and of itself, but, rather, the action is one for damages arising out of the acts committed pursuant to the conspiracy." *Savard v. Selby*, 508 P.2d 773, 776 (Ariz. Ct. App. 1973) (citations omitted). |
|---|---|
| Agreement | Evidence of an agreement alone is not sufficient: a person cannot be found liable for conspiracy unless he or she agrees to commit a tort and commits it. *See Law Corp. of Brian Finander, P.C. v. Alexander,* No. 1 CA-CV 08-0290, 2009 WL 449233, at *4 (Ariz. Ct. App. Feb. 24, 2009). A conspirator must "actually agree[] to participate in the conspiracy." *Jes Solar Co., Ltd. v. Matinee Energy, Inc.*, No. 12-626 TUC DCB, 2014 WL 2885476, at *11 (D. Ariz. June 25, 2014). "[L]iability for civil conspiracy requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank*, 38 P.3d at 36 (internal quotation marks omitted). |
| Proof | "The existence of a conspiracy may be inferred from the nature of the acts, the relationship of the parties, 'the interests of the conspirators, or other circumstances,' and 'express agreement or tacit concert will, if proven, suffice to create liability.'" *Mohave Elec. Co-op., Inc. v. Byers*, 942 P.2d 451, 465 (Ariz. Ct. App. 1997) (quoting *In re Am. Continental Corp./Lincoln Sav. & Loan Secs. Litig.*, 794 F. Supp. 1424, 1437 (D. Ariz. 1992)). "The agreement to commit a tort must be proven by clear and convincing evidence." *Alexander*, 2009 WL 449233, at *4. "Mere suspicious cooperative activity between the alleged conspirators may not amount to clear and convincing evidence of an actual agreement to participate in the tortious conduct." *Dawson v. Withycombe*, 163 P.3d 1034, 1054 (Ariz. Ct. App. 2007). "There is a qualitative difference between proving an *agreement* to participate in a tort, *i.e.,* a civil conspiracy, and proving knowing action that substantially aids another to commit a tort." *Wells Fargo Bank*, 38 P.3d at 37. |

| Elements | In Arkansas, civil conspiracy requires that a plaintiff "show 'a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in and of itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means, to the injury of another.'" *Born v. Hosto & Buchan, PLLC*, 372 S.W.3d 324, 331 (Ark. 2010) (quoting *Dodson v. Allstate Ins. Co.*, 47 S.W.3d 886, 876 (2001)). "Under Arkansas law, civil conspiracy must be predicated on some other underlying tort." *Wallace v. XTO Energy, Inc.*, No. 13-cv-00608 KGB, 2014 WL 4202536, at *4 (E.D. Ark. Aug. 22, 2014) (citing *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004)). "A civil conspiracy is not actionable in and of itself, but a recovery may be had for damages caused by acts committed pursuant to the conspiracy." *Faulkner v. Arkansas Children's Hosp.*, 69 S.W.3d 393, 406 (Ark. 2002) (citing *Chambers v. Stern*, 64 S.W.3d 737 (Ark. 2002)). |
|---|---|
| Agreement | Arkansas case law does not indicate that a "meeting of the minds" is required, but rather that there be "a combination of two or more persons" to accomplish some purpose. *See Born*, 372 S.W.3d at 331. Conspirators must "pursue[] the same unlawful object" with "a closeness of personal association and a concurrence of sentiment." *Mason v. Funderburk*, 446 S.W.2d 543, 548 (Ark. 1969)). "Since a corporate entity cannot conspire with itself, a civil conspiracy is not legally possible where a corporation and its alleged coconspirators are not separate entities, but, rather, stand in either a principal-agent or employer-employee relationship with the corporation." *Dodson*, 47 S.W.3d at 876. Civil conspiracy in Arkansas is an "intentional tort which requires specific intent to accomplish the contemplated wrong." *Faulkner*, 69 S.W.3d at 406; *see also Dodson*, 47 S.W.3d at 876. |
| Proof | "A conspiracy may be shown by direct evidence of an actual agreement or understanding between conspirators." *Chambers*, 64 S.W.3d at 738 (quoting *Mason*, 446 S.W.2d at 548). But direct evidence is not necessary. A conspiracy may also "be inferred from actions of alleged conspirators, if it be shown that they pursued the same unlawful object, each doing a part, so that their acts, although apparently independent, are in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment. Any act done or declaration made by one of the conspirators in furtherance, aid or perpetration of the alleged conspiracy may be shown as evidence against his fellow conspirators." *Chambers*, 64 S.W.3d at 743 (internal citations omitted). |

4

## CALIFORNIA

| Elements | "The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191, 212 (Cal. App. 2011). "Civil conspiracy is not an independent tort." *Id.* "A civil conspiracy however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." *Doctors' Co. v. Superior Court*, 775 P.2d 508, 510 (Cal. 1989) (internal quotation marks omitted). |
|---|---|
| Agreement | Civil conspiracy requires that "each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan." *Choate v. Cnty. of Orange*, 86 Cal. App. 4th 312, 333 (Cal. App. 2000). "The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose." *Favila v. Katten Muchin Rosenman LLP*, 115 Cal. Rptr. 3d 274, 287 (Cal. App. 2010). "[A]ctual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim. Knowledge of the planned tort must be combined with intent to aid in its commission." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (Cal. App. 1995). |
| Proof | A conspiracy "may be inferred from the nature of the acts done, the relation of the parties, the interests of the conspirators, and other circumstances." *Wyatt v. Union Mortg. Co.*, 598 P.2d 45, 52 (Cal. 1979) (internal quotations omitted). Nevertheless, "[b]ecause civil conspiracy is so easy to allege, plaintiffs have a weighty burden to prove it." *Choate*, 86 Cal. App. 4th at 333. "[C]onspiracies cannot be established by suspicions. There must be some evidence. Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense." *Kidron*, 47 Cal. Rptr. 2d at 758 (internal citations omitted). "'Bare' allegations and 'rank' conjecture do not suffice for a civil conspiracy." *Choate*, 86 Cal. App. 4th at 333. |

5

## COLORADO

| Elements | "There are five elements required to establish a civil conspiracy in Colorado. [T]here must be: (1) two or more persons . . . ; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Walker v. Van Laningham*, 148 P.3d 391, 396 (Colo. App. 2006) (quoting *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989)). "In a civil action, conspiracy is a derivative cause of action that is not actionable per se." *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003) (citing *Morrison v. Goodspeed*, 68 P.2d 458 (Colo. 1937)). "If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Id.*; *see also Walker*, 148 P.3d at 396. |
|---|---|
| Agreement | In Colorado, civil conspiracy requires a "meeting of the minds" between conspirators on "the object or course of action." *Walker*, 148 P.3d at 396. "[T]he purpose of the conspiracy must involve an unlawful act or unlawful means." *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995); *Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673, 675 (Colo. App. 1999) ("[L]iability may be established for civil conspiracy even where only lawful acts were performed if the purpose or goal is unlawful."). "[S]ilent knowledge of an unlawful act is insufficient to establish the requisite agreement . . . . [P]roof of an agreement must be presented; it will not be inferred." *More v. Johnson*, 568 P.2d 437, 440 (Colo. 1977). |
| Proof | Colorado courts "will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff." *Nelson*, 908 P.2d at 106; *see also More*, 568 P.2d at 440. However, "[a] conspiracy may be implied by a course of conduct and other circumstantial evidence. There must be some indicia of agreement in an unlawful means or end." *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1327 (Colo. App. 1992) (internal quotation marks omitted). Conclusory allegations of a conspiracy are insufficient. *See Harris v. AmeriGas Propane, Inc.*, No. 12-cv-00860, 2012 WL 7051302, at *7 (D. Colo. Dec. 5, 2012). "Because the elements of a civil conspiracy claim require that the underlying acts be unlawful and create an independent cause of action, civil conspiracy claims share a statute of limitations with the underlying tort, and their accrual dates are linked to the accrual dates of the underlying torts." *Sterenbuch v. Goss*, 266 P.3d 428, 436 (Colo. App. 2011) (internal quotation marks, brackets and citations omitted). |

6

## CONNECTICUT

| Elements | In Connecticut, a civil conspiracy claim requires "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Harp v. King*, 835 A.2d 953, 972 (Conn. 2003) (quoting *Marshak v. Marshak*, 628 A.2d 964, 970 (Conn. 1993)).  Connecticut courts have found that civil conspiracy is not an independent cause of action; it "must be joined with an allegation of a substantive tort."  *Macomber v. Travelers Prop. & Cas. Corp.*, 894 A.2d 240, 254 (Conn. 2006). |
|---|---|
| Agreement | Civil conspiracy requires that "one or more persons, by express or tacit agreement, act in combination with another for a particular purpose or to attain a particular end."  *Harp*, 835 A.2d at 973.  This element does not require "that the defendant and his coconspirators signed papers, shook hands, or uttered the words we have an agreement."  *Am. Diamond Exch., Inc. v. Alpert*, 920 A.2d 357, 369 (Conn. App. Ct. 2007).  However, "mere association with a tortfeasor, or even knowledge of wrongdoing, without more, is insufficient to support a civil conspiracy claim." *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 104, 107 (D. Conn. 2010) (citing *Fusco v. Lepine*, No. HHDCV054013841S, 2006 WL 463130, at *2 (Conn. Super. Ct. Feb. 3, 2006)). |
| Proof | Circumstantial evidence of a conspiracy is permitted in Connecticut, as "conspiracies, by their very nature, are formed in secret and only rarely can be proved otherwise than by circumstantial evidence."  *Alpert*, 920 A.2d at 369.  "[T]he requisite agreement or confederation may be inferred from proof of the separate acts of the individuals accused as coconspirators and from the circumstances surrounding the commission of these acts."  *Alpert*, 920 A.2d at 369.  Although the Connecticut Supreme Court has not addressed the issue, one federal court has concluded that, "when the alleged civil conspiracy necessarily requires the plaintiff to prove fraud, the elements of civil conspiracy must be proven by clear and convincing evidence."  *Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 115 (D. Conn. 2010). |

7

## DELAWARE

| | |
|---|---|
| **Elements** | "The elements for civil conspiracy under Delaware law are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage." *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n. 8 (Del. 2005) (citing *Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149 (Del. 1987)).  In Delaware, civil conspiracy may be an independent cause of action. The Court of Chancery has stated that "civil conspiracy is an independent wrong," and that while "[s]ome jurisdictions have abandoned the independent tort of conspiracy," "Delaware has never done so." *In re Am. Int'l Grp., Inc.,* 965 A.2d 763, 805 n. 149 (Del. Ch. 2009).  At other times, the Court of Chancery has stated that "[c]ivil conspiracy is not an independent cause of action," and therefore "requires proof of underlying wrong that would be actionable absent conspiracy."  *Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1237-38 (Del. Ch. 2001). |
| **Agreement** | Conspiracy requires "some agreement" between conspirators "to commit a wrongful act," or a lawful purpose by unlawful means.  *Encite LLC v. Soni*, No. 2476-CC, 2008 WL 2973015, at *11 (Del. Ch. Aug. 1, 2008).  "A 'confederation or combination' of people for purposes of a civil conspiracy claim means that there is a 'meeting of the minds between or among such persons,' and that 'meeting of the minds' relates to the allegedly improper object or course of conduct to be accomplished." *Wayman Fire Prot., Inc. v. Premium Fire & Sec., LLC,* No. CIV.A. 7866-VCP, 2014 WL 897223, at *24 (Del. Ch. Mar. 5, 2014).  "[A] plaintiff does not need to prove the existence of an explicit agreement; a conspiracy can be inferred from the pled behavior of the alleged conspirators.'"  *CMS Inv. Holdings, LLC v. Castle,* No. CV 9468-VCP, 2015 WL 3894021, at *22 (Del. Ch. June 23, 2015) (internal citations omitted). "Tacit ratification is sufficient" to show a conspirator's "[k]nowing participation in a conspiracy."  *Nicolet*, 525 A.2d at 148.  "Likewise, consciously parallel action is not sufficient to show conspiracy, but it is enough that knowing concerted action was contemplated or invited, the defendant adhered to the scheme and participated in it."  *Id.*  "Since conspiracy requires an agreement or understanding to commit a wrong against another, its commission necessarily involves some mutual mental action coupled with an intent to commit the act which results in the injury."  *Anderson v. Airco, Inc.*, No. CIV.A. 02C-12-091HDR, 2004 WL 2827887, at *4 (Del. Super. Nov. 30, 2004) (internal quotation marks omitted).  "A specific intent is required."  *Id.* (citing *Triplex Commc'ns v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995)). |
| **Proof** | Conspiracy claims may be proved by circumstantial evidence.  *See In re Am. Int'l Grp, Inc.*, 965 A.2d at 806.  "It may not, however, be sustained on bare allegations supported by no more than speculation and innuendo." *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1289 (Del. Super. 2001).  Where the alleged conspiracy is fraudulent, a plaintiff must plead the conspiracy with particularity.  *Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1066 (Del. Ch. 1989).  "Facts, not legal conclusions, must be pled."  *Id.* |

## FLORIDA

| Elements | "In Florida, a civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  *Eagletech Commc'n, Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So.3d 855, 863 (Fla. Dist. Ct. App. 2012) (quoting *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997) (internal quotation marks omitted)).  "[A] cause of action for civil conspiracy exists . . . only if 'the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person.'"  *Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So.2d 949, 951 (Fla. Dist. Ct. App. 1984) (quoting *Am. Diversified Ins. Servs., Inc. v. Union Fid. Life Ins. Co.*, 439 So.2d 904, 906 (Fla. Dist. Ct. App. 1983)).  But a form of conspiracy exists in Florida that does *not* require an underlying tort.  "[I]f the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort."  *Churruca v. Miami Jai-Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977); *see also Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. Dist. Ct. App. 2006).  The elements for that claim are (1) a malicious motive and (2) coercion through numbers of economic influence.  *Churruca*, 353 So.2d at 550. |
|---|---|
| Agreement | Florida requires an agreement between two or more parties.  *See Eagletech*, 79 So.3d at 863.  The plaintiff must demonstrate only that all parties to the conspiracy had "knowledge of the alleged conspiracy or knowingly participated in it."  *Raimi*, 702 So.2d at 1285 (citations omitted). |
| Proof | It is well settled in Florida "that circumstantial evidence is admissible in civil conspiracy cases."  *Anheuser–Busch, Inc. v. Campbell*, 306 So.2d 198, 199 (Fla. Dist. Ct. App. 1975).  However, a plaintiff cannot build inference upon inference to support a civil conspiracy claim.  *See Cohen v. Arvin*, 878 So.2d 403, 405 (Fla. Dist. Ct. App. 2004) (citing *Nielsen v. City of Sarasota*, 117 So.2d 731, 733 (Fla. 1960)).  Proof of a conspiracy solely by circumstantial evidence is permitted "only when the inference sought to be created by such circumstantial evidence outweighs all reasonable inferences to the contrary."  *Raimi*, 702 So. 2d at 1284 (internal quotation marks omitted). |

## GEORGIA

| Elements | "To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Wright v. Apartment Inv. & Mgmt. Co.*, 726 S.E.2d 779, 787 (Ga. Ct. App. 2012) (quoting *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455 (Ga. Ct. App. 2002)). In Georgia, "[a]bsent the underlying tort, there can be no liability for civil conspiracy." *O'Neal v. Home Town Bank of Villa Rica*, 514 S.E.2d 669, 675 (Ga. Ct. App. 1999). "Where it is sought to impose civil liability for a conspiracy, the conspiracy of itself furnishes no cause of action.... [W]here the act of conspiring is itself legal, the means or method of its accomplishment must be illegal." *Savannah Coll. of Art & Design, Inc. v. Sch. of Visual Arts of Savannah Inc.*, 464 S.E.2d 895, 896 (Ga. Ct. App. 1995) (quoting *Cook v. Robinson*, 116 S.E.2d 742, 745 (Ga. 1960)). |
|---|---|
| Agreement | Civil conspiracy requires a mutual understanding between the parties. "The essential element of the alleged conspiracy is proof of a common design establishing 'that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design.'" *McIntee v. Deramus*, 722 S.E.2d 377, 379 (Ga. Ct. App. 2012). "It is sufficient to charge that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design. After the conspiracy is formed, if a party joins therein, knowing of its existence and purpose, he becomes as much a party thereto as if he had been an original member." *Parrish v. Jackson W. Jones, P.C.*, 629 S.E.2d 468, 472 (Ga. Ct. App. 2006) (quoting *Willson v. Appalachian Oak Flooring & Hardware Co.*, 140 S.E.2d 830, 836 (Ga. 1965)). |
| Proof | "Concert of action, amounting to conspiracy, may be shown by circumstantial as well as direct evidence. It is not necessary to prove an express agreement or compact among the wrongdoers; their common design may be inferred from the nature of the acts done, the relation between them, their mutual interests in the matter, and other circumstances." *Wright*, 726 S.E.2d at 787-88 (quoting *First Fed. Savings Bank v. Hart*, 363 S.E.2d 832 (1987)). "However, the law does not authorize a finding that conspiracy exists merely because of some speculative suspicion and while the question of conspiracy is generally one for a jury, the mere fact that conspiracy has been alleged does not require submission of the question to a jury where there is no evidence of record that the alleged conspirators either positively or tacitly came to a mutual understanding to accomplish an unlawful end or to accomplish a lawful end by an unlawful means." *Hart*, 363 S.E.2d at 833. |

10

HAWAII

| Elements | Hawaii generally defines a civil conspiracy as "a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." *Yoneji v. Yoneji*, No. CAAP-14-0000496, 2015 WL 4604915, at *8 (Haw. Ct. App. July 31, 2015) (quoting *Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 982 P.2d 853, 881 n. 28 (Haw. 1999). "'Because 'there can be no civil claim based upon a conspiracy alone,' a plaintiff must allege an underlying actionable claim.'" *Id.* (quoting *Weinberg v. Mauch*, 890 P.2d 277, 286 (Haw. 1995)). |
|---|---|
| Agreement | Although a conspiracy requires an agreement, "[n]o formal agreement between the parties is essential to the formation of the conspiracy, for the agreement may be shown if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." *Stanton v. Bank of Am., N.A.*, No. CV 09-00404 DAE-LEK, 2010 WL 4176375, at *18 (D. Haw. Oct. 19, 2010) (quoting *Marino v. United States*, 91 F.2d 691, 694 (9th Cir. 1937)). "[M]ere acquiescence or knowledge is insufficient to constitute a conspiracy, absent approval, cooperation, or agreement." *Tour2000 Co. v. Koreana Tour Serv., Inc.*, 218 P.3d 385 (Haw. Ct. App. 2009) (quoting *Roberts Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 982 P.2d 853, 889 n.44 (Haw. 1999)). |
| Proof | "'In the very nature of things, the existence of a conspiracy is generally a matter of inference deduced from acts and declarations of the parties. The existence of the joint assent of the parties need not be proved directly. Like any other ultimate fact, it may be found as an inference from facts proved. It is enough if the evidentiary facts and circumstances -- pieced together and considered as a whole -- convince the judicial mind that the parties united in an understanding way to accomplish the fraudulent scheme.'" *Kazuo Hashimoto v. Halm*, 40 Haw. 354, 362 (1953) (quoting *Hedrick v. Perry*, 102 F.2d 802, 806 (10th Cir. 1939)). |

11

## IDAHO

| Elements | Civil conspiracy requires "an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *McPheters v. Maile*, 64 P.3d 317, 321 (Idaho 2003). "Civil conspiracy is not, by itself, a claim for relief." *Id.* |
|---|---|
| Agreement | "An agreement is the foundation of a conspiracy charge and there must be some showing of specific evidence of a plan or agreement to defraud to demonstrate the pendency of the conspiracy at the time the alleged fraud occurred." *Mannos v. Moss*, 155 P.3d 1166, 1174 (Idaho 2007). |
| Proof | Plaintiffs must point to "specific evidence," and make a specific factual showing, in order to prevail on a conspiracy claim. *See Taylor v. McNichols*, 243 P.3d 642, 660 (Idaho 2010). Although circumstantial evidence is permitted, it is not conclusive. *See Goodwin v. Wulfenstein*, 690 P.2d 947, 951 (Idaho Ct. App. 1984). |

12

ILLINOIS

| Elements | "The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004). "A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). |
|---|---|
| Agreement | Civil conspiracy requires an agreement "for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock*, 645 N.E.2d at 894. A defendant must understand the objectives of the scheme, accept them, and agree to do his/her part to further those objectives. *Id.* at 894. "Mere knowledge of the fraudulent or illegal actions of another is [ ] not enough to show a conspiracy." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). "There is no such thing as accidental, inadvertent or negligent participation in a conspiracy." *Adcock*, 645 N.E.2d at 894. "[T]he agreement must be knowingly and intentionally made. A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Menssen v. Pneumo Abex Corp.*, 975 N.E.2d 345, 348 (Ill. App. Ct. 4th Dist. 2012). |
| Proof | A conspiracy may be "established from circumstantial evidence and inferences drawn from evidence, coupled with commonsense knowledge of the behavior of persons in similar circumstances." *Adcock*, 645 N.E.2d at 895. "If a conspiracy is shown by circumstantial evidence, however, that evidence must be clear and convincing." *McClure*, 720 N.E.2d at 258. "Although evidence of parallel conduct by the alleged conspirators may serve as circumstantial evidence of a civil conspiracy, parallel-conduct evidence is insufficient, by itself, to establish the existence of an agreement to commit the civil conspiracy." *Menssen*, 975 N.E.2d at 348. |

13

## INDIANA

| Elements | In Indiana, "[c]ivil conspiracy is defined as a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."  *SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 769 (Ind. Ct. App. 2011) (quoting *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998)).  "'[C]ivil conspiracy is not an independent cause of action'" but rather must "be alleged with an underlying tort."  *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 653 (Ind. Ct. App. 2014) (quoting *Heyser v. Noble Roman's, Inc.*, 933 N.E.2d 16, 20 (Ind. Ct. App.2010)). |
|---|---|
| Agreement | "[T]he law does not demand proof that each conspirator knew the exact limits of the illegal plan or the identity of all participants therein. But it does require that there be a single plan, the essential nature and general scope of which is known to each person who is to be held responsible for its consequences."  *United Consumers Club, Inc. v. Bledsoe*, 441 F. Supp. 2d 967, 975 (N.D. Ind. 2006) (quoting *Richardson v. City of Indianapolis*, 658 F.2d 494, 500 (7th Cir. 1981)).  "All who accede to, concur in, and willingly and knowingly become parties to and further a conspiracy are parties to it, without proof of further or previous agreement to concur in and further it."  *Hamilton v. Cooley*, 187 N.E. 762, 764 (Ind. App. 1933) (quoting *Wolfe v. Pugh*, 101 Ind. 293, 308, (1885)). |
| Proof | "It is not necessary in order to establish a conspiracy that there be direct evidence of an agreement. Rather, a civil conspiracy may be asserted through circumstantial evidence or by averment of isolated or independent facts susceptible of an inference of concurrence of sentiment."  *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014) (quoting *Lake Mortg. Co., Inc. v. Fed. Nat'l Mortg. Ass'n*, 308 N.E.2d 739, 744 (Ind. Ct. App. 1974)).  "However, an allegation of civil conspiracy will not survive based only upon impermissible speculation."  *Id.* |

14

## IOWA

| Elements | In Iowa, "[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful." *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 232 (Iowa 1977) (citing *Stover v. Hindman*, 159 N.W.2d 422, 424 (Iowa 1968)). "'Civil conspiracy is not in itself actionable; rather it is the acts causing the injury undertaken in furtherance of the conspiracy [that] give rise to the action.'" *Wright v. Brooke Grp. Ltd.*, 652 N.W.2d 159, 172 (Iowa 2002) (quoting *Basic Chems.*, 251 N.W.2d at 233). In Iowa, a plaintiff may assert a civil conspiracy claim even if the underlying wrongful conduct "does not constitute an intentional tort." *Id.* at 174. |
|---|---|
| Agreement | "The principal element of conspiracy is an agreement or understanding between two or more persons to effect a wrong against or injury upon another." *Basic Chems.*, 251 N.W.2d at 232. In other words, "civil conspiracy requires 'mutual mental action." *Busch v. City of Anthon, Iowa*, 173 F. Supp. 2d 876, 903 (N.D. Iowa 2001) (quoting *Basic Chems.*, 251 N.W.2d at 232). The agreement must be "coupled with an intent to commit the act which results in the injury." *Adam v. Mt. Pleasant Bank and Trust Co.*, 387 N.W.2d 771, 773 (Iowa 1986) (citing *Basic Chems.*, 251 N.W.2d at 232). Additionally, all alleged conspirators must have "actual knowledge" of the conspiracy. *Mitchell v. Holiday*, No. 08-1461, 2009 WL 5125500, at *4 (Iowa Ct. App. Dec. 30, 2009) (citations omitted). |
| Proof | "An express agreement" can rarely be shown to establish a conspiracy. *Countryman v. Mt. Pleasant Bank & Trust Co.*, 357 N.W.2d 599, 606 (Iowa 1984). As a result, conspiracies are generally established by circumstantial evidence, and most "[c]ourts are quite liberal in allowing proof of circumstances bearing on the question of whether a conspiracy did exist." *Id.* (citations omitted). Generally, the plaintiff must prove a civil conspiracy by "substantial evidence." *Basic Chems.*, 251 N.W.2d at 232 (citing *Stover*, 159 N.W.2d at 424)). |

15

## KANSAS

| Elements | "Kansas recognizes civil conspiracy as an actionable tort and the elements include: '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" *Kirk v. NCI Leasing, Inc.*, 198 P.3d 784 (Kan. Ct. App. 2009) (quoting *Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984)).  "There can be no civil conspiracy without a commission of a wrong independent of the conspiracy." *Id.* |
|---|---|
| Agreement | Plaintiffs asserting a civil conspiracy claim must show that the conspirators had a meeting of the minds, however, it need not be shown that there was an actual agreement.  *See York v. InTrust Bank, N.A.*, 962 P.2d 405, 423 (Kan. 1998).  Rather, "a conspiracy may be proven by either showing the conspiracy itself or by showing the separate acts of the conspirators involving the same purpose or object." *Id.* |
| Proof | "Because direct evidence is rarely available, a civil conspiracy may be proved by circumstantial evidence."  *Vetter v. Morgan*, 913 P.2d 1200, 1206 (Kan. Ct. App. 1995). |

16

## KENTUCKY

| Elements | "In order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Flint v. Coach House, Inc.*, No. 2012-CA-000580-MR, 2013 WL 869649, at *4 (Ky. Ct. App. Mar. 8, 2013) (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995)). "[C]ivil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, No. 2008-CA-002389, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010). Where the underlying tort claim fails, so too does the conspiracy claim. *See id.* at *14. |
| --- | --- |
| Agreement | Civil conspiracy is "rarely dealt with in Kentucky case law." *James v. Wilson*, 95 S.W.3d 875, 896 (Ky. Ct. App. 2002). "In order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Peoples Bank of N. Kentucky, Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (citing *Montgomery*, 910 S.W.2d at 239). |
| Proof | The Court of Appeals has acknowledged that "[a] conspiracy is inherently difficult to prove." *James*, 95 S.W.3d at 896. "[T]here must be proof that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act." *Peoples Bank*, 277 S.W.3d at 261. |

