# EXHIBIT 79

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| PEGGY ROIF ROTSTAIN, et al. on behalf of themselves and all others similarly situated<br><br>v.<br><br>TRUSTMARK NATIONAL BANK, et al., Defendants. | Civil Action No 3:09-CV-02384-N-BG<br><br>Judge: Hon. David C. Godbey<br><br>Mag.: Hon. Nancy M. Koenig |

## DECLARATION OF ANTONIO GIDI

### I.   INTRODUCTION

#### A.   The Consultation

1. I have been asked to provide an opinion with respect to the likelihood that certain Latin American countries will recognize and accord preclusive effect to a class action judgment in the above-captioned action pending in the United States District Court for the Northern District of Texas, Dallas Division.

2. To prepare this Declaration, I have considered the following materials provided to me by counsel for the Defendants: Plaintiffs' Second Amended Class Action Complaint filed in the United States District Court for the Northern District of Texas Dallas Division ("Second Amended Complaint"); Plaintiff's Memorandum Supporting Plaintiffs' Motion for Class Certification, for Designation of Class Representatives and Class Counsel and exhibits thereto; Declaration of Receiver Ralph S. Janvey dated October 30, 2014 (the "Janvey Declaration") with Exhibits A-C (which includes Order of Notice and Proof of Claim, May 4, 2012; Notice of Bar Date and Procedures for Submitting Proofs of Claim; Notice of Last Day to Submit a Proof of Claim Form; Notice of Deficiency; Notice of Determination; Settlement Agreement and Cross-Border Protocol).

3. I reserve the right to supplement or modify my opinions expressed herein, particularly in light of any new arguments raised or materials presented by Plaintiffs in this case.

4.   I am being compensated for my work in connection with this case at my customary consulting rate of U.S. $ 500.00 per hour.

## B.   Summary of Opinions

5.   The Motion for Class Certification, without presenting any direct evidence (just decisions from U.S. courts) posits that foreign jurisdictions "would more likely than not enforce a U.S. class action judgment." (pp. 50-1).

6.   That is not the right question.  The issue here is whether these foreign countries would recognize a class action judgment or settlement in a U.S. opt-out action against the interests of foreign nationals, so that absent class members would be bound by any such judgment.  For the reasons explained below, I conclude that (1) Venezuela, (2) Peru, (3) Panama, (4) El Salvador, (5) Ecuador, and (6) Mexico would not.[1]

## C.   Qualifications

7.   Class actions have been the subject of my continuous research for the past twenty-five years.  After graduating from law school in Brazil, I completed a three-year Master's Degree program in Civil Procedure at PUC-São Paulo.  My Masters in Law dissertation was published in 1995 as a 250-page book on *res judicata* and *lis pendens* in Brazilian class actions.[2]

8.   Following my Master's Degree, I lived for more than a year and a half in Italy, where I studied Italian Civil Procedure at the University of Milan, with special attention to the development of class actions in that country.  I also studied the development of class actions in France for approximately five months, at the University of Paris I Law School (Panthéon-Sorbonne).

9.   In 1996, I moved to the United States to continue my research on American class actions.  During my years as a Visiting Scholar in the United States, I finished two doctorates in law, one in Brazil (PUC-São Paulo) and another doctorate at the University of Pennsylvania Law School.  The respective doctoral theses were a 600-page treatise about American class actions[3] and a paper on Brazilian class actions.[4]  I also published a paper about Peruvian class actions.[5]

---

[1] Unless otherwise noted, all translations of foreign documents are my own.

[2] *See* ANTONIO GIDI, COISA JULGADA E LITISPENDÊNCIA EM AÇÕES COLETIVAS (1995).

[3] *See* ANTONIO GIDI, A CLASS ACTION COMO INSTRUMENTO DE TUTELA COLETIVA DOS DIREITOS (2007).

[4] *See* Antonio Gidi, *Class Actions in Brazil – A Model for Civil Law Countries*, 51 AM. J. COMP. L. 311 (2003).

[5] *See* Antonio Gidi, *Comentarios al art. 82 del Código Procesal Civil Peruano*, *in* JOHAN S. CAMARGO ACOSTA (ED.), I CÓDIGO PROCESAL CIVIL COMENTADO POR LOS MEJORES ESPECIALISTAS 360 (2010) (describing and critiquing the Peruvian class action).

2

10.  In 2005, I published a Model Class Action Code for Civil Law Countries.[6]  This model code was the culmination of more than a decade of study with the objective of creating class action legislation for civil law countries.  This project has been translated into several languages and published in several countries.[7]  In addition, I was one of the three General Reporters of the Class Action Model Code for Latin American Countries, a project sponsored by the Ibero-American Institute of Civil Procedure, which was the product of four years of study, analysis, and drafting by eleven legal scholars from various Latin American countries.[8]  Following that work, I co-edited three books in Mexico about the Ibero-American project, coordinating the scholarship of more than sixty class action scholars from Latin America and all over the world.[9]

11.  My class action research led to invitations from the Brazilian Ministry of Justice and from the Mexican Senate to consult on class action legislation.  I was one of the main drafters of the proposed Class Action Bill in Brazil[10] and of the Class Action Law in Mexico, enacted in 2011.[11]  I have also published a 500-page monograph on the subject of class action codification in Brazil and in civil-law countries in general.[12]

---

[6] *See* Antonio Gidi, *The Class Action Code: A Model for Civil-Law Countries*, 23 ARIZ. J. INT'L & COMP. L. 37 (2005).

[7] *See, e.g.*, Gidi, *Código de Processo Civil Coletivo. Um Modelo Para Países de Direito Escrito*, 111 REPRO 192 (2003) [**Brazil**]; Gidi, *Código de Proceso Civil Colectivo. Un Modelo Para Países de Derecho Civil*, 11 REVISTA PRÁCTICA DE DERECHO DE DAÑOS 56 (2003) (translated into Spanish by Adriana León and Joaquín Silguero Estagnan) [**Spain**]; *also published in* XXVI CONGRESO COLOMBIANO DE DERECHO PROCESAL, UNIVERSIDAD LIBRE 601 (2005) [**Colombia**]; *also published in* EDUARDO OTEÍZA (ORG.). PROCESOS COLECTIVOS 463 (2006) [**Argentina**]; *also published in* 126 REVISTA JURÍDICA DEL PERU 93 (2011) [**Peru**]; *also published in* 16 REVISTA VASCA DE DERECHO PROCESAL Y ARBITRAJE 753 (2004) [**Spain**]; Gidi, *Il codice del proceso civile collettivo. Un modello per i paesi di diritto civile*, RIVISTA TRIMESTRALE DI DIRITTO E PROCEDURA CIVILE, Anno LIX Fasc 2, 2005, p. 698-711 (translated into Italian by Alessandro Barzaghi) [**Italy**]; Gidi, *Le Code De L'Action Collective: Un Modéle Pour les Pays de Droit Civil*, in CLOSET-MARCHAL & COMPERNOLLE (EDS.) VERS UNE "CLASS ACTION" EN DROIT BELGE? 147-63 (2008) (translated into French by M. Guy Sohou and Caroline Gilbert, with an introductory study in Dutch by Stefaan Voet) [**Belgium**]; GIDI, LAS ACCIONES COLECTIVAS (2004) [**Mexico**]; Gidi, 附录:集团诉讼条例 专家建议案)—大陆法系国家模板, 2014 XIAMEN UNIVERSITY L. REV. 271 [**China**]; قانون دعوای جمعی الگویی لا سبویل سیستم کشور های برای [**Iran**].

[8] *See* Ada Pellegrini Grinover, Kazuo Watanabe & Antonio Gidi, *Código Modelo de Procesos Colectivos para Iberoamérica*, 9 REVISTA IBEROAMERICANA DE DERECHO PROCESAL 251 (2006).

[9] *See* ANTONIO GIDI AND EDUARDO FERRER (EDS.), CÓDIGO MODELO DE PROCESOS COLECTIVOS. UN DIÁLOGO IBEROAMERICANO (2009); ANTONIO GIDI AND EDUARDO FERRER (EDS.), PROCESOS COLECTIVOS, 2nd edition (2004); ANTONIO GIDI AND EDUARDO FERRER (EDS.), LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS, 2nd edition (2004).  One of these books was later published in Brazil as well.

[10] *See* Federal Bill Number 5,139 of 2009.

[11] *See* Federal Decree of August 30, 2011.

[12] *See* ANTONIO GIDI, RUMO A UM CÓDIGO DE PROCESSO CIVIL COLETIVO (2008).

3

12.    Most recently, I have published three articles in English about preclusion in the context of class actions and the recognition of class action judgments abroad.[13]

13.    Although my main area of expertise is class actions, I also study comparative civil procedure and international litigation in general.  From 1997 to 2005, I served as Associate Reporter to The American Law Institute's project on Principles and Rules of Transnational Civil Procedure, a project geared towards creating uniform rules of civil procedure for international litigation.  After completion and final approval, the Principles of Civil Procedure was published by Cambridge University Press in 2006.[14] This project has been published in several languages and in several countries.  In 2009, I co-published a book on Comparative Law with Foundation Press and was in charge of the chapters on comparative civil procedure.[15]  This book is widely used in American law schools.

14.    I have taught Civil Procedure, Class Actions, Complex Litigation, Comparative Civil Procedure, and Comparative Law in the United States for the past fifteen years, first as an Adjunct at the University of Pennsylvania Law School, then as an Associate Professor at the University of Houston Law Center, and finally at Syracuse University College of Law.  I have participated in conferences, presented papers, and taught in numerous Latin American countries and Europe, mostly about class actions, but also about domestic civil procedure, comparative civil procedure, and international litigation.

15.    I have not testified as an expert at trial or by deposition in the previous four years.

16.    I attach my *curriculum vitae* as **Exhibit A** hereto.

### D.    Overview

17.    This is an issue of first impression.  Despite the fact that recognition of foreign judgments is a frequently-arising issue, I am not aware of any case in which an opt-out class action judgment or settlement was recognized and enforced in any Latin American country.

18.    The recognition and enforcement of class action judgments in Latin America present some very specific considerations that do not arise in the context of traditional litigation.

---

[13] *See* Antonio Gidi, *Loneliness in the Crowd: Why Nobody Wants Opt-Out Class Members to Assert Offensive Issue Preclusion Against a Class Defendant*, 66 SMU L. REV. 1 (2013); *Recognition of U.S. Class Action Judgments Abroad*, 37 BROOKLYN J. INT'L L. 893 (2012); *Issue Preclusion Effect of Class Certification Orders*, 63 HASTINGS L.J. 1023 (2012).

[14] *See* THE AMERICAN LAW INSTITUTE, PRINCIPLES OF TRANSNATIONAL CIVIL PROCEDURE (Cambridge University Press 2006) (ALI/UNIDROIT Associate Reporter and Secretary) (with Hazard, Stürner, and Taruffo).

[15] *See* UGO MATTEI, TEEMU RUSKOLA & ANTONIO GIDI, SCHLESINGER'S COMPARATIVE LAW (2009).

4

19.   Here, Plaintiffs assert generally, "it is more likely than not that courts of the various jurisdictions at issue would recognize, enforce, and give preclusive effect to a judgment entered in this action." (*see* Plaintiffs' Memorandum, p. 54).   Their analysis cites previous decisions by U.S. courts, but does not address the merits of issues that need to be confronted.

20.   The issue is not whether a traditional U.S. judgment in an individual lawsuit between one plaintiff and one defendant would be recognized or enforced in Latin America. Nor is the issue here whether a U.S. class action money judgment favorable to the plaintiff class would be enforced in Latin America if a class member wants to enforce it against the defendants.

21.   Rather, the issues at stake are:

> (1) whether a U.S. class action judgment against the interest of the class would bar class members from bringing individual (or class) claims against the same defendant(s) in Latin America; and

> (2) whether a U.S. class action judgment (or settlement) partly in favor of the class, but that a class member finds unsatisfactory for any reason, would bar class members from bringing individual (or class) claims against the same defendant(s) in Latin America for the remainder of the claim.

22.   These are the issues.   Thus, I will not discuss the requirements that the *defendants* be properly served with process and have an opportunity to present their case.   Nor will I discuss whether this Court has jurisdiction over the *defendants* under U.S. law or Latin American law.   In my opinion, those issues are irrelevant.

23.   In a class action, the traditional issues are reversed:  it is necessary to look not to the defendant, but to the absent members of the plaintiff class.  **The issue addressed in this Declaration, therefore, is whether a U.S. class action judgment (or settlement) that is totally or partially against the interest of class members is binding on the class members who are domiciled in Latin American countries and who did not personally appear in the class action.  The issue is whether a Latin American country would recognize an opt-out class action judgment to bar relitigation of the same claim in Latin America by Latin American citizens.**

24.   I conclude that the courts in Latin American countries, generally, and in (1) Venezuela, (2) Peru, (3) Panama, (4) El Salvador, (5) Ecuador, and (6) Mexico in particular, would rule in the negative.[16]   Three general obstacles to recognition of opt-out class action judgments are relevant here:

---

[16] Although my analysis applies to the vast majority, if not all, Latin American countries, I only specifically address Venezuela, Peru, Panama, El Salvador, Ecuador, and Mexico.

(1) first, an opt-out class action for damages would violate the public policy of those Latin American countries that: (a) do not have class actions for damages; (b) have class actions, but only give them preclusive effect if the judgment is favorable to the class; or (c) have only opt-in class actions;

(2) second, Latin American countries will demand that parties and absent class members in a foreign proceeding be personally served with process and have an opportunity to present their claims. Latin American countries are not likely to recognize a foreign judgment that binds their domiciliaries in a proceeding in a foreign country, including the U.S., in which those domiciliaries did not voluntarily participate and to which they were not made parties through service of process performed through internationally acceptable means (rogatory letters); and

(3) third, Latin American countries would rule that U.S. courts have no jurisdiction over Latin American class members who acquired their CDs outside of the United States. This analysis turns not on whether the U.S. court concluded that it could properly exercise jurisdiction over the absent plaintiffs under the due process clause of the United States Constitution, but instead on generally established principles of jurisdiction under international law.

25. My analysis proceeds in two parts. First, I discuss the general obstacles to recognition in Latin America of a U.S. opt-out class action judgment for damages. Second, I provide a country-by-country analysis of these general principles to conclude that Venezuela, Peru, Panama, El Salvador, Ecuador, and Mexico would not recognize a judgment in an opt-out class action for damages to preclude a claim by an absent class member.

## II.    OBSTACLES TO RECOGNITION AND ENFORCEMENT

### A.    Opt-Out Class Action Judgments Violate Public Policy

26. It is my professional opinion that the large majority if not all Latin American countries will not recognize or enforce a U.S. class action judgment because an opt-out class action for damages would violate their public policy.

27. As discussed in more detail below, there are three independent, and sometimes overlapping, reasons why recognition of an opt-out class action for damages as binding on absent class members would violate the public policy of certain Latin American countries. First, it would violate the public policy of countries that do not have class actions for damages. Second, it would violate the public policy of countries that give preclusive effect only to a class action judgment that is favorable to the class. Third, it

6

would violate the public policy of countries that have adopted an opt-in class action mechanism.

28.  The first reason is that several Latin American countries simply do not have class actions *for damages* in statutes, rules, or case law.  Some of these countries may have injunctive class actions with different levels of sophistication, ranging from a more liberal injunctive class action for the protection of the environment or consumers to a very limited type of injunctive class action for the protection of the public interest.[17]

29.  The prevailing rule in these countries is that someone may be deprived of their personal rights in courts *only* through due process of law.  Due process of law includes the need to be personally served with process and granted a reasonable opportunity to present claims and defenses.  The idea that individuals may have their rights decided in court without receiving service of process and becoming a formal party is unacceptable: there is no such thing as an unnamed or absent class member in these Latin American countries.

