# EXHIBIT 81

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| PEGGY ROIF ROTSTAIN, et al. on behalf of themselves and all others similarly situated<br><br>v.<br><br><br>TRUSTMARK NATIONAL BANK, et al., Defendants. | Civil Action No 3:09-CV-02384-N-BG<br><br>Judge: Hon. David C. Godbey<br><br>Mag.: Hon. Nancy M. Koenig |

**DECLARATION OF ARTURO HOYOS**

**I.**     **Scope of Opinion.**

1.     I have been asked to render an opinion on whether a Republic of Panama court would recognize a class action judgment or court-approved settlement rendered in a United States "opt-out" class action lawsuit, such as the above-captioned *Peggy Roif Rotstain, et al. v. Trustmark National Bank, et al.*, Civil Action No. 3:09-CV-02384-N-BG ("*Rotstain* Action"), as precluding a subsequent action in a Panamanian court brought by a Panamanian national or Panamanian resident who did not affirmatively and expressly "opt-out" of the plaintiff class.

2.     The decision on whether a foreign judgment is to be recognized and enforced as preclusive in Panama is vested in the Supreme Court of Justice, Fourth Chamber where, as stated below, I sat for eight years.

3.      I reserve the right to supplement or modify my opinions expressed herein, particularly in light of any new arguments raised or materials presented by Plaintiffs in this case.

## II.      **Materials Considered In Forming This Opinion.**

4.      I have no first-hand knowledge of the specific facts underlying this dispute. For the purposes of rendering the opinions expressed herein, I have considered the following materials, along with any other documents or information referenced in this declaration:

    a.      The Plaintiffs' Second Amended Class Action Complaint filed in the United States District Court for the Northern District of Texas, Dallas Division (May 1, 2015);

    b.      The Memorandum Supporting Plaintiffs' Motion for Class Certification, for Designation of Class Representatives and Class Counsel (April 30, 2015);

    c.      The Declaration of Receiver Ralph S. Janvey (October 30, 2014), with Exhibits A-C;

    d.      The Constitution and laws of the Republic of Panama, as cited below;

    e.      Court decisions issued by the courts of law of the Republic of Panama, as cited below; and

    f.      Publications authored by Panamanian scholars, as cited below.

## III.      **Compensation.**

5.      I am being compensated for my work in rendering the opinions in this report at a flat rate of $ 25,000.  My compensation is not contingent upon the nature of my opinions or the outcome of this litigation.  My opinion reflects my own independent, professional judgment.

## IV.  **Professional Qualifications.**

My *curriculum vitae* is attached to this declaration as Exhibit A.  In summary, my professional qualifications that enable me to render this opinion are the following:

6.     I am an attorney at law practicing as an independent lawyer in the Republic of Panama.  I have recently entered into a partnership, Hoyos & Associates, which starts work in July, 2015.  My law practice covers a wide range of subjects, including civil, corporation and commercial law (insurance law included), and procedural, administrative and constitutional law. I represent clients in judicial and arbitration proceedings, and I also serve as arbitrator in arbitration proceedings.

7.     I am a member of the National Bar Association of Panama.

### *Judicial Service*

8.     In 1990, I was appointed to the Supreme Court of Justice of Panama, the highest court of law in the Republic, as an Associate Justice.  I retired from the bench on December 31, 2005 when the term of my appointment expired.

9.     Between 1994 and 2000, I served as Chief Justice of the Supreme Court of Justice of Panama, a position that I held as a result of internal elections among the nine Justices. I was elected by my peers for three consecutive two-year terms, which makes me the Chief Justice with the longest tenure in recent Panamanian history.

10.     From 1992 to 2000, I sat on the Fourth Chamber of the Supreme Court. In this Chamber we decided which foreign judgments should be recognized and executed in the Republic of Panama.[1]

---

[1] Once a petition for the recognition of a foreign judgment has been filed with the Court, the Fourth Chamber administers the following judicial process: The Court must request the opinion of the Attorney General on whether the foreign judgment should be recognized or

11.     During my sixteen year tenure on the Panama Supreme Court, I was President of the Third Chamber which decided cases primarily arising out of Panama´s labor and administrative law conflicts.  These conflicts included many cases involving liability of state institutions, arising from tort or contracts including banking contracts entered into by state-owned banks.  Such cases required a review and interpretation of provisions of the Civil Code and the Code of Commerce, as well as the law on State contracts and special laws concerning contractual liability and torts in different state institutions.

12.     As Justice of the Supreme Court of Panama, I sat with the full Court and ruled in hundreds of cases of a diverse nature that concerned, among other subjects, Panama corporations, commercial, civil and procedural law, and judicial review of the constitutionality of laws.[2]  Almost all areas of the Panamanian legal system were reviewed during my tenure, so that my judicial experience covered private and public law.

13.     As Chief Justice, I organized and set into motion new judicial institutions to improve the administration of justice.  Among these were a system of courts specializing in mercantile law conflicts such as intellectual property, anti-trust, unfair commercial practices and consumer protection; family courts; and new appeals jurisdictions to deal with those matters and also with juvenile and labor conflicts.  I also promoted new legislation on

---

not, although the Attorney General's view is not binding on the Court.  The Court must also give notice to the other party in the foreign litigation so that both parties can submit their views to the Court and present evidence to defend their interests in the case.  Once the parties and the Attorney General have been heard and the evidence presented, the Fourth Chamber renders a decision on the recognition of the foreign judgment.

[2] The nine Justices sit as a full Court in various circumstances, including: as a constitutional court in cases of judicial review of the constitutionality of laws and other government acts; as a Habeas Corpus court; and as a criminal court for high government officers, including members of Parliament, the Comptroller General and the Attorney General, among others.

the protection of victims of crimes, adopted in 1998 by the National Assembly of Panama, following which I set up a Free Legal Aid Department for Victims of Scarce Resources (Legal Aid had only been available for accused offenders).

14.     In October of 1995, I was elected as the first President of the Organization of Supreme Courts of the Americas (in Washington, D.C.), and more than twenty Chief Justices of the Supreme Courts of the Western Hemisphere took part.  I was invited by the late Chief Justice of the U.S. Supreme Court, the Honorable William H. Rehnquist, to deliver an address on Due Process in the Americas.  The Chief Justices of the Supreme Courts of Canada, Antonio Lamer, and El Salvador, José Domingo Méndez, were invited to comment on my lecture.  The major addresses (mine, those of United States Supreme Court Associate Justices Stephen G. Breyer and Anthony Kennedy, and the late Chief Judge Edward D. Re of the United States Court of International Trade) and panelist commentaries were subsequently published in the Saint Louis University Law Journal (Vol. 40, No.4, Summer 1996) with an introduction by the late Chief Justice Rehnquist.

### *Other Professional and Government Service*

15.     From 1971 to 1975, I worked at the Ministry of Labor as a lawyer and, among other titles, an Under Secretary of Labor.  I took a leave of absence from 1973 to 1974 to study at the University of Sussex in England.

16.     Between 1976 and 1989 I was an associate at the Panama law firm Arias, Fábrega and Fábrega where my practice concentrated on private law in general, and in particular corporate and offshore corporations and also included contracts, banking, tax, labor and litigation. While at this firm I also acted as expert witness on Panamanian law in litigation before United States District Courts in New York and in the Virgin Islands.

*Academic Appointments*

17.     I was a professor on a part-time basis at the University of Panama for nearly

18 years (1971-1973 and 1975-1990). I taught at different Schools (Law, Economics and

International Relations) and lectured on several subjects including international economic

relations, public finance, labor law and tax law.

*Publications and Lectures*

18.     I have published extensively on legal subjects covering different branches of

public law (constitutional, administrative, tax and procedural law) and private law

institutions of the Panamanian Legal System.  A list of my publications is attached to this

declaration as Exhibit B.  My books and essays have been published in: the United States of

America, Argentina, Brazil, Colombia, Costa Rica, Spain, The Netherlands, Mexico,

Panama, Peru, Uruguay and Venezuela.

19.     My books have been considered authoritative and have been quoted by the

Supreme Courts of Justice of Ecuador, El Salvador, Nicaragua, Panama, Perú, Uruguay and

Venezuela, and lower courts in other Latin American countries in support of opinions

rendered by those courts of law in cases pertaining to their jurisdictions and national

constitutions and laws.  Some of my books are used as textbooks by law students in

universities in Panama and other Latin American countries.

*Expert Consulting*

20.     Since leaving the Supreme Court, I have provided expert witness testimony

on Panamanian Law in litigation in:

a.      The United States District Court for the Southern District of New York

        (corporate law);

b.     The United States District Court for the Southern District of Florida, Miami Division (torts).

c.     The United Kingdom of Great Britain (High Court of Justice, Queen´s Bench Division, Technology and Construction Court) (torts arising from construction activities);

d.     In Switzerland (Arbitral Tribunal of Sport-TAS-CAS) (Panamanian law of public registry);

e.     The High Court of the Republic of Singapore (Panamanian corporation law); and

f.     The Dispute Adjudication Board (DAB) (Panamanian law on administrative contracts, interpretations of contracts and hardship).

21.     I have also served as an expert witness on Panamanian law in various international commercial arbitration tribunals (seated in New York and Panama) and in Washington, D.C. at the Arbitration Tribunal of the World Bank (I.C.S.I.D).

22.     Within the past four years, I testified as an expert for the defendant in *Daka Pacific Corp. v. XCC Logistics*, Seventh Circuit Court (Civil) of the First District, Panama (in September 2013).

### *Education and Languages*

23.     I studied for a Doctor of Legal Science (*Doctoris Scientiae Juridicae*) at the Pontificia Universidad Javeriana (Republic of Colombia), with diplomas in socioeconomic sciences and labor law which I attained in 1972 and 1970 respectively.

24.     In addition, I pursued graduate studies at the University of Sussex (England) for a Master of Arts in Development Economics which I received in 1974.

25.     I am fluent in English, and, in my native language, Spanish. I also have intermediate studies in Italian.

## V.     Opinion.

26.     I understand that in U.S. opt-out class actions, such as the *Rotstain* Action, members of the putative class of plaintiffs do not themselves participate as active parties in the litigation, but merely receive a description of the action and parties sufficient for them to be able to decide whether they wish to opt out and remove themselves from the class, thereby preserving their right to bring their own lawsuit against the named defendants.  I am of the opinion that a judgment or court-approved settlement rendered by a U.S. court that purports to bind such an absent class member in such an opt-out class action will not be recognized or enforced as preclusive in the Republic of Panama as to Panamanian residents or nationals who did not opt out because such judgment or settlement would contradict Panamanian laws and public policy (*orden publico*).

### V.A.  The Recognition of Foreign Judgments Under the Judicial Code.

27.     The Panamanian laws concerning the enforcement of foreign judgments were first set out in the Judicial Code and are currently in the new Code of International Private Law adopted in Law No. 7 of 2014.

28.     The Judicial Code set out the following requirements in Article 1419 for the recognition and enforcement of foreign judgments in the Republic of Panama.

a.     The judgment be the result of a personal action;

b.     The judgment be rendered in a manner such that defendants were personally served notice of the complaint and therefore had the opportunity to defend themselves;

    c.      The obligation contained in the judgment be licit in Panama, *i.e.* that it would not contradict the laws or public policy of Panama;[3] and

    d.      The judgment be contained in an authentic document and be final (*res judicata*) in the sense that there are no other remedies pending and it has thus resolved the merits of the claim.

### V.B.    The Recognition of Foreign Judgments Under Law 7 of 2014.

29.    The new Law 7, published in the Official Gazette No.27530 of 8 May, which came into force in November of 2014, as set out in Article 184 of the same, does not represent a fundamental departure from the regulations contained in the Judicial Code.[4]

30.    Law 7 of 2014 requires that to be enforceable, a foreign judgment must comply with the following requirements set out in Article 179:

First and foremost, it must have been issued by a foreign court with jurisdiction (*competencia*); and secondly, "the exclusive jurisdiction of a Panamanian court has not been infringed upon (*conculcado*)" (my translation).

31.    The other three requirements are the same as those set out in the Judicial Code and explained above in Section V.A:

    a.      That the judgment should not have been rendered without the defendant being personally served notice of the complaint and provided with due process. "In other words, the process conducted abroad must comply with

---

[3] *See* Gilberto Boutin *Derecho Internacional Privado*, Editton Maitre Boutin, second edition, Panama, 2009, page 753.  Professor Boutin is the current Dean of the Law School of the University of Panama.

[4] A copy of the Law 7 is attached hereto as Exhibit C.

the principle of the contradictory,"[5] equivalent to aspects of procedural due process that (as discussed below) includes the possibility to contradict the other party's allegations, facts, evidence and other elements of the complaint;

b.    That the foreign judgment does not infringe on principles or fundamental rights of Panamanian public policy (*orden publico*); and

c.    That the foreign judgment is final (*res judicata*) and that it be properly translated into Spanish and be authentic.

32.    The Law 7 of 2014 also sets the judicial procedure that should be followed in the Supreme Court of Justice (Fourth Chamber), similar to the one set out in the Judicial Code.  The process involves the participation of the Attorney General and the parties.  *See supra* footnote 1.

### V.C.    Class Actions in the Panamanian Legal System.

33.    The only type of class actions recognized in Panama are class actions introduced in Panamanian law for the protection of free competition and of consumers in 1996 (Article 172 of Law 29 of 1996).  This special procedure is highly limited to those types of consumer cases and is of rare occurrence in Panama. I believe the procedure to be exclusively an opt-in procedure, although it has been conceptualized as something akin to either an opt-in or opt-out action by distinguished commentators (*see also* footnote 7).[6] Irrespective of semantics, the law in Panama is clear:  Panama does not recognize opt-out procedures that bind persons who do not opt out.  Indeed, as discussed further below, even

---

[5] Gilberto Boutin, book quoted above, page 753 (my translation).

[6] Procedures concerning class actions are also set out in Article 1421 of the Judicial Code in a chapter on Private International Law conflicts introduced in 2006 by Law 36 of that year.

the concept of being bound by default (*i.e.*, without opting-out) is alien to Panamanian legal process.  The fundamental point is that Panama does not accept that an absent member of the class may be bound by an unfavorable judgment or settlement.

34.    According to Article 128 Section 3 of the amended law (which ratified the text of the original provision of Article 172),[7] the court must publish the complaint in a national newspaper for five consecutive days so that potential members of the class may, if they wish, opt in during the following ten days to join the complaint and claim their rights. A judicial decision in the class action is binding only on those potential members who opt in.[8]  Additionally, those that did not take part in the initial opt-in period may intervene as third parties in the phase where the judgment is executed, according to Sections 6 and 7 of Article 172 (which were maintained in the 2006 reform).

35.    Through this process, class actions in Panama require the court to give the potential members of the class opportunity to opt into the judicial process by publicizing the complaint in a national newspaper.  If this notice is not given to potential members of the class so they can join the judicial process, the class action judgment may be regarded unconstitutional by the Supreme Court as an infringement of the due process set out in Article 32 of the Constitution that requires notice to the interested parties (discussed below).

---

[7] The text of the original provision—Section 3 of Article 172—was amended by Decree-Law 9 of 2006 and the definitive text published in the Official Gazette No. 25730 of 12 February 2007.

[8] A commentator has suggested that the Panamanian class action system can be conceptualized as an "opt-out system" which, due to Panamanian conceptions of due process, is binding only if the plaintiffs are victorious.  *See* A. Gidi, *The Recognition of U.S. Class Action Judgments Abroad: The Case of Latin America*, 37 Brook. J. Int'l L. 893, 938–39 (2012).  Even accepting this perspective, the ultimate conclusion is the same: Panama does not bind persons to an unfavorable or partially unfavorable result in a litigation to which they did not affirmatively and expressly opt in.

36.     The right of the members of the class to be represented by lawyers of their choosing as an element of due process is also guaranteed in the class action law as set out in Sections 5 and 9 of Article 172 of Law 29.  Section 5 states that a member of the class by appointing an attorney to represent him becomes a party (as plaintiff or defendant) to the complaint.  Section 9 sets out that there can only be up to five attorneys representing the members of the class. And pursuant to Section 9, the members of the class must agree among themselves which lawyers will represent them. These provisions reinforce the concept that due process entitles a member of the class to appoint a lawyer of his own choosing.

### V.D.   A Foreign Judgment or Court-Approved Settlement Rendered in a United States Opt-Out Class Action Such as in this Case Would Not Be Recognized or Enforced in the Republic of Panama

37.     I have written essays and books on the subject of due process under Panamanian law.  The most influential of these books-—*El Debido Proceso*, (Due Process of Law)[9]—contains a definition of due process that has been adopted by the Supreme Court of Justice of Panama.

38.     The right of due process is referenced in Article 32 of the Constitution, which guarantees, among other things, that "[n]o one shall be tried except by competent authority and in accordance with legal formalities."[10]  Additionally, the concept of due process under Panamanian law includes additional rights not expressly enumerated in Article 32.  Under the doctrine of "constitutional bloc" (*bloque de constitucionalidad*),

---

[9] Ed. Temis, Santa Fe de Bogota, Colombia, 1993 and various reprints.

[10] Based on the translation of Dr. Jorge Fábrega P, Constitution of the Republic of Panama, 1985, except that in 2004-2005 the word "administrative" was introduced by a constitutional amendment.

advanced by me during my tenure as Justice, there are some rights that have constitutional authority even though they are not stated in the Constitution in a documental sense. For instance, the Court has decided that Article 8 of the American Convention on Human Rights, which is more explicit in enumerating procedural rights than our Article 32, integrates with the Constitution into a "bloc of constitutionality" so that procedural rights enumerated in Article 8 of the Convention—including "the right to a hearing"—have constitutional force in Panama. Most recently, in 2014, the Court adopted this definition as binding authority in a decision of 7 April 2014[11] and a decision dated 29 August 2014.[12]

39.     Moreover, the Panamanian conception of due process, set forth in my book *El Debido Proceso*,[13] is a fundamental right (1) to be tried by a preexisting and competent court with jurisdiction, (2) to be offered the opportunity to intervene in the judicial process through the service of notice with sufficient anticipation, (3) to appoint a lawyer, (4) to present evidence and allegations and contradict those of the other party, and (5) to lodge the appropriate remedies against judicial decisions that should be reasoned, so that the party can effectively defend his rights.

40.     In my opinion, the Supreme Court would find a foreign judgment or settlement in an opt-out class action, such as the *Rotstain* Action, to violate these fundamental constitutional rights to access to court and due process rights held by Panamanian residents or nationals who did not opt in to the action ("Absent Panamanians") and therefore not to preclude a subsequent lawsuit by such Absent Panamanians. This is

---

[11] Published in the Official Gazette No. 27606 of  25 August 2014, *Eduardo Belford Melon v.Panama Canal Authority* (ACP). A copy of the decision is attached hereto as Exhibit D.

[12] Published in the Official Gazette No. 27643 of  15 Ocotber 2015, *America Tower I et al. v. Authority of Maritime Resources*. A copy of the decision is attached hereto as Exhibit E.

[13] Arturo Hoyos, El Debido Proceso, page 54.

particularly the case because the Panamanian right to due process of law set out in Article 32 (and the corresponding "bloc of constitutionality") includes the constitutional right to access to court, which a US opt-out class action proceeding would abridge.  There are several reasons for my conclusion:

a.    First, a Panamanian court would find that a U.S. court lacked jurisdiction to adjudicate the rights of Absent Panamanians.  Jurisdiction is both a component of Panamanian due process and an independent requirement for enforcement of a foreign judgment, as stated in Article 179 of Law 7 of 2014.  *See supra* Paragraph 30.  A Panamanian court would therefore analyze whether a U.S. court had personal jurisdiction over Absent Panamanians.  If there were insufficient contacts between the Absent Panamanians and the U.S. jurisdiction (which is a factual question), a Panamanian court would not find personal jurisdiction and therefore would not enforce the *Rotstain* Action as binding on Absent Panamanians.  As discussed above, *see supra* Section V.C, an "opt-out" class action that binds persons who do not opt out is *not* a concept recognized by Panamanian law.  Accordingly, under Panamanian conceptions of jurisdiction, the mere fact that a Panamanian did not opt out of the class in the *Rotstain* Action does not give a U.S. court jurisdiction over that person, and a Panamanian court would not enforce a decision unfavorable to that person as binding upon him.

b.    Second, Absent Panamanians would not be properly served sufficient advance notice of the foreign litigation because they would be presumed to be included in the class rather than being given the opportunity to "opt in" to

the class.  International service of process under Panamanian law requires the service of a Letter Rogatory.[14]  The Inter-American Convention On Letters Rogatory was ratified by Panama through Law 12 of 23 October 1975.  Hence it is the law of the land in Panama.  If Absent Panamanians are not served notice of the *Rotstain* Action by Letter Rogatory this would be an independent violation of their due process rights.

c.    Third, Absent Panamanians would not exercise the right to appoint the attorney of their preference to represent them, which would be their right in a Panamanian class action (*see supra*);

d.    Fourth, Absent Panamanians would, without their express consent, be placed in a position in which they could not contradict evidence or allegations of the defendants or of other members of the class that may be detrimental to their interests; and

e.    Fifth, the property rights of Absent Panamanians would be adversely affected or jeopardized without their effective consent or participation.

41.    The Supreme Court will therefore, in my opinion, not enforce any adverse opt-out class action judgment or court-approved settlement against Absent Panamanians.  I have not found a single precedent of the Supreme Court declaring that a foreign judgment or court-approved settlement in an opt-out class action affecting absent Panamanian citizens was enforceable under the Panama Judicial Code or under the new Law 7 of 2014.

---

[14] *See* Inter-American Convention On Letters Rogatory, *available at* http:www.oas.org/juridico/english/sigs/b-36.html.

**VI.**    **A Panamanian Court Would Not Recognize the Submission of a Proof of Claim in a Different Proceeding as an "Opt In" to the *Rotstain* Action.**

42.    I understand that putative class members in the *Rotstain* Action have submitted Proofs of Claim to a court-appointed Receiver and its Claims Agent for claims asserted in a litigation captioned *Securities & Exchange Commission v. Stanford International Bank, Ltd., et al*. Civil Action No. 3:09-CV-0298-N (the "SEC Receivership Action"). The SEC Receivership Action is not a putative class action and involves different defendants and different claims than the *Rotstain* Action. The Proof of Claim forms submitted by plaintiffs in the SEC Receivership Action make clear that the submission pertains to the SEC Receivership Action only and not to any other actions:

> CONSENT TO JURISDICTION:  If you submit a Proof of Claim Form **in this case**, you consent to the jurisdiction of the District Court for all purposes **relating to this claim** and agree to be bound by its decisions, including, without limitation, a determination as to the validity and amount of any **claims asserted against the Receivership Entities**.  In submitting a Proof of Claim Form, you agree to be bound by the actions of the District Court even if that means your claim is limited or denied.

Proof of Claim Form, p. 4 (emphasis added).  I am therefore confident that a Panamanian court would not deem submission of a Proof of Claim form in the SEC Receivership Action as an "opt in" to the *Rotstain* Action.

**VII.**    **Conclusion.**

43.    I can conclude with a high degree of certainty that a judgment or court-approved settlement rendered by a U.S. court that purports to bind an absent class member in an opt-out class action such as the *Rotstain* Action will not be recognized or enforced as preclusive in the Republic of Panama as to Panamanian residents or nationals who did not opt out of that action.  Any such judgment or settlement would fundamentally contradict Panamanian laws and public policy (*orden publico*).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 7, 2015 in Chicago, Illinois, USA.

Arturo Hoyos

# EXHIBIT A

<u>Professional Qualifications</u>.

Arturo Hoyos has the following qualifications:

1. I am an attorney at law practicing as an independent lawyer in the Republic of Panama. My practice covers a wide range of subjects as stated below. Primarily I am a legal practitioner with extensive professional, judicial, government, international and academic experience.

2. I studied for a Doctor of Legal Science (Doctoris Scientiae Juridicae) at the Pontificia Universidad Javeriana (Republic of Colombia), with diplomas in socioeconomic sciences and labor law which I attained in 1972 and 1970 respectively.

3. In addition I pursued graduate studies at the University of Sussex (England) for a Master of Arts in Development Economics which I received in 1974.

4. I am fluent in English, although Spanish is my native language. I also have intermediate studies in Italian.

5. I am a member of the National Bar Association of Panama.

6. In 1990 I was appointed to the Supreme Court of Justice of Panama, the highest court of law in the Republic, as an Associate Justice .I retired from the bench on December 31, 2005 when the term of my appointment expired.

7. Between 1994 and 2000 I served as Chief Justice of the Supreme Court of Justice of Panama, position that I held as a result of internal elections among the nine Justices. I was elected by my peers for three consecutive two year terms, which makes me the Chief Justice with the longest tenure in recent Panamanian history.

8. During the entirety of my sixteen year tenure on the Panama Supreme Court, I sat on a panel which decided cases causes primarily arising out of Panama´s labor and administrative law conflicts. These conflicts included many cases involving liability of state institutions, arising from tort or contracts including insurance, that required a review and interpretation of provisions of the Civil Code and the Code of Commerce on these and other subjects, for example contracts.

9. As Justice of the Supreme Court of Panama  I sat  with the full Court and ruled in hundreds of cases of the most diverse nature that included, among other subjects, Panama Corporations, Commercial, Civil and Procedural Law, and Judicial review of the constitutionality of laws  . Almost all areas of the Panamanian legal system were reviewed during my tenure, so that my judicial experience covered private and public law.

10. In October of 1995 I was elected as the first President of the Organization of Supreme Courts of the Americas in a meeting in Washington where more than twenty Chief Justices of the Supreme Courts of the Western Hemisphere took part. At that meeting I was invited by the late Chief Justice of the Supreme Court of the United States of America, The Honorable William H. Rehnquist, to deliver an address on Due Process in the Americas, and the Chief Justices of the Supreme Courts of Canada, Antonio Lamer, and El Salvador, José Domingo Méndez, were invited to comment on my lecture. The major addresses (mine and those of United States Supreme Court Associate Justices Stephen G. Breyer and Anthony Kennedy and the late judge Judge Edward D. Re ) and panelists commentaries made at the Conference of the Supreme Courts of the Americas were subsequently published in the Saint Louis University Law Journal(Vol. 40, No.4, Summer 1996) with an introduction by the late Chief Justice Rehnquist.

11. I was a professor on a part time- basis at the University of Panama for nearly 18 years. I taught at different Schools (Law, Economics and International Relations) and lectured on several subjects comprising International Economic Relations, Public Finance, Labor Law and Tax Law.

12. From 1971 to 1975 I worked at the Ministry of Labor as a lawyer and, among other titles, an Under Secretary of Labor. I took a leave of absence from 1973 to 1974 to study at the University of Sussex in England.

13. Between 1976 and 1989 I was an associate at the Panama law firm Arias, Fábrega and Fábrega where my practice concentrated on private law in general, and in particular corporate and offshore corporations and also included contracts, banking, tax, labor and litigation. While at this firm I also acted as expert witness on Panamanian Law in litigation in Federal United States District Courts in New York, Saint Thomas and Saint John (Virgin Islands).

14. I have published extensively on legal subjects covering different branches of Public Law (Constitutional, Administrative, Tax and Procedural Law) and Private Law institutions of the Panamanian Legal System. The list of my books and essays that appear in legal journals and newspapers is very extensive. They have been published in the following countries: United States of America, Argentina, Brazil, Colombia, Costa Rica, Spain, The Netherlands, Mexico, Panama, Peru, Uruguay and Venezuela.

15. My books have been considered authoritative and have been quoted by the Supreme Courts of Justice of Ecuador, El Salvador,Nicaragua, Panama , Perú , Uruguay and Venezuela, and lower courts in other Latin American countries in support of opinions rendered by those courts of law in cases pertaining to their jurisdictions and national Constitutions and laws. Some of my books are textbooks used by law students, not only in Panamanian universities but also in other Latin American countries.

16. In 2010 I have been invited by the current Chief Justice of the Supreme Court of Panama, Aníbal Salas, a former pupil of mine at the University of Panama, to write an essay as guest of honor in a book containing ten essays, nine written by the current Justices of the Supreme Court. The book will be published in January of 2011. My essay is on The Fundamental Right of Private Property.

17. I have been invited to lecture on different legal matters in several countries of the Americas. As recently as August of 2010 I have been invited by the Ministry of Foreign Affairs of Brazil to lecture in the First Meeting of Jurists of Latin America and the Caribbean organized by the former; and in September and October of 2010 in international Congresses organized by the Electoral Court and the Supreme Court of Panama; in March of 2006 I was one of the panelists in the Annual Conference sponsored by the International Center for Dispute Resolution and the American Arbitration Association specifically in the subject of International Commercial Arbitration and the execution of international arbitral awards( Jurisdiction over Jurisdiction) principle; and also lectured at the Law School of the University of Miami on Contemporary Legal Trends in  private and public law. On November 7 of 2007 I delivered the keynote speech in Costa Rica in commemoration of Constitution Day of said country at the invitation of the Supreme Court of Justice of Costa Rica.

18. During my tenure as Justice of the Court of Panama I wrote many opinions that signaled a departure from the traditional position that the Court had held on many subjects.

19. As Chief Justice of the Supreme Court of Panama I organized and set into motion new judicial institutions to improve the administration of justice. Among these were a system of courts specializing in some mercantile law conflicts such as intellectual property, anti-trust, unfair commercial practices and consumer protection; family courts; and new appeals jurisdictions to deal with those matters and also with juvenile and labor conflicts. I also promoted new legislation on the protection of victims of crimes, adopted in 1998 by the National Assembly of Panama, following which I set up a Free Legal Aid Department for Victims of scarce resources (Legal Aid was only available for accused offenders).

20. My current legal practice comprises a wide range of subjects, among them civil, corporation and commercial law (insurance law included), procedural and administrative and constitutional law. I represent different clients in judicial proceedings and in arbitration.

21. Since leaving the Supreme Court I have also provided expert witness testimony on Panamanian Law in litigation in the United States District Court, Southern District of New York (Corporate Law); the United States District Court for the Southern District of Florida, Miami Division (Torts); and in various International

Commercial Arbitration Tribunals (chosen seats in New York and Washington).

22. In 2011 Dr. Hoyos was appointed as a member of the Board of Directors of Minera Panamá S.A. a corporation that is developing a mining project valued at 6.2 billion dollars, the biggest private investment in Panama´s history.

# EXHIBIT B

## PUBLICATIONS BY DR. ARTURO HOYOS

The publications of Dr. Arturo Hoyos until 2015 include books and essays published in academic journals. Articles published in newspapers are not included.  They are listed according to the country where they have appeared and in the language in which they are published. The majority of them are published in Spanish.

I - <u>*Panama.*</u>

1) <u>El derecho de Propiedad constitucional: Anotaciones comparadas</u>, Corte Suprema de Justicia, Panamá, 2011.

2) <u>*El Debido Proceso: Una introducción doctrinal, jurisprudencial y derecho comparado,*</u> *Coautor Carlos Arturo Hoyos, Ed. Cultural Portobelo, 1ª. Edición, Panamá, junio de  2009.*

3) **Derecho del Trabajo y de la Seguridad Social**, *Editorial Jurídica Iberoamericana S.A.,  2005, 500 Págs.*

4) ***El Derecho Contencioso-Administrativo de Panamá (1903-2005): Un Introducción Histórica de Derecho Comparado y Jurisprudencial,*** *Sistemas Jurídicos, S.A., 2005.*

5) *"La Jurisdicción Contencioso - Administrativa en Panamá", en* <u>*Claves para la Reforma de la Jurisdicción Contencioso Administrativa,*</u> *Escuela Judicial, Panamá, 2000.*

6) **"Justicia, Democracia y Estado de Derecho"**, *Corte Suprema de Justicia, Serie de Ensayos y Monografías Judiciales, Panamá, 1996.*

7) "<u>**Las Juntas de Conciliación y Decisión**</u>", *Estructura y Jurisprudencia, 1976.*

8) "<u>**El Impuesto sobre Transferencia de Bienes Muebles con Crédito Fiscal (ITBM)**</u>", *1981.*

9) "<u>**Código de Trabajo**</u>", *Obra Colectiva, 1972.*

10) **"La Garantía Constitucional del Debido Proceso Legal"**, <u>*Revista Lex*</u>, *1987.*

App. 1998

11) *"El Bloque de Constitucionalidad de Panamá"*, en *Estudios Procesales*, I. III, editada por Jorge Fábrega. 1991.

12) *"Justicia Contencioso Administrativa y Derechos Humanos*, Instituto Panameño de Derecho Procesal, 1991.

13) *"El Control Judicial y el bloque de constitucionalidad en Panamá"*, *Registro Judicial*, Corte Suprema de Justicia, agosto 1991.

14) *"De la Constitución de 1941 al retorno a la democracia. Medio siglo de justicia contencioso administrativa en Panamá"*, en la obra colectiva *Panamá, 90 años de República*, Instituto Nacional de Cultura y Presidencia de la República, Panamá, 1993.

15) *"La justicia constitucional en la reciente experiencia democrática de Panamá"*, en la obra *El Órgano Judicial en democracia*, Panamá, Corte Suprema de Justicia, 1994.

16) *"La jurisdicción Contencioso Administrativa en Panamá: Anotaciones Comparadas"*, en la *Revista Lex,* enero-agosto de 1994.

II - *Mexico*

1)*"Debido Proceso y Democracia"*, en la oba *La **Ciencia del Derecho Procesal Constitucional*. Estudios en Homenaje a Héctor Fix-Zamudio, en el Tomo II ,Tribunales Constitucionales y Democracia, editada por la Universidad Nacional Autónoma de México-Instituto Mexicano de Derecho Procesal Constitucional-Marcial Pons, 1ª. Edición, México, 2008,pág. 799 y sig.

2)*"El proceso de amparo de derechos fundamentales en Panamá"*, en la obra *El **Derecho de Amparo en el Mundo**, Coordinadores Héctor Fix-Zamudio y Eduardo Ferrer Mac-Gregor, Editorial Porrúa, México, 2006, Primera edición, pàgs. 565 y siguientes.

3) ***La Interpretación Constitucional***, Héctor Fix-Zamudio, Jorge Carpizo, Peter Haberle, Arturo Hoyos y otros, Editorial Porrúa, 2 Tomos, 1428 páginas, Dr. Eduardo **Ferrer McGregor – Coordinador, 2005.**

4) ***Debido Proceso y Democracia***, Introducción del Dr. Eduardo Ferrer McGregor, Editorial Porrúa, 2006, 163 págs.

5) ***"Síntesis del Derecho Panameño del Trabajo"***, en *El Derecho Latinoamericano del Trabajo*, UNAM, 1974, Vol. II, Págs. 137 a 218.

6) ***"Los Conflictos del Trabajo"***, en *El Derecho Laboral en Ibero América*, Editorial Trillas, 1981, pág. 805 a 815.

7)      *"Panamá"* en <u>**Síntesis de Derecho Laboral Comparado**</u>*, Editorial Trillas, 1991, Baltasar Cavazos Flores y otros, México, 620 Págs.*

8)      *"El control judicial y el bloque de  constitucionalidad en Panamá",* <u>*Boletín de Derecho Comparado*</u>*, UNAM, Instituto de Investigaciones Jurídicas, número 75, 1992.*

9)      *"Perspectivas de la Negociación Colectiva en América Latina",* <u>*Revista Laboral*</u>*, México, Año I No.8, mayo de 1993.*

III-  <u>*Colombia*</u>

1)   <u>**El debido proceso**</u>**, Editorial Temis, Santa Fe de Bogotá, 1996, reimpresiones 1998 y 2004.**

2)   <u>**La interpretación constitucional**</u>**, Editorial  Temis, Santa Fé de Bogotá , 1993, reimpresión 1998.**

3)   **"La Transferibilidad de las normas laborales:  el caso de las normas internacionales del trabajo",** *en* <u>*El Derecho al Trabajo en el Derecho del Trabajo*</u>*,  Estudios en Homenaje a Mozart V. Russomano, Bogotá, 1985.*

4)   **"La Flexibilización del Derecho Laboral tendencias internacionales recientes",** <u>*Actualidad Laboral*</u>*, Bogotá, agosto, 1987.*

5)   **"Derecho del Trabajo y Relaciones de Poder",** *en* <u>*Estudios Laborales*</u>*, Ediciones Librería del Profesional, Bogotá, 1990.*

6)   **"La Jurisdicción Contencioso Administrativa  en Panamá: anotaciones comparadas",** *en la revista Universitas, Pontificia Universidad Javeriana, noviembre de 1993, págs. 203 a 222.*

7)      **"La justicia constitucional en la reciente experiencia democrática de Panamá",** *en la revista* <u>*Universitas,*</u> *Pontificia Universidad Javeriana, junio de 1994, págs 17 a 36.*

8)   **"El Control Judicial y el Bloque de Constitucionalidad en Panamá",** *en la Revista del Instituto Colombiano de Derecho Procesal, Volumen II No.16-17, 1994, págs. 95 a 117.*

    9) *"El debido proceso y las nuevas realidades de Latinoamérica"* en la Revista <u>Universitas</u>, *Pontificia Universidad Javeriana, No. 88, Junio de 1995, págs 93 a 110*

    10) **<u>La Interpretación Constitucional: Principios, Debido Proceso, Derecho de Propiedad,</u>** *Editorial Ibañez, segunda edición,2012.*

IV- <u>Argentina</u>

    1.    **"La justicia constitucional en Panamá: estructura y evolución reciente**", <u>Revista Contribuciones</u>, *Fundación Konrad Adenauer-Centro Interdisciplinario de Estudios sobre el Desarrollo Latinoamericano, Buenos Aires, A o XI- No.2 (42) abril-junio de 1994.*

    2. **"El Carácter Tutelar del Derecho Procesal del Trabajo"**,*en Estudios en Homenaje al Profesor de la Universidad de Rosario, Alfredo J. Ruprecht, Impresora Cárdenas, México, 1987.*

V- <u>Brasil</u>

1) *"La Constitución, el Derecho Constitucional y la capacidad de Gobernar: el caso de Panamá", en la obra* <u>I Encontro de Juristas da América Latina e do Caribe-Reflexoes,</u> *Ministerio das Relacoes Exteriores-Fundacao Alexandre de Gusmao, Brasilia, 2010.*

2)**"La Protección Constitucional a las Empresas Nacionales: El caso del Derecho Fundamental de Propiedad Constitucional en Perspectiva Comparada**", *en* <u>Cadernos de Solucoes Constitucionais</u> *No. 3, Asociación Brasileña de Constitucionalistas Democráticos, Malheiros Editores Ltda.,Sao Paulo, Brasil, 2008, págs..118 a 141.*

3)    **"La Garantía del Empleo"** *en* <u>Anais do Seminario Internacional de Direito do Trabalho</u>, *Poder Judiciario, Tribunal Regional do Trabalho da 11a. Regiao, Manaos, 1983, págs. 64 a 72.*

4)      **"La Garantía Constitucional del Debido Proceso Legal"**, *en* <u>Revista do Processo</u>, *Sao Paulo (1987).*

VI -  *Costa Rica*

1) *"El Debido proceso en la Sociedad Contemporánea"* en *Estudios en Homenaje al Dr. Héctor Fix-Zamudio*, Corte Interamericana de Derechos Humanos, Costa Rica, 1998.

2) *"El Debido Proceso en las Américas"*, en *Revista de Derecho Público*, Universidad Autónoma de Centro América, Costa Rica, Volumen 1, Octubre 1996,  págs. 108-119.

3)  *Derecho Panameño del Trabajo*, Vol. I, 1982.

VII- *Spain.*

1)  "Justicia Contencioso Administrativa y Derechos Humanos", en la obra *La protección Jurídica del ciudadano. Estudios en Homenaje a Jesús González Pérez*,  Madrid Editorial Civitas, 1993.

2)   *"La terminación de la Relación de Trabajo por iniciativa del Empleador y los Mecanismos Jurídicos tendentes a garantizar el empleo: Anotaciones de Derecho Comparado"*, en  *Revista de Política Social*, No. 147, Centro de Estudios Constitucionales, Madrid, 1985, págs. 7 a 23.

3)   *"La Flexibilización del Derecho Laboral Tradicional: el caso de Panamá en perspectiva Comparada"*, *Revista Española de Derecho del Trabajo*, Ed. Civitas, No. 30, abril-junio, 1987.

4)   "Los desafíos presentes", en la obra  *La negociación colectiva en América Latina*, Antonio Ojeda Avilés y Oscar Ermida Uriarte Editores, Editorial Trotta e Instituto Europeo de Relaciones Industriales, Madrid, 1993, págs. 23 a 33.

VIII- *Estados Unidos de América*

1) *"Due Process in the Americas"*, *Saint Louis University Law Journal*, Vol.40, No.4, Summer 1996, págs.1013-1033.

2)   *"Tax Profile of Panamá"*,  *Tax Management International Journal*, Junio 1981, Washington, págs. 7 a 23.

IX- *The Netherlands.*

1)   **Monograph on Panama**, *International  Encyclopedia for Labour  Law and Industrial Relations*, Ed. Kluwer, 214 pages,  Deventer, The Netherlands, 1979 y 1985, Editor General Dr. Roger Blanpain, Dean of the Law School University of Louvain (Belgium).

X-  *Peru.*

1)   **"Las Juntas de Conciliación y Decisión en Panamá"**, en *La Administración de Justicia en América Latina*, Consejo Latinoamericano de Derecho y Desarrollo, 1985.

2)    **"La terminación de la relación de trabajo por iniciativa del empleador"**, *Revista de Derecho de la Empresa*, 1987.

XI - *Uruguay*

1)   **" El ocaso del elemento utópico en el Derecho del Trabajo"**, en *Evolución del Pensamiento Juslaborista. Estudios en Homenaje al Prof. Héctor-Hugo Barbagetala*, Fundación de Cultura Universitaria, Montevideo, 1997

2)   **"La Transferencia del Derecho del Trabajo entre Naciones"**, en la Revista *Derecho Laboral*, No. 133, Montevideo, 1984.

3)  **"La Protección del Salario y las Funciones Sociales de la Familia"**, en *Estudios Sobre el Salario en Homenaje a Américo Plá Rodríguez*, Montevideo, 1987.

4)  **"La Flexibilización del Derecho Laboral"**, Revista *Derecho Laboral*, Montevideo, No. 147, 1987.

5)  **"Entre el liberalismo y el populismo militar: el Derecho Laboral en Panamá de 1947 a 1987"**, Revista *Derecho Laboral*, No.1949, 1988.

6)   **" Las Organizaciones de Empleadores"**, en la obra colectiva *El Derecho Sindical en América Latina*, Fundación de Cultura Universitaria, Montevideo, 1995.

XII -  *Venezuela*

1)   **"Derecho Laboral y Desarrollo Económico"** en   <u>Estudios sobre Derecho Laboral en Homenaje a Rafael Caldera</u>, *Universidad Católica Andrés Bello, Editorial Sucre, Tomo I, 1977.*

2)   **"El Principio de la Inmutabilidad del Proceso y la Evolución del Litigio Laboral"**, conjuntamente *con el Lic. Jorge Fábrega P., en el libro-homenaje a Rafael A. Guzmán, Universidad Central de Venezuela, Caracas, 1987.*

1)   **"La Flexibilización del Derecho Laboral en Panamá"**, *en la obra* <u>La Flexibilización Laboral</u>, *Barquisimeto, 1990.*

# EXHIBIT C

LEY 7
De 8 de mayo de 2014

## Que adopta el Código de Derecho Internacional Privado de la República de Panamá

### LA ASAMBLEA NACIONAL
### DECRETA:

**Artículo Único.** Se adopta el Código de Derecho Internacional Privado de la República de Panamá, cuyo texto es el siguiente:

### Título Preliminar
#### Capítulo I
Aplicación del Derecho Internacional Privado

**Artículo 1.** El Código de Derecho Internacional Privado se aplicará cuando no medie tratado internacional que regule la materia.

Este Código regula los conflictos de jurisdicción internacional que tienen por objeto determinar el ámbito de competencia judicial de los tribunales panameños, ante una relación jurídica de carácter internacional o frente a toda causa que el juez panameño califique como un hecho o negocio jurídico de orden internacional que incida o produzca sus efectos en la República de Panamá. Además, se aplicará para determinar la ley aplicable a las relaciones jurídicas que comporten tráfico jurídico internacional.

También regirá lo atinente a la nacionalidad panameña, como factor de conexión, que le permita al juez tomar en cuenta la determinación del derecho aplicable dentro de una relación de Derecho Internacional, así como la condición jurídica del extranjero frente a las leyes positivas que regulan el estatus de los emigrantes en la República de Panamá, los derechos regularmente adquiridos fuera del territorio de la República de Panamá.

#### Capítulo II
Carácter Internacional de una Relación Jurídica

**Artículo 2.** Se entiende que existe una relación jurídica internacional cuando un negocio jurídico se ventile ante la jurisdicción panameña y presente factores de conexión con dos o más Estados, obligando al juez de la causa a determinar de acuerdo con sus normas de conflictos su competencia y qué ley debe gobernar las relaciones jurídicas en examen.

También se entiende por una relación jurídica internacional cuando las partes en un contrato se encuentren domiciliadas en Estados diferentes obligando al juez a determinar qué ley debe regir el contrato de acuerdo con las reglas previstas en la presente norma.

Igualmente se tendrá por una relación jurídica internacional toda relación que se articule o construya producto de una necesidad del comercio internacional o de hechos o actos jurídicos cuya ejecución se produzca o se perfeccione en dos o más Estados.



**Artículo 3.** La forma de los actos se rige por la ley del lugar de celebración, sin perjuicio de que las partes puedan dentro de la autonomía de la voluntad someterse, en este aspecto, a una ley distinta con la que tenga alguna relación el acto.

**Artículo 4.** En los casos en que las leyes panameñas exigieran instrumentos públicos para pruebas que han de rendirse y producir efecto en la República de Panamá, no valdrán los documentos privados cualquiera que sea la fuerza de estos en el país en que hubieran sido otorgados.

### Capítulo III
Poderes del Juez del Foro

### Sección 1.ª
Calificación de Carácter Internacional

**Artículo 5.** El juez previamente calificará la naturaleza internacional de una relación o negocio jurídico, fundamentado en el tratado que regule la materia, si fuera el caso, o en el derecho interno.

En su defecto, recurrirá a la calificación extranjera cuando la categoría jurídica no esté prevista en la ley panameña.

La existencia de una institución no regulada en el ordenamiento jurídico interno no le impide al juez pronunciarse sobre su naturaleza jurídica.

### Sección 2.ª
Reenvío y Orden Público Internacional

**Artículo 6.** Se reconoce el reenvío en materia del estatuto personal y bienes muebles cuando frente a la regla de conflicto para decidir sobre una relación jurídica de carácter internacional el juez establece como ley aplicable el derecho extranjero y este designa otro ordenamiento jurídico como derecho aplicable.

### Sección 3.ª
Orden Público Internacional

**Artículo 7.** Los efectos jurídicos de un acto o ley extranjera o internacional no serán reconocidos, total o parcialmente, cuando su aplicación vulnere o viole:

1.   Principios fundamentales.

2.   Derechos esenciales.

3.   Instituciones básicas del ordenamiento jurídico panameño.

La no aplicación del derecho o ley extranjera o internacional será suplida por el derecho interno.

### Sección 4.ª
Principios Internacionales Fundamentales

**Artículo 8.** Los principios fundamentales de la comunidad internacional son parte de las reglas de aplicación del juez, como el interés superior del niño y el interés superior del consumidor, que



2

privan sobre cualquier otro aspecto; la igualdad, equidad, buena fe y lealtad negocial, la seguridad jurídica sobre los actos, la básica territorialidad de la ley, la personalidad de las normas sobre el Estado, la capacidad y derecho de familia, la proporcionalidad, los derechos adquiridos sin fraude al derecho naturalmente competente, la protección a la parte más débil, las obligaciones internacionales *erga omnes* y los derechos derivados del *ius cogens* y la responsabilidad ambiental y aquellos principios universales de justicia aplicables.

**Sección 5.ª**
Cuestiones Previas o Incidentales

**Artículo 9.**    Las cuestiones previas, preliminares o accidentales que puedan surgir con motivo de una cuestión principal deberán resolverse conforme al derecho indicado por las normas de conflicto del foro, prescindiendo del derecho que regula la cuestión principal.

**Sección 6.ª**
Adaptación Internacional

**Artículo 10.** Las diversas leyes que puedan ser competentes para regular los diferentes aspectos de una misma relación jurídica serán aplicadas armónicamente, procurando realizar las finalidades perseguidas por cada una de dichas legislaciones.

Las posibles dificultades causadas por su aplicación simultánea se resolverán teniendo en cuenta las exigencias impuestas por la equidad en el caso concreto.

**Capítulo IV**
Ámbito de los Conflictos de Jurisdicción

**Artículo 11.** Se entiende por conflictos de jurisdicción la determinación y localización de la competencia judicial del juez de la causa para conocer de un negocio jurídico internacional, según lo previsto en el artículo 2.

**Artículo 12.** El ámbito de la determinación de la competencia judicial comprende las normas de competencia de atribución directa que son las normas legales que prevean la competencia judicial en función del interés a proteger, la prórroga de competencia judicial, la acumulación procesal internacional, la litispendencia internacional, las normas relativas a la valoración de la prueba y los actos de cooperación judicial internacional basada en los principios establecidos en este Código, así como el régimen de reconocimiento y ejecución de sentencias y laudos extranjeros. Los tribunales panameños son competentes cuando el foro extranjero desconozca derechos adquiridos de los panameños o incurra en actos de denegación de justicia.

La determinación de la competencia judicial del juez panameño la determina este Código o, en su defecto, el Código Judicial o las leyes especiales en función de la materia o naturaleza de la causa jurídica internacional.

3

**Capítulo V**
Foro de Competencia Judicial

**Artículo 13.** Los tribunales panameños son competentes cuando los bienes o activos del demandado estén situados en la República de Panamá. En materia de obligación extracontractual, los tribunales competentes son los del lugar del daño, salvo pacto en contrario. Los tribunales panameños serán competentes para conocer de toda acción personal cuando el demandado esté domiciliado en la República de Panamá.

Los tribunales panameños también son competentes para conocer las demandas derivadas de una relación contractual cuando los efectos o consecuencias del contrato tengan lugar en el territorio de la República de Panamá o, tratándose de contratos solemnes, estos fueran suscritos en la República de Panamá. Los tribunales panameños son competentes cuando el tribunal extranjero incurra en denegación de justicia en perjuicio del nacional o cuando producto de un contrato de adhesión acceder a la justicia extranjera resulta excesivamente oneroso para el nacional demandante.

**Artículo 14.** Las acciones sobre prescripción se rigen por la misma ley sustantiva que resulte aplicable a la cuestión de fondo.

**Título I**
Desvinculación de la Jurisdicción Panameña

**Artículo 15.** Los tribunales panameños podrán declinar su competencia cuando la ley no le atribuya el conocimiento o cuando los hechos de la demanda no guarden relación con el ordenamiento jurídico panameño. Esta norma no excluye la aprehensión del conocimiento cuando la competencia derive de prórroga expresa o tácita.

Los tribunales panameños se inhibirán de conocer una causa en contra de un Estado u organismo internacional que goce de inmunidad o cuyos actos objeto de la controversia sean de *iure imperium* o actos de soberanía.

No obstante, el juez panameño podrá conocer de las demandas de los servicios de un Estado cuando dichos actos sean considerados de *iure gestione* o incidan sobre una actividad de comercio internacional y cuyos efectos se produzcan en el territorio de la República de Panamá.

El juez excluirá de plano toda acción que no tenga asidero en una conexión legal prevista en los códigos y constituya una acción procesal en fraude a la jurisdicción internacional o producto de acción denominada de *forum shopping* o jurisdicción simulada.

**Artículo 16.** El Estado panameño solo responderá solidariamente o subsidiariamente cuando la ley panameña así lo establezca. No cabe la solidaridad del Estado panameño ni de sus autoridades autónomas tratándose de actividades o concesiones de servicios de carácter interno o internacionales en las que la gestión administrativa del Estado o las entidades autónomas no hayan asumido control de dicha actividad.



4

## Capítulo I
### Declinatoria y Prórroga de Competencia Internacional

**Artículo 17.** El juez puede renunciar a su competencia judicial cuando medie cláusula atributiva de jurisdicción o cláusula compromisoria de arbitraje y la materia sea de carácter dispositivo.

No procede la prórroga de competencia  por vía de cláusula atributiva de jurisdicción o cláusula compromisoria de arbitraje cuando el objeto de dicha prórroga esté gobernado por una regla de competencia judicial privativa que excluya toda prórroga de competencia judicial a favor de un tribunal extranjero o de un tribunal arbitral.

Existirá prórroga de competencia judicial internacional cuando la materia objeto del litigio sea de carácter dispositivo y no contravenga el párrafo anterior y medie convención escrita designando un foro  específico y  esta jurisdicción admita la prórroga pactada, o cuando procesalmente las partes por su conducta hayan prorrogado la competencia judicial siempre que no contravenga los presupuestos del párrafo anterior.

### Sección 1.ª
#### Litispendencia Internacional

**Artículo 18.** Podrá excluirse la jurisdicción panameña cuando medie excepción de pleito pendiente en otra jurisdicción y coincida con el siguiente requisito: cuando exista un proceso ya trabado en el extranjero, entendiendo por ello cuando la demanda incoada con antelación en el resorte de la jurisdicción extranjera haya sido admitida y dicha acción recaiga sobre las mismas partes, los mismos hechos y la misma causa a pedir.

La excepción de pleito pendiente busca evitar que dos procesos idénticos produzcan fallos contradictorios que se anulen recíprocamente.

### Sección 2.ª
#### Acumulación Procesal

**Artículo 19.** La acumulación procesal internacional tendrá lugar cuando la acción incoada en la jurisdicción extranjera predetermine o subordine la pretensión incoada en el foro nacional con antelación. Sin embargo, no tendrá lugar cuando la pretensión objeto del proceso sea de orden público.

### Capítulo II
#### Mutación de la Jurisdicción de las Personas Jurídicas con
#### Actividad Extraterritorial Incorporadas en la Jurisdicción Panameña

**Artículo 20.** Las  fundaciones, los fideicomisos y las sociedades anónimas y de responsabilidad limitada constituidas bajo una ley extranjera podrán optar por acogerse a las leyes de la República de Panamá y continuar su existencia al amparo de estas como personas jurídicas panameñas, no obstante lo dispuesto en su legislación de origen, mediante la presentación al Registro Público de Panamá, para su inscripción, de los siguientes documentos:

 5

1.  Constancia de estar constituidas y vigentes con arreglo a las leyes del país o jurisdicción correspondiente, expedida por autoridad competente en dicho país o jurisdicción o, en su defecto, mediante certificación notarial.

2.  Certificación o copia certificada del acuerdo o resolución del órgano competente en la que conste la autorización de hacer continuar la existencia de la sociedad con arreglo a las leyes de la República de Panamá.

3.  Escritura de constitución o pacto social suscrito de acuerdo con los requisitos prescritos por las leyes correspondientes de la República de Panamá con indicación de que subrogan el documento de constitución o formación de la sociedad anónima extranjera.

La documentación expedida en países o jurisdicciones extranjeras deberá ser apostillada o autenticada por un cónsul de la República de Panamá o, en su defecto, por el de una nación amiga en el país o jurisdicción de donde proceda la documentación.

**Artículo 21.** El régimen de grupo de sociedades o sociedades transnacionales con actividades comerciales, industriales o profesionales en diversos países comprende el conjunto de filiales con personalidad jurídica independientes, pero bajo el control de una sociedad central que posee acciones en todo o en parte de las diversas filiales. Se presume que la sede social o el domicilio del grupo de sociedades se sitúa en el lugar de la sociedad controladora o de la administración central.

**Artículo 22.** La ley aplicable al grupo de sociedades cuando asume una actividad internacional se somete a la filial que haya suscrito el contrato con un particular o un ente público panameño. En el caso de que el grupo de sociedades actúe como ente colaborador dentro de un contrato a ejecutar en la República de Panamá, el grupo de sociedades responderá solidariamente. El derecho aplicable en caso de liquidación del grupo se somete a la ley panameña en cuanto a la filial o activos que se encuentre en la República de Panamá. Esta regla se extiende a los procesos de insolvencia o quiebra internacional.

**Artículo 23.** Una vez inscritos los documentos correspondientes en el Registro Público, la continuación de la persona jurídica al amparo de las leyes de la República de Panamá surtirá efectos entre las partes y respecto de terceros a partir de la fecha de la constitución inicial de la persona jurídica en el país o jurisdicción de origen.

La persona jurídica continuará con todos sus bienes, derechos, privilegios, facultades y franquicias como dueña y poseedora de estos, sujeta a las restricciones, obligaciones y deberes que correspondían a la sociedad en su país o jurisdicción de origen, entendiéndose que los derechos de los acreedores de la sociedad y los gravámenes sobre los bienes de esta no serán perjudicados por la continuación de ella bajo las leyes de la República de Panamá.

**Artículo 24.** Una persona jurídica constituida y vigente bajo una ley extranjera podrá inscribir condicionalmente en el Registro Público su continuación en la República de Panamá de acuerdo con las disposiciones precedentes, bajo la condición de que dicha continuación se haga efectiva una vez inscrita la declaración en tal sentido expedida por su representante o apoderado debidamente autorizado.



6

**Artículo 25.** Una persona jurídica constituida de acuerdo con la ley panameña podrá, según se establezca en la escritura de la sociedad o sus reformas, continuar bajo el amparo de las leyes de otro país o jurisdicción, siempre que las leyes de ese país o jurisdicción lo permitan y que la sociedad esté al día en sus obligaciones tributarias en la República de Panamá.

Para tales efectos, la sociedad deberá presentar certificación o copia certificada de la decisión o acuerdo correspondiente, así como certificado de haber quedado debidamente inscrita en la jurisdicción a que se transfiera en documento público para su inscripción en el Registro Público por medio de abogado en la República de Panamá.

Una vez practicada la inscripción, la sociedad continuará con todos sus bienes, derechos, privilegios, facultades y franquicias como dueña y poseedora de estos, sujeta a las restricciones, obligaciones y deberes que correspondían a la sociedad, entendiéndose que los derechos de los acreedores de la sociedad y los gravámenes sobre los bienes de esta no serán perjudicados por la continuación de ella en el país extranjero.

La no inscripción de la persona jurídica en el otro país, debidamente comprobada, no menoscaba los efectos de su inscripción en la jurisdicción de origen.

### Título II
Estatuto Personal y Bienes

**Artículo 26.** El estado, capacidad y derecho de familia de los panameños se rigen por la ley panameña aun cuando residan en el extranjero. Se presume que el estatuto personal de los extranjeros se rige por la ley nacional, salvo que esta designe otro criterio de conexión distinta. En tal sentido, la ley panameña aplicará la ley designada por el estatuto personal del extranjero.

**Artículo 27.** Las personas jurídicas constituidas conforme a las leyes de la República de Panamá, cualquiera que sea su forma, se rigen por la ley del lugar de su constitución.

La ley del lugar de constitución rige lo atinente a los requisitos de forma para la creación, la existencia y la capacidad para ser titular de derechos y obligaciones, así como el funcionamiento, la nacionalidad, la disolución y la fusión de las personas jurídicas.

Los tribunales panameños son competentes privativamente para pronunciarse sobre la disolución y liquidación de las personas jurídicas constituidas en la jurisdicción panameña.

La ley panameña regula los actos de publicidad que afecten a las personas jurídicas cuando sean inscribibles en el Registro Público.

**Artículo 28.** El vínculo político y jurídico de una persona con el Estado es la nacionalidad.

La ciudadanía son los derechos políticos que se desprenden de la nacionalidad.

La acumulación de una segunda nacionalidad por un panameño no le es oponible al Estado panameño en cuanto a los privilegios que dicha segunda nacionalidad le pudiera conferir.

**Artículo 29.** El domicilio de una persona física será determinado, en su orden, por las siguientes circunstancias:

1.  El lugar de la residencia habitual.
2.  El lugar del centro principal de sus negocios.

7

3.   El lugar de la simple residencia, en ausencia de las circunstancias anteriores.

4.   El lugar donde se encuentra, si no hay simple residencia.

**Artículo 30.**   Se entiende por grupo económico el conjunto de personas jurídicas legalmente independientes, pero unidas bajo un solo interés permanente o momentáneo en una o varias líneas de mercado sujetas a una misma dirección en provecho de dicho grupo.

**Artículo 31.**   La ley aplicable a los grupos económicos se determina por la ley del lugar donde se ejerce el control societario del grupo. Esta ley regula la responsabilidad solidaria, así como la responsabilidad de los directivos del grupo implicado.

**Artículo 32.**   El   tribunal competente para toda acción judicial se somete a la ley del lugar de dirección o, en su defecto, a la ley de la sociedad que mantiene el vínculo más estrecho con el negocio jurídico objeto del litigio.

### Capítulo I
Principio de Igualdad entre Panameños y Extranjeros

**Artículo 33.**   El juez panameño reconoce los derechos adquiridos a los extranjeros y el principio constitucional de igualdad de trato. Los derechos adquiridos serán reconocidos siempre que no entren en contravención con derechos fundamentales o el interés nacional.

Los derechos de los extranjeros se dividen en derecho de goce y derecho de ejercicio. El derecho panameño no podrá concederle a la persona extranjera más derechos de goce de lo que le concede su propio estatuto personal.

Los derechos de ejercicio de los extranjeros son regulados por leyes territoriales de carácter imperativo. Los extranjeros están obligados a respetar la costumbre y cultura de la República de Panamá que son normas de carácter imperativo.

**Artículo 34.**   Se reconoce el principio de reparación como regla general del Estado de derecho siempre que sea conforme a la proporcionalidad del daño y a la equidad previa sentencia ejecutoriada. Se excluye el reconocimiento de indemnizaciones decretadas en el extranjero bajo la noción de *punitive damage* o daño punitivo.

### Capítulo II
Declaratoria de Ausentes

**Artículo 35.**   Los tribunales panameños son competentes para la declaración de ausente sobre los nacionales y los extranjeros domiciliados en la República de Panamá.

Además, son competentes para conocer de la acción de administración de los bienes del ausente cuando el ausente sea panameño o extranjero domiciliado en  la República de Panamá.

8

## Capítulo III
Presunción de Muerte

**Artículo 36.** La presunción de muerte se rige por la ley nacional, salvo que esta tratándose de extranjeros designe otro ordenamiento jurídico distinto.

Los tribunales panameños son competentes para determinar la presunción de muerte de los nacionales, así como de los extranjeros que estén domiciliados en la República de Panamá y no sean funcionarios diplomáticos de delegación extranjera o de algún organismo internacional.

La herencia yacente sobre bienes situados en la República de Panamá se rige por la ley panameña y los tribunales panameños son competentes. En caso de declaratoria de bienes yacentes de una sucesión, los bienes situados en la República de Panamá pasan al municipio de la ciudad capital o del distrito en donde se encuentren.

## Capítulo IV
Régimen Matrimonial

**Artículo 37.** La forma y las solemnidades del matrimonio se rigen por la ley del lugar de su celebración. El régimen económico del matrimonio se rige por la voluntad de las partes, siempre que no vaya en detrimento de la igualdad de las partes ni transgreda el orden público e interés social o, en su defecto, se rige por la ley del lugar de la celebración del matrimonio.

**Artículo 38.** El matrimonio celebrado en país extranjero de conforme a las leyes de este país o con las leyes panameñas producirá en la República de Panamá los mismos efectos civiles que si se hubiera celebrado en Panamá.

Si un panameño contrae matrimonio en país extranjero, contraviniendo de algún modo las leyes de la República de Panamá, la contravención producirá en Panamá los mismos efectos que si se hubiera cometido en el territorio.

**Artículo 39.** Los panameños que contraigan matrimonio en país extranjero harán inscribir el acto o certificado de su matrimonio en el Registro Civil dentro de los tres meses subsiguientes a su regreso al país.

**Artículo 40.** Se prohíbe el matrimonio entre individuos del mismo sexo.

**Artículo 41.** Los efectos de la relación marital entre esposos se someten a la ley del domicilio conyugal. El domicilio conyugal determina las obligaciones recíprocas, el régimen de la autoridad parental o patria potestad, la separación de cuerpos y las causales de disolución.

**Artículo 42.** No se aplicará la ley extranjera cuando sea contraria al orden público panameño o cuando la aplicación o invocación del derecho extranjero haya sido constituida en fraude a la ley que debió regular el acto o la relación jurídica en examen.

Los tribunales no ejecutarán resoluciones judiciales o administrativas que declaren algún derecho sin que se confirme que las resoluciones proferidas en país extranjero hayan sido emitidas

 9

por autoridad competente, conforme a la ley interna extranjera aplicable y que no hayan sido
dictadas en ausencia.

### Capítulo V
Divorcio y Separación de Cuerpos

**Artículo 43.** La ley del domicilio conyugal regirá todo lo concerniente a demandas de divorcio o
separación de cuerpos, así como los derechos derivados de la respectiva sentencia.

Se entiende por domicilio conyugal el lugar donde viven los cónyuges habitualmente con
singularidad y estabilidad.

Los tribunales competentes en materia de familia son los tribunales del domicilio conyugal o
a elección de la parte interesada.

### Capítulo VI
Filiación

**Artículo 44.** La filiación se rige por la ley del lugar de la nacionalidad del niño o niña o, en su
defecto, por la ley de su residencia habitual.

En lo que respecta a la acción de reconocimiento, la persona menor de edad podrá acudir a
los tribunales de su residencia o de la nacionalidad del padre o la madre o, en su defecto, a la ley
que le sea más favorable dentro de las conexiones precitadas en esta disposición.

**Artículo 45.** Los efectos de la filiación se rigen por la ley del estatuto personal del padre o la
madre o, en su defecto, por el domicilio de estos, según sea el caso.

### Capítulo VII
Obligación Alimentaria

**Artículo 46.** La obligación alimentaria se rige por la ley de la residencia de la persona menor de
edad acreedora o, en su defecto, por la nacionalidad del padre o de la madre, según sea el caso.

Igualmente, los cónyuges están obligados recíprocamente a darse alimentos en toda la
extensión.

La obligación alimentaria es una obligación general e imperativa de orden público
internacional.

El crédito alimentario a favor de una persona menor de edad no constituye prejudiciabilidad
respecto a la filiación, pero sí un indicio favorable.

Los tribunales de la residencia de la persona menor de edad o del cónyuge titular del crédito
alimentario son competentes para conocer de las reivindicaciones de sus derechos económicos en el
lugar de su residencia habitual o, en su defecto, en el domicilio del deudor o ante los tribunales
nacionales del deudor.

10

## Capítulo VIII
Adopción

**Artículo 47.** Sin perjuicio de lo que disponen los tratados internacionales, la adopción en cuanto a las condiciones de forma y de fondo se somete a la ley de la residencia de la persona menor o mayor de edad adoptada.

Podrán ser adoptados los menores de dieciocho años privados del derecho a la familia, previa resolución judicial de constitución de la adopción.

**Artículo 48.** El consentimiento del adoptante se rige por la ley de la nacionalidad del adoptante, la cual gobierna la capacidad y las condiciones de fondo exigidas en su ley personal.

Toda adopción internacional se somete a la aplicación acumulativa de los requisitos de forma y fondo de la ley del adoptado y del adoptante.

Para todos los efectos, la ley panameña reconoce la adopción plena. No se tendrá como válida la adopción con reserva.

La adopción efectuada a un menor de siete años practicada por panameños transmite la nacionalidad al hijo adoptivo.

**Artículo 49.** La adopción plena es irrevocable y produce la disolución del vínculo con la familia biológica aun cuando persistan los impedimentos legales.

La adopción plena produce la integración total en la familia del adoptante sin que medie reserva alguna. El adoptado recibe la nacionalidad del adoptante como consecuencia de dicha integración. Los procesos de adopción y la sentencia extranjera declarativa de adopción se tramitarán directamente ante las autoridades del Registro Civil sin que medie proceso de exequátur y se dé la reserva consignada en el Tratado de los Derechos del Niño.

**Artículo 50.** El juez panameño deberá acoger el principio del interés superior del niño como norma aplicable, como factor de conexión para buscar la ley aplicable o como criterio para adjudicar la competencia judicial internacional como foro de protección del menor.

## Capítulo IX
Tutela

**Artículo 51.** La tutela que se ejerce sobre el menor producto de su incapacidad, así como la tutela sobre adultos, se rige por la ley nacional o, en su defecto, por la ley de su residencia. Las causas de cesación, revocación o extinción de la tutela se rigen por la ley de su constitución.

**Artículo 52.** Los tribunales panameños son competentes privativamente para conocer de las causas que afecten el ejercicio de la tutela prevista en el artículo anterior o, en su defecto, los tribunales de la residencia, si al momento de la interposición de la demanda, el menor hubiera abandonado el país o cambiado de residencia.

11

## Capítulo X
Interdicción

**Artículo 53.** La ley aplicable en la declaratoria de interdicción de los panameños y extranjeros residentes en la República de Panamá es la ley nacional.

Si la interdicción de un nacional tiene lugar en el extranjero, deberá conocer el juez del lugar de la residencia, si esta es permanente en dicho país.

## Capítulo XI
Emancipación

**Artículo 54.** La declaratoria de emancipación se rige por la ley de su nacionalidad, salvo que esta designe otro ordenamiento jurídico distinto.

**Artículo 55.** Los tribunales panameños son competentes para conocer de la declaratoria de los nacionales sobre su emancipación, así como de los extranjeros domiciliados en su territorio.

## Capítulo XII
Testamentos

**Artículo 56.** La libre disposición de testar y el régimen legal de protección de activos constituidos por residentes o extranjeros son de orden público.

La libertad de testar de residentes o extranjeros con bienes en la República de Panamá, así como los instrumentos de protección de activos constituidos por el testador, se someterá a la ley panameña.

**Artículo 57.** La sucesión en general como proceso universal de transmisión del dominio se rige por la ley de la situación de los bienes, aun cuando el difunto, al momento de su muerte, estuviera domiciliado en el extranjero.

La sentencia sobre adjudicación de bienes dictada en país extranjero conforme a las leyes de este tendrá fuerza legal en la República de Panamá, a no ser que esté en conflicto con derechos fundados en la ley panameña, que se hagan valer ante los tribunales nacionales.

El tribunal competente para conocer del proceso universal de sucesión es el del lugar donde se encuentran los bienes del difunto.

**Artículo 58.** Los testamentos, en cuanto a su forma, se rigen por la ley del lugar donde se hayan extendido.

**Artículo 59.** Los panameños podrán testar fuera del territorio nacional, sujetándose a las formas establecidas por las leyes del país en que se hallen.

También podrán testar en alta mar, durante su navegación en un buque extranjero, con sujeción a las leyes de la nación a que el buque pertenezca.

Asimismo, podrán hacer testamento ológrafo, aun en los países cuyas leyes no admiten dicho testamento. Para que sea válido este testamento lo deberán hacer las personas mayores de

12

edad, estar escrito a puño y letra del testador y firmado por él, con expresión del año, mes y día en que se otorgue.

**Artículo 60.** No será válido en la República de Panamá el testamento mancomunado otorgado en país extranjero, aunque lo autoricen las leyes de la nación donde se hubiera otorgado. No podrán testar dos o más personas mancomunadamente o en un mismo instrumento, aunque lo hagan en provecho recíproco o en beneficio de un tercero.

**Artículo 61.** Se podrá otorgar en país extranjero testamento abierto o cerrado ante el agente diplomático o consular de la República de Panamá residente en el lugar de otorgamiento.

En este caso, dicho agente hará las veces de notario, no siendo necesaria la condición del domicilio en los testigos.

**Artículo 62.** El agente diplomático o consular remitirá, por medio de la Secretaría de Relaciones Exteriores, autorizada con su firma y sello, copia del testamento abierto o del acta de otorgamiento del cerrado al secretario de Gobierno para que lo deposite en su archivo.

**Artículo 63.** El agente diplomático o consular en cuyo poder se hubiera depositado un testamento ológrafo o cerrado lo remitirá por el conducto correspondiente a la Secretaría General del Ministerio de Gobierno cuando fallezca el testador, con el certificado de defunción.

La Secretaría General del Ministerio de Gobierno hará publicar en el periódico oficial la noticia del fallecimiento para que los interesados en la herencia puedan recoger el testamento y gestionar su protocolización de forma preventiva.

**Artículo 64.** Valdrá en la República de Panamá el testamento otorgado por extranjeros fuera del territorio nacional con sujeción a las reglas establecidas por las leyes del país en que se otorgue.

Asimismo, valdrá el testamento ológrafo otorgado aun en los países cuyas leyes no admitan esas disposiciones.

## Capítulo XIII
### Estatuto Real

**Artículo 65.** Los bienes muebles e inmuebles situados en la República de Panamá se rigen por la ley panameña. La ley de la situación de los bienes regula la existencia, la clasificación, el régimen de publicidad, la adquisición y la pérdida de los derechos sobre los bienes situados en la República de Panamá.

Los tribunales panameños serán competentes para conocer de las acciones derivadas de los derechos reales de los bienes situados en la República de Panamá.

**Artículo 66.** Los gravámenes sobre bienes inmuebles o derechos accesorios de garantía reales se rigen por la ley de la obligación principal, salvo pacto en contrario.



13

**Artículo 67.** El régimen de publicidad sobre los bienes inmuebles se rige por la ley de su situación y se somete a las formalidades del Registro Público.

**Artículo 68.** El régimen de validez de las hipotecas y de garantías inmobiliarias en general, así como de aquellos bienes muebles, pero tratados legalmente como bienes inmuebles, se rige por la ley de su inscripción. Nada impide que las partes puedan designar una ley distinta a la ley de la situación del inmueble que regule la forma de pago de la hipoteca o garantía internacional.

**Artículo 69.** Los bienes dados en venta con reserva de dominio es oponible a terceros siempre que sea conforme con la ley del lugar de la situación del bien donde se perfecciona dicha reserva.

**Artículo 70.** El solo desplazamiento de los bienes muebles sujetos a algún gravamen no acarrea el desconocimiento de los derechos reales constituidos con antelación a su movilidad, salvo que dicho gravamen se hubiera hecho en fraude de acreedores. Los bienes de inversión extranjera situados o administrados en la República de Panamá a través de sociedades panameñas, fundaciones o fideicomisos, así como *trust* extranjeros reconocidos en la República de Panamá, se someten a la ley panameña con los privilegios que esta pudiera concederles. Las normas que regulan la inscripción y publicidad de la propiedad privada y formalidades del Registro Público son de orden público e imperativas.

**Artículo 71.** La acción pauliana internacional se rige por la ley del patrimonio defraudado o a reivindicar y el tribunal competente es el del lugar del derecho real afectado o donde se perfeccionó el derecho real a reivindicar.

### Título III
Contratos

#### Capítulo I
Principio Internacional *Pacta Sunt Servanda*

**Artículo 72.** Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes y deben cumplirse al tenor de estos y de buena fe y lealtad negocial, salvo las limitaciones que establezca la ley. La buena fe debe ser apreciada en el marco de la voluntad acordada en el convenio. El juez apreciará la buena fe en las fases precontractual, contractual y de ejecución bajo las reglas de justicia y cooperación contractual internacional.

**Artículo 73.** Los contratos se reputan internacionales cuando las partes se encuentren domiciliadas en Estados diferentes; cuando el contrato contenga una prestación u obligación que recaiga sobre servicios, bienes o capital que produzcan sus efectos en el territorio de la República de Panamá, o cuando los servicios, bienes o capital, su causa jurídica se haya perfeccionado en el territorio de la República de Panamá.

**Artículo 74.** Cuando las partes en un contrato internacional guarden silencio respecto a la ley aplicable, el juez tendrá en cuenta la ley del lugar de cumplimiento de la obligación y a falta de

 14

poder determinar la ley del lugar de cumplimiento el juez se inclinará por la ley que regule la economía con que se caracteriza el contrato internacional.

**Artículo 75.** Las partes en una relación contractual pueden someter dicho contrato a dos o más leyes siempre que lo permita la naturaleza del negocio jurídico internacional y la divisibilidad del derecho aplicable regule una determinada obligación o situación del negocio jurídico. No podrá efectuarse la divisibilidad del derecho aplicable si esta impide la ejecución del negocio objeto del contrato o es en fraude o perjuicio de una de las partes. El derecho aplicable debe guardar una relación con la economía de la transacción o derivarse de una ley conocida por los contratantes.

**Artículo 76.** La existencia y la validez del contrato o de cualquiera de sus disposiciones, así como la validez sustancial del consentimiento de las partes respecto a la elección del derecho aplicable, se regirán por la norma que corresponda conforme al acuerdo. Sin embargo, para establecer que una parte no ha consentido debidamente, el juez deberá determinar el derecho aplicable tomando en consideración el lugar de la emisión del consentimiento.

**Artículo 77.** La autonomía de la voluntad de las partes regula y reglamenta los contratos internacionales siendo su única limitación el orden público y el fraude a la ley aplicable.

**Artículo 78.** Los contratos internacionales se perfeccionan con la aceptación de la oferta en los términos pactados.

Los contratos internacionales de más de un año son susceptibles de ser revisables cuando la base negocial, por circunstancias externas e imprevisibles a los contratantes, haga imposible la prestación de la obligación o genere un desequilibrio contractual.

Las partes podrán acudir a los sistemas de mediación o a cualquier otro método alterno de solución de conflictos que rija el contrato.

**Artículo 79.** La emisión de bonos o valores en general realizada bajo la reglamentación de la Superintendencia del Mercado de Valores de Panamá se rige en cuanto a su forma y validez por la ley panameña, pero tratándose de una colocación internacional, las partes pueden pactar que los efectos de la obligación se sometan a una ley distinta de una plaza bancaria reconocida. La calificación de una emisión de bonos o valores en general se somete a la ley del lugar de su emisión, así como las cláusulas de garantía. Las partes podrán pactar una cláusula atributiva de jurisdicción, pero esta se limitará al foro de la emisión o al foro del lugar de pago.

### Capítulo II
#### Prescripción Internacional

**Artículo 80.** La prescripción extintiva o adquisitiva se rige por la ley que regula la relación obligacional objeto de prescripción.

**Artículo 81.** La nulidad internacional de los contratos en cuanto a su forma se rige por la ley que gobierna la forma de estos.

15

La nulidad que afecta la parte sustantiva del contrato se rige por la ley de la autonomía de la voluntad que gobierna el contrato o, en su defecto, por la ley donde deba producir sus efectos.

**Artículo 82.** Los tribunales panameños son competentes, para conocer de los contratos cuya prestación se ejecute en el territorio de la República de Panamá o cuando las partes hayan designado al foro panameño como competente por vía de cláusula atributiva de jurisdicción o por conducta procesal de las partes, siempre que no contravenga el orden público.

**Artículo 83.** Los contratos electrónicos en línea o Internet se perfeccionan al momento de la recepción de la aceptación de la oferta.

Los contratos entre ausentes se reputan internacionales cuando las partes se encuentren ubicadas en Estados diferentes.

La prueba de los contratos electrónicos se rige por el principio de la certeza y conservación de los documentos de acuerdo con las reglas, los principios y los usos de carácter internacional. La retractación en materia de contratos electrónicos internacionales deja sin efecto dicho contrato si esta sobreviene en tiempo razonable. Se entiende por tiempo razonable el periodo de reflexión que le concede la ley al destinatario de la oferta.

**Artículo 84.** Los contratos de préstamo internacional y de inversión extranjera entre particulares se rigen por la autonomía de la voluntad o, en su defecto, por la ley donde se realiza el préstamo o la inversión. Los contratos de préstamo y de inversión internacionales deberán ser redactados también en el idioma del prestatario y en el idioma español. El juez podrá adaptar los intereses pactados en moneda extranjera convertible cuando esta resulta excesivamente onerosa o haga imposible la ejecución del préstamo.

**Artículo 85.** La ley aplicable a los contratos de seguros es la ley de la sede social de la compañía de seguro, salvo pacto en contrario. Los seguros adquiridos en el extranjero se rigen por la ley de la sede social, pero los nacionales y domiciliados podrán incoar su reclamación ante los tribunales de su domicilio o ante los tribunales de la sede de la compañía de seguro a opción del demandante.

**Artículo 86.** Las partes podrán utilizar los principios sobre los contratos comerciales internacionales reglamentados por el Instituto Internacional para la Unificación del Derecho Privado, conocido como UNIDROIT por sus siglas en inglés, como regla supletoria al derecho aplicable o medio de interpretación por el juez o árbitro, en los contratos o relaciones de Derecho Comercial Internacional.

**Artículo 87.** Es válido entre las partes pactar dentro de los contratos de comercio los usos generales, las costumbres dentro de la actividad comercial y las prácticas reiterativas de carácter internacional conocidas por las partes en calidad de operadores del comercio o agentes económicos dentro de sus relaciones internacionales.

El conjunto de usos, costumbres y prácticas comerciales internacionales es fuente de derecho y es vinculante desde que se pacta o se desprende de la actividad natural de comercio.

16

**Artículo 88.** Se entiende por operadores de comercio o agentes económicos toda persona comerciante que produzca dentro de su actividad servicios, bienes o capital dentro del mercado internacional o doméstico (*lex mercatoria*). Se presume la igualdad contractual entre comerciantes.

### Capítulo III
Régimen de los Contratos Desiguales

**Artículo 89.** Se entiende por contratos desiguales o de adhesión los contratos en los que la parte más débil no tiene facultad para negociar las cláusulas esenciales de dichos contratos. Se entenderá como cláusulas esenciales o de adhesión las cláusulas que fijan el precio, las condiciones de ejecución del contrato y las cláusulas de solución de conflictos. La imposición de una de esas cláusulas se entenderá como el medio de comprobación de un contrato desigual.

**Artículo 90.** Son contratos desiguales o de adhesión los contratos de trabajo, los contratos de consumidor y los contratos de representación cuando el comisionista se encuentre en territorio de la República de Panamá prestando un servicio. Bajo ningún concepto esta enumeración debe ser interpretada taxativamente.

**Artículo 91.** Los tribunales panameños serán competentes privativamente en materia de contratos laborales individuales e internacionales:

1. Cuando la prestación del servicio tenga lugar en la República de Panamá, sea que la contratación se origine en el territorio nacional o en el extranjero, o que la ejecución de los contratos se inicie en el territorio nacional, aun cuando se continúen en otros territorios.
2. Cuando el trabajador nacional se contrate en la República de Panamá para ejecutar su trabajo en otro país.
3. Cuando las partes lo determinen en el contrato, al menos una de ellas sea nacional y exista además algún elemento de conexión con el territorio nacional.

**Artículo 92.** Las convenciones colectivas internacionales se regirán por las cláusulas convenidas entre las organizaciones sindicales y el empleador o, en su defecto, por la ley del lugar de ejecución.

**Artículo 93.** Los tribunales competentes para conocer de las relaciones colectivas de trabajo son los del lugar de la prestación laboral o la ley acordada entre la organización sindical y el empleador cuando esta sea la más favorable.

**Artículo 94.** La ley aplicable en una relación laboral individual se somete a la ley de su cumplimiento o, en su defecto, a la ley de la sede del establecimiento laboral o del domicilio del empleador.

**Artículo 95.** Los contratos del consumidor se rigen por la ley del lugar donde concluyó la transacción.



17

A elección del consumidor, este podrá recurrir a la jurisdicción de su domicilio, a la del lugar de conclusión del contrato o a la que le sea más favorable, en función del principio del interés superior del consumidor.

Se entiende por la ley más favorable la ley de la reparación y protección más apropiada al interés del consumidor.

**Artículo 96.** Los contratos de representación y franquicia internacional se rigen por la autonomía de las partes, pero en cuanto a la indemnización por ruptura o incumplimiento del contrato, por la ley de ejecución del contrato o la de mayor protección al concesionario o franqueado a elección de este último.

**Artículo 97.** Los tribunales panameños conocerán privativamente de las demandas derivadas de los contratos de representación y franquicia cuando dichos contratos se ejecuten dentro de la República de Panamá.

**Capítulo IV**
Régimen de los Contratos Especiales

**Sección 1.ª**
Venta Internacional

**Artículo 98.** Se reputa una compraventa internacional cuando las partes se encuentren situadas o domiciliadas en Estados diferentes o cuando la transacción comercial se encuentra vinculada a más de dos Estados.

**Artículo 99.** La compra y venta internacional se rige por la ley del lugar del perfeccionamiento del contrato, es decir, donde se realiza la prestación objeto del contrato, salvo pacto en contrario.

Los tribunales panameños serán competentes para conocer de las acciones derivadas de la ejecución de un contrato internacional cuando la prestación de la obligación produzca sus efectos dentro del territorio de la República de Panamá o cuando medie cláusula atributiva de jurisdicción que no contraríe el orden público sustantivo y procesal.

**Sección 2.ª**
*Factoring* o Factoraje Internacional

**Artículo 100.** Este Código se aplicará cuando los créditos cedidos conforme al contrato de factoraje se originen en un contrato de compraventa de mercaderías entre un proveedor y un deudor que tengan sus establecimientos en Estados diferentes.

**Artículo 101.** Se entiende por convenio de *factoring* o convenio de factoraje el contrato celebrado entre una parte (el proveedor) y la otra parte (la empresa de factoraje, en adelante el cesionario) conforme al cual:

1.    El proveedor podrá o deberá ceder al cesionario créditos que se originen en contratos de compraventa de mercaderías celebrados entre el proveedor y sus clientes (deudores),

18

excepto los que se refieran a mercaderías compradas principalmente para uso personal, familiar o doméstico.

2.  El cesionario tomará a cargo al menos dos de las siguientes funciones: financiamiento del proveedor, incluyendo préstamos y adelantos de pagos; cobro de créditos y protección en caso de falta de pago de los deudores.

3.  La cesión de créditos deberá ser notificada a los deudores.

**Artículo 102.** Las referencias a mercaderías y compraventa de mercaderías que se hacen en este Código incluirán los servicios y la prestación de servicios.

**Artículo 103.** Los efectos del contrato de *factoring*, para su eficacia, deberán cumplir con una notificación por escrito que no requerirá ser firmada, pero deberá identificarse a la persona que la hace o en nombre de quién se hace.

La notificación por escrito comprende, sin limitaciones, telegramas, télex y cualquier otro medio de telecomunicación susceptible de ser reproducido en forma tangible.

Una notificación por escrito se entiende hecha si es recibida por el destinatario.

### Sección 3.ª
Préstamo Internacional

**Artículo 104.** Se entiende por préstamo internacional cuando dicho préstamo resulte de una actividad internacional o cuando las partes prestamista y prestatario se encuentren domiciliadas en Estados diferentes.

El préstamo internacional se rige por la autonomía de la voluntad de las partes, mas su interés deberá ser conforme con el orden público de la ley del prestatario.

La cláusula de indexación monetaria se deberá pactar cuando dicho contrato no se haya acordado en dólares de los Estados Unidos de curso legal en la República de Panamá.

**Artículo 105.** Las partes podrán designar como ley aplicable una ley internacional o convenio internacional que regule el préstamo siempre que dicha norma no contravenga principios fundamentales de orden público panameño.

**Artículo 106.** Los contratos de préstamo internacional deberán mantener el principio de neutralidad contractual en el que el foro jurisdiccional o arbitral no coincida con el derecho o lugar donde se encuentre la parte prestataria o la entidad financiera que desembolsa el préstamo.

### Sección 4.ª
Cesión de Créditos

**Artículo 107.** La cesión de créditos se rige por la autonomía de la voluntad de las partes o, en su defecto, por el derecho aplicable al crédito. Para todos los efectos, la cesión de créditos es un contrato formal y la forma se rige por la ley del lugar de la celebración del acto. El tribunal competente es el del lugar donde se perfecciona la cesión, salvo pacto en contrario.

19

## Sección 5.ª
*Leasing* o Arrendamiento Financiero

**Artículo 108.** El contrato de *leasing* o de arrendamiento financiero internacional se reputará internacional cuando el arrendador y el arrendatario se encuentren domiciliados en países distintos.

El contrato de *leasing* o de arrendamiento financiero se rige por la ley designada por las partes o, en su defecto, por la ley del perfeccionamiento de dicho contrato.

**Artículo 109.** Los tribunales panameños podrán conocer de las reclamaciones derivadas de la ejecución del contrato de *leasing* internacional, cuando el arrendador tenga su domicilio en la República de Panamá o la ejecución del contrato se perfeccione en Panamá, sin perjuicio de que las partes acudan a soluciones alternas de conflictos, como la mediación y el arbitraje.

**Artículo 110.** La prenda mercantil se rige por la ley de su constitución y el tribunal competente para conocer de la acción real es el de la situación de la prenda, salvo pacto en contrario. Los derechos anticresis se rigen por la ley en la que se perfecciona el ejercicio, pero el tribunal competente es el del lugar del ejercicio del derecho real, salvo pacto en contrario.

## Sección 6.ª
*Trust* y Fideicomiso

**Artículo 111.** Los contratos *trust* y fideicomiso se regulan por la ley designada por el fideicomitente o, en su defecto, por la ley del lugar de la administración de los bienes. El *trust* extranjero en cuanto a contratos se debe adaptar a las exigencias del derecho interno panameño si los bienes se encuentran en la República de Panamá.

El *trust* y el fideicomiso constituidos de acuerdo con las leyes de la República de Panamá se regirán por la ley panameña. Sin embargo, podrán sujetarse en su ejecución a una ley extranjera si así lo dispone el instrumento de fideicomiso.

El *trust* y el fideicomiso, así como los bienes de este, podrán trasladarse o someterse a las leyes o jurisdicción de otro país, según lo dispuesto en el instrumento de fideicomiso.

El *trust* y el fideicomiso constituidos antes de la entrada en vigencia de este Código se regirán por las leyes vigentes al tiempo de su constitución, pero podrán acogerse a este Código en cualquier tiempo mediante declaración escrita del fideicomitente, fiduciario y beneficiario.

**Artículo 112.** Los tribunales panameños serán competentes para conocer de las reclamaciones derivadas del *trust* o del fideicomiso cuando la administración se encuentre situada dentro del territorio de la República de Panamá o cuando las partes hayan designado el foro jurisdiccional panameño en virtud de cláusula atributiva de jurisdicción o cláusula compromisoria de arbitraje.

## Sección 7.ª
Donación

**Artículo 113.** El convenio de donación se rige por la ley del perfeccionamiento de la donación o, en su defecto, por la ley del estatuto personal del donante.

20

### Título IV
Cooperación Judicial Internacional

### Capítulo I
Cooperación Judicial Civil Internacional

**Artículo 114.** La cooperación judicial internacional se basa en la solidaridad de la administración de justicia. Toda cooperación judicial internacional penal deberá cumplir con los principios de proporcionalidad, doble incriminación, especialidad y defensa del orden público y del interés público.

A falta de convenio expreso, se realizará toda asistencia judicial por virtud de la cortesía internacional o por vía de reciprocidad controlada.

**Artículo 115.** La cooperación judicial civil internacional tendrá lugar por vía de exhortos o cartas rogatorias expedidos en actuaciones y procesos en materia civil, comercial y de familia solicitada por un tribunal extranjero cuando tenga por objeto:

1.  La realización de actos procesales de mero trámite, como notificaciones, citaciones y emplazamientos en el extranjero.
2.  La recepción y obtención de pruebas e informes en el extranjero, salvo reserva expresa al respecto.

**Artículo 116.** Los exhortos o cartas rogatorias podrán ser transmitidos al órgano o autoridad requerida por las propias partes interesadas, por vía judicial, por intermedio de los funcionarios consulares o agentes diplomáticos o por la autoridad central del Estado requirente o requerido según el caso.

**Artículo 117.** Los exhortos o cartas rogatorias se cumplirán siempre que reúnan los siguientes requisitos:

1.  Que el exhorto o carta rogatoria se encuentre legalizado. Se presumirá que se halla debidamente legalizado en el Estado requirente cuando hubiera sido legalizado por funcionario consular o agente diplomático competente.
2.  Que el exhorto o carta rogatoria y la documentación anexa se encuentren debidamente traducidos al idioma oficial del país requerido.

**Artículo 118.**   Los exhortos o cartas rogatorias deberán ir acompañados con los siguientes documentos, que se entregarán al citado, notificado o emplazado:

1.  Copia autenticada de la demanda y sus anexos, y de los escritos o resoluciones que sirvan de fundamento a la diligencia solicitada.
2.  Información escrita acerca de cuál es el órgano jurisdiccional requirente, los términos de que dispone la persona afectada para actuar y las advertencias que le haga dicho órgano sobre las consecuencias que entrañaría su inactividad.
3.  Información acerca de la existencia y domicilio de la defensoría de oficio o de sociedades de auxilio legal competentes en el Estado requirente, en su caso.

21

**Artículo 119.** El órgano jurisdiccional requerido tendrá competencia para conocer las cuestiones que se susciten con motivo del cumplimiento de la diligencia solicitada.

Si el órgano jurisdiccional requerido se declara incompetente para proceder a la tramitación del exhorto o carta rogatoria, transmitirá de oficio los documentos y antecedentes del caso a la autoridad judicial competente de su Estado.

**Artículo 120.** Los funcionarios consulares o agentes diplomáticos podrán dar cumplimiento a las diligencias indicadas en el Estado en donde se encuentren acreditados, siempre que ellos no se opongan a las leyes de este. En la ejecución de tales diligencias, no podrán emplear medios que impliquen coerción.

**Artículo 121.** El sistema de cooperación judicial internacional que se instituye mediante este Código no excluye la utilización de los medios electrónicos para la evacuación o sustanciación de cualquier trámite, diligencia o prueba requerido ante la jurisdicción panameña que permita su celeridad e inmediación con el tribunal requirente.

### Capítulo II
Cooperación Judicial Penal Internacional

**Artículo 122.** La cooperación judicial penal internacional procederá cuando no medie tratado alguno, siempre que la petición realizada por vía de exhorto no viole el principio de la especialidad del objeto o hechos requeridos dentro del diligenciamiento solicitado, si la petición cumple con la norma de la doble incriminación en cuanto al delito o contravención que se investigue, si la petición o sus efectos no son desproporcionales o no tienen relevancia alguna con los hechos a investigar, o si la petición no contraviene el orden público o el interés nacional o derechos fundamentales de la humanidad.

**Artículo 123.** Las incidencias de toda asistencia judicial serán resueltas por el juez panameño en su calidad de juez exhortado.

**Artículo 124.** La extradición a falta de tratado se rige por la regla de derecho interno, pero no podrá extraditarse a extranjeros que se encuentren sometidos a procesos ante la jurisdicción panameña.

### Sección 1.ª
Aplicación de la Ley Penal en el Espacio

**Artículo 125.** La ley penal se aplicará a los hechos punibles cometidos en el territorio nacional y demás lugares sujetos a la jurisdicción del Estado, salvo las excepciones establecidas en las convenciones y normas internacionales vigentes en la República de Panamá.

Para los efectos de la ley penal, constituyen territorio de la República de Panamá el área continental e insular, el mar territorial, la plataforma continental, el subsuelo y el espacio aéreo que los cubre. También lo constituyen las naves y aeronaves panameñas y todo aquello que, según las normas del Derecho Internacional, responda a ese concepto.

22

## Sección 2.ª
### Aplicación de la Ley Penal a las Personas

**Artículo 126.** La ley penal panameña se aplicará sin distinción de personas, con excepción de:

1.  Los jefes de Estado extranjero.
2.  Los agentes diplomáticos de otros Estados y demás personas que gocen de inmunidad, según las convenciones internacionales vigentes en la República de Panamá.
3.  Los casos previstos en la Constitución Política de la República de Panamá y las leyes.

Las excepciones establecidas en este artículo no se aplicarán cuando se trate de los delitos previstos en el Título XV del Libro Segundo del Código Penal y del delito de desaparición forzada de personas.

**Artículo 127.** La comisión de un hecho punible por un servidor público que goce de prerrogativa funcional no impide que la autoridad competente, previo cumplimiento de las formalidades legales, le aplique las sanciones previstas en la ley penal.

## Sección 3.ª
### Conflicto de Leyes en Materia Penal

**Artículo 128.** Es aplicable la ley penal panameña, aunque se hayan cometido en el exterior, a los delitos contra la humanidad, contra la personalidad jurídica del Estado, contra la salud pública, contra la economía nacional y contra la Administración Pública, así como a los delitos de desaparición forzada de personas, trata de personas y falsedad de documentos de crédito público panameño, de documentos, sellos y timbres oficiales, de la moneda panameña y demás monedas de curso legal en el país, siempre que, en este último caso, se hayan introducido o pretendido introducir al territorio nacional.

**Artículo 129.** La ley penal panameña se aplicará a los delitos cometidos en el extranjero cuando:

1.  Produzcan o deban producir sus resultados en el territorio panameño.
2.  Sean cometidos en perjuicio de un panameño o sus derechos.
3.  Sean cometidos por agentes diplomáticos, funcionarios o empleados panameños que no hubieran sido juzgados en el lugar de su comisión por razones de inmunidad diplomática.
4.  Una autoridad nacional haya negado la extradición de un panameño o de un extranjero.
5.  Los tribunales penales panameños son competentes sobre los delitos cometidos en la República de Panamá, así como por los hechos ilícitos acaecidos en el extranjero y cuyos resultados se concreticen en la República de Panamá.

**Artículo 130.** Independientemente de las disposiciones vigentes en el lugar de la comisión del delito y de la nacionalidad del imputado, se aplicará la ley penal panameña a quienes cometan hechos punibles previstos en los tratados internacionales vigentes en la República de Panamá, siempre que estos le concedan competencia territorial.

23

**Artículo 131.** No se hará distinción entre nacionales y extranjeros en los Estados contratantes en cuanto a la prestación de la fianza para comparecer en juicio.

**Título V**
Cuasicontratos y Responsabilidad Extracontractual
**Capítulo I**
Pago de lo Indebido y Enriquecimiento sin Causa

**Artículo 132.** El pago de lo indebido se rige por la ley del lugar donde tuvo lugar la realización de dicho pago o, en su defecto, por la ley pactada por las partes.

**Artículo 133.** La gestión oficiosa se rige por la ley donde se perfeccionó dicha gestión o, en su defecto, por la ley pactada por las partes.

**Artículo 134.** En el enriquecimiento sin causa es aplicable la ley del lugar donde se produjo dicho enriquecimiento o la ley del domicilio de la parte empobrecida.

**Capítulo II**
Tribunales Competentes en Materia de Cuasicontratos

**Artículo 135.** Los tribunales panameños son competentes para conocer de las reclamaciones derivadas de todo cuasicontrato cuando la parte afectada sea nacional panameña o residente en la República de Panamá o los efectos de dichos actos tengan repercusión dentro del territorio de la República.

**Título VI**
Responsabilidad Extracontractual

**Artículo 136.** La responsabilidad extracontractual internacional producto de cosa ajena o derivada de toda tecnología o productos químicos o de fabricación elaborada en el extranjero, las cuales se someten a las reglas de funcionabilidad y de estructura, se rige por la ley del productor o fabricante o, en su defecto, por la ley de la materialización del daño.

La ley del fabricante cuando sea retenida o cuando el criterio a retener sea el del lugar del daño rige lo concerniente al lucro cesante, daño directo y daño moral.

Para todos los efectos, se establece la solidaridad entre el productor extranjero, el intermediario y el distribuidor local.

La víctima podrá demandar en la sede social del fabricante o en el lugar del lugar del daño, a su elección.

**Artículo 137.** La cláusula del límite del conocimiento científico invocada por el fabricante o intermediario no es oponible a la sanción de daños y perjuicios que el juez pueda calcular, cuando afecta a un grupo de personas o comunidad.

24

**Artículo 138.** Los tribunales panameños podrán conocer de las acciones individuales y colectivas derivadas de hechos producidos por cosas o tecnología importadas cuando las partes demandadas están domiciliadas en la República de Panamá. Los tribunales panameños podrán conocer de los daños que produzcan las cosas o tecnología cuando están en tránsito por el país si dichos daños tienen lugar en el territorio nacional.

**Artículo 139.** Los daños y perjuicios que se produzcan por delitos de injuria o calumnia internacional se rigen por la ley del daño y los tribunales competentes son los del lugar del daño o del domicilio, a elección de la parte demandante.

**Artículo 140.** La responsabilidad individual o profesional por culpa, negligencia u omisión se rige por la ley del daño.

    Los tribunales panameños serán competentes para conocer de las reclamaciones derivadas por dicha responsabilidad siempre que una de las partes esté domiciliada en la República de Panamá.

**Artículo 141.** En materia de práctica desleal, la ley aplicable es la ley del lugar donde se perpetra el acto o la ley del lugar de dirección o, en su defecto, el de la sociedad vinculada con la reclamación internacional.

**Título VII**
Derecho Comercial Internacional
**Capítulo I**
Documentos Negociables

**Artículo 142.** La capacidad de una persona para obligarse por letra de cambio se determina por su ley nacional. Si esta ley nacional declara aplicable la ley de otro Estado, esta última es la que se aplica.

    Toda persona incapaz, según la ley indicada en el párrafo anterior, queda, sin embargo, legalmente obligada si se ha comprometido en el territorio de un Estado cuya legislación la considera capaz.

**Artículo 143.** La forma de un compromiso contraído en materia de letra de cambio se determina ateniéndose a las leyes del país en cuyo territorio se suscribe la obligación.

**Artículo 144.** La forma y los plazos de protesto, así como de todos los demás actos necesarios al ejercicio o a la conservación de los derechos en materia de letras de cambio, se rigen por las leyes del Estado en cuyo territorio deba ser realizado el protesto o en el cual ha pasado el acto de que se trata.

**Artículo 145.** Cuando una letra de cambio no indique el lugar en que se haya contraído una obligación cambiaria, esta se regirá por la ley del lugar donde la letra debe ser pagada, y si este no consta, por la del lugar de su emisión.

**Artículo 146.** Los procedimientos y plazos para la aceptación, el pago y el protesto se someten a la ley del lugar en que dichos actos se realicen o deban realizarse.

25

**Artículo 147.** La ley del Estado donde la letra de cambio deba ser pagada determina las medidas que han de tomarse en caso de robo, hurto, falsedad, extravío, destrucción o inutilización materia del documento.

**Artículo 148.** Los tribunales del Estado Parte donde la obligación deba cumplirse o los del Estado Parte donde el demandado se encuentre domiciliado, a opción del actor, serán competentes para conocer de las controversias que se susciten con motivo de la negociación de una letra de cambio.

### Capítulo II
Arbitraje Comercial Internacional

**Artículo 149.** El arbitraje comercial internacional es, de conformidad con este Código, cuando el objeto o negocio jurídico contenga elementos de extranjería o de conexión, suficientemente significativos que lo caractericen como tal, o cuando conforme a la regla de conflicto del foro lo califiquen como internacional.

También se considerará que el arbitraje es comercial internacional al concurrir alguna de las circunstancias siguientes:

1. Si las partes en un convenio arbitral tienen, al momento de celebración de ese   convenio, sus oficinas o establecimientos en Estados diferentes.

2. Si el lugar del arbitraje que se ha determinado en el convenio arbitral o con arreglo a este, está situado fuera del país en que las partes tienen sus establecimientos.

3. Si el lugar de cumplimiento de las obligaciones derivadas de la relación jurídica que vincula a las partes, está situado fuera del país en que las partes tienen sus establecimientos.

4. Si el lugar con respecto al cual la controversia guarda una relación más estrecha, está situado fuera del país en que las partes tienen sus establecimientos.

5. Si la materia objeto de arbitraje es de naturaleza civil o mercantil internacional y/o está relacionada con más de un Estado y/o consista en prestaciones de servicios, enajenación o disposición de bienes o transferencias de capitales que produzcan efectos transfronterizos o extraterritoriales.

**Artículo 150.** El tribunal arbitral aplicará las reglas de Derecho si el arbitraje es de Derecho y su libre criterio si el arbitraje es de equidad.

En caso de que el arbitraje sea comercial internacional, se procederá de acuerdo con la cláusula arbitral pactada.

Las partes podrán determinar libremente la clase de arbitraje al que someterán sus controversias y, en el caso de que no hayan expresado la modalidad del arbitraje a que se someterán, se entenderá que el arbitraje es de equidad.

**Artículo 151.** En el régimen de concesiones públicas o en aquellas otras contrataciones en que participe una empresa privada extranjera con una entidad estatal centralizada o descentralizada del Estado panameño, las diferencias derivadas de dicha concesión o contrataciones se someterán al procedimiento de arbitraje previsto en el Reglamento de Arbitraje de la Comisión de las Naciones Unidas para el Derecho Mercantil Internacional, excepto en los casos en los que se haya pactado un procedimiento y una reglamentación distinta.

26

La sede del arbitraje será el centro de arbitraje libremente escogido por las partes. En ausencia de su determinación, el arbitraje tendrá lugar en cualquier centro de arbitraje o de solución de conflictos reconocido dentro de la República de Panamá.

El tribunal arbitral será colegiado, cada parte designará un árbitro que podrá ser nacional o extranjero y estos escogerán al tercer árbitro.

El derecho aplicable será el que determinen las partes en el acuerdo arbitral o pacto arbitral.

### Capítulo III
#### Arbitraje Fiscal Internacional

**Artículo 152.** Los laudos extranjeros se reconocerán y ejecutarán en Panamá de conformidad con los tratados y convenios en los que la República de Panamá sea parte o, en su defecto, por lo previsto en este Código.

**Artículo 153.** Se considera laudo arbitral extranjero el dictado fuera del territorio de la República de Panamá.

Asimismo, se considerará laudo extranjero el dictado en el territorio panameño en el curso de un arbitraje comercial internacional, de conformidad con este Código, en donde la ley o el procedimiento sean distintos al derecho panameño.

**Artículo 154.** Será tribunal competente para el reconocimiento y ejecución de un laudo arbitral extranjero la Sala Cuarta, de Negocios Generales, de la Corte Suprema de Justicia de la República de Panamá.

La parte que invoque el reconocimiento y la ejecución de un laudo arbitral extranjero deberá aportar, junto con el escrito de solicitud, los siguientes documentos:

1. Original autenticado en debida forma o copia certificada del laudo arbitral.
2. Original autenticado en debida forma o copia certificada del convenio arbitral.
3. Traducción oficial, si el idioma del arbitraje es un idioma distinto del español.

**Artículo 155.** Si el arbitraje es comercial internacional de conformidad con este Código o cuando se presenten de manera general elementos de extranjería que determinen su internacionalización, regirán las siguientes disposiciones especiales:

1. La capacidad de las partes en un convenio arbitral se regirá de conformidad con la ley personal.
2. La ley aplicable en el convenio arbitral, en lo que afecta a la validez y los efectos, será expresamente designada por las partes, por sí o a través del reglamento de una institución de arbitraje o, en su defecto, la ley del lugar en donde ha de dictarse el laudo arbitral. Si este no estuviera determinado, se aplicará la ley de celebración del convenio.
3. En el arbitraje de derecho, el tribunal arbitral decidirá conforme a la ley designada por las partes, por sí o a través del reglamento de una institución de arbitraje que sea aplicable. En su defecto, decidirá conforme a la ley que determinen libremente los árbitros, aplicando o no una norma de conflicto, sin desnaturalizar la voluntad de las partes.

 27

Se tendrán en cuenta los usos de comercio y, en su caso, las estipulaciones del contrato y las reglas de contratación privada internacional.

Cuando se trate de un arbitraje comercial internacional, el orden público que se aplica es el orden público internacional.

Para el resto de las cuestiones afectas por elementos de internacionalidad o extranjería, regirá supletoriamente lo establecido en el Código Civil.

**Parágrafo.** El tribunal podrá renunciar a la aplicación de las reglas de conflicto de Derecho Internacional Privado y aplicar directamente el Derecho material o sustantivo o Derecho convencional o la ley uniforme que haya sido designada por las partes de manera clara e indubitable.

**Artículo 156.** Solo se podrá denegar el reconocimiento y ejecución de un laudo arbitral extranjero, si ocurre alguna de las circunstancias siguientes:

1.   A instancia de parte contra la cual se invoca, cuando esta parte pruebe ante la Sala Cuarta, de Negocios Generales, de la Corte Suprema de Justicia de la República de Panamá, que ha quedado establecido:

   a.   Que una de las partes en el convenio arbitral estaba sujeta a alguna incapacidad en virtud de la ley que le es aplicable o que dicho acuerdo no es válido en virtud de la ley a que las partes lo han sometido o, si nada se hubiera indicado a este respecto, en virtud de la ley del país en que se haya dictado el laudo.

   b.   Que la parte contra la cual se invoca el laudo no ha sido debidamente notificada de la designación de un árbitro o del procedimiento de arbitraje o no ha podido, por cualquiera razón, hacer valer sus derechos de defensa.

   c.   Que el laudo se refiere a una controversia no prevista en el convenio arbitral o no comprendida en las disposiciones de la cláusula compromisoria, o contiene decisiones que exceden de los términos del compromiso o de la cláusula compromisoria. No obstante, si las disposiciones del laudo se refieren a las cuestiones sometidas al arbitraje y pueden separarse de las que no han sido sometidas al arbitraje, se podrá conceder el reconocimiento y ejecución de las primeras.

   d.   Que la constitución del tribunal arbitral o el procedimiento arbitral no se ha ajustado al convenio celebrado entre las partes o, en su defecto, no se ha ajustado a la ley del país donde se ha celebrado el arbitraje.

   e.   Que el laudo no es obligatorio para las partes o ha sido anulado o suspendido por un tribunal del país en que, conforme a su ley, haya sido dictado.

   Si se ha pedido ante un tribunal la anulación del laudo conforme a la ley aplicable, el tribunal competente al que se pide el reconocimiento y ejecución podrá, si lo considera procedente, aplazar su decisión y, a instancia de la parte que pide el reconocimiento y la ejecución, podrá también ordenar a la otra parte la constitución de garantías apropiadas y suficientes.

2.   Cuando el tribunal compruebe:

   a.   Que el objeto de la controversia no es arbitrable.

   b.   Que el reconocimiento o la ejecución del laudo serían contrarios al orden público internacional de la República de Panamá.



28

**Capítulo IV**
Quiebra Internacional

**Artículo 157.** El proceso de quiebra universal internacional se somete a la ley del domicilio del fallido o de la sede social de la empresa.

Los tribunales panameños serán competentes para declarar el estado de quiebra universal toda vez que el domicilio del fallido se encuentre dentro de la República de Panamá o la mayoría de los bienes del fallido se encuentren ubicados en el territorio nacional.

**Artículo 158.** El proceso de quiebra tiene por finalidad la igualdad de los acreedores ante una sola jurisdicción competente.

**Artículo 159.** La quiebra se reputa internacional cuando los bienes del fallido se encuentren diseminados en más de dos Estados.

**Artículo 160.** Declarada la quiebra por el juez competente, este designará un síndico para la administración y representación de los intereses de la masa de los acreedores en el extranjero.

**Artículo 161.** El reconocimiento de la quiebra extranjera producirá sus efectos sin que medie exequátur cuando no se haya declarado proceso de quiebra alguno en el territorio de la República de Panamá sobre el fallido extranjero o cuando no exista una masa de acreedores locales. La nominación del síndico extranjero, así como las medidas conservatorias, no estará sujeta a proceso de exequátur alguno. Sin embargo, la nominación del síndico extranjero deberá constar mediante resolución o decisión extranjera debidamente apostillada y traducida al idioma español, señalando sus facultades, las cuales deben ser validadas ante el juez civil o de comercio, según sea el caso, ante quien deberá tomar posesión del cargo y obtener autorización para la ejecución de sus facultades.

**Artículo 162.** La quiebra de una sucesión se somete a la ley de la situación de los bienes y el tribunal competente es el del lugar del patrimonio del de *cujus.*

**Artículo 163.** No procederá el reconocimiento de la sentencia extranjera declaratoria de quiebra si es contraria al orden público internacional o si en dicha declaratoria de quiebra, la competencia del juez de la causa fue dada en fraude de ley o por virtud de *forum shopping.*

**Artículo 164.** Solo podrán practicarse medidas de conservación en materia de proceso de quiebra o insolvencia transfronteriza cuando lo solicite el tribunal extranjero, siempre que no exista proceso de quiebra declarado en la República de Panamá o no atente contra la masa de acreedores organizada en esta.

29

## Título VIII
Régimen de la Valoración de la Prueba Extranjera

**Artículo 165.** La sentencia podrá tener valor de fuerza probatoria, fuerza ejecutiva y fuerza de excepción de cosa juzgada.

**Artículo 166.** Las sentencias extranjeras de carácter declarativo se tramitarán como documentos provenientes del extranjero. Cuando las sentencias extranjeras declarativas estén debidamente autenticadas, no será necesario someterlas al proceso de exequátur, no así las sentencias que hacen autoridad de cosa juzgada o que contengan una condena líquida en contra de un nacional o residente en la República de Panamá.

### Capítulo I
Reconocimiento de la Ley Extranjera

**Artículo 167.** Los jueces y tribunales panameños podrán aplicar de oficio, cuando proceda, las leyes de los demás, sin perjuicio de los medios probatorios a que este Capítulo se refiere.

**Artículo 168.** La parte que invoque la aplicación del derecho extranjero o disienta de ella podrá justificar su texto, vigencia y sentido, mediante copia autenticada de la misma ley, de las decisiones de los tribunales, de los estudios doctrinales, así como dictamen o certificación de dos abogados en ejercicio del país cuya legislación se trate, que deberá presentarse debidamente legalizado.

No obstante lo anterior, el juez podrá investigar directamente el derecho extranjero, acudiendo a cualquier fuente o medio idóneo.

**Artículo 169.** A falta de prueba o si el juez o el tribunal por cualquier razón la estimara insuficiente, podrán solicitar de oficio, antes de resolver, por la vía diplomática, que el Estado de cuya legislación se trata proporcione un informe sobre el texto, vigencia y sentido del derecho aplicable.

La sentencia podrá tener valor de fuerza probatoria, fuerza ejecutiva y fuerza de excepción de cosa juzgada.

### Capítulo II
Prueba Extranjera

**Artículo 170.** La forma en que se practicará toda prueba se regula por la ley vigente en el lugar en que se efectúe.

El juez panameño aplicará el derecho extranjero de conformidad con su sentir y alcance de su ordenamiento jurídico, pero podrá rechazar la aplicación de un derecho extranjero como ley y como prueba, según el caso, cuando viole manifiestamente el orden público internacional panameño

**Artículo 171.** La apreciación de la prueba depende de la ley del juzgador.

30

**Artículo 172.** Los documentos otorgados en cada uno de los Estados contratantes tendrán en los otros el mismo valor en juicio que los otorgados en ellos, si reúnen los requisitos siguientes:

1. Que el asunto o materia del acto o contrato sea lícito y permitido por las leyes del país del otorgamiento y de aquel en que el documento se utiliza.

2. Que los otorgantes tengan aptitud y capacidad legal para obligarse conforme a su ley personal.

3. Que en su otorgamiento se hayan observado las formas y solemnidades establecidas en el país donde se han verificado los actos o contratos.

4. Que el documento esté legalizado y llene los demás requisitos necesarios para su autenticidad en el lugar donde se emplea.

5. Que la prueba obtenida en el extranjero no haya sido obtenida ilegalmente.

**Artículo 173.** La fuerza ejecutiva de un documento se subordina al derecho local.

**Artículo 174.** La capacidad de los testigos y su recusación dependen de la ley a que se someta la relación de derecho objeto del proceso.

**Artículo 175.** La forma del juramento se ajustará a la ley del juez o tribunal ante quien se presente y su eficacia a la que rija el hecho sobre el cual se jura.

**Artículo 176.** Las presunciones derivadas de un hecho se sujetan a la ley del lugar en el que se realiza el hecho de que nacen.

**Artículo 177.** La prueba indiciaria depende de la ley del juez o tribunal.

**Capítulo III**
Proceso de Reconocimiento y Ejecución de Sentencia Extranjera

**Artículo 178.** Las sentencias pronunciadas por tribunales extranjeros y los fallos arbitrales extranjeros que hacen tránsito a cosa juzgada tendrán en la República de Panamá la fuerza que establezcan los convenios o tratados respectivos.

Si no hubiera tratados especiales con el Estado en el que se haya pronunciado la sentencia, esta podrá ser ejecutada en la República de Panamá. Salvo prueba de que en dicho Estado no se dé cumplimiento a las dictadas por tribunales panameños, no tendrá fuerza en la República de Panamá.

**Artículo 179.** Sin perjuicio de lo que se dispone en tratados especiales, ninguna sentencia dictada en país extranjero podrá ser ejecutada en la República de Panamá si no reúne los siguientes requisitos:

1. Que la sentencia haya sido dictada por un tribunal competente, es decir, que no haya conculcado la competencia privativa de los tribunales panameños. Se entiende que la competencia sobre bienes inmuebles ubicados en la República de Panamá es de competencia privativa de los jueces panameños.

 31

2.   Que la sentencia no haya sido dictada en rebeldía, entendiéndose por tal, para los efectos de este artículo, el caso en que la demanda no haya sido personalmente notificada al demandado. Es decir, que el proceso evacuado en el extranjero haya cumplido con el principio del contradictorio.

3.   Que la sentencia pronunciada por tribunal extranjero no conculque principios o derechos fundamentales del orden público panameño.

4.   Que la copia de la sentencia sea auténtica y si fuera el caso debidamente traducida al idioma español.

Se entiende por sentencia extranjera objeto del exequátur toda sentencia revestida de autoridad de cosa juzgada y que en el resorte de su jurisdicción esté en firme y no sujeta a recurso alguno.

**Artículo 180.** La solicitud para que se declare si debe o no cumplirse una sentencia del tribunal extranjero será presentada en la Sala Cuarta, de Negocios Generales, de la Corte Suprema de Justicia de la República de Panamá, salvo que, conforme a los respectivos tratados, deba conocer del asunto otro tribunal. La Corte dará traslado a la parte que deba cumplir la sentencia y al procurador general de la Nación por el término de cinco días a cada uno y si todos estuvieran de acuerdo con que debe ejecutarse, lo decretará así.

En esta instancia, a petición de parte o de oficio, la Sala Cuarta, de Negocios Generales, actuando como tribunal de exequátur podrá decretar medidas conservatorias o de protección de conformidad con el Capítulo IV del Título II del Libro II del Código Judicial.

Si las partes no estuvieran de acuerdo y hubiera hechos que probar, la Corte concederá un término de tres días para aducir pruebas y de quince días para practicarlas, sin perjuicio de conceder un término extraordinario para practicar pruebas en el extranjero. Vencido este, oirá a las partes, dando sucesivamente a cada una un término de tres días, expirado el cual decidirá si debe o no ejecutar la sentencia.

Si la Corte declara que debe ejecutarse la sentencia, se pedirá su ejecución ante el tribunal competente.

La autenticidad y eficacia de las sentencias dictadas en país extranjero se establecen de conformidad con el artículo 877 del Código Judicial.

**Artículo 181.** Salvo los tratados internacionales ratificados por la República de Panamá, en cualquier juicio entablado en los tribunales marítimos panameños, los derechos y obligaciones de las partes se determinarán ajustándose a las siguientes normas especiales de Derecho Internacional Privado y en los casos no establecidos en este Capítulo, conforme lo dispone el Derecho Común:

1.   En cuanto a la tradición y las normas de publicidad de la propiedad de una nave, conforme lo dispongan las leyes del país de su registro.

2.   En cuanto a los derechos reales, créditos privilegiados que afecten la nave y su prelación, la ley del país de su registro.

3.   En cuanto a los derechos reales y la graduación de créditos privilegiados sobre carga o flete, salvo pacto expreso en contrario, las leyes de la República de Panamá.



32