4.  En cuanto a la extinción de los derechos de acreedores de la nave, sean estos privilegiados o no, las leyes del país de registro de la nave y, en el caso de acreedores de la carga o flete, las leyes de la República de Panamá.

5.  En cuanto a lo que concierne al orden interno de la nave y a los derechos, poderes, obligaciones y atribuciones del capitán, los oficiales y trabajadores del mar, las leyes del país de registro de la nave. Sin embargo, el capitán o cualquiera otra persona sujeta a la jurisdicción de los tribunales panameños será considerado con suficiente poder para representar judicialmente a la nave o a su armador y específicamente para recibir notificaciones en representación de estos.

6.  En cuanto a responsabilidad extracontractual de los armadores, del capitán, los oficiales, tripulantes y cualquiera otra persona que preste servicios a bordo de la nave por daños causados o que se causen a bienes o a cualesquiera de dichas personas o a cualesquiera otras personas que se encuentren a bordo de una nave, las leyes del país de registro de la nave.

7.  En cuanto a reclamaciones de estibadores, muelleros u otros trabajadores portuarios y a reclamaciones de terceras personas que presten servicios a la nave relacionados con el comercio marítimo o que se encuentren temporalmente a bordo de la nave mientras esté en puerto, salvo pacto en contrario en caso de responsabilidad contractual, las leyes del país donde haya ocurrido el hecho o los hechos que den lugar a la demanda, aunque estos hayan ocurrido a bordo de la nave.

8.  En cuanto a la determinación del tipo de avería que afecte a la nave o a su carga y la proporción en que estas contribuyan a soportarla, salvo pacto en contrario, la ley del país de registro de la nave.

9.  En casos de abordaje:

    a.  Cuando se trate de naves de un mismo registro y el abordaje ocurra en aguas internacionales, las leyes del país de registro común a ambas.

    b.  En caso de que el abordaje ocurra en aguas territoriales de un país, las leyes del lugar del accidente.

    c.  En caso de que el abordaje ocurra en aguas internacionales entre naves de diferentes registros, las leyes de la República de Panamá.

10. En cuanto a los efectos de los contratos de transporte de carga o pasajero, incluyendo los conocimientos de embarque, salvo pacto expreso en contrario, las leyes del país donde se efectúe el embarque o donde aborden la nave los pasajeros.

11. En cuanto a los efectos de los contratos de seguro marítimo, salvo pacto expreso en contrario, las leyes del país de domicilio del asegurador o de sus sucursales o agencias cuyo domicilio será el lugar donde operan.

12. En cuanto a los efectos de los contratos para la explotación de una nave, por viajes o por tiempo definido, que afecten todo o parte de la nave y que excluyan o no al armador de su control y manejo, salvo pacto expreso en contrario, las leyes del país de registro de la nave.

13. En cuanto a los efectos de los contratos por servicio que se presten a la nave o su carga y de los contratos por aprovisionamiento de la nave, salvo pacto expreso en contrario, las leyes del país donde se preste el servicio, y si se trata de servicios prestados a una nave o su carga en aguas internacionales, las leyes del país del registro de la nave.



33

14. En cuanto a la forma y solemnidad de cualquier contrato marítimo, las leyes del lugar donde se celebre.

15. En cuanto a la existencia y determinación de la limitación de responsabilidad del armador de la nave, por las leyes del país de su registro, y en cuanto a la existencia y determinación de la limitación de responsabilidad del propietario de la carga, las leyes de la República de Panamá.

16. En cuanto a la prescripción, la que establezca la legislación que deba determinar los derechos y obligaciones según lo dispuesto en este artículo.

17. En cuanto a la fijación de costas, se aplicarán las leyes de la República de Panamá.

### Título IX
Disposiciones Finales

**Artículo 182.** La sede social de una persona jurídica es el lugar donde se encuentra el centro administrativo de toma de decisiones y, por ende, el domicilio donde recibe notificaciones.

**Artículo 183.** Los conflictos intertemporales se rigen por las reglas de derecho transitorio previstas en el Derecho Civil interno y concordante.

Este Código solo se aplica como ley supletoria en materia de Derecho Internacional Privado Marítimo.

**Artículo 184.** Este Código comenzará a regir a los seis meses de su promulgación.

**COMUNÍQUESE Y CÚMPLASE.**
Proyecto 140 de 2010 aprobado en tercer debate en el Palacio Justo Arosemena, ciudad de Panamá, a los veintiocho días del mes de febrero del año dos mil trece.

El Presidente,

Sergio R. Gálvez Evers

El Secretario General,

Wigberto E. Quintero G.

App. 2039

ÓRGANO EJECUTIVO NACIONAL. PRESIDENCIA DE LA REPÚBLICA.
PANAMÁ, REPÚBLICA DE PANAMÁ, DE 8 DE *mayo* DE 2014.

RICARDO MARTINELLI BERROCAL
Presidente de la República

JORGE RICARDO FÁBREGA
Ministro de Gobierno

# EXHIBIT D





## REPÚBLICA DE PANAMÁ
### ÓRGANO JUDICIAL
## CORTE SUPREMA DE JUSTICIA. PLENO.

Panamá, siete (7) de abril de dos mil catorce (2014)

**VISTOS:**

El licenciado **José Antonio Moncada**, actuando en nombre y representación del señor **Eduardo Belford Melon**, interpuso ante la Corte Suprema acción de inconstitucionalidad contra a frase "en cuyo caso no podré apelar" contenida en los artículos 3 y 5 del "Acuerdo de Última Oportunidad", suscrito por la Directora de Recursos Humanos de la Autoridad del Canal de Panamá (ACP), Ana María Chiquilani y su representado el señor Eduardo Belford Melon, el 28 de septiembre de 2005, por considerar que es violatorio de los artículos 19, 32, 71, 74 y 322 de la Constitución Política de Panamá.

Admitida la demanda por cumplir con los presupuestos formales que exigen los preceptos 2560 y 665 del Código Judicial, y con fundamento en lo que preceptúa el artículo 2563 de dicha excerta procesal, se corrió el negocio en traslado al Procurador de la Administración, para que emitiera concepto.

1

**Hechos en que se Fundamenta La Demanda De Inconstitucionalidad:**

El licenciado José Antonio Moncada fundamenta la demanda de inconstitucionalidad en once hechos, los cuales pasamos a resumir.

1. La Autoridad del Canal fue el empleador de **Eduardo Belford Melon**, quien laboró desde el 8 de abril de 1991 con el anterior empleador la Comisión del Canal de Panamá, hasta su destitución (hecho primero).

2. El Sindicato del Canal de Panamá y del Caribe (SCPC) intervino en la representación de mi mandante, por ser el ente autorizado para representar los Derechos laborales de los trabajadores que componen la unidad Negociadora de los Trabajadores No-Profesionales de la Autoridad del Canal de Panamá (hecho segundo).

3. El 27 de septiembre de 2005 se le impuso a Eduardo Belford Melon, un "acuerdo de última oportunidad", para poder seguir laborando en la Autoridad del Canal de Panamá, luego de habérsele propuesto la destitución de su puesto de trabajo (hecho cuarto).

4. En el acuerdo de última oportunidad, se le impuso como condición: **no apelar en caso de destitución** (hecho quinto).

5. El trabajador cumplió con una sanción de 30 días, sin pago establecido en el acuerdo de última oportunidad (hecho séptimo).

6. Mediante nota RHRL-08-09 de 2007 la ACP destituyó a Eduardo Belford, argumentando que el trabajador incumplió con el Acuerdo de Última Oportunidad (hecho noveno).

### Normas Infringidas y Concepto de la Infracción

El artículo 19 de la Constitución Política, es del tenor siguiente:

> **"Artículo 19.** No habrá fuero ni privilegios ni discriminación por razón de raza, nacimiento, discapacidad, clase social, sexo religión o ideas políticas"

De acuerdo al demandante la disposición constitucional es infringida en concepto de violación directa por omisión, toda vez que el Acuerdo de Última Oportunidad obliga al trabajador a ser discriminado por él mismo, del resto del personal, quedando impedido al derecho de apelar, y a perder el auxilio del

2

Sindicato, que es por ley el único que puede invocar arbitraje, sino surte en la apelación lo esperado (fs. 6).

Señala además, que al renunciar a ser notificado de su destitución, viola también esta norma constitucional porque "la notificación es imprescindible en todas las jurisdicciones, inclusive la laboral" (fs. 6), discriminando la capacidad de conocer el proceso.

Expresa el demandante que resulta violado el artículo 32 de la Constitución Nacional que establece:

> "Artículo 32. Nadie será juzgado sino por autoridad competente y conforme a los trámites legales, ni más de una vez por la misma causa penal, administrativa, policiva o disciplinaria".

De acuerdo al demandante la norma constitucional resulta violada porque el trabajador fue suspendido por 30 días, sin derecho a sueldo, imponiéndose igualmente un Acuerdo de Ultima Oportunidad, en el que se comprometió a no apelar la destitución y, a no ser notificado previamente del despido (fs. 7), por lo que a juicio del accionante se sancionó doblemente por la misma causa.

Expresa igualmente, que el artículo 71 de la Constitución Política, fue violado por omisión por el acuerdo de última oportunidad.

> "Artículo 71. Son nulas, y por lo tanto, no obligan a los contratantes aunque se expresen en un convenio de trabajo o en otro pacto cualquiera las estipulaciones que impliquen renuncia, disminución, adulteración o dejación de algún derecho reconocido a favor del trabajador. La ley regulará todo lo relativo al Contrato de Trabajo. (fs. 8).

A juicio del demandante la disposición constitucional fue violada en concepto de violación directa por omisión, porque el Acuerdo de Última Oportunidad, mantuvo en suspenso la destitución del señor **Belford Melon**, y al hacerla efectiva impedía que el trabajador apelara esa decisión sin derecho

3

a una notificación previa, a pesar de que fue sancionado también con la suspensión de 30 días sin sueldo (fs. 8).

El demandante cita también el artículo 74 de la Constitución Nacional el que es del tenor siguiente:

> "Ningún trabajador podrá ser despedido sin justa causa y sin las formalidades que establezca Ley. Esta señalará las causas justas para el despido, sus excepciones especiales y la indemnización correspondiente".

De acuerdo al demandante la norma fue violada, porque la destitución de su mandante se dio sin las formalidades legales establecidas en la norma antes indicada (fs. 9).

Asimismo sostiene, que la Convención Colectiva de la Unidad Negociadora de los Empleados No Profesionales, vigente a la firma del Acuerdo Última Oportunidad, contenía disposiciones que garantizaban a los trabajadores el derecho de presentar quejas y arbitrajes, recogidos en el artículo 8, igualmente la Convención Colectiva vigente desde enero de 1997, establece los mismos parámetros en su artículo 9 (fs. 9).

Señala también como violado el artículo 322 de la Constitución Nacional, el cual es el tenor siguiente:

> "**ARTICULO 322**. La Autoridad del Canal de Panamá estará sujeta a un régimen laboral especial basado en un sistema de méritos y adoptará un Plan General de Empleo que mantendrá como mínimo, las condiciones y derechos laborales similares a los existentes al 31 de diciembre de 1999. A los Trabajadores y aquellos que deban acogerse a la jubilación especial en ese año cuyas posiciones se determinen necesarias de acuerdo a las normas aplicables, se les garantizará la contratación con beneficios y condiciones iguales a los que les correspondan hasta esa fecha.

4

App. 2045

La Autoridad del Canal de Panamá contratará,
preferentemente, a nacionales panameños. La Ley
Orgánica regulará la contratación de empleados
extranjeros garantizando que no rebajen las
condiciones o normas de vida del empleado panameño.
En consideración al servicio público internacional
esencial que presta el Canal, su funcionamiento no
podrá interrumpirse por causa alguna. Los conflictos
laborales entre los trabajadores del Canal de Panamá y
su Administración serán resueltos entre los
trabajadores o los sindicatos y la Administración,
siguiendo los mecanismos de dirimencia que se
establezcan en la Ley. El arbitraje constituirá la última
instancia administrativa".

De acuerdo al demandante esta norma resulta infringida ya que la misma
contiene los mecanismos legales que se deben seguir para dirimir los conflictos
laborales hasta agotar la vía administrativa, los cuales son vulnerados por el
Acuerdo de Última Oportunidad, el cual impide que el trabajador ejerza los
recursos de apelación, hasta llegar a la última instancia administrativa, que
seria un arbitraje, violándose la Convención Colectiva y dejando en estado de
indefensión al trabajador (fs. 12).

## OPINIÓN DE LA PROCURADURÍA DE LA ADMINISTRACIÓN

El Procurador de la Administración, mediante Vista Número 1275 de 16 de
septiembre de 2009 (fs.37-45), emitió concepto en el presente negocio
constitucional.

En la parte medular de su opinión, dicho funcionario   manifiesta lo
siguiente:

"...los actos que expide la Autoridad del Canal de Panamá,
dado su carácter de persona  jurídica autónoma de Derecho
Público, son actos administrativos  por naturaleza. Tanto asi,
que los laudos por medio de los cuales culminan los arbitrajes,
que de acuerdo con el artículo 322 de la Constitución Política

5

App. 2046

$8\backslash$

constituyen la última instancia administrativa de los mecanismos de dirimencia entre las diferencias surgidas entre trabajadores o los sindicatos  y la Autoridad, según el artículo 107 de la Ley 19 de 1997 pueden ser recurridos ante la Sala Tercera de la Corte Suprema de Justicia, siempre que concurran las condiciones señaladas en dicha norma para su impugnabilidad ante esta Sala.

En virtud  de tal circunstancia, esta Procuraduría es del criterio que la acción de inconstitucionalidad que ocupa nuestra atención no resulta viable porque la f·ase "en cuyo caso no podré apelar mi destitución", contenida en el punto 3 y en el punto 5 del denominado "Acuerdo de Última Oportunidad " cuya inconstitucionalidad se demanda, debió ser recurrida  por la vía de la jurisdicción Contencioso Administrativa, pues, de acuerdo a los propios argumentos planteados por los demandantes para sustentar su pretensión, la misma lesiona derechos subjetivos del trabajador demandante, y en todo caso, conforme indican, los derechos de una clase determinada de la sociedad panameña, constituida por quienes integran la fuerza laboral del Canal de Panamá, cuya relación de trabajo  con la institución está regida, por expreso mandato constitucional, por un sistema laboral especial, cuyas regulaciones y efectos no trascienden al resto de la clase trabajadora del país.

Por otro lado, resulta evidente que el Acuerdo de Última Oportunidad, dentro del cual se encuentra inmersa la frase demandada, no es un acto definitivo, ya que en dicho acuerdo no se decidió el despido del trabajador demandante, sino que se le concedió el beneficio de preservar su empleo durante el tiempo de vigencia del acuerdo y a conservarlo de manera definitiva, siempre y cuando hubiere cumplido las condiciones pactadas.

El acto definitivo de despido, que se materializaría por incumplir el trabajador las condiciones pactadas, le abriría al afectado la posibilidad de invocar el arbitraje como última instancia administrativa, según el artículo 322 de la Constitución Política, así como la oportunidad ·de impugnar ante la Sala Tercera de lo contencioso  Administrativo de la Corte Suprema, el laudo arbitral, con el cual concluiría dicho medio de

6

dirimencia de conflictos establecido en el artículo 107 de la Ley 19 de 1997" (fs. 41).

El funcionario consultado concluye que debe aplicarse  el llamado principio de preferencia de la via contencioso administrativa  sobre la constitucional. Indicando además, que el presente proceso carece de objeto porque al trabajador se le comunicó su despido mediante nota RHRL-08-19 de 22 de octubre de 2007, por lo que en la declaratoria  de inconstitucionalidad  se ha producido el fenómeno jurídico denominado sustracción de materia (fs. 42).


## FASE DE ALEGATOS

Dentro del término de publicación del edicto al que se refiere el artículo 2564 del Código Judicial, se recibieron argumentos escritos del licenciado **ALVARO CABAL DUCASA**, Vicepresidente de Asesoría Jurídica  de la Autoridad del Canal de Panamá, en representación del licenciado **ALBERTO ALEMÁN ZUBIETA**, Representante Legal de la Autoridad del Canal de Panamá, quien se opone a la declaratoria de inconstitucionalidad del Acuerdo de Última Oportunidad, argumentando que el demandante desconoce  que el constituyente, incorporó a la Constitución Política el Título XIV relativo al Canal de Panamá,  por lo que la ACP tiene  un régimen laboral especial, el cual da lugar por su especialidad algunas regulaciones excepcionales en materia laboral dentro del ordenamiento constitucional, las cuales se encuentran desarrolladas en la Ley Orgánica de la ACP y en los reglamentos que también por mandato constitucional expreso lo desarrollan  (fs. 54).

Agrega el letrado que el Acuerdo de Última Oportunidad, es un mecanismo de mediación, el cual no es un acto definitivo, concluyendo que dado el especial trabajo que se realiza en la ACP, los trabajadores están sujetos a reglas laborales diferentes contenidas en la Constitución y en la Ley 19 de 11 de junio de 1997 .


## DECISIÓN DE LA CORTE SUPREMA


7

Cumplidos los trámites procesales, pasa la Corte a resolver el fondo de esta controversia constitucional, no sin antes hacer alusión al Preámbulo de la Constitución Nacional, el cual preceptúa:

> "Con el fin supremo de fortalecer la Nación**; garantizar la libertad**; asegurar la democracia y la estabilidad institucional, exaltar la dignidad humana, promover la justicia social, el bienestar general y la integración regional, e invocando la protección de Dios, decretamos la Constitución Política de la República de Panamá" (subraya y resalta la Corte).

Es decir la Constitución Nacional, promulga el derecho de libertad que se materializa en diversas normas constitucionales como por ejemplo, los artículos 21 C. N. (libertad personal), 27 C. N. (libertad de tránsito y de locomoción); 35 C. N. (libertad de culto); 37 C. N. (libertad de pensamiento y expresión); 39 C. N. (libertad de asociación) y 40 C. N. (libertad de profesión u oficio).

Ese derecho a la libertad que garantiza el preámbulo de la Norma Fundamental, es el que le permite a la persona escoger y decidir. Es decir, un trabajador puede voluntariamente renunciar a algunos de sus derechos, sin desconfigurar o comprometer el núcleo esencial ce esos derechos, pero otra cosa es impedir que el trabajador ejerza esos derechos.

De igual manera, el artículo 79 de la Constitución Política, establece que:

> "Los derechos y garantías establecidos en este Capítulo serán considerados como mínimos a favor de los trabajadores".

Es decir, que tanto el preámbulo y el artículo 79, promulgan derechos de libertad y garantías mínimas a favor de la clase trabajadora y de cualquier persona, la cual tiene derecho a comparecer ante las instancias judiciales, de ser escuchada de acuerdo a sus pretensiones y recibir las respuestas de las autoridades encargadas de resolver los conflictos.

Como viene visto, el demandante considera que las frases "en cuyo caso no podré apelar" y "la renuncia a la notificación previa al despido", contenida en los

8

artículos 3 y 5 del "Acuerdo de Última Oportunidad, infringe el texto de los artículos 19, 32, 71, 74 y 322 de la Carta Magna, toda vez que, mediante el Acuerdo de Última Oportunidad se le impide al trabajador ejercer el recurso de apelación y por consiguiente se le niega su defensa, dejándolo en estado de indefensión.

El artículo 19 de la Constitución Nacional, establece: "No  habrá fuero ni privilegios ni discriminación por razón de raza, nacimiento, discapacidad, clases social, sexo, religión o ideas políticas". La  Corte ha plasmado en distintos fallos que la norma comentada:

> "no prohíbe que haya o se establezcan distinciones entre los habitantes del Estado. Lo que prohíbe, pues, es que haya distingos. Y esto nos lleva, por fin, a precisar este término.
>
> El distingo entraña una limitación o restricción injusta; un trato desfavorable para determinadas personas que, en principio, se hallan en la misma situación que otras que, sin embargo, reciben un trato favorable. El concepto de distingo SE IDENTIFICA, así, como el de discriminación, el cual, no obstante ser un neologismo quizá exprese mejor la idea que hemos tratado de explicar.
>
> Pues, el término discriminación, muy usado en otros idiomas, significa distinción injusta e injuriosa.
>
> Esto es, pues, lo que el artículo que examinamos prohíbe, o sea que las normas legales establezcan, o las autoridades públicas practiquen, un tratamiento desfavorable contra cualquier persona por la sola razón de su raza, nacimiento, clase social, sexo, religión o ideas políticas.
>
> Toda esta larga exposición nos lleva a concluir que el principio de la igualdad ante la Ley consiste, como ha dicho más de una vez la Corte Suprema de la Argentina, en que no se establezca excepciones o privilegios que excluyan a unos de los que se concede

9

a otros en iguales circunstancias". (C.S.J. Pleno, fallo de 27 de junio de 1996).

El elemento fundamental tanto en la norma que se impugna como en la disposición constitucional considerada transgredida, es la existencia o no de la igualdad de condiciones entre las personas. En este caso, la relación se da, entre el trabajador y la institución (empleadora), no obstante a ello, estamos en presencia de un acto individualizado, mediante el cual se le restringe el derecho al trabajador de presentar un recurso de apelación, por el despido.

Ello es contemplado en los artículos 3 y 5 del Acuerdo de Última Oportunidad, mecanismo utilizado por la Autoridad del Canal de Panamá, que tiene como base legal la Ley 19 de 11 de junio de 1997 y sus reglamentaciones, mediante la cual, la institución otorga una última oportunidad al trabajador que ha venido cometiendo faltas leves y graves de conformidad al Reglamento de Trabajo aprobado. En el caso particular, el señor **Eduardo Belford Melon**, fue sancionado con una suspensión de 30 días sin sueldo. Adicional a ello el trabajador firmó el Acuerdo de Última Oportunidad en el que renunciaba al derecho de apelar en caso de destitución, así como también, de ser notificado previamente del despido, el cual se haría efectivo, si en el transcurso de dos años, siguientes a la firma del Acuerdo, el trabajador cometiera alguna falta al Reglamento, impidiéndole que el trabajador apele o ejerza la vía para impugnar la medida de destitución. Para la Corte, esa condición no crea una desigualdad al tenor de la norma planteada (Derecho de Igualdad), toda vez que la igualdad a que se refiere la norma constitucional, atañe al derecho a no ser discriminado por razón de <u>sexo</u>, <u>clase</u> <u>social</u>, <u>raza</u>, <u>nacimiento</u>, <u>discapacidad</u>, y <u>religión</u>. En el caso concreto, nos encontramos con una relación de empleado y empleador en la que mal se puede atribuir como infringida la norma comentada, en vista de que no existe ese distingo por las razones contenidas en la norma constitucional, antes señalada.

De otra parte, el artículo 32 de la Constitución Política preceptúa: "nadie será juzgado sino por autoridad competente y conforme a los trámites legales, ni más de una vez por la misma causa penal, administrativa, policiva o disciplinaria".

10

$8^6$

Esta norma consagra el principio del debido proceso, el cual señala las pautas que deben seguirse para garantizarle el respeto de las garantías procesales y constitucionales consignadas en los textos constitucionales y legales a todo ciudadano.

El Pleno de la Corte Suprema de Justicia ha manifestado, vía jurisprudencia, mediante resoluciones de demandas de inconstitucionalidad similares, su criterio ante la alegada violación del principio constitucional del debido proceso, como es posible apreciar a través del fallo fechado 29 de octubre de 1984, el cual señala a tenor literal lo siguiente:

> "El artículo 32 instituye el principio del Debido Proceso que lo constituye un procedimiento regular ante un tribunal permanente legítimamente constituido y competente para juzgar y comprender el derecho a la jurisdicción, que es la facultad que tiene toda persona de recurrir ante los órganos jurisdiccionales del Estado en demanda de justicia, es también la facultad que tiene toda persona de tomar conocimiento de la pretensión deducida en su contra, de defender sus derechos, de contar con asistencia letrada, de aportar pruebas y de la observación de un procedimiento que establece la ley y de obtener una sentencia que oportunamente resuelva la causa...
>
> Habrá violación del artículo 32 cuando no se integra el tribunal conforme lo exige la ley, o cuando se ignore un traslado de ley, o cuando se haya ignorado un trámite de pruebas o de alegatos y en fin, cuando se dicte una sentencia que no sea consecuente de un determinado procedimiento."

Asimismo, en sentencia del Pleno de 13 de septiembre de 1996, expresó:

> "Durante el desarrollo de toda ésta actividad procesal ni las partes ni el juez están en libertad de encaminar el proceso en base a su particular arbitrio, sino que deben

11

87

ajustarse a las normas, reglas y principios preestablecidos, orientadores o rectores del proceso. Por ello, el ordenamiento jurídico, tanto constitucional como legal, se ha encargado de establecer los preceptos legales dentro de los cuales los sujetos procesales deben desplegar su actuación. En algunos casos, estas normas constituyen un deber u obligación para el juez, pero operan al mismo tiempo como una garantía para el derecho de defensa de las partes, tal como ocurre con las normas procesales que, entre otras, ordenan el traslado de la demanda, la práctica de pruebas, la celebración de la audiencia y la motivación de la sentencia.

Es así como el proceso está constituido por una serie de elementos dirigidos a asegurar la efectiva o adecuada defensa de las partes en el mismo. A estos elementos procesales se refiere el Doctor Arturo Hoyos en su interesante obra sobre el debido proceso, al indicar que "si se viola alguno de dichos elementos de tal manera que se afecte la posibilidad de las personas de defender efectivamente sus derechos (ya sea por violación del derecho a ser oído; por falta de la debida notificación, ausencia de bilateralidad, o contradicción del derecho a aportar pruebas; de la posibilidad de hacer uso de medio de impugnación contra resoluciones judiciales; falta total de motivación de éstas; tramitación de procesos no regulados mediante ley; pretermisión de una instancia; seguirse un trámite distinto al previsto en la ley -proceso monitorio en vez de uno ordinario; ejecución de sentencia en vez de proceso ejecutivo; notificación por edicto cuando debe ser personal; sentencia arbitraria que, por ejemplo, desconozca la cosa juzgada material-) ante tribunal competente, la sanción correspondiente será la nulidad constitucional" (HOYOS, Arturo. El Debido Proceso. Editorial Temis, S. A. Santa Fe de Bogotá. 1995. Págs. 89-90).

12



Es importante agregar, que, en numerosos precedentes, el Pleno de la Corte Suprema de Justicia ha sostenido que la violación del debido proceso únicamente ocurre cuando se desconocen o pretermiten trámites esenciales del proceso que, efectivamente, conlleven a la indefensión de los derechos de cualquiera de las partes.

En resumen, la garantía del debido proceso legal implica la existencia previa de una serie de normas que regulan el proceso y cuya observancia por parte del juez o tribunal es indispensable para asegurar a las partes la adecuada defensa de sus derechos".

En ese orden de ideas, para la Corte las frases impugnadas en el Acuerdo de Última Oportunidad, resultan violatorias de la norma antes señalada por las siguientes consideraciones:

a). Se impide al trabajador que ejerza el medio impugnativo de doble instancia, al prohibirle que recurra en apelación contra la medida de destitución.

b). Es un derecho de toda persona de ser sometido a los trámites legales, sin restringirle ningún derecho, pues en todo caso será la autoridad que revise la actuación quien decidirá finalmente si el despido es justificado o no.

c). El Acuerdo de Última Oportunidad, fue impuesto al trabajador pese a que se le había aplicado una sanción consistente en 30 días de suspensión de su salario.

Por tanto, a juicio de la Corte, las frases acusadas de inconstitucional, crean una desventaja para ese trabajador, pues limita su derecho de defensa o el derecho que tiene de ser escuchado en iguales condiciones, por la autoridad vertical que dirima la controversia. Y es que no puede obligarse a una persona ha declinar o sucumbir ante un derecho que le otorga la Constitución Nacional, ante un acto administrativo o jurisdiccional.

En ese orden de ideas, el Dr. Arturo Hoyos, en su obra El Debido Proceso, expresó:

"Lo que impide este aspecto de la garantía constitucional del debido proceso es que, sin facultad legal, un funcionario judicial o

13

administrativo diseñe un procedimiento in toto o partes importantes de él, pretendiendo sustituir por su mera voluntad la regulación legal del proceso, y en todo caso, a nuestro juicio, también excluiría una ley que autorice a un funcionario para que regule todo lo relacionado con un proceso mediante un acto reglamentario. Las formalidades esenciales del proceso siempre deberán establecerse mediante ley." (HOYOS, Arturo.    El Debido Proceso. Editorial Temis, S. A., Colombia, 1996, págs. 60-61).

De igual manera, precisa recordar que Panamá, mediante Ley 15 de 1977, ratificó **La Convención Americana de Derechos Humanos o Pacto de San José** suscrita en la Conferencia Especializada Interamericana sobre Derechos Humanos, en  San José, Costa Rica en 1969.

En tal empeño, el   Artículo 8 de la Convención preceptúa:  Garantías Judiciales

> 1. Toda persona tiene derecho a ser oída, con las debidas garantías y dentro de un plazo razonable, por un juez o tribunal competente, independiente e imparcial, establecido con anterioridad por la ley, en la sustanciación de cualquier acusación penal formulada contra ella, o para la determinación de sus derechos y obligaciones de orden civil, laboral, fiscal o de cualquier otro carácter.
> 2. Toda persona inculpada de delito tiene derecho a que se presuma su inocencia mientras no se establezca legalmente su culpabilidad.  Durante el proceso, toda persona tiene derecho, en plena igualdad, a las siguientes garantías mínimas:
> ....,
> h) **derecho de recurrir del fallo ante juez o tribunal superior.** ..." (Resalta y Subraya el Pleno).

En sentencia de 19 de marzo de 1991, bajo la ponencia del Magistrado Arturo Hoyos, el Pleno expresó que el artículo 8 de la Convención Americana de

14

90

Derechos Humanos integra un bloque de constitucionalidad conjuntamente con el artículo 32 de la Constitución, en cuanto se refiere a la garantía constitucional del debido proceso, con el fin de ampliar un derecho fundamental que es esencial para el fortalecimiento del Estado de Derecho.

Así también, en sentencia de 30 de julio de 1990, la Corte Suprema de Justicia señaló:

> "existe un conjunto normativo que integra, con la Constitución, un bloque de constitucionalidad que sirve a la Corte como parámetro para emitir un juicio sobre la constitucionalidad de una norma jurídica o acto sujeto al control judicial de constitucionalidad' Integran este conjunto las normas formalmente constitucionales; la doctrina constitucional sentada en las sentencias de la Corte Suprema de Justicia, siempre que sea compatible con el Estado de Derecho y sin perjuicio de la potestad de la Corte de variar la doctrina cuando exista justificación suficiente para ello; algunos Convenios internacionales ratificados por la República de Panamá; la costumbre constitucional, siempre que no contraríe el texto de la Constitución; y las normas de la Constitución derogada de 1946 con respecto a actos expedidos y que surtieron sus efectos durante la vigencia de dicha Constitución. ...."

En efecto, el artículo 8 de la Convención Americana de Derechos Humanos forma parte del Bloque de Constitucionalidad, en cuanto al debido proceso, y, los artículos 3 y 5 del Convenio de Última Oportunidad, le coartan el derecho de impugnar la resolución de despido, contrariando así la norma antes citada, pues es un derecho constitucional, el ser sometido a un proceso en el cual, pueda ejercitar todas las acciones tendientes a proteger su derecho, y el acto de notificación, así como el recurso de apelación son garantías que tiene que ser respetadas no sólo por los funcionarios públicos, sino también por la empresa privada, ya que lo que se tutela aquí es el derecho a defenderse, dentro de un proceso en igualdad de condiciones, garantizando los recursos que tenga a bien accionar el activador judicial.

De igual forma, el artículo 25 de la mencionada Convención Americana de Derechos Humanos preceptúa:

15

### Articulo 25. Protección Judicial

1. Toda persona tiene derecho a un recurso sencillo y rápido o a cualquier otro recurso efectivo ante los jueces o tribunales competentes, que la ampare contra actos que violen sus derechos fundamentales reconocidos por la Constitución, la ley o la presente Convención, aun cuando tal violación sea cometida por personas que actúen en ejercicio de sus funciones oficiales.

2. Los Estados Partes se comprometen:

a) a garantizar que la autoridad competente prevista por el sistema legal del Estado decidirá sobre los derechos de toda persona que interponga tal recurso;

b) a desarrollar las posibilidades de recurso judicial, y

c) a garantizar el cumplimiento, por las autoridades competentes, de toda decisión en que se haya estimado procedente el recurso.

Así tenemos que la norma antes mencionada tutela el derecho a la justicia, es decir, a interponer un recurso judicial, que le permita defender sus derechos, lo cual encuentra asidero en el artículo 32 de la Constitución Nacional, que consagra el derecho a ser juzgado por un tribunal, independiente e imparcial; lo cual le es negado al trabajador al impedírsele presentar un recurso de apelación, restricción que le coarta el derecho a ser escuchado, y que se resuelvan sus pretensiones en consonacia con la ley y la Constitución Nacional de la República.

En relación a la violación del artículo 71 de la Constitución Nacional, tenemos que al resolver un caso similar, en el que se esbozó la violación del artículo 67 de la Constitución (hoy artículo 71), el Pleno de esta Corporación, en la resolución de 25 de enero de 2001, acotó lo siguiente:

> "También el amparista denuncia la
> violación del artículo 67 de la
> Constitución, no obstante, este precepto
> se refiere a la nulidad de los convenios de
> trabajo que contengan estipulaciones que
> impliquen renuncia, disminución,

16



> adulteración o dejación de algún derecho
> reconocido a favor del trabajador y la
> inconformidad del demandante radica en
> que el juzgador laboral consideró que la
> relación de trabajo...era por tiempo
> definido y no indefinido como aducía el
> amparista estableciendo las prestaciones
> en base a ello.

En ese orden de ideas, para la Corte es evidente que las restricciones impuestas en el Acuerdo de Última Oportunidad, infringen la norma constitucional ut supra citada, debido a que incluye la renuncia del trabajador al derecho de apelar y lograr una revisión del despido, así como el derecho que tiene a ser notificado de la medida de destitución en su contra, pues esos son derechos que tiene toda persona, en este caso el trabajador, de acceder a la justicia. Por tanto, no puede la autoridad administrativa crear mecanismos legales que no se encuentren regulados en la ley, en otras palabras la labor de la creación de leyes le compete al legislador, en consecuencia, mal podría la autoridad administrativa mediante un acuerdo de última oportunidad restringir derechos constitucionales que le corresponden a cada sujeto de derecho. Y es que la Corte aclara de inmediato que no se trata de que la medida del Acuerdo de Última Oportunidad, no sea un medio eficaz de resolver las controversias de los trabajadores de la Autoridad del Canal, sino que se trata de las cláusulas contenidas en el mismo, las que son violatorias de la Constitución Política, pues le corresponderá al trabajador, si ejercita un recurso de apelación, si se somete a arbitraje de conformidad a la regulación de esa entidad, pero mal puede la Autoridad del Canal de Panamá, incluir cláusulas que menoscaben los derechos de los trabajadores en ese acuerdo de Ultima Oportunidad, tales como los acusados de inconstitucionales, **referentes a no ser notificado del despido y de abstenerse de apelar la medida.**

Asimismo, considera la Corte que el artículo 74 Constitucional, que establece: "Ningún trabajador podrá ser despedido sin justa causa y sin las formalidades que establezca Ley. Esta señalará las causas justas para el despido, sus excepciones especiales y la indemnización correspondiente", resulta violado por las frases contenidas en el Acuerdo de Última Oportunidad, puesto que tal como se ha expuesto en líneas anteriores, este acuerdo, limita el derecho de defensa y de

17

$q^3$

notificación que le asiste al trabajador de ser escuchado y, de manera tal, sea revisada sus destitución por las autoridades administrativas de la Autoridad del Canal de Panamá, y los tribunales de Justicia.

En efecto, el Acuerdo de Última Oportunidad y aunque se indique que fue voluntario, existe un elemento objetivo que demuestra que no hubo voluntad: el trabajador tuvo que escoger seguir trabajando o no, renunciando derechos que solo pueden ser renunciados voluntariamente, violándose así la libertad que la Constitución Nacional pretende garantizar, por tal razón los artículos 3 y 5 del Acuerdo de Última Oportunidad, colisionan con el preámbulo de nuestra Constitución.

Por otra parte, en lo concerniente a la violación del artículo 322 de la Constitución Nacional, podemos precisar, que la norma no resulta violada, pues la misma establece que "Los conflictos laborales entre los trabajadores del Canal de Panamá y su Administración serán resueltos entre los **trabajadores o los sindicatos y la Administración, siguiendo los mecanismos de dirimencia que se establezcan en la Ley. El arbitraje constituirá la última instancia administrativa.** En efecto, la norma tutela derechos mínimos, y como quiera que fue la autoridad nominadora quien emitió el Acuerdo de Última Oportunidad, el mismo no colisiona con la norma, habida cuenta de que es una regulación o mecanismo utilizado por la Autoridad del Canal de Panamá, para dirimir los conflictos laborales que surjan con sus empleados.

Ahora bien, es importante precisar que el artículo 2573 del Código Judicial señala que las decisiones de la Corte proferidas en materia de inconstitucionalidad son finales, definitivas, obligatorias y no tienen efecto retroactivo. Sin embargo, resulta importante tener presente que el tema del "efecto retroactivo" de la decisión constitucional, ha sido debatido y tratado en diversos precedentes judiciales, siendo los de mayor amplitud las resoluciones judiciales de 3 de agosto de 1990 y 4 de junio de 1991, y en estas medidas se estableció la posición que la irretroactividad de los efectos de la declaratoria de inconstitucionalidad, sólo aplica tratándose de normas legales.

En los citados antecedentes judiciales, se consideró que:

18

"Tratándose de normas legales, no queda entonces la menor duda de que (sic) las decisiones de la Corte en materia constitucional no producen efectos retroactivos. Sin embargo, la Constitución Nacional, en su artículo 204, permite que se pueda demandar la inconstitucionalidad de actos jurisdiccionales. (Salvo los fallos de la Corte Suprema o de sus Salas) que normalmente se agotan con la ejecución de los mismos y no continúan rigiendo...

Si se permite que un acto jurisdiccional pueda ser demandado como inconstitucional, es obvio que puede ser declarado inconstitucional. Sostener que la decisión de la Corte en estos casos no produce efecto retroactivo y que sólo produce efectos hacia el futuro, traería como consecuencia que la declaratoria de inconstitucionalidad sea totalmente intrascendente, inocua...

Si las normas legales se derogan por inconstitucionales, los actos jurisdiccionales deben declararse nulos, por inconstitucionales. Se produce entonces una Nulidad Constitucional, como consecuencia de la violación de normas constitucionales por un acto jurisdiccional" (Registros Judiciales de agosto de 1990 y junio de 1991, págs.36 y 19-20, respectivamente).

En otro precedente judicial, la Corte reiteró el criterio antes planteado, en los siguientes términos:

"...la declaratoria de inconstitucionalidad de las decisiones jurisdiccionales tienen como efecto jurídico la nulidad constitucional de la resolución impugnada. Ello quiere decir, tal como lo ha señalado con antelación este alto tribunal, que la decisión declarada inconstitucional debe ser reemplazada dentro del proceso, si a bien hubiere lugar, por otra resolución

19

95

acorde con el ordenamiento jurídico y con la sentencia
de inconstitucionalidad proferida por la Corte
Suprema...¿De qué le serviría una declaratoria de
inconstitucionalidad si ella no tuviere efectos dentro del
proceso en que se dicta?" (Registro Judicial de junio de
1992, págs.130-131).

En posturas jurisdiccionales más recientes, se ha dicho que:

"...la jurisprudencia de la Corte Suprema de Justicia ha
cambiado, dentro de la jurisdicción constitucional
objetiva...al otorgarle a las sentencias efectos
retrospectivos o ex-tunc, sobre todo en actos
individualizados que presenten características
especiales o cuando exista un perjuicio actual de
derechos subjetivos" (Cfr. Registro Judicial de abril de
1998, pág.112 y sentencia del Pleno de la Corte de 31
de mayo de 2002).

Ante ese escenario, se hace necesario, tratándose de un acuerdo de Última
Oportunidad, mediante el cual se restringió el derecho del trabajador de ser
notificado y de interponer los recursos legales ante las instancias administrativas,
así como el arbitraje, medida que contempla la Autoridad del Canal de Panamá,
procede la Corte ha decretar su **retroactividad.**

Por las consideraciones que vienen expuestas, el **PLENO DE LA CORTE
SUPREMA** administrando justicia en nombre de la República y por autoridad de la
ley **DECLARA QUE SON INCONSTITUCIONALES**, las frases, "en cuyo caso no
podré apelar" y "sin notificación previa", contenida en los numerales 3 y 5 del
"Acuerdo de Última Oportunidad", suscrito por la Directora de Recursos Humanos
de la Autoridad del Canal de Panamá (ACP), **Ana   María Chiquilani** y el señor
**Eduardo Belford Melon**, el 28 de septiembre de 2005, por considerar que  es
violatorio de los artículos 32, 71 y 74 de la Constitución Política de Panamá; **DEJA
SIN SUSTENTO LEGAL** toda gestión procesal o jurídica que haya resultado de la

20

consideración del despido del trabajador, y **ORDENA** la restitución del proceso laboral, hasta la medida de destitución realizada mediante Nota RHRL-08-09 de 2007 de 22 de octubre de 2007, al estado original en el que se encontraba, previo a la materialización de las cláusulas contenidas en el Acuerdo de Última Oportunidad.

Notifíquese, Cúmplase y Publíquese en la Gaceta Oficial ,

HARRY A. DÍAZ
Magistrado

LUIS R. FÁBREGA S.
Magistrado

JERÓNIMO MEJÍA E.
Magistrado
con voto razonado

HARLEY MITCHELL D.
Magistrado

ABEL AUGUSTO ZAMORANO
Magistrado

OYDEN ORTEGA DURÁN
Magistrado

GABRIEL E. FERNÁNDEZ
Magistrado

VICTOR L. BENAVIDES
Magistrado

HERNÁN A. DE LEÓN BATISTA
Magistrado

MANUEL CALVO
Sub-Secretario General

21

**194-09**  **PONENTE: MGDO. HARRY DIAZ**  $q6$

**ACCION DE INCONSTITUCIONALIDAD PRESENTADA POR EL LICENCIADO JOSE ANTONIO MONCADA, CONTRA LA FRASE "EN CUYO CASO NO PODRÉ APELAR MI DESTITUCION" CONTENIDA EN EL PUNTO 3 DEL ACUERDO DE ULTIMA OPORTUNIDAD FIRMADO ENTRE LA AUTORIDAD DEL CANAL DE PANAMA Y EDUARDO BELFORD MELON.**

### VOTO RAZONADO DEL
### MAGISTRADO JERÓNIMO MEJÍA

Estoy de acuerdo con la decisión que **DECLARA QUE SON INCONSTITUCIONALES** las frases *'en cuyo caso no podré apelar'* y *'sin notificación previa'* contenidas en los numerales 3 y 5 del Acuerdo de última oportunidad, suscrito por la Directora de Recursos Humanos de la Autoridad del Canal de Panamá (ACP) de 28 de septiembre de 2005, que **DEJA SIN SUSTENTO LEGAL** toda gestión procesal o jurídica que haya resultado de la consideración del despido del trabajador, y **ORDENA** la restitución del proceso laboral, hasta la medida de destitución realizada mediante Nota RHRL-08-09 de 2007 de 22 de octubre de 2007, al estado original en el que se encontraba, previo a la materialización de las cláusulas contenidas en el Acuerdo de Última Oportunidad.

Sin embargo, estimo que el acto recurrido no vulnera el artículo 32 de la Constitución que consagra la garantía del debido proceso, sino que desconoce el artículo 74 de la Constitución y el preámbulo constitucional que expresan:

> Art. 74. Ningún trabajador podrá ser despedido sin justa causa y **sin las formalidades que establezca la Ley**. Esta señalará las causas justas para el despido, sus excepciones especiales y la indemnización correspondientes. ".(Las negritas y subrayas son mías).

> Preámbulo. "Con el fin supremo de fortalecer la Nación, **garantizar la libertad**, asegurar la democracia y la estabilidad institucional , exaltar la dignidad humana, promover la justicia social, el bienestar general y la integración regional, e invocando la protección de Dios, decretamos la Constitución Política de la República de Panamá".(El destacado y subrayado son míos).

97

A mi parecer, el artículo 74 se infringe porque el acuerdo impugnado lleva al trabajador a **aceptar una destitución futura, sin que se sigan las formalidades legales para tal efecto**.

Del mismo modo, considero que las cláusulas que se declaran inconstitucionales, vulneran el **derecho de libertad** que garantiza el preámbulo constitucional y que se materializa en diversas normas constitucionales como, por ejemplo, los artículos 21 C.N. (libertad personal); 27 C.N. (libertad de tránsito y de locomoción); 35 C.N. (libertad de culto); 37 C.N. (libertad de pensamiento y de expresión); 39 C.N. (libertad de asociación) y 40 C.N. (libertad de profesión u oficio). Ese derecho a la libertad que garantiza el preámbulo de la Norma Fundamental, es el que le permite a la persona escoger y decidir.

Desde luego, un trabajador puede voluntariamente renunciar algunos de sus derechos, sin desconfigurar o comprometer su núcleo esencial.

En este caso, se trata de un Acuerdo de Última Oportunidad y por más que se señale que fue voluntario, existe un elemento objetivo que demuestra que no hubo tal voluntad: el trabajador tuvo que escoger seguir trabajando o no, renunciando derechos que solo pueden ser renunciados voluntariamente. Desde ese punto de vista, no se viola el debido proceso, sino **la libertad** y la libertad es lo que la Constitución Nacional **pretende garantizar** conforme al preámbulo. De ahí que se viola uno de los pilares que fundamenta la Constitución Nacional.

Por las razones expuestas, hago este voto razonado.

Fecha *ut supra*,

**MGDO. JERÓNIMO MEJÍA E.**

**MANUEL CALVO**
**Sub- Secrétario General**
LO ANTERIOR ES FIEL COPIA
DE SU ORIGINAL

2

# EXHIBIT E

77



**REPÚBLICA DE PANAMÁ**
**ÓRGANO JUDICIAL**

**CORTE SUPREMA DE JUSTICIA. –PLENO– PANAMÁ,**
**VEINTINUEVE (29) DE AGOSTO DE DOS MIL CATORCE (2014).**

**V I S T O S:**

Procedente del Despacho del Administrador General de la Autoridad de los Recursos Acuáticos de Panamá, la Secretaria General de la Corte Suprema de Justicia ha recibido tres cuadernillos que contienen las Advertencias de Inconstitucionalidad presentada por el Licenciado Jaime Franco Pérez, actuando en nombre y representación de Fotis Lymberopulos, representante legal de las Sociedades AMERICA TOWER I CORP. y JULIE L. S.A.; y en nombre y representación de Dionisio Lymberopulos, representante legal de la Sociedad PESCATUN PANAMÁ S.A., contra el Artículo 21, numeral 10 de la Ley Nº 44 de 23 de noviembre de 2006, que crea la Autoridad de los Recursos Acuáticos de Panamá, unifica las distintas competencias sobre los recursos marino-costeros, la acuicultura, la pesca y las actividades conexas de la administración pública y dicta otras disposiciones.

Cabe indicar que en Resolución de fecha veintisiete (27) de julio del 2011, se ORDENÓ acumular el expediente contentivo de la ADVERTENCIA DE INCONSTITUCIONALIDAD propuesta por el Dr. JAIME FRANCO PÉREZ, en nombre y representación de PESCATUN

2

PANAMÁ, S.A., dentro del proceso de Solicitud de Renovación de

Licencia de Pesca de la M/N "TUNAPESCA", en la Autoridad de

Recursos Acuáticos de Panamá, (Exp. 611-11), bajo la ponencia del

Magistrado WINSTON SPADAFORA FRANCO, y la ADVERTENCIA DE

INCONSTITUCIONALIDAD propuesta por el Dr. JAIME FRANCO PÉREZ,

en nombre y representación de JULIE L. S.A., dentro del proceso de

Solicitud de Renovación de Licencia de Pesca de la M/N "JULIE L.", en

la Autoridad de Recursos Acuáticos de Panamá, bajo la ponencia del

Magistrado HARRY A. DIAZ (Exp. 612-11, a la ADVERTENCIA DE

INCONSTITUCIONALIDAD propuesta por el Dr. JAIME FRANCO PÉREZ,

en nombre y representación de AMERICA TOWER I CORP., dentro del

proceso de Solicitud de Renovación de Licencia de Pesca de la M/N

"TUNAMAR", en la Autoridad de Recursos Acuáticos de Panamá, para

que se declare inconstitucional el numeral 10 del artículo 21 de la Ley

N° 44 de 23 de noviembre de 2006 "Que crea la Autoridad de los

Recursos Acuáticos de Panamá", identificado con la Entrada N° 610-

11, bajo la ponencia del Magistrado OYDÉN ORTEGA DURÁN.

**NORMA LEGAL ADVERTIDA DE INCONSTITUCIONALIDAD.**

El texto legal cuya constitucionalidad se cuestiona se encuentra

contenido en el numeral 10 del Artículo 21 de la Ley 44 de 23 de

noviembre de 2006, que es del tenor siguiente:

> **"Artículo 21.** Son funciones del Administrador
> General:
>
> 1. ...
> 2. ...
>
> ...
>
> 10. Autorizar la aprobación, modificación,
> revocación y anulación de los permisos, las
> licencias y las autorizaciones, relativos a la
> pesca, la acuicultura y al manejo marino-

3

costero, en los términos de las disposiciones
jurídicas y administrativas aplicables, así como
autorizar la sustitución de sus titulares, en su
caso, mediante las direcciones generales
respectivas, de acuerdo con la presente Ley."

## TEXTOS CONSTITUCIONALES QUE SE ESTIMAN VIOLADOS

Advierte el Licenciado Jaime Franco Pérez, que el Artículo 21,

numeral 10 de la Ley No. 44 de 23 de noviembre de 2006, vulnera el

Artículo 32 de la Constitución Política de la República, que dispone lo

siguiente:

> **ARTICULO 32.** Nadie será juzgado, sino por
> autoridad competente y conforme a los
> trámites legales, y no más de una vez por la
> misma causa penal, administrativa, policiva o
> disciplinaria.

El demandante sustenta que la norma impugnada quebranta el

artículo 32 de la Carta Fundamental en razón de la interpretación que

da a dicha norma el señor Administrador General de la Autoridad de

los Recursos Acuáticos de Panamá.

Manifestó el Activador Constitucional que de acuerdo al

contenido del Memorándum No. DA-05313-2011 de 19 de abril de

2011 proferido por el señor Administrador General de la ARAP el

artículo 21, numeral 10 de la Ley No. 44 de 23 de noviembre de 2006,

lo faculta para ordenar a una subalterna (en ese entonces la Directora

de Ordenación y Manejo Integral) se abstenga de acceder a la solicitud

de renovación de pesca de las naves JULIE L y TUNAMAR, lo que se

hace extensivo a la solicitud presentada igualmente en el caso de la

nave TUNAPESCA, lo que es abiertamente una interpretación que viola

el derecho constitucional que resguarda el debido proceso en todo tipo

de actuación de una autoridad pública.

4

70

Indica el Demandante que la norma debe entenderse en otro contexto y debe ser interpretada en concordancia con lo dispuestó en la Resolución ADM No. 1791 de 20 de diciembre de 2001, proferida por el Administrador de la autoridad Marítima de Panamá que en su artículo quinto señala que la renovación de la licencia de pesca internacional será inmediata y su trámite no deberá exceder los 15 días hábiles desde su presentación, dependiendo que se cumplan los requisitos establecidos para este trámite.

El Activador Constitucional manifestó que en el expediente consta el trámite administrativo Memorándum DA-0513-2011 de 19 de abril de 2011, suscrito por el Administrador General de la Autoridad de los Recursos Acuáticos de Panamá dirigido a la Directora de Ordenación y Manejo Integral de la entidad en la que se señaló lo siguiente:

> "Sea la presente portadora de efusivos saludos.
> Con respecto a la solicitud de renovación de
> licencia de pesca interpuesta por los apoderados
> legales de la naves JULIE Y TUNAMAR, tengo a
> bien informarle que estas dos (2) naves, aun
> aportando los requisitos formales, se
> encuentran dentro de un listado internacional de
> naves que realizan la pesca no declarada y no
> reglamentada. Las mismas incumplen el Código
> de Conducta de Pesca Responsable según
> Resuelto ARAP No. 003 del 18 de noviembre de
> 2009. Le es igualmente aplicable el Acuerdo de
> 1995, ley 64 del 29 de octubre de 2008" Criterio
> de precaución" en donde se establecen políticas
> de inspección y seguimiento a las naves en
> pesca no declarada y no reglamentada, donde
> basta la denuncia para abrir un proceso y
> sancionar.     Incumplen lo establecido en la
> CONVEMAR (ley 64 de 29 de octubre de 2008)
> en lo relacionado a las organizaciones y arreglos
> subregionales o regionales de organización
> pesquera e incumplen con lo establecido en la
> Resolución ADM 1791 de 20 de diciembre de
> 2001 en la que define pesca ilegal, pesca no

5

declarada y pesca no reglamentada (Pesca INDR).

Por lo tanto, en concordancia con el artículo 21, numeral 10 de la ley 44 de 23 de noviembre de 2006, le instruyo se abstenga de acceder a la solicitud de renovación de pesca de las naves JULIE L Y TUNAMAR."

Señaló el demandante que de acuerdo a las instrucciones contenidas en este memorándum se puede apreciar claramente que la ARAP pretende mezclar un proceso administrativo con otro distinto. Que en todo caso debió haberse pronunciado acerca de la solicitud de renovación y si no se cumplía con alguno de los requisitos exigidos entonces negar la petición, pero lo que se ha hecho es detener ilegalmente el trámite sin dar contestación y justificar con unas supuestas violaciones esta actuación.

## OPINIÓN DE LA PROCURADURÍA DE LA NACIÓN

En cumplimiento del mandamiento legal, correspondió al Procurador General de la Nación exteriorizar la posición del Ministerio Público, dentro de la presente Advertencia de Inconstitucionalidad.

El representante del Ministerio Fiscal es del criterio que la norma atacada no es inconstitucional, para lo cual sustenta su tesis en los siguientes argumentos:

"Luego de analizados los hechos de la presente advertencia de inconstitucionalidad no queda claro en qué consiste la alegada infracción del artículo 32 de la Constitución que ocasiona el numeral 10 del artículo 21 de la Ley N° 44 de 23 de noviembre de 2006. Es sabido que esta disposición constitucional se circunscribe a establecer uno de los postulados más importantes para el ejercicio de la tutela judicial efectiva en cualquier tipo de procesos, incluyendo el proceso administrativo que es la naturaleza del que ha sido objeto de esta advertencia. Conocido este principio como el

6

$7^2$

debido proceso adjetivo, se refiere a la
necesidad de que en todo juicio o proceso se
garantice el derecho de defensa y la
oportunidad de designar abogado, presentar
pruebas y contradecir las aportadas por la
contraparte así como el derecho de impugnar
las decisiones de autoridad que le son contrarias
a la parte que se considera afectada. Ninguno
de estos postulados se señala como conculcado
por el activador procesal de la citada
advertencia."



Finalizó indicando el Procurador General de la Nación que: "Las
explicaciones del demandante no permiten determinar con certeza ni
claridad en qué forma esta disposición viola este principio
constitucional que, en síntesis, tiene como fin asegurar la efectiva
defensa de las partes dentro de un proceso de la clase que fuera."

## EXAMEN DE LA CAUSA Y DECISIÓN DEL PLENO

La inconformidad del advirtiente descansa en que a su juicio el
Artículo 21 numeral 10 de la Ley No 44 de 23 de noviembre de 2006,
viola el Artículo 32 de la Constitución Política, en razón de la
interpretación que a dicha norma da el Señor Administrador General
de la Autoridad de los Recursos Acuáticos de Panamá. Que de acuerdo
al contenido del Memorándum No. DA-05313-2011 de 19 de abril de
2011 proferido por el señor Administrador General de la ARAP el
Artículo 21, numeral 10 de la Ley No 44 de 23 de noviembre de 2006,
lo faculta para ordenar a una subalterna, se abstenga de acceder a la
solicitud de renovación de pesca de las naves, JULIE y TUNAMAR, lo
que se hace extensivo a la solicitud presentada igualmente en el caso
de la nave TUNASPECA, lo que es abiertamente una interpretación que
viola el derecho constitucional que resguarda el debido proceso en
todo tipo de actuación de una autoridad pública.

7

$?^3$

En tanto que, el Procurador General de la Nación al emitir
concepto sobre la Advertencia de Inconstitucionalidad presentada
señaló que las explicaciones del demandante no permiten determinar
con certeza ni claridad en qué forma el numeral 10 del Artículo de la
Ley No 44 de 23 de noviembre de 2006 viola el Principio Constitucional
del debido Proceso.

De lo expuesto en los párrafos que anteceden se desprende que
el Artículo atacado como inconstitucional es el artículo 21, numeral 10
de la Ley No. 44 de 23 de noviembre de 2006, "Que crea la Autoridad
de los Recursos Acuáticos de Panamá, unifica las distintas
competencias sobre los recursos marino-costeros, la acuicultura, la
pesca y las actividades conexas de la administración pública y dicta
otras disposiciones". El referido Artículo establece lo siguiente:

> **Artículo 21.** "Son funciones del
> Administrador General:
> 1. ...
> 2. ...
> 10. Autorizar la aprobación, modificación,
> revocación y anulación de los permisos, las
> licencias y las autorizaciones, relativos a la
> pesca, acuicultura y al manejo marino-costero,
> en los términos de las disposiciones jurídicas y
> administrativas aplicables, así como autorizar
> la sustitución de sus titulares, en su caso,
> mediante las direcciones generales respectivas,
> de acuerdo con la presente Ley.

Conforme al Artículo transcrito le corresponde a la Administrador
General de   la Autoridad de los Recursos Acuáticos de Panamá
"autorizar la aprobación, modificación, revocación y anulación de los
permisos, licencias y autorizaciones relativas a la pesca, acuicultura y
el manejo marino-costero". De igual forma, lo faculta a sustituir en

8

$94$

determinados casos a los titulares de los permisos, licencias y

autorizaciones, conforme a lo establece la Ley.

Ahora bien, la disconformidad del Accionante se centró en una

infracción al Principio del debido Proceso, contenido en el Artículo 32

de la Constitución. Al respecto es importante mencionar lo que el

Doctor Arturo Hoyos ha señalado en cuanto al Garantía Constitucional

del debido Proceso:

> "La garantía del debido proceso que incorpora
> la Constitución Política en su artículo 32, es
> como ha puntualizado el Magistrado ARTURO
> HOYOS, "una institución instrumental en virtud
> de la cual debe asegurarse a las partes en todo
> proceso -legalmente establecido y que se
> desarrolle sin dilaciones injustificadas-
> oportunidad razonable de ser oídas por un
> tribunal competente, predeterminado por la
> ley, independiente e imparcial, de pronunciarse
> respecto de las pretensiones y manifestaciones
> de la parte contraria, de aportar pruebas lícitas
> relacionadas con el objeto del proceso y de
> contradecir las aportadas por el contraparte,
> de hacer uso de los medios de impugnación
> consagrados por ley contra resoluciones
> judiciales motivadas y conformes a derecho, de
> tal manera que las personas puedan defender
> efectivamente sus derechos" (HOYOS, Arturo.
> "El Debido Proceso, Editorial Temis, S. A..
> Santa Fé de Bogotá-Colombia, 1996, pág.54)".

Esta Superioridad es del criterio que el Artículo 21 numeral 10 de

la Ley No 44 de 23 de noviembre de 2006, no violenta el Artículo 32

de la Constitución, toda vez que el mismo sólo otorga al Administrador

General de la Autoridad de los Recursos Acuáticos de Panamá, la

facultad de autorizar la aprobación, modificación, revocación y

anulación de los permisos, las licencias y las autorizaciones, relativos

a la pesca, acuicultura y al manejo marino-costero, así como sustituir

9

a los titulares de los respectivos permisos, licencias y autorizaciones, en determinados casos.

Vale destacar que la Ley N° 44 de 23 de noviembre de 2006, establece en el Artículo 37 que la Dirección General de Ordenación y Manejo Integral tendrá como función "otorgar, modificar, revocar y anular los permisos, las licencias y las autorizaciones, relativos a la pesca a la acuicultura y al manejo marino-costero, en los términos de las disposiciones jurídicas y administrativas aplicables, así como autorizar la sustitución de sus titulares, en su caso."

Conforme al numeral 10 del Artículo 21 y el 37 de la referida Ley No 44 del 2006, le corresponde al Director General de Ordenación y Manejo Integral previa autorización del Administrador General de la Autoridad de los Recursos Acuáticos de Panamá, otorgar, modificar, revocar y anular los permisos, las licencias y las autorizaciones, relativos a la pesca a la acuicultura y al manejo marino-costero, así como autorizar la sustitución de sus titulares.

En este orden de ideas, conviene indicar que el Accionante manifestó que el numeral 10 del Artículo 21 de la Ley N° 44 del 23 de noviembre de 2006, quebranta el Artículo 32 Constitucional, en razón de la interpretación que el Administrador General de la Autoridad de los Recursos Acuáticos de Panamá le da a la norma, puesto que de acuerdo al Memorando No. DA-05313-2011 de 19 de abril de 2011, emitida por el Administrador General de la ARAP, el referido numeral 10 del Artículo 21 de la Ley 44 de 2006, lo faculta para ordenar a una subalterna se abstenga de acceder a la solicitud de renovación de pesca de las Motonaves JULIE L, TUNAMAR y TUNAPESCA. Además, señaló que la norma advertida debe interpretarse en concordancia con

10

lo dispuesto en la Resolución ADM N° 1791 del 20 de diciembre de

2001, proferida por el Administrador de la Autoridad de Panamá en su

Artículo quinto.

El Artículo quinto de la referida 1791 del 2001, dispone lo

siguiente:

> "**QUINTO**: Renovación de la Licencia de Pesca
> Internacional
> Si la nave ha cumplido, y así lo manifiesta la
> DGRMC, con el punto Cuarto supra, la
> actualización que sea necesaria a la información
> solicitada y requerimientos del punto Segundo
> y, no estando la nave en las condiciones
> establecidas en el punto Tercero o en
> incumplimiento del Decreto Ejecutivo No 49 de
> noviembre de 1997, la renovación de la licencia
> de Pesca Internacional será inmediata y su
> tramite no deberá exceder los 15 días hábiles.
> Los representantes de las naves pesqueras
> solicitaran con antelación necesaria la
> renovación de la licencia de pesca Internacional
> para mantener la autorización de pesca
> habilitada."

En relación a la renovación de la Licencia de Pesca Internacional,

el Artículo transcrito dispone que el trámite para la renovación de la

Licencia de Pesca Internacional será inmediato y no excederá los 15

días hábiles, siempre y cuando se cumpla con las obligaciones

establecidas en el Artículo cuarto y segundo de la aludida Resolución;

además, la nave no debe mantenerse dentro de las condiciones que

establece el Artículo tercero de la Resolución 1791 de 20 de diciembre

de 2001 o en incumplimiento del Decreto Ejecutivo No 49 de noviembre

de 1997.

En este sentido es de señalar que en el Artículo tercero de la

Resolución 1791 de 20 de diciembre de 2001, se establece lo siguiente:

> "**TERCERO:** No autorizar la expedición de
> licencias de pesca internacionales, en adición a lo

11

37

establecido en el Decreto Ejecutivo No. 49 de 13 de noviembre de 1997, en los siguientes casos:
- Cuando ...

" ...
- Cuando se trate de naves que aparecen listados donde se les identifica como naves INRND."

Es decir entonces que, cuando una nave aparezca dentro de las condiciones establecidas en el referido Artículo tercero de la Resolución 1791 de 20 de diciembre de 2001, no se le podrá renovar la licencia internacional de pesca. Es por ello que el Administrador General de la Autoridad de los Recursos Acuáticos de Panamá, instruyó a la Directora de Ordenación y manejo Integral que se abstuviera de acceder a la solicitud de pesca de las naves JULIE L y TUNAMAR, toda vez que las mismas se encuentran dentro de un listado internacional de naves que realizan la pesca no declarada y no reglamentada (Pesca INRND).

Resulta evidente que, de ninguna forma se presenta el concepto de infracción que plantea el advirtiente sobre el Artículo 32 de la Constitución y el numeral 10 del Artículo 21 de la Ley 44 de 23 de noviembre de 2006, toda vez que no se ha infringido el Principio del Debido Proceso, que incluye el derecho de ser juzgado por tribunal competente independiente e imparcial, establece la bilateralidad y contradicción, consagra el derecho aportar pruebas en su descargo, la garantía de una sentencia de fondo que satisfaga las pretensiones u oposiciones, permite la utilización de los medios de impugnación legalmente establecido.

Así, en virtud a las consideraciones antes expuestas, esta Superioridad concluye que el numeral 10 del Artículo 21 de la Ley 44

12

78

de 23 de noviembre de 2006, no viola el Artículo 32 de la Constitución Política ni ningún otro derecho consagrado en la Carta Constitucional.

En mérito de lo expuesto, el **Pleno de la Corte Suprema de Justicia**, administrando justicia en nombre de la República y por autoridad de la Ley, **DECLARA QUE NO ES INCONSTITUCIONAL** el artículo el numeral 10 del Artículo 21 de la Ley 44 de 23 de noviembre de 2006, "Que crea la Autoridad de los Recursos Acuáticos de Panamá, unifica las distintas competencias sobre los recursos marino-costeros, la acuicultura, la pesca y las actividades conexas de la administración pública y dicta otras disposiciones".

Notifíquese y Publíquese en la Gaceta Oficial.

**MGDO. OYDÉN ORTEGA DURÁN**

**MGDO. JOSÉ E. AYÚ PRADO CANALS**

**MGDO. VÍCTOR L. BENAVIDES P.**

**MGDO. HERNÁN A. DE LEÓN BATISTA**

**MGDO. HARRY A. DÍAZ**

**MGDO. LUIS RAMÓN FÁBREGA S.**

**MGDO. LUIS MARIO CARRASCO**

**MGDO. HARLEY J. MITCHELL D.**

**MGDO. ALEJANDRO MONCADA LUNA**

LO ANTERIOR ES FIEL COPIA
DE SU ORIGINAL

**LIC. YANIXSA Y. YUEN
SECRETARIA GENERAL**

Secretaría General de la
CORTE SUPREMA DE JUSTICIA
Licda. Yanixsa Y. Yuen
Secretaria General
CORTE Sur...