17

## LOUISIANA

| Elements | In Louisiana, "[i]n order to recover under a conspiracy theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act; the act was actually committed and resulted in plaintiff's injury; and there was an agreement as to the intended outcome or result." *Crutcher-Tufts Res. v. Tufts*, 38 So.3d 987, 991 (La. Ct. App. 2010). "Conspiracy by itself is not an actionable claim under Louisiana law." *Id.* "The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part." *Ames v. Ohle*, 97 So.3d 386, 393 (La. Ct. App. 2012). |
|---|---|
| Agreement | "To establish a conspiracy, a plaintiff is required to provide evidence of the requisite agreement between the parties.  [T]he plaintiff is required to establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing." *Thomas v. North 40 Land Dev., Inc.*, 894 So.2d 1160, 1162 (La. Ct. App. 2005) (internal citations omitted). "[A] conspiracy claim requires proof of more than negligence; it requires either 'intentional' or 'willful' conduct." *Id.* at 1177-78 (quoting La. Rev. Stat. § 2324). |
| Proof | "Proof of a conspiracy can be by 'actual knowledge of both parties or overt actions with another, or can be inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator.'" *Thomas*, 894 So.2d at 1162 (quoting *Stephens v. Bail Enforcement of Louisiana*, 690 So.2d 124, 131 (La. Ct. App. 1997)). "The plaintiff must therefore prove an unlawful act and assistance or encouragement that amounts to a conspiracy. The assistance or encouragement must be of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy." *Thomas*, 894 So.2d at 1162 (quoting *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553, 557 (1st Cir. 1995)). |

18

## MAINE

| Elements | In Maine, civil conspiracy is defined as a "combination, or concert of action and planning, for an unlawful purpose or for use of unlawful means." *Cohen v. Bowdoin*, 288 A.2d 106, 109 (Me. 1972); *Franklin v. Erickson*, 128 Me. 181, 182 (Me. 1929).  Although Maine case law states that civil conspiracy requires the commission of an underlying tort, *see Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 708 A.2d 283, 286 (Me. 1998), the Maine Supreme Judicial Court has stated that "[i]n particular extraordinary circumstances there has been recognized the existence of a separate self-sufficient and independent tort of 'conspiracy', as a substantive basis of civil liability, when it is shown that combination and the force of numbers inject a special and unique factual overlay of some additional element worthy of recognition as a basis for the imposition of tort liability (such as, for example, coercion, undue influence or restraint of trade) and which would be absent were the conduct to be undertaken by one person acting alone."  *Cohen*, 288 A.2d at 110 n. 4. |
|---|---|
| Agreement | Maine does not appear to have extensive case law regarding the existence of a conspiracy, and in particular the required combination or agreement.  According to the definition of conspiracy in Maine, however, a civil conspiracy claim only requires a "combination" or a "concert of action and planning."  *Cohen*, 288 A.2d at 109. |
| Proof | A review of Maine case law does not identify extensive discussion of the standard of proof, or permitted evidence, applicable to claims of civil conspiracy. |

19

## MARYLAND

| Elements | "A civil conspiracy has been defined in Maryland as a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 485 (Md. 2006) (internal quotation marks omitted). The agreement in a civil conspiracy "is not actionable by itself," rather, there must be some harm to the plaintiff otherwise there is no cause of action. *Mackey*, 892 A.2d at 485. |
|---|---|
| Agreement | Civil conspiracy requires proof of "[a] confederation of two or more persons by agreement or understanding." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (internal quotation marks omitted). |
| Proof | "[C]onspiracy may be proved by circumstantial evidence, 'for in most cases it would be practically impossible to prove a conspiracy by means of direct evidence alone.'" *Hoffman v. Stamper*, 867 A.2d 276, 291 (Md. 2005) (quoting *Western Md. Dairy v. Chenowith*, 23 A.2d 660, 664 (Md. 1942)). "It is sufficient if the proven facts and circumstances, pieced together and considered as a whole, convince the court that the parties were acting together understandingly in order to accomplish the fraudulent scheme. Thus a conspiracy may be established by inference from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design." *Id.* (quoting *Chenowith*, 23 A.2d at 664). However, proof of a conspiracy may be required by clear and convincing evidence. *See id.* at 285-86, 291-92 (declining to decide whether clear and convincing evidence was required because the facts established conspiracy by clear and convincing evidence). |

20

# MASSACHUSETTS

| Elements | "To prove their claims for civil conspiracy, the plaintiffs must show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement."  *Bartle v. Berry*, 953 N.E.2d 243, 253 (Mass. App. Ct. 2011).  "Two kinds of civil conspiracy have been delineated in [Massachusetts] decisions," one requiring coercion and the other requiring concerted action. *Kurker v. Hill*, 689 N.E.2d 833, 836 (Mass. App. Ct. 1998); *see also Weld v. CVS Pharmacy, Inc.*, No. CIV. A. 98-0897F, 1999 WL 494114, at *7 (Mass. Super. June 29, 1999) (noting that "one kind of civil conspiracy requires coercion," while another "requires only that the defendant rendered substantial assistance to the other participants with the knowledge that such assistance is contributing to a common tortious plan"); *Contescu v. Harrop*, No. CA 943429, 1995 WL 809833, at *2 (Mass. Super. Apr. 19, 1995) ("In Massachusetts, [c]ivil conspiracy is a very limited cause of action."). |
|---|---|
| Agreement | To establish an agreement needed for a civil conspiracy, the plaintiff must allege "a common design or an agreement, although not express, between two or more persons to do an unlawful act."  *Copperbeech P'ship, Ltd. v. Seegel, Lipshutz & Wilchins, P.C*, No. 020484A, 2004 WL 1431052, at *3 (Mass. Super. May 5, 2004). Evidence merely establishing communication between the alleged coconspirators, however, does not necessarily suffice to establish such an agreement.  *See Safe Haven Sober Houses, LLC v. Turner*, No. 14-P-239, 2015 WL 3994905, at *3 (Mass. App. Ct. July 1, 2015). |
| Proof | Conspiracy allegations must contain more than "mere recitals of elements necessary to establish a civil conspiracy claim."  *Galiastro v. Mortg. Elec. Registration Sys., Inc.*, 4 N.E.3d 270, 281 (Mass. 2014).  "[B]are assertion[s] will not suffice."  *Id.* |

21

## MICHIGAN

| Elements | In Michigan, civil conspiracy is "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Urbain v. Beierling*, 835 N.W.2d 455, 463 (Mich. Ct. App. 2013) (internal quotation marks omitted). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort." *Early Detection Ctr., P.C., v. New York Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986). Where the underlying tort claim fails, so too will the conspiracy claim. *See Urbain*, 835 N.W.2d at 463-64. |
|---|---|
| Agreement | Civil conspiracy requires "an agreement, or preconceived plan, to do an unlawful act." *Cousineau v. Ford Motor Co.*, 363 N.W.2d 721, 731 (Mich. Ct. App. 1985) (quoting *Bahr v. Miller Bros. Creamery*, 112 N.W.2d 463, 469 (Mich. 1961)). "[E]vidence must be produced from which a jury may reasonably infer the joint assent of the minds of two or more persons to the prosecution of the unlawful enterprise." *Veriden v. McLeod*, 146 N.W. 619, 622 (Mich. 1914) (internal quotation marks omitted). |
| Proof | "Direct proof of agreement is not required, however, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact. Furthermore, conspiracy may be established by circumstantial evidence and may be based on inference." *Temborius v. Slatkin*, 403 N.W.2d 821, 828 (Mich. Ct. App. 1986). "Even though evidence used to prove a civil conspiracy may be circumstantial in nature, such evidence must nonetheless support a reasonable inference that two or more persons planned or acted in concert to accomplish an unlawful end." *Rencsok v. Rencsok*, 207 N.W.2d 910, 911 (Mich. Ct. App. 1973). |

22

**MINNESOTA**

| Elements | "The elements of a civil-conspiracy claim are (1) a combination of two or more people (2) to commit an unlawful act or a lawful act by unlawful means." *Hong Chen v. Mar*, No. A10-1908, 2011 WL 2119406, at *5 (Minn. Ct. App. May 31, 2011) (citing *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824 (Minn. 1950)).  A civil conspiracy claim must be supported by an underlying tort.  *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 2012). |
|---|---|
| Agreement | "Civil conspiracy requires the conspirators to have a meeting of the minds as to plan or purpose of action to achieve a certain result." *Steele v. Mengelkoch*, 2008 WL 2966529, at *2 (citing *Bukowski v. Juranek*, 35 N.W.2d 427, 430 (Minn. 1948)).  The agreement must concern "either an unlawful purpose or a lawful purpose by unlawful means." *Am. Comp. Trust Leasing v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1489 (D. Minn. 1991) (citing *Harding*, 41 N.W.2d at 824).  "The mere existence of a combination of persons acting in concert is insufficient to establish civil conspiracy." *Id.* (citing *Harding*, 41 N.W.2d at 824). |
| Proof | Civil conspiracies may be proved by circumstantial evidence.  *Nathan v. Saint Paul Mut. Ins. Co.*, 86 N.W.2d 503, 509 (Minn. 1957) (citations omitted).  "In establishing a conspiracy, it is enough if the circumstances shown warrant an inference of concerted conduct." *Id.* "Once a prima facie case of conspiracy has been established, the acts, statements, and conduct of each of the conspirators in execution of furtherance of the common purpose may be shown as evidence against the other." *Id.* at 510. |

23

### MISSISSIPPI

| Elements | "Conspiracy requires a finding of '(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result.'" *Gallegos v. Mid-S. Mortgage & Inv., Inc.*, 956 So.2d 1055, 1060 (Miss. Ct. App. 2007) (quoting *Gallagher Bassett Servs. v. Jeffcoat*, 887 So.2d 777, 786 (Miss. 2004). In Mississippi, "[a] conspiracy standing alone, without the commission of acts causing damage is not actionable." *Bradley v. Kelley Bros. Contractors*, 117 So.3d 331, 339 (Miss. Ct. App. 2013) (internal quotation marks omitted). Where the underlying tort fails, so too does the conspiracy claim. *See Taylor v. S. Farm Bureau Cas. Co.*, 954 So.2d 1045, 1050 (Miss. Ct. App. 2007). |
|---|---|
| Agreement | "[A] conspiracy is 'a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Roussel v. Hutton*, 638 So.2d 1305, 1315 (Miss. 1994) (quoting *Shaw v. Burchfield*, 481 So.2d 247, 255 (Miss. 1985). "It is imperative that a plaintiff … prove that the parties had an agreement, either to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully." *Gallegos v. Mid-S. Mortgage & Inv., Inc.*, 956 So.2d 1055, 1060 (Miss. Ct. App. 2007). A meeting of the minds requires not just an agreement, but an agreement "to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully. *S. Health Corp. of Houston v. Crausby*, No. 2014-CA-00603-COA, 2015 WL 3541907, at *3 (Miss. Ct. App. May 26, 2015) (internal quotation marks omitted). "For a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement." *Bradley*, 117 So.3d at 339. |
| Proof | A conspiracy may be "express, implied, or based on evidence of a course of conduct." *Bradley*, 117 So.3d at 339. "[S]pecific facts indicating an agreement or meeting of the minds" are necessary; conclusory allegations are insufficient. *See Palmisano v. Miss. Dept. of Wildlife, Fisheries, & Parks*, No. 14-CV-94-KS-MTP, 2015 WL 1925466 (S.D. Miss. Apr. 28, 2015). |

## MISSOURI

| Elements | In Missouri, civil conspiracy requires a finding of: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) Plaintiff was thereby damaged. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. 2012). "Although civil conspiracy has its own elements that must be proven, it is not a separate and distinct action." *Roberts*, 367 S.W.3d at 22. Where the underlying cause of action fails, so does the conspiracy claim. *Id.* |
|---|---|
| Agreement | For a meeting of the minds to take place, the conspirators must have a "unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Chmieleski v. City Prods. Corp.*, 660 S.W.2d 275, 290 (Mo. Ct. App. 1983). "The term unlawful . . . is not limited to conduct that is criminally liable." *Roberts*, 367 S.W.3d at 22; *Hunt v. Air Products & Chemicals*, No. 052-9419, 2006 WL 1229082, at *3 (Mo. Cir. Ct. Apr. 20, 2006) ("The unlawfulness of a conspiracy may be found in either the end sought or the means used, and is not limited to criminal conduct."). Civil conspiracy requires proof that the alleged conspirators "knowingly performed any act or took any action to further or carry out the unlawful purposes of the conspiracy." *Hamilton v. Spencer*, 929 S.W.2d 762, 767 (Mo. Ct. App. 1996) (citing *Chmieleski*, 660 S.W.2d at 290). |
| Proof | Proof of a civil conspiracy must be "supported by clear and convincing evidence." *Chmieleski*, 660 S.W.2d at 289-90; *Contour Chair Lounge Co. v. Aljean Furniture Mfg. Co.*, 403 S.W.2d 922, 927 (Mo. Ct. App. 1966) ("Plaintiffs had the burden of proving the fact of the conspiracy, and the overt acts pursuant thereto, by clear and convincing evidence."). The evidence may be circumstantial, but must nevertheless "also be clear and convincing." *Chmieleski*, 660 S.W.2d at 290; *see also John Knox Vill. v. Fortis Const. Co., LLC*, 449 S.W.3d 68, 78-80 (Mo. Ct. App. 2014). |

## Montana

| Elements | "A common law conspiracy occurs in Montana when a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Jones v. Montana Univ. Sys.*, 155 P.3d 1247, 1256 (Mont. 2007).  To prove civil conspiracy the following elements are required: "(1) two or more persons …; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Rocky Mountains Enter., Inc. v. Pierce Flooring,* 951 P.2d 1326, 1339 (Mont. 1997).  "[I]t is not the conspiracy itself, but the torts committed or the wrong done in furtherance of the conspiracy that give rise to a conspiracy claim." *Jones*, 155 P.3d at 1256. |
|---|---|
| Agreement | Establishing a civil conspiracy requires proof of a meeting of the minds.  *Pierce Flooring*, 951 P.2d at 1339.  "The meeting of the minds element [ ] requires a meeting of the minds on the unlawful object or course of action." *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373-74 (Mont. 1998).  "[I]f the object of an alleged 'conspiracy' is lawful, and the means used to attain that object are lawful, there can be no civil action for conspiracy.  The foregoing is true even though damage may result to the plaintiffs and even though defendants may have acted with a malicious motive." *Simmons Oil Corp. v. Holly Corp.,* 852 P.2d 523, 530 (Mont. 1993) (quoting *Duffy v. Butte Teachers' Union, Number 332, AFL–CIO,* 251, 541 P.2d 1199, 1202 (Mont. 1975)). |
| Proof | "Because direct evidence of the meeting of the minds is typically in the possession and control of the alleged conspirators and, therefore, difficult-if not impossible-to obtain, we hold that circumstantial evidence may be used to establish the meeting of the minds element of a civil conspiracy." *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373-74 ¶¶19, 21 (Mont. 1998).  However, plaintiffs must show more than a suspicion of conspiracy.  *See Jones*, 155 P.3d at 1256. |

## NEBRASKA

| Elements | In Nebraska, a civil conspiracy is defined as "a combination of two or more persons acting in concert to accomplish an unlawful or oppressive object, or a lawful object by unlawful or oppressive means." *Ashby v. State*, 779 N.W.2d 343, 357 (Neb. 2010) (citing *Lamar Co. v. City of Fremont*, 771 N.W.2d 894 (Neb. 2009); *Four R Cattle Co. v. Mullins*, 570 N.W.2d 813 (Neb. 1997). Civil conspiracy "is not a separate and independent tort in itself; rather, it depends upon the existence of an underlying tort." *Ashby*, 779 N.W.2d at 357-58 (citing *Eicher v. Mid Am. Fin. Inv. Corp.*, 748 N.W.2d 1 (Neb. 2008)). "Without [] an underlying tort, there can be no cause of action for a conspiracy to commit the tort." *Hatcher v. Bellevue Volunteer Fire Dept.*, 628 N.W.2d 685, 696 (Neb. 2001). |
|---|---|
| Agreement | "'The principal element of conspiracy is an agreement or understanding between two or more persons to inflict a wrong against or injury upon another.'" *Diesel Serv., Inc. v. Accessory Sales, Inc.*, 317 N.W.2d 719, 723 (Neb. 1982) (quoting *Dixon v. Reconciliation, Inc.*, 291 N.W.2d 230, 232 (Neb. 1980)). At a minimum, there must be either an express or "implied agreement to establish conspiracy." *Ashby*, 779 N.W.2d at 357  (citing *Four R. Cattle Co.*, 570 N.W.2d 813). Conspiracy "'involves some mutual mental action coupled with an intent to commit the act which results in the injury.'" *Dixon*, 291 N.W.2d at 232 (quoting *Reid v. Brechet*, 220 N.W. 590, 591 (Neb. 1928)). |
| Proof | Plaintiffs need not "prove a civil conspiracy by direct evidence of the acts charged." *Ashby*, 779 N.W.2d at 357. Instead, civil conspiracies "may be established by circumstantial evidence or by deduction from facts." *Frank H. Gibson, Inc. v. Omaha Coffee Co.*, 137 N.W.2d 701, 709 (Neb. 1965) (citing *Marsh-Burke Co. v. Yost*, 153 N.W. 573 (Neb. 1915)). In other words, a conspiracy "may be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purpose to be accomplished." *Ashby*, 779 N.W.2d at 357 (citing *Four R Cattle Co.*, 570 N.W.2d 813). |

27

NEVADA

| Elements | In Nevada, an "[a]ctionable civil conspiracy arises where two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results." *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*, 335 P.3d 190, 198 (Nev. 2014). |
|---|---|
| Agreement | "To prevail in a civil conspiracy action, a plaintiff must prove an agreement between the tortfeasors." *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998). The agreement may be explicit or tacit. *See Guilfoyle*, 335 P.3d at 198. Civil conspiracy "requires that the defendants have an intent to accomplish an unlawful objective for the purpose of harming another." *Mahlum*, 970 P.2d at 112. |
| Proof | "Although direct evidence of an agreement not to harm the plaintiff is not required," a plaintiff must present sufficient circumstantial evidence "from which to infer an agreement" among conspirators to harm the plaintiff. *Guilfoyle*, 335 P.3d at 199. "Summary judgment is appropriate if there is no evidence of an agreement or intent to harm the plaintiff." *Guilfoyle*, 335 P.3d at 199. A plaintiff must assert a "specific set of facts regarding concerted action in furtherance of an unlawful objective." *Chavez v. California Reconveyance Co.*, No. 10-cv-00325-RLH-LRL, 2010 WL 2545006, *5 (D. Nev. June 18, 2010). Fraud-based conspiracies are subject to NRCP 9(b)'s heightened pleading (particularity) requirements. *See Davenport v. Homecomings Fin., LLC*, No. 56322, 2014 WL 1318964, at *2 (Nev. Mar. 31, 2014). |

## NEW HAMPSHIRE

| Elements | "[U]nder New Hampshire law, the elements of a civil conspiracy are: '(1) two or more persons; (2) an object to be accomplished (i.e., an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an *agreement* on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a proximate result thereof.'" *In re Appeal of Armaganian*, 784 A.2d 1185, 1189 (N.H. 2001) (quoting *Jay Edwards, Inc. v. Baker*, 534 A.2d 706, 709 (N.H. 1987)). "The gist of a civil action for conspiracy is not conspiracy as such, without more, but the damage caused by the acts committed pursuant to the formed conspiracy. There must be something done pursuant to the conspiracy which harms the plaintiff." *Id.* (quoting *Gov. Grove Condo. Ass'n v. Hill Dev. Corp.*, 414 A.2d 1177, 1182 (Conn. Sup. Ct. 1980)). |
|---|---|
| Agreement | At the heart of a civil conspiracy lies "an agreement [between at least two parties] on the object or course of action." *King v. Philip Morris, Inc.*, No. 99-c-856, 2000 WL 34016358, at *11 (Sup. Ct. N.H. 2000) (quoting *Jay Edwards, Inc. v. Baker*, 534 A.2d 706, 709 (N.H. 1987)). Conspirators must know of the statements or acts that give rise to the cause of action. *See Moss v. Camp Pemigewassett, Inc.*, 312 F.3d 503, 512 (1st Cir. 2002). |
| Proof | Mere conclusory allegations and "amorphous accusatory statements" are not enough to give rise to a claim for conspiracy. *Jay Edwards*, 534 A.2d at 709-10. Where the conspiracy is fraudulent, plaintiffs must plead the conspiracy with particularity. *See Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126, 135 (D.N.H. 1984). "[T]he mere fact that defendants all took actions directed at [the plaintiff] does not permit the court to infer an agreement on an object to be accomplished or course of action." *Moore v. Mortg. Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 134 (D.N.H. 2012). |

29

**NEW JERSEY**

| Elements | "In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (quoting *Morgan v. Union Cnty. Bd. Of Chosen Freeholders*, 633 A.2d 985 (N.J. Super. Ct. App. Div. 1993)).  "[T]he gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." *Id.* (internal brackets and citation omitted). |
|---|---|
| Agreement | "While the unlawful agreement need not be expressed, and while the participants need not know all the details of the plan designed to achieve the objective or possess the same motives, they must share the general conspiratorial objective." *Weil v. Express Container Corp.*, 824 A.2d 174, 183 (N.J. Super. Ct. App. Div. 2003) (citing *Morgan*, 633 A.2d at 998).  Rather, a plaintiff "must demonstrate that there was one plan and that its essential scope and nature was known to each person who is charged with responsibility for its consequences."  *Weil*, 824 A.2d at 183. "An unwitting party may not be liable under a conspiracy theory."  *Gandi*, 876 A.2d at 263. However, "[i]t is enough [for liability] if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them."  *Gandi*, 876 A.2d at 263  (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)). |
| Proof | Direct evidence of an agreement is not necessary, "[a]s long as the jury can 'infer from the circumstances that the conspirators had a meeting of the minds and thus reached an 'understanding' to achieve the conspiracy's objectives.'" *Cataldo v. Moses*, No. L-3345-04, 2006 WL 1450382, at *12 (N.J. Super. Ct. App. Div. May 26, 2006) (quoting *Morgan*, 633 A.2d at 998)). |

30

## NEW MEXICO

| Elements | In New Mexico, a civil conspiracy is defined as a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Seeds v. Lucero*, 113 P.3d 859, 862 (N.M. Ct. App. 2005).  To prevail on a civil conspiracy claim, a plaintiff must show: "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Id.* at 863 (quoting *Silva v. Town of Springer*, 912 P.2d 304, 310 (N.M. Ct. App. 1996)).  "A civil conspiracy must actually involve an independent, unlawful act that causes harm--something that would give rise to a civil action on its own." *Ettenson v. Burke*, 17 P.3d 440, 445 (N.M. Ct. App. 2000).  "[A]n agreement, no matter how conspiratorial in nature, is not a separate, actionable offense." *Id.* |
|---|---|
| Agreement | "For a conspiracy to exist there must be a common design or a mutually implied understanding; an agreement." *Morris v. Dodge Country, Inc.*, 513 P.2d 1273, 1274 (N.M. Ct. App. 1973). |
| Proof | "The existence of the conspiracy must be pled either by direct allegations or by allegation of circumstances from which a conclusion of the existence of a conspiracy may be reasonably inferred." *Valles v. Silverman*, 84 P.3d 1056, 1065 (N.M. Ct. App. 2003).  "[G]enerally, the agreement is a matter of inference from the facts and circumstances, including the acts of the persons alleged to be conspirators." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 42 P.3d 1221, 1226 (N.M. Ct. App. 2001) (quoting *Morris*, 513 P.2d at 1274). |

31

**NEW YORK**

| Elements | In New York, "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." *Faulkner v. City of Yonkers*, 105 A.D.3d 899, 900 (2d Dep't 2013).<br><br>To claim a civil conspiracy, the plaintiff must: (1) allege a cognizable tort, (2) coupled with an agreement between the conspirators regarding the tort, and (3) an overt action in furtherance of the agreement. *See Perez v. Lopez*, 97 A.D.3d 558, 560 (2d Dep't 2012).  "New York does not recognize an independent tort to recover damages for civil conspiracy." *See Faulkner*, 105 A.D.3d at 901; *Goldstein v. Siegel*, 19 A.D.2d 489, 493 (1st Dep't 1963) ("There is no substantive tort of conspiracy.").  "Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986). |
|---|---|
| Agreement | To prove the existence of a conspiracy, "plaintiffs must establish not only the corrupt agreement between two or more persons, but their intentional participation in the furtherance of the plan or purpose, and resulting damage." *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986) (quoting *Vom Lehn v. Astor Art Galleries, Ltd.*, 86 Misc.2d 1, 7 (Sup. Ct. 1976)).  The conspirators must have used "improper means or acted solely for the purpose of injuring plaintiff."  *Alexander & Alexander*, 68 N.Y.2d at 969. |
| Proof | Although circumstantial evidence is permitted, "neither conjecture, surmise, nor suspicion can take the place of evidence."  *Cooper v. Maurer*, 37 N.Y.S.2d 992, 996 (Sup. Ct. 1942).  "A bare conclusory allegation of conspiracy is usually held insufficient." *Faulkner*, 105 A.D.3d at 901 (quoting *Goldstein*, 19 A.D.2d at 493). "It is better, therefore, that one allege at least some of the facts of agreement or separable acts, if any, of the alleged co-conspirators in order to support the responsibility of each for the acts of all the others. Otherwise, the allegation remains the barest of legal conclusions." *Goldstein*, 19 A.D.2d at 493.  "The facts and circumstances which constitute the conspiracy, or from which it may be inferred, should be set out clearly, concisely, and with sufficient particularity; but, being mere matter of inducement, they need not be alleged with the particularity required in pleading the acts constituting the gist of the action; and as a rule great latitude is allowed in setting out in the complaint the particular acts from which the conspiracy is to be inferred, even going so far as to allow the individual acts of the conspirators to be averred." *Goldstein*, 19 A.D.2d at 493. |

# NORTH CAROLINA

| Elements | In North Carolina, "[t]he elements of civil conspiracy are: '(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" *In re Fifth Third Bank, Nat'l Ass'n-Village of Penland Litig.*, 719 S.E.2d 171, 181 (N.C. Ct. App. 2011) (quoting *Strickland v. Hedrick*, 669 S.E.2d 61, 72 (N.C. Ct. App. 2008)). "[I]t is well established that there is not a separate civil action for civil conspiracy in North Carolina. Instead, civil conspiracy is premised on the underlying act. Thus, where a plaintiff's underlying claims fail, its claim for civil conspiracy must also fail." *New Bar P'ship v. Martin*, 729 S.E.2d 675, 682 (N.C. Ct. App. 2012) (internal quotation marks, brackets, and citations omitted); *see also Fifth Third Bank*, 719 S.E.2d at 181. |
|---|---|
| Agreement | "The existence of a conspiracy requires proof of an agreement between two or more persons." *Henderson v. LeBauer*, 399 S.E.2d 142, 145 (N.C. Ct. App. 1991) (citing *Fox v. Wilson*, 354 S.E.2d 737, 743 (N.C. Ct. App. 1987)). "Conspiracy requires an intent to do a *wrongful* act, such as an intentional tort." *Suntrust Mortgage, Inc. v. Busby*, 651 F. Supp. 2d 472, 488 (W.D.N.C. 2009) (emphasis added). |
| Proof | "Although civil liability for conspiracy may be established by circumstantial evidence, the evidence of the agreement must be sufficient to create more than a suspicion or conjecture in order to justify submission to a jury." *LeBauer*, 399 S.E.2d at 145 (citing *Dickens v. Puryear*, 276 S.E.2d 325 (N.C. 1981)). Bare bones allegations that defendants conspired, without showing "how th[e] conspiracy came to be, or when, or where, or why," are not enough. *See Bottom v. Bailey*, 767 S.E.2d 883, 890 (N.C. Ct. App. 2014). |

## NORTH DAKOTA

| Elements | In North Dakota, a civil conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damages." *Burris Carpet Plus, Inc. v. Burris*, 785 N.W.2d 164, 179 (N.D. 2010) (quoting *Peterson v. North Dakota Univ. Sys.*, 678 N.W.2d 163, 174 (N.D. 2004)). "[T]he underlying act itself must be actionable as a tort claim to support a claim for civil conspiracy . . . Dismissal of the underlying tort claim defeats the related claim for civil conspiracy." *Id.* (internal citations omitted). |
|---|---|
| Agreement | Federal courts in North Dakota have identified a "meeting of minds on the object or course of action" as an element of civil conspiracy. *See In re North Dakota Personal Injury Asbestos Litig. No. 1*, 737 F. Supp. 1087, 1096 (D.N.D. 1990) (quoting *Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 51 (10th Cir. 1963)). "[A]ll that is required is that there be a tacit understanding." *Id.* (quoting W. Prosser, *The Law of Torts* § 46 (5th ed. 1984)). |
| Proof | Evidence of a concerted action requires that plaintiffs show "a common plan to commit a tortious act, the participants knew of the plan and its purpose, and the participants took substantial affirmative steps to encourage the achievement of the result." *Kuhn v. Chesapeake Energy Corp.*, No. 1:12-CV-086, 2012 WL 4442798, at *6 (D.N.D. Sept. 25, 2012) (quoting *Ward v. Bullis*, 748 N.W.2d 397, 407 (N.D. 2008)). Circumstantial evidence may be sufficient. *See In re North Dakota Personal Injury Asbestos Litig.*, 737 F. Supp. at 1096-97. |

34

## OHIO

| Elements | In Ohio, "[t]he elements of a civil conspiracy claim are: (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself." *Cook v. Kudlacz*, 974 N.E.2d 706, 725 (Ohio Ct. App. 2012). "An underlying tort is necessary to give rise to a cause of action for conspiracy." *Ohio Ass'n of Pub. Sch. Emps./AFSCME Local 4, AFL-CIO v. Madison Local Sch. Dist. Bd. of Edn.*, 941 N.E.2d 834, 845 (Ohio Ct. App. 2010) (quoting *Stiles v. Chrysler Motors Corp.*, 624 N.E.2d 238, 266 (Ohio Ct. App. 1993)). Where the underlying tort fails, so too will the civil conspiracy claim. *See Cook*, 974 N.E.2d at 725. |
|---|---|
| Agreement | Civil conspiracy requires a malicious combination. *See Cook*, 974 N.E.2d at 725. "The element of 'malicious combination to injure' does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996). "'[I]t is sufficient that the parties in any manner come to a mutual understanding that they will accomplish the unlawful design.'" *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent And Awning Co.*, 233 F. Supp. 2d 934, 945 (S.D. Ohio 2002) (quoting *Gosden*, 687 N.E.2d at 496). "The 'malice' in 'malicious combination' is legal or implied malice, 'which the law infers from or imputes to certain acts,' and is defined as 'that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.'" *Gosden*, 687 N.E.2d at 496 (quoting *Pickle v. Swinehart*, 166 N.E.2d 227, 229 (Ohio 1960)). |
| Proof | "[T]he existence of an agreement is often 'provable only through circumstantial evidence.'" *In re Nat'l Century Fin. Enter., Inc.*, 504 F. Supp. 2d 287, 326 (S.D. Ohio 2007). However, plaintiffs need to put forth more than the bare recitation of the elements. *See Miller v. Med. Mut. of Ohio*, No. 2012CA0020, 2013 WL 3817850, at *6 (Ohio Ct. App. July 18, 2013). "Two or more individuals acting together in a manner that naturally leads to an unlawful goal may provide sufficient evidence of the common design necessary to prove a conspiracy." *Carna v. Teays Valley Local Sch. Dist.*, No. 2:12-CV-74, 2012 WL 4361442, at *4 (S.D. Ohio Sept. 25, 2012) (citing *Gosden*, 687 N.E.2d at 496). "A plaintiff need not show that co-conspirators made an agreement as to every detail of the plan; rather, plaintiff must show that the coconspirators 'shared in the general conspiratorial objective.'" *Nat'l Century Fin. Enter., Inc.*, 504 F. Supp. 2d at 326 (quoting *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 538 (6th Cir. 2000)). |

## OKLAHOMA

| Elements | "Under Oklahoma law, to state a claim for civil conspiracy, a plaintiff must plead the following elements: 1) a combination of two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful overt acts; and 5) damages as a proximate result thereof." *Zagorski v. McAdam*, No. CIV-13-1209-D, 2014 WL 2982669, at *6 (W.D. Okla. July 1, 2014) (citing *Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 148 (Okla. 1998)). "Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997). "There can be no liability for civil conspiracy where the *act* complained of and the *means employed* are lawful." *Brock*, 948 P.2d at 294. |
|---|---|
| Agreement | For a conspiracy to be actionable, "there must be a meeting of the minds on the course of the action." *Shadid v. Monsour*, 746 P.2d 685, 689 (Okla. Civ. App. 1987). The meeting of the minds must be "coupled with an intent to commit the fraudulent act which results in the injury." *Shadid*, 746 P.2d at 689. "To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." *Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 201 (Okla. Civ. App. 1999). |
| Proof | Although circumstantial evidence may be used, the plaintiff's evidence must "[d]o more than raise suspicion—it must lead to belief." *Dill v. Rader*, 583 P.2d 496, 499 (Okla. 1978) (internal quotation marks omitted). Plaintiffs must prove a conspiracy with clear and convincing evidence. *Shadid*, 746 P.2d at 688 (citing *Dill*, 583 P.2d at 499); *see also Meyer v. Town of Buffalo, OK*, No. 02-1691-F, 2007 WL 2436306, at *5 (W.D. Okla. Aug. 22, 2007). Oklahoma courts have acknowledged that this "creates a tremendous burden on a conspiracy plaintiff." *Shadid*, 746 P.2d at 688. Circumstantial evidence that is "just as consistent with lawful purposes as with the alleged unlawful scheme" is unlikely to meet the clear and convincing standard. *See Dill*, 583 P.2d at 500. |

36

OREGON

| Elements | Civil conspiracy requires "(1) Two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Yanney v. Koehler*, 935 P.2d 1235, 1238 (Or. Ct. App. 1997) (quoting *Bonds v. Landers*, 566 P.2d 513, 516 (Or. 1977)).  Civil conspiracy is "not a separate tort or basis for recovery but, rather, a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators." *Osborne v. Fadden*, 201 P.3d 278, 282 (Or. Ct. App. 2009) (citing *Granewich v. Harding*, 985 P.2d 788 (Or. 1999)). |
|---|---|
| Agreement | There must be a meeting of the minds on the object or course of action of a conspiracy.  *Yanney*, 935 P.2d at 1238.  "[T]he primary purpose of a conspiracy must be to cause injury to another." *Id.* at 1239 (quoting *Bonds*, 566 P.2d at 516).  Vague or conclusory allegations of a conspiracy are not enough; there must be facts showing a meeting of the minds on the alleged objects of the conspiracy.  *See Lawver v. Lawvor*, 740 P.2d 1220, 1223 (Or. Ct. App. 1987). |
| Proof | Civil conspiracy claim can be established by sufficient circumstantial evidence.  *See Osborne*, 201 P.3d at 282.  Furthermore, a defendant-conspirator does not need to personally commit a tortious act to be liable for acting in concert with another person who committed a tortious act. *See Granewich*, 985 P.2d at 794. |

37

PENNSYLVANIA

| Elements | In Pennsylvania, "'[t]he essential elements of a claim for civil conspiracy are: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and, (3) actual legal damage.'" *Montgomery Cnty., Pa. v. MERSCORP, Inc.*, 904 F. Supp. 2d 436, 453 (E.D. Pa. 2012) (quoting *Commonwealth v. TAP Pharm. Prods., Inc.*, 36 A.3d 1112, 1144 (Pa. Commw. Ct. 2011)); *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008). "Civil conspiracy is not a separate cause of action but instead requires an underlying tort." *Thomas v. U.S. Airways*, No. CIV.A. 13-6121, 2014 WL 1910245, at *5 (E.D. Pa. May 13, 2014). "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (quoting *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987)). |
|---|---|
| Agreement | "There must be a common purpose supported by a concerted action, and each must have the intent to do the unlawful thing. That intent must be common to all, and each must understand that the other has that purpose." *Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 27 (Pa. 1947). "Proof of malice, i.e., an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification." *Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 508 (Pa. Super. Ct. 1992). "Malice requires proof that the conspirators took unlawful actions with the specific intent to injure the plaintiff, instead of simply furthering their own interests through unlawful means." *Montgomery Cnty.*, 904 F. Supp. 2d at 453. |
| Proof | "It has long been the settled rule in [Pennsylvania] that proof of conspiracy must be made by full, clear and satisfactory evidence. The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008) (quoting *Fife v. Great Atlantic & Pacific Tea Co.*, 52 A.2d 24, 39 (Pa. 1947)). "Conspiracy may be proved by circumstantial evidence, including subsequent acts of the alleged conspirators, provided the evidence is 'full, clear and satisfactory.'" *Deitrick v. Costa*, No. 4:06-CV-01556, 2015 WL 1606641, at *14 (M.D. Pa. Apr. 9, 2015) (quoting *Blank & Gottschall Co. v. First Nat'l Bank of Sunbury*, 50 A.2d 218, 220 (Pa. 1947)). "Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence. Conscious parallelism does not suffice to establish civil conspiracy." *Deitrick*, 2015 WL 1606641, at *14 (internal citations and quotation marks omitted). |

38

## RHODE ISLAND

| Elements | In Rhode Island, a civil conspiracy "requires proof that: (1) there was an agreement between two or more parties and (2) the purpose of the agreement was to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means." *Smith v. O'Connell*, 997 F. Supp. 226, 241 (D.R.I. 1998) (citing *Stubbs v. Taft*, 149 A.2d 706, 708-09 (R.I. 1959)). "[C]ivil conspiracy is not an independent basis of liability.  It is a means for establishing joint liability for other tortious conduct; therefore, it requires a valid underlying intentional tort theory." *Read & Lundy, Inc. v. Washington Trust Co. of Westerly*, 840 A.2d 1099, 1102 (R.I. 2004). |
|---|---|
| Agreement | Civil conspiracy requires "evidence of an unlawful enterprise."  *Read & Lundy*, 840 A.2d at 1102 (citing *ERI Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997)).  This, in turn, requires a showing of "the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise."  *Stubbs*, 149 A.2d at 708-09 (quoting 12 C.J., Conspiracy § 234)).  For liability to attach, defendants must have "the specific intent to do something illegal or tortious." *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 268 (D.R.I. 2000).  "Anyone who knows of the conspiracy and intentionally takes part in or performs any act to further the illegal agreement becomes a party in the conspiracy." *Chain Store Maint., Inc. v. Nat'l Glass & Gate Serv., Inc.*, No. CIV.A. PB 01-3522, 2004 WL 877599, at *11 (R.I. Super. Apr. 21, 2004). |
| Proof | Plaintiffs must produce evidence from "which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Stubbs*, 149 A.2d at 708-09 (quoting 12 C.J., Conspiracy § 234)).  "[A] conspiracy may be inferred from the actions of the alleged conspirators. [S]uch an inference must be reasonable and is warranted only when a theory of rational, independent action is less attractive than that of concerted action."  *Chain Store Maint., Inc. v. Nat'l Glass & Gate Serv., Inc.*, No. CIV.A. PB 01-3522, 2004 WL 877599, at *10 (R.I. Super. Apr. 21, 2004) (internal citations omitted).  "Disconnected circumstances any of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy.  However, the doctrine of reasonable doubt has no place in a civil suit for damages where it is sufficient if the evidence is full, clear and satisfactory, and the conspiracy established by a preponderance of the evidence. This degree of proof, however, is necessary. The evidence must do more than raise a suspicion. It must lead to belief."  *Stubbs*, 149 A.2d at 708-09 (quoting 12 C.J., Conspiracy § 234). |

SOUTH CAROLINA

| Elements | In South Carolina, civil conspiracy requires that the plaintiff show "(1) the combination of two or more people; (2) for the purpose of injuring the plaintiff; (3) causing special damages." *Moore v. Weinberg*, 644 S.E.2d 740, 742 (S.C. Ct. App. 2007).  "Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009). Special damages must be specifically alleged, and "[i]f a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." *Hackworth*, 682 S.E.2d at 875. |
|---|---|
| Agreement | Civil conspiracy requires a "joint assent of the minds of two or more parties." *Weinberg*, 644 S.E.2d at 742.  The primary purpose or object of the conspiracy must be to injure the plaintiff. *Benedict Coll. v. Nat'l Credit Sys., Inc.*, 735 S.E.2d 518, 522 (S.C. Ct. App. 2012).  However, "injury to the plaintiff need not be the only purpose behind the tortfeasor's conduct; many conspiracies will be at least partly motivated by the tortfeasor's desire to protect or benefit the tortfeasor's own lot." *Id.* |
| Proof | In South Carolina, a plaintiff "must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth*, 682 S.E.2d at 875. "In order to establish a conspiracy, evidence, either direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Weinberg*, 644 S.E.2d at 742 (quoting *Cowburn v. Leventis*, 619 S.E.2d 437, 453 (S.C. Ct. App. 2005)).  Because conspiracies are "covert and clandestine," they "may be inferred from the nature of the acts committed, the relationship of the parties, the interests of the alleged conspirators, and other relevant circumstances." *Weinberg*, 644 S.E.2d at 742. |

40

**SOUTH DAKOTA**

| Elements | "To establish a *prima facie* case of civil conspiracy, the plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy."  *Kirlin v. Halverson*, 758 N.W.2d 436, 455 (S.D. 2008). Civil conspiracy "is not an independent cause of action, but is sustainable only after an underlying tort claim has been established."  *Reuben C. Setliff, III, M.D., P.C. v. Stewart (Rueben II)*, 694 N.W.2d 859, 867 (S.D. 2005) (internal quotation marks omitted). |
|---|---|
| Agreement | "A civil conspiracy is, fundamentally, an agreement 'to commit a tort.'"  *Reuben II*, 694 N.W.2d at 867 (quoting *Kessel v. Leavitt*, 511 S.E.2d 720, 753 (W.Va. 1998)).  "The purpose of a civil conspiracy claim is to impose civil liability for damages on those who agree to join in a tortfeasor's conduct and, thereby, become liable for the ensuing damage, simply by virtue of their agreement to engage in the wrongdoing."  *Huether v. Mihm Transp. Co.*, 857 N.W.2d 854, 861 (S.D. 2014) (internal quotation marks omitted).  The South Dakota Supreme Court has not addressed what a conspirator must intend in entering into a conspiracy.  Federal courts considering the issue have found that specific intent would likely be required.  *See Qwest Comm'n Corp. v. Free Conferencing Corp.*, 2014 WL 5782543, at *12-15 (D.S.D. Nov. 6, 2014). |
| Proof | South Dakota courts have not addressed civil conspiracy in great detail, including how a plaintiff proves the existence of a conspiracy.  The South Dakota Supreme Court has indicated that circumstantial evidence is permitted, *see Reuben II*, 694 N.W.2d at 867-70, but that speculation is insufficient, *see Kirlin*, 758 N.W.2d at 455. |

41

**TENNESSEE**

| | |
|---|---|
| **Elements** | "The elements of civil conspiracy under Tennessee law are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Orlowski v. Bates*, No. 2:11-CV-01396-JPM, 2015 WL 1485980, at \*10 (W.D. Tenn. Mar. 31, 2015) (citing *Kincaid v. SouthTrust Bank,* 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)). "The simple act of conspiracy does not furnish a substantive ground of action." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 59 (Tenn. Ct. App. 2013) (internal quotation marks omitted). "[A] claim for civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy. Conspiracy, standing alone, is not actionable where the underlying tort is not actionable." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 556 (Tenn. Ct. App. 2012) (internal quotations marks and citations omitted). |
| **Agreement** | "An essential element of a conspiracy claim is that the conspiring parties intend to accomplish an unlawful purpose, or a lawful purpose by unlawful means." *Kincaid*, 221 S.W.3d at 39. "The agreement need not be formal, the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy." *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 419 (Tenn. Ct. App. 2004) (quoting *Dale v. Thomas H. Temple Co*., 208 S.W.2d 344, 353-54 (Tenn. Ct. App. 1948)) (internal quotation marks omitted). "Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *Id.* (quoting *Dale*, 208 S.W.2d at 353-54). |
| **Proof** | "Civil conspiracy claims must be pled with some degree of specificity in order to survive a motion to dismiss; conclusory allegations unsupported by material facts will not be sufficient to state a claim." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 556 (Tenn. Ct. App. 2012). "If either the unlawful purpose or the unlawful means of civil conspiracy sound in fraud, then a claim for civil conspiracy must comport with the standards of Rule 9(b)." *Orlowski v. Bates*, No. 2:11-CV-01396-JPM, 2015 WL 1485980, at \*10 (W.D. Tenn. Mar. 31, 2015) (citing *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). |

TEXAS

| Elements | "The essential elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In Texas, civil conspiracy is a derivative tort. "[L]iability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *see also Humble Emergency Phys., P.A. v. Mem. Hermann Healthcare Sys., Inc.*, No. 01-09-00587-CV, 2011 WL 1584854, at *9 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.). |
|---|---|
| Agreement | Civil conspiracy requires either an agreement "to accomplish an unlawful purpose" or an agreement to "accomplish a lawful purpose by unlawful means." *Raytheon Aircraft*, 229 S.W.3d at 381. "[P]roof of intent to participate in a conspiracy is a necessary factor of the 'meeting of the minds' element." *Grand Overseas Destinations, Inc. v. Baker Hughes, Inc.*, No. 14-98-01427-CV, 2000 WL 1508827, at *6 (Tex. App.—Houston [14th Dist.] Oct. 12, 2000, pet. denied). The agreement must also address the resulting injury. *See Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008) ("[Defendant] could only be liable for conspiracy if he agreed to the injury to be accomplished; agreeing to the conduct ultimately resulting in injury is not enough."). "One 'cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of.'" *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995) (quoting *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968). Nor can "one without knowledge of a conspiratorial plan or scheme to injure another by the commission of a particular wrong cannot share the intent to injure such other." *Schlumberger Well Surveying Corp.*, 435 S.W.2d at 857. Civil conspiracy "requires specific intent to agree 'to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.'" *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996). Merely proving a joint "intent to engage in the conduct that resulted in the injury" is not sufficient to establish a cause of action for civil conspiracy. *Triplex*, 900 S.W.2d at 719. "[T]he parties must be aware of the harm or the wrongful conduct at the beginning of the agreement and intend to cause that harm." *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 90 (Tex. 2003). |
| Proof | The existence of a conspiracy may generally be established "by proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspirators." *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963). However, use of circumstantial evidence is not without limits: there must be more than "mere suspicion." *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995). "Where circumstantial evidence is presented, conspiracy cannot be proven by 'piling inference upon inference.'" *Lamont v. Vaquillas Energy Lopeno Ltd., LLP*, 421 S.W.3d 198, 220 (Tex. App.—San Antonio 2013, pet. denied) (internal quotation omitted). "[S]ome suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *Faircloth*, 898 S.W.2d at 278. In particular, "vital facts may not be proved by unreasonable inferences from other facts and circumstances." *Schlumberger*, 435 S.W.2d at 858. "[I]f circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred." *Faircloth*, 898 S.W.2d at 278. |

UTAH

| Elements | In Utah, a civil conspiracy claim requires that the plaintiff establish five elements: "'(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'" *Peterson v. Delta Air Lines, Inc.*, 42 P.3d 1253, 1257 (Utah Ct. App. 2002) (quoting *Alta Indus. v. Hurst*, 846 P.2d 1282, 1290 n. 17 (Utah 1993)). "Utah courts have continuously recognized the validity of civil conspiracy claims." *Jedrziewski v. Smith*, 128 P.3d 1146, 1149 (Utah Ct. App. 2005).  However, civil conspiracy requires the commission of an underlying tort. *Estrada v. Mendoza*, 275 P.3d 1024, 1029 (Utah Ct. App. 2012) (citations omitted).  If the underlying overt act "is lawful, even if damage results to the plaintiff or the defendant acted with a malicious motive, there can be no civil action for conspiracy." *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 792 (Utah Ct. App. 1987). |
|---|---|
| Agreement | Utah law requires that plaintiffs demonstrate that the "defendants had a meeting of the minds or an agreement and acted in concert." *Pintar v. Houck*, 263 P.3d 1158, 1166 (Utah Ct. App. 2011) (citations omitted).  A civil conspiracy can be established based on an informal agreement. *Cannon*, 746 P.2d at 791.  All parties to a conspiracy must knowingly participate for liability to attach to their actions.  *See Jedrziewski*, 128 P.3d at 1148 ("Knowing, intentional acts are required to form the foundation of a conspiracy."). |
| Proof | It is not necessary to prove that "the parties actually came together and entered into a formal agreement to do the acts complained of by direct evidence." *Cannon*, 746 P.2d at 791 (citing *Holmes v. McKey*, 383 P.2d 655, 665 (Okla. 1962)).  Rather, conspiracy may be proved by circumstantial evidence, "including the nature of the act done, the relations of the parties, and the interests of the alleged conspirators." *Id.* (citations omitted); *see also Lawrence v. Intermountain, Inc.*, 243 P.3d 508, 514 n.6 (Utah Ct. App. 2010) ("Furthermore, a court may look to the relationship of the parties and use reasonable inferences in determining whether a conspiracy existed." (citing *Cannon*, 746 P.2d at 791)).  Furthermore, the burden of proof "is higher than mere preponderance," as a plaintiff must establish civil conspiracy "by clear and convincing evidence." *Crane Co. v. Dahle*, 576 P.2d 870, 872 (Utah 1978); *Cannon*, 746 P.2d at 790. |

## VERMONT

| Elements | Vermont defines a civil conspiracy as "a combination of two or more persons to effect an illegal purpose, either by legal or illegal means, or to effect a legal purpose by illegal means." *Saunders v. Morton*, No. 5:09-CV-125, 2011 WL 1135132, at *9 (D. Vt. Feb. 17, 2011) (quoting *Hooker, Corser & Mitchell Co. v. Hooker*, 95 A. 649, 653 (Vt. 1915)).  Federal courts in Vermont have stated that "[i]t is not entirely clear under Vermont law whether the tort of civil conspiracy constitutes an independent cause of action." *Saunders v. Morton*, No. 5:09-CV-125, 2011 WL 1135132, at *9 (D. Vt. Feb. 17, 2011) (noting that "there is authority to support either approach"). |
|---|---|
| Agreement | Vermont case law does not appear to require an agreement or meeting of the minds among conspirators, but rather a "combination" between individuals. *See Saunders*, 2011 WL 1135132 at *9. |
| Proof | Vermont requires that the act done in furtherance of the agreement be "unlawful in itself." *Davis v. Vile*, 2003 WL 25746021 at *3 (Vt. 2003) (quoting *Boutwell v. Marr*, 42 A. 607 (Vt. 1899)); *see also Akerley v. N. Country Stone, Inc.*, 620 F. Supp. 2d 591, 600 (D. Vt. 2009) ("For a civil action, the plaintiff must be damaged by something 'done in furtherance of the agreement, and 'the thing done [must] be something unlawful in itself.'").  "Without an illegal purpose, or the use of illegal means to accomplish a legal purpose, the charge of conspiracy must fail." *Hunnewell v. Catamount Nat. Bank*, 406 A.2d 386, 387 (Vt. 1979). |

45

## VIRGINIA

| | |
|---|---|
| **Elements** | Civil conspiracy is defined in Virginia as "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *Glass v. Glass*, 321 S.E.2d 69, 74 (Va. 1984). "The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 281-82 (Va. 1993) (quoting *Gallop v. Sharp*, 19 S.E.2d 84, 86 (Va. 1942)). |
| **Agreement** | Civil conspiracy requires an agreement "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *William v. AES Corp.*, 28 F. Supp. 3d 553, 574 (E.D. Va. 2014). Plaintiffs must allege "some details of time and place and the alleged effect of the conspiracy." *Beasley v. FV-I, Inc.*, 2013 WL 1192018, at *5 (E.D. Va. Mar. 21, 2013) (quoting *Johnson v. Kaugars*, No. LM-152-3, 1988 WL 619378, at *3 (Va. Cir. Ct. Oct. 31, 1988)). The concert of action and requisite unity of purpose must be shown by more than vague or conclusory language. *William v. AES Corp.*, 28 F. Supp. 3d 553, 574 (E.D. Va. 2014). |
| **Proof** | The Virginia Supreme Court has stated that "without proof of the underlying tort, there can be no conspiracy to commit that tort." *Commercial Bus. Sys. v. Halifax Corp.*, 484 S.E.2d 892, 300 (Va. 1997). Therefore, "in Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham*, 639 S.E.2d 182, 189 (Va. 2007). Moreover, in Virginia, a civil conspiracy must be shown by clear and convincing evidence." *Waytec Elec. Corp. v. Rohm & Haas Elec. Materials, LLC*, 459 F. Supp. 2d 480, 492 (W.D. Va. 2006); *see also Pierce Oil Corp. v. Voran*, 118 S.E. 247, 251 (Va. 1923) ("The general rules of evidence as to proof of fraud and conspiracy are well understood. Direct proof is seldom obtainable. But circumstantial evidence when solely relied upon, must be clear and convincing, and not merely such as to raise a suspicion."). |

WASHINGTON

| Elements | To establish a common law claim for civil conspiracy, a plaintiff is required to "prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *Bonneville v. Pierce Cnty.*, 202 P.3d 309, 318 (Wash. Ct. App. 2008) (quoting *All Star Gas, Inc. of Washington v. Bechard*, 998 P.2d 367, 372 (Wash Ct. App. 2000). "[W]here the object in view is lawful and no unlawful means are used, there can be no civil action for conspiracy, even though damage results and even though defendants acted with malicious motives." *Lewis Pac. Dairymen's Ass'n v. Turner*, 314 P.2d 625, 631 (Wash. 1957) (internal quotation marks omitted). |
|---|---|
| Agreement | "An action for civil conspiracy lies when there is an agreement by two or more persons to accomplish some purpose, not in itself unlawful, by unlawful means." *Sterling Bus. Forms, Inc. v. Thorpe*, 918 P.2d 531, 533 (Wash. Ct. App. 1996). A civil conspiracy claim requires actual or constructive knowledge of an agreement to conspire, and an unlawful motive. *See All Star Gas*, 998 P.2d at 372. Therefore, "[b]efore a party can be held liable as a conspirator the evidence must show that such person entered into an agreement with the other conspirators to accomplish the object of the conspiracy." *Harrington v. Richeson*, 245 P.2d 191, 198 (Wash. 1952). |
| Proof | "A plaintiff in a civil conspiracy action has the burden of proving the case by a preponderance of the evidence, and must establish the existence of the conspiracy by clear, cogent and convincing evidence." *Sterling Bus. Forms*, 918 P.2d at 533. "[C]ircumstantial evidence is competent to prove conspiracy." *Id.* at 534 (quoting *Lyle v. Haskins*, 168 P.2d 797, 807 (Wash. 1946)). However, "[m]ere suspicion or commonality of interests is insufficient to prove a conspiracy." *All Star Gas*, 998 P.2d at 372 (internal quotation marks omitted). "Where the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient." *Turner*, 314 P.2d at 631. Moreover, in considering evidence of an agreement, "assertions that are given only passing treatment and are unsupported by reasoned argument" are insufficient. *All Star Gas*, 998 P.2d at 372. |

47

## WEST VIRGINIA

| Elements | In West Virginia, civil conspiracy is defined as "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dunn v. Rockwell*, 689 S.E.2d 255, 268 (W. Va. 2009) (quoting *Dixon v. Am. Indus. Leasing Co.*, 253 S.E.2d 150, 152 (W. Va. 2009)). "A civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Dunn*, 689 S.E.2d at 269. Where the underlying wrongs fail, so too will the civil conspiracy claim. *See O'Dell v. Stegall*, 703 S.E.2d 561, 595 (W. Va. 2010). |
|---|---|
| Agreement | West Virginia case law does not require an agreement, but rather "a concerted action by two or more persons." *See, e.g.*, *Cook v. Heck's Inc.*, 342 S.E.2d 453, 460 (W. Va. 19860; *Dixon*, 253 S.E.2d at 835. "At its most fundamental level, a civil conspiracy is a combination to commit a tort." *Dunn*, 689 S.E.2d at 268 (internal quotation marks omitted). Conspiracy is "an intentional act." *Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533 (W. Va. 1996) (noting the difference between negligence and intentional torts for purposes of civil conspiracy). |
| Proof | A plaintiff must factually allege the existence of a conspiracy. *See, e.g.*, *Tucker v. Thomas*, 853 F. Supp. 2d 576, 594 (N.D. W. Va. 2012). Vague allegations of a conspiracy are not enough. *See Taylor v. Robert W. Ackerman, P.C.*, 2015 WL 3875763, at *5 (W. Va. June 22, 2015). "[T]he statute of limitation for a civil conspiracy claim is determined by the nature of the underlying conduct on which the claim of conspiracy is based." *Dunn*, 689 S.E.2d at 269. |

48

## WISCONSIN

| | |
|---|---|
| **Elements** | In Wisconsin, civil conspiracy is defined as "a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." *Thomas ex rel. Gramling v. Mallett*, 701 N.W.2d 523, 566 (Wis. 2005) (internal quotation marks omitted).  Plaintiffs claiming a civil conspiracy must allege "'(1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts.'" *Id.* at 324 (quoting *Onderdonk v. Lamb*, 255 N.W.2d 507, 510 (1977).  In Wisconsin, "there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a conspiracy but none for the conspiracy alone." *Onderdonk v. Lamb*, 255 N.W.2d 507, 509 (Wis. 1977) (internal quotation marks omitted). |
| **Agreement** | "To form a conspiracy there must be an agreement to violate or disregard the law, and the persons involved must knowingly be members of the conspiracy." *Lane v. Sharp Packaging Sys., Inc.*, 635 N.W.2d 896, 901 (Wis. Ct. App. 2001).  "There must be intentional participation in the transaction with a view to the furtherance of the common design." *Coopman v. State Farm Fire & Cas. Co.*, 508 N.W.2d 610, 613 (Wis. Ct. App. 1993).  "[M]ere knowledge, acquiescence or approval of a plan, without cooperation or agreement to cooperate, is not enough to make a person a party to a conspiracy." *Coopman*, 508 N.W.2d at 613 (quoting *Winslow v. Brown*, 371 N.W.2d 417, 420 (Wis. Ct. App. 1985)).  "[P]arallel behavior alone cannot prove agreement." *Collins v. Eli Lilly Co.*, 342 N.W.2d 37, 47-48 (Wis. 1984). |
| **Proof** | Plaintiffs must "show some agreement, explicit or otherwise, between the alleged conspirators on the common end sought and some cooperation toward the attainment of that end." *Thomas ex rel. Gramling v. Mallett*, 701 N.W.2d 523, 566 (Wis. 2005) (quoting *Augustine v. Anti-Defamation League of B'nai B'rith*, 249 N.W.2d 547 (Wis. 1977)).  "Facts should be alleged which show that the acts done in furtherance of the conspiracy were wrongful." *Edwardson v. Am. Family Mut. Ins. Co.*, 589 N.W.2d 436, 438 (Ct. App. 1998).  "A conspiracy must be established by clear, satisfactory, and convincing evidence." *Vance v. Thiede*, 630 N.W.2d 276 (Wis. Ct. App. 2001) (citing *Cox v. Cox*, 48 N.W.2d 508 (1951)). |

## WYOMING

| Elements | The elements of civil conspiracy in Wyoming are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate cause thereof." *White v. Shane Edeburn Constr., LLC*, 285 P.3d 949, 958 (Wyo. 2012).  "[A] plaintiff cannot claim civil conspiracy or punitive damages without an underlying cause of action in tort." *Id.* at 958 (citing *Cent. Wyo. Med. Lab., LLC v. Med. Testing Lab., Inc.*, 43 P.3d 121, 126 (Wyo. 2002)). |
|---|---|
| Agreement | A "meeting of the minds" is a required element of civil conspiracy.  *See White*, 285 P.3d at 958. The "meeting of the minds" must be with respect to the unlawful objective and the "means of obtaining the objective." *Moore v. Wyo. Med. Ctr.*, 825 F. Supp. 1531, 1550 (D. Wyo. 1993). |
| Proof | "A civil conspiracy, or 'concerted action' tort, may be proven by circumstantial evidence." *Jurkovich v. Estate of Tomlinson*, 843 P.2d 1166, 1172 (Wyo. 1992).  Evidence of a concerted action may support the existence of a civil conspiracy.  *See Kaiser v. Farnsworth Drilling Co., Inc.*, 851 P.2d 1292, 1295 (Wyo. 1993). |

# EXHIBIT 13

# Document Filed Under Seal

# (App. 253-647)

# EXHIBIT 14

*CD Losses by States;*

**Stanford Financial Group**

*Most Recent Mailing State Breakdown for SIBL Clients with Most Recent Statement Mailing Address within the United States*
*Number of SIBL Clients and Most Recent Ending Balance*
*Most Recent Statement Information Within Available SIBL Data from 2008 - February 2009 (as of February 22, 2009)*

| Most Recent Statement Information STATE ADDRESS | Most Recent Statement Information Number of Clients | Most Recent Statement Information TOTAL ENDING BALANCE (USD) |
|---|---|---|
| FL | 2,409 | $857,155,013 |
| LA | 1,810 | $551,343,629 |
| TX | 1,280 | $582,874,197 |
| TN | 196 | $93,150,243 |
| CA | 177 | $80,010,075 |
| GA | 150 | $62,836,262 |
| NC | 125 | $59,216,873 |
| MS | 125 | $64,843,858 |
| AR | 88 | $35,454,737 |
| CO | 72 | $46,636,599 |
| NY | 71 | $16,044,207 |
| Unknown[1] | 71 | $37,571,785 |
| NJ | 45 | $8,035,707 |
| PR | 39 | $6,760,991 |
| IL | 33 | $23,835,777 |
| PA | 31 | $7,529,175 |
| VA | 31 | $6,625,852 |
| MA | 30 | $7,017,043 |
| AZ | 28 | $35,855,644 |
| OK | 26 | $5,908,575 |
| MD | 26 | $13,126,586 |
| MI | 24 | $8,386,984 |
| WA | 22 | $6,456,730 |
| SC | 20 | $25,165,025 |
| MO | 14 | $3,281,072 |
| NM | 14 | $2,785,354 |
| OH | 14 | $4,032,697 |
| AL | 12 | $2,600,200 |
| CT | 11 | $6,011,392 |
| DC | 9 | $2,216,103 |
| NV | 9 | $4,439,967 |
| WI | 6 | $1,498,077 |
| IN | 5 | $1,097,633 |
| UT | 5 | $2,435,981 |
| OR | 4 | $2,419,740 |
| NH | 4 | $591,714 |
| HI | 3 | $1,933,304 |
| KS | 3 | $1,007,502 |
| VI | 3 | $298,541 |
| KY | 2 | $2,572,560 |
| VT | 2 | $323,661 |
| MT | 2 | $0 |
| DE | 2 | $66,384 |
| AK | 2 | $546,709 |
| WV | 1 | $352,237 |
| D.C. | 1 | $128,925 |
| IA | 1 | $55,105 |
| WY | 1 | $50,094 |
| ID | 1 | $0 |
| MN | 1 | $25,855 |
| SD | 1 | $254,807 |
| **TOTAL** | **7,072** | **$2,560,676,142** |

[1] There are an estimated 71 unique SIBL clients with a most recent statement mailing address *within* the United States that has a null or blank value for the mailing state address.

**CONFIDENTIAL**

**ABBOTT_000006**

App. 649

# EXHIBIT 15

Stanford International Bank Limited - in Liquidation
Summary of claims by country and status

| | Residence | | TOTALS | | % of Total | |
|---|---|---|---|---|---|---|
| No. | Country | Continents | Total no. of claims | Total value of claims | No. of claims | Value of claims |
| 1 | Venezuela | Latin America | 8,313 | 1,615,244,994.42 | 38.242% | 22.273% |
| 2 | United States | USA | 3,438 | 1,618,309,675.45 | 15.816% | 22.316% |
| 3 | Antigua and Barbuda | Caribbean | 3,176 | 1,454,194,403.87 | 14.610% | 20.053% |
| 4 | Mexico | Latin America | 3,071 | 976,963,328.26 | 14.127% | 13.472% |
| 5 | Colombia | Latin America | 384 | 105,887,409.45 | 1.766% | 1.457% |
| 6 | Ecuador | Latin America | 378 | 65,851,468.72 | 1.739% | 0.908% |
| 7 | Peru | Latin America | 378 | 121,808,647.71 | 1.739% | 1.680% |
| 8 | Haiti | Caribbean | 294 | 234,473,644.62 | 1.352% | 3.233% |
| 9 | Aruba | Caribbean | 268 | 76,196,005.76 | 1.233% | 1.051% |
| 10 | Netherlands Antilles | Caribbean | 235 | 63,714,750.07 | 1.081% | 0.879% |
| 11 | Canada | Canada | 159 | 45,788,864.16 | 0.731% | 0.631% |
| 12 | United Kingdom | Europe | 158 | 56,259,991.24 | 0.727% | 0.776% |
| 13 | Argentina | Latin America | 122 | 29,120,642.61 | 0.561% | 0.402% |
| 14 | The Netherlands | Europe | 116 | 75,749,250.75 | 0.534% | 1.045% |
| 15 | Spain | Europe | 106 | 29,947,640.30 | 0.488% | 0.413% |
| 16 | Virgin Islands (British) | Caribbean | 102 | 91,695,735.56 | 0.469% | 1.264% |
| 17 | Panama | Latin America | 99 | 90,176,748.29 | 0.455% | 1.243% |
| 18 | Guatemala | Latin America | 87 | 27,590,142.73 | 0.400% | 0.380% |
| 19 | El Salvador | Latin America | 77 | 63,687,063.31 | 0.354% | 0.878% |
| 20 | Italy | Europe | 49 | 15,569,460.39 | 0.225% | 0.215% |
| 21 | Egypt | Africa | 42 | 9,907,056.15 | 0.193% | 0.137% |
| 22 | Israel | Asia / Pacific | 40 | 16,734,109.71 | 0.184% | 0.231% |
| 23 | France | Europe | 37 | 34,754,865.95 | 0.170% | 0.479% |
| 24 | Dominican Republic | Caribbean | 36 | 6,067,343.92 | 0.166% | 0.084% |
| 25 | Brazil | Latin America | 32 | 10,652,783.55 | 0.147% | 0.147% |
| 26 | Nicaragua | Latin America | 30 | 15,365,555.50 | 0.138% | 0.212% |
| 27 | Trinidad and Tobago | Caribbean | 30 | 5,095,976.54 | 0.138% | 0.070% |
| 28 | Germany | Europe | 29 | 21,574,074.78 | 0.133% | 0.297% |
| 29 | Switzerland | Europe | 28 | 7,431,629.75 | 0.129% | 0.102% |
| 30 | Belgium | Europe | 24 | 7,513,425.16 | 0.110% | 0.104% |
| 31 | Bolivia | Latin America | 24 | 9,417,425.84 | 0.110% | 0.130% |
| 32 | Guyana | Latin America | 22 | 11,852,191.03 | 0.101% | 0.163% |
| 33 | Russian Federation | Europe | 21 | 11,462,037.70 | 0.097% | 0.158% |
| 34 | Sweden | Europe | 18 | 1,246,230.88 | 0.083% | 0.017% |
| 35 | Portugal | Europe | 17 | 8,762,869.14 | 0.078% | 0.121% |
| 36 | Costa Rica | Latin America | 16 | 9,611,242.32 | 0.074% | 0.133% |
| 37 | Austria | Europe | 14 | 873,001.65 | 0.064% | 0.012% |
| 38 | Barbados | Caribbean | 14 | 5,486,686.72 | 0.064% | 0.076% |
| 39 | Jamaica | Caribbean | 14 | 12,946,649.02 | 0.064% | 0.179% |
| 40 | Chile | Latin America | 12 | 2,450,736.40 | 0.055% | 0.034% |
| 41 | New Zealand | Asia / Pacific | 11 | 14,754,634.28 | 0.051% | 0.203% |
| 42 | Singapore | Asia / Pacific | 11 | 17,174,732.05 | 0.051% | 0.237% |
| 43 | Greece | Europe | 8 | 1,025,030.79 | 0.037% | 0.014% |
| 44 | Kenya | Africa | 8 | 2,605,039.19 | 0.037% | 0.036% |
| 45 | Puerto Rico | USA | 8 | 1,972,997.97 | 0.037% | 0.027% |
| 46 | Saint Kitts And Nevis | Caribbean | 7 | 3,680,687.88 | 0.032% | 0.051% |
| 47 | Paraguay | Latin America | 7 | 917,925.55 | 0.032% | 0.013% |
| 48 | United Arab Emirates | Asia / Pacific | 6 | 6,585,510.40 | 0.028% | 0.091% |
| 49 | Cyprus | Europe | 6 | 448,627.18 | 0.028% | 0.006% |
| 50 | Denmark | Europe | 7 | 767,173.45 | 0.032% | 0.011% |
| 51 | Ireland | Europe | 6 | 3,858,093.90 | 0.028% | 0.053% |
| 52 | India | Asia / Pacific | 6 | 752,039.71 | 0.028% | 0.010% |
| 53 | Cayman Islands | Caribbean | 6 | 9,527,622.67 | 0.028% | 0.131% |
| 54 | Latvia | Europe | 6 | 9,154,715.18 | 0.028% | 0.126% |
| 55 | Ukraine | Europe | 6 | 1,995,690.57 | 0.028% | 0.028% |
| 56 | Uruguay | Latin America | 6 | 1,497,261.49 | 0.028% | 0.021% |
| 57 | Lebanon | Asia / Pacific | 5 | 1,819,913.28 | 0.023% | 0.025% |
| 58 | Saint Lucia | Caribbean | 5 | 447,803.26 | 0.023% | 0.006% |
| 59 | Suriname | Latin America | 5 | 1,338,972.90 | 0.023% | 0.018% |
| 60 | Anguilla | Caribbean | 4 | 198,062.32 | 0.018% | 0.002% |
| 61 | Australia | Asia / Pacific | 4 | 1,659,665.03 | 0.018% | 0.023% |
| 62 | Bermuda | Caribbean | 4 | 1,946,216.57 | 0.018% | 0.027% |
| 63 | Bahamas | Caribbean | 4 | 15,518,934.05 | 0.018% | 0.214% |
| 64 | Belize | Latin America | 4 | 721,820.51 | 0.018% | 0.010% |
| 65 | Honduras | Latin America | 4 | 1,122,483.09 | 0.018% | 0.015% |
| 66 | Namibia | Africa | 4 | 1,427,474.94 | 0.018% | 0.020% |
| 67 | Syrian Arab Republic | Asia / Pacific | 4 | 235,110.58 | 0.018% | 0.003% |
| 68 | Virgin Islands (U.S.) | USA | 4 | 3,153,489.64 | 0.018% | 0.043% |
| 69 | Bulgaria | Europe | 3 | 507,857.98 | 0.014% | 0.007% |
| 70 | People's Republic of China | Asia / Pacific | 3 | 1,013,629.79 | 0.014% | 0.014% |
| 71 | Cuba | Caribbean | 3 | 354,333.07 | 0.014% | 0.005% |
| 72 | Grenada | Caribbean | 3 | 257,618.42 | 0.014% | 0.004% |
| 73 | Isle of Man | Europe | 3 | 3,538,070.46 | 0.014% | 0.049% |
| 74 | Macedonia, The Former Yugoslav Republic Of | Europe | 3 | 212,533.16 | 0.014% | 0.003% |
| 75 | South Africa | Africa | 3 | 572,946.06 | 0.014% | 0.008% |
| 76 | Bahrain | Asia / Pacific | 2 | 1,221,218.53 | 0.009% | 0.017% |
| 77 | Ghana | Africa | 2 | 238,299.63 | 0.009% | 0.003% |
| 78 | Guadeloupe | Caribbean | 2 | 2,032,080.69 | 0.009% | 0.028% |
| 79 | Liberia | Africa | 2 | 2,501,717.52 | 0.009% | 0.034% |
| 80 | Libyan Arab Jamahiriya | Africa | 2 | 58,823,579.64 | 0.009% | 0.811% |
| 81 | Martinique | Caribbean | 2 | 572,578.80 | 0.009% | 0.008% |
| 82 | Montserrat | Caribbean | 2 | 1,006,625.19 | 0.009% | 0.014% |
| 83 | Poland | Europe | 2 | 239,980.33 | 0.009% | 0.003% |
| 84 | Romania | Europe | 2 | 345,449.55 | 0.009% | 0.005% |
| 85 | Turkey | Europe | 2 | 116,293.93 | 0.009% | 0.002% |
| 86 | Angola | Africa | 1 | 96,299.92 | 0.005% | 0.001% |

| 87  | Azerbaijan | Asia / Pacific | 1 | 13,575.08 | 0.005% | 0.000% |
| 88  | Bosnia And Herzegovina | Europe | 1 | 305,949.67 | 0.005% | 0.004% |
| 89  | Bouvet Island | Africa | 1 | 55.78 | 0.005% | 0.000% |
| 90  | Congo (Democratic Republic) | Africa | 1 | 25,199.25 | 0.005% | 0.000% |
| 91  | Croatia (local name: Hrvatska) | Europe | 1 | 56,215.24 | 0.005% | 0.001% |
| 92  | Hungary | Europe | 1 | 26,625.03 | 0.005% | 0.000% |
| 93  | Iceland | Europe | 1 | 101,195.97 | 0.005% | 0.001% |
| 94  | Kuwait | Asia / Pacific | 1 | 197,730.79 | 0.005% | 0.003% |
| 95  | Malta | Europe | 1 | 18,507.65 | 0.005% | 0.000% |
| 96  | Nigeria | Africa | 1 | 49,565.68 | 0.005% | 0.001% |
| 97  | Norway | Europe | 1 | 53,514.73 | 0.005% | 0.001% |
| 98  | Serbia | Europe | 1 | 43,144.80 | 0.005% | 0.001% |
| 99  | Saudi Arabia | Asia / Pacific | 1 | 266,760.43 | 0.005% | 0.004% |
| 100 | Senegal | Africa | 1 | 2,326,745.68 | 0.005% | 0.032% |
| 101 | Chad | Africa | 1 | 19,304.67 | 0.005% | 0.000% |
| 102 | Taiwan | Asia / Pacific | 1 | 331,231.14 | 0.005% | 0.005% |
| 103 | Tanzania, United Republic Of | Africa | 1 | 828,312.43 | 0.005% | 0.011% |
| 104 | Uganda | Africa | 1 | 20,867.48 | 0.005% | 0.000% |
| 105 | Saint Vincent And The Grenadines | Caribbean | 1 | 34,705.08 | 0.005% | 0.000% |
| 106 | Yemen | Asia / Pacific | 1 | 52.11 | 0.005% | 0.000% |
|     |  |  | 21,738 | 7,251,873,767.15 | 100.00% | 100.00% |

# EXHIBIT 16

**Document Filed Under Seal**

**(App. 654-667)**

# EXHIBIT 17

# Document Filed Under Seal

# (App. 669)

# EXHIBIT 18

# Document Filed Under Seal

# (App. 671)

# EXHIBIT 19

# Document Filed Under Seal

# (App. 673-675)

# EXHIBIT 20

# Document Filed Under Seal

# (App. 677-682)

# EXHIBIT 21

**Document Filed Under Seal**

**(App. 684)**

# EXHIBIT 22

# Document Filed Under Seal

# (App. 685-708)

# EXHIBIT 23

# Document Filed Under Seal

# (App. 710-711)

# EXHIBIT 24

# Document Filed Under Seal

# (App. 713)

# EXHIBIT 25

# Document Filed Under Seal

# (App. 715-738)

# EXHIBIT 26

**Document Filed Under Seal**

**(App. 740-778)**

# EXHIBIT 27

# Document Filed Under Seal

# (App. 780-826)

# EXHIBIT 28

# Document Filed Under Seal

# (App. 828-832)

# EXHIBIT 29

# Document Filed Under Seal

# (App. 834)

# EXHIBIT 30

# Document Filed Under Seal

# (App. 836-875)

# EXHIBIT 31

ON 4-15-2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

## IN THE CHANCERY COURT OF LAFAYETTE COUNTY, MISSISSIPPI

GUTHRIE T. ABBOTT, PATRICIA M. ABBOTT,
and LINDA MUNN                                                    **PLAINTIFFS**

vs.                                          Civil Action No. 2009- 196 (R)

JOHN MARK HOLLIDAY                                               **DEFENDANT**

*Filed in this office this 15 day of April 2009
SHERRY J. WALL
Chancery Clerk
By _____ Baker D.C.*

### COMPLAINT

COME NOW, Guthrie T. Abbott, Patricia M. Abbott, and Linda Munn, Plaintiffs, by and

through their attorney, and file for claims against John Mark Holliday, Defendant, and would

show unto the Court the following:

### Parties

1.      Guthrie T. Abbott and Patricia M. Abbott are adult resident citizens of Lafayette

County, Mississippi.  Linda Munn is an adult resident citizen of Kenner, Louisiana.

2.      John Mark Holliday is an adult resident citizen of Lee County, Mississippi, who

may be served with process at 1508 Columbine Drive, Tupelo, Mississippi 38801-8493.

### Jurisdiction and Venue

3.      This Court has jurisdiction over the parties and the subject matter of this suit.

Venue is proper in Lafayette County, Mississippi.

### Facts

4.      Defendant Holliday is a financial planner with his principal place of business in

Tupelo, Mississippi.  In the fall of 1999, Defendant Holliday contacted Guthrie and Patricia M.

Abbott about the possibility of their retaining him to handle their financial matters.  At the time,

Defendant Holliday was working with Executive Financial Planners.  Guthrie and Patricia M.

F:\docs\CHODGE\pld\21102.001 Complaint.wpd

EXHIBIT SM
61
Abbott 5-28-15
PENGAD 800-631-6989

ON 4/15/2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

Abbott did, in fact, retain Holliday and they executed the account opening documents with him
and Executive Financial Planners ("EFP").

5.      From the opening of the account in 1999 forward, Guthrie and Patricia M. Abbott
worked closely with Defendant Holliday in determining and implementing investment strategies.

6.      In August 2004, Guthrie Abbott notified Defendant Holliday that Linda Munn,
Patricia M. Abbott's sister, was ready to turn over some of her assets to Holliday for his
management. Shortly, thereafter, Linda Munn placed almost all of her investments with
Defendant Holliday.

7.      Throughout the dealings that the Abbotts and Linda Munn had with Defendant
Holliday, the investment objectives were consistently designated as "long term growth" and
"conservative."

8.      On May 15, 2006, Defendant Holliday sent a letter to Guthrie and Patricia M.
Abbott soliciting a change from EFP Wealth Management to Stanford Group Company. On
June 14, 2006, Guthrie and Patricia M. Abbott agreed to transfer all of their securities' accounts
to Stanford Group Company as introducing broker and Pershing, L.L.C. as clearing broker.

9.      On October 4, 2006, after Defendant Holliday had joined the Stanford Group,
Defendant Holliday met with Guthrie Abbott. Defendant Holliday told Guthrie Abbott that
Stanford Group was a very sound financial institution which offered more varied investment
opportunities than had been available through EFP. One of the products mentioned at this
meeting by Defendant Holliday was the Stanford Certificate of Deposit. Defendant Holliday
advised Guthrie Abbott that, although the Stanford Certificate of Deposit was not FDIC insured,
there was no risk of any sort of which he was aware in such an investment. Guthrie Abbott asked

ON 4-15-2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

Defendant Holliday how Stanford was able to offer more on its CDs than other lending institutions were offering at the time. Defendant Holliday advised Guthrie Abbott that Stanford had made some extremely favorable international investments and was in top financial shape. He also advised Guthrie Abbott that the CDs were only offered to premium clients with Stanford that had at least a minimum net worth of $1 million. Defendant Holliday advised Guthrie Abbott that he and his EFP partners had investigated Stanford and were extremely pleased with the financial stability of the company they were joining.

10.     Based upon Defendant Holliday's recommendation and his description of the safety of the Certificates of Deposit and the good return on those investments, on December 1, 2006, Plaintiff Guthrie Abbott purchased one $100,000 Stanford Certificate of Deposit and on May 3, 2007, Plaintiff Guthrie Abbott purchased another $100,000 Stanford Certificate of Deposit. In the meetings which preceded the decisions to purchase the Stanford Certificates of Deposit, Defendant Holliday gave complete assurances that he knew absolutely no risk whatsoever associated with the Certificates of Deposit and recommended the investment without any reservations. After further meetings with assurances of safety of the Certificates of Deposit, Guthrie and Patricia M. Abbott, on June 4, 2007, purchased one $50,000 Stanford Certificate of Deposit in their joint account with Stanford. That account is not tax sheltered.

11.     During 2007, the four Munn daughters (Patricia M. Abbott and Linda Munn are two of the Munn daughters) began to investigate selling the family farm outside of Leland, Mississippi. A sale was finally formalized with each daughter to receive in excess of $300,000 in proceeds from the sale. Defendant Holliday was advised long before the sale that those funds would become available and asked for financial advice concerning investing the funds.

App. 879

ON 4/15/2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

12.     Linda Munn came to the Abbott home for the Christmas holidays of 2007, and a meeting was arranged with the Guthrie Abbott, Patricia M. Abbott, Linda Munn, and Defendant Holliday at the Abbott home on December 31, 2007. Defendant Holliday was advised that none of the Plaintiffs wanted money to go into the stock market because of the incredible ups and downs of the market in recent years. Defendant Holiday was told that Plaintiffs did not want to look up and see that half or more of the proceeds from the Munn family farm had disappeared in the stock market. Defendant Holliday recommended the Stanford Certificates of Deposit, and Guthrie Abbott then told Defendant Holliday that this was a very serious as the Munn girls did not want **ANY** risk of "losing the farm." They did not want any risk at all. Plaintiffs knew that the Certificates of Deposit were not FDIC insured, so Guthrie Abbott really pressed Defendant Holliday about the safety of the investment and advised Defendant Holliday that Linda Munn was planning to retire and this fund is a major part of her retirement assets. Defendant Holliday gave complete assurances that he absolutely knew of no risk whatsoever associated with the Certificates of Deposit and recommended the investment without any reservations.

13.     On the advice and recommendation of Defendant Holliday, Guthrie Abbott, Patricia M. Abbott, and Linda Munn invested the majority of the proceeds from the sale of the Munn family farm into Stanford Certificates of Deposit. Linda Munn purchased a $250,000 Certificate of Deposit and the Abbotts purchased a similar Certificate of Deposit in the amount of $200,000 on January 17, 2008. Linda Munn was advised by Defendant Holliday that the minimum denomination of the Stanford Certificate of Deposit she could purchase was the $250,000 CD.

14.     On September 22, 2008, Guthrie Abbott sent an e-mail to Defendant Holliday

ON 4-15-2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

stating the following:

> Linda Munn called over the weekend to inquire about the safety of our Stanford CDs. She was urged on by someone asking if they were FDIC insured, which of course they are not. Can you give her and us, since we are heavily into CDs, a quick run down on your feelings about the level of risk in view of the current economic climate? Am I correct that the investments underlying the CDs are greatly in the global markets since the statements come from Puerto Rico? Sorry to join your group of nervous clients. Hang in there, Guff.

Following this e-mail, Defendant Holliday contacted the Abbotts and contacted Linda Munn and again assured them that there was absolutely no risk of any sort of which he was aware concerning the CDs, that Stanford Company had wonderful investments worldwide, and that Stanford was on a totally sound financial basis.

15.     On October 16, 2008, the Stanford Company held a charity event for St. Jude Hospital in Oxford, Mississippi. Guthrie Abbott and Patricia M. Abbott attended this function and had an extended conversation with Defendant Holliday about their investments. Guthrie Abbott once again pressed Defendant Holliday concerning the safety of the Certificates of Deposit and was once again assured, with no hesitation or qualification, that the Certificates of Deposit were absolutely safe. Defendant Holliday then advised the Abbotts that he had put some more of his own money into those Certificates of Deposit.

16.     On November 14, 2008, Defendant Holliday met with Guthrie and Patricia M. Abbott at the Abbott home in Oxford, Mississippi. At this meeting, after repeated assurances from Defendant Holliday, the Abbotts decided to transfer approximately $50,000 from a tax-sheltered account with Hartford Leaders Fund into Stanford's Certificates of Deposit. The $50,000 Certificate of Deposit with Stanford was purchased in early 2009.

17.     On April 22, 2008, two former Stanford financial advisors sued Stanford Group

ON 4-15-2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

Co. in the District Court of Harris County, Texas, and alleged, *inter alia*, that Stanford conducted illegal practices regarding the Certificates of Deposit and that Stanford had destroyed documents with knowledge of an ongoing SEC inquiry into the SIB Certificates of Deposit and Certificates of Deposit sales practices. The details of the Texas suit were widely reported in financial publications including a July 3, 2008 Bloomberg.com article and a July 5, 2008 Telegraph.Co.uk article.

18.     Defendant Holliday knew or should have known of the suit and allegations of illegal Certificate of Deposit activities. No knowledge or information of the suit or publicity was given to the Plaintiffs.

19.     On February 16, 2009, Guthrie and Patricia M. Abbott learned of a news report about problems with Stanford International Bank. Guthrie Abbott then e-mailed Defendant Holliday asking that Defendant Holliday contact the Abbotts. Defendant Holliday called that day and advised that he did not know exactly what was going on but that Stanford had said "all is well" and that this was a problem with some rogue employees in Houston, Texas. Defendant Holliday advised that Stanford reserves were double the amount that are required to be kept. On that same day, Defendant Holliday called Linda Munn and left a message with the same essential information that he had reported to Guthrie Abbott.

20.     On February 17, 2009, Guthrie Abbott called Defendant Holliday and Defendant Holliday said that the developments were his "worst nightmare." Defendant Holliday, for the first time on February 17, 2009, called and said: "I got a 1% commission on the CDs, but I hope you don't think I would have sold you something that was not appropriate." Defendant Holliday stated to Guthrie Abbott during this February 17, 2009 call: "I was negligent."

ON 4/15/2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

21.    The dates of purchase and amounts of the Stanford Certificates of Deposit

purchased by the Abbotts are as follows:

| Dates of Purchase | Amount Purchased |
|---|---|
| 1/1/09 | $     50,000.00 |
| 1/17/08 | $   200,000.00 |
| 6/4/07 | $     50,000.00 |
| 5/3/07 | $   100,000.00 |
| 12/1/06 | $   100,000.00 |

Linda Munn purchased a Stanford Certificate of Deposit in the amount of $250,000 on

February 17, 2008.

22.    In February 2009, the United States Securities and Exchange Commission filed

suit in Texas accusing R. Allen Stanford, James N. Davis and Laura Pendergerst-Holt of

engineering through Stanford Financial Group a massive fraud.  A federal judge in Texas placed

the Stanford Companies in receivership in that case.  The case charged that Stanford International

Bank Ltd. ("SIB") issued CDs sold by a brokerage unit, Stanford Group Co.  The Stanford Group

claimed that the CD yields which were higher than those of CDs issued by U.S. banks were

possible because of SIB's offshore tax advantages.

23.    Stanford financial advisers, including Defendant Holliday, had financial

incentives to sell the CDs, including a commission of 1%, plus a chance of an additional 1% if

they sold at least $2 million in a quarter.

24.    In 2007, the Financial Industry Regulatory Authority ("FINRA") fined Stanford

Group for, among other things, using sales material which contained "misleading, unfair and

ON 4/15/2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

unbalanced information" about the CDs. Defendant Holliday, knew or should have known of these charges by FINRA. This was material information and should have been disclosed by Defendant Holliday to the Abbotts and Linda Munn. The failure to disclose this information caused the Abbotts and Linda Munn to refrain from withdrawing money placed in the CDs and allowed Defendant Holliday to make additional CD sales to the Plaintiffs.

     25.    Beginning in 2006, Stanford used Pershing L.L.C., a unit of Bank of New York Mellon, as a clearing broker. Clearing brokers play a crucial role in handling the confirmation, settlement and delivery of trades. Pershing got concerned about Stanford's investments and its performance and began an investigation. By mid-December 2008, Pershing stopped processing any wire transfers for Stanford because Pershing could not get satisfactory answers about the financial condition and practices of Stanford. Defendant Holliday knew or should have known that Pershing stopped processing wire transfers for Stanford. This was material information and should have been disclosed by Defendant Holliday to the Plaintiffs. The failure to disclose this material information to the Plaintiffs caused damages to the Plaintiffs.

     26.    Defendant Holliday even sold the Abbotts an additional Stanford Certificate of Deposit in January 2009, after the Pershing refusal to handle the Stanford Certificates of Deposit.

     27.    According to the allegations of the SEC in the suit filed in Dallas, Texas in February 2009, the assurances about the SIB CDs given to Plaintiffs and other purchasers were false. Contrary to such assurances, the SIB's investment portfolio was not invested in liquid financial instruments, the portfolio was not monitored by a team of analysts and the Antiguan regulator responsible for oversight of the bank's portfolio, the Financial Regulatory Commission, did not audit SIB's portfolio or verify assets SIB claimed on its financial statements.

ON 4/15/2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

28.    Defendant Holliday advised Plaintiffs that the Stanford assets were managed by a

team of financial analysts and pointed out several of such analysts to Guthrie Abbott at the St.

Jude golf tournament. However, Plaintiffs were never advised that the so-called "analysts" were

given no knowledge of about 85% of Stanford's alleged assets. The SEC complaint states:

> 35. SIB purportedly manages the investment portfolio from Memphis and Tupelo.
> SIB's investment portfolio, at least internally, is segregated into three tiers: (a) cash
> and cash equivalents ("Tier 1"), (b) investments with "outside portfolio managers
> (25+)" that are monitored by the Analysts ("Tier 2"), and (c) unknown assets under
> the apparent control of Stanford and Davis ("Tier 3"). As of December 2008, Tier
> 1 represented approximately 9% ($800 million) of the Bank's portfolio. Tier 2, prior
> to the Bank's decision to liquidate $250 million of investments in late 2008
> represented 81% of the Bank's investment portfolio. This division into tiers is not
> generally disclosed to actual or potential investors.

SEC complaint against Stanford International Bank (¶ 35). Defendant Holliday never disclosed

to Plaintiffs any information regarding the Tiers that were not made known to the Analysts or

advisors or even to the Bank's Senior Investment Officer. Instead, Defendant Holliday

continually advised that Stanford had sound investments and assets in America and that

Stanford's investments abroad had been so favorable and had such good tax benefits that

Stanford was an exceptionally well-funded company. Had such material information regarding

the true lack of knowledge about Stanford's finances been made known to Plaintiffs, Plaintiffs

would have avoided the risk inherent in purchasing the Certificates of Deposit and avoided the

damage that has resulted from such purchases.

COUNT I
MISSISSIPPI CODE ANN. § 75-71-717(a)(2) and § 75-71-719

29.    The allegations of the foregoing paragraphs are incorporated hereby by reference.

30.    Defendant Holliday sold Certificates of Deposit from Stanford Company to the

ON 4/15/2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

Plaintiffs in violation of Miss. Code Ann. §75-71-717(a)(2). Defendant Holliday made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made not misleading. Defendant Holliday knew or should have known of the untruths and omissions and, pursuant to the statute, Defendant Holliday must sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.. The Plaintiffs hereby tender the CDs to Defendant Holliday as required by § 75-71-717(a)(2). Defendant Holliday is also liable under the provisions of <u>Miss. Code Ann.</u> § 75-71-719 because he was an agent who materially aided in the sale of these securities to the Plaintiffs.

COUNT II

INTENTIONAL MISREPRESENTATION AND OMISSION

31.     The allegations of the foregoing paragraphs are incorporated herein by reference.

32.     Defendant Holliday, through his position as a registered representative of Stanford Company, had access to material information about Stanford and the securities sold by and promoted by Stanford.

33.     Defendant Holliday misrepresented and/or omitted material facts in connection with the purchases of securities made by Plaintiffs, including, but not limited to:

   a.     that the investment portfolio of Stanford International Bank was invested in liquid financial instruments;

   b.     that the portfolio was monitored by a "team of analysts";

   c.     that the Antiguan regulator responsible for oversight of SIB's portfolio was audited by SIB and that the regulator verified its assets and financial statements;

ON 4-15-2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

d.     that Pershing L.L.C. on December 12, 2009 had terminated its clearing broker services because it could not confirm or verify Stanford's claims about the CDs;

e.     That Defendant Holliday was receiving a 1% commission on the sale of the Certificates of Deposit with the opportunity to receive an additional 1% commission based on his quantity of Certificate of Deposit sales.

f.     That in 2007 Stanford was fined by FINRA for publishing misleading information about the Certificates of Deposit.

g.     That the SEC was investigating Stanford's Certificate of Deposit sales and practices and that such investigation was the subject of financial publications.

h.     That former Stanford employees were suing Stanford for illegal Certificate of Deposit sales practices in a suit widely publicized in financial publications.

34.     The false and misleading representations and omissions by Defendant Holliday were made for the purpose of inducing the Plaintiffs to purchase securities from Stanford.

35.     The Plaintiffs were ignorant of the falsity of the misrepresentations and omissions by Defendant Holliday and, instead, believed them to be true. Plaintiffs relied upon the representations from Defendant Holliday.

COUNT III<br>NEGLIGENT MISREPRESENTATION AND/OR OMISSION

36.     The allegations of the foregoing paragraphs are incorporated herein by reference.

37.     Defendant Holliday, through his position as a registered representative of Stanford Company, had access to material information about Stanford and the securities sold and promoted by Stanford.

38.     Defendant Holliday failed to exercise reasonable care and diligence to refrain

App. 887

CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 36
CLERK SHERRY J WALL

from making false and misleading statements and omissions concerning Stanford Company.

39.     The Plaintiffs relied upon the misrepresentations and omissions by Defendant Holliday in purchasing the Stanford Certificates of Deposit. The Plaintiffs were justified in their reliance. As a result of the Defendant's negligence in making false and misleading statements and omissions regarding Stanford, the Plaintiffs suffered significant damages.

COUNT IV
BREACH OF FIDUCIARY DUTY

40.     The allegations of the foregoing paragraphs are incorporated herein by reference.

41.     The Plaintiffs were in a position of trust and confidence with Defendant Holliday. Defendant Holliday had access to information about Stanford which put him in a superior position related to that of the Plaintiffs.

42.     The facts justify a conclusion that Defendant Holliday had a fiduciary duty to the Plaintiffs. As a result of this duty, he was under an affirmative obligation to disclose all material facts known to him or which should have been known to him about the investments which Plaintiffs were making with Stanford. Defendant Holliday did not make such disclosures. The Plaintiffs relied upon Defendant Holliday in purchasing the Stanford Certificates of Deposit. The Stanford Certificates of Deposit now appear to be at or near no value, causing the Plaintiffs to suffer substantial damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Guthrie T. Abbott, Patricia M. Abbott, and Linda Munn pray that they recover from Defendant John Mark Holliday the amounts paid for the Stanford Certificates of Deposit, together with interest at 8% per annum from the date of payment, costs and reasonable attorney's fees. Further, Plaintiffs pray this Court award

ON 4-13-2009 - 8:50 AM
CASE NB CV2009-000196 - EHR
CHANCERY COURT - CID = 56
CLERK SHERRY J WALL

them any other damages to which they may be entitled, at law or in equity.

This the 13th day of April, 2009

Respectfully submitted,

GUTHRIE T. ABBOTT, PATRICIA M. ABBOTT,
AND LINDA MUNN, PLAINTIFFS

By:  _Cliff Hodge_

E. Clifton Hodge, Jr. (MS Bar No. 2490)
MOCKBEE HALL DRAKE & HODGE, PA
Capital Towers, Suite 1820
125 S. Congress Street
Jackson, MS 39201
Telephone:     601-353-0035
Facsimile:     601-353-0045
E-mail:        chodge@mhdlaw.com
ONE OF THEIR ATTORNEYS

OF COUNSEL

MOCKBEE HALL DRAKE & HODGE, PA
Capital Towers, Suite 1820
125 S. Congress Street
Jackson, MS 39201
Telephone:     601-353-0035
Facsimile:     601-353-0045
ATTORNEYS FOR PLAINTIFFS

# EXHIBIT 32

**Document Filed Under Seal**

**(App. 891-893)**

# EXHIBIT 33

# Document Filed Under Seal

# (App. 895-901)

# EXHIBIT 34

# Document Filed Under Seal

# (App. 903-907)

# EXHIBIT 35



# EXHIBIT A

**Report of Accounting, Economics and Appraisal Group, LLC**

By: J. Lester Alexander, III

In Re: American Bank of St. Paul
Claimant
v.
Carolina First Bank d/b/a Mercantile Bank
Respondent

As of October 15, 2010

0:09-cv-02240-ADM-JJK

1.      This narrative and attached appendices summarize my findings and opinions formed to date in the American Bank of St. Paul ("American Bank") v. Carolina First Bank d/b/a Mercantile Bank ("Mercantile") matter. All attached schedules and appendices are expressly made a part of my report. Discovery is ongoing and my review and analysis of the facts and circumstances of the case continues. I reserve the right to supplement and amend my opinions to take into account information learned up to and throughout trial. I reserve the right to rebut or address any expert opinions issued in this matter. Further, I intend to develop and make available prior to trial additional charts and aids designed to demonstrate the financial and economic concepts addressed in my report. I was assisted by members of my firm working under my direction in performing this analysis. My firm's billing rates for this engagement range from $85 to $300 per hour.

2.      I am the Managing Principal of Accounting, Economics and Appraisal Group, LLC ("AEA Group"). I am a Certified Public Accountant and a Certified Fraud Examiner. Furthermore, I hold the Certified in Financial Forensics designation issued by the American Institute of Certified Public Accountants. I have over thirty-one years of professional experience performing audit, tax and consulting services. I am experienced in and have provided business valuation, acquisition advisory, investment advisory, risk management advisory, financial forensic investigatory, auditing, tax advisory and other accounting and consulting services. I am a former partner of PricewaterhouseCoopers LLP and its legacy firm, Coopers & Lybrand, LLP, where I served as southeastern practice leader of one of its consulting practices.

Page 1 of 14

3.    I have analyzed and determined the economic viability of businesses in connection with acquisitions, disposals, financial feasibility determinations and disputes. I have served as a lead advisor for various financial institutions in connection with underwriting and credit/investment evaluation activities. I have advised governing bodies, committees and senior management on their role in governing and oversight. I have extensive experience performing pre-acquisition due diligence, financial analysis, fraud investigations, business valuation, damages measurement and enterprise risk management. As such, courts have admitted me as an expert witness and I have rendered opinions concerning solvency, reasonably equivalent value, customary course of conduct, badges of fraud, appropriate damage methods and other subject matters. I have served as financial and/or accounting advisor to the debtor, secured creditors and trustee in Chapter 7 and Chapter 11 bankruptcies. I have served as trustee of both Chapter 11 and Chapter 7 bankruptcy estates, where I have performed the duties of both a Chapter 11 and Chapter 7 bankruptcy trustee. I hold an accounting degree from the University of Alabama. See the appendices for additional information concerning my qualifications and experience.

## SCOPE AND METHODOLOGY

4.    Counsel for Mercantile retained me and I have analyzed the financial activities of Louis J. Pearlman, Louis J. Pearlman Enterprises, Inc.; Louis J. Pearlman Enterprises, LLC; Trans Continental Airlines, Inc. ("TCA"); Trans Continental Aviation, Inc.; Trans Continental Management, Inc.; TC Leasing, LLC; Trans Continental Records, Inc.; Trans Continental Studios, Inc. and other entities[1] (all referred to as "Pearlman"), including his business operations, banking activities and fraudulent activities from approximately 1999 through 2007. I have analyzed the loan underwriting, monitoring and other enterprise risk management activities of Mercantile and American Bank performed in connection with loans made to Pearlman. Based on my skills, knowledge, education, experience, training and my analysis, I have prepared this report of my findings and opinions regarding the fraudulent activities of Pearlman and the risk-management activities of Mercantile and American Bank.

5.    I, working with others under my direction, utilized evidential matter[2] in my

---

[1] Other entities include Trans Continental Publishing, Inc., Trans Continental Television Productions, Inc. and Trans Continental Talent, Inc.
[2] See e.g., AU § 326.15 through AU § 326.24, Evidential Matter, AICPA Professional Standards, 1, (2004)

Page 2 of 14

analysis. We utilized the financial and business records of Pearlman. For example, we utilized bank records for approximately 64 bank accounts held in the names of 13 account holders spanning timeframes from January 2000 to December 2007. We utilized approximately 11 sets of general ledger accounting systems spanning timeframes from 1999 to 2007 and other records produced by counsel for Soneet Kapila, Chapter 11 trustee ("Kapila"). We have utilized the deposition testimony and exhibits of Richard Anderson, Jr., Kamla Bacchus, Cheryl Bramer, Barbara Bytell, David Carlson, Andrew Cheney, Joseph Rusty Carolan, Galen Clements, Ming Dai, David Decamillis, Kristin Finger, Lloyd Gardner, III, Richard Guinan, Stuart Harrington, Andrea Hitzemann-Johnson, Daniel Langelier, William Legg, Bruce May, Michael McClanahan, Gerard McHale, James McRae, Edgar Montanez, Daniel Motoyoshi, Craig Mueller, Amanda Newland, Rachel Reynolds Neyhart, William Nichols, Louis J. Pearlman, Michael Phillips, Walter Ramsey, Daniel Scanlan, Richard Scott, John Seidel, Mark Sexton, Mike Sperry, Nicole Stratos, Scott Swenson, William Timmons, III, Fred Valpacchio, Justin Voll, Michael Wier, Ronald Whitcomb, Christopher Willis and others. We utilized the Association of Certified Fraud Examiners' ("ACFE") Fraud Examiners Manual Volume I and II, the American Institute of Certified Public Accountants ("AICPA") Professional Standards Volumes I and II, the Litigation Services Handbook 4th Edition, Investment Valuation: Tools and Techniques for Determining the Value of any Asset 2nd Edition, the ACFE's 1996, 2002, 2008 and 2010 Reports to the Nation on Occupational Fraud and Abuse, Fraud Casebook: Lessons from the Bad Side of Business, Encyclopedia of Fraud: 2005 Edition, Occupational Fraud and Abuse: How to Prevent and Detect Asset Misappropriation, Corruption and Fraudulent Statements, Financial Statement Fraud: Prevention and Detection, Corporate Fraud Handbook: Prevention and Detection and The Hit Charade: Lou Pearlman, Boy Bands, and the Biggest Ponzi Scheme in U.S. History. We utilized publicly available information regarding Bernie Madoff, Allen Stanford, WorldCom, Enron, Healthsouth, Just-For-Feet, Greater Ministries International and Cohen & Siegel, including Securities and Exchange Commission ("SEC") filings, such as Form 10-K, Form 10-Q and Schedule 14-A, news articles, and state departmental filings and databases. We utilized the AICPA Audit and Accounting Guide: Depository and Lending Institutions, the Committee of Sponsoring Organizations of the Treadway Commission's ("COSO") 1992 Internal Control

American Institute of Certified Public Accountants, New York, NY.
Page 3 of 14

Integrated Framework, COSO's 2004 Enterprise Risk Management – Integrated Framework and authority published by the Federal Reserve System Board of Governors, Office of the Comptroller of the Currency and the Federal Deposit Insurance Corporation ("FDIC"). We utilized loan file documents including loan documents, security agreements, correspondence, loan presentation reports, offering memorandums, loan closing documents, amendments and loan histories for Mercantile's loans numbered 5600016514, 5610002520, 5610016288, 5610025490, 5610042289, 5600009593 and 5610079328 and American Bank's Multiple Advance Term Loan dated March 27, 2006. We have also reviewed documents produced by third parties including the Receiver, Gerard McHale and others. The following are my findings and opinions developed to date based on my skills, experience, education, training and knowledge resulting from the analysis described above.

## FINDINGS AND OPINIONS

### Pearlman's Fraudulent Activities

6.      Pearlman's fraudulent activities involved collusion, fabrication, misuse of trust and elaborate play-acting. Pearlman's schemes included investment fraud, bank fraud and bankruptcy fraud.[3] His schemes affected more than 1,800 victims whose losses exceeded $300 million.[4] The sophistication of his schemes allowed him to hide the activities from others for many years because customary enterprise risk management activities do not generally detect sophisticated frauds. Internal controls, internal audits, external audits, board member oversight, audit committee oversight, banker underwriting, bank monitoring, state regulation and federal regulation do not generally detect sophisticated frauds like Pearlman's fraud schemes.

7.      Studies conducted by the ACFE from 1996 through 2010 found that traditional risk management methods generally do not detect larger frauds.[5] These studies found that the larger the fraud, the less likely they are to be detected. Internal controls, internal audit and external audit were all inadequate at addressing such frauds.

7.1.      Internal controls do not generally detect fraud. Internal controls detect frauds greater than $1 million only 17% of the time. WorldCom, Enron

---

[3] United States of America v. Louis J. Pearlman Plea Agreement, filed March 4, 2008.
[4] United States of America v. Louis J. Pearlman Restitution Order, dated August 5, 2008.
[5] See e.g., Association of Certified Fraud Examiners 1996, 2002, 2008 and 2010 Reports to the Nation on Occupational Fraud and Abuse

Page 4 of 14

Healthsouth and Just-For-Feet all had internal controls which failed to uncover their frauds.

7.2. Internal audit does not generally detect such schemes. Enron, Healthsouth and Just-For-Feet all had internal audit departments, which failed to uncover fraud. Internal audit detects frauds greater than $1 million only 19% of the time.

7.3. External audit does not generally detect fraud. External audit detects frauds greater than $1 million only 16% of the time. WorldCom, Enron, Healthsouth and Just-For-Feet all were subject to external audits which failed to uncover their fraud.

8. The studies found that over the years, the vast majority of sophisticated frauds, ranging from 65% to 69% of the time, are detected because of a tip (or confession) or by accident, as were the Pearlman frauds. A review of historical frauds confirms the studies' results. For example, recent frauds perpetrated by Bernard Madoff, Greater Ministries International management, HealthSouth management, World Com management and others were detected by tip, confession or accident and not by customary risk management activities. Pearlman was detected after 20 years, by accident, when a contract employee decided to contact the auditor and heard the phone ring on Pearlman's desk.

9. Additionally, the reports state that 52% of frauds are perpetrated by persons with more than 6 years of service and result in the largest losses. For example, Harold Rutenberg, the former CEO of Just-For-Feet founded the company and served as its President and Chairman from 1977 until 1999, over 20 years, before it came to light that Just-For-Feet's financial statements were false and misleading.[6] Similarly, Pearlman operated for more than 20 years without detection and many of his business relationships span 10 years or more.

10. Furthermore, according to the studies, highly compensated persons historically have perpetrated frauds with the highest costs to their victims. These frauds had a median cost of $50 million, which was 50 times that of lower income brackets. The 2002 fraud at WorldCom bears this out. Prior to discovery of the fraud in 2002, President and CEO, Bernie Ebbers was

---

[6] See e.g., Just-For-Feet, SEC Schedule 14A dated April 29, 1999.

Page 5 of 14

the highest paid employee earning more than $11 million.[7] Pearlman too was thought by the business community to be a highly compensated person, claiming to have earned more than $16 million in 2004.[8]

11.  According to the reports, perpetrators in an executive position caused losses 400% greater than all other perpetrators and took longer to detect. For example, Charles Ponzi appeared to the public to be a highly successful investor.[9] Convicted masterminds of the 2002 collapse of Enron, Ken Lay, Jeffrey Skilling and Andrew Fastow held, at differing times, the positions of Chairman of the Board, Chief Executive Officer, Chief Operating Officer, Chief Financial Officer and Executive Vice President.[10] On February 17, 2009, the SEC charged Allen Stanford, head of the Stanford group of companies, for orchestrating a fraudulent multi-billion dollar scheme.[11] Pearlman too was thought by the business community to be a high ranking and successful businessman for more than 10 years.

12.  The reports indicate and recent frauds confirm, that there was a direct correlation between the position a perpetrator holds and the magnitude of the loss. This is because older, highly educated individuals tend to occupy higher-level positions, which have more authority over and access to company resources. For example, Andrew Fastow and Jeffrey Skilling of Enron both held a Master of Business Administration ("MBA") – Skilling obtained his from Harvard Business School.[12] Similarly, Pearlman obtained a bachelor's degree as well as an MBA and a Doctorate.[13]

13.  Pearlman utilized a variety of techniques to deceive many individuals and organizations for many years.[3] For example:

13.1.  Pearlman colluded with others when he perpetrated his

---

[7] See e.g., WorldCom 10-K for the period ending December 31, 2000.
[8] See e.g., Fax and letter from Stu Harrington to Walt Ramsey, both dated September 2005 in which Pearlman causes to be provided fraudulent personal financial statements, federal tax returns, TCA officer lists and global cash flow statements. (MERCANTILE 0006907 – 0006912 and Exhibit 65 to Walter Ramsey's July 28, 2010 deposition)
[9] See e.g., Time article, *Business & Finance: Ponzi Payment*. January 5, 1931.
[10] See e.g., Enron 10-K for the period ending December 31, 2000.
[11] SEC Press Release: SEC Charges R. Allen Stanford, Stanford International Bank for Multi-Billion Dollar Investment Scheme
[12] See e.g., Time article, *How Fastow Helped Enron Fall.* February 10, 2002.
[13] February 24, 2009 deposition testimony of Louis J. Pearlman, pg. 11: "Q. All right. Give me a little bit about your educational background. A. Well, I graduated Queens College in New York. I have a Bachelor of Arts in accounting. It then went onto Century University, Los Angeles, where I got a joint program degree, my Master's in Business Administration and my Doctorate of Philosophy in Business."

schemes.[14,15]  For example, he paid bribes and kickbacks to intermediaries;[16] he colluded to convince investors of an imminent public offering, give the impression of conducting international business dealings, and construct an elaborate false accounting firm, complete with principals, employees and offices.[17,18,19]

    13.2.  Pearlman falsified documents.  For instance, he created falsified tax returns, internal financial statements, audited financial statements and an initial public offering prospectus.[8,17]  He fabricated travel documents, federal identification and letters of accolade from international companies.[17,19]

    13.3.  Pearlman controlled and prevented access to information by operating as a single enterprise from a single location, using common

[14] See e.g., AICPA Professional Standards AU §316.10 Consideration of Fraud in a Financial Statement Audit, AICPA Professional Standards, 1, (2004), American Institute of Certified Public Accountants, New York, NY., "Fraud also may be concealed through collusion among management, employees, or third parties. Collusion may cause the auditor who has properly performed the audit to conclude that evidence provided is persuasive when it is, in fact, false."

[15] See e.g., COSO Internal Control – Integrated Framework. (1992). "The collusive activities of two or more individuals can result in control failures. Individuals acting collectively to perpetrate and conceal an action from detection often can alter financial data or other management information in a manner that cannot be identified by the control system."

[16] See e.g., the February 24, 2009 deposition testimony of Louis J. Pearlman, pgs. 83-85. "Q. Did you pay any bribes to anybody in connection with the loans? A. No.  Q. Did you pay any kickbacks to anybody in connection with the loans? A. Well, when you say bribes and kickbacks.  Q. A bribe would be a payment of money to persuade somebody to do something that's unlawful. A. That is something that you'd have to ask the FBI.  There were some other people in between me and NACM.  Q. Okay.  Would these have been any of the lawyers that were involved in the loans? A. No, it wasn't lawyers.  I've been asked not to mention people's names for the same reasons as I stated before.

[17] See e.g., October 16, 2007 deposition testimony of David DeCamillis, pgs. 29 – 32: "Q. And what IPO are you referring to? A. Lou had told -- the reason we invested and continued to invest and stay in Trans Continental was Lou told us that he was taking Trans Continental Holdings, which encompassed the airline, the restaurants, Church Street, the entertainment company, the recording studio, et cetera, et cetera -- he was taking the company public through Smith Barney in February of 2007.  [...] He produced a red herring showing a public offering with Smith Barney on the cover.  He also had an annual shareholders meeting for our group..."

[18] See e.g., the September 19, 2006 memorandum from Maxie Washington, Edgar Montanez and Joe Terry of The Private Bank of Bank of America, detailing their trip to Germany for the primary purpose of meeting with Cohen & Siegel to confirm their legitimacy and to clarify its business activities in the U.S. (Exhibit 20 of Christopher Willis' December 9, 2008 deposition).

[19] See e.g., the August 17, 2010 deposition testimony of Craig Mueller of NACM, pgs. 88 – 95 and 100 – 102. "A. This is at Cohen & Siegel's office.  I don't know -- I'm not sure who took them, if I took them or if Stu Harrington took them, but this was the -- these were the pictures of the office that they brought us through.  Q. Let's go through each picture starting with the first one.  And what is that a picture of? A. It looks like some type of a letter form Dayer, and you tell me what it says because it's in German."  [...] Q. "When you left Germany and came back to the U.S., were you convinced that Cohen & Siegel was a legitimate accounting firm in Dusseldorf, Germany? A. Had no reason to believe that they weren't."

management, serving as the sole director and by other means.[20]  For instance, Pearlman personally attended to all inquiries regarding his businesses.  He represented that certain individuals served as officers of TCA or owned percentages of his companies, when in fact they had no relationship with Pearlman or his companies.[21]  Even an FDIC inquiry on October 26, 2001 and a March 30, 1999 letter from Lloyds of London failed to stop Pearlman's schemes.[3]

13.4.  Pearlman created the perception that he and his businesses were desirable bank customers.  He obtained more than $140 million in financing from over 50 financial institutions over the course of 10 years, including Bank of America and HSBC.[4,22,23]  For example, he created the perception of success using a variety of methods, including the following:  making numerous cash transfers through a maze of more than 64 bank accounts in order to increase his average bank balances.[24]  The result made his businesses appear to be large and desirable bank customers.  He did so by commingling and using the commingled cash without regard to traditional entity-level formalities.  Pearlman, operating in this fashion, caused Louis J. Pearlman Enterprises, Inc. ("LJPE") to receive and pay out more than $130 million from 1999 through 2007.[25]

### *Risk-Management Activities*

14.  As discussed above, risk-management activities, including those performed by banks do not generally detect frauds like Pearlman's schemes.  None of the fraud schemes studied were uncovered by the risk management activities performed by a bank.  This is because

---

[20] See e.g., February 24, 2009 deposition testimony of Louis J. Pearlman, pg. 58:  "Q. [...]so essentially beginning in 2001 you were the majority shareholder, sole director and sole officer of TCA? A. Yes.  [...]Q. Had you wanted to as the sole shareholder and director of the company you could have essentially done anything lawful that you wanted with the company; is that correct?  A. Yes."

[21] See e.g., the fax from Stu Harrington to Walt Ramsey, dated June 22, 2005 in which ownership interests of TCA are detailed.  (MERC AB001330 – 001334)

[22] See e.g., the February 24, 2009 deposition testimony of Louis J. Pearlman, pg. 87: Q: "You had had some local banking relationships in Florida and maybe with some Atlanta banks previously.  Why did you borrow money from banks in Minnesota and North Dakota as far as [sic] away as Williston, North Dakota? [A.] It was offered to me."

[23] The NACM Confidential Loan Offering Memorandum, dated May 5, 2005 states that "over the last 10 years, the principal's [sic] at NACM have placed more than 10 transactions totaling approximately $140 million on behalf of [Pearlman's] operating business entities." (ABSP-ALERO 12462 – 12483)

[24] See e.g., Appendix 1.

[25] See e.g., Pearlman's QuickBooks company file entitled, <LJP Enterprises-decoded>.

Page 8 of 14

customary bank underwriting and monitoring practices are not designed to detect activities as sophisticated as the schemes employed by Pearlman, Madoff, Ebbers, Lay, and the others discussed above.

15.     Customary bank underwriting and monitoring practices are intended to ensure credit is extended on a basis acceptable to the board of directors. The loan portfolio mix, regional financial needs and risk appetite for any particular bank dictates what constitutes acceptable risk and guides the underwriting and monitoring standards implemented. Loan policies and procedures grant authority to varying levels of bank officers to apply business judgment in extending credit and safe guarding bank assets.[26,27]

16.     Mercantile's underwriting and monitoring practices are customary and typical of a bank of their size and sophistication. Their underwriting policies include the risk philosophy of the bank, lending limits, borrower's repayment capacity, documentation requirements and the appropriate use of business judgment. Mercantile's monitoring policies include ongoing financial review, compliance with agreements, collateral maintenance, problem loan identification and other judgments concerning the borrower.[28]

17.     Mercantile followed its policies and procedures in all material respects in its relationship with Pearlman. Mercantile exercised its business judgment when it performed credit initiation activities, which included utilizing Pearlman's financial statements and tax returns without verification. They performed credit investigation including financial analysis, obtained credit reports and other activities. They performed loan approval activities including committee approval and collateral ratio determination. Loans were documented using customary documentation, disbursed in a customary manner and monitored on a periodic basis.[29,30,31]

---

[26] See e.g., AICPA Audit & Accounting Guide: Depository and Lending Institutions – Banks and Savings Institutions, Credit Unions, Finance Companies, and Mortgage Companies, June 1, 2010, Paragraphs 8.10 and 8.11.

[27] See e.g., FDIC Risk Management Manual of Examination Policies (2005) Section 3.2.

[28] See e.g., Credit Policy & Commercial Lending Policy, Carolina First Bank, Revised December 1, 2004. (MERC.AB020220 – 020321)

[29] See e.g., Loan Officer's Comments from the Loan Presentation Report for Loan #5600016514, dated 7/26/01, which states, "Note that TCA could, in fact, fully retire all obligations for which it is contingently liable, including the subject of this request, in advance of their terms and within a single year of operations, and still have the cash flow ability to pay shareholder dividends of almost $20,000M. [...] Except for the $4,375M airplane acquisition note and $500M line of credit due Citrus Bank by Planet Airways, Inc., all debt guaranteed by Mr. Pearlman is also guaranteed by TCA, which has the ability to either pay off that debt in full or service it in connection with its original repayment terms. The amount guaranteed to us by Mr. Pearlman not guaranteed by TCA is covered by the borrower' [sic] cash flow 2.33X." (MERC.AB000117 – 000122)

[30] The December 17, 2008 deposition testimony of Andrew Chency, pg. 23, which states, "Any loan under 10

Page 9 of 14

18.     Mercantile made adequate disclosures in connection with American Bank's Multiple Advance Term Loan dated March 27, 2006.  Loan offering documents provided by North American Capital Markets ("NACM") stated that "information has been prepared by and obtained from the Borrower… and is not guaranteed as to accuracy or completeness by, and is not to be construed as a representation of, the Placement Agent.  No representation is made by the Placement Agent as to the accuracy or completeness of such information."[32]  The offering document further stated that, "Borrower and Placement Agent assume that potential lenders and their representatives will conduct an independent review of Borrower and its affairs."  Closing documents clearly stated that "advances under the Loan Agreement shall be used first to reduce the participation interest of Mercantile Bank until such interest is reduced to $0."  American Bank and Buyers agreed that each would perform its own due diligence, and place no reliance on the other.[33,34,35]  It is neither customary nor necessary for a bank to volunteer publicly available

million and over 5 million would require me to sign with a credit officer at the time, which was Mr. McRae, and so I had to participate in this since it's over 6 million. […] Our company policy required a relationship with the loan amount 5 million or above or whatever – there are three tiers: 5 million, Mr. McRae could handle without my involvement; 5 million and to 10 was – included me; above that was, you know, this larger committee of the company.  But it was the relationship, not just the specific loan."

[31] A March 30, 2006 Memorandum from the Loan Operation Department of the South Financial Group to Rachel Reynolds, of Mercantile, and signed by Cheryl Bramer, of American Bank, certifies that American Bank has received collateral from Mercantile of 347,925 shares of Trans Continental Airlines.

[32] NACM Confidential Loan Offering Memorandum dated November 29, 2005 (MERCANTILE 0006209 – 0006395)

[33] §10 of the Loan Participation and Servicing Agreement of the Multiple Advance Term Loan, 2006 and signed by American Bank Senior Vice President states that "Each of the Buyers hereby warrants, represents, acknowledges, agrees and certifies to Seller that:..

"...(c) it has received such financial and other information with respect to the Borrower and the loan transaction contemplated hereby as in its opinion is necessary or desirable to permit it to make an informed credit decision with respect to the purchase of its respective participating ownership interest…

"...(f) it is sufficiently knowledgeable and experienced in financial and business matters to be able to evaluate the risks and merits of the investment represented by the purchase of its respective participating ownership interest in the Note and the Loan and the risks involved therein and, without limiting the generality of the foregoing, it is relying upon its own due diligence, credit investigation and credit analysis, and not on any representations, warranties or statements of Seller, with respect to the Borrower."

§11 states that, "Seller makes no warranties, representations or statements with respect to the Borrower; the Borrower's financial condition; the project to be financed with the Loan; the feasibility, or the past , present, or future value of such project; the likelihood of payment of the Loan and the Note..." or the "truthfulness and accuracy of any of the warranties and/or representations of any person, other than Seller..." (MERC.AB001534 – 001543)

Exhibit A indicates 26 banks which participated in the Multiple Advance Term Loan.  (ABSP24008)

[34] Office of the Comptroller of the Currency Circular 181 states that "the purchase of loans and participations in loans may constitute an unsafe

or unsound banking practice in the absence of satisfactory documentation, credit analysis, and other controls over risk."

[35] See e.g., Board of Governors of the Federal Reserve System Bank Holding Company Supervision Manual

Page 10 of 14

information, particularly since the information provided by Pearlman conflicted with the NFC Global report.[36,37]

19.     Mercantile's discovery of apparent conflicts in Pearlman's representations did not rise to the level of actual knowledge of a fraudulent scheme, irretrievable insolvency, nor a badge of fraud.[38,39,40,41,42]  As noted above, the information provided by Pearlman conflicted with

---

§2010.2.3.1.3 which states, "Institutions purchasing participations and assignments in leveraged finance must make a thorough, independent evaluation of the transaction and the risks involved before committing any funds. They should apply the same standards of prudence, credit assessment and approval criteria, and "in-house" limits that would be employed if the purchasing organization were originating the loan. At a minimum, policies should include requirements for –

- Obtaining and independently analyzing full credit information both before the participation is purchased and on a timely basis thereafter;
- Obtaining from the lead lender copies of all executed and proposed loan documents, legal opinions, title insurance policies, UCC searches, and other relevant documents."

[36] See e.g., AICPA Audit & Accounting Guide: Depository and Lending Institutions. Chapter 1.03 states, "Although banks and savings institutions continue in their traditional role as financial intermediaries, the ways in which they carry out that role became increasingly complex in the most recent decade. Under continuing pressure to operate profitably, the industry adopted innovative approaches to carrying out the basic process of gathering and lending funds. The management of complex assets and liabilities, development of additional sources of income, reactions to technological advances, responses to changes in regulatory policy, and competition for deposits all added to the risks and complexities of the business of banking. These include the following:

- Techniques for managing assets and liabilities that allow institutions to manage financial risks and maximize income have evolved
- Income, traditionally derived from the excess of interest collected over interest paid, became dependent on fees and other income streams from specialized transactions and services
- Technological advances accommodated complex transactions, such as the sale of securities backed by cash flows from other financial assets
- Regulatory policy alternately fostered or restricted innovation, for example, as institutions looked for new transactions to accommodate changes in the amount of funds they generally must keep in reserve or to achieve the desired levels of capital in relation to their assets."

Chapter 1.07 states, "The innovation and complexity related to this industry creates a constantly changing body of business and economic risks."

[37] See e.g., NFC Global report, Executive Summary, Cohen & Siegel, CPA. (MERC.AB002065 – 002101)

[38] See e.g., Letter from Walter Ramsey to Pearlman, dated August 29, 2005 in which Mercantile notifies Pearlman that his $6 million loan, number 5610025490, had matured and is in default. Mercantile instructs Pearlman to arrange payment to satisfy the indebtedness.

[39] See e.g., Email from Andrew Cheney to Tom Frankland, dated December 7, 2005 detailing a list of questions for Cohen & Siegel. (MERCANTILE0020001)

[40] See e.g., the August 26, 2005 email from Richard Scott to Jim McRae regarding what is known or unknown, in relation to the Pearlman relationship, TCA and Cohen & Siegel (MERCANTILE 0021930 – 0021933).

[41] July 28, 2010 deposition testimony of Walter Ramsey's, pgs. 97-99. "Q. Did you ever speak to anyone who purportedly worked at Cohen & Siegel? A. Yes.... Q. Do you recall what the purpose was to have this telephone conference? A. It was to address Cohen & Siegel. Q. I think you testified that someone who purportedly worked at Cohen & Siegel appeared on this phone conference, correct? A. Correct. Q. Did they identify themselves by name? A. They did. Honestly, I don't remember if it was Cohen or Siegel, but it was one of them."

[42] See e.g., AICPA Professional Standards, 2 (2000) Pg. 17,661. "Members of the American Institute of Certified Public Accountants (AICPA) who are engaged in the practice of public accounting in the United States or its territories are required to be practicing as partners or employees of firms enrolled in an approved practice-monitoring program in order to retain their membership in the AICPA..."A firm enrolled in the AICPA peer review

Page 11 of 14

NFC Global's information.  Moreover, I have identified information that is in conflict with the NFC Global report.[43,44]  For example, Arthur J. Siegel and Ian H. Cohen were registered in the name of Cohen & Siegel, CPA's at 600 3rd Ave New York, New York according to a Business Certificate for Partners, stamped October 23, 1985.  According to NYSED.gov, Office of the Professions, Stanley Kaplan held a Certified Public Accountancy ("CPA"), license number 029842, issued March 22, 1972; Arthur Jay Siegel held a Certified Public Accountancy license, number 041817, issued November 28, 1980; Arthur J. Siegel, CPA, PC held a Certified Public Accountancy license, number 023073, issued April 16, 1990; Arthur Siegel held a Certified Public Accountancy license, number 022765 issued September 29, 1964; Ian H. Cohen, CPA, PC held a Certified Public Accountancy license, number 024445, issued June 20, 1991; Ian Harvey Cohen held a Certified Public Accountancy license, number 021776; and Cohen & Siegel held a Certified Public Accountancy license, number 006277.  According to NYS Department of State, Division of Corporations, Arthur J. Siegel, CPA, PC was organized on April 16, 1990.  All of the above-mentioned information is publicly available.

20.     More than 50 banks conducted business with Pearlman.[33,45]  All of the banks either accepted Pearlman's representations or chose not to resolve conflicts found in publicly available information.  As a result, Pearlman's fraud schemes were not discovered by any banks over the 20 years Pearlman operated.

## OTHER CONSIDERATIONS

21.     The information in this report is based on information learned through the date of this report.  Discovery in the captioned litigation is ongoing as is my review and analysis of the facts and circumstances of the case.  As I have previously noted, I reserve the right to supplement and amend my opinions to take into account information learned subsequent to the date of this report.

---

program or a member firm of the SEC Practice Section (SECPS) is deemed to be enrolled in an approved practice-monitoring program."
[43] See NYS Professions – Online Verifications and Cohen & Siegel Business Certificate for Partners.
[44] See e.g., Email from Peter Burrill of KPMG to Andrew Cheney in which Mr. Burrill relays information from his inquiry into Cohen & Siegel to Mr. Cheney.  (MERCANTILE0024182)
[45] See e.g., In re: Louis J. Pearlman, et al, Pending adversarial proceedings as of May 25, 2010 from http://www.pearlmantranscon.com/pleadings/Pending_Lawsuits_as_of_May_31_2010.pdf.

App. 921

22. I issued my report in accordance with the Standards for Consulting Services published by the American Institute of Certified Public Accountants. This report is to be used solely in connection with proceedings in the above-referenced matter and should not be used for any other purpose. Outside distribution of this report to others is not permitted without the written consent of AEA Group.

By: _J. Lester Alexander, III_

J. Lester Alexander, III, CPA

Page 13 of 14

App. 922

## INDEX OF APPENDICES

Appendix 1 – See separately attached Cash Database file

Appendix 2 – Resume

Appendix 3 – Testimony History

Appendix 4 – Information Considered

Page 14 of 14

App. 923

Appendix 2

## Resume of J. Lester Alexander, III

### Professional Experience

Mr. Alexander is the founder and Managing Principal of Accounting Economics and Appraisal Group, LLC. He is a former partner of PricewaterhouseCoopers LLP and former southeastern practice leader of one of its legacy firm's consulting practices. Mr. Alexander has practiced for approximately thirty-one years performing audit, tax and consulting services. In recent years Mr. Alexander has concentrated his practice in the areas of financial advisory services including risk management, forensic accounting, fraud investigation and valuation consulting services. Mr. Alexander holds a Bachelor of Science in Accounting from the University of Alabama and is a Certified Public Accountant and a Certified Fraud Examiner.

Mr. Alexander has provided services and, from time to time, expert testimony in various courts and in situations involving alternative dispute resolution. He has provided services in connection with contract disputes, security issues, insurance coverage issues, non-compete agreements, business combination agreements, lost profits, business valuation and various other matters. He has testified in connection with class action certification hearings and class action fairness hearings. Mr. Alexander's experience includes testimony about customary practices and standards of care in auditing, operating and controlling business assets and activities. Mr. Alexander has concentrated experience in a variety of industries.

He is experienced in and has provided business valuation, acquisition due diligence, financial advisory, tax advisory, investment advisory, cash tracing and cost accounting services. He has evaluated the value of ownership interests in businesses in connection with acquisitions, disposals and disputes. He has performed suitability studies in connection with investment transactions in a wide range of financial instruments. He has traced the flow of cash and determined the sources and uses of funds. In addition, he has performed incremental cost studies, contribution margin studies and other applications of cost accounting for clients in connection with new products, acquisitions, patent valuations and evaluation of trademarks. This experience includes making projections of incremental revenues and costs in connection with profitability analysis of proposed business ventures, new products and other profitability analysis for companies.

Throughout his career Mr. Alexander has advised governing bodies, committees and senior management on their role in enterprise risk management and oversight activities of companies. His clients have included publicly traded companies, privately held companies, governmental entities and tax-exempt entities. He has advised governing bodies overseeing companies in the start-up/growth, mature and restructuring phases of operational development. He has performed these services for governing bodies overseeing companies operating in a variety of industries.

Mr. Alexander has performed determinations of solvency; investigated potentially fraudulent transfers made by debtors; analyzed preferential payments to creditors; analyzed the course of dealings between debtor/creditor; and valued the consideration received when a debtor transfers assets. Mr. Alexander has testified in court as an expert witness concerning solvency, fraudulent transfers, preference payments, ordinary course of business, reasonably equivalent value, cash/collateral tracing, lost profits, business valuation and records reconstruction.

Further, Mr. Alexander has been appointed Trustee of both Chapter 11 and Chapter 7 Bankruptcy Estates, where he made solvency determinations, pursued recoveries (including adversary proceedings in Federal and State courts) and performed the routine duties of both a Chapter 11 and Chapter 7 Bankruptcy Trustee. Creditors and Trustees have engaged Mr. Alexander to investigate insider transactions, value businesses and to evaluate loan collateral. Mr. Alexander has served as a lead advisor for various financial institutions in connection with their underwriting and credit/investment evaluation activities. In addition, Mr. Alexander has conducted auctions and assisted others in evaluating competitive bids received in auction.

**Appendix 2**

### Resume of J. Lester Alexander, III

Professional/Business/Community Affiliations

Lecturer, Fraud Risk Assessments, Antifraud Programs & Enterprise Risk Management, 2007, Accounting & Auditing Update by Lorman Seminars, Birmingham Alabama

Lecturer, Construction Claims, 2007, Construction Contracting Claims Seminar by Lorman Seminars, Birmingham Alabama

Lecturer, Construction Claims, 2006, Construction Contracting Claims Seminar by Lorman Seminars, Birmingham Alabama

Lecturer, Financial Damages, 2004, Cumberland Law School Continuing Education Seminar, Birmingham Alabama

Lecturer, Financial and Business Fraud Schemes, 2004, Corporate Counsel Seminar, Birmingham Alabama

Lecturer, Detecting Fraud Schemes - Fall Bankruptcy Seminar, 2003, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer, Accountant's View of Sarbanes Oxley, 2003, Seminar, Alabama Bar Continuing Education Series, Birmingham Alabama

Lecturer, Online Fraud Prevention, 2002, Institute of Management Accountants, Birmingham, Alabama

Lecturer, Forensic Computer Investigation, 2001, Discovery Seminar, Alabama Bar Continuing Education Series, Birmingham, Alabama

Lecturer, Online Business & Financial Research Methods, 2001, Federation of Insurance & Corporate Counsel's Internet University, Napa, California

Lecturer, Identifying and Investigating Fraud, 2001, Institute of Management Accountants, Birmingham, Alabama

Lecturer, Online Discovery, Defense Research Institute Annual Meeting of Young Lawyers, 2001, Miami, Florida

Lecturer, Online Expert Witness Research, 2001, Louisiana State Bar 17th Summer School for Lawyers, Destin, Florida

"Expert Witness Research Post Kumho Tire", American Bar Association' Annual Meeting, 2000, New York, New York

Former National Practice Leader, Coopers & Lybrand's Financial Services Consumer Dispute Resolution Practice

Former Regional Service Line Leader, Coopers & Lybrand's Litigation Consulting Services Southern Region

Former Practice Leader for Dispute Analysis and Investigations, PricewaterhouseCoopers LLP, Birmingham, Alabama

Former Member, Banking and Insurance Industry Groups, PricewaterhouseCoopers LLP

American Institute of Certified Public Accountants

Alabama Society of Certified Public Accountants

Florida Institute of Certified Public Accountants

Association of Certified Fraud Examiners

Associate Member, American Bar Association, Former Website Editor, Commercial & Business Litigation Subcommittee, Section of Litigation

Member, Mortgage Bankers Association

President, Board of Directors, Bell Center for Early Childhood Development, Birmingham Alabama

Member, Board of Directors, Steward Machine Co., Inc.

Appendix 3

## Trial, Deposition & Arbitration Testimony in Last Four Years

Philip S. Zetler, et. al. v. WAFRA Acquisition Fund 9, et. al. (Circuit Court, Jefferson County, Alabama)

AHAT, et al v. Gen Re, et. al. (Circuit Court, Montgomery County, Alabama)

Amason and Associates, Inc. v Silver Beach Condominium Owners Association, et. al (Circuit Court, Baldwin County, Alabama)

Campbell & Sons Oil Co. Inc, et al v. Merrill Lynch Business Services, Inc, et. al. (Circuit Court, Madison County, Alabama)

Pemco World Air Services, Inc v. GE Capital Aviation Services, Inc (Circuit Court, Dale County, Alabama)

Acceptance Loan Company, Inc et al. v. McKean & Associates, P.A.; Ernst & Young, LLP; and Mauldin & Jenkins, LLC (Circuit Court, Clark County, Alabama)

SMTC Manufacturing Corporation of Texas, Ronald E. Ingalls, Trustee v. SMTC Corporation, et al (United States Bankruptcy Court, Western District, Texas)

Stephen Scott et al v. Home Solutions of America et al (American Arbitration Association)

Parsons & Whittemore Enterprises Corporation v. Cello Energy, LLC, et al. (United States District Court, Southern Division, Alabama)

The Pantry v. Costco Wholesale Corporation, et al. (United States District Court, Northern District, Alabama)

Piedmont Venture Partners, L.P., et al, by and through Shuford, Hunter & Brown, P.A., Receiver v. Deloitte & Touche, L.L.P., et al (North Carolina State Court, Mecklenburg County)

Lawrence S. Parmet, et al v. Sundance Products Group, LLC et al (Superior Court, Hall County, Georgia)

Brasfield & Gorrie, L.L.C. v Jeffco Concrete Contractors, Inc., et al (Circuit Court, Jefferson County, Alabama)

Taylor, Bean & Whitaker v GMAC Mortgage Corporation (United States District Court, Middle District, Florida)

Griffin v Davis, et al (Chancery Court, Davidson County, Tennessee)

Shareholder Derivative Complaints on behalf of King Pharmaceuticals v Gregory, et al (Chancery Court, Sullivan County, Tennessee)

Georgia O'Keeffe Museum v Fisk University (Chancery Court, Davidson County, Tennessee)

Veolia Water North American Operating Services, LLC v. Artesian Utility Systems Management, Inc. et. al. (United States District Court, Southern District, Alabama)

Terry Manufacturing Co., Inc. v Cintas et. al. (Circuit Court, Randolph County, Alabama)

Johnco Materials, Inc. v Conrad Yelvington Distributors, Inc. (United States District Court, Middle District, Alabama)

Terry Manufacturing Co., Inc. v. The Peoples Bank et al. (United States Bankruptcy Court, Middle District, Alabama)

Terry Manufacturing Co., Inc. v. Bonifay Manufacturing Inc. et al. (United States Bankruptcy Court, Middle District, Alabama)

Terry Manufacturing Co., Inc. v. HLC Industries (United States Bankruptcy Court, Middle District, Alabama)

Terry Manufacturing Co., Inc. v. N.D. Horton et al . (United States Bankruptcy Court, Middle District, Alabama)

Terry Manufacturing Co., Inc. v. Albright, et al (United States Bankruptcy Court, Middle District, Alabama)

Terry Manufacturing Co., Inc. v. Delong & Caldwell (United States Bankruptcy Court, Middle District, Alabama)

Terry Manufacturing Co., Inc. v. J Martin & Associates (United States Bankruptcy Court, Middle District, Alabama)

Michael Ling, et al. v BDA&K Business Services, et al. (District Court, Collins County, Texas)

Michael Reibling, Trustee of the Estates of Trinsic, Inc. et al v. Thermo Credit, LLC (United States District Court, Southern Division, Alabama)

Mentor Corporation Shareholder Litigation (Superior Court, Santa Barbara County, California)

LiveOnTheNet.com, Inc. v. Digium, Inc., et al (Circuit Court, Madison County, Alabama)

**Appendix 4**

### Information Considered

In re Skagit Pac. Corp., N0. 02-25027, 2006 WL 2620426 (Bankr. W.D. Wash. Sept. 12, 2006).

Fraud Examiners Manual, 1 (ACFE 2010).

United States v. Louis J. Pearlman Plea Agreement filed March 4, 2008

1996 Report to the Nation on Occupational Fraud and Abuse (ACFE 1996).

2002 Report to the Nation on Occupational Fraud and Abuse (ACFE 2002).

2008 Report to the Nation on Occupational Fraud and Abuse (ACFE 2008).

Report to the Nation on Occupational Fraud and Abuse (ACFE 2010).

*Anatomy of a Financial Fraud: A Forensic Examination of HealthSouth* (2004),
http://www.nysscpa.org/cpajournal/2004/1004/essentials/p44.htm.

*Jury Convicts Five in Ministries Scam* (2003),
http://www.sptimes.com/News/031301/TampaBay/Jury_convicts_five_in.shtml.

Aswath Damodaran, Investment Valuation: Tools and Techniques for Determining the Value of Any Asset (2d ed. 2002).

Loan Portfolio Management: Comptroller's Handbook (1998).

Litigation Services Handbook: The Role of the Financial Expert (Roman L. Weil, Peter B. Frank, Christian W. Hughes, & Michael J. Wagner eds., 4th ed. 2007).

COSO Enterprise Risk Management – Integrated Framework: Executive Summary Framework. (2004).

COSO Enterprise Risk Management – Integrated Framework: Application Techniques (2004).

COSO Internal Control – Integrated Framework: Framework (1992).

AICPA Professional Standard, 1 (2004).

AICPA Professional Standard, 2 (2004).

AICPA Professional Standard, 1 (2000).

AICPA Professional Standard, 2 (2000).

AICPA Audit & Accounting Guide: Depository and Lending Institutions – Banks and Savings Institutions, Credit Unions, Finance Companies, and Mortgage Companies, June 1,2010 (2010).

Federal Reserve System Commercial Bank Examination Manual (2006).

Page 1 of 4

App. 927

## Information Considered

Federal Reserve System Bank Holding Company Supervision Manual (2010).

*2007 Updated Private Equity Valuation Guidelines: Frequently Asked Questions* (2007), http://ilpa.org/wp-content/uploads/2009/07/2007_March_PEIGG_VALUATION_FAQs.pdf.

OCC Detecting Red Flags In Board Reports: A Guide for Directors (2003).

OCC The Director's Book: The Role of a National Bank Director (1997).

Deloitte, *Financial Fraud: Does an Economic Downturn Mean an Uptick* (2008), http://www.icd.ca/Docs/EOG/Deloitte%20-%20FinancialFraud%20Does%20an%20Eco%20Downturn%20mean%20an%20uptick.pdf.

Deloitte, *Ten Things About Financial Statement Fraud – Second Edition: A Review of SEC Enforcement Releases* (2008), http://multivu.prnewswire.com/mnr/deloitte/28699/docs/28699_Graphics_10_Things_on_Fraud_booklet_3.PDF.

*Private Equity Industry Guidelines Group Releases Updated U.S. Private Equity Valuation Guidelines* (2007), http://findarticles.com/p/articles/mi_m0EIN/is_2007_March_13/ai_n27185804.

Bob Sims, *Richard Scrushy Bank Accounts Seized* (2009), http://blog.al.com/businessnews/2009/07/richard_scrushy_bank_accounts.html.

Kenneth Spong, Banking Regulation: Its Purposes, Implementation, and Effects (5th ed. 2000).

The Federal Reserve Bank of Atlanta, The Director's Primer: A Guide to Management Oversight and Bank Regulation (3rd ed. 2002).

Board of Governors of the Federal Reserve System, A User's Guide for the Bank Holding Company Performance Report (2008).

Robert Schmidt, *Niche-Market Madoff Duped Law Officers in Ponzi With a Twist* (2010), http://www.bloomberg.com/news/2010-09-03/niche-market-madoff-duped-law-enforcement-agencies-in-ponzi-with-a-twist.html.

*In re: Louis J. Pearlman, et al Pending Adversary Proceedings* (2010), http://www.pearlmantranscon.com/pleadings/Pending_Lawsuits_as_of_May_31_2010.pdf.

Alfred M. King, Valuation: What Assets Are Really Worth (John Wiley and Sons, Inc. 2002).

David Gladstone & Laura Gladstone, Venture Capital Investing: The Complete Handbook for Investing in Private Business for Outstanding Profits (Pearson Education 2004).

Page 2 of 4

App. 928

Appendix 4

## Information Considered

Gary R. Trugman, Understanding Business Valuation: A Practical Guide to Valuing Small to Medium Sized Businesses (American Institute of Certified Public Accountants, Inc. 3rd ed. 2008).

Shannon P. Pratt & Alina Niculita, Valuing a Business: The Analysis and Appraisal of Closely Held Companies (McGraw Hill 2008).

FDIC: Risk Management Manual of Examination Policies (2005).

Tyler Gray, The Hit Charade: Lou Pearlman, Boy Bands, and the Biggest Ponzi Scheme in U.S. History (Collins 2002).

Joseph T. Wells, Corporate Fraud Handbook: Prevention and Detection (John Wiley & Sons, Inc. 2004).

Zabihollah Rezaee, Financial Statement Fraud: Prevention and Detection (John Wiley & Sons, Inc. 2002).

Joseph T. Wells, Occupational Fraud and Abuse: How to Prevent and Detect Asset Misappropriation, Corruption and Fraudulent Statements (1997).

Fraud Casebook: Lessons from the Bad Side of Business (Joseph T. Wells ed., 2007).

Joseph T. Wells, Encyclopedia of Fraud: 2005 Edition (ACFE 2005).

Deposition testimony and exhibits of Richard Anderson, Jr., Kamla Bacchus, Cheryl Bramer, Barbara Bytell, David Carlson, Andrew Cheney, Joseph Rusty Carolan, Galen Clements, Ming Dai, David Decamillis, Kristin Finger, Lloyd Gardner, III, Richard Guinan, Stuart Harrington, Andrea Hitzemann-Johnson, Daniel Langelier, William Legg, Bruce May, Michael McClanahan, Gerard McHale, James McRae, Edgar Montanez, Daniel Motoyoshi, Craig Mueller, Amanda Newland, Rachel Reynolds Neyhart, William Nichols, Louis J. Pearlman, Michael Phillips, Walter Ramsey, Daniel Scanlan, Richard Scott, John Seidel, Mark Sexton, Mike Sperry, Nicole Stratos, Scott Swenson, William Timmons, III, Fred Valpacchio, Justin Voll, Michael Wier, Ronald Whitcomb, and Christopher Willis

Documents produced by Mercantile Bank: MERC.AB000092 - MERC.AB041963, MERCANTILE 0005474 - MERCANTILE0034803, loan histories, loan documentation, financial statements, spreadsheets, credit and commercial lending policies, emails, correspondence, and other documents

Documents produced by American Bank of St. Paul (ABSP00002 - ABSP25793, ABSP-ALER011888 - ABSP-ALER022409, ABSP-NACM000003 - ABSP-NACM000014)

Page 3 of 4

Appendix 4

## Information Considered

Documents produced by Alerus Financial (ALERUS007600 – ALERUS007660)

Documents produced by NFC Global (NFC000002 - NFC000353, NFCDOCS000002 - NFCDOCS000570)

Documents produced by Gerard McHale, receiver (TCA000001 - TCA003538-3772)

Documents produced by Soneet Kapila, trustee: TRUSTEE000001 - TRUSTEE027665, 0710KAPILA-000001 - 0710KAPILA002170, electronic files produced via external hard drive, including QuickBooks files, spreadsheets, emails, correspondence, and other documents

Documents produced by Morgan Stanley Smith Barney (MSSB000000 – MSSB0000075)

Documents produced by Fifth Third Bank (FTB0000001 – FTB0000789)

Documents produced by People's First Community Bank (PFCB0000001 – PFCB0000212)

Other documents produced including FARMERS-TOLNA001503 - FARMERS-TOLNA001917, FARMERS-PIERZ003975 - FARMERS-PIERZ003992

App. 930

**EXHIBIT B**

J. Lester Alexander III, 12/7/2010      Page: 1

## Page 1

```
 1       IN THE UNITED STATES DISTRICT COURT
 2            FOR THE DISTRICT OF MINNESOTA
 3   ---------------------------------------------
 4   American Bank of St. Paul,
 5            Plaintiff,
 6     vs.          File No. 09-2240 (JMR/JJK)
 7   Carolina First Bank, d/b/a Mercantile Bank,
 8            Defendant.
 9   ---------------------------------------------
10
11
12            VIDEO DEPOSITION OF
13
14            J. LESTER ALEXANDER III
15
16
17            Taken December 7, 2010
18            Commencing at 9:07 AM
19
20
21
22
23       REPORTED BY:  ELIZABETH J. GANGL, RPR
24            www.paradigmreporting.com
25
```

## Page 2

```
 1       Video deposition of J. LESTER ALEXANDER III taken on
 2   December 7, 2010, commencing at 9:07 a.m., at the law
 3   firm of Lindquist & Vennum, 4200 IDS Center, 80 South
 4   Eighth Street, Minneapolis, Minnesota, before Elizabeth
 5   J. Gangl, Registered Professional Reporter and Notary
 6   Public of and for the State of Minnesota.
 7
 8            ************
 9
10            APPEARANCES
11
12   On Behalf of Plaintiff American State Bank of St. Paul:
13       John C. Ekman, Esq.
14       Anthony N. Kirwin, Esq.
15       Lindquist & Vennum PLLP
16       4200 IDS Center
17       80 South Eighth Street
18       Minneapolis, Minnesota 55402
19       612-371-3211
20       jekman@lindquist.com
21       akirwin@lindquist.com
22
23
24   APPEARANCES (Continued on next page):
25
```

## Page 3

```
 1   On Behalf of Defendant Carolina First Bank d/b/a
 2   Mercantile Bank now known as TD Bank:
 3       Alan L. Kildow, Esq.
 4       DLA Piper US LLP
 5       90 South Seventh Street
 6       Suite 5100
 7       Minneapolis, Minnesota 55402-4168
 8       612-524-3010
 9       alan.kildow@dlapiper.com
10            and
11       Eric S. Golden, Esq.
12       Burr Forman LLP
13       450 S. Orange Avenue
14       Suite 200
15       Orlando, Florida 32801
16       407-540-6603
17       eric.golden@burr.com
18
19   Also Present:
20       Richard Gulnan
21       Charles Bonin, Videographer
22
23   NOTE:  The original deposition transcript will be
24   delivered to Lindquist & Vennum as the noticing party of
25   the deposition.
```

## Page 4

```
 1                 INDEX
 2   WITNESS:  J. LESTER ALEXANDER III          PAGE
 3     EXAMINATION BY MR. EKMAN......................  6
 4     Afternoon Session.............................  148
 5
 6   OBJECTIONS........... 11, 36, 80, 85, 90, 111, 141, 144,
 7     150, 154, 159, 169, 170, 187, 205, 207, 209, 210,
 8     212, 221, 222, 227, 228
 9
10   E EXHIBITS MARKED:
11   Exhibit 3000:  10/15/10 Expert report of J.
12     Lester Alexander III.......................  15
13   Exhibit 3001:  Georgia Secretary of State license
14     information printout of Julian Lester
15     Alexander III...............................  34
16   Exhibit 3002:  Minnesota Board of Accountancy -
17     Find CPA printout...........................  38
18   Exhibit 3003:  AEA Group - print out - Enterprise
19     Risk Management & Corporate Governance
20     Consulting Services and Forensic Accounting,
21     Investigation & Litigation Support...........  120
22   Exhibit 3004:  NYS Professions - Office of the
23     Professions Verification Searches.............  273
24
25
```

App. 932

J. Lester Alexander III, 12/7/2010                                   Page: 3

**Page 9**

1  context?

2      A.  Again, you're getting into legal areas, and I'm

3  not -- as a CPA we talk about actual fraud, too, and I'm

4  not here to offer opinions that are legal in, or

5  ultimate-issue opinions.  With that qualification, I have

6  a working understanding of what you're talking about,

7  yes.

8      Q.  All right.  And what am I talking about?  What's

9  your working understanding?

10     A.  Well, would you mind --

11     Q.  Well, in the --

12     A.  I'm not sure I understood that question.

13     Q.  Fair enough.  In the Kapila case you have an

14  understanding of the claims against Mercantile Bank?

15     A.  It's been such a large project, and it's been so

16  long since I have read that complaint, I am not prepared

17  to really answer any questions with any degree of

18  specificity in the Kapila case.

19     Q.  Do you understand that there are issues about

20  what we call red flags in that case?

21     A.  I understand what a red flag is.  I also call it

22  a badge of fraud.

23     Q.  Okay.  Oh, so you use those two terms

24  synonymously, interchangeably?

25     A.  I don't, I don't know if I would generalize that

**Page 10**

1  much, but they are two terms that I use.  They're terms

2  of art that CPAs use.

3      Q.  Okay.  And we'll come back to those obviously.

4  In this case, what were you asked to do?

5      A.  Well, generally I was asked to look at the, the

6  Pearlman fraud and, and help educate the court on how

7  Pearlman was able to achieve what he achieved for so long

8  without detection.  I have done that by, by profiling

9  notable similar high-profile frauds, accessing some of

10  the research that I have available to me as a certified

11  fraud examiner, and then comparing the Pearlman fraud to

12  those and matching up the common attributes, which helps

13  understand how, not only the Pearlman fraud, but other

14  frauds that are notable continued for so long.

15         The other thing I was asked to do was, you know,

16  what, what typical measures detect or prevent these types

17  of frauds and then compare them to the allegations in

18  this case and report my findings back to the court.

19     Q.  Do you have an understanding, let's start with

20  the first part of that, you mentioned comparing the

21  Pearlman fraud in the context of other frauds and

22  explaining how Pearlman was able to engage in this fraud

23  for such a long period of time.  Do you have any

24  understanding of how that's at all relevant to this

25  litigation?

**Page 11**

1      MR. KILDOW:  Well, I'm going to object to

2  the question.  How it's relevant is for legal to, counsel

3  to determine, and for the court ultimately to rule on.

4      MR. EKMAN:  I'm not disputing that.  I want

5  to know if he has an understanding as to why it's

6  relevant.

7      THE WITNESS:  I'm not sure I can speak to

8  the legal relevance.  I mean I have a layman's

9  understanding of why.  It's important, I think it's an

10  important thing for the jury to know and understand.

11     Q.  (By Mr. Ekman) What's your layman's

12  understanding?

13     A.  These types of frauds are, have occurred over

14  and over again throughout history, and the pattern,

15  despite the ramping up of Sarbanes-Oxley, despite all the

16  money public trading companies have spent trying to

17  resolve and detect and prevent these frauds, they

18  continue to happen, and, and there are reasons why they

19  happen and, and are not detected by traditional measures.

20  Traditional risk-management measures typically do not

21  detect these.  And in that context, it's, at least in one

22  way, it's not, it's definitely not the only way, but in

23  one way, for example, without giving too much of a

24  narrative answer, that it's relevant is that the types of

25  individuals that conduct these types of frauds have a

**Page 12**

1  talent for either satisfying questions, creating the

2  answers to questions that satisfy the questions, or

3  finding some other way to accomplish their goal, and I'm

4  prepared through today -- I mean my report is on this

5  whole issue.  I'm not prepared to give you one answer

6  that summarizes my report, but I'm prepared to explain

7  what I mean if you wouldn't mind following up with some

8  more detailed questions.

9      Q.  Yeah, and I don't want to get too far ahead,

10  but --

11     A.  Right.

12     Q.  -- I ask questions because I get curious by

13  answers, and we're going to go through, paragraph by

14  paragraph through your report, which I'm sure won't

15  surprise you.

16     MR. KILDOW:  He's a very curious guy.

17     MR. EKMAN:  I am indeed.

18     Q.  (By Mr. Ekman) You mentioned in your earlier

19  answer you accessed research you have available.

20     A.  Yes.

21     Q.  What types of research were you accessing?

22     A.  Well, we've been retained postmortem in

23  connection with the Worldcom fraud that was conducted by

24  Bernie Ebbers.  I was, we were retained postmortem in

25  connection with the HealthSouth fraud, and so we had

App. 933

Page 89

1    Q.  Fair enough, let me ask it, let me ask it a
2  different way.  Do you know why there's no, Mr. Wells
3  wouldn't have mentioned the fact that using fictitious
4  accountants is a, is a sign of fraud in his learned
5  treatises?
6    A.  You know, while it happens, it doesn't happen
7  very often, and that's, I mean, I mean I've never met Joe
8  Wells, so I'm somewhat speculating, but I don't find it
9  surprising that it's not there, because it's very rare.
10  It's not the first thing that would pop into your mind
11  when there's a, in my mind, when there's a licensing
12  question.  Whereas the other hand, a CPA practicing with
13  an expired license, without a license, not properly
14  registered in the state, happens more than my profession
15  would like to admit.
16    Q.  Although to be honest, I'm not sure that that's
17  even mentioned in here.
18    A.  Well, I don't think it's an indicia of fraud.
19    Q.  Okay.
20    A.  I mean in fact it's just not.
21    Q.  Could it, could it, well, the latter case, could
22  it be the case that one of the reasons Mr. Wells doesn't
23  bother writing in his treatises that, you know, heads-up
24  if the accountants are fictitious you might have a
25  problem is because that's pretty obvious?

Page 90

1    A.  No, you know, I can't agree with that.
2    Q.  Okay.  Well, let me re-ask that.  Do you --
3  let's take Mr. Wells out of the equation -- do you
4  believe that if an entity's accountants are fictitious,
5  that that is evidence that a fraud has been committed?
6  And I'll characterize it the same way I did before.  It's
7  obvious evidence that a fraud has been committed.
8    A.  And making the record clear, we, in this --
9          MR. KILDOW:  Before you answer that
10  question, I'm going to object to the question on the
11  grounds that the hypothetical is incomplete.  You can
12  answer the question.
13          THE WITNESS:  I'm saying, you know, making
14  this question clear, you've asked me to assume that I
15  don't know things that I already know from this record,
16  and that those things are not true, okay?  So we're not
17  dealing with Mr. Kildow, we're not dealing with time
18  and time again people learning about these CPAs and, you
19  know, and being somehow, some way, again with 20/20
20  hindsight we look at it and maybe say, gee, I don't
21  understand how this happened, but somehow, some way
22  satisfied and, and either the questions get answered, or
23  at least to the extent the questioner wanted them
24  answered they got answered, or Pearlman, before even
25  being confronted with having to answer, changes

Page 91

1  directions and gets himself out of the tight spot and
2  avoids answering the question.  So assuming that all
3  those things have happened, I have a hard time even
4  answering your hypothetical.  In other words, over and
5  over again people ran into this issue with Pearlman, not
6  just Mercantile.  Bank of American Bank went over, as you
7  know --
8    Q.  (By Mr. Ekman)  Yep.
9    A.  -- went over there, visited in the wrong
10  location, never met the Mr. Infamous Kaplan of the Kaplan
11  Review course, and concluded everything's fine.
12    Q.  That was in 2006, right?
13    A.  Well, it doesn't matter when it happened.  What,
14  what's important is, in light of your question, it did
15  happen.  In other words, the very thing that is
16  complained about by your client occurred by, by Bank of
17  America, which, I think it's safe to assume, they're
18  fairly sophisticated, and they came back happy, without a
19  license and operating out of Germany, which, you know,
20  the presumption that that in and of itself just should
21  tip someone off is proven false by the record in the
22  case.
23    Q.  Did you read -- you said, I think earlier, you
24  read Montanez's testimony?
25    A.  Yes.

Page 92

1    Q.  You read Montanez -- did you read the part where
2  Montanez was shown the NFC Global report and testified
3  that had he had that report he wouldn't even have
4  bothered getting on a plane to Germany?
5    A.  I don't remember.
6    Q.  You keep using this concept of satisfied.  Do
7  you know if Mercantile Bank was ever satisfied that it
8  got the answers to the questions about Cohen & Siegel?
9    A.  I, I'm not going to testify.  They're here, they
10  can testify.  I'm going to let them testify about that.
11    Q.  Perfect.  All right.  I'm going to show you
12  another little book, "Financial Statement Fraud:
13  Prevention and Detection" by a guy named Rezaee, Rezaee.
14  Are you familiar with this book?  It actually has a
15  forward by Mr. Wells.
16    A.  I mean we've got a library with 20 or 30 books
17  in them, and I'll tell you right now I haven't read them
18  all.  This book looks familiar and it very well is in our
19  library.
20    Q.  Well, and -- let's make sure the record is
21  clear.
22    A.  And I may have cited it in my report.
23    Q.  I will represent, if you go to Appendix 4,
24  there's Zabiholiah Rezaee, "Financial Statement Fraud"?
25    A.  Yeah, by the time I got to these latter

App. 934

**J. Lester Alexander III, 12/7/2010**  Page: 47

Page 185

1  A. Well, it depends on the rules of the state and
2  whether they've adopted the Uniform whatever Accountancy
3  Act, but generally before that Act, the answer was no.
4  It's the case, it's facts -- it just depends on the state
5  requirements and varies widely. Some states they don't
6  care, some states only if you do audit work, and some
7  states they care if you breathe in their state.
8  Q. Sure, I understand. We have the same problem.
9  My question, though, is, let me ask a different one,
10  which is: Why is it, if there was never a representation
11  that Cohen & Siegel maintained a business location in New
12  York, how is it at all instructive that you could find a
13  Cohen & Siegel in New York in the mid 1980s?
14  A. I mean I guess it's just a difference in my
15  opinion and yours. I find it very instructive. The fact
16  that there is, there is a licensed CPA, there was a
17  licensed firm, and the working knowledge of this case up
18  and to that point was there was no person, there was no
19  firm. It just, it just goes back to it's not resolved.
20  I mean the question, is there a licensed CPA by that name
21  in New York? Yes. Is there a licensed firm by that name
22  in New York? Yes. Did, did Arthur Siegel ever do
23  business with a Cohen? Yes. Did a Cohen continue to do
24  business and then go out of business as the house of
25  cards came crumbling down? Yes. I think that's enough

Page 186

1  to say, look, we've got a lot of circumstantial
2  information that conflicts with the assumption that they
3  never existed. And it is the norm that they, that
4  somebody in that capacity would exist and would be
5  another co-conspirator. That's more normal than this
6  completely fictitious CPA firm theory that Pearlman's
7  trying to get everybody to believe.
8  Q. And which you don't believe?
9  A. No, I'm not saying that. I'm saying it
10  conflicts. I'm not here to say what I believe or not.
11  I'm telling you, as a matter of professional opinion,
12  that there is a public records search that conflicts with
13  this information, and the fact that frauds like this
14  typically do involve a CPA is more normal than frauds
15  like this do not involve a CPA and the CPA is completely
16  made up.
17  Q. Your research that you did into Cohen & Siegel,
18  first of all, you don't have any evidence that that
19  entity was actually even in operation in 2005, right?
20  A. It was not.
21  Q. Okay.
22  A. Based on what I've seen, it was not.
23  Q. And a lot of the folks that you identified as
24  having a license were actually inactive at the time you
25  did your search, right?

Page 187

1  A. I can't remember. Probably. Maybe. I don't
2  remember that.
3  Q. We'll get to that. Mercantile Bank didn't know
4  about any Cohen & Siegel, though, in New York, right?
5  MR. KILDOW: Objection, misstates the
6  facts. Take a look at Barbara Bytell's deposition
7  testimony. She confirmed that they were licensed.
8  MR. EKMAN: I'm sorry, she what?
9  MR. KILDOW: She confirmed that they were
10  licensed in New York through October of 2000.
11  MR. EKMAN: Fair enough.
12  Q. (By Mr. Ekman) There no licensed entity after
13  October 2000?
14  A. Your recollection is better than mine, but that
15  sounds right.
16  Q. They didn't have, certainly they didn't have the
17  benefit of your research that you performed in connection
18  with this case?
19  A. No.
20  Q. Do you know if Mercantile Bank ever questioned
21  the information that was provided by NFC Global?
22  A. No, not a question for me.
23  Q. Let me take that back. All right. On
24  August 22nd of 2005, Ms. Bytell is informed that she'd
25  done some checking with the Florida State Board of

Page 188

1  Accountancy, and that a firm must be registered within
2  the state in which they are practicing. Do you see that?
3  A. No, I'm still looking at it.
4  Q. It's at the bottom.
5  A. Oh, I was reading the top. No wonder I couldn't
6  find it. (Examining document.) Okay, what's the
7  question?
8  Q. In this email she's being informed that, Barbara
9  Bytell is being informed that the, Cohen & Siegel were
10  not a licensed CPAs or a CPA firm within the state of
11  Florida, do you see that?
12  A. I do.
13  Q. And that's inconsistent with the brochure, true?
14  A. It raises a question.
15  Q. Okay. And you didn't find any evidence of a
16  Cohen & Siegel in Florida --
17  A. No.
18  Q. -- in your research?
19  A. No.
20  Q. It also states that there are no records with
21  the Florida Division of Corporations or Secretary of
22  State for a Cohen & Siegel, do you see that?
23  A. Correct. I see that.
24  Q. And is it your, would it be your understanding
25  that if the entity Cohen & Siegel operated in Florida,

App. 935

**Page 209**

1  had its respon, its own independent responsibilities to
2  assess that credit. They could not rely on my client.
3  And this was publicly available information.
4      Now I gave you that answer because you asked me.
5  I think that's outside of what I was asked to do, but I
6  also think I'm qualified to give you that answer.
7      Q.  Okay. If the questions have been unanswered, as
8  they were by March 28th, 2006, if you had been asked,
9  should we make a new loan to Pearlman, what would your
10  opinion have been?
11      MR. KILDOW: I'm going to object to the
12  question. Once again it is beyond the scope of his
13  engagement. We have other experts who are going to
14  respond to that. Number two, your question bastardizes
15  the evidence and testimony in the case.
16      Q.  (By Mr. Ekman) You can answer.
17      A.  Would you mind reading it back or asking it
18  again?
19      Q.  Given the unanswered questions, the information
20  that Mercantile Bank had and the unanswered questions,
21  including face-to-face meetings that had not occurred,
22  had you been asked to assess whether they should make a
23  new loan to Pearlman in March of 2006, would you have had
24  an opinion?
25      MR. KILDOW: Well, let's -- let me reaffirm

**Page 210**

1  this objection. Is it your position that you can ask an
2  expert, and we've got five of them, any question at all,
3  whether or not it's within the scope of what they've been
4  asked to testify to, whether it's within the scope of
5  their report or opinion, whether they're competent to
6  answer that? He's not here to address that question.
7  It's just completely improper, John.
8      THE WITNESS: I don't think --
9      MR. EKMAN: "Mercantile's underwriting and
10  monetary policies are customary and typical of a bank of
11  their size and sophistication. Mercantile followed its
12  policies and procedures in all material respects in its
13  relationship with Pearlman." These are his opinions.
14  I'm asking him.
15      Q.  (By Mr. Ekman) You wrote "underwriting," not
16  me, didn't you?
17      A.  I did.
18      Q.  Okay. And my question is, given the information
19  that was known and the open-ended questions, would you
20  have recommended to them, had they asked you, should we
21  make a new loan to Pearlman in March of 2006 --
22      MR. KILDOW: Same objections.
23      Q.  (By Mr. Ekman) -- what would you have told
24  them?
25      A.  In my role and capacity, it depends on what I

**Page 211**

1  was asked to do and what I had, what I had found in my
2  investigation.
3      Q.  You found exactly what you know is out there.
4  You didn't have questions answered --
5      A.  No, no, no, wait a minute. Yeah, you've got to,
6  you've got to tell me.
7      Q.  Okay.
8      A.  Because what I know is out there wasn't known in
9  that time frame. A lot.
10      Q.  You had the NFC Global report.
11      A.  Okay.
12      Q.  You had the research done by Barbara Bytell.
13      A.  Okay.
14      Q.  You had research done by Mercantile Bank's
15  attorneys in Germany that confirmed the NFC Global
16  information. You had questions that had been asked that
17  were unanswered.
18      A.  Right.
19      Q.  You had a fictitious FEIN number for S. Kaplan &
20  Co.
21      A.  Keep going.
22      Q.  Which you're aware of, right?
23      A.  Keep going.
24      Q.  With those, you had, you couldn't find any
25  airplanes and you hadn't gotten any proof of it, proof of

**Page 212**

1  any airplanes owned by TCA, the guarantor, and you had
2  significant issues with the stock that was held as
3  collateral. Would you have, if asked, have made a
4  recommendation to loan new money to Mr. Pearlman in March
5  of 2006?
6      MR. KILDOW: Same objections.
7      THE WITNESS: There's still more. There's
8  still more. Because what, what explanations have I
9  received from Pearlman? What should I assume there?
10      Q.  (By Mr. Ekman) Assume Mr. --
11      A.  Regarding all of those inconsistencies.
12      Q.  Mr. Pearlman has never made any representations
13  to you because Mr. Pearlman has never provided any
14  answers. You did have a phone call with someone named
15  Steven Kaplan in Germany in December who said, who talked
16  about the financials.
17      A.  I understand that's your --
18      MR. KILDOW: I'm going to object. You've
19  just misstated the record again.
20      MR. EKMAN: I have not.
21      THE WITNESS: I understand that's your
22  argument, but there is other information, and I'm just
23  asking you what do you want me to assume about that?
24  Does it exist or does it not exist?
25      Q.  (By Mr. Ekman) Does what exist?

J. Lester Alexander III, 12/7/2010    Page: 57

**Page 225**

1  my understanding, they set about parallel tracks, okay?
2  One was we've really got to get the answers to these
3  questions; the other was preparing to lose Pearlman. But
4  you've got to understand, this was a large customer
5  relationship. It is clearly in the bank's best interest,
6  with Pearlman's outward image and with the size of the
7  customer relationship that he was, it was in the bank's
8  best interest, if they could get the answers for him, to
9  get them, if they could get to the bottom of this and
10 keep him and win him back. So for some period of time
11 they were on parallel tracks. Obviously at some period
12 of time they stopped.
13     Q.  You've talked a lot, you know, about sort of how
14 frauds get discovered. You obviously, because it never
15 happened, you don't know what would have happened had
16 Mercantile Bank decided to go to the police or file a
17 Suspicious Activity Report in connection with the
18 Pearlman loan, do you? Because it wasn't done.
19     A.  I mean there's a difference in do I know or do I
20 have an opinion.
21     Q.  Do you know what would have happened?
22     A.  No. No one knows what would have happened.
23     Q.  Do you have an opinion as to what would have
24 happened?
25     A.  There's a range of possibilities.

**Page 226**

1      Q.  And it ranges from it could have been completely
2  ignored to it could have been the end of Lou Pearlman?
3      A.  And I think Pearlman could have sued them.
4      Q.  That would have been a trick.
5      A.  You know, you say that, but it is a common
6  response, and it is the fastest way to stop an
7  investigation, is to have someone who is trying to gather
8  the answers to legitimate questions overstep and get too
9  far out front and do something that gives someone as
10 savvy and smart as Pearlman, if he thought he was about
11 to get caught he would do that because it would shut
12 down -- NFC Global, they would stop work immediately if
13 they were named in a lawsuit for invading his privacy for
14 trying to get his EIN number, for example.
15     Q.  Well, it's not his EIN number, it's his
16 accountant's EIN number.
17     A.  Whatever his -- well, and we know, apparently we
18 know that it could be him. And so his accountant could
19 go -- I mean, look.
20     Q.  Who was -- wait a minute, I'm sorry. Who would
21 have --
22     A.  Anybody could have done anything to stop this.
23 It's a normal, it's a normal response to stop an
24 investigation. So you are at risk if you get ahead of
25 yourself in doing any type of investigation where you

**Page 227**

1  think someone is lying to you, when you think someone
2  might be lying to you, to conclude that too quickly. I
3  mean there are causes of action that can be filed against
4  you if you in any way disseminate disparaging
5  information. And I would believe NFC Global is trained
6  in that. I was trained in that. And I can tell you it's
7  a real risk. And that's why the more appropriate step is
8  not to finger point, but is to tell the, tell the
9  customer very clearly what you need in order to move
10 forward, which is what happened.
11     Q.  In, in participating in the March 28th, 2006
12 loan to Pearlman, what information did Mercantile Bank
13 rely on? You've criticized American Bank for relying on
14 the NACM information. What, what information did
15 Mercantile Bank rely on that was different?
16     A.  I think the information is all there. I mean
17 they've got Pearlman saying that he wants out, and this,
18 the whole syndication was clearly the steps in taking him
19 out. I mean it was a bridge loan situation. I mean it's
20 just obvious to me. I mean this is outside of what I was
21 asked to do, but it's so obvious to me as a CPA.
22     Q.  They had to underwrite the loan still, and they
23 did underwrite the loan, true? Mercantile Bank?
24     MR. KILDOW:  I'm going to object to that
25 question as beyond the scope of his --

**Page 228**

1      MR. EKMAN:  Well, he's critical of my
2  client for relying on the NACM material, so ...
3      MR. KILDOW:  Well, your, your client's
4  critical of relying on the NACM material, too, I think.
5      Q.  (By Mr. Ekman)  Let me just ask. In the NACM
6  material, you haven't studied materials to determine
7  whether all the typical types of documents a bank would
8  expect to be in a loan offering were, were present? Did
9  you?
10     A.  Well, I mean, first of all, that's a very broad
11 area, and what's typical is a wide range but, yeah,
12 I mean I looked at it for that purpose. I mean that's
13 one of the things I was looking at was in the, as the
14 loans were made at Mercantile, was the information they
15 were receiving within the range of customary information.
16 There's wide latitude. A lot of judgment gets used.
17     Q.  Fair enough.
18     A.  You know.
19     Q.  Was the, was the information provided by NACM,
20 which included the financials for TCA, financials for
21 Pearlman, they produced a credit report, is that the kind
22 of information that's in the range of information that
23 banks will rely on in making a loan?
24     MR. KILDOW:  I'm going to object to the
25 question as it's beyond the scope of what he's being

App. 937

J. Lester Alexander III, 12/7/2010

| Page 233 | Page 235 |
|---|---|

**Page 233**

1  THE WITNESS: Take alternate routes to the
2  airport? We're going to ride separately, yeah.
3  MR. KILDOW: You've been watching too many
4  Matt Damon movies.
5  Q. (By Mr. Ekman) I've handed you what's been
6  marked at Exhibit 73, which is the credit policy and
7  commercial lending policy for Carolina First Bank. This
8  was produced to us in discovery. I just want to give you
9  example. Turn to, it's Policy 016 and ends in 499.
10  A. Give me a Bates number.
11  Q. Bates No. 499. Relates to financial statements
12  and the requirements of financial statements.
13  A. (Examining document.) Okay.
14  Q. All right. You're not here offering any opinion
15  that, in connection with Pearlman's relationship,
16  Mercantile Bank adhered to this particular loan policy,
17  true?
18  A. No. What -- and I think I actually copied this
19  and a couple other pages out of here that are relevant.
20  It's relevant from my perspective to see whether there
21  was any, you know, overt, noncustomary deviations. For
22  example, as an auditor, as somebody who has audited loan
23  file reviews, I happen to know that, look, banks never do
24  this, okay? I mean not never, but they have a lot of
25  problems getting their annual financial statements in and

**Page 234**

1  they almost never get them in on time. So, you know, I'm
2  sure that you could have a loan file review guy go
3  through here and just nitpick the you know what out of
4  it, but what I was looking for were really substantive
5  types of things that I, in looking at their overall
6  risk-management position, would need to know if I'm going
7  to render the kind of opinions that I was asked to render
8  as it relates to Pearlman's fraud, and I did not find
9  anything that would say that the loan officers and, to
10  the agree they did or didn't follow policies is not my
11  purpose, but the loan officers' deviations from policies,
12  and I couldn't even tell you what those were, because
13  they wouldn't in any way raise my need to look further.
14  Q. If you go to the next one, there's a, it's
15  called "Exceptions to Credit Policy," and --
16  A. 499?
17  Q. Yeah, 500.
18  A. Oh, 500. Okay.
19  Q. If you go to the next one. Again, witnesses
20  have been asked questions about whether particular loan
21  modification requests and loan presentation reports
22  complied with the exceptions to credit policy
23  requirements. You're not here to offer an expert opinion
24  that their presentation reports to management did or did
25  not comply with this particular policy, true?

**Page 235**

1  A. I am not.
2  Q. And you're not here to testify, for example,
3  that their participation in the American Bank loan
4  complied or did not comply with the participation
5  policies in this document?
6  A. No, I haven't done the kind of work I would need
7  to do, and I'm not sure I'm the right person anyway to do
8  that kind of work.
9  Q. Fair enough. And if I want through these
10  policies and asked you specifically if, you know, they
11  followed them in connection with the Pearlman loan
12  approvals and underwriting, again, you would tell me this
13  is not what you've been asked to opine upon and you're
14  not opining upon it?
15  A. I agree.
16  Q. Okay.
17  MR. EKMAN: Neutralized. Thank you.
18  MR. KILDOW: I was just a little concerned
19  there for a while.
20  MR. EKMAN: Just want to make sure, man.
21  Q. (By Mr. Ekman) All right. So I'm going to put
22  you back in. in December. With all the information
23  that's known, including Pearlman's explanations about the
24  leases and the tail numbers, which were the two items he
25  tried to provide some explanations on, what more, if you,

**Page 236**

1  in your expert opinion --
2  A. Conversations that occurred with the accountant.
3  Q. With a guy named Steven Kaplan?
4  A. Supposed accountant, correct.
5  Q. Correct. In your expert opinion, what
6  additional research needed to be done before there could
7  be a conclusion reached that Pearlman had or had not
8  engaged in fraudulent conduct?
9  A. Assuming that there was a need to do that?
10  Q. Assuming that there was a need to do it.
11  A. Okay. Because you know I don't believe there
12  was.
13  Q. Yeah, and again the reason you don't believe
14  there was a need is because at that point Pearlman was,
15  was going to get another bank to refinance its debt and
16  so Mercantile didn't need to get answers to the
17  questions?
18  A. Well, before that's point, it's my recollection,
19  you know, the record is the record, okay? But it's my
20  recollection before that point they were on notice that
21  that was Pearlman's intent. So, you know, at what point
22  in time on the timeline did the bank just acquiesce to
23  that and stop pursuing requests for information, that's
24  for the bank to talk about. So I don't know if this is
25  in the December time frame, November time frame.

J. Lester Alexander III, 12/7/2010     Page: 68

**Page 269**

1　judgment was they needed to do record searches, that was
2　something they could have done, okay? My client did not
3　ever pursue it to the point where they had information
4　that was appropriate, in my opinion, to be going and
5　back-channel communicating to your client.
6　　Q. Or anyone --
7　　A. And that is --
8　　Q. Or anyone for that matter, right?
9　　A. Well, when you are a bank, you get private and
10　confidential information, okay, and this is outside of my
11　area. This is not what I do, not what I'm going to
12　testify about, but you're asking me the questions and you
13　keep coming back to it, so I'm going to tell you from my
14　perspective the issue. It's a business issue that has to
15　be managed carefully, and what they did was the
16　appropriate risk-management response to manage all
17　issues. They've got a customer that might be nice if
18　they could keep them, sure wish he could produce that
19　information, we've got conflicting public information.
20　And he is capable, he is viewed by us, and has been
21　viewed by us and viewed by the community as an upstanding
22　person, and I just don't have enough to accuse him. I've
23　just got questions, that lead you to conclude now, with
24　hindsight, that it would be obvious the question we jump
25　to, and I'm telling you there's a lot of other,

**Page 270**

1　alternative resolutions that would come, and potential
2　answers that you would leap to long before you would leap
3　to a badge of fraud, and I've said this over and over and
4　over again.
5　　Q. Mercantile Bank signed the participation
6　agreement here, is that right?
7　　A. It speaks for itself.
8　　Q. Did they?
9　　A. I would need to look at the document.
10　　MR. KILDOW: You know, why are we --
11　　MR. EKMAN: I'm asking. He won't just
12　answer yes or no. I'm asking if they participated in the
13　loan.
14　　MR. KILDOW: We know that they signed the
15　participation agreement.
16　　MR. EKMAN: Fine.
17　　Q. (By Mr. Ekman) Then answer yes, and I can move
18　on.
19　　A. Who signed it?
20　　Q. Mercantile Bank.
21　　A. I can't answer it from that document. And I
22　haven't looked. I mean I know what I've been informed,
23　but I'm not going to give you, unless I've done the work,
24　unless I've inspected, unless I've been given a charge to
25　do the work and form a professional opinion, I'm not

**Page 271**

1　going to give you an answer that you could misconstrue as
2　a professional opinion. You want to show me a document
3　and have me parrot to you back what it says, I'm happy to
4　do that, but you've got to give me the signature page for
5　me to do that.
6　　MR. EKMAN: Let's take a break. Short.
7　　VIDEOGRAPHER: We are going off the record.
8　The time is 4:26 p.m.
9　　(Short break taken.)
10　　VIDEOGRAPHER: We are back on the record.
11　The time is 4:36 p.m.
12　BY MR. EKMAN:
13　　Q. I have a few more questions to tie up. In
14　paragraph 19 you write, again, "Mercantile's discovery of
15　apparent conflicts in Pearlman's representations did not
16　rise to the level of actual knowledge of a fraudulent
17　scheme, irretrievable insolvency, nor a badge of fraud."
18　It's true that you were not involved in any discussions
19　among Mercantile Bank's executives in August 2005
20　concerning the information they were learning about
21　Mr. Pearlman, true?
22　　A. True.
23　　Q. You were not involved in discussions with Rusty
24　Carolan, Mercantile Bank's counsel, concerning the
25　information that was being learned, true?

**Page 272**

1　　A. True.
2　　Q. You weren't involved in any of the meetings in
3　September of 2005, either among Mercantile Bank's
4　employees, executives, or those that were with Pearlman
5　in that time frame, again September 2005, true?
6　　A. That's correct.
7　　Q. In terms of how Mercantile Bank personnel, their
8　executives were interpreting the evidence, in other
9　words, what inferences they were drawing from that
10　evidence, I need to ask them for that, not you, true?
11　　A. No.
12　　Q. Why is that not true?
13　　A. Because by trade I evaluate the evidence and
14　report my findings.
15　　Q. And are you saying that if a Mercantile Bank
16　executive testified that he was concerned about fraud,
17　and you suggest that, well, it's not really a concern,
18　that your opinion should trump what the Mercantile Bank
19　employee states?
20　　A. No, that's not what I'm saying.
21　　Q. Okay. What are you saying?
22　　A. I'm saying that in my trade I'm asked to
23　evaluate evidence. It's typically -- it's
24　contemporaneous evidence. It many times is documentary
25　and not oral. It's supplemented by oral, but a lot of

App. 939

J. Lester Alexander III, 12/7/2010                    Page: 69

**Page 273**

1  times the oral evidence comes in years after the fact so
2  it can't be deemed contemporary, and then provide my
3  opinion about it. And what I do, one of the things I do
4  for a living is evaluate circumstances and report to my
5  clients, not in litigation, when a circumstance has risen
6  to the point where you have sufficient cause to dig
7  deeper and maybe sufficient cause to hire a lawyer and
8  follow an action and try to recover for the wrongdoing,
9  and I do that not just as a CPA -- and I do that, I do
10 that as a CPA, I do that as a fraud examiner, and I do
11 that as a trustee, and I have been admitted and accepted
12 as an expert on that issue.
13     Q. But in terms of the communications internally
14 about what inferences they were drawing at the time, you
15 don't know what those are?
16     A. No, I'm not trying to speak to things that are
17 outside my ability to know or interpret.
18     Q. We do need to mark this because I do need to ask
19 you about this.
20        (Deposition Exhibit E 3004 marked.)
21     Q. 3004 are licenses and verification searches from
22 the New York State ED.gov, New York State Professions. I
23 did this obviously in response to your paragraph 19 --
24     A. Um-hum.
25     Q. -- with the conflicting information. I notice,

**Page 274**

1  for example, the first page of 3004 is a verification for
2  Stanley D. Kaplan. This one is referenced in your
3  paragraph. Date of licensure, March 1972, Status:
4  Inactive. Do you see that?
5     A. I do.
6     Q. When you say that you found information that
7  conflicted with the NFC Global report, you're talking
8  about the fact that you were able to locate a Stanley
9  Kaplan, not that you were necessarily able to locate a
10 licensed Stanley Kaplan in the state of New York at the
11 time the audited financials were being provided by
12 Pearlman, true?
13     A. I'm not sure I understood the question.
14     Q. Well, if I print Mr. Kaplan's license, as I did,
15 it says that he's inactive, do you see that?
16     A. It does.
17     Q. But it doesn't say when he became inactive.
18     A. Which means at some point in time he was active.
19     Q. Absolutely. But we don't know if that point in
20 time ended in 1980, 1995, 2000 or 2009, true?
21     A. That is true.
22     Q. So when NFC performed their search, you can't
23 say that this Stanley Kaplan had an active license in New
24 York at that time based on your research?
25     A. Yeah, that's not what I'm saying.

**Page 275**

1     Q. I understand, I just want to make sure we're
2  clear on what you're saying. You would agree with me
3  that you don't know, from your research, wherever any of
4  these guys are inactive, you can't say here today that
5  they were active in the 2005 time period, true?
6     A. You're missing, you're completely
7  misunderstanding what I'm saying.
8     Q. I don't think I am. I'm clarifying it. I want
9  to make sure that it's clear.
10    A. No, you're not, you're completely misstating,
11 and that's okay, I'm happy to answer the question.
12    Q. Answer that question.
13    A. I'm happy to answer it, as long as you
14 understand you are completely missing the boat on this
15 one.
16    Q. I'm telling you --
17    A. You're right, I can't tell you what NFC Global
18 found. What I can tell you is the next step that should
19 be taken is what I did, and I found information that
20 conflicts and raises a question -- hold on -- raises a
21 question about the accuracy of their report. And it is
22 standard protocol, when you're given public information,
23 to check it and to see can this report be relied on. And
24 this search was a simple search, and it raises a question
25 about whether -- in fact, it raises the question that I

**Page 276**

1  have resolved; you cannot rely on NFC Global's report
2  based on their own qualifications and this information.
3  You have to do some more work --
4     Q. When --
5     A. -- and that is the point of this.
6     Q. When did NFC Global conduct its search? They
7  are conducted their search in August of 2005, right?
8     A. That sounds right.
9     Q. You ran your searches in August of 2010, true?
10    A. That is correct.
11    Q. You have absolutely no idea whether these people
12 could have been found in the New York State Professions
13 online verification database in August of 2005 because
14 you didn't do the search at that time, is that true?
15    A. Well, I don't -- the answer to that question is
16 I don't know whether they would still show up, because
17 inactive licenses show up, and the date of original
18 licensure might show up. I didn't even pursue it to that
19 point. You know, the answer is it depends, and the next
20 step, maybe you call them and say I've identified these
21 people, when did their license go inactive.
22    Q. My question is: You don't, you did not run this
23 search in August of 2005 of this particular database,
24 true?
25    A. I did not.

App. 940

J. Lester Alexander III, 12/7/2010      Page: 290

```
 1                    REPORTER'S CERTIFICATE

 2   STATE OF MINNESOTA )
                        ) ss.
 3   COUNTY OF CARVER   )

 4

 5        I hereby certify that I reported the video
     deposition of J. LESTER ALEXANDER on the 7th day of
 6   December, 2010, in Minneapolis, Minnesota, and that the
     witness was by me first duly sworn to tell the truth;
 7

 8        That the testimony was transcribed by me and is a
     true record of the testimony of the witness;
 9

10        That the cost of the original has been charged to
     the party who noticed the deposition, and that all
11   parties who ordered copies have been charged at the same
     rate for such copies;
12

13        That I am not a relative or employee or attorney or
     counsel of any of the parties, or a relative or employee
14   of such attorney or counsel;

15        That I am not financially interested in the action
     and have no contract with the parties, attorneys, or
16   persons with an interest in the action that affects or
     has a substantial tendency to affect my impartiality;
17

18        That the right to read and sign the deposition by
     the witness was reserved;
19

20        WITNESS MY HAND AND SEAL THIS 14th day of December

21   2010.

22

23        _____

24        Elizabeth J. Gangl
          Notary Public, Carver County, Minnesota
25        My commission expires 01/31/2015
```

*612-339-0545    * Paradigm Reporting & Captioning *   800-545-9668*      #54428

# EXHIBIT 36

# Document Filed Under Seal

# (App. 943-951)

# EXHIBIT 37

# Document Filed Under Seal

# (App. 953-974)

# EXHIBIT 38

# Document Filed Under Seal

# (App. 976-997)

# EXHIBIT 39

# Document Filed Under Seal

# (App. 999-1014)

# EXHIBIT 40

# Document Filed Under Seal

# (App. 1016-1047)

# EXHIBIT 41

# Document Filed Under Seal

# (App. 1049-1051)

# EXHIBIT 42

# Document Filed Under Seal

# (App. 1053-1055)

# EXHIBIT 43

# Document Filed Under Seal

# (App. 1057-1059)

# EXHIBIT 44

# Document Filed Under Seal

# (App. 1061-1063)

# EXHIBIT 45

# Document Filed Under Seal

# (App. 1065-1080)

# EXHIBIT 46

App. 1081

# Document Filed Under Seal

# (App. 1082-1083)

# EXHIBIT 47

# Document Filed Under Seal

# (App. 1085-1092)

# EXHIBIT 48

# Document Filed Under Seal

# (App. 1094-1099)

# EXHIBIT 49

# Document Filed Under Seal

# (App. 1101-1103)

# EXHIBIT 50

# Document Filed Under Seal

# (App. 1105-1108)

# EXHIBIT 51

# Document Filed Under Seal

# (App. 1110-1111)

# EXHIBIT 52

# Document Filed Under Seal

# (App. 1113-1119)

# EXHIBIT 53

# Document Filed Under Seal

# (App. 1121-1123)

# EXHIBIT 54

# Document Filed Under Seal

# (App. 1125-1127)

# EXHIBIT 55

# Document Filed Under Seal

# (App. 1129-1141)

# EXHIBIT 56

# Document Filed Under Seal

# (App. 1143-1154)

# EXHIBIT 57

# Document Filed Under Seal

# (App. 1156-1159)

# EXHIBIT 58

# Document Filed Under Seal

# (App. 1161-1162)

# EXHIBIT 59

# Document Filed Under Seal

# (App. 1164-1166)