30.  Class actions for damages, particularly opt-out class actions, are so alien to the procedural law of these countries as to be considered a violation of due process of law and against these countries' public policy and constitutional values.  Therefore, these countries would not recognize a U.S. opt-out class action judgment issued against the interests of their domiciliaries.

31.  A second reason that a U.S. opt-out class action judgment would be against the public policy of certain Latin American countries arises from differences between the *res judicata* law of those jurisdictions and that of the United States.  In some Latin American countries, a class action judgment is binding only to the extent that it is favorable to the interests of the class members.  Therefore, a judgment for defendants or a judgment or settlement that is for less than the full amount of the claim is not binding on the class members.

32.  In addition, in some Latin American countries, plaintiffs who present new evidence or even raise new facts would be able to bring the same class action or a corresponding individual action.  Although the concepts of "new evidence" and "new facts" are not clearly defined, in my opinion, they encompass both:  (1) evidence or facts that were available at the time of the proceeding but not produced (with or without due diligence); and (2) evidence or facts that were unavailable.[18]

---

[17] *See* José Carlos Barbosa Moreira, *A ação popular do direito brasileiro como instrumento de tutela jurisdicional dos chamados interesses difusos*, in Temas de Direito Processual (1977) (discussing the Roman *actio popularis* as an injunctive class action).

[18] *See* Antonio Gidi, Coisa julgada e litispendência em ações coletivas 131-38 (1995) (discussing the concept of "new evidence" for purposes of bringing the same class action again); Antonio Gidi, *cosa juzgada en acciones colectivas* in Antonio Gidi and Eduardo Ferrer (eds.), La Tutela de los Derechos Difusos, Colectivos e Individuales Homogéneos 280-84 (2004) (idem).

7

33. These flexible and liberal *res judicata* rules regarding class judgments exist throughout Latin America.  Binding an absent class member to an adverse judgment in a proceeding in which he or she did not participate or expressly join would be against these countries' due process of law, public policy, and constitutional values. Therefore, these countries would not recognize a U.S. opt-out class action judgment issued against the interests of its domiciliaries.

34. Third, countries that have adopted an opt-in class action mechanism would not recognize a judgment rendered in an opt-out class action.  The adoption of opt-in, instead of opt-out, class actions stems from the widespread perception that binding an absent class member to a judgment in a proceeding in which he or she did not participate or expressly join would be a violation of due process of law and against the countries' public policy and constitutional values.[19]  Therefore, a country that has adopted an opt-in class action mechanism would not recognize a U.S. opt-out class action judgment issued against the interests of their domiciliaries.

**B.  Formal Service of Process to Class Members through Rogatory Letters is Essential to Foreign Judgment Recognition and Enforcement in Latin America**

35. As in the United States, a key requirement of due process of law in Latin America is that a party be provided adequate notice and an opportunity to participate in the proceedings.  These Constitutional requirements must be evaluated under the standard of the State of enforcement.

36. For example, the Bustamante Code requires "personal service of process to the parties or to a legal representative."[20]  A similar requirement is found in Article 2(e) of the 1979 Inter-American Convention on the Extraterritorial Validity of Foreign Judgments and Arbitral Awards:  "The plaintiff has been summoned or subpoenaed in due legal form substantially equivalent to that accepted by the law of the State where the judgment, award or decision is to take effect."

37. Service of process on a party domiciled abroad must be effectuated in a manner that is internationally accepted if a judgment is to be recognized abroad.  For example, a large number of Latin American countries (including all countries specifically discussed in this Declaration) are signatories to the Inter-American Convention on Letters Rogatory, as is the United States.  Most Latin American countries will not accept anything short

---

[19] Mexico, for example, has adopted an opt-in class action mechanism, and thus a judgment issued in an opt-out class action would not be recognized or enforced in that country.

[20] *See* Bustamante Code, Article 423.2:  "Que las partes hayan sido citadas personalmente o por su representante legal, para el juicio." (that the parties have received service of process either personally or through their legal representative).  The Bustamante Code is a treaty in force in several Latin American countries, including Ecuador, El Salvador, Panama, and Peru.  It deals with private international law, including the enforcement of foreign judgments.

8

of service by rogatory letter[21] as adequate service of process on their residents for purposes of granting *exequatur* on a foreign judgment[22]—they will not accept service of process by publication, they will not accept service of process by letter, and they will not accept service of process through the attorney.[23]   *A fortiori*, a simple "adequate class action notice" is insufficient.

38.   An integral part of notice (and due process of law) is the idea of participation in the proceeding and the opportunity to present claims and defenses.  For example, according to Article 23(f) of the 1979 Inter-American Convention on the Extraterritorial Validity of Foreign Judgments and Arbitral Awards, a foreign judgment would be recognized only if "the parties had an opportunity to present their defense."

39.   Naturally, an opportunity to present one's claims or defenses is irrelevant when the claimant makes and prevails in all possible claims of a proceeding.  The problem only arises when the person who did not have such an opportunity loses the case, loses one or more claims, or fails to assert a claim.  That is when the lack of participation is relevant.

40.   Typically, we speak of notice or service of process to a defendant.  We do so because the plaintiff was the one who originally brought a lawsuit and needs no notice about it.  It would be indeed outrageous if a plaintiff would require to receive notice of the lawsuit he or she brought.  In the class action setting, however, in addition to the defendant, absent class members also need to be notified of the filing of a class action brought on their behalf.

41.   My opinions in the present case proceed on the assumption that the absent foreign class members will not participate or expressly join in the class action proceeding.

42.   In light of the discussion above, Latin American countries will refuse to recognize a U.S. class action judgment unfavorable to the interest of their domiciliaries because those domiciliaries were not made parties through an internationally acceptable service

---

[21] *See* Bustamante Code, Article 388 ("all judicial activity that one member state need to practice in another will be performed though letter rogatory. . . .") and Article 427 ("the service of process of whoever must be heard will be performed through letter rogatory according to this Code"); *see also* Julie C. Ferguson and David A. Pearl, *International Litigation in the Hemisphere*, 13 Am. U. Int'l L. Rev. 953, 959 (1998) ("A letter of request has been the customary and preferred method for transnational service of process in most civil law countries.").

[22] *See* Ferguson & Pearl, *supra* note 21, at 959, ("[I]f counsel will need to enforce a foreign judgment in [a Latin American country], counsel should make sure that service is effected in accordance with the laws of that country as well."); Maria Angela Jardim de Santa Cruz Oliveira, *Recognition and Enforcement of United States Money Judgments in Brazil*, 19 N.Y. Int'l L. Rev. 1, 14 (2006) ("[I]f the respondent is domiciled in Brazil, notice of process must comply with Brazilian law, in that the foreign country must send a rogatory letter to Brazil requesting that the Brazilian domiciled defendant be served notice of the process.").

[23] *See* Oliveira, *supra* note 22, at 15 ("[A]ffidavits, notifications by lawyers, by air mail, or any other method of properly serving notice of process according to foreign jurisdictions' law are invalid if served in Brazilian territory.").

9

of process.  In addition, Latin American countries will not recognize a U.S. class action judgment because the absent class members will not participate or expressly join in the proceedings.

**C.     Latin American Courts Would Conclude that the United States Had Not Validly Obtained Jurisdiction Over the Absent Class Members**

43.   In order to recognize and enforce a foreign judgment—in this case, a class action judgment (or court-approved settlement) issued by the United States District Court for the Northern District of Texas—Latin American countries would demand that the foreign court have jurisdiction over the parties.  Where parties <u>have not taken actions to consent to jurisdiction in the foreign court</u>, Latin American courts will apply principles of jurisdiction developed in international law to determine whether there were significant contacts with the United States, which are necessary to create jurisdiction.

44.   This analysis turns not on whether the U.S. court concluded that it could properly exercise jurisdiction over the absent class members under the due process clause of the United States Constitution, but instead turns on the laws of the recognizing country and generally established principles of jurisdiction under private international law.

45.   This is the general rule in most Latin American countries.  For example, Article 2104.2 of the Civil Code of Peru explicitly states that the foreign court must have jurisdiction according to Peru's own private international law and general principles of international jurisdiction.  Article 556 of the Salvadoran Code of Civil Procedure states that the foreign court must have jurisdiction according to the rules of international jurisdiction of El Salvador.  Article 423 of the Ecuadorian Private International Law Code states that the original court must have jurisdiction to decide the case according to the international rules of the Bustamante Code.  Under Article 423(1) of the Bustamante Code, the foreign court must have jurisdiction "according to the rules in this Code" which means that the jurisdiction seeking to enforce a foreign judgment must apply international rules of jurisdiction and not those of the foreign jurisdiction.[24]   Other Latin American countries also require that the foreign court must have jurisdiction according to the rules of the country where the judgment is sought to be recognized or enforced.[25]

---

[24] *See* Bustamante Code, Article 423.1: "Que tenga competencia para conocer del asunto y juzgarlo, de acuerdo con las reglas de este Código, el juez o tribunal que la haya dictado."

[25] *See* Venezuela Private International Law Act, Article 53.4 (stating that the foreign court must have jurisdiction according to Venezuelan law); Article 483 of the Brazilian Code of Civil Procedure (stating that a foreign judgment will only be enforceable in Brazil if it complies with the Brazilian Supreme Court Rules and the Brazilian Supreme Court Rule 217 (stating that a prerequisite of enforcement of foreign judgments is that the foreign court have jurisdiction over the party).  This rule is well settled in the Brazilian legal system.  *See* Decree Law 4,657/42, Introductory Law to the Civil Code (stating that a prerequisite of enforcement of foreign judgments is that the foreign court have jurisdiction over the party).

10

46.  Typically, we speak of jurisdiction over the defendant.  We do so because the plaintiff consents to jurisdiction by bringing the claim in the forum and because usually the defendant is the one against whom the judgment will be enforced.  In the class action setting, however, the absent class member's rights are affected in much the same way as a traditional defendant's rights.  Because absent class members do not take affirmative steps to bring a class action, they cannot be said to have consented to the jurisdiction of the U.S. courts.  In such circumstances, one simply cannot focus on the defendant to bar the plaintiff.

47.  I understand that in this case putative class members filed a proof-of-claim form with the Receiver, subjecting themselves to the jurisdiction of the United States District Court for the Northern District of Texas for all purposes solely related to the claims asserted in the SEC action.  The exact words of the jurisdiction clause on the proof-of-claim form are the following:

> CONSENT TO JURISDICTION:  If you submit a Proof of Claim Form in this case, you consent to the jurisdiction of the District Court for all purposes *related to this claim* and agree to be bound by its decisions, including, without limitation, a determination as to the validity and amount of any *claims asserted against the Receivership Entities*. In submitting a Proof of Claim Form, you agree to be bound by the actions of the District Court even if that means your claim is limited or denied.

Proof of Claim Form, p. 4 (emphases added).

48.  Based on this language, one might argue that the receivership is equivalent to an "opt-in" class of those who have filed claims.

49.  By its own terms, however, **the consent to jurisdiction was limited to the Receiver's claims process**.  The language on the proof-of-claim form is clear that the consent to jurisdiction was "for all purposes related to this claim" and only to "claims asserted against the Receivership Entities."

50.  The current lawsuit is different from the SEC action in (at least) two important aspects: (1) the type of proceeding; and (2) the parties involved.  First, unlike the SEC action, the current lawsuit is a class action.  Second, the current lawsuit is not brought against the Stanford entities, but against the financial institutions they allegedly banked with.

51.  The putative class members never subjected themselves to the jurisdiction of this Court for purposes of the class action brought against the financial institutions (different parties), nor have they ever opted into a class action (different type of lawsuit).

52.  The fact that, for purposes of efficiency, these two lawsuits are in the same court and that the plaintiffs have proposed that the proceeds of the second will be distributed

11

through the Receivership created by the first[26] should not obscure the fact that these are two completely different lawsuits, and that is how a Latin American court will see the situation.   While the SEC action was styled Civil Action No. 3:09-CV-0298-N, *Securities & Exchange Commission v. Stanford International Bank, Ltd., et al.*, the current action is styled Civil Action No 3:09-CV-02384-N-BG, *Peggy Roif Rotstain, et al. v. Trustmark National Bank, et al.*

53.     Thus, putative class members' "opt-in" to the Receivership claims process simply has no bearing on their participation in this case.

54.     There is a practical way of conceptualizing whether this Court has jurisdiction over the putative absent class members in the class action against the Banking Institutions.  One needs only to imagine the inverse situation:  would the Banking Institutions be able to sue the foreign investors individually in this Court?  Would this Court have jurisdiction over the foreign investors in a lawsuit brought by the Banking Institutions just because it has jurisdiction over them to determine their claims in the SEC action?  The obvious answer is no.

55.     Submitting a proof-of-claim form to the Receiver cannot be a trap for the foreign investors, who are not subjecting themselves to the general jurisdiction of U.S. courts to be sued by anyone about any claim.  It does not matter how a U.S. court views its own jurisdiction for the purposes of this inquiry: the relevant point of view is the perspective of the Latin American countries—that is how a foreign court would see the matter if it is faced with the prospect of enforcing a class action judgment against its domiciliaries.

56.     There are simply no accepted standards under which Latin American courts would accept that a U.S. court would have jurisdiction over a foreigner who lacked significant contacts with the United States, unless the foreigner expressly consented to jurisdiction.

57.     It is my opinion, therefore, that the vast majority of, if not all, Latin American countries would not recognize a U.S. class action judgment as binding their domiciliaries, because courts in Latin American countries would find that there is a lack of personal jurisdiction over the absent members of the plaintiff class.

### III.     COUNTRY-BY-COUNTRY ANALYSIS

58.     As described above, there are three general reasons why Latin American countries would not recognize or enforce an opt-out class action for damages against the interest of their domiciliaries:  (1) opt-out class action judgments violate public policy; (2) there is no formal service of process to class members by internationally acceptable means;

---

[26] *See* Janvey Declaration (Oct. 30, 2014) ¶ 19 ("I have been coordinating the above litigation with the investor putative class action litigation against almost identical sets of defendants, and putative class counsel have agreed that for purposes of efficiency, <u>any proceeds recovered from the class action cases will be distributed through the Receivership claims distribution mechanism</u>.") (emphasis added).

12

and (3) under Latin American concepts of jurisdiction, the United States cannot validly obtain jurisdiction over absent class members.

59.  I now provide an analysis of how these general reasons apply to each of the countries at issue.

## Venezuela

60.  Venezuela has ratified the 1979 Inter-American Convention on the Extraterritorial Validity of Foreign Judgments and Arbitral Awards.[27]  Because the United States is not a party to that Convention, the applicable law is the Venezuelan Code of Civil Procedure and rules of Private International Law, which are consistent with the principles in the Convention.

61.  According to articles 5 and 53 of the Private International Law Act, a foreign judgment will be recognized in Venezuela as long as, among other things: (1) it is not contrary to the internal public order; (2) the foreign court had jurisdiction over the controversy, according to rules of international jurisdiction provided in the Venezuelan law; and (3) the defendant has received personal service of process in a way to secure his or her right of defense.[28]

62.  Venezuela does not recognize opt-out class actions for individual damages. Venezuelan legislation allows only injunctive class actions for the protection of rights that belong to a group of indeterminate people.  The Venezuelan legal system does not recognize a rule that allows an "adequate representative" to represent the individual interests of absent people who are not made parties to a proceeding through service of process.  Binding a nonparty would violate the constitutional principle of due process of law.  Therefore, a judgment rendered in an opt-out class action for damages would violate Venezuela's public policy.

63.  Venezuela is a signatory to the Inter-American Convention on Letters Rogatory, as is the United States.[29]  It is therefore expected that class members domiciled in Venezuela

---

[27] *See Inter-American Convention on Extraterritorial Validity of Foreign Judgments and Arbitral Awards*, available at http://www.oas.org/juridico/english/sigs/b-41.html (last visited June 1st, 2015).

[28] *See* Private International Law Act: Artículo 5. Las situaciones jurídicas creadas de conformidad con un Derecho extranjero que se atribuya competencia de acuerdo con criterios internacionalmente admisibles producirán efectos en la República, a no ser que contradigan los objetivos de las normas venezolanas de conflicto, que el Derecho venezolano reclame competencia exclusiva en la materia respectiva, o que sean manifiestamente incompatibles con los principios esenciales del orden público venezolano. Artículo 53. Las sentencias extranjeras tendrán efecto en Venezuela siempre que reúnan los siguientes requisitos:  4. Que los tribunales del Estado sentenciador tengan jurisdicción para conocer de la causa de acuerdo con los principios generales de jurisdicción consagrados en el Capítulo IX de esta Ley; 5. Que el demandado haya sido debidamente citado, con tiempo suficiente para comparecer, y que se le hayan otorgado en general, las garantías procesales que aseguren una razonable posibilidad de defensa.

[29] *See* Inter-American Treaty on Letters Rogatory, *available at* http://www.oas.org/juridico/english/sigs/b-36.html (last visited June 1st, 2015).

13

will receive notice of the class action proceeding through rogatory letters. Because notice of the class action proceeding to domiciliaries of Venezuela likely would not be effectuated by letters rogatory (or other internationally acceptable means), Venezuela would not recognize or enforce a U.S. opt-out class action judgment against their interests.

64. In order to recognize and enforce a foreign judgment, Venezuelan courts demand that the foreign court have personal jurisdiction according to Venezuela's own rules of private international law and the general principles of international jurisdiction.[30] Because Venezuela will consider that the United States does not have international jurisdiction over domiciliaries of Venezuela without contacts in the United States, Venezuela will not recognize or enforce a U.S. opt-out class action judgment against their interest.

65. In summary, it is my opinion that Venezuela would not recognize or enforce a U.S. opt-out class action for damages against the interest of its domiciliaries because Venezuela will find that: (1) a judgment rendered in an opt-out class action for damages would violate Venezuela's public policy; (2) the absent class members were not served with process by internationally acceptable means; and (3) the United States does not have jurisdiction over Venezuela's domiciliaries without contacts in the United States.

66. In the specific case of Venezuela, one aspect cannot be neglected: the lack of judicial independence in that country, coupled with its open anti-American stance would make it almost impossible to recognize a U.S. class action judgment against the interests of Venezuelan citizens. This environment will more likely cut against a company or bank trying to enforce an American judgment against a Venezuelan national, especially in such a notorious case that showcased the failure of the American Financial Market.

67. In addition, considering that the United States has recently denied recognition to a class action judgment from an Ecuadorean court (*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014)), it is easy to foresee how this event could be used in Venezuela as reason not to recognize a U.S. class action judgment.

## Peru

68. Peru has ratified the 1979 Inter-American Convention on the Extraterritorial Validity of Foreign Judgments and Arbitral Awards.[31] Because the United States is not a party to that Convention and does not have a treaty with Peru regarding recognition of foreign

---

[30] *See* Private International Law Act: Artículo 53. Las sentencias extranjeras tendrán efecto en Venezuela siempre que reúnan los siguientes requisitos: 4. Que los tribunales del Estado sentenciador tengan jurisdicción para conocer de la causa de acuerdo con los principios generales de jurisdicción consagrados en el Capítulo IX de esta Ley")

[31] *See Inter-American Convention on Extraterritorial Validity of Foreign Judgments and Arbitral Awards*, available at http://www.oas.org/juridico/english/sigs/b-41.html (last visited June 1st, 2015).

judgments, the applicable law is the Peruvian Code of Civil Procedure, which is consistent with the principles in the Convention.

69.     Article 2104 of the Peruvian Civil Code provides that foreign judgments may be recognized in Peru as long as: (1) the judgment is not against the Peruvian public policy; (2) the defendant was served with process according to the laws of the proceeding, was given a reasonable time to participate, and was afforded procedural guarantees to defend; and (3) the foreign court has personal jurisdiction according to Peru's own rules of private international law and the general principles of international jurisdiction.[32]

70.     Furthermore, in the Peruvian system of class actions, only judgments that are favorable to absent class members are binding.  Under Article 82.6 of the Code of Civil Procedure, "the final judgment that declares the claim meritorious, will bind those who did not participate in the proceeding."[33]  Therefore, a U.S. class-action judgment would be given preclusive effect in Peru only if favorable to the absent class members.

71.     Peru is a signatory to the Inter-American Convention on Letters Rogatory, as is the United States.[34]  It is therefore expected that class members domiciled in Peru will receive notice of the class action proceeding through rogatory letters.  Because notice of the class action proceeding to domiciliaries of Peru likely would not be effectuated by letters rogatory (or other internationally acceptable means), Peru would not recognize or enforce a U.S. opt-out class action judgment against their interests.

72.     In order to recognize and enforce a foreign judgment, Peruvian courts demand that the foreign court have personal jurisdiction according to Peru's own rules of private international law and the general principles of international jurisdiction. *See supra* note 32.  Because Peru will consider that the United States does not have international jurisdiction over domiciliaries of Peru without contacts in the United States, Peru will not recognize or enforce a U.S. opt-out class action judgment against their interest.

73.     In summary, it is my opinion that Peru would not recognize or enforce a U.S. opt-out class action for damages against the interest of its domiciliaries because Peru would find that: (1) a judgment against absent class members rendered in an opt-out class action for damages would violate Peru's public policy; (2) the absent class members were not

---

[32] *See* Código Civil (Peru), Artículo 2104:  "Para que las sentencias extranjeras sean reconocidas en la República (...), se requiere (...) 2.- Que el tribunal extranjero haya sido competente para conocer el asunto, de acuerdo a sus normas de Derecho Internacional Privado y a los principios generales de competencia procesal internacional. 3.- Que se haya citado al demandado conforme a la ley del lugar del proceso; que se le haya concedido plazo razonable para comparecer; y que se le hayan otorgado garantías procesales para defenderse (...) 7.- Que no sea contraria al orden público (...)."

[33] *See* Código Procesal Civil (Peru), Article 82(6):  "La sentencia definitiva que declare fundada la demanda, será obligatoria además para quienes no hayan participado del proceso."

[34] *See* Inter-American Treaty on Letters Rogatory, *available at* http://www.oas.org/juridico/english/sigs/b-36.html (last visited June 1st, 2015).

15

served with process by internationally acceptable means; and (3) the United States does not have jurisdiction over Peru's domiciliaries without contacts in the United States.

## Panama

74. Panama has adopted the Bustamante Code.  Because the United States does not have a treaty with Panama regarding recognition of foreign judgments, the applicable law is the Panamanian Code of Civil Procedure.

75. According to Article 179 of the Code of Private International Law, foreign judgments may be recognized in Panama as long as, among other things:  (1) there was personal service of process to the defendant and there was an opportunity to participate in the case (principle of adversariness); and (2) the judgment was issued by a competent court.[35]

76. Panama is a signatory to the Inter-American Convention on Letters Rogatory, as is the United States.[36]  It is therefore expected that class members domiciled in Panama will receive notice of the class action proceeding through rogatory letters.  Because notice of the class action proceeding to domiciliaries of Panama would not be effectuated by letters rogatory (or other internationally acceptable means), Panama will not recognize or enforce a U.S. opt-out class action judgment against their interests.

77. The language of Article 179.1 may be read to imply that the requirement of jurisdiction is deemed satisfied merely when the jurisdiction of the foreign court is not in conflict with the exclusive jurisdiction of Panamanian courts.  But there is no reason to assume that the enactment of this provision changed decades of legal tradition in Panama and in the world regarding recognition and enforcement of judgments abroad, especially considering that Panama has adopted the Bustamante Code which provides that the foreign court must have jurisdiction "according to the rules in this Code."[37] (Article 423.1).

---

[35] *See* Código de Derecho Internacional Privado de la República de Panamá, Article 179:  "(...) ninguna sentencia dictada en país extranjero podrá ser ejecutada en la República de Panamá si no reúne los siguientes requisitos: 1. Que la sentencia haya sido dictada por un tribunal competente, es decir, que no haya conculcado la competencia privativa de los tribunales panameños. Se entiende que la competencia sobre bienes inmuebles ubicados en la República de Panamá es de competencia privativa de los jueces panameños. 2. Que la sentencia no haya sido dictada en rebeldía, entendiéndose por tal, para los efectos de este artículo, el caso en que la demanda no haya sido personalmente notificada al demandado.  Es decir, que el proceso evacuado en el extranjero haya cumplido con el principio del contradictorio.  3. Que la sentencia pronunciada por tribunal extranjero no conculque principios o derechos fundamentales del orden publico panameño."

[36] *See* Inter-American Treaty on Letters Rogatory, *available at* http://www.oas.org/juridico/english/sigs/b-36.html (last visited June 1st, 2015).

[37] *See* Article 423(1) of the Bustamante Code:  "que tenga competencia para conocer del asunto y juzgarlo, de acuerdo con las reglas de este Código, el juez o tribunal que la haya dictado."

16

78. Therefore, it is my opinion that Panama will verify whether the U.S. court had jurisdiction over its domiciliaries according to Panama's own laws and international standards.   Because Panama will consider that the United States does not have international jurisdiction over domiciliaries of Panama without contacts in the United States, Panama will not recognize or enforce a U.S. opt-out class action judgment against their interest.

79. In summary, it is my opinion that Panama would not recognize or enforce a U.S. opt-out class action judgment for damages against its domiciliaries because Panama will find that:  (1) the absent class members were not served with process by internationally acceptable means; and (2) the United States does not have jurisdiction over Panama's domiciliaries without contacts in the United States.

## **El Salvador**

80. El Salvador has adopted the Bustamante Code.  Because the United States does not have a treaty with El Salvador regarding recognition of foreign judgments, the applicable law is the Salvadoran Code of Civil Procedure.

81. According to Article 556 of the Salvadoran Code of Civil Procedure, foreign judgments may be recognized in El Salvador as long as:  (1) the judgment does not violate the Salvadoran constitutional principles or public policy; (2) the party against whom the recognition is sought, has been legally served with process; and (3) the foreign judgment was issued by a court with jurisdiction according to the rules of international jurisdiction of El Salvador.[38]

82. El Salvador does not recognize opt-out class action for individual damages.  The Salvadoran legal system does not recognize a rule that allows an "adequate representative" to represent the individual interests of absent people who are not made parties to a proceeding through service of process and not allowed an opportunity to present their case.  Binding a nonparty (in this case, an absent class member in American legal terminology) would violate the Salvadoran Constitutional principle of due process of law.  Therefore, a judgment rendered in an opt-out class action for damages would violate El Salvador's public policy.

---

[38] *See* Código Procesal Civil y Mercantil, Article 556:  "Cuando no hubiere tratados o normas internacionales aplicables al reconocimiento de un título extranjero como título de ejecución en El Salvador, dicho reconocimiento se podrá producir si concurren al menos los siguientes requisitos: 1º. Que la sentencia, con autoridad de cosa juzgada en el Estado en que se ha pronunciado, emane del tribunal competente según las normas salvadoreñas de jurisdicción internacional. 2º. Que la parte demandada, contra la que se pretende realizar la ejecución, hubiese sido legalmente emplazada, aunque fuera declarada rebelde, siempre que se le hubiera garantizado la posibilidad de ejercer su defensa y que se le hubiese notificado legalmente la resolución. 4º. Que la sentencia no afecte los principios constitucionales o de orden público del derecho salvadoreño, y que el cumplimiento de la obligación que contenga sea lícito en El Salvador."

17

83.  El Salvador is a signatory to the Inter-American Convention on Letters Rogatory, as is the United States.[39]   It is therefore expected that class members domiciled in El Salvador will  receive notice of the class action proceeding through rogatory letters. Because notice of the class action proceeding to domiciliaries of El Salvador would not be effectuated by letters rogatory (or other internationally acceptable means), El Salvador will not recognize or enforce a U.S. opt-out class action judgment against their interests.

84.  In order to recognize and enforce a foreign judgment, Salvadoran courts demand that the foreign court has personal jurisdiction according to El Salvador's own rules of international jurisdiction.[40]   Because El Salvador will consider that the United States does not have international jurisdiction over domiciliaries of El Salvador without contacts in the United States, El Salvador will not recognize or enforce a U.S. opt-out class action judgment against their interest.

85.  In summary, it is my opinion that El Salvador would not recognize or enforce a U.S. opt-out class action for damages against the interest of its domiciliaries because El Salvador will find that:  (1) a judgment rendered in an opt-out class action for damages would violate El Salvador's public policy; (2) the absent class members were not served with process by internationally acceptable means; and (3) the United States does not have jurisdiction over El Salvador's domiciliaries without contacts in the United States.

## Ecuador

86.  Ecuador adopted the Bustamante Code as well as the 1979 Inter-American Convention on the Extraterritorial Validity of Foreign Judgments and Arbitral Award.  Because the United States is not a party to that Convention and does not have a treaty with Ecuador regarding recognition of foreign judgments, the applicable law is the Ecuadorean Code of Civil Procedure, which is consistent with the principles in the Convention.

87.  Foreign judgments are enforceable in Ecuador as long as:  (1) the foreign judgment does not violate Ecuadorian public law or any national law; (2) the parties have been served with process either personally or through their legal representative; and (3) the original court has jurisdiction to decide the case, according to the international rules of the Bustamante Code.[41]

---

[39] *See* Inter-American Treaty on Letters Rogatory, *available at* http://www.oas.org/juridico/english/sigs/b-36.html (last visited June 1st, 2015).

[40] *See* Código Procesal Civil y Mercantil, Article 556: "Cuando no hubiere tratados o normas internacionales aplicables al reconocimiento de un título extranjero como título de ejecución en El Salvador, dicho reconocimiento se podrá producir si concurren al menos los siguientes requisitos: 1°. Que la sentencia, con autoridad de cosa juzgada en el Estado en que se ha pronunciado, emane del tribunal competente según las normas salvadoreñas de jurisdicción internacional."

[41] *See* Ecuadorian Code of Civil Procedure, Article 414:   "Las sentencias extranjeras se ejecutarán si no contravinieren al Derecho Público Ecuatoriano o a cualquier ley nacional;" Ecuadorian Code of Private International

18

88. Ecuador is a signatory to the Inter-American Convention on Letters Rogatory, as is the United States.[42]  It is therefore expected that class members domiciled in Ecuador will receive notice of the class action proceeding through rogatory letters.  Because notice of the class action proceeding to domiciliaries of Ecuador would not be effectuated by letters rogatory (or other internationally acceptable means), Ecuador will not recognize or enforce an U.S. opt-out class action judgment against their interests.

89. In order to recognize and enforce a foreign judgment, Ecuadorian courts demand that the foreign court has personal jurisdiction according to its own rules of international jurisdiction.[43]  Because Ecuador will consider that the United States does not have international jurisdiction over domiciliaries of Ecuador without contacts in the United States, Ecuador will not recognize or enforce a U.S. opt-out class action judgment against their interests.

90. In summary, it is my opinion that Ecuador would not recognize or enforce a U.S. opt-out class action judgment for damages against its domiciliaries because Ecuador will find that: (1) the absent class members were not served with process by internationally acceptable means; and (2) the United States does not have jurisdiction over Ecuador's domiciliaries without contacts in the United States.

91. In addition, it is easy to foresee how the recent denial of recognition to a class action judgment from an Ecuadorean court by a United States court (*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014)) could be used as a further reason not to recognize a US class action judgment.

## Mexico

92. Mexico has ratified the 1979 Inter-American Convention on the Extraterritorial Validity of Foreign Judgments and Arbitral Awards.[44]  Because the United States is not a party to that Convention and does not have a treaty with Mexico regarding

---

Law, Article 423:  "Artículo 423. Toda sentencia civil o contencioso administrativa dictada en uno de los Estados contratantes, tendrá, fuerza y podrá ejecutarse en los demás si reúne las siguientes condiciones: 1. Que tenga competencia para conocer del asunto y juzgarlo. de acuerdo con las reglas de este Código, el juez o tribunal que la haya dictado; 2. Que las partes hayan sido citadas personalmente o por su representante legal, para el juicio; 3. Que el fallo no contravenga el orden público o el derecho público del país en que quiere ejecutarse (...)"

[42] *See* Inter-American Treaty on Letters Rogatory, *available at* http://www.oas.org/juridico/english/sigs/b-36.html (last visited June 1st, 2015).

[43] *See* Ecuadorian Code of Private International Law, Article 423:  "Artículo 423. Toda sentencia civil o contencioso administrativa dictada en uno de los Estados contratantes, tendrá, fuerza y podrá ejecutarse en los demás si reúne las siguientes condiciones: 1. Que tenga competencia para conocer del asunto y juzgarlo. de acuerdo con las reglas de este Código, el juez o tribunal que la haya dictado."

[44] *See Inter-American Convention on Extraterritorial Validity of Foreign Judgments and Arbitral Awards*, available at http://www.oas.org/juridico/english/sigs/b-41.html (last visited June 1st, 2015).

19

recognition of foreign judgments, however, the applicable law is the Mexican Code of Civil Procedure, which is consistent with the principles in the Convention.

93.    Articles 564, 569 and 571 of the Federal Code of Civil Procedure provide that a foreign judgment will be recognized in Mexico as long as, among other things:  (1) it is not contrary to the internal public order according to the Code of Procedure and applicable law; (2) the foreign court had jurisdiction over the controversy, according to rules that are recognized by the international law and compatible to the Mexican Code; and (3) the defendant has received personal service of process in a way to secure his or her right of defense.[45]

94.    Mexico does not recognize opt-out class actions for individual damages.  Although in 2011 the country adopted class action legislation, its proceeding is opt-in: absent class members must opt-in to the class action in order to be able to participate in the class action judgment.[46]  Without the affirmative step of opting-in to a class action, absent class members are not bound by any class action judgment or court approved settlement.   Moreover, absent class members may opt-in even after judgment. Therefore, presumably class members will only opt-in to a class action when they agree with its outcome.

95.    I personally participated in all discussions related to the drafting of the Mexican Class Action Act, enacted in 2011.[47]   The choice between opt-in and opt-out class action legislation was clearly in front of the Mexican Senate.  As a matter of fact, the original class action project presented by the Drafting Committee suggested an opt-out class action.  The original proposal was the following:

> Any class member may request his or her exclusion from the class action, as long as the request is done in writing in any phase of the proceeding

---

[45] *See* Código Federal de Procedimientos Civiles (Mexico), Artículo 569:  "Las sentencias, los laudos arbitrales privados de carácter no comercial y demás resoluciones jurisdiccionales extranjeros tendrán eficacia y serán reconocidos en la República en todo lo que no sea contrario al orden público interno en los términos de este código y demás leyes aplicables, salvo lo dispuesto por los tratados y convenciones de los que México sea parte."  Artículo 571, III and IV:  Las sentencias, laudos arbitrales privados de carácter no comercial y resoluciones jurisdiccionales dictados en el extranjero, podrán tener fuerza de ejecución si cumplen con las siguientes condiciones:  III.- Que el juez o tribunal sentenciador haya tenido competencia para conocer y juzgar el asunto de acuerdo con las reglas reconocidas en el derecho internacional que sean compatibles con las adoptadas por este Código. El Juez o tribunal sentenciador extranjero no tiene competencia cuando exista, en los actos jurídicos de que devenga la resolución que se pretenda ejecutar, una cláusula de sometimiento únicamente a la jurisdicción de tribunales mexicanos;  IV.- Que el demandado haya sido notificado o emplazado en forma personal a efecto de asegurarle la garantía de audiencia y el ejercicio de sus defensas;

[46] *See* articles 594 and 605 of the Mexican Code of Civil Procedure (amended 2011) (providing for the need for absent class members to expressly opt in before they could be benefited or bound by a class action judgment).

[47] Together with Professors Alberto Benítez and Eduardo Ferrer Mac-Gregor, I participated as one of the principal academic drafters of the class action bill that led to the enactment of the Mexican Class Action Statute.   The adoption of an opt-in class action regime was the decision of the Mexican Senate.

until the final judgment.[48]

96. One of the reasons traditionally given for the rejection of the opt-out class action is the fear that binding absent class members, especially to an unfavorable decision, in a proceeding to which they were not a party, would violate the due process of law of absent class members.  In Mexico and other Latin American countries, there is a strong predisposition to consider opt-out class actions as a violation of the due process of law.

97. Countries that adopted an opt-in class action would consider the idea of an opt-out class action as a violation of their public policy.  The idea of a lawsuit that binds class members by their omission from opting-out of a class was considered and expressly rejected.  Therefore, these countries would not recognize a foreign opt-out class action judgment (or settlement) against the interest of their nationals.

98. Mexico is a signatory to the Inter-American Convention on Letters Rogatory, as is the United States.[49]  It is therefore expected that class members domiciled in Mexico will receive notice of the class action proceeding through rogatory letters.  Because notice of the class action proceeding to domiciliaries of Mexico likely would not be effectuated by letters rogatory (or other internationally acceptable means), Mexico would not recognize or enforce a U.S. opt-out class action judgment against their interests.

99. In order to recognize and enforce a foreign judgment, Mexican courts demand that the foreign court have personal jurisdiction according to its own rules of private international law and the general principles of international jurisdiction.[50]  Because Mexico will consider that the United States does not have international jurisdiction over domiciliaries of Mexico without contacts in the United States, Mexico will not recognize or enforce a U.S. opt-out class action judgment against their interest.

100. In summary, it is my opinion that Mexico would not recognize or enforce a U.S. opt-out class action for damages against the interest of its domiciliaries because Mexico

---

[48] "Cualquier miembro de la colectividad o grupo de que se trate podrá pedir su exclusión de dicha colectividad o grupo para efectos del procedimiento colectivo de que se trate, siempre que lo solicite al juez por escrito en cualquier etapa del proceso y hasta antes de dictar sentencia."  *See* Benítez, Mac-Gregor & Gidi, Iniciativa de reforma al Código Federal de Procedimientos Civiles, *in* GIDI & MAC-GREGOR, CÓDIGO MODELO DE PROCESOS COLECTIVOS. UN DIÁLOGO IBEROAMERICANO. COMENTARIOS ARTÍCULO POR ARTÍCULO 447 (2008).

[49] *See* Inter-American Treaty on Letters Rogatory, *available at* http://www.oas.org/juridico/english/sigs/b-36.html (last visited June 1st, 2015).

[50] *See* Código Federal de Procedimientos Civiles (Mexico), Artículo 571, III:  Las sentencias, laudos arbitrales privados de carácter no comercial y resoluciones jurisdiccionales dictados en el extranjero, podrán tener fuerza de ejecución si cumplen con las siguientes condiciones:  III.- Que el juez o tribunal sentenciador haya tenido competencia para conocer y juzgar el asunto de acuerdo con las reglas reconocidas en el derecho internacional que sean compatibles con las adoptadas por este Código. El Juez o tribunal sentenciador extranjero no tiene competencia cuando exista, en los actos jurídicos de que devenga la resolución que se pretenda ejecutar, una cláusula de sometimiento únicamente a la jurisdicción de tribunales mexicanos."

21

will find that:  (1) a judgment rendered in an opt-out class action for damages would violate Mexico's public policy; (2) the absent class members were not served with process by internationally acceptable means; and (3) the United States does not have jurisdiction over Mexico's domiciliaries without contacts in the United States.

## IV.    CONCLUSION

101. In conclusion, a judgment or court-approved settlement in this U.S. class action proceeding would not be recognized or enforced in Latin American countries because: (1) opt-out class action judgments violate public policy; (2) there is no service of process to absent class members by internationally acceptable means; and (3) the United States has not validly obtained jurisdiction over absent class members.

102. If any member of the plaintiffs' class that is not satisfied with the class judgment or class settlement sues the defendants in their own country, the defendants cannot successfully raise a *res judicata* defense.  It is unthinkable that a Latin American country would give preclusive effect to a judgment rendered in an unknown or rejected form of representative litigation issued by a foreign court with no jurisdiction over the Latin American party, and without service of process or opportunity to present claims and arguments.

22

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed in Salvador, Bahia, Brazil.

Dated:  July 7, 2015

**Antonio Gidi**

23

# EXHIBIT A

**ANTONIO GIDI**
Syracuse University College of Law
950 Irving Ave.     Syracuse, NY 13244-6070
gidi@gidi.com.br | (215) 266-6464 | www.gidi.com.br

## EDUCATION
| | |
|---|---|
| 1998 - 2001 | University of Pennsylvania Law School, Philadelphia, S.J.D. |
| 1994 - 2003 | PUC University at Sao Paulo, Brazil, Ph.D. |
| 2000, 2001 | University of Paris I Law School (Pantheon-Sorbonne), France, Visiting Scholar |
| 1996 - 1997 | University of Pennsylvania Law School, Philadelphia, Visiting Scholar |
| 1994 - 1996 | University of Milan, Italy, Visiting Scholar |
| 1991 - 1993 | PUC University at Sao Paulo, Brazil, L.L.M. |
| 1986 - 1990 | Federal University of Bahia, Brazil, J.D. |
| | *Activities:* Senior Editor, Law Review; Research Assistant; Tutor |

## TEACHING APPOINTMENTS
**2013-present     University of Syracuse College of Law**
Visiting Professor     *Taught:* Civil Procedure (13, 14), Torts (13, 14), Comparative Law (14, 15), Class Actions (14, 15)

**Fall 2012        University of Tennessee College of Law**
Visiting Professor     *Taught:* Civil Procedure, Comparative Law

**2005 – 2012      University of Houston Law Center**
Assistant Professor
*Taught:* Civil Procedure (05, 06, 07, 08, 09, 10, 11), Comparative Law (06, 06, 07, 08, 09, 10, 11, 12), International Commercial Arbitration (06), Latin American Law (in Spanish) (05, 06, 07), Class Actions (07, 08, 11, 12), Comparative Complex Litigation (07)
*Committees:* Graduate Legal Studies (05-06, 06-07), IEFS & HJCC Scholarship Review (05-06), International Cooperation (07-08, 08-09, 09-10, 10-11, 11-12), Honor Court (11-12)

**Summer 2015      University of Trento Law School, Italy**
Visiting Professor     *Taught:* Comparative Civil Procedure, Class Actions

**Summer 2015      Università degli Studi di Roma "Tor Vergata", Italy**
Visiting Professor     *Taught:* Comparative Civil Procedure, Class Actions

**Summer 2011      University of Gent Law School, Belgium**
Marcel Storme Visiting Professor of Law     *Taught:* Comparative Civil Procedure, Class Actions

**2007-2009        Universidade de Ribeirão Preto, Brazil**
Professor of Law   *Taught:* Comparative Class Actions, Comparative Civil Procedure, Class Actions

**Summer 2008      ITAM Law School, Mexico City**
Visiting Professor   *Taught:* Comparative Civil Procedure, Comparative Class Actions

**2006-2007        Agostinho Neto University School of Law, Luanda, Angola**
Academic Adviser and Visiting Professor, LLM Program     *Taught:* Introduction to US Law
Helped create the first LLM Program in Angola (Oil and Gas)

**Summer 2006      Loyola University Law School, Summer Program Abroad**
*Taught:* Comparative Civil Procedure

**Summer 2005      Penn State Law School, Summer Program in France and Austria**
*Taught:* Comparative Civil Procedure

**2003 – 2005      University of Detroit Mercy School of Law**
Assistant Professor
*Taught:* Civil Procedure (03-04, 04-05), Comparative Law (04, 05), Complex Litigation (05)
*Committees:* Hiring (03-04, 04-05), Global (03-04, 04-05), Curriculum (04-05), Building (03-04), Student Evaluations (04-05), Mexico Program (04-05), Library (04-05)

**1997 – 2003      University of Pennsylvania Law School**
Lecturer-in-Law
*Created and taught:* Comparative Civil Procedure, Comparative Professional Responsibility,

Int'l Advocacy, Class Actions in Comparative Perspective

| | | |
|---|---|---|
| 2002 – 2003 | **Temple University, Beasley School of Law**<br>Adjunct Professor. *Taught*: International Litigation and Arbitration | |
| Fall 2000 | **Federal University of Bahia**, Brazil<br>Visiting Professor of Law. *Taught*: Comparative Civil Procedure and Class Actions | |
| 1992 – 1994 | **PUC University at Sao Paulo**, Brazil<br>Teaching Assistant *Taught*: Civil Procedure | |

## ACADEMIC APPOINTMENTS

| | | |
|---|---|---|
| 2009 | **Mexican Senate**<br>Consultant to Senator Murillo Karam. Drafted the Current Mexican Class Action Code | |
| 2009 | **Brazilian Ministry of Justice**<br>Member of the Advisory Committee. Drafted a Class Action Bill | |
| 1997 – 2005 | **The American Law Institute**<br>Associate Reporter. Principles and Rules of Transnational Civil Procedure | |
| 2002 – 2005 | **Ibero-American Institute of Civil Procedure**<br>Co-Reporter. Model Class Action Code for Ibero-America | |
| 2000 – 2005 | **International Institute for the Unification of Private Law (UNIDROIT)**<br>Secretary. Working Group on Transnational Civil Procedure | |
| 2002 – 2003 | **The Hague Conference on Private International Law**<br>Member. Working Group on International Jurisdiction and Judgments | |

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 2002 – present | Consultant and expert witness in foreign law, international litigation and arbitration, class actions |
| 2001 | Fine, Kaplan & Black, Philadelphia, PA<br>Researcher |
| 1993 – 1994 | City of Sao Paulo, Brazil<br>Staff Attorney, Law Department (Represented the City of Sao Paulo in civil litigation) |
| 1987 - 1989 | Law Offices of Ronilda Noblat & Sergio Schlang<br>Associate, Litigation Department (drafted pleadings, consulted with clients) |

## PUBLICATIONS
### Books

MANUAL DE ESTILO JURÍDICO ACADÊMICO (forthcoming 2015) [Brazil]
LA CLASS ACTION COMO INSTRUMENTO DE TUTELA COLECTIVA DE LOS DERECHOS. LAS ACCIONES COLECTIVAS EN UNA PERSPECTIVA COMPARADA (Rubinzal, forthcoming, 2015) [Argentina]
SCHLESINGER'S COMPARATIVE LAW (w/ Mattei and Ruskola) (Foundation Press, 2009) [U.S.A.]
RUMO A UM CÓDIGO DE PROCESSO CIVIL COLETIVO (Forense, 2008) [Brazil]
A CLASS ACTION COMO INSTRUMENTO DE TUTELA COLETIVA DOS DIREITOS. AS AÇÕES COLETIVAS EM UMA PERSPECTIVA COMPARADA (Revista dos Tribunais, 2007) [Brazil]
PRINCIPLES OF TRANSNATIONAL CIVIL PROCEDURE (ALI/UNIDROIT Associate Reporter and Secretary) (w/ Hazard, Stürner, and Taruffo) (Cambridge University Press, 2006) [England]
LAS ACCIONES COLECTIVAS Y LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES EN BRASIL. UN MODELO PARA PAÍSES DE DERECHO CIVIL (Instituto de Investigaciones Jurídicas de la UNAM, 2004) [Mexico]
COISA JULGADA E LITISPENDÊNCIA EM AÇÕES COLETIVAS (Saraiva, 1995) [Brazil]
ESTATUTO DA ADVOCACIA E DA OAB (Ciência Jurídica, 1994) [Brazil]
ANOTAÇÕES PARA UMA HISTÓRIA DA FACULDADE DE DIREITO DA BAHIA (1991) [Brazil]

### Edited Books

CLASS ACTIONS IN COMPARATIVE PERSPECTIVE (ed.) (Carolina Academic Press, forthcoming 2015) [U.S.A.]
SÉRIE PROCESSO COLETIVO, COMPARADO E INTERNACIONAL (ed.) (2012) (4 vols.) [Brazil]
COMENTÁRIOS AO CÓDIGO MODELO DE PROCESSOS COLETIVOS (ed.) (w/ Ferrer) (Jus Podivm, 2009) [Brazil]

2

CÓDIGO MODELO DE PROCESOS COLECTIVOS. UN DIÁLOGO IBEROAMERICANO (ed.) (w/ Ferrer) (Porrua, 2009) [Mexico]

PROCESOS COLECTIVOS (ed.) (w/ Ferrer), 2nd edition (Porrúa, 2004) [Mexico]

LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS (ed.) (w/ Ferrer), 2nd edition (Porrúa, 2004) [Mexico]

*Articles and Book Chapters*

Class Actions in Mexico. What It Is; What It Could Have Been (forthcoming 2015)

Civil Procedure in Cross-Cultural Dialogue: Eurasia Context (w/ Voet), II RUSSIAN L. J. 125 (2014)

Loneliness in the Crowd. Why Nobody Wants Opt-Out Class Members to Assert Offensive Issue Preclusion Against a Class Defendant, 66 SMU L. REV. 1 (2013)

Recognition of U.S. Class Action Judgments Abroad, 37 BROOKLYN J. INT'L L. 893 (2012)

Issue Preclusion Effect of Class Certification Orders, 63 HASTINGS L.J. 101 (2012)

Case Management e o Novo CPC: Os "Novos" Poderes do Juiz Brasileiro (w/ Costa) (forthcoming 2015)

Limites objetivos da coisa julgada no Projeto de Código de Processo Civil. Reflexões Inspiradas na Experiência Norte-Americana (w/ Tesheiner and Prates), 194 REVISTA DE PROCESSO 101 (2011)

Patrocinio de intereses difusos (Comentarios al art. 82 del Código Procesal Civil Peruano), *in* JOHAN S. CAMARGO ACOSTA (ED.), 1 CÓDIGO PROCESAL CIVIL COMENTADO POR LOS MEJORES ESPECIALISTAS 361 (2010) [Peru]

Iniciativa de Reforma al Código Federal de Procedimientos Civiles (w/ Benítez and Ferrer), *in* CÓDIGO MODELO DE PROCESOS COLECTIVOS. UN DIÁLOGO IBEROAMERICANO 447 (2008) [Mexico]

Twombly e Iqbal: il ruolo della Civil Procedure nello scontro politico-ideologico della società statunitense, INT'L LIS 104 (2010) [Italy]

Кодекс группового судопроизводства: модель для стран континентального права (translated into Russian by Grigiri Arziani and Dmitry Maleshin), 11 ZAKON 151 (2013) [Russia]

A csoportperes törvénykönyv: Minta a polgárjogi államoknak (translated into Hungarian by Noémi Suri) [Hungary]

Διδάσκοντας Συγκριτική Πολιτική Δικονομία, 64 HARMENOPOULOS LAW REVIEW 1637 (2010) (translated into Greek by Anastasia Vezyrtzi) [Greece]

Le Code de L'Action Collective: Un Modéle Pour les Pays de Droit Civil, in CLOSSET-MARCHAL & COMPERNOLLE (EDS), VERS UNE "CLASS ACTION" EN DROIT BELGE? 147-63 (2008) (Translated into French by M. Guy Sohou and Caroline Gilbert, with an introductory study in Dutch by Stefaan Voet) [Belgium]

Teaching Comparative Civil Procedure, 56 JOURNAL OF LEGAL EDUCATION 502 (2007)

Enseigner la Procédure Civile Comparée, STUDIA IN HONOREM PELAYIA YESSIOU-FALTSI 201, Sakkoulas Publications, Athens, 2007 (Translated into French by Guy Sohou, Muriel Fourrier, and Caroline Gilbert) [Greece]

The Class Action Code. A Model for Civil-Law Countries, 23 ARIZ. J. INT'L COMP. L. 37 (2005)

集团诉讼条例—大陆法系国家模板, 中国国际私法与比较法年刊 (Chinese Yearbook of Private International Law and Commercial Law) (Translated into Chinese by Zhi Li) (forthcoming 2014) [China]

Il codice del proceso civile collettivo. Un modello per i paesi di diritto civile, RIVISTA TRIMESTRALE DI DIRITTO E PROCEDURA CIVILE, Anno LIX Fasc 2, 2005, p. 698-711 (translated into Italian by Alessandro Barzaghi) [Italy]

Anteproyecto de Código Modelo de Procesos Colectivos para Iberoamérica (w/ Grinover and Watanabe), 5 REVISTA IBEROAMERICANA DE DERECHO PROCESAL 13 (2004) [Argentina], *also published in* XXVI CONGRESO COLOMBIANO DE DERECHO PROCESAL 1093 (2005) [Colombia]

Anteprojeto de Código Modelo de Procesos Coletivos para Ibero-América (w/ Grinover and Watanabe), 5 REVISTA IBEROAMERICANA DE DERECHO PROCESAL 36 (2004) [Argentina]

Class Actions in Brazil – A Model for Civil Law Countries, 51 AM. J. COMP. L. 311 (2003)

ブラジルのクラスアクション制度—シビルロー国へのモデル, 34 JOURNAL OF THE JAPANESE INSTITUTE OF INTERNATIONAL BUSINESS LAW (KOKUSAI SHŌJI HŌMU) 997 (2006) (translated into Japanese) [Japan]

中国国际私法与比较法年刊, 中国国际私法与比较法年刊 (Chinese Yearbook of Private International Law and Commercial Law) (Translated into Chinese by Chen Rong and Zhi Li) (forthcoming 2014) [China]

Las Acciones Colectivas en Estados Unidos, *in* PROCESOS COLECTIVOS 1 (Gidi & Ferrer eds., 2nd Edition, 2004) [Mexico], *also published in* ESTUDIOS IBEROAMERICANOS DE DERECHO PROCESAL 239 [Venezuela]

El Concepto de Acción Colectiva, *in* LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS 14 (Gidi & Ferrer eds., 2nd Edition, 2004) [Mexico]

Derechos Difusos, Colectivos e Individuales Homogéneos, *in* LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS 25 (Gidi & Ferrer eds., 2nd Edition, 2004) [Mexico]

Legitimación Para Demandar en las Acciones Colectivas, *in* LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS 107 (Gidi & Ferrer eds., 2nd Edition, 2004) [Mexico]

3

La Representación Adecuada en las Acciones Colectivas Brasileñas y el Avance del Código Modelo, *in* LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS 142 (Gidi & Ferrer eds., 2nd Edition, 2004) [Mexico]

Cosa Juzgada en Acciones Colectivas, *in* LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS 261 (Gidi & Ferrer eds., 2nd Edition, 2004) [Mexico]

Litispendencia en Acciones Colectivas, *in* LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS 314 (Gidi & Ferrer eds., 2nd Edition, 2004) [Mexico]

Notas Críticas al Anteproyecto de Código Modelo de Procesos Colectivos del Instituto Iberoamericano de Derecho Procesal, *in* LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS 405 (Gidi & Ferrer eds., 2nd Edition, 2004) [Mexico]

Legislación Iberoamericana Sobre los Procesos Colectivos (w/ others), *in* LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS 715 (Gidi & Ferrer eds., 2nd Edition, 2004) [Mexico]

Código de Processo Civil Coletivo. Um Modelo Para Países de Direito Escrito, 111 REPRO 192 (2003)

Código de Proceso Civil Colectivo. Un Modelo Para Países de Derecho Civil, 11 REVISTA PRÁCTICA DE DERECHO DE DAÑOS 56 (2003) (translated into Spanish by Adriana León and Joaquín Silguero Estagnan) [Spain], *also published in* XXVI CONGRESO COLOMBIANO DE DERECHO PROCESAL, Universidad Libre 601 (2005) [Colombia], *and in* REVISTA DE DERECHO PROCESAL (2004) [Argentina], *and in* 16 REVISTA VASCA DE DERECHO PROCESAL Y ARBITRAJE 753 (2004) [Spain]

Enseñando Derecho Procesal Civil Comparado, 2 REVISTA URUGUAYA DE DERECHO PROCESAL 241 (2003) [Uruguay]

Iniciativas para la Formulación de Normas Uniformes en el Ámbito del Derecho Procesal Civil Internacional, 11 TRIBUNALES DE JUSTICIA 21 (2002) [Spain], *also published in* 54 DERECHO L. REV. 245 (2002) [Peru], *and in* 26 REV. DIR. PROC. CIV. (2003) [BRAZIL]

Principios Fundamentales de Proceso Civil Transnacional (w/ Hazard, Taruffo, and Stürner), 11 TRIBUNALES DE JUSTICIA 27 (2002) [Spain], *also in* 54 DERECHO L. REV. 253 (2002) [Peru], *and in* 26 REV. DIR. PROC. CIV. (2003) [BRAZIL]

Normas de Proceso Civil Transnacional (w/ Hazard, Taruffo, and Stürner), 11 TRIBUNALES DE JUSTICIA 31 (2002) [Spain], *also in* 54 DERECHO L. REV. 263 (2002) [Peru], *and in* 26 REV. DIR. PROC. CIV. (2003) [BRAZIL]

Adequacy of Representation in Class Actions, 108 REVISTA DE PROCESSO 61 (2002)

Notes on Criticizing the Proposed ALI/Unidroit Principles and Rules of Transnational Civil Procedure, 6 UNIFORM L. REV. 819 (2001) [Italy]

Introduction to the Principles and Rules of Transnational Civil Procedure (w/ Hazard, Taruffo, Stürner), 33 N.Y.U. J. INT'L L. & POL. 769 (2001)

Fundamental Principles of Transnational Civil Procedure (w/ Hazard, Stürner, Taruffo), 33 N.Y.U. J. INT'L L. & POL. 785 (2001)

Rules of Transnational Civil Procedure (w/ Hazard, Taruffo, Stürner), 33 N.Y.U. J. INT'L L. & POL. 793 (2001)

Apresentação às Normas Transnacionais de Processo Civil, 102 REPRO 185 (2001), *also in* ROMA E AMERICA 335 (2000) [Italy], 52 DERECHO L. REV. 593 (1998) [Peru], 8 REV. MEST. DIR. ECO. UFBA 40 (2000), *and in* 90 CIÊNCIA JURÍDICA 358 (1999)

Normas Transnacionais de Processo Civil (transl.) 102 REPRO 196 (2001), *also in* 52 DERECHO L. REV. 1047 (1998) [Peru], *and in* 8 REV. MEST. DIR. ECO. UFBA 54 (2000)

Vers un procès Civil Transnational. Une Première Réponse aux Critiques, *in* VERS UN PROCES CIVIL UNIVERSEL? (Phillipe Fouchard ed., 2001) (translated into French by G. Mecarelli) [France]

Towards a Transnational Civil Procedure. A Brief Response to Comments and Criticisms, *in* VERS UN PROCÈS CIVIL UNIVERSEL (Phillipe Fouchard ed., 2001) [France]

Acciones de Grupo y "Amparo Colectivo" en Brasil. La Protección de Derechos Difusos, Colectivos e Individuales Homogéneos, *in* DERECHO PROCESAL CONSTITUCIONAL (2001) [Mexico]

Presentación del Proyecto de Normas Transnacionales del Proceso Civil, 52 DERECHO L. REV. 607 (1998) (translated into Spanish by A. León) [Peru]

A Disciplina da Coisa Julgada na Ação Popular, 77 CIÊNCIA JURÍDICA 328 (1997)

Aspectos da Inversão do Ônus da Prova no Código do Consumidor, 3 REV. DIR. PROC. CIV. 583 (1996) *also in* 64 CIÊNCIA JURÍDICA 24 (1995)

Assistência em Ações Coletivas *in* CÓDIGO DE PROCESSO CIVIL. 20 ANOS DE VIGÊNCIA (1995) *also in* 88 RePro 269 (1995)

Legitimidade para Agir em Ações Coletivas, 14 DIRCON 52 (1995)

Direitos Subjetivos Difusos, Coletivos e Individuais Homogêneos (1994)

Coisa Julgada e Ações Coletivas no Direito Norte-Americano (1994)

O Título-Ação, 1 REV. MEST. PUC-SP (1993)

Da Adequação entre o Pedido Cautelar e o Pedido Principal, 54 CIÊNCIA JURÍDICA 291 (1993)

4

A Dimensão Política do Direito de Ação, 60 REPRO 197 (1991)

A Ação na Teoria Geral dos Títulos de Créditos, 52 CIÊNCIA JURÍDICA (1992)

A teoria de Rudolph von Ihering e a sua Repercussão na Disciplina da Posse no Código Civil Brasileiro, 45 CIÊNCIA JURÍDICA 67 (1992)

José Machado de Oliveira. A História da Faculdade de Direito na Perspectiva da Vida do Seu Fundador, 35 REV. FAC. DIR. UFBA 216 (1991)

Ponciano de Oliveira. O Velho Ponciano, 35 REV. FAC. DIR. UFBA 245 (1991)

## *ALI/UNIDROIT Publications*

PRINCIPLES AND RULES OF TRANSNATIONAL CIVIL PROCEDURE

| THE AMERICAN LAW INSTITUTE | UNIDROIT [Italy] |
|---|---|
| Proposed Final Draft (2004) | Study LXXVI – Secretary's Report (2004) |
| Council Draft No. 2 (2003) | Proposed Final Draft (2003) |
| Discussion Draft No. 4 (2003) | Study LXXVI – Doc. 10 (2003) |
| Preliminary Draft No. 3 (2002) | Study LXXVI – Secretary's Report (2002) |
| Discussion Draft No. 3 (2002) | Study LXXVI – Doc. 9 (2002) |
| Council Draft No. 1 (2001) | Study LXXVI – Secretary's Report (2002) |
| Discussion Draft No. 2 (2001) | Study LXXVI – Doc. 5 (2002) |
| Preliminary Draft No. 2 (2000) | Study LXXVI – Secretary's Report (2001) |
| Discussion Draft No. 1 (1999) | Study LXXVI – Doc. 4 (2001) |
| Interim Revision (1998) | |
| Preliminary Draft No. 1 (1998) | |

## *Prefaces*

Preface. FELIPE NOYA, REPRESENTATIVIDADE E ATUAÇÃO ADEQUADAS NAS AÇÕES COLETIVAS (2014) [Brazil]

Preface. JUAN CARLOS GUAYACAN, LAS ACCIONES POPULARES Y DE GRUPO FRENTE A LAS ACCIONES COLECTIVAS (2014) [Peru]

Preface. MARCELO HOLANDA, AÇÕES COLETIVAS - LEGITIMIDADE E CONTROLE JUDICIAL DA ADEQUAÇÃO DO AUTOR COLETIVO (2012) [Brazil]

Preface. JORDÃO VIOLIN, PROCESSO COLETIVO E PROTAGONISMO JUDICIÁRIO (2012) [Brazil]

Preface. MARÍLIA PRATES, A COISA JULGADA NO DIREITO COMPARADO: BRASIL E ESTADOS UNIDOS (2012) [Brazil]

Preface. EDUARDO CÂNDIA, LEGITIMIDADE ATIVA NA AÇÃO CIVIL PÚBLICA (2012) [Brazil]

Preface. Apresentação à Série Processo Coletivo, Comparado e Internacional (2012) [Brazil]

Preface. ELPÍDIO DONIZETTI & MARCELO MALHEIROS, CURSO DE PROCESSO COLETIVO (2010) [Brazil]

Preface. ANTONIO ARAÚJO, DIREITO DA PROPRIEDADE INDUSTRIAL E O MÉTODO PIPa (2009) [Brazil]

Preface. COMENTÁRIOS AO CÓDIGO MODELO DE PROCESSOS COLETIVOS (w/ Ferrer) (2009) [Brazil]

Preface. CÓDIGO MODELO DE PROCESOS COLECTIVOS (w/ Ferrer) (2008) [Mexico]

Preface. FREDIE DIDIER JR & HERMES ZANETI JR, CURSO DE DIREITO PROCESSUAL CIVIL (2007) [Brazil]

Preface to the Second Edition. LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS (w/ Ferrer) (2004) [Mexico]

Preface. PROCESOS COLECTIVOS (w/ Ferrer) (2004) [Mexico]

Preface. LA TUTELA DE LOS DERECHOS DIFUSOS, COLECTIVOS E INDIVIDUALES HOMOGÉNEOS (w/ Ferrer) (2003) [Mexico]

Preface. 52 DERECHO L. REV. 1 (1998) [Peru]

## *Comments, Book Reviews, and Other Short Publications*

Colóquio Internacional de Direito Processual Civil, 102 REPRO 403 (2001) [Brazil]

Colóquio Internacional de Direito Processual Civil em Thesaloniki, REPRO [Brazil]

Notas Esparsas sobre o Processo Civil nos Estados Unidos, 6 REV. DIR. PROC. CIV. 851 (1997) [Brazil]

## *Student Notes*

As Escolas Penais, 3 REV. CEPEJ 113 (1990)

Faculdade Livre de Direito da Bahia, 1 REV. CEPEJ 61 (1988)

5

**SCHOLARLY PRESENTATIONS**

Curso de Aperfeiçoamento em Processo Coletivo e Precedentes Judiciais: Perspectiva Crítica e Comparada, Fundação Escola do Ministério Público do Distrito Federal e Territórios (FEMPDFT), Jul 31 – August 2, 2014 (15 hours) [in Portuguese]

Curso Monográfico de Processo Coletivo. Perspectiva Crítica e Comparada, Programa de Pós-Graduação da Faculdade de Direito da UFES, Vitória, July 18 and 24-26, 2014 (20 hours) [in Portuguese]

Direito Processual Coletivo Comparado e Brasileiro, Ministério Público do Estado do Espírito Santo, Vitoria, July 18, 2014 [in Portuguese]

Novos Rumos do Processo Civil Coletivo, Programa de Pós-Graduação da Faculdade de Direito da UFBA, Salvador, May 29 and Jun 26, 27, 29, 2014 (16 hours) [in Portuguese]

Direito Processual Coletivo. Uma Visão Comparativa e Crítica das Ações Coletivas, Ordem dos Advogados do Brasil, Rio Grande do Sul (OAB-RS), Porto Alegre, June 20 and 21, 2014 (8 hours) [in Portuguese]

Colóquio Tutela Coletiva no Brasil e nos Estados Unidos, Associação da Defensoria Pública do Estado do Rio de Janeiro (ADPERJ), Rio de Janeiro, june 10, 2014 (7 hours) [in Portuguese]

Ações Coletivas Trabalhistas, 14º Congresso Nacional de Direito do Trabalho e Processual do Trabalho do TRT da 15ª Região, Paulínia, June 5, 2014 [in Portuguese]

Ações Coletivas – Uma Abordagem Comparada: Brasil e EUA, Escola Judicial do Tribunal Regional do Trabalho da 15ª Região (TRT-15), Campinas, May 30, 2014 [in Portuguese]

Class Action Models, Faculty of Law at Pazmany Peter Catholic University, Budapest, Hungary, November 5, 2013 [in English]

Towards a New Class Action Code for Hungary, Faculty of Law at Pazmany Peter Catholic University, Budapest, Hungary, November 6, 2013 [in English]

From Transnational Rules to Fundamental Principles and from Fundamental Principles to European Rules, Unidroit – European Law Institute Meeting, Justizpalast (Palace of Justice), Vienna, October 18, 2013 [in English]

Analise Crítica da Ação Coletiva no Sistema Brasileiro, Programa de Pós Graduação da Pontifícia Universidade Católica do Rio Grande do Sul, Porto Alegre, August 8 and 9, 2013 (12 hours) [in Portuguese]

A Tutela Coletiva nos Estados Unidos e no Brasil: Principais Desafios, Ministério Público do Estado do Mato Grosso do Sul, Campo Grande, August 1-2, 2013 (15 hours) [in Portuguese]

O Processo Civil Coletivo em uma Perspectiva Comparada, Programa de Pós Graduação da Faculdade de Direito da Universidade Católica do Salvador (UCSal), July 26-27, 2013 (12 hours) [in Portuguese]

Uma Nova Perspectiva para o Direito Brasileiro, Faculdade de Direito da UFMG, Belo Horizonte, July 5, 2013 [in Portuguese]

Sistema de Tutela Coletiva no Brasil e nos Estados Unidos: Principais Problemas e Desafios, Ministério Público do Estado de Minas Gerais, Belo Horizonte, July 11, 2013 [in Portuguese]

Direito Processual Civil Comparado e Coletivo, Programa de Pós Graduação da Faculdade de Direito da UFMG, Belo Horizonte, July 4-5, 11-12, 2013 (20 hours) [in Portuguese]

As Ações Coletivas Norte-Americanas, Programa de Pós Graduação da Faculdade Baiana de Direito, Salvador, June 28 and 29, 2013 [in Portuguese]

Processo Coletivo em uma Abordagem Comparativa, Conselho Nacional do Ministério Público (CNMP), Brasília, June 21, 2013 [in Portuguese]

Ações Coletivas no Direito Comparado, Tribunal Superior do Trabalho, June 20, 2013 (5 hours) [in Portuguese]

Aspectos Contemporâneos da Tutela Coletiva, Escola Judicial do Tribunal Regional do Trabalho do Paraná, Curitiba, June 12, 13 and 14, 2013 (12 hours) [in Portuguese]

A Experiência da Class Action Como Instrumento de Tutela Coletiva dos Direitos, Pós Graduação da Faculdade de Direito da UFPR, Curitiba, June 13, 2013 [in Portuguese]

As Class Actions do Direito Norte Americano e uma Comparação com o Sistema de Ações Coletivas Brasileiro, Mestrado em Direito da Unibrasil, June 12, 2013 [in Portuguese]

Comparative Civil Procedure. 7th International Conference of Anamatra, Associação Nacional dos Magistrados da Justiça do Trabalho, American University, Washington College of Law, April 3rd, 2013 [in English]

Employment Collective Actions. 7th International Conference of Anamatra, Associação Nacional dos Magistrados da Justiça do Trabalho, American University, Washington College of Law, April 5th, 2013 [in English]

The New Class Action Statute in Mexico, Globalization of the United States Litigation Model, Brooklyn Law School, New York, October 21, 2011 [in English]

Class Actions in Mexico. What It Is; What It Could Have Been, Instituto de la Judicatura Federal, Mexico City, Sept 08, 2011 [in Spanish]

Critical Analysis of Proposed Class Action Legislation in Belgium, The Marcel Storme Public Lecture, University of Ghent Law School, Belgium, May 11, 2011 [in English]

Hacia un Código de Procedimientos Civiles Colectivos para Mexico, Poder del Consumidor, Mexico City, September 24, 2010 [in Spanish]

6

Riesgos de la Adopción y de la No Adopción de las Acciones Colectivas en México, Al Consumidor, Mexico City, September 25, 2010 [in Spanish]

Hacia un Código de Procesos Colectivos para Perú, Supreme Court of Callao, Peru, November 04, 2009 [in Spanish]

Las Acciones Colectivas y la Protección de los Derechos de los Grupos, Universidad Nacional Mayor de San Marcos, Lima, Peru, November 04, 2009 [in Spanish]

La Proteción Colectiva de los Derechos Difusos, Colectivos y Individuales en Perú, I Jornada Internacional de Derecho Procesal, Facultad de Derecho de la Universidad Andina de Cusco, Peru, November 06, 2009 [in Spanish]

US Civil Procedure in Comparative Perspective, ABA Rule of Law Initiative and the Ecuadorean Judiciary, Oct 22, 2009 [in Spanish]

Poderes do juiz nas ações coletivas, XXII Encontro Pan-Americano de Direito Processual, Instituto Pan-Americano de Direito Processual, August 26, 2009, Goiânia, Goiás [in Portuguese]

Recent Developments on Class Action Litigation, 62nd Annual Meeting, Southeastern Association of Law Schools (SEALS), Palm Beach, Florida, August 02, 2009 [in English]

Comparative Civil Procedure, The Institute for International and Comparative Law, Dallas, Texas, June 10 and 11, 2009 (8 hours) [in English]

Civil Procedure Harmonization and the Common-Law / Civil-Law Divide, International Association of Procedural Law, Toronto, June 05, 2009 [in English]

Emerging Issues in Investment Abroad. Risk and Litigation. State Bar of Texas International Law Section, 21st Annual Institute, March 05, 2009 [in English]

A Codificação do Processo Civil Coletivo, General Assembly of the Brazilian Bar Association, Brasilia, November 06, 2008 [in Portuguese]

Os Anteprojetos de Código de Processo Civil Brasileiros, National Committee of Group Redress of the Brazilian Bar Association, Brasilia, November 05, 2008 [in Portuguese]

New Trends on Class Actions, 10th Anniversary of the Argentinean Civil Procedure Law Review, Jornadas Internacionales de Derecho Procesal Civil, Universidad del Litoral, October 10, 2008, Santa Fe, Argentina [in Spanish]

Res Judicata in Class Action Litigation; Perspectives on Class Actions, Fundesi, October 08, 2008, Buenos Aires, Argentina [in Spanish]

Rumo a um Código de Processo Civil Coletivo, PUC-SP, (cancelado), June 03, 2008, São Paulo [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Ministério Público do Rio de Janeiro, June 9, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, UERJ (cancelado), June 10, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Defensoria Pública do Estado do Rio de Janeiro (cancelado), June 10, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Unesa (cancelado), June 11, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Congresso Brasileiro das Carreiras Jurídicas de Estado, Brasília, June 12, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Academia Brasileira de Direito Processual, Porto Alegre, June 14, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Universidade Federal do Rio Grande do Sul, Porto Alegre, June 16, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Instituto Bacellar, Curitiba, June 17, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, PUC-PR, June 17, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Universidade Federal do Parana, June 18, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Justiça Federal do Paraná, Curitiba, June 18, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Universidade Federal do Espírito Santo, June 19, 2009 [in Portuguese]

Rumo a um Código de Processo Civil Coletivo, Ministério Público do Espírito Santo, June 20, 2009 [in Portuguese]

Legal Education and Legal Profession in Common Law Countries, Universidade Federal do Espírito Santo, June 20, 2009 [in Portuguese]

Codificación de las demandas colectivas en México, Comisión de Gobernación de la Cámara de Senadores y Colegio de Secretarios de la Suprema Corte de Justicia de la Nación, Mexico City, March 28, 2008 [Spanish]

La Experiencia de los Estados Unidos en Materia de Acciones Colectivas (Moderador), El Aceso a la Justicia para los Consumidores a través de acciones colectivas, Nov 16, 2007, ITAM Law School, Mexico City [in Spanish]

Hacia un Código de Proceso Civil Colectivo para México, El Aceso a la Justicia para los Consumidores a través de acciones colectivas, Nov 15, 2007, ITAM Law School, Mexico City [in Spanish]

Inovaciones para una ley de demandas colectivas en México, Alconsumidor and ITAM Law School, November 15,

App. 1956

2007 [in Spanish]

Codifying Class Actions, XIII World Congress of Procedural Law, International Association of Procedural Law, Salvador, Bahia, September 20, 2007 [in English]

Public Law Litigation and Enforcement: Consumer and Environmental Law, Moderator, Georgia State University College of Law, Atlanta, Georgia, September 7, 2007 [in English]

Noções de Direito Norte-Americano, Faculdade de Direito da Universidade Federal da Bahia, Salvador, Bahia, July 2007 [in Portuguese]

Ações Coletivas na Experiência Norte-Americana, Faculdade de Direito da Universidade Federal da Bahia, Salvador, Bahia, July 2007 [in Portuguese]

A História Recente das Propostas de Codificação do Processo Coletivo no Brasil.  A Codificação do Processo Coletivo, Ministério Público do Estado de Minas Gerais, Belo Horizonte, July 17, 2007 [in Portuguese]

A Codificação do Processo Coletivo no Brasil, Ministério Público do Estado de Minas Gerais, Belo Horizonte, Minas Gerais, July 17, 2007 [in Portuguese]

As Ações Coletivas Norte-Americanas, Faculdade de Direito da Universidade de Ribeirão Preto, UNAERP, Ribeirão Preto, São Paulo, Jun 30, 2007 [in Portuguese]

Curso de Direito Norte-Americano, Faculdade de Direito da Universidade de Ribeirão Preto, UNAERP, Ribeirão Preto, Jun 29, 2007 [in Portuguese]

A Legislação Sobre Tutela Coletiva no Brasil e no Mundo: Releitura da Intervenção do Ministério Público no Processo Civil, Ministério Público Federal no Paraná, Curitiba, Paraná, June 5, 2007 [in Portuguese]

Comparative Law and Civil Procedure, Visiting Professor, University Agostinho Neto Law School, LLM Program, Luanda, Angola, May 17-22, 2007 [in Portuguese]

Recent Developments on Class Actions in Latin America: The Model Class Action Code for Ibero-America. Latin American Law Workshop – Washington University Law School, Saint Louis, April 19-21, 2007 [in English]

La Cosa Juzgada en Las Acciones Colectivas, XXVII Congreso Colombiano de Derecho Procesal, Cartagena, Colombia, September 7, 2006 [in Spanish]

As ações coletivas e a tutela dos direitos difusos e coletivos, Faculdade de Direito da Universidade Agostinho Neto, Luanda, Angola, July 21, 2006 [in Portuguese]

Direito Processual Civil Comparado, Commemoration of 50 years of the Catholic University of Salvador, Bahia, Brazil, July 12 and 13, 2006 [in Portuguese]

Direito Processual Coletivo, Commemoration of 50 years of the Catholic University of Salvador, Bahia, Brazil, July 6 and 7, 2006 [in Portuguese]

Direito Processual Coletivo, Universidade Federal Fluminense, Rio de Janeiro, July 3, 2006 [in Portuguese]

Direito Processual Civil Comparado, Universidade Federal Fluminense, Rio de Janeiro, May 27, 2006 [Portuguese]

Problemas Actuales en la Protección Jurisdiccional de los Intereses Difusos y Colectivos, Congreso Internacional de Derecho Procesal Administrativo, May 4, 2006, Mazatlán, Sinaloa, Mexico [in Spanish]

Consideraciones Jurídicas y Políticas de los Princípios de Proceso Civil Transnacional, Instituto de Investigaciones Jurídicas de la Universidad Nacional Autónoma de México, Mexico City, April 27, 2006 [in Spanish]

The Principles and Rules of Transnational Civil Procedure as a tool to teach Comparative Law, The American Society of Comparative Law and The Italian Society of Comparative Law, Penn State University, The Dickinson School of Law, Carlisle, Pennsylvania, U.S.A., April 6, 2006 [in English]

Teaching Comparative Law in First Year Civil Procedure Classes: American Civil Procedure in a Global Context, AALS Annual Meeting, January 4, 2006, Washington DC, U.S.A. [in English]

Ações Coletivas nos Estados Unidos, Pontifícia Universidade Católica do Paraná, Curitiba, Paraná, Brazil, October 29, 2005, videoconference [in Portuguese].

História Recente da Codificação do Direito Processual Coletivo no Brasil, Instituto Brasileiro de Direito Processual, Brasília, October 13, 2005 [in Portuguese]

Legal Education in the United States from a Comparative Perspective, Universidade Cooperativa, Bogotá, Colombia, September 10, 2005 [in Spanish]

Acciones Colectivas en una Perspectiva Comparada, XXVI Congreso Colombiano de Derecho Procesal, September 7, 2005, Bogota [in Spanish]

Class Action Model Code, University of Arizona Law School, Comparative Law in the Twenty-First Century, April 8, 2005, Tucson, Arizona, U.S.A. [in English]

Is there such a thing as Latin American Law?, AALL Annual Meeting, July 19, 2005, San Antonio, USA [English]

Acciones Colectivas Pasivas en el Código Modelo para Iberoamérica, Jornadas Procesales, Tribunal Arbitral de Barcelona, June 30, 2005, Barcelona, Spain [in Spanish]

Consumer Class Action Legislation in Civil Law Countries, Federal Trade Commission (FTC) and Consumer Policy Committee of the Organization for Economic Cooperation Development (OECD) Workshop on Comparative Class Actions, April 19, 2005, Washington DC, U.S.A. [in English]

United States Class Actions, Ministério Público Federal, Porto Alegre, Dez 14, 2004 [in Portuguese]

8

Class Actions in Comparative Perspective, Ministério Público Federal, Porto Alegre Dez 15, 2004 [in Portuguese]

A Codificação do Direito Processual Civil Coletivo no Brazil, Ministério Público Federal, Porto Alegre, Dez 16, 2004 [in Portuguese]

Rumo a um Código Brasileiro de Processo Civil Coletivo, Ministério Público do Paraná, December 9, 2004, Curitiba, Brazil [in Portuguese]

Harmonization of Civil Procedure, Discussant, Lawyers and Jurists in the 21st Century. Celebrating the Centennial of Comparative Law in the United States, Washington University School of Law, November 13, 2004, St. Louis, U.S.A. [in English]

Proyecto de Código para Acciones Colectivas, Facultad de Derecho Universidad de Córdoba, November 26, 2004, Córdoba, Argentina [in Spanish]

Hacia una Legislación Colectiva en México, III Feria Internacional del Libro, Suprema Corte de Justicia de la Nación, October 25, 2004, Mexico [in Spanish]

Class Action in Comparative Perspective, University of Houston Law Center Faculty Luncheon, Houston, October 11, 2004 [in English]

Derecho Procesal Comparado, Supremo Tribunal de Justicia del Estado de Michoacán, Instituto de Especialización Judicial, September 29, 2003, Morelia, Mexico [in Spanish]

La Protección Procesal de los Derechos de Grupo en Estados Unidos y Brasil, Universidad Michoacana de San Nicolás de Hidalgo. División de Estudios de Postgrado de la Facultad de Derecho, September 30, 2003, Morelia, Mexico [in Spanish]

Direito Processual Transnacional, Instituto Brasileiro de Direito Processual, August 9, 2003, Iguassu Falls, Brazil [in Portuguese]

Principios y Normas del Derecho Procesal Transnacional, Universidad de Palermo, August 14, 2003, Buenos Aires, Argentina [in Spanish]

Normas Procesales Civiles Uniformes para el Proceso Colectivo, Inter American Bar Association, XXXIX Conference, June 19, 2003, New Orleans [in Spanish]

Norme Trasnazionali di Procedura Civile, University of Bologna, May 17, 2003, Bologna, Italy [in Italian]

Transnational Civil Procedure, Hellenic Institute of International and Foreign Law, Org. Prof. Konstantinos Kerameus, May 29, 2003, Athens, Greece [in English]

Criticizing the Principles of Transnational Civil Procedure, Stockholm Center for Commercial Law, June 03, 2003, Stockholm, Sweden [in English]

Class Action Model Code for Civil Law Countries, Stockholm Center for Commercial Law, June 04, 2003, Stockholm, Sweden [in English]

Transnational Litigation in Comparative Perspective, Riga Graduate School of Law, June 06, 2003, Riga, Latvia [in English]

Class Actions in Civil Law Countries, Riga Graduate School of Law, June 06, 2003, Riga, Latvia [in English]

Class Actions in Comparative Perspective, Faculty Workshop, Osgoode Hall Law School, January 31, 2003, Toronto [in English]

Class Actions in Comparative Perspective, Faculty Workshop, University of Detroit Mercy School of Law, November 21, 2002, Detroit, U.S.A. [in English]

Código Modelo de Proceso Colectivo, XVIII Jornadas Iberoamericanas de Derecho Procesal, October 16, 2002, Montevideo, Uruguay [in Spanish]

Class Actions in Comparative Perspective, Faculty Workshop, Temple University Beasley School of Law, October 30, 2002, Philadelphia, U.S.A. [in English]

Principios y Normas del Proceso Civil Internacional, IV Curso Anual de Preparación y Capacitación para Profesores de Derecho Procesal, July 20, 2002, Toluca, Mexico [in Spanish]

Drafting Principles and Rules of Transnational Civil Procedure, British Institute of International and Comparative Law, May 24, 2002, London, England [in English]

Proyecto de Principios y Normas del Proceso Civil Internacional, Facultad de Derecho de la Universidad Autonoma de Mexico, March 1, 2002, Mexico City, Mexico [in Spanish]

El Proyecto de Principios y Normas del Proceso Civil Internacional, Center of Uniform Law, February 28, 2002, Mexico City, Mexico [in Spanish]

Class Actions in Comparative Perspective, Faculty Workshop, University of Miami Law School, Florida, U.S.A. February 2, 2002 [in English]

Ações Coletivas nos Estados Unidos, Jornadas de Direito Processual Civil, Ministério Público do Paraná, December 14, 2001, Curitiba, Brazil [in Portuguese]

Class Actions in Comparative Perspective, Faculty Workshop, Louisiana State Law School, Baton Rouge, U.S.A., November 15, 2001 [in English]

9

Iniciativas para la Formulación de Normas Uniformes en el Ámbito del Derecho Procesal Civil Internacional, Nuevos Retos para el Derecho Procesal Civil Internacional, Universidad de Barcelona, November 5, 2001, Barcelona, Spain [in Spanish]

Las Acciones Colectivas en el Nuevo Derecho Español. Una Perspectiva Comparada, Mullerat, November 6, 2001, Barcelona, Spain [in Spanish]

Uses and·Abuses of Comparative Law, Federal University of Bahia Law School, September 27, 2001, Salvador, Brazil [in Portuguese]

Adequacy of Representation in Class Actions, IV Jornadas de Direito Processual Civil, August 8, 2001, Fortaleza, Brazil [in Portuguese]

Teaching Comparative Civil Procedure, AALS Annual Meeting, January 6, 2001, San Francisco [in English]

Transnational Litigation in Comparative Perspective, Colloquio Internazionale: Processi di Integrazione e Soluzione delle Controversie, Università degli Studi di Roma "Tor Vergata", September 9, 2000, Rome, Italy [in Italian]

Brazilian Class-Action Statutes, Debates Over Group Litigation in Comparative Perspective, Duke University and University of Geneve, July 22, 2000, Geneva, Switzerland [in English]


## PARTICIPATION IN PEER EDITED LAW REVIEWS

REVISTA FORENSE  Member of the International Board of Editors (2013 - present)

COMPARATIVE LAW REVIEW  Member of the Scientific Council (2012 – present) [Poland]

AMERICAN JOURNAL OF COMPARATIVE LAW  Member of the Board of Editors (2006 - present)

REVISTA BRASILEIRA DE DIREITO PROCESSUAL  Member of the Advisory Board (2009 – present)

REVISTA BAIANA DE DIREITO, Member of the International Board of Editors (2008 – present)

REVISTA INTERNACIONAL DE ESTUDIOS DE DERECHO PROCESAL Y ARBITRAJE  Member of the Scientific Committee (2007 - present) [Spain]

REVISTA DO PROGRAMA DE PÓS-GRADUAÇÃO EM DIREITO DA UNIVERSIDADE FEDERAL DA BAHIA, Member of the International Board of Editors (2006 – present)

REVISTA IBEROAMERICANA DE DERECHO PROCESAL CONSTITUCIONAL  Member of the Advisory Committee (2004-present) [Mexico]

REVISTA DE PROCESSO  Member of the Editorial Advisory Board (2002 - present)

REVISTA DE DIREITO PROCESSUAL CIVIL  Member of the Editorial Advisory Board (1996 - present)

REVISTA CIÊNCIA JURÍDICA  Member of the Editorial Advisory Board (1991 - present)


## ACTIVITIES

BLACK'S LAW DICTIONARY (2014).  Academic Contributor

The Brazil-United States Legal and Judicial Studies, American University Washington College of Law, Advisory Council (2013 – Present)

The Hague Conference on Private International Law. "International Jurisdiction and Judgments" Project. Participated initially as an observer for UNIDROIT and then as a member of the drafting working group

UNCITRAL.  United Nations meeting on International Arbitration.  Participated as an observer for UNIDROIT

Cambridge University Press.  Peer Reviewer

Oxford University Press.  Peer Reviewer

Jus Podivm Legal Publishers.  Member of the Editorial Advisory Board (2009 – 2010)

18th International Congress on Comparative Law.  Washington 2010.  National Reporter for Brazil, Mexico, and the United States.


## BAR ADMISSIONS AND ACADEMIC AFFILIATIONS

| | |
|---|---|
| ASCL | American Society of Comparative Law |
| | Board of Directors (02-06), Executive Committee (07-09), Research and Service (05 – present) |
| OAB | Admitted to the Brazilian Bar Association, Bahia and Sao Paulo Chapters |
| IAPL | Member of the International Association of Procedural Law |
| IIDP | Member of the Ibero-American Institute of Procedural Law |
| IBDP | Member of the Brazilian Institute of Procedural Law |
| IAB | Member of the Brazilian Law Institute |
| CNPDP | Member of the Mexican Association of Civil Procedure Professors |


## LANGUAGES

Fluent in **Portuguese, English, Italian, Spanish**.  Proficient in **French**

10

**TEACHING SUBJECTS**

All subjects related to **Civil Procedure. Torts, Comparative Law**, and **International Law**, such as Int'l Litigation, Comparative Civil Procedure, Class Actions, Remedies, Evidence, Torts, Federal Courts, Complex Litigation, Judicial Administration, Judicial Process, Mass Torts, Comparative Legal Traditions, Int'l Arbitration, Int'l Business Transactions, Int'l Trade, WTO, Public Int'l Law, Private Int'l Law, Alternative Dispute Resolution, Int'l Organizations, European Union Law, Latin American Law and Institutions

**REFERENCES**

Professor Geoffrey C. Hazard, Jr. (Hastings Law School); hazardg@uchastings.edu; (415) 292-6535

Ass Dean Professor Christian Day (Syracuse University College of Law); ccday@law.syr.edu; (315) 443-3650

Dean Doug Blaze (University of Tennesee College of Law); blaze@utk.edu; (865) 974-2521

Professor Lance Liebman (Columbia University and ALI); lliebman@law.columbia.edu; (212) 854-5699

Judge Peter Messitte (Federal Court, Maryland); Judge_Messitte@mdd.uscourts.gov; (301) 344-0632

Professor Richard Marcus (University of California, Hastings); marcusr@uchastings.edu; (415) 565-4829

Professor Douglas Moll (University of Houston Law Center); dmoll@central.uh.edu; (713) 743-2172

Professor Stephen Zamora (University of Houston Law Center); szamora@uh.edu; (713) 743-2137

11

# EXHIBIT 80

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| PEGGY ROIF ROTSTAIN, et al. on behalf of themselves and all others similarly situated<br><br> v. <br><br>TRUSTMARK NATIONAL BANK, et al., Defendants. | Civil Action No 3:09-CV-02384-N-BG<br><br>Judge: Hon. David C. Godbey<br><br>Mag.: Hon. Nancy M. Koenig |

## DECLARATION OF ROGIER F. VAN DEN HEUVEL

### I.  Introduction

1.      I have been asked to address whether a court in the former Netherlands Antilles would recognize and give preclusive effect to a US class action judgment rendered in the above-captioned *Rotstain, et al. v. Trustmark National Bank, et al.* ("the Rotstain Action" or the "Action"), or a court-approved settlement in the Action, such that it would be binding on an investor domiciled in the former Netherlands Antilles who did not "opt out" of the plaintiff class.

### II.  Summary of Opinion

2.      An opt-out mechanism whereby a party is bound to a judgment or court-approved settlement merely for failing to opt out would be in contravention of public policy. In my opinion, it is highly unlikely that courts of the former Netherlands Antilles would recognize and give preclusive effect to such a judgment or court-approved settlement in an opt-out class action, including the Rotstain Action.

3.      Further, in my opinion, class action judgments awarding compensatory damages would be at considerable risk of being in contravention of public policy since these would be irreconcilable with applicable domestic provisions on collective actions that expressly preclude claims for pecuniary damages.

4.      Lastly, in my opinion, it is highly unlikely that courts of the former Netherlands Antilles would recognize and give preclusive effect to any judgment awarding punitive damages because punitive damages would also contravene public policy as a matter of principle.

### III.  Qualifications and Materials Considered

#### A.  Professional Qualifications

5.     I am a practicing attorney (*advocaat*) at the law firm VanEps Kunneman VanDoorne in Curacao. I am a national of the Netherlands where I obtained my degree in law (*meester in de rechten*, LL.M) at Leiden University in 2001. I practiced law at the Netherlands law firm Simmons & Simmons (and its predecessors) before joining VanEps Kunneman VanDoorne.

6.     I am a member of the bar of the Common Court of Justice of Aruba, Curacao and Sint Maarten and of Bonaire, Sint Eustatius and Saba, as well as the Netherlands Bar.

7.     I have had a litigation practice since the beginning of my career. In my daily practice I regularly deal with matters of recognition and enforcement of foreign judgments in the former Netherlands Antilles. Hence, I consider myself qualified to render this professional opinion.

8.     I am the (visiting) lecturer of private international law at the University of Curacao Dr. Moises da Costa Gomez. My *curriculum vitae* is attached to this opinion as Exhibit A.

9.     I have not testified at a deposition or at trial in the past four years.

10.    I am being compensated for my work in connection with the Action at my customary consulting rate of $480 US Dollars per hour. My compensation is in no way contingent upon the nature of my opinions or the outcome of this litigation. My opinions reflect my own independent, professional judgment.

#### B.  Documents Considered In Forming My Opinion

11.    In reaching my opinions, I have considered the following materials, along with the other documents or information referenced in this Declaration: (i) a Memorandum supporting plaintiffs' motion for class certification, for designation of class representatives and class counsel dated 30 April 2015, and (ii) a Plaintiffs' second amended class action complaint dated 1 May 2015. I understand that both documents have been submitted to the United States District Court, Northern District of Texas, Dallas Division, in the Rotstain Action.

12.    For the purpose of giving this opinion and relying on these documents, I have assumed the following facts.

13.    This is a putative class action on behalf of domestic and foreign persons who invested considerable sums of money in certificates of deposits ("CDs") issued by R.A. Stanford's Antigua-based Stanford International Bank, Ltd ("SIBL").

14.    The plaintiffs' investments were part of an operation that the Dallas court has determined was a Ponzi scheme.

15.    The plaintiffs allege that they were unaware of this, for lack of disclosure by R.A. Stanford, and therefore, could not have known that SIBL would be unable to repay principal and interest on the CDs.

16. The plaintiffs further allege that five banks, the "Bank Defendants," possessed the information required to expose the Ponzi scheme, but failed to sever their banking relations with SIBL and related entities, tolerated R.A. Stanford's fraud and even assisted in that fraud in exchange for profit. Plaintiffs argue that the Bank Defendants (i) aided violations of the Texas Securities Act, (ii) aided fraud, (iii), participated in a breach of fiduciary duty, and (iv) aided conversion of money, which results in four asserted corresponding causes of action, together with a fifth asserted cause of action, being civil conspiracy.

17. The plaintiffs request that the Court certify the "Class" as defined in that second amended class action complaint, award damages in an amount to be determined at trial, and in accordance with the claim determinations of the US Receiver, as well as attorneys' fees and costs, permitted by law, and other relief as the court may deem just and appropriate.

18. I reserve the right to supplement or modify my opinions expressed herein, particularly in view of any new arguments or materials presented by plaintiffs in the Action.

## IV. The Legal Systems of the Former Netherlands Antilles

19. At the outset, I should point out that the Netherlands Antilles, which have not included Aruba since 1986, ceased to exist altogether as of 10 October 2010. Since then, the Kingdom of the Netherlands consists of the autonomous countries (i) the Netherlands, (ii) Aruba, (iii) Curacao and (iv) Sint Maarten, while the island territories (v) Bonaire, (vi) Sint Eustatius and (vii) Saba (the latter three together the "BES") have become public bodies of the Netherlands. My opinions expressed herein address the recognition of a US class action judgment or court-approved settlement in Aruba, Curacao, Sint Maarten, and the BES, which for simplicity I refer to collectively as the "former Netherlands Antilles."

20. The Kingdom of the Netherlands has five regional legal systems (viz. one for the Netherlands, one for Aruba, one for Curacao, one for Sint Maarten and one for the BES). While these legal systems are very similar to each other, there are differences between the various legal systems. A most notable difference between the legal system of the Netherlands on the one hand and the legal systems of the former Netherlands Antilles on the other hand, that bears relevance to this opinion, concerns the provisions on court-approved class action settlements, which provisions do not exist in the former Netherlands Antilles. Further, the various legal systems do not share the same public policy. Fundamental values differ between the countries. A clear example is that a marriage between people of equal gender can be lawfully concluded in the Netherlands or in Bonaire, but not in Curacao, where it is considered contrary to public policy.

21. In view of the (otherwise) abundant similarities between the various legal systems within the Kingdom, and the principle of concordance[1] that is applied in the drafting

---

[1] The principle of concordance follows form article 39 of the Charter for the Kingdom of the Netherlands, which provides that (*inter alia*) civil law should be provided for in a similar fashion in The Netherlands, Aruba, Curaco, Sint Maarten, and the BES.

4

and interpretation of the laws of the various countries within the Kingdom,[2] the Supreme Court's decisions in Dutch cases bear authority in the former Netherlands Antilles' courts. In addition, lower courts' judgments throughout the Kingdom may set precedents for other courts to follow. In addition, Dutch legislative history, such as explanatory notes, which is generally more elaborate than in the former Netherlands Antilles, is relevant to the interpretation of the laws in the former Netherlands Antilles to the extent that these laws are concordant.

22. From the perspective of civil procedure, the former Netherlands Antilles are one regional jurisdiction, sharing the same rules of civil procedure (*wetboek van burgerlijke rechtsvordering* or code of civil procedure, "CCP"). There is a court of first instance (*Gerecht in Eerste Aanleg*) in each of the former Netherlands Antilles. The former Netherlands Antilles have one common appellate court, the common court of justice (*Gemeenschappelijk Hof Justitie van Aruba, Curacao, Sint Maarten en van Bonaire, Sint Eustatius en Saba*). Judgments of the common court of justice can be appealed in cassation before the Dutch Supreme Court (*Hoge Raad*) in The Hague, the Netherlands.

### A. Rules on Class Actions in the Former Netherlands Antilles

23. Like the Netherlands, all legal systems of the former Netherlands Antilles provide for class actions (or, using Dutch parlance, collective actions) in articles 3:305a of the various Civil Codes.

24. The relevant provisions bestow upon an interest organization the right to institute a collective action. This right, however, is a subsidiary right that does not replace the right of an individual to assert his own claim in court. According to Dutch legislative history the attribution of preclusive effect of a collective action to members of the represented class, that are not themselves a party to the litigation, was not included for it would contravene fundamental principles of Dutch civil procedure, more specifically a party's right to self-determination in the pursuit of its legal interests, and the right to a fair trial, including the right to access to court and the right to be heard there. The Supreme Court has confirmed in several instances that, indeed, a class action judgment ex 3:305a Civil Code does not have preclusive effect to non-parties.[3] The aforementioned principle applies equally to the Netherlands and to the former Netherlands Antilles.

25. The provisions of 3:305a Civil code expressly exclude the possibility of a pecuniary damage award for such a class action (Art. 3:305a para. 3). The legislature was of the opinion that as a matter of principle, only parties that suffered damages are entitled to claiming damages, and an award for damages requires an assessment of each individual claim. Questions as to causal connections between unlawful acts and damages, prescription and mitigating circumstances, such as the victim's own fault, cannot normally be established collectively. The legislative history provides the following explanation, in my own translation:

---

[2] Article 40 of the Charter for the Kingdom of the Netherlands.

[3] Supreme Court, 14 June 2002, NJ 2003/689.

5

Considering the principle that damages would have to be paid to the persons that have suffered the damages, I do not see a possibility for interest organizations to claim damages for others. [...] Pursuant to paragraph 3 of article 305a [...] an interest organization cannot claim pecuniary damages for others. Compelling arguments can be adduced against such a possibility. It is inconceivable without all kinds of restrictions that would do justice to the interests of the parties involved. Opening the opportunity would bring about a multitude of legal-technical complications. [...] The legal-technical complications referred to include that the total damages inflicted to the group represented by the interest organization, and subsequently, it would have to be determined how the total damages should be divided between this group. The individual damages would usually differ and questions as to the victims' own fault could influence the obligation to compensate damages. This shows, that in most cases, individual circumstances oppose the bundling of claims for damages.

26.    An important difference between Netherland and former Netherlands Antilles class action-related laws is that since 2005, through the entry into force of the Dutch Mass Claims Settlement Act (*Wet collectieve afwikkeling massaschade*; MCSA), the Netherlands' law additionally provides for a procedure for collective settlement of mass damages on the basis of a settlement agreement concluded between one or more representative organizations and one or more allegedly liable parties for the benefit of a group of affected persons to whom damage was allegedly caused. Once such a collective settlement is concluded, the parties may jointly request the Amsterdam Court of Appeal to declare it binding. If the Court grants the request, the agreement binds all persons covered by its terms and represented by the representative organization, except for any person who has expressly elected to opt out within a specific period. Any person having opted out retains his right to initiate individual proceedings against the defendant. Importantly, a similar procedure does **not** exist in the former Netherlands Antilles.

**B.  Recognition and Enforcement of Foreign Judgments in the Former Netherlands Antilles**

27.    There is no applicable Convention that governs the recognition of a US class action judgment or a US court-approved settlement judgment. Thus, recognition (or lack thereof) by a Netherlands Antilles court would be determined on the basis of domestic rules. These rules are identical in all countries of the Kingdom of the Netherlands.

28.    Article 431 of the CCP provides:

1. Except for what is stated in Articles 985-994 [CCP], no decision rendered by foreign judges nor authentic deeds issued abroad can be enforced in this country.[4]
2. The matters can be dealt with and settled de novo by the courts in this country.

---

[4] "In this country" is the literal translation of *hier te lande*, which according to the preliminary article A to the CCP, means "in Aruba, Curacao and Sint Maarten and in the public bodies Bonaire Sint Eustatius and Saba".

6

29.    The provision (Article 431) means that a judgment of a foreign court is only enforceable by virtue of a convention or a specific domestic legal provision. The recognition and enforcement of other foreign court judgments is not possible, so a new procedure on the merits is required. The wording of paragraph 2 would exclude the possibility of recognition. The application of this provision has, however, been limited considerably in case law. The Supreme Court recently confirmed the conditions for the recognition of foreign judgments:

    (1)    The jurisdiction of the foreign court is based on internationally accepted jurisdictional grounds;

    (2)    The rules for due process have been observed;

    (3)    The recognition of the foreign judgment does not violate domestic public policy; and

    (4)    The foreign decision must not be irreconcilable with a domestic court ruling between the same parties or with a prior foreign court ruling between the same parties, in a dispute about the same subject and based on the same cause, if that prior ruling is fit for recognition by the domestic court.[5]

30.    If a foreign judgment meets these criteria, then the domestic court has to assume that the parties are bound by that foreign decision (*res judicata*).[6]

### V.    Recognition by the Former Netherlands Antilles of a Judgment or Court-Approved Settlement in the Action

31.    It is my understanding that US class actions, such as the Action, employ an opt-out mechanism whereby persons who fall within the class definition as set by the Court become members of the class and are bound by any judgment or court-approved settlement entered into in the action unless they affirmatively "opt out," in which case they are not bound by any judgment or settlement. Failure to opt out of a class constitutes implied consent to class treatment.

32.    Hereunder, I will address the latter two conditions for the recognition of foreign judgments and explain herein why they are impediments to recognition of a judgment or court-approved settlement in the Rotstain Action.

#### A.  Public Policy

33.    The shield of public policy serves as an exception to withhold recognition of a judgment that would infringe fundamental legal principles or values.

34.    As mentioned hereinabove, fundamental principles of Dutch civil proceedings are the right to self-determine how one wishes to pursue his/her legal interests and the right

---

[5] Supreme Court, 26 September 2014, ECLI:NL:HR:2014:2838, NIPR 2014, 381.

[6] Idem, para. 3.6.5.

7

to access to court, as well as the right to be heard there. A US class action judgment or court-approved settlement to which a party is bound for the mere reason of not having opted-out would be an infringement of that right.[7] The Supreme Court's rulings of the effect that a collective action as contemplated in article 3:305a CC does not have preclusive effect to non-parties pursue from the same notion (see para. 24, hereinabove).

35.   Admittedly, there is one precedent in Dutch case law, in which the court of Amsterdam dated 23 June 2010 held that a court-approved class settlement (United States District Court for the district of Maryland in *In re Royal Ahold N.V.*; civil no.: 1:03-md-01539) was fit for recognition and therefore had preclusive effect.[8] The Amsterdam court reached that decision after concluding that procedural safeguards applied in the US action were comparable to those provided for in the MCSA.

36.   The same reasoning would not apply in the former Netherlands Antilles, however, for the simple reason that a law similar to the MCSA does not exist in any of the former Netherlands Antilles legal systems.

37.   Secondly, it should be noted that the Amsterdam case concerned the recognition of a settlement, for the class certified by the Maryland court was for settlement purposes only. This is a situation much different from the situation in which a condemnatory class action judgment awarding pecuniary damages would be rendered. Such a judgment would be at considerable risk of being in contravention of public policy since it would be irreconcilable with domestic provisions on collective actions, which expressly preclude claims for pecuniary damages on "compelling arguments" recognized by the legislature (see para. 25, hereinabove). In her annotation to the Amsterdam court's ruling referred to in para. 35, Professor I.N. Tzankova explains (in my own translation):

> [I]n the Dutch context I consider of decisive importance the fact that the US settlement was approved for "settlement purposes only", as a consequence of which a comparison with the Dutch MCSA is justifiable. If it would concern the recognition and enforcement of a class action judgment awarding damages, or if the collective settlement would have been concluded after the class would have been held admissible in the class action to recover damages (certification), from the perspective of the Dutch collective action tradition one could have critically questioned whether the judgment was not rendered or the US settlement was not approved in proceedings that would be in contravention with Dutch public policy. After all, article 3:305a para. 3 Civil Code expressly excludes a collective action for damages.

38.   As far as I am aware, no former Netherlands Antilles court has ever recognized a US class action judgment or court settlement upon absent class members.

---

[7] The Dutch council of state, advising the Dutch government on legislation and governance, confirmed as much in its advice on the draft MCSA, see *Tweede Kamer*, vergaderjaar 2003-2004, 29414, nr. 4, p. 2

[8] Amsterdam Court 23 June 2010, SOBI v. Deloitte et al., JOR 2010/225, annotation Tzankova.

8

39.     Finally, it is my understanding that Plaintiffs seek punitive damages in the Rotstain Action. Punitive damages contravene the former Netherlands Antilles provisions on damages (*restitutio ad integrum*), which are merely compensatory in nature. This is a fundamental difference between the U.S. legal system and the former Netherlands Antilles legal systems. Dutch courts have held judgments awarding punitive damages in contravention of Dutch public policy.[9] The same reasoning would apply if a former Netherlands Antilles court would have to decide on the preclusive effect of such a judgment.

### B. Irreconcilable Prior Rulings

40.     This criterion speaks for itself. If prior rulings, irreconcilable with a US judgment in the Action would exist, this would be an impediment to recognition.

### VI.  Conclusion

41.     The notion of being bound by a settlement or judgment for the mere reason of not having opted-out, would be in contravention of the former Netherlands Antilles' public policies. Therefore, it is highly unlikely that such a settlement or judgment would be recognized and given preclusive effect by the courts of the former Netherlands Antilles.

42.     Judgments awarding pecuniary compensatory damages are irreconcilable with the rules for class actions (collective actions) that apply in the former Netherlands Antilles, and therefore are at a considerable risk of being in contravention of public policy.

43.     Judgments damages awarding punitive damages are in contravention of the former Netherlands Antilles' public policies as a matter of principle. Such judgments are therefore highly unlikely to be recognized and given preclusive effect by courts in the former Netherlands Antilles.

---

[9] Asser/Kramer & Verhagen 10-III Internationaal vermogensrecht (2015) nr. 1123.

9

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 7, 2015, in Curacao.

_____

Rogier F. van den Heuvel

# EXHIBIT A

**Curriculum Vitae**

Rogier Frederik van den Heuvel
Date of birth 25 October 1976
Place of Birth: Gouda, the Netherlands
Nationality: Dutch

**Education**

- 2001 LL.M. Leiden University 2001

- 2006 Grotius Academy (Radboud University, Nijmegen) Corporate Litigation

**Professional experience**

- 2001-2012      attorney at law (*advocaat*) Simmons & Simmons, Amsterdam, the Netherlands

- 2012-present   attorney at law (advocaat) VanEps Kunneman VanDoorne, Curacao

- Admitted to the bar of Amsterdam and to the bar of the Common Court of Justice of Aruba, Curacao, Sint Maarten and of Bonaire, Sint Eustatius and Saba.

**Additional positions**

- 2012-present   visiting lecturer private international law at the University of Curacao Dr. Moises da Costa Gomez

- 2013-present   board member of Curacao Bar Association (*Orde van Advocaten Curacao*), vice-dean of the Curacao Bar Association since 2014

**Publications**

- B.E.L.J.C. Verbunt and R.F. van den Heuvel, De rol van toerekening van wetenschap bij aansprakelijkheid voor zuiver nalaten in het rechtspersonenrecht, *Geschriften vanwege de Vereniging Corporate Litigation 2006-2007*

  On the role of the attribution of knowledge in case of liability for plain omissions in the context of corporate law.

- Annotation to Den Haag Court of Appeal, 24 August 2008, LJN B190, Ondernemingsrecht 2009, 75.

On the court's ruling on a contractual price determination mechanism in contravention of a price determination provision in the company's articles, that would apply in case of a shareholder's forced exit.

- R.F. van den Heuvel and M.M. Huijzen, Eén maatstaf voor de externe aansprakelijkheid van bestuurders en ondergeschikten, *Geschriften vanwege de Vereniging voor Corporate Litigation 2001-2012*

Arguing that in Dutch law, there is in effect one common threshold for a legal person's managing directors' and subordinates' liability, towards third parties, rather than different thresholds, as often argued.

- Annotation to Common Court of Justice of Aruba, Curacao, Sint Maarten and of Bonaire Sint Eustatius and Saba, 15 July 2013

On a court ordered inquiry into the policy and course of affairs of various government companies in Curacao. The inquiry procedure is a specific procedure aimed at establishing mismanagement within corporate entities and offering redress.

- Kroniek Curacaos Enqueterecht 2012-2013

Chronicle of Curacao inquiry law  2012-2013.