Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

### Section 443
### Safekeeping of suspicious records or documents

Records or documents, the authenticity of which is at issue, or the content of which is said to
have been modified, shall remain in the safekeeping of the court registry until the legal
dispute has been dealt with and terminated, unless they must be surrendered to another
authority in the interests of public order.

### Section 444
### Consequences of the removal of a record or document

Where a record or document has been removed or has been rendered unfit for use in the
intention of preventing the opponent from using it, the allegations made by the opponent
regarding the nature and the content of the record or document may be deemed to have
been proven.

### Title 10
### Evidence provided by examination of a party

### Section 445
### Examination of the opponent; offer to provide evidence

(1) Any party that has not fully provided other evidence by way of complying with its
obligation to provide evidence, or that has failed to so submit other evidence, may offer to
provide evidence by filing the petition that the opponent be examined regarding the facts and
circumstances to be proven.

(2) This petition is not to be complied with if it concerns facts and circumstances regarding
which the court deems the contrary to have been proven.

### Section 446
### Refusal by the opponent to be examined

Should the opponent refuse to have himself examined, or should he fail to make a statement
in spite of having been asked to do so by the court, the court is to decide at its discretion and
conviction, taking account of the overall factual situation and in particular the grounds cited in
the refusal, whether or not it intends to deem proven the facts and circumstances alleged.

### Section 447
### Examination, upon corresponding application being made, of the party upon whom it
### is incumbent to provide evidence

The court may also examine the party upon whom it is incumbent to provide evidence
regarding the facts and circumstances at issue where one party petitions that this be done
and the other consents.

### Section 448
### Ex officio examination

Even if no petition has been filed by a party, and without consideration of the onus of proof,
the court may direct that a party or both of the parties be examined regarding the facts and
circumstances at issue, if the results of the hearings and of the taking of evidence, if any, do
not suffice to establish to the satisfaction of the court the truth or untruth of a fact or
circumstance that is to be proven.

### Section 449
### Examination of joined parties

Where the party to be examined consists of several joined parties, the court shall determine,
depending on the circumstances of the case, whether all of the joined parties or only some of
them are to be examined.

### Section 450
### Court order for evidence to be taken

App. 2339

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The court shall direct the examination of a party by issuing an order for evidence to be taken. If the party is not present in person when the order is pronounced, it is to be summoned ex officio to the examination, with the order for evidence being communicated to it. The summons shall be communicated to the party in person even if it has appointed an attorney of record; the summons need not be served.

(2) The implementation of the order may be suspended if, following its issuance, new evidence regarding the facts and circumstances to be proven is brought before the court. Once the new evidence has been taken, the court is to refrain from examining a party if the court regards the question to have been dealt with regarding which evidence is to be taken.

### Section 451
### Actual examination

The stipulations of sections 375, 376, 395 (1), subsection (2), first sentence, and of sections 396, 397, 398 shall apply mutatis mutandis to the examination of a party.

### Section 452
### Placing a party under oath

(1) Should the result obtained from the testimony of a party that has not been sworn in not suffice to convince the court of the truth or untruth of the fact or circumstance that is to be proven, the court may direct that the party is to be placed under oath regarding its testimony. Where both parties have been examined, the court may demand only of one party that it swear an oath regarding its statement on the same facts and circumstances.

(2) The oath shall be worded to the effect that the party has said nothing but the truth to the best of its knowledge, and that it has not concealed anything.

(3) The opponent may waive having the respectively other party sworn in.

(4) No party may admissibly be placed under oath if it has been convicted of perjury in a final and binding judgment.

### Section 453
### Evaluation of the evidence obtained in examining a party

(1) The court is to evaluate, at its discretion and conviction, the testimony of the party pursuant to section 286.

(2) Should the party refuse to testify or to swear an oath, section 446 shall apply mutatis mutandis.

### Section 454
### Failure of the party to appear

(1) Should the party fail to appear at the hearing determined for its examination, or for it to be placed under oath, the court shall decide at its sole discretion whether or not the testimony is to be deemed to have been refused, and shall do so in consideration of all circumstances, in particular of the reasons, if any, that the party has cited for its failure to appear.

(2) Where the hearing, at which the party failing to appear was to be examined or placed under oath, was arranged by the court hearing the case, then that hearing is to be used to hear oral argument on the merits of the case unless the court believes that arranging a new hearing for the examination is mandated.

### Section 455
### Persons under a legal disability

(1) If a party is a person under a legal disability, their legal representative is to be examined, subject to the rule set out in subsection (2). Should the party have a plurality of legal representatives, section 449 shall apply mutatis mutandis.

(2) Minors who are 16 years of age or older may be examined regarding facts and circumstances consisting of their own actions, or facts and circumstances they have perceived, and may also be placed under oath pursuant to section 452 wherever the court deems this to be reasonable based on the circumstances of the case. The same shall apply

App. 2340

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

for a person having the capacity to sue and to be sued who is represented in the legal dispute by a custodian or curator.

### Sections 456 to 477
### (repealed)

### Title 11
### Administration of oaths and affirmations

### Section 478
### Oath taken in person

The oath must be sworn in person by the person under obligation to so swear it.

### Section 479
### Oath taken before the judge correspondingly delegated or requested

(1) The court hearing the case may direct that the oath be taken before one of its members, or before another court if the person under obligation to swear an oath is prevented from appearing before the court hearing the case, or if he is located at a great distance from the seat of the court and the oath will not be taken in the form governed by section 128a (2).
(2) The President of the Federal Republic of Germany shall take the oath in his residence before a member of the court hearing the case, or before another court.

### Section 480
### Cautionary remarks regarding the oath to be sworn

Prior to the oath being taken, the judge is to appropriately instruct the person under obligation to swear an oath as to the importance of swearing an oath, and is to likewise instruct him that he may swear the oath with or without a religious confirmation.

### Section 481
### Taking of the oath; wording of the oath

(1) The oath with religious confirmation is sworn such that the judge speaks the oath's words, introducing it by the words
"You hereby swear, by God the almighty and all-knowing",
with the person under obligation to swear an oath thereupon speaking the words (wording of the oath)
"I swear it, so help me God."
(2) The oath without a religious confirmation is sworn such that the judge speaks the oath's words, introducing it by the words
"You hereby swear",
with the person under obligation to swear an oath thereupon speaking the words (wording of the oath)
"I swear it."
(3) Where the person under obligation to swear an oath states that, as a member of a specific religious community or of a faith-based group, he wishes to confirm his oath using words of that community, he may add such words to the oath.
(4) In taking the oath, the party so swearing it is to raise his right hand.
(5) In cases in which a plurality of witnesses is to be sworn in simultaneously, the oath's words shall be spoken by each person individually who is under obligation to swear an oath.

### Section 482
### (repealed)

### Section 483
### Oaths taken by persons suffering from a speech disorder or a hearing impairment

(1) A person suffering from a speech disorder or a hearing impairment shall, at his selection, take the oath by repeating the words of the oath, by copying them and signing them, or by being assisted by a person enabling communication with such person, whereby such

App. 2341

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

assistant is to be involved by the court. The court is to provide the technical aids suitable for this purpose. The court is to draw the attention of the person suffering from a speech disorder or from a hearing impairment to his right to choose in this regard.

(2) Where the person suffering from a speech disorder or a hearing impairment has not exercised his right to choose pursuant to subsection (1), the court may demand that he take the oath in writing, or it may direct that a person enabling communication with such person be involved; the court may also do so if it is not possible to take the oath in the form selected pursuant to subsection (1), or only by making efforts that are not justified by the intended purpose.

### Section 484
### Solemn affirmation deemed equivalent to an oath

(1) If the person under obligation to swear an oath states that, for reasons of his faith or of his conscience, he does not wish to swear an oath, he is to make an affirmation. This affirmation shall be equivalent to an oath; the attention of the party so obligated is to be drawn to this fact.

(2) The affirmation shall be made such that the judge speaks the wording of the oath as the wording of the affirmation, introducing them by the words

"You affirm, being conscious of your responsibility before the court",

with the person under obligation to make an affirmation thereupon speaking the words:
"Yes."

(3) Section 481 subsections (3) and (5) and section 483 shall apply mutatis mutandis.

### Title 12
### Independent evidentiary proceedings

### Section 485
### Admissibility

(1) Upon the corresponding petition having been filed by a party, the court may direct in the course of litigation or outside of the proceedings that visual evidence be taken on site, that witnesses be examined, or that an expert prepare a report, provided that the opponent consents to doing so, or provided that there is the concern that evidence might be lost, or that it will become difficult to use it.

(2) Wherever a legal dispute is not yet pending, a party may petition that an expert prepare a written report if it has a legitimate interest in establishing:

1.      The state of a person or the state or value of an object;

2.      The cause of personal injury, property damage, or a material defect;

3.      The effort required to remedy a personal injury, property damage or material defect.

Interests under law are assumed to be given if the establishment of the above facts may serve to avoid a legal dispute.

(3) To the extent the court has already directed that a report be prepared, a new report shall be prepared only if the prerequisites set out in section 412 have been met.

Section 486
Competent court

(1) Wherever a legal dispute is pending, the petition is to be filed with the court hearing the case.

(2) If a legal dispute is not yet pending, the petition is to be filed with that court that would be competent, according to the submission by the petitioner, to take the decision in the main action. In the subsequent litigation, the petitioner may not take recourse to the court having lacked jurisdiction.

(3) In cases of imminent danger, the petition may also be filed with the local court (Amtsgericht, AG) within the judicial district of which the person has his abode who is to be

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

examined, or regarding whom a report is to be prepared, or within the judicial district of which the object is located that is to be visually inspected on site, or regarding which a report is to be prepared.

(4) The petition may be recorded with the registry for the files of the court.

### Section 487
### Content of the petition

The petition must:

   1.      Designate the opponent;

   2.      Designate the facts and circumstances regarding which evidence is to be taken;

   3.      Name the witnesses or designate the other evidence that may admissibly be taken pursuant to section 485;

   4.      Demonstrate to the satisfaction of the court the facts and circumstances the petitioner believes justify the independent evidentiary proceedings and the jurisdiction of the court.

### Sections 488 and 489
### (repealed)

### Section 490
### Decision on the petition

(1) The court shall decide on the petition by a court order.
(2) The order by which the court complies with the petition is to set out the facts and circumstances regarding which evidence is to be taken, as well as the evidence, naming the witnesses to be examined and the experts. The order is not contestable.

### Section 491
### Summons of the opponent

(1) The opponent is to be summoned to the hearing determined for the taking of evidence in such due time that he is able to protect his rights, provided that this can be achieved in light of the circumstances of the case; the order and a copy of the petition are to be served on him.
(2) Failure to comply with this rule shall not contravene the taking of evidence.

### Section 492
### Taking of evidence

(1) Evidence shall be taken in accordance with the rules applicable for the taking of evidence as such.
(2) The record of the taking of evidence is to remain in the safekeeping of the court that has directed the evidence to be taken.
(3) The court may summon the parties to the dispute to be heard in oral argument if it can be expected that the parties will settle; any such settlement is to be recorded by the court.

### Section 493
### Use in proceedings

(1) Should a party refer to facts or circumstances in proceedings regarding which independent evidentiary proceedings have been held, the independent evidentiary proceedings shall be equivalent to the taking of evidence before the court hearing the case.
(2) Where the opponent has failed to make an appearance at a hearing of the independent evidentiary proceedings, the result obtained therein may be used only if the opponent had been summoned in due time.

### Section 494
### Unknown opponent

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) If the party tendering evidence does not designate an opponent, its petitions shall be admissible only if the party tendering evidence demonstrates to the satisfaction of the court that it is unable, through no fault of its own, to designate the opponent.

(2) Should the court comply with the petition, it may appoint a representative for the unknown opponent, who is to protect that opponent's rights in the course of the evidence being taken.

### Section 494a
### Period for bringing proceedings in the courts

(1) Absent a pending legal dispute, the court is to direct that the petitioner is to bring proceedings within a period to be determined, and shall do so following the close of the taking of evidence, and upon corresponding application being made, without a hearing for oral argument.

(2) Where the petitioner fails to comply with this order, and upon corresponding application being made, the court is to pronounce in a corresponding court order that the petitioner is to bear the costs incurred by the opponent. A complaint subject to a time limit may be lodged against the decision.

### Chapter 2
### Proceedings pursued before the local courts (Amtsgerichte)

### Section 495
### Rules to be applied

(1) The rules applying to proceedings before the regional courts (Landgerichte) shall apply to the proceedings before the local courts, unless deviations result from the general regulations set out in Book 1 hereof, the special provisions made hereinbelow, and the constitution of the local courts.

### Section 495a
### Proceedings performed at the court's equitably exercised discretion

The court may decide at its equitably exercised discretion on how to implement its proceedings if the value of the claim does not exceed the amount of 600 euros. Upon corresponding application being made, the matter must be dealt with in oral argument.

### Section 496
### Submission of written pleadings; declarations made for the record

The action, the statement of defence as well as any other petitions and declarations by a party that are to be served must be submitted to the court in writing, or must be recorded with the registry for the files of the court.

### Section 497
### Summonses

(1) The summons of the plaintiff to the hearing determined for the action is to be communicated by simple letter unless the court orders that it be served. Section 270 second sentence shall apply mutatis mutandis.

(2) A party need not be sent a summons if it was informed of the hearing when it brought the action or the petition, or recorded same with the registry for the files of the court, based on which the date of the hearing is determined by the court. This communication is to be recorded in the files.

### Section 498
### Service of the record of the action

Where an action has been recorded with the registry for the files of the court, the record of this filing shall be served instead of the statement of claim.

### Section 499
### Instructions

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) In serving the statement of claim, or the record as to the action having been brought, to the defendant, he is to be instructed that the rules do not require him to be represented by counsel.

(2) Together with the instruction provided for by section 276, the defendant is to be instructed about the consequences of any written acknowledgment he may submit.

## Sections 499a to 503
### (repealed)

## Section 504
### Notification in the event the local court lacks jurisdiction

Should the local court (Amtsgericht) lack jurisdiction, this being local jurisdiction or competence ratione materiae, it shall indicate this fact to the defendant prior to holding the hearing on the merits of the case, and shall likewise draw the defendant's attention to the consequences of entering an appearance on the merits of the case without filing a corresponding objection.

## Section 505
### (repealed)

## Section 506
### Subsequent lack of jurisdiction ratione materiae

(1) If, by countercharges being brought or by extending the demand for relief (section 264 numbers 2 and 3), a claim is raised for which the regional courts (Landgerichte) are competent, or if it is petitioned pursuant to section 256 subsection (2) that the court determine a legal relationship, for which the regional courts are competent, the local court is to declare by corresponding court order, provided a party has filed the corresponding petition, that it lacks jurisdiction, and shall do so prior to any further hearings being held on the merits of the case; the local court is to refer the legal dispute to the regional court.

(2) The stipulations of section 281 subsections (2) and (3), first sentence, shall apply mutatis mutandis.

## Sections 507 to 509
### (repealed)

## Section 510
### Declarations made regarding records or documents

A record or document is to be deemed as having been acknowledged as authentic if, in the event of a declaration not having been made, the party is asked by the court to make a declaration regarding its authenticity.

## Section 510a
### Content of the record

Declarations by a party, other than admissions and declarations regarding the petition for examination of a party, are to be included in the record of the hearing to the extent the court believes this is required.

## Section 510b
### Judgment requiring a party to take specific action

Should a party be sentenced to take specific action, the defendant may concurrently be sentenced, upon corresponding application being made by the plaintiff, to pay compensation for the case that the action is not taken within the period to be determined; the court is to assess such compensation at its sole discretion.

## Section 510c
### (repealed)

App. 2345

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

**Book 3**
**Appellate remedies**

**Chapter 1**
**Appeal**

**Section 511**
**Appeal available as a remedy**

(1) Appeals are an available remedy against the final judgments delivered by the court of first instance.

(2) An appeal shall be admissible only if:

1.      The value of the subject matter of the appeal is greater than 600 euros, or if

2.      In its ruling, the court of first instance has granted leave to appeal.

(3) The plaintiff in the appeal is to demonstrate to the satisfaction of the court the value pursuant to subsection (2) number 1; the plaintiff in the appeal may not file a statutory declaration in lieu of an oath.

(4) The court of first instance shall admit an appeal in cases in which:

1.      The legal matter is of fundamental significance or wherever the further development of the law or the interests in ensuring uniform adjudication require a decision to be handed down by the court of appeal, and wherever

2.      The judgment does not adversely affect the party by an amount higher than 600 euros.

The court of appeal is bound to the admission.

**Section 512**
**Prior decisions handed down by the court of first instance**

Those decisions taken prior to the final judgments shall also be subject to the assessment by the court of appeal unless they are incontestable pursuant to the stipulations of the present Code, or unless they are contestable by way of filing a complaint subject to a time limit.

**Section 513**
**Grounds for appeal**

(1) An appeal may only be based on the decision handed down having been based on a violation of the law (section 546), or on the facts and circumstances that should have been used as a basis pursuant to section 529 justifying a different decision.

(2) The appeal may not be based on the fact that the court of first instance erred in assuming it had jurisdiction.

**Section 514**
**Default judgments**

(1) A default judgment may not be contested by the party against which it has been delivered by filing an appeal or a cross appeal.

(2) A default judgment against which protest as such is not an available remedy shall be liable to appeal or cross appeal nonetheless insofar as such an appeal or cross appeal is based on the fact that there was no negligent or intentional failure to comply with procedural requirements. Section 511 (2) shall not be applied.

**Section 515**
**Waiver of the right to appellate remedy**

The waiver of the right to file an appeal shall be valid regardless of whether or not the opponent has accepted the declaration of waiver.

**Section 516**
**Withdrawal of an appeal**

App. 2346

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The plaintiff in the appeal may withdraw the appeal until the appellate judgment is pronounced.
(2) The withdrawal shall be declared to the court. Unless the withdrawal is declared at the hearing, it shall be declared by submitting a written pleading.
(3) The withdrawal shall result in the loss of the appeal filed and in the obligation to bear the costs arising as a consequence of the appeal having been filed. These effects are to be pronounced in a corresponding court order.

**Section 517**
**Time limit for filing an appeal**

The time limit for filing an appeal shall amount to one (1) month; this is a statutory period and shall begin upon the fully worded ruling having been served, at the latest, however, upon the expiry of five (5) months following pronouncement of the judgment.

**Section 518**
**Time limit for filing an appeal in the event the judgment is amended**

Should, within the time limit set for filing an appeal, a judgment be amended by a subsequent ruling (section 321), the period set for filing an appeal shall recommence upon the subsequent ruling having been served, also for the appeal against the ruling first promulgated. Should the same party lodge an appeal against both judgments, the two appeals are to be consolidated into a single appeals procedure.

**Section 519**
**Notice of appeal**

(1) The appeal is lodged by way of submitting a notice of appeal with the court of appeal.
(2) The notice of appeal must set out:

   1.      The reference number and designation of the judgment against which the appeal is being lodged;

   2.      The declaration as to an appeal being filed against the said judgment.

(3) An execution or certified copy of the judgment being challenged shall be submitted together with the notice of appeal.
(4) The general regulations as to preparatory written pleadings shall apply also to the notice of appeal.

**Section 520**
**Particulars of the appeal**

(1) The plaintiff in the appeal must provide particulars of the appeal.
(2) The period for submitting the particulars of the appeal shall amount to two (2) months and shall begin upon the fully worded ruling having been served, at the latest, however, with the expiry of five (5) months following pronouncement of the judgment. Upon a corresponding petition having been filed, the presiding judge may extend the period provided the opponent has consented. Without such consent, and if the presiding judge is satisfied that an extension will not delay the legal dispute, or if the plaintiff in the appeal has submitted substantial grounds to the court, then the presiding judge may exercise his discretion in extending the period by up to one (1) month.
(3) Unless already included in the notice of the appeal, the particulars of the appeal must be submitted to the court of appeal as a written pleading. The particulars of the appeal must:

   1.      Declare the extent to which the judgment is being contested, and must set out the specific petition as to how the judgment is to be modified (petitions in the appeal proceedings);

   2.      Designate the circumstances indicating a violation of the law and the significance they have for the ruling being contested;

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

3.      Name the specific indications giving rise to doubts as to the court having correctly or completely established the facts in the ruling being contested, and therefore mandating a new fact-finding process;

4.      Designate the new means by which the plaintiff in the appeal intends to challenge the opponent or defend his case, listing the facts and circumstances based on which these new means of challenge or defence are to be admitted pursuant to section 531 (2).

(4) The particulars of the appeal furthermore shall include:

1.      Information on the value of the subject matter of the appeal if this does not consist of a specific amount of money, provided that the admissibility of the appeal depends on it;

2.      A statement as to whether any reasons would prevent the matter from being ruled on by a judge sitting alone.

(5) The general regulations governing preparatory written pleadings apply also to the particulars of the appeal.

### Section 521
### Service of the notice of appeal and its particulars
(1) The notice of appeal and the particulars of the appeal are to be served on the opponent party.
(2) The presiding judge or the court of appeal may set a deadline by which the opponent party is to submit a written statement of defence in appeal proceedings and by which the plaintiff in the appeal is to submit its reply to the statement of defence in appeal proceedings. Section 277 shall apply mutatis mutandis.

### Section 522
### Review of the appeal's admissibility; court order denying leave to appeal
(1) The court of appeal is to review, ex officio, whether the appeal as such is admissible, whether it has been lodged in the form required by law and within the period set and whether particulars have been provided. Should one of these requirements not have been met, the appeal is to be overruled as inadmissible. The decision may be given as a court order. The court order may be challenged by way of filing a complaint on points of law.
(2) The court of appeal is to immediately deny leave to appeal in a decision if all of its members are unanimously satisfied that:

1.      The appeal manifestly has no chance of success,

2.      The legal matter is not of any fundamental significance,

3.      The further development of the law or the interests in ensuring uniform adjudication do not require a decision to be handed down by the court of appeal, and that

4.      No hearing for oral argument is mandated.

Prior to handing down such a ruling, the court of appeal or the presiding judge is to indicate to the parties to the dispute its intention to deny leave to appeal and the reasons therefor, and is to provide the plaintiff in the appeal with the opportunity to submit its position within a period of time to be set. Insofar as the reasons for denying leave to appeal are not already provided in the notice stipulated by the second sentence hereof, the court order provided for in the first sentence is to set out these reasons. Moreover, a court order, which is contestable, is to refer to the facts as established by the court of prior instance in the ruling being contested, and is to summarise any modifications or amendments that may have been made.

App. 2348

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) The plaintiff in the appeal is entitled to lodge such appellate remedy against the court order pursuant to subsection (2), first sentence, that would have been admissible had the court handed down its decision by a ruling.

### Section 523
### Notice scheduling a hearing

(1) Should leave to appeal not be denied or should the appeal not be overruled by a court order pursuant to section 522, the court of appeal shall decide on whether or not to transfer the legal dispute to the judge sitting alone. Thereupon, a hearing is to be scheduled without undue delay.

(2) Section 274 (3) shall apply mutatis mutandis to the period that must lapse between the time at which notice of the hearing scheduled is given and the hearing itself.

### Section 524
### Cross appeal

(1) The respondent in the appeal may join the appeal. This shall be effected by filing the notice of cross appeal with the court of appeal.

 (2) A cross appeal is an available remedy also if the respondent in the appeal has waived an appeal or if the time limit for filing an appeal has lapsed. A cross appeal may admissibly be filed until the deadline has expired by which the respondent in the appeal is to submit its statement of defence in appeal proceedings. This deadline shall not apply should the cross appeal have as its subject matter a sentence for recurrent performance becoming due in the future (section 323).

(3) The reasons for the cross appeal must be set out in the notice of cross appeal. The stipulations of section 519 subsections (2) and (4), of section 520 (3) and of section 521 shall apply mutatis mutandis.

(4) The cross appeal shall cease to be effective should the appeal be withdrawn, should leave to appeal have been denied, or should it have been overruled by a court order.

### Section 525
### General procedural rules

Unless otherwise provided for in the present Chapter, the rules applying to the proceedings before the regional courts (Landgerichte) as courts of first instance are to be applied mutatis mutandis to the further proceedings. No conciliation hearing need be held.

### Section 526
### Judge taking the decision

(1) The court of appeal may transfer, by a court order, the legal dispute to one of its members as a judge sitting alone, for him to take the decision where:

1.       The contested decision was delivered by a judge sitting alone,

2.       The matter does not entail any factual or legal difficulties,

3.       The legal matter is not of any fundamental significance, and

4.       Oral argument on the merits of the case has not already been heard at the main hearing, unless a judgment subject to a reservation of rights, partial judgment, or interlocutory judgment has been handed down in the meantime.

(2) The judge sitting alone shall submit the legal dispute to the court of appeal for it to decide on whether it intends to assume the proceedings or not if:

1.       A material change to the litigation circumstances engenders special factual or legal difficulties of the matter or the fundamental significance of the legal matter, or if

2.       This is petitioned by the parties in congruent declarations.

App. 2349

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

The court of appeal shall assume the legal dispute if the prerequisites stipulated by number 1 first sentence are met. Upon having heard the parties, it shall rule on the matter by court order. Once again transferring the matter to the judge sitting alone is ruled out.

(3) An appellate remedy may not be based on the fact that a transfer, referral or assumption has been made or has been failed to be made.

(4) Solely the presiding judge of the division for commercial matters may act as judge sitting alone on matters in that division's purview.

## Section 527
### Judge sitting alone in preparatory proceedings

(1) Should the legal dispute not be transferred to a judge sitting alone pursuant to section 526, the court of appeal may assign the matter to one of its members as a judge sitting alone by way of preparing the decision. The presiding judge of the division for commercial matters shall act as judge sitting alone; outside of a hearing no such assignment need be made.

(2) The judge sitting alone is to promote the matter such that it can be dealt with and terminated in a hearing before the court of appeal. For this purpose, he may take individual evidence to the extent this is desirable in the interests of simplifying the hearing before the court of appeal and insofar as it is to be assumed, from the outset, that the court of appeal will be able to properly evaluate the results obtained in taking evidence also without having a direct impression of its course.

(3) The judge sitting alone shall decide:

1.      On the referral pursuant to section 100 in conjunction with sections 97 to 99 of the Courts Constitution Act (Gerichtsverfassungsgesetz, GVG);

2.      Wherever the action or the appeal is withdrawn, the claim lodged is waived or acknowledged;

3.      In the event of one of the parties or both parties failing to comply with procedural rules;

4.      On the obligation to bear the costs of the proceedings unless the court of appeal will rule on this together with the merits of the case;

5.      On the value of the subject matter being litigated;

6.      On costs, fees and expenditures.

(4) Should the parties agree to so proceeding, the judge sitting alone may also decide on other matters.

## Section 528
### Binding effect of petitions filed in appeal proceedings

Solely the petitions filed in the appeal proceedings shall be subject to review and decision by the court of appeal. The judgment handed down by the court of first instance may be modified only to the extent its modification has been petitioned.

## Section 529
### Scope of the review by the court of appeal

(1) The court of appeal is to base its hearing and decision on:

1.      The facts established by the court of first instance, unless specific indications give rise to doubts as to the court having correctly or completely established the facts relevant for its decision, and therefore mandate a new fact-finding process;

2.      New facts and circumstances insofar as these may permissibly be considered.

(2) The judgment contested will only be reviewed for a defect in the proceedings that is not to be taken into account ex officio if such defect has been asserted pursuant to

App. 2350

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

section 520 (3). In all other regards, the court of appeal shall not be bound to the grounds for appeal asserted.

### Section 530
### Delays in submitting means of challenge or of defence

Should, in contravention of the stipulations made in section 520 and section 521 (2), means of challenge or defence not be submitted in due time, section 296 subsections (1) and (4) shall apply mutatis mutandis.

### Section 531
### Means of challenge or defence that have been dismissed; new means of challenge or defence

(1) Any means of challenge or defence that were rightly dismissed in the proceedings before the court of first instance shall be ruled out.

(2) New means of challenge or defence are to be admitted only if they:

1.    Concern an aspect that the court of first instance has recognisably failed to see or has held to be insignificant,

2.    Were not asserted in the proceedings before the court of first instance due to a defect in the proceedings or

3.    Were not asserted in the proceedings before the court of first instance, without this being due to the negligence of the party.

The court of appeal may demand that those facts be demonstrated to its satisfaction based on which the new means of challenge or defence may permissibly be brought before the court.

### Section 532
### Objections as to a complaint being inadmissible

Non-essential objections concerning the admissibility of the complaint that, in contravention of the stipulations made in sections 520 and 521 (2), were not lodged in due time are to be admitted only if the party provides sufficient excuse for such delay. The same shall apply to any non-essential new objections concerning the admissibility of the complaint if the party would have been able to submit them in the proceedings before the court of first instance. Should the court so demand, the grounds precluding culpability are to be substantiated.

### Section 533
### Modification of the suit filed; declaration as to claims being offset; counterclaims

The suit filed may admissibly be modified, claims may admissibly be declared to be offset and counterclaims may admissibly be brought only if:

1.    The opponent consents to this being done or the court believes this to be expedient, and

2.    These actions can be based on facts and circumstances on which, pursuant to section 529, the court of appeal is to base its hearing and decision regarding the appeal in any case.

### Section 534
### Loss of the right to file objections

Should a rule concerning the proceedings before the court of first instance have been violated, this can no longer be objected to before the appellate instance on fact and law wherever the party has already lost its right to file objections in the proceedings before the court of first instance pursuant to the stipulations of section 295.

### Section 535
### Admission of guilt before the court

App. 2351

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Any admission of guilt made before the court of first instance shall remain effective also before the appellate instance on fact and law.

### Section 536
### Examination of a party

(1) The court of appeal may only order a party to be examined or to be sworn in, which has declined to be examined in the proceedings before the court of first instance or which has refused to make a statement or to be sworn in, if the court is satisfied that the party had sufficient reason to so decline to be examined or refuse to be sworn in and that these grounds have in the meantime ceased to exist.

(2) If a party was examined in the proceedings before the court of first instance and was sworn in as regards the statements made, the court of appeal may order the opponent to be examined under oath only if the examination or placement under oath in the proceedings before the court of first instance was inadmissible.

### Section 537
### Provisionally enforceable judgments

(1) A judgment handed down by the court of first instance that is not, or not unconditionally, declared provisionally enforceable is to be declared provisionally enforceable by the court of appeal by delivering a corresponding court order upon accordingly having been petitioned to do so, unless the petitions in the appeal proceedings have contested the judgment. The decision may permissibly be taken only following expiry of the deadline set for submitting particulars of the appeal.

(2) The court order is incontestable.

### Section 538
### Referral to a court of lower instance

(1) The court of appeal is to take the evidence required and is to decide on the matter as such.

(2) The court of appeal may refer the matter to a court of lower instance, insofar as further hearings are required, while repealing the judgment and the proceedings, only:

    1.    Insofar as the proceedings before the court of first instance are subject to a material irregularity and, due to this irregularity, it will be necessary to take evidence in a comprehensive scope or under considerable expenditure of time and effort;

    2.    If a protest entered has been overruled as inadmissible by the judgment contested;

    3.    If the judgment contested has only ruled on the admissibility of the action;

    4.    If, in the case of a claim that is in dispute both on its merits and as regards its amount, a preliminary decision has been taken by the judgment contested as regards the merits of the claim, or if the action has been dismissed, unless, however, the dispute regarding the amount of the claim is ready for decision;

    5.    If the judgment contested was delivered, subject to a reservation of rights, in proceedings on claims arising from a deed, in which solely documentary evidence is submitted, or proceedings on claims arising from a bill of exchange;

    6.    If the judgment contested is a default judgment; or

    7.    If the judgment contested is a partial judgment delivered contrary to the pre-requisites set out in section 301;

and if one party petitions that the matter be referred to a court of lower instance. In the case set out under number 3 hereinabove, the court of appeal is to conclusively deal with all objections. In the case set out under number 7, no petition need be filed.

App. 2352

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Section 539
## Default proceedings

(1) Should the plaintiff in the appeal fail to appear at the hearing scheduled, his appeal shall be dismissed by a default judgment at the petition of a party.

(2) Should the respondent in the appeal fail to appear at the hearing scheduled, and should the plaintiff in the appeal petition for a default judgment to be delivered against the respondent in the appeal, the submissions admissibly made by the plaintiff in the appeal as regards the facts and circumstances of the matter shall be deemed to have been acknowledged by the respondent. Insofar as these statements justify the petition filed in the appeal, the court is to decide in accordance with the petition filed; to the extent this is not the case, leave to file the appeal shall be denied.

(3) In all other regards, the rules governing default proceedings before the court of first instance shall apply mutatis mutandis.

## Section 540
## Content of the appellate judgment

(1) Instead of the facts of the case and the reasons on which the ruling is based, the appellate judgment shall set out:

> 1.        A reference to the findings of fact as made in the ruling being contested, depicting any changes or amendments,

> 2.        A brief summary of the reasons for the modification, repeal or confirmation of the decision contested.

Should the judgment be pronounced at the hearing at which the court proceedings have been declared terminated, the presentation of the case as stipulated by the first sentence hereof may also be included in the record of the hearing.

(2) Section 313a and section 313b shall apply mutatis mutandis.

## Section 541
## Court records of the dispute

(1) Immediately upon the notice of appeal having been submitted, the registry of the court of appeal is to procure the records of the dispute from the registry of the court of first instance. The records are to be sent to the court of appeal without undue delay.

(2) Upon the appeal having been conclusively dealt with and terminated, the registry of the court of first instance is to return the records, together with a certified copy of the decision handed down by the appellate instance on fact and law.

## Chapter 2
## Appeal on points of law

## Section 542
## Appeal on points of law as an available remedy

(1) Subject to the following provisions, an appeal on points of law may be filed against the final judgments delivered by the appellate instance on fact and law.

(2) No appeal on points of law may be filed against rulings by which a decision was taken on the issuance, modification, or repeal of a seizure or an injunction. The same shall apply to any judgments regarding instances in which a party has been put into possession early in expropriation proceedings or procedures for the reallocation of land.

## Section 543
## Admission to appeal

(1) An appeal on points of law may be lodged only if:

> 1.        The court of appeal has admitted its being lodged in the judgment, or

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

2.      The court hearing the appeal on points of law has admitted its being lodged based on a complaint against the refusal to grant leave to appeal on points of law.

(2) An appeal on points of law is to be admitted if:

1.      The legal matter is of fundamental significance, or

2.      The further development of the law or the interests in ensuring uniform adjudication require a decision to be handed down by the court hearing the appeal on points of law.

The court hearing the appeal on points of law is bound to the admission of the appeal by the court of appeal.

**Section 544**
**Complaint against denial of leave to appeal**

(1) Any denial of leave to appeal on points of law by the court of appeal is subject to the right to file a complaint against it (complaint against denial of leave to appeal). Such complaint is to be lodged with the court hearing the appeal on points of law within a statutory period of one (1) month following service of the fully worded ruling, at the latest, however, by the expiry of six (6) months after the judgment has been pronounced. An execution or certified copy of the ruling against which an appeal on points of law is to be lodged shall be submitted to the court along with the brief on appeal.

(2) A reasoning for the complaint is to be filed within two (2) months following service of the fully worded ruling, at the latest, however, by the expiry of seven (7) months after the judgment has been pronounced. Section 551 (2) fifth and sixth sentences shall apply mutatis mutandis. The reasoning must set out the grounds on which leave to file an appeal should be granted (section 543 (2)).

(3) The court hearing the appeal on points of law shall give the claimant's opponent in the appeal the opportunity to state his position.

(4) The court hearing the appeal on points of law shall rule on the complaint in a corresponding court order. The reasons on which the order is based shall be summarised briefly; such reasoning may be forgone where it would not contribute to clearing up the prerequisites based on which leave for filing an appeal on points of law is to be granted, or where the court finds for the party filing the complaint. The decision regarding the complaint is to be served upon the parties.

(5) If a complaint is lodged, this shall suspend the legal validity of the judgment. Section 719 subsections (2) and (3) shall apply mutatis mutandis. Once the court hearing the appeal on points of law refuses to comply with the appeal, the judgment will become final and binding.

(6) Insofar as the court finds for the party filing a complaint against the refusal to grant leave to appeal on points of law, the complaint procedure shall be continued as appellate proceedings on points of law. In such event, the complaint filed in proper form and in due time against denial of leave to appeal shall count as the filing of the appeal on points of law. Upon the decision being served on the parties, the period for submitting the reasoning for the appeal on points of law shall commence.

(7) Should the court of appeal have violated the claimant's right to be given an effective and fair legal hearing in a manner relevant to the decision, the court hearing the appeal on points of law may repeal the judgment contested, in derogation from subsection (6), in its order complying with the appeal, and may refer the legal dispute back to the court of appeal, for it to once again hear the case and to rule on it.

Footnote: Section 544: Regarding the application of this stipulation until December 31st, 2011 cf. Section 26 number 8 first sentence of the Introductory Law for the Code of Civil Procedure (Gesetz, betreffend die Einführung der Zivilprozessordnung, ZPOEG).

**Section 545**
**Grounds for an appeal on points of law**

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) An appeal on points of law may only be based on the reason that the contested decision is based on a violation of the law.

(2) An appeal on points of law may not be based on the fact that the court of first instance was wrong in assuming that it had or did not have jurisdiction.

## Section 546
### Definition of the term "violation of the law"

The law is violated where a legal norm has not been applied, or has not been applied properly.

## Section 547
### Absolute grounds for an appeal on points of law

A decision shall always be regarded to have been based on a violation of the law where:

1.      The composition of the court of decision was not compliant with the relevant provisions;

2.      A judge was involved in the decision who, by law, was prohibited from holding judicial office, unless this impediment has been asserted by a motion to recuse a judge without meeting with success;

3.      A judge was involved in the decision although he had been recused for fear of bias and the motion to so recuse him had been declared justified;

4.      A party to the proceedings had not been represented in accordance with the stipulations of the law, unless it had expressly or tacitly approved the litigation;

5.      The decision has been given based on a hearing for oral argument in which the rules regarding the admission of the public to the proceedings were violated;

6.      Contrary to the provisions of the present Code, the decision does not set out the reasons for the judgment.

## Section 548
### Time limit for filing an appeal on points of law

The period for submitting an appeal on points of law shall amount to one (1) month; this is a statutory period and shall begin upon the fully worded appellate judgment having been served, at the latest, however, upon the expiry of five (5) months of the judgment having been pronounced.

## Section 549
### Filing an appeal on points of law

(1) The appeal on points of law is filed by submitting the notice on appeal on points of law to the court hearing the appeal on points of law. The notice on appeal on points of law must include:

1.      The reference number and designation of the judgment against which the appeal on points of law is being filed;

2.      The declaration that an appeal on points of law is being filed against the said judgment.

Section 544 (6), second sentence, shall remain unaffected hereby.

(2) The general regulations regarding preparatory written pleadings are applicable also to notices on appeal on points of law.

## Section 550
### Service of the notice on appeal on points of law

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) An execution or certified copy of the judgment being contested is to be enclosed with the notice on appeal on points of law, unless this has already been done pursuant to section 544 (1), third sentence.

(2) The notice on appeal on points of law is to be served on the opponent party.

## Section 551
### Reasoning provided for the appeal on points of law

(1) The appellant must provide reasoning for filing the appeal on points of law.

(2) Unless already set out in the brief on appeal on points of law, the reasoning for the appeal on points of law is to be submitted to the court hearing the appeal on points of law in a written pleading. The period for submitting the reasoning for the appeal on points of law shall amount to two (2) months. It shall commence upon the fully worded ruling having been served, at the latest, however, with the expiry of five (5) months upon the judgment having been pronounced. Section 544 (6), third sentence, shall remain unaffected hereby. Upon a corresponding petition having been filed, the presiding judge may extend the period, subject to this being consented to by the opponent. Should the opponent not grant his consent, the period may be extended by up to two (2) months provided that the presiding judge is satisfied, at his discretion and conviction, that this extension will not delay the legal dispute, or if the appellant demonstrates substantial grounds; if, within this period, it is not possible to grant the appellant the opportunity to inspect the court records of the dispute for a reasonable period of time, the presiding judge may extend the period, upon corresponding application being made, by up to two (2) months following the court records of the dispute having been sent.

(3) The reasoning for the appeal on points of law must include:

1.      The declaration to which extent the judgment is being contested and a petition is being made for its repeal (petitions made in the appeal on points of law);

2.      The grounds for the appeal on points of law, these being:

    a)   The specific designation of the circumstances from which the violation of the law is apparent;

    b)   Insofar as the appeal on points of law is based on the allegation that the law has been violated with regard to the proceedings: the designation of the facts that reflect this irregularity.

If the appeal on points of law has been admitted on the basis of a complaint against denial of leave to appeal, reference may be made, in providing the reasoning for the appeal on points of law, to the reasons cited in the complaint against denial of leave to appeal.

(4) Section 549 (2) and section 550 (2) shall apply mutatis mutandis to the reasoning for the appeal on points of law.

## Section 552
### Review of admissibility

(1) The court hearing the appeal on points of law is to review ex officio whether the appeal on points of law as such is an available remedy, whether or not it has been filed in keeping with statutory requirements as to form and time, and whether or not the grounds for it have been provided. Should one of these requirements not have been met, the appeal on points of law is to be overruled as inadmissible.

(2) The decision may be given as a court order.

## Section 552a
### Court order denying leave to appeal

The court hearing the appeal on points of law shall dismiss by unanimous decision the appeal on points of law admitted by the court of appeal if the court hearing the appeal on points of law is convinced that the prerequisites for admitting the appeal on points of law

App. 2356

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

have not been met and that the appeal on points of law has no chance of success.
Section 522 (2) second and third sentences hereof shall apply mutatis mutandis.

## Section 553
### Hearing date as determined by the court; time for entering an appearance
(1) Where the appeal on points of law is not overruled as inadmissible by a court order and where it is not dismissed pursuant to section 552a, a hearing is to be scheduled for oral argument and this date is to be made known to the parties.
(2) Section 274 (3) shall apply mutatis mutandis to the period that must lapse between the time at which the hearing date is made known and the hearing itself.

## Section 554
### Cross appeal on points of law
(1) The respondent in the appeal on points of law may join the appeal on points of law. This shall be effected by filing a notice of cross appeal on points of law with the court hearing the appeal on points of law.
(2) A cross appeal on points of law is an available remedy also if the respondent in the appeal on points of law has waived an appeal on points of law, if the time limit for filing an appeal on points of law has lapsed, or if the appeal on points of law has been dismissed. A cross appeal on points of law is to be declared prior to the expiry of one (1) month following service of the reasoning for the appeal on points of law.
(3) The grounds for the cross appeal on points of law must be set out in the notice of cross appeal. Section 549 (1), second sentence, and subsection (2) and sections 550 and 551 (3) shall apply mutatis mutandis.
(4) The cross appeal on points of law shall cease to be effective should the appeal on points of law be withdrawn, should it have been overruled or dismissed by a court order.

## Section 555
### General procedural rules
(1) Unless otherwise provided for in the present Chapter, the rules applying to the proceedings before the regional courts (Landgerichte) as courts of first instance are to be applied mutatis mutandis to the further proceedings. No conciliation hearing need be held.
(2) The stipulations of sections 348 to 350 are not to be applied.
(3) A judgment based on the defendant's acknowledgment shall be handed down only where the plaintiff has filed a separate petition to this effect.

## Section 556
### Loss of the right to file objections
Should a rule concerning the proceedings before the appellate instance on fact and law have been violated, this can no longer be objected to before the court hearing the appeal on points of law wherever, pursuant to the stipulations of section 295, the party has already lost its right to file objections in the proceedings before the appellate instance on fact and law.

## Section 557
### Scope of the review performed upon an appeal having been filed on points of law
(1) Solely the petitions filed by the parties shall be subject to review by the court hearing the appeal on points of law.
(2) Those decisions shall also be subject to assessment by the court hearing the appeal on points of law that preceded the final judgment, unless they are incontestable pursuant to the stipulations of the present Code.
(3) The court hearing the appeal on points of law is not bound to the grounds being asserted in the appeal on points of law. The judgment contested may only be reviewed for irregularities in the proceedings that are not to be taken into account ex officio if such irregularities have been objected to pursuant to sections 551 and 554 (3).

App. 2357

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Section 558
### Provisionally enforceable judgments

A judgment handed down by the court of appeal that is not, or not unconditionally, declared provisionally enforceable is to be declared provisionally enforceable by the court hearing the appeal on points of law delivering a corresponding court order upon having been petitioned to do so, unless the judgment has been contested by the petitions submitted in the proceedings of the appeal on points of law. The decision may permissibly be taken only following expiry of the period set for submitting the reasoning for the appeal on points of law.

## Section 559
### Limited review of the facts as established by the courts of prior instance

(1) Only those submissions by the parties in the proceedings shall be subject to assessment by the court hearing the appeal on points of law that are apparent from the appellate judgment or the record of the session of the court. Moreover, solely those facts may be taken into account that have been set out in section 551 (3) number 2 lit. b.

(2) If the court of appeal has established that an allegation as to fact is true or untrue, this determination shall be binding upon the court hearing the appeal on points of law, unless it has been challenged by an admissible and justified petition that the court hearing the appeal on points of law review such determination.

## Section 560
### Acts not open to review

The decision of the court of appeal regarding the existence and the content of acts, on the violation of which the appeal on points of law pursuant to section 545 cannot be based, shall govern for the decision to be delivered in the appeal on points of law.

## Section 561
### Denial of leave to appeal on points of law

If the reasoning provided for the appellate judgment does indicate that the law has been violated, but the decision itself appears to be correct based on other grounds, leave to appeal on points of law is to be denied.

## Section 562
### Reversal of the contested judgment

(1) To the extent the appeal on points of law is deemed justified, the contested judgment is to be reversed.

(2) Where the judgment is reversed due to irregularities in the proceedings, the proceedings are to be reversed concurrently to the extent they are affected by such irregularities.

## Section 563
### Referral to a court of lower instance; decision on the merits of the case by the court hearing the appeal on points of law

(1) In the event the judgment is reversed, the matter is to be referred to the court of appeal, which is to hear it once again and is to decide on it. The matter may also be referred to another formation of the court of appeal.

(2) The court of appeal is to base its decision on the legal assessment on which the reversal of the judgment was based.

(3) However, the court hearing the appeal on points of law is to decide on the matter as such if the judgment is reversed only due to a violation of the law, in application of the law to the situation of fact as established, and if in light of said situation the matter is ready for the final decision to be taken.

(4) If it is conceivable, in the case set out hereinabove in subsection (3) for the decision to be delivered on the matter as such, that acts might be applied on the violation of which the appeal on points of law pursuant to section 545 cannot be based, the matter may be referred to the court of appeal, which is to hear it once again and is to decide on it.

App. 2358

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Section 564
### No reasoning for the decision in the case of objections due to irregularities in the proceedings

No reasoning need be provided for the decision insofar as the court hearing the appeal on points of law is of the opinion that the objections as to irregularities in the proceedings are inconsequential. This shall not apply to objections pursuant to section 547.

## Section 565
### Rules of the appeal proceedings to be applied in appeals on points of law

The rules applicable to the appeal regarding the contestability of default judgments, regarding the declaration of waiver of appellate remedies and their withdrawal, regarding the objections as to a complaint being inadmissible and regarding the demand for, transmission and return of the court records of the dispute, shall apply mutatis mutandis to the appeal on points of law. An appeal on points of law may be withdrawn without the consent of the respondent in the appeal on points of law only prior to the time at which the respondent in the appeal on points of law commences oral argument on the merits of the case.

## Section 566
### Immediate appeal on points of law in lieu of an appeal on facts and law

(1) Upon corresponding application being made, an appeal on points of law may be filed directly with the competent court against final judgments delivered in proceedings before the court of first instance where an appeal against such judgments is admissible, thus passing over the appellate instance on fact and law (leap-frog appeal), if:

    1.      The opponent consents to passing over the appellate instance on fact and law; and

    2.      The court hearing the appeal on points of law allows the leap-frog appeal.

The petition for leave to file a leap-frog appeal as well as the declaration of consent shall be deemed to be a waiver of the appellate remedies provided by the appeal.

(2) Leave to appeal is to be petitioned by submitting a written pleading (brief for leave to appeal) to the court hearing the appeal on points of law. Sections 548 to 550 shall apply mutatis mutandis. The petition must set out the prerequisites for granting leave to file a leap-frog appeal (subsection (4)). The written declaration of consent by the respondent is to be attached to the petition for leave to appeal; it may also be submitted by the attorney of record in the proceedings of first instance or, if the legal dispute in the proceedings before the court of first instance was none in which the parties had to be represented by counsel, it may be recorded with the registry for the files of the court.

(3) The petition for leave to file a leap-frog appeal shall suspend the legal validity of the judgment. Section 719 subsections (2) and (3) shall apply mutatis mutandis. The court registry of the court hearing the appeal on points of law is to demand, and shall do so without undue delay once the petition has been submitted, that the registry of the court of first instance provide it with the court records of the dispute.

(4) Leave to file a leap-frog appeal shall be granted only if:

    1.      The legal matter is of fundamental significance; or

    2.      The further development of the law or the interests in ensuring uniform adjudication require a decision by the court hearing the appeal on points of law.

The leap-frog appeal may not be based on irregularities in the proceedings.

(5) The court hearing the appeal on points of law shall decide on the petition for leave to file a leap-frog appeal by delivering a corresponding order. The order is to be served on the parties.

(6) Should the court refuse to comply with the petition for leave to appeal on points of law, the judgment shall become final and binding.

App. 2359

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(7) Where leave is granted to file an appeal on points of law, the proceedings shall be continued as appellate proceedings on points of law. In this case, the petition for leave to appeal on points of law, submitted in proper form and in due time, shall be deemed to be the filing of the appeal on points of law. Upon the decision being served, the period for submission of the reasoning for the appeal on points of law shall commence.

(8) The further procedure is determined by the provisions applying to the appeal on points of law. Section 563 is to be applied subject to the proviso that the matter is referred to the court of first instance. If an appeal is filed against the subsequent decision of the court of first instance, the court of appeal is to base its decision on the legal assessment that serves as the basis for the reversal of the judgment by the court hearing the appeal on points of law.

## Chapter 3
## Complaints

### Title 1
### Complaints subject to a time limit

#### Section 567
#### Complaints subject to a time limit; cross appeal under a complaint

(1) A complaint subject to a time limit may be filed against the decisions delivered by the local courts (Amtsgerichte) and regional courts (Landgerichte) in proceedings before them as courts of first instance if

    1.       This has been expressly determined by law; or

    2.       The decisions so being challenged did not require a hearing for oral argument and dismissed a petition concerning the proceedings.

(2) A complaint may be filed against decisions as to costs only if the subject matter of the appeal is in excess of 200 euros.

(3) The respondent in the complaint may join the complaint even in those cases in which he has waived filing a complaint, or the period within which such a complaint must be filed has lapsed. This joinder shall cease to be effective should the complaint be retracted or overruled as inadmissible.

#### Section 568
#### Judge sitting alone as the court of decision

The court hearing the complaint shall rule by one of its members acting as a judge sitting alone in cases in which the contested decision was delivered by a judge sitting alone or a senior judicial officer. The judge sitting alone shall transfer the proceedings to the court hearing the complaint for it to decide in the composition required by the stipulations of the Courts Constitution Act (Gerichtsverfassungsgesetz, GVG) if:

    1.       The matter is characterised by particular difficulties in fact or in law; or

    2.       The legal matter is of fundamental significance.

Appellate remedies may not be based on a transfer that has been made or has been failed to have been made.

#### Section 569
#### Time limit and formal requirements

(1) Unless any other period has been determined, the complaint subject to a time limit is to be filed within a statutory period of two (2) weeks with the court the decision of which is being contested, or with the court hearing the complaint. Unless determined otherwise, the statutory period shall commence running upon service of the decision, and at the latest upon expiry of five (5) months of the judgment having been pronounced. Should the requirements be met for an action for annulment or for an action for retrial of the case, the complaint may

App. 2360

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

also be filed following expiry of the statutory period within the statutory periods applying for these actions.

(2) The complaint is filed by submitting a notice regarding the complaint on points of law. The brief regarding the complaint on points of law must designate the contested decision as well as the declaration that a complaint is being filed against this decision.

(3) The complaint may also be declared by recording it with the registry for the files of the court if:

1.      The legal dispute in the proceedings before the court of first instance is not, or was not, to be pursued as proceedings in which the parties must be represented by counsel;

2.      The complaint concerns assistance with court costs; or

3.      The complaint is brought by a witness, an expert or a third party in the sense as defined by sections 142 and 144.

## Section 570
### Suspensive effect; interim orders

(1) The complaint shall have suspensive effect only where it concerns an order of means of administrative coercion or other coercive measures.

(2) The court or the presiding judge whose decision is being contested may suspend the enforcement of the decision.

(3) The court hearing the complaint may issue an interim order prior to delivering its decision; in particular, it may suspend the enforcement of the contested decision.

## Section 571
### Reasoning; extinction of the exercise of a right (preclusion); exceptions from the statutory requirement to be represented by an attorney

(1) The grounds for filing the complaint are to be provided.

(2) The complaint may be based on new means of challenge or defence. It may not be based on the fact that the court of first instance was wrong in assuming that it had jurisdiction.

(3) The presiding judge or the court hearing the complaint may set a period within which the means of challenge or defence are to be submitted to the court. If the means of challenge or defence are not submitted within this period, they are to be admitted only if the court holds, in its discretion and conviction, that admitting them would not delay the proceedings being dealt with and terminated, or if the party provides sufficient excuse for such delay. Should the court so require, the grounds ruling out culpability are to be demonstrated to the satisfaction of the court.

(4) Should the court order that a written declaration be made, this may be recorded with the registry for the files of the court in all instances in which the complaint may be recorded with the registry for the files of the court (section 569 (3)).

## Section 572
### Course of the complaint procedure

(1) Should the court or the presiding judge whose decision is being contested hold that the complaint is justified, they are to grant redress; in all other cases, the complaint is to be presented to the court hearing the complaint without undue delay. Section 318 shall remain unaffected hereby.

(2) The court hearing the complaint is to review ex officio whether the complaint as such is an available remedy and whether or not it has been filed in keeping with statutory requirements as to form and time. Should one of these requirements not have been met, the complaint is to be overruled as inadmissible.

App. 2361

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) Should the court hearing the complaint hold that the complaint is justified, it may transfer the required order to the court or presiding judge who had delivered the decision giving rise to the complaint.

(4) The decision as to the complaint shall be delivered by court order.

### Section 573
### Reminder as a legal remedy

(1) A petition may be filed for a decision to be issued by the court against the decisions taken by the judge correspondingly delegated or requested, or against those taken by the records clerk of the court registry, within a statutory period of two (2) weeks (reminder). The reminder is to be filed in writing or is to be recorded with the registry for the files of the court. Section 569 (1) first and second sentences, subsection (2) and sections 570 and 572 shall apply mutatis mutandis.

(2) A complaint subject to a time limit may be lodged against the decision of the court delivered on the reminder in the proceedings before the court of first instance.

(3) The rule set out in subsection (1) shall also apply to the higher regional courts (Oberlandesgerichte, OLG) and the Federal Court of Justice (Bundesgerichtshof, BGH).

### Title 2
### Complaint on points of law

### Section 574
### Complaint on points of law; cross appeal under a complaint on points of law

(1) A complaint on points of law is an available remedy against a court order if:

1.      This has been expressly determined in the law; or

2.      The court hearing the complaint, the court of appeal, or the higher regional court (Oberlandesgericht, OLG) has granted leave to do so in its order in the proceedings before the court of first instance.

Section 542 (2) shall apply mutatis mutandis.

(2) In the cases provided for by subsection (1) number 1, the complaint on points of law shall be admissible only if:

1.      The legal matter is of fundamental significance; or

2.      The further development of the law or the interests in ensuring uniform adjudication requires a decision to be taken by the court hearing the complaint on points of law.

(3) In the cases provided for by subsection (1) number 2, leave to file a complaint on points of law shall be granted where the prerequisites of subsection (2) have been met. The court hearing the complaint on points of law shall be bound by such leave granted.

(4) The respondent of the complaint on points of law may join the complaint on points of law within a statutory period of one (1) month following service of the brief setting out the reasoning for the complaint on points of law by submitting the notice of cross appeal under a complaint on points of law with the court hearing the complaint on points of law, and may do so also in those cases in which it has waived a complaint on points of law, in which the period within which such a complaint on points of law must be filed has lapsed or in which no leave has been granted to file a complaint on points of law. The reasoning for filing a cross appeal under a complaint is to be provided in the notice of cross appeal. The joinder shall cease to be effective where the complaint on points of law is retracted or overruled as inadmissible.

### Section 575
### Time limit, formal requirements, and reasoning of the complaint on points of law

App. 2362

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The complaint on points of law is to be filed within a statutory period of one (1) month following service of the order by submitting a notice on appeal under a complaint with the court hearing the complaint on points of law. The notice or brief regarding the complaint on points of law must include:

1.      The designation of the decision against which the complaint on points of law is directed, and

2.      The declaration that a complaint on points of law was filed against this decision.

An execution or certified copy of the contested decision is to be enclosed with the notice or brief regarding the complaint on points of law.

(2) Unless the notice regarding the complaint on points of law sets out its reasons, the grounds for filing the complaint on points of law are to be provided within a period of one (1) month. The period shall begin running upon service of the contested decision. Section 551 (2) fifth and sixth sentences hereof shall apply mutatis mutandis.

(3) The reasoning of the complaint on points of law must include:

1.      The declaration as to the extent to which the decision of the court hearing the complaint or of the court of appeal is contested and its reversal is petitioned (petitions under the complaint on points of law);

2.      In the cases provided for by section 574 (1) number 1, a presentation of the prerequisites for leave to be granted as set out in section 574 (2);

3.      The grounds for the complaint on points of law, these being:

a)   The specific designation of the circumstances from which the violation of the law is apparent;

b)   Insofar as the complaint on points of law is based on the allegation that the law was violated with reference to the proceedings: the designation of the facts that reflect this irregularity.

(4) The general regulations governing preparatory written pleadings are to be applied also to the notice regarding the complaint on points of law and the brief setting out the reasoning for the complaint. The notice regarding the complaint on points of law and the brief setting out the reasoning for the complaint are to be served on the opponent party.

(5) Sections 541 and 570 subsections (1) and (3) shall apply mutatis mutandis.

### Section 576
### Grounds for filing the complaint on points of law

(1) The complaint on points of law may only be based on the fact that the decision is based on a violation of federal law or of a rule the territorial scope of which extends beyond the judicial district of a higher regional court (Oberlandesgericht, OLG).

(2) The complaint on points of law may not be based on the fact that the court of first instance was wrong in assuming that it had or did not have jurisdiction.

(3) Sections 546, 547, 556 and 560 shall apply mutatis mutandis.

### Section 577
### Review of the complaint on points of law and decision

(1) The court hearing the complaint on points of law is to review ex officio whether the complaint on points of law as such is an available remedy and whether or not it has been filed in keeping with statutory requirements as to form and time and whether reasoning was provided. Should one of these requirements not have been met, the complaint on points of law is to be overruled as inadmissible.

(2) Solely the petitions filed by the parties shall be subject to review by the court hearing the complaint on points of law. The court hearing the complaint on points of law is not bound to the grounds being asserted in the complaint on points of law. The decision contested in the

App. 2363

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

proceedings may only be reviewed for irregularities in the proceedings that are not to be taken into account ex officio wherever such irregularities have been objected to pursuant to section 575 (3) and section 574 (4), second sentence, hereof. Section 559 shall apply mutatis mutandis.

(3) In cases in which the reasoning provided for the contested decision does indicate that the law has been violated, but the decision itself appears to be correct based on other grounds, leave to file a complaint on points of law is to be denied.

(4) Where the complaint on points of law is deemed justified, the contested decision is to be reversed and the matter is to be referred back for a new decision to be taken.
Section 562 (2) shall apply mutatis mutandis. The matter may be referred to another formation of the court that has delivered the contested decision. The court to which the matter is referred is to base its decision on the legal assessment on which the reversal of the judgment is based.

(5) The court hearing the complaint on points of law is to decide on the matter as such if the decision is reversed only for a violation of the law, in application of the law to the situation of fact as established, and if in light of said situation the matter is ready for the final decision to be taken. Section 563 (4) shall apply mutatis mutandis.

(6) The decision as to the complaint on points of law shall be delivered by court order. Section 564 shall apply mutatis mutandis. The requirement to provide reasoning may be forgone in all other regards if this would not be suited to contribute to clearing up fundamental legal issues, to the further development of the law, or to ensuring uniform adjudication.

## Book 4
## Reopening of proceedings

### Section 578
### Types of reopening proceedings

(1) Proceedings terminated by a final judgment that has become res judicata may be reopened by an action for annulment and by an action for retrial of the case.

(2) Where both actions are brought by one and the same party, or by different parties, the hearing and decision as to the action for retrial of the case is to be suspended until the decision on the action for annulment has become final and binding.

### Section 579
### Action for annulment

(1) An action for annulment may be brought:

    1.    Where the composition of the court of decision was not compliant with the relevant provisions;

    2.    Where a judge was involved in the decision who, by law, was prohibited from holding judicial office, unless this impediment had been asserted by a motion to recuse a judge or by filing appellate remedies without meeting with success;

    3.    Where a judge was involved in the decision although he had been recused for fear of bias and the motion to so recuse him had been declared justified;

    4.    Where a party to the proceedings had not been represented in accordance with the stipulations of the law, unless it had expressly or tacitly approved the litigation.

(2) No complaint may be filed in the cases set out under numbers 1 and 3 if it was possible to enforce such annulment by appellate remedies.

### Section 580
### Action for retrial of the case

An action for retrial of the case may be brought:

App. 2364

# Exhibit 4

# Enforcement of Foreign Judgments
# – Germany December 2014

## Enforcement of Foreign Judgments

### Edited by Louis Garb and Julian D.M. Lew

### Supplement 32 (December 2014)

**Enforcement of Foreign Judgments** helps alleviate the time and costs of consulting foreign attorneys or government agencies for information regarding the specific procedures of individual nations and their policies towards enforcement of foreign judgments.

It addresses the most pertinent specifications, requirements, and legislation of each individual nation.

The following chapters have been reviewed and updated where necessary:

- **Australia**
  *Herbert Smith Freehills*

- **European Union**
  *Gleiss Lutz*

- **Indonesia**
  *Kusnandar & Co.*

- **South Africa**
  *Sandton Advocates Chambers Group III*

- **Ukraine**
  *Andreas Neocleous & Co.*

- **Austria**
  *Law Offices Dr F. Schwank*

- **Germany**
  *Gleiss Lutz*

- **Isle of Man**
  *M&P Legal*

- **Sweden**
  *Advokatfirman Berlin AB*

- **United States of America**
  *Taft Stettinius & Hollister LLP*

9888003258

App. 2366

# Table of Contents

VOLUME 1

Preface                                       General Section – 5–6

List of Authors                         General Section – 21–38-48

Signatures and Ratifications          General Section – 49–52

Questionnaire
  by Louis Garb                          Questionnaire – 1–8

**Africa**

*Algeria*
  by Adnane Bouchaib                        Algeria – 1–12

*Cameroon*
  by David Etah Akoh                       Cameroon – 1–14

*Egypt*
  by Wagdi Maher Bishara                      Egypt – 1–12

*Kenya*
  by Caroline Thuo                           Kenya – 1–14

*Nigeria*
  by Ajumogobia & Okeke                    Nigeria – 1–16

*South Africa*
  by Warren Bank                      South Africa – 1–26

*Tunisia*
  by Habib & Slim Malouche                  Tunisia – 1–14

**Asia**

*Brunei*
  by Colin Y.C. Ong                         Brunei – 1–16

*Hong Kong*
  by Ella Cheong                        Hong Kong – 1–28

App. 2368

**Table of Contents**

*India*
  by Lalit Bhasin ............................................. India – 1–14

*Indonesia*
  by Winita E. Kusnandar .................................. Indonesia – 1–12

*Israel*
  by Louis Garb ............................................. Israel – 1–16

*Japan*
  by Takahiro Yamauchi
  & Eriko Ogata ............................................ Japan – 1–16

*Jordan*
  by Samah Sultan & Abdurrahman Awad ............. Jordan – 1–10

*Korea*
  by Jay K. Lee ............................................. Korea – 1–12

*Lebanon*
  by Mohamed Alem & Leila Y. Alem ................. Lebanon – 1–18

*Malaysia*
  by Ira Biswas ............................................. Malaysia – 1–24

*Pakistan*
  by Farrukh Zia Shaikh .................................. Pakistan – 1–14

*People's Republic of China*
  by Enzo Wh Chow ....................................... PR China – 1–10

*Philippines*
  by Eduardo de los Angeles ............................ Philippines – 1–18

*Singapore*
  by Harish Kumar, Goh Seow Hui
  & Jonathan Toh .......................................... Singapore – 1–22

*Taiwan*
  by Nigel N.T. Li & Rebecca Hsiao .................. Taiwan – 1–16

*Thailand*
  by Stephen Frost ......................................... Thailand – 1–16

*Vietnam*
  by Dang The Duc ........................................ Vietnam – 1–10

**Australia and Oceania**

*Australia*
  by Michael Pryse ........................................ Australia – 1–14

Foreign Judgments – Suppl. 32 (December 2014)

App. 2369

**Table of Contents**

*New Zealand*
　by Margaret A. Helen Macfarlance,
Ashley Ayton, Sarah Holderness,
Kirsty Jones, Gennise Luen
& Michael O'Brien of Hesketh Henry                    New Zealand – 1–26

**North America**

*The Bahamas*
　by C.R. Matthew Paton                               The *Bahamas* – 1–18

*British Virgin Islands*
　by Phillip R. Kite                           British Virgin Islands – 1–12

*Canada (British Columbia)*                                    Canada
　by Chuck Blanaru & Jennifer M. Moir        (British Columbia) – 1–20

*Canada (Ontario)*
　by Peter L. Biro & Mandy L. Seidenberg         Canada (Ontario) – 1–22

*Canada (Quebec)*
　by Antonietta Melchiorre & James Woods          Canada (Quebec) – 1–16

*United States*
　by Allan T. Slagel & Daniel R. Saeedi              United States – 1–28

**Central America**

*Bermuda*
　by Keith Robinson                                       Bermuda – 1–18

*Cayman Islands*
　by Andrew Bolton                                 Cayman Islands – 1–18

*Guatemala*
　by Armando Mérida                                     Guatemala – 1–12

*Mexico*
　by Marcos Berkman Margolis                               Mexico – 1–12

*Panama*
　by David J. Arosemena                                    Panama – 1–12

**South America**

*Argentina*
　by Alberto Molinario                                  Argentina – 1–16

*Brazil*
　by Adriana Camargo Rodrigues                             Brazil – 1–12

App. 2370

**Table of Contents**

*Chile*
  by Francisco Javier Illanes & Felipe
Benavides                                          Chile – 1–14

*Colombia*
  by Edouardo Zuleta                        Colombia – 1–20

*Ecuador*
  by Xavier Sisa & Bruce Horowitz          Ecuador – 1–14

*Uruguay*
  by Federico Formento                      Uruguay – 1–14

*Venezuela*
  by Angel Gabriel Viso                    Venezuela – 1–16

VOLUME 2

**Europe**

*Austria*
  by Friedrich Schwank & Thomas Pichler        Austria – 1–16

*Belarus*
  by Alexei Anischenko & Mikalai
Markounik                                       Belarus – 1–14

*Belgium*
  by Karel Mul                              Belgium – 1–14

*Bulgaria*
  by Rossitsa Voutcheva, Peter Mihaylov &
Dilyan Nachev                                   Bulgaria – 1–18

*Cyprus*
  by Chrysanthos Christoforou                 Cyprus – 1–24

*Czech Republic*
  by JUDr Richard Gürlich & Iva Pokorná    Czech Republic – 1–24

*Denmark*
  by Jens Rostock-Jensen &
Jakob Dahl Mikkelsen                            Denmark – 1–18

*England and Wales*
  by Steven Philippsohn & Lucinda Fenton   England and Wales – 1–30

*Estonia*
  by Carri Ginter & Veikko Puolakainen        Estonia – 1–24

App. 2371

## Table of Contents

*European Union*
  by Stephan Wilske & Gerhard Wegen                    European Union – 1–20

*Finland*
  by Petrik Obstbaum                                   Finland – 1–14

*France*
  by Olivier G. Binder                                 France – 1–14

*Germany*
  by Stephan Wilske & Gerhard Wegen                    Germany – 1–16

*Gibraltar*
  by Isaac S. Marrache                                 Gibraltar – 1–16

*Greece*
  by Alkistis Christofilou                             Greece – 1–12

*Guernsey*
  by St. John A. Robilliard                            Guernsey – 1–12

*Hungary*
  by Péter Nógrádi                                     Hungary – 1–20

*Ireland*
  by Gearoid Carey &
  Julie Murphy O'Connor                                Ireland – 1–16

*Isle of Man*
  by Christopher Brooks                                Isle of Man – 1–24

*Italy*
  by Tiziana Tampieri                                  Italy – 1–22

*Jersey*
  by Anthony Dessain, Edward Drummond
  & Michael Wilkins                                    Jersey – 1–22

*Liechtenstein*
  by Markus Wanger                                     Liechtenstein – 1–18

*Lithuania*
  by Renata Beržanskienė                               Lithuania – 1–20

*Luxembourg*
  by François Moyse                                    Luxembourg – 1–20

*Monaco*
  by Jean-Charles S. Gardetto                          Monaco – 1–16

App. 2372

## Table of Contents

*The Netherlands*
  by Peter Bernard Hemmes
         The Netherlands – 1–16

*Norway*
  by Kaare Andreas Shetelig & Ola Haugen
         Norway – 1–18

*Poland*
  by Michał Gruca
         Poland – 1–16

*Portugal*
  by Guilherme Santos Silva, Francisco
Patrício & Tiago Moreira da Silva
         Portugal – 1–16

*Romania*
  by Vitzman, Webster & partners
         Romania – 1–12

*Russia*
  by Vladimir Melnikov
         Russia – 1–18

*Scotland*
  by Douglas Blyth
         Scotland – 1–16

*Serbia*
  by Borivoje Trgovčević
         Serbia – 1–22

*Slovak Republic*
  by Jozef Mesároš & Eva Komrsková
         Slovak Republic – 1–20

*Spain*
  by Isabel Escudero, Héctor Sbert &
Ángeles Subirá
         Spain – 1–14

*Sweden*
  by Mikael Berglund, Lars Berlin &
Cecilia Peterson
         Sweden – 1–12

*Switzerland*
  by Nedim Peter Vogt & Matthew Reiter
         Switzerland – 1–28

*Turkey*
  by Ilter, Turan & Argun
         Turkey – 1–14

*Ukraine*
  by Andreas Neocleous & Co
         Ukraine – 1–14

Index
         Index –1–4

App. 2373

**List of Authors**

*British Virgin Islands*

Phillip R. Kite
Harney Westwood & Riegels
Craigmuir Chambers
PO Box 71
Road Town, Tortola
British Virgin Islands

Tel.:    +1 284 494 2233
Fax:    +1 284 494 3547
E-mail:  phillip.kite@harneys.com

*Canada (British Columbia)*

Chuck Blanaru & Jennifer M. Moir
Heath Law LLP, Barristers &
Solicitors
200 – 1808 Bowen Road
Nanaimo, British Columbia
V9S 5W4

Tel.:    (250) 753-2202
Fax:    (250) 753-3949
E-mail:  cblanaru@vancouverisland
         lawyers.com
Website: jmoir@nanaimolaw.com
         www.nanaimolaw.com

*Canada (Ontario)*

Peter L. Biro
Newcon Optik
105 Sparks Ave., Toronto, ON
M2H 2S5 Canada

Tel.:    +16-663-6963
Fax:    +416-663-9065
E-mail:  pbiro@newcon-optik.com

Mandy L. Seidenberg
WeirFoulds LLP, Barristers and
Solicitors
Suite 4100, 66 Wellington Street West,
PO Box 35
Toronto, Ontario
Canada M5X 1B7

Tel.:    +1 416 365 1110
Fax:    +1 416 365 1876
E-mail:  mseidenberg
         @weirfoulds.com

*Canada (Quebec)*

Antonietta Melchiorre & James Woods
Lapointe Rosenstein Marchand
Melançon, L.L.P.
1250 René-Lévesque Blvd.
West, Suite1400
Montreal, Quebec
Canada H3B 5E9

Tel.:    +1 514 925-6355
Fax:    +1 514 925-5055
E-mail:  antonietta.melchiorre@lrmm.com

*United States*

Allan T. Slagel & Daniel R. Saeedi
Taft Stettinius & Hollister LLP
Suite 2800
111 E. Wacker
Chicago, Illinois 60601
USA

Tel.:    +1 312 527 4000
Fax:    +1 312 527 4011
E-mail:  aslagel@taftlaw.com,
         dsaeedi@taftlaw.com
Website: www.taftlaw.com

App. 2374

## List of Authors

### Central America

*Bermuda*

Keith Robinson
Appleby
Canon's Court
22 Victoria Street
PO Box HM 1179
Hamilton HM EX
Bermuda

Tel.:    +1 441 295 2244
Fax:     +1 441 292 8666
E-mail:  klrobinson@appleby
         global.com

*Cayman Islands*

Andrew Bolton
Appleby (Cayman) Limited
Clifton House
75 Fort Street
P.O. Box 190 KY1-1104
Grand Cayman
Cayman Islands

Tel.:    +1 345 949 4900
Fax:     +1 345 949 4901
E-mail:  abolton@applebyglobal.com

*Guatemala*

Armando Mérida
Mérida & Asociados.
20 calle 12-51 'A' zona 10.
Guatemala, Guatemala

Tel.:    +502 2366 7427
Fax:     +502 2366 7423
E-mail:  amerida meridayasociados.
         com.gt
Website: www.meridayasociados.com.gt

*Mexico*

Marcos Berkman Margolis
BBL Legal Abogados, S.C.
San Francisco Núm. 2, Pisos 5 y 6
Colonia del Valle
C.P. 03100, México, D.F.

Tel.:    +52 55 5687 0411
Fax:     +52 55 5669 1582
E-mail:  mberkman@bbl-legal.com.mx
Website: www.bbl-legal.com.mx

*Panama*

David J. Arosemena
Castro & Berguido
Edificio Vallarino
6th Floor, Panama City
Panama

Tel.:    +507 264 0506
Fax:     +507 264 0516
E-mail:  darosemena@castroberguido.com
Website: http://www.castroberguido.com

App. 2375

**List of Authors**

*Republic of Bulgaria*

| Rossitsa Voutcheva, Peter Mihaylov & Dilyan Nachev BWSP Ilieva, Voutcheva & Co Law Firm 28 'Hristo Botev' blvd., 4th floor, SOFIA 1000, Bulgaria | Tel.: Fax: E-mail: Website: | +359 2 981 49 53 +359 2 980 61 55 +359 2 895 21 79 +359 2 980 59 82 office@ivlawfirm.com www.ivlawfirm.com |

*Cyprus*

| Chrysanthos Christoforou Andreas Neocleous & Co. LLC Neocleous House 195 Archbishop Makarios III Avenue PO Box 50613 CY- 3608 Limassol Cyprus | Tel.: Fax: E-mail: | +357 25 110000 +357 25 110001 chrysanthos@ neocleous.com |

*Czech Republic*

| JUDr Richard Gürlich & Iva Pokorna Advokátní kancelář Gürlich & Co. (Law Firm Gürlich & Co) Politických vězňů 19, Praha 1, Postal code 110 00, Czech Republic | Tel.: Fax: E-mail: Website: | +420 222 101 591 +420 222 101 590 gurlich@akrg.cz www.akrg.cz |

*Denmark*

| Jens Rostock-Jensen & Jakob Dahl Mikkelsen Kromann Reumert Sundkrogsgade 5 2100 Copenhagen East Denmark | Tel.: Fax: E-mail: Website: | +45 38 77 44 50 +45 38 77 46 12 +45 70 12 12 11 +45 70 12 13 11 jrj@kromannreumert.com, jdm@kromannreumert.com www.kromannreumert.com |

*England and Wales*

| Steven Philippsohn & Lucinda Fenton PCB Litigation LLP 4th Floor 190 Chancery Lane London WC2A 1EU United Kingdom | Tel.: Fax: E-mail: Website: | +44 (0)20 7831 2691 +44 (0)20 7404 9435 snp@pcblitigation.com www.pcblitigation.com |

App. 2376

## List of Authors

*Estonia*

Carri Ginter (PhD) & Veikko
Puolakainen
Law firm SORAINEN
Pärnu mnt. 15
10141 Tallinn, Estonia

Tel.:      +372 640 0900
Fax:      +372 640 0901
E-mail:   estonia@sorainen.com
Website: www.sorainen.com

*European Union*

Dr Stephan Wilske,
Maître en Droit, LL.M.,
Lautenschlagerstraβe 21
D-70173 Stuttgart
Germany
and

Tel.:      +49 711 8997-152
Fax:      +49 711 855096
E-mail:   stephan.wilske
          @gleisslutz.com
Website: www.gleisslutz.com

Prof. Dr Gerhard Wegen, LL.M.
Lautenschlagerstraβe 21
D-70173 Stuttgart
Germany

Tel.:      +49 711 8997-156
Fax:      +49 711 855096
E-mail:   gerhard.wegen@
          gleisslutz.com

*Finland*

Petrik Obstbaum
Obstbaum Harju & Sorjonen
Attorneys at Law
Annankatu 29A
SF-00100 Helsinki
Finland

Tel.:      +358 0 95657955
Fax:      +358 0 956579560
E-mail:   petrik.obstbaum@ohh.fi
Website: www.ohh.fi

*France*

Olivier G. Binder
Avocat à la Cour
Partner,
GRANRUT Law firm
Address: 91, rue du Faubourg Saint
Honoré - 75008 Paris

Tel.:      +33.1.53.43.15.15
Fax:      +33.1.53.43.15.00
E-mail:   o.binder@granrut.com
Website: www.granrut.com

*Germany*

Dr Stephan Wilske,
Maître en Droit, LL.M.,
Lautenschlagerstraβe 21
D-70173 Stuttgart
Germany
and

Tel.:      +49 711 8997-152
Fax:      +49 711 855096
E-mail:   stephan.wilske
          @gleisslutz.com
Website: www.gleisslutz.com

          Foreign Judgments – Suppl. 32 (December 2014)

App. 2377

**List of Authors**

| | | |
|---|---|---|
| Prof. Dr Gerhard Wegen, LL.M. | Tel.: | +49 7118997-156 |
| Lautenschlagerstraβe 21 | Fax: | +49 711855096 |
| D-70173 Stuttgart | E-mail: | gerhard.wegen |
| Germany | | @gleisslutz.com |

*Gibraltar*

| | | |
|---|---|---|
| Isaac S. Marrache, | Tel.: | +350 79918/74901 |
| Marrache & Co. | Fax: | +350 73315/74042 |
| 5 Cannon Lane | E-mail: | mail@marrache.com |
| Gibraltar | | ism@marrache.com |

*Greece*

| | | |
|---|---|---|
| Alkistis Christofilou | Tel.: | +30 210 361 6816 |
| I.K. Rokas & Partners Law Firm | Fax: | +30 210 361 5425 |
| 25 Boukourestiou Street | E-mail: | a.christofilou@rokas.com |
| 106 71 Athens | Website: | www.rokas.com |
| Greece | | |

*Guernsey*

| | | |
|---|---|---|
| St. John A. Robilliard | Tel.: | +44 (0) 1481 723466 |
| Mourant Ozannes | Fax: | +44 (0) 1481 713839 |
| 1, Le Marchant Street | E-mail: | stjohnrobilliard |
| St. Peter Port | | @mourantozannes.com |
| Guernsey | | |
| GY1 4HP | | |

*Hungary*

| | | |
|---|---|---|
| Péter Nógrádi | Tel.: | +36 1 240-6354 |
| Nógrádi Law Firm | Fax: | +36 1 240-6353 |
| H-1037 Budapest, | E-mail: | nogradilaw@nogradilaw.hu |
| Montevideo str 3./A | | |
| Hungary | | |

*Ireland*

| | | |
|---|---|---|
| Gearoid Carey & | Tel.: | +353 1 232 2000 |
| Julie Murphy O'Connor | Fax: | +353 1 232 3333 |
| 70 Sir John Rogerson's Quay | E-mail: | Gearoid.carey@matheson |
| Dublin-2 | | .com |
| Ireland | | Julie.murphy-oconnor@ |
| | | matheson.com |
| | Website: | www.matheson.com |

App. 2378

**List of Authors**

*Isle of Man*

| | |
|---|---|
| Christopher Brooks | Tel.:    +44(0)1624 695800 |
| Advocate, M&P Legal | Fax:    +44(0)1624 695801 |
| New Court Chambers | E-mail:  cmb@mplegal.im |
| 23-25 Bucks Road | Website: www.mplegal.im |
| Douglas | |
| | |
| Isle of Man | E-mail:  cmb@mplegal.im |
| IM99 2EN | Website: www.mplegal.im |

*Italy*

| | |
|---|---|
| Tiziana Tampieri | Tel.:    +39 51 223990 |
| Studio Tampieri e Associati | Fax:    +39 51 264425 |
| Via Guido Reni, 4 | E-mail:  stampass@tampieri |
| 40125 Bologna | associati.it |
| Italy | Website: www.studiolegaletampierie |
| | associati.com |

*Jersey*

| | |
|---|---|
| Anthony Dessain & Edward Drummond | Tel.:    + 44 (0) 1543 814814 |
| Bedell Cristin | Fax:    + 44 (0) 1534 814815 |
| PO Box 75 | E-mail:  anthony.dessain@bedell |
| 26 New Street | group.com |
| St Helier | E-mail:  edward.drummond@bedell |
| Jersey | group.com |
| Channel Islands | Website: www.bedellgroup.com |
| JE4 8PP | |
| | |
| Michael Wilkins, M.B.E. | Tel.:    + 44 (0) 1543 441450/44 |
| Viscount of the Royal Court | 1401 |
| Morier House | Fax:    + 44 (0) 1534 441399 |
| St. Helier | E-mail:  M.Wilkins@gov.je |
| Jersey | Website: www.gov.je |
| Channel Islands | |
| JE1 1DD. | |

*Liechtenstein*

| | |
|---|---|
| Dr iur. Markus Wanger | Tel.:    +423 237 52 52 |
| Rechtsanwalt – FCIArb | Fax:    +423 237 52 53 |
| Aeulestrasse 45 | E-mail:  wanger@wanger.net |
| P.O. Box 1608 | Website: www.wanger.net |
| FL-9490 Vaduz | |
| Liechtenstein | |

Foreign Judgments – Suppl. 32 (December 2014)

List of Authors

*Lithuania*

Renata Beržanskienė
Sorainen
Jogailos g. 4
LT-01116 Vilnius
Lithuania

Tel.:     +370 5 2685 040
Fax:     +370 5 2685 041
E-mail:  renata.berzanskiene
          @sorainen.com
Website: www.sorainen.com

*Luxembourg*

François Moyse
Avocat à la Cour
Partner in the law firm DSM
Di Stefano, Sedlo & Moyse
2A, boulevard Joseph II
B.P. 2648 L-1026 Luxembourg

Tel.:     +352 262 562-1
Fax:     +352 262 562-2
E-mail:  fmoyse@dsmlegal.com
Website: www.dsmlegal.com

*Monaco*

Jean-Charles S. Gardetto
Avocat Defenseur a la Cour
19 Boulevard des Moulins
MC 98000 Monaco
Principaute de
Monaco

Tel.:     +377 92 16 16 17
Fax:     +377 93 50 42 41
E-mail:  info@gardetto.mc

*The Netherlands*

Peter Bernard Hemmes
Glenn C. Haulussy LL.M.
Westblaak 5,
3012 KC Rotterdam

Tel.:     +31-10-4148614
Fax:     +31-10-4149415
E-mail:  ghaulussy@thelaw
          company.nl

*Norway*

Kaare Andreas Shetelig &
Ola Haugen
Wikborg, Rein & Co.
Kronprinsesse Märthas pl. 1
N-0160 Oslo
Norway

Tel.:     +47 22 82 75 00
Fax:     +47 22 82 75 01

*Poland*

Michał Gruca
Schönherr Pietrzak Siekierzyński
Bogen Sp.k.
ul. Złota 59
PL-00-120 Warszawa
Poland

Tel.:     +48 22 222 42 00
Fax:     +48 22 222 42 99
E-mail:  m.gruca@schoenherr.pl
Website: www.schoenherr.eu

App. 2380

## List of Authors

### Portugal

Guilherme Santos Silva, Francisco
Patrício & Tiago Moreira da Silva
Abreu & Associados, Sociedade de
Advogados, RL
Av. das Forças Armadas, 125,12º
1600-079 Lisboa
Portugal

Tel.:     + 351 21 729 18 00
Fax:      +351 21 723 18 99
E-mail:   guilherme.s.silva@abreuad
          vogados.com

### Romania

Vitzman, Webster & Partners
2 Univii Blud, bl. 8A, et 5-7
ap. 24, 25, sector 4,
Bucharest RO-76104
Romania

Tel.:      +40 1 335 4803
Fax:       +40 1 337 0738
E-mail:    hugo.vitzman@vwp.ro
Website:   www.vwp.ro

### Russia

Vladimir Melnikov
Herbert Smith Freehills CIS LLP
10, Ulitsa Nikolskaya
109012 Moscow
Russian Federation

Tel.:      +7 (495) 363 65 00
Fax:       +7 (495) 363 65 01
E-mail:    vladimir.melnikov@hsf.com
Website:   www.herbertsmithfreehills.com

### Scotland

Douglas Blyth
1 George Square, Glasgow
Scotland
United Kingdom

Tel.:     +44 330 222 1664
Fax:      +44 141 248 5819
E-mail:   Douglas.Blyth@mms.co.uk

### Serbia

Borivoje Trgovčević
Attorney-at-Law,
Law Office of B. Trgovčević
Kneginje Zorke 9a/13
11000 Belgrade
Serbia

Tel.:      +381 11 2430644
Fax:       +381 11 2430644
Mobile:    +381 63 377857
E-mail:    btrgovcevic@yahoo.com
Website:   www.belgradelawoffice.com

### Slovak Republic

Jozef Mesároš & Eva Komrsková
Jurisinvest, advokátska kancelária, v.o.s.
Pluhová 5
831 03 Bratislava 3
Slovak Republic

Tel.:     +421 2 44455326
Fax:      +421 2 44455329
E-mail:   jurisinvest@jurisinvest.sk

Foreign Judgments – Suppl. 32 (December 2014)

App. 2381

List of Authors

*Spain*

Isabel Escudero, Héctor Sbert &
Ángeles Subirá BROSA,
Abogados y Economistas, S.L.
Avenida Diagonal No. 598
08021 Barcelona, Spain
and

| | |
|---|---|
| Tel.: | +34 93 2404151 |
| Fax: | +34 93 2022907 and |
| | 93 2008764 |
| E-mail: | www.info.bcn@brosa.es |

Veláquez No. 10
28001 Madrid, Spain
and
Gran Via 42
48001 Bilbao, Spain

| | |
|---|---|
| Tel.: | +34 91 5934244 |
| Fax: | +34 91 5930455 |
| E-mail: | www.info.mad@brosa.es |
| Tel.: | +34 94 4355380 |
| Fax: | +34 94 4239382 |
| E-mail: | www.info.bio@brosa.es |

*Sweden*

Mikael Berglund
Enforcement Director,
Lars Berlin and Cecilia Peterson
Attorneys-at-Law
Box 284,
SE–746 26 Bålsta
Sweden

| | |
|---|---|
| Tel.: | +46171467019 |
| Fax: | +46171469641 |
| E-mail: | lawyer@berlin.se, |
| | Cecilia.Peterson@berlin.se |
| Website: | www.berlin.se |

*Switzerland*

Nedim Peter Vogt & Matthew
Reiter Bär & Karrer AG
Brandschenkestrasse 90
8027 Zurich
Switzerland

| | |
|---|---|
| Tel.: | +41 58 261 50 00 |
| Fax: | +41 58 261 50 01 |
| Website: | www.baerkarrer.ch |

*Turkey*

Ilter, Turan & Argun
Attorneys at Law
Nuruosmaniye Caddesi,
No:15 K:3 Cagalaoglu
Istanbul

| | |
|---|---|
| Tel.: | +90 212 5287533 / |
| | +90 232 4647576 |
| Fax: | +90 212 5265324 / |
| | +90 232 4647566 |
| E-mail: | info@ita-law.com |

*Ukraine*

Andreas Neocleous & Co, Kiev office
24/7, Instytutska Street, Suite 12
Kiev 01021
Ukraine

| | |
|---|---|
| Tel./Fax: | +38 044 2534495 |
| E-mail: | kyiv@neocleous.com |
| Website: | www.neocleous.com |
| | www.neocleous.com.ua |

App. 2382

**List of Authors**

Foreign Judgments – Suppl. 32 (December 2014)

App. 2383

**Germany**

This chapter was last reviewed by the Author and
is up-to-date as of October 2014

App. 2384

**Europe**

Foreign Judgments – Suppl. 32 (December 2014)

# Germany

Prepared by Stephan WILSKE and Gerhard WEGEN

GLEISS LUTZ

| | |
|---|---|
| Address: | Lautenschlagerstraße 21 |
| | D-70173 Stuttgart |
| | Germany |
| Tel.: | +49 711 8997 0 |
| Fax: | +49 711 85 50 96 |
| and: | Friedrichstraße 71 |
| | D-10117 Berlin |
| | Germany |
| Tel.: | +49 30 8009790 |
| Fax: | +49 30 800979-979 |
| and: | Taunusanlage 11 |
| | D-60329 Frankfurt/Main |
| | Germany |
| Tel.: | +49 69 95514 0 |
| Fax: | +49 69 95514 198 |
| and: | Karl-Scharnagl-Ring 6 |
| | D-80539 München |
| | Germany |
| Tel.: | +49 89 21667 0 |
| Fax: | +49 89 21667 111 |
| and: | Dreischeibenhaus 1 |
| | D-40211 Düsseldorf |
| Tel.: | +49 211 54061 0 |
| Fax: | +49 211 54061 111 |
| and: | Hohe Bleichen 19 |
| | D-20354 Hamburg |
| Tel.: | +49 40 460017 0 |
| Fax: | +49 40 460017 28 |
| Website: | www.gleisslutz.com |

App. 2386

**1–1 / Europe**

1.   UNIFORMITY OF LAW AND REGULATIONS

Germany has a federal system. The law of enforcement of foreign judgments is federal law and is therefore applicable in every German state. Bilateral or multilateral treaties take precedence over federal law, except when federal law is more favourable to the party seeking enforcement. In addition, law of the European Union takes precedence over federal law. That means in particular that Council Regulation (EC) No. 44/2001 of 22 December 2000 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters (Regulation (EU) No. 1215/2012 of 12 December 2012 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters (recast) will take effect from 10 January 2015 and replaces Council Regulation (EC) No. 44/2001 of 22 December 2000; for details see Chapter 'European Union') and Council Regulation (EC) No. 2201/2003 of 27 November 2003 concerning Jurisdiction and the Recognition and Enforcement of Judgments in Matrimonial Matters and the Matters of Parental Responsibility, take precedence over federal law with respect to judgments given by a court or tribunal of another Member State of the European Union. Moreover, Regulation (EC) No. 805/2004 of the European Parliament and of the Council of 21 April 2004 creating a European Enforcement Order for Uncontested Claims provides for the recognition and enforceability of certified enforcement orders in all Member States. The same is true for European payment orders rendered under the procedure set forth in Regulation (EC) No. 1896/2006 of the European Parliament and of the Council of 12 December 2006 creating a European Order for Payment Procedure. Further, Regulation (EC) No. 861/2007 of the European Parliament and of the Council of 11 July 2007 establishing a European Small Claims Procedure stipulates a simplified recognition and enforcement procedure for judgments in cases where the value in dispute does not exceed EUR 2,000.00. On 19 November 2013, the European Commission put forward Proposal for a Regulation of the European Parliament and of the Council amending Regulation (EC) No. 861/2007 of 11 July 2007 and Regulation (EC) No. 1896/2006 of 12 December 2006 (COM [2013] 794 final). The major proposed changes are: (1) an 'extension of the scope of the Regulation to cross-border claims up to EUR 10,000', (2) an 'extension of the definition of cross border cases', (3) and 'providing a maximum limitation on court fees charged for the procedure'. It has to be noted, however, that Regulation (EC) No. 2201/2003, Regulation (EC) No. 805/2004, Regulation (EC) No. 1896/2006 and Regulation (EC) No. 861/2007 do not apply in relation to Denmark. As a general rule, these regulations supersede conventions between Germany and other Member States.

Foreign Judgments – Suppl. 32 (December 2014)

App. 2387

2.   JUDGMENTS

### 2.1.   Definition

An enforceable judgment is a court decision in a civil matter finally resolving a dispute between the parties before a court. As to arbitration awards and injunctions, see below.

### 2.2.   Categories

(a) Money judgments are enforceable.
(b) Judgments for specific performance are enforceable.
(c) Injunctions are enforceable.
(d) Arbitration awards are enforceable pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of

*[Next page continues on GERMANY–5]*

App. 2388

**2–2 / Europe**

4.2 – Germany

App. 2389

later proves to have been unjustified, the applicant must pay damages to the respondent.

16. INTEREST

Interest will be granted from the time of and to the extent determined in the foreign judgment. If the foreign judgment does not fix the interest rate and time period but provides for 'legal interest' to be paid, the German court will determine the interest pursuant to the rules of the foreign law on legal interest.

17. TIME OF ENFORCEMENT AND SUBSEQUENT ACTION

(a) (i) If the enforcement action is not contested, the German proceedings will take approximately three months from the time of service of process to the time of final judgment.
   (ii) If the application for enforcement is contested, there may be one or even two appeals and the entire proceedings may take up to five years.
(b) The judgment will be enforced according to German law.
   (i) The enforcement of a money judgment may proceed by attachment of movable and immovable property.
   (ii) In practice, civil imprisonment is rare. It may, however, be ordered if the debtor does not have sufficient attachable assets and does not give an affidavit stating all of his or her assets. In rare cases, civil imprisonment may be ordered as interim relief to prevent the dissipation of the assets by the debtor.
   (iii) If the debtor is unable to pay, a claim for insolvency may be filed by a creditor.
   (iv) Aside from civil imprisonment, no special restraint on leaving the country is foreseen.
(c) If the judgment calls for specific performance, a German court may levy fines on the respondent if he or she does not perform. Civil imprisonment is also possible. If a third party is asked to perform in his or her place because the respondent does not do so, he or she must prepay the costs.
(d) In the event of an appeal against a decision granting or refusing to grant enforcement:
   (i) A first appeal is permissible if the value of the matter in dispute exceeds EUR 600.00, or if the Court of First Instance granted leave to appeal in its decision. In contrast, a second appeal (*Revision*) is only permissible if leave to appeal was granted in the first appellate decision or an application to appeal is granted by the court of second appeal. As to the first and the second appeal, leave may be granted either if the matter is of fundamental significance, or if a decision is required to further develop or maintain the consistency of the law. Overall, German courts infrequently find that said conditions are fulfilled.

**18–18 / Europe**

(ii) Generally, the first and the second appeal must be filed within one month and supported by a brief on appeal within two months, the time period in each case commencing with the service of the judgment. The judgment granting enforcement is provisionally enforceable irrespective of a pending appeal. In order to prevent provisional enforcement, the party concerned needs to apply for suspension of the enforcement. It may be granted at the discretion of court, taking into account in particular whether the appeal has sufficient chances of success.

18. EXPENSES, LEGAL FEES AND SECURITY FOR COSTS

(a) Court fees depend upon the value in dispute (which in an action to enforce a money judgment will be the amount sought to be enforced). The fees for the proceedings and the expenses for the service of process must be paid in advance to the court. Court fees are a declining percentage of the value in dispute. As an example, in a case where the value in dispute is EUR 50,000.00, one court fee unit amounts to EUR 546.00. However, this amount is multiplied by a certain factor according to the kind of proceedings. In some cases fixed or framework fees are levied. The proceedings to declare a foreign judgment enforceable, for instance, would trigger as a rule, a fixed fee in the amount of EUR 240.00.

(b) Lawyers' fees in litigation are based on the Federal Attorney Remuneration Act (RVG). The lawyer generally receives 2.5 fee units for a lawsuit in the first instance, comprised of 1.3 fee units for initiating proceedings and 1.2 fee units for pleading the case. If, for instance, there is a value in dispute of EUR 50,000.00, the basic lawyers' fee unit will be EUR 1,163.00. In a lawsuit in the first instance the lawyers' fees will therefore add up to EUR 2,907.50 (plus expenses and Value Added Tax). The lawyer and his or her client may agree on higher fees, but fee above the RVG fees will not have to be reimbursed by the losing party.

(c) Contingency fees are only admissible under the restrictive condition that without such fee agreement the client, due to its financial circumstances, would be deterred from asserting its legal rights.

(d) All costs of a prevailing party (other than lawyers' fees) which were necessary for the appropriate handling of the action must be reimbursed by the losing party. The lawyers' legal fees are fully reimbursable to the extent they do not exceed the RVG.

(e) Apart from the prepayment of the court fees, the applicant may be required to post a security deposit for the costs of the respondent if:
  (i) the respondent so requests;
  (ii) the applicant does not have his or her habitual residence in the European Union or in a state which is a party to the Agreement on the European Economic Area; and

App. 2391

    (iii) the applicant does not have sufficient real property or claims secured by a property lien in Germany. For nationals of many countries this requirement is excluded by treaties.

19. BANKRUPTCY/LIQUIDATION

(a) A foreign creditor has the same rights as a local creditor. Generally, all *insolvency* creditors are treated equally, unless they have a privileged status (e.g., as secured creditors).
(b) Foreign insolvency proceedings will be recognized. Therefore, the foreign trustee enjoys the same position and rights as in his or her own jurisdiction. Accordingly, the foreign trustee has, in general, full power of disposal over the local assets of the bankrupt debtor. However, the foreign trustee does not have the authority to use coercive measures in Germany.

20. LAWYERS (WHO CAN APPEAR?)

Every attorney (*Rechtsanwalt*) admitted to the German bar (*Rechtsanwaltskammer*) may appear before every Local Court (*Amtsgericht*), District Court (*Landgericht*) or Higher Regional Court (*Oberlandesgericht*). Local Courts have jurisdiction over cases involving a value of up to EUR 5,000.00 and over all family matters. In cases with a higher value in dispute, the District Court has jurisdiction. There is a specialized bar of attorneys (currently numbering less than fifty) at the Federal Court of Justice, the members of which are exclusively admitted to appear before that court.

21. INTERNATIONAL TREATIES

There is not yet a general multilateral treaty on the recognition and enforcement of foreign judgments. However, for the Member States of the European Union, the recognition and enforcement of court judgments is extensively regulated by Council Regulation (EC) No. 44/2001 of 22 December 2000 and No. 2201/2003 of 27 November 2003 (the latter not applying to Denmark). Apart from cases relating to personal status, all judgments rendered in one EU State will be recognized in all other EU States. In relation to Iceland, Switzerland and Norway the Convention on Jurisdiction and the Recognition and Enforcement of Judgments in civil and commercial Matters of 30 October 2007 (Lugano Convention 2007) applies.

    Bilateral recognition and enforcement treaties exist with The Netherlands, Great Britain and Northern Ireland, Greece, Austria, Belgium, Italy, Switzerland, Tunisia, Hungary, Israel, Norway and Spain. These treaties continue to apply with regard to legal issues not covered by Council Regulations (EC) No. 44/2001 and No. 2201/2003 or the Lugano Convention (if applicable at all).

    In addition to the treaties listed under 5., the following treaties could affect the answers in this questionnaire with regard to specific matters: Revised

App. 2392

**22–25 / Europe**

Convention on Navigation on the Rhine of 17 October 1868 (Article 40), International Convention Relating to the Arrest of Seagoing Ships of 10 May 1952 (Article 4), Agreement on German External Debts of 27 February 1953 (Article 17), Convention on the Contract for the International Carriage of Goods by Road (CMR) of 19 May 1956 (Article 31), Additional Protocol to the Convention on Third Party Liability in the Field of Nuclear Energy of 29 July 1960 (Article 13), Convention on the Liability of Operators of Nuclear Ships of 25 May 1962 (Article XI), United Nations Convention on the Law of the Sea of 10 December 1982 (Annex III, Article 21 and Annex VI, Article 39) and International Convention on Civil Liability for Oil Pollution Damage (1984 Liability Convention) (Article X).

## 22. CROSS-EXAMINATION OF AFFIDAVIT'S DEPONENT

(a, b) Affidavits are not admissible evidence in court proceedings other than in proceedings for interim relief. In enforcement proceedings, a party may request an interrogation of the other party by the court. A party ordered by the court to appear for interrogation must comply, but in practice such orders are not enforceable if the party resides in a foreign country. Cross-examination as such does not exist.

(c) Because a German court generally must reimburse a witness for his or her costs (including travel expenses) relating to the interrogation, a German court has the authority to condition any order to appear upon the requesting party's payment of a security deposit for such costs, to the extent such costs would otherwise be payable from public funds.

## 23. REQUIRED AFFIDAVIT

Not applicable.

## 24. NEW ACTION INSTEAD OF ENFORCEMENT

(a) A new action on the underlying claim may not be instituted. Rather, the res judicata effect of the foreign judgment will be recognized.

(b) The statute of limitations for the enforcement of a foreign judgment depends on the applicable law under which the judgment was rendered.

## 25. PRESCRIPTION

The statute of limitations for the enforcement of the foreign judgment is determined by the laws of the foreign jurisdiction. However, the prevailing opinion among German legal commentators is that a respondent can object to the enforcement of a foreign judgment in Germany if more than thirty years have passed since the foreign judgment became final and non-appealable.

App. 2393

# Exhibit 5

## Decision of Stuttgart Regional Court
## IPRax 2001, 240-249

zugrunde liegenden Rechtsverhältnis nichts zu tun hat (vgl. *Baumbach/Hefermehl*, Wechsel- und Scheckgesetz, 20. Aufl. 1997, Art 12 ScheckG Rdnr. 1). Wenn ein ausländisches Gesetz an diese Verpflichtungserklärung anknüpft und für Durchsetzung verfahrensrechtlich erleichtert, so verletzt das den deutschen ordre public grundsätzlich nicht.

Solche Regelungen sind dem Recht der Bundesrepublik Deutschland zwar nicht bekannt, aber bereits in ihm angelegt. Art. 8 des Abkommens über Bestimmungen auf dem Gebiet des internationalen Scheckprivatrechts (RGBl 1933 II 595) als Teil des deutschen internationalen Scheckrechts sieht vor, daß sich nach dem Recht des Landes, in dessen Gebiet ein Protest zu erheben oder die Handlung vorzunehmen ist, die Form des Protestes, die Fristen für die Protesterhebung sowie die Form der übrigen Handlungen, die zur Ausübung oder Erhaltung des Scheckrechts erforderlich sind, bestimmen. Nach Art. 7 Nr. 6 des Übereinkommens (Art. 65 Nr. 6 ScheckG) bestimmen das Recht des Landes, in dessen Gebiet ein Scheck zahlbar ist, ob sein Inhaber besondere Rechte auf Deckung hat. Ob darunter auch prozessuale Regelungen zu verstehen sind, kann offen bleiben. Jedenfalls läßt sich aus einer Zusammenschau dieser Regelungen die Wertung entnehmen, daß das deutsche Scheckrecht im Interesse des internationalen Zahlungsverkehrs in weitem Maße bereit ist, ausländische scheckrechtliche Regelungen, die aus der Sicht dieses fremden Rechts die Verkehrsfähigkeit eines Schecks beeinflussen, anzuerkennen. Die Verringerung des Schutzes des Ausstellers eines Schecks durch ausländische Regelungen, die Durchsetzung der Erfüllung einer scheckrechtlichen Verpflichtung betreffen, ist – soweit sie am Maßstab fundamentaler verfahrensrechtlicher Grundsätze des deutschen Rechts gemessen wird – dieser Wirkung ausländischer Regelungen über die Formen und Fristen der Geltendmachung von Scheckrechten unter dem Gesichtspunkt der Wirkungen der Verpflichtung durchaus vergleichbar. Sie entfernt sich nicht grundlegend von der auch nach deutschem Recht denkbaren Begehung eines Schecks an Erfüllungs Statt, dessen naheliegende und interessengerechte prozessuale Sicherung sie darstellen soll.

Allerdings können nach dem in Frankreich geltenden Verfahrensrecht Einwendungen gegen den Titel und damit auch gegen den Scheck nicht gerichtlich geltend gemacht werden. Dies ist aber durch die Besonderheiten des Scheckrechts vorbestimmt und auch im deutschen internationalen Scheckrecht bereits angelegt. Die Wirkungen der Scheckerklärung bestimmen sich nach Art. 63 ScheckG nach dem Recht des Landes, in dessen Gebiet die Erklärungen unterschrieben worden sind. Diese Vorschrift entspricht inhaltlich Art. 93 WechselG. Dazu ist anerkannt, daß zu den Wirkungen alles das gehört, was die Haftung betrifft, also Art und Umfang der rechtlichen Verpflichtung, Zulässigkeit von Einwendungen aus dem Grundgeschäft, das Entstehen eines Bereicherungsanspruchs und die Notwendigkeit von Rechtserhaltungsmaßnahmen (vgl. *Baumbach/Hefermehl*, a. a. O., Art. 93 WG, Rdnr. 1; Münchener Kommentar zum BGB/*Martiny*, 3. Aufl. 1998, Internationales Privatrecht, Art. 37 Rdnr. 26). Demnach kann das Verfahren des einzelnen Landes auch bestimmen, daß Einwendungen aus dem Grundgeschäft zur Erhaltung des Vollstreckungstitels für die Scheckforderung nicht erhoben werden können. Das zeigt aber auch, daß die zum französischen Recht bekannte Möglichkeit, die Scheckverpflichtung zu titulieren, über das vom deutschen Rechtsordnung ohnehin Anerkannte nicht in einem ins Gewicht fallenden Maße hinausgeht und geradezu rechtswidrig erschient.

Eine Verletzung von Art. 19 Abs. 4 GG liegt, anders als das Landgericht meint, nicht dadurch vor, daß gegen die Erteilung der Vollstreckungsklausel in Frankreich gerichtlicher Rechtsschutz nicht vorgesehen ist. Art. 19 Abs. 4 GG als Teil der allgemeinen Justizgewährleistungsanspruch erfaßt „nur" die Akte deutscher öffentlicher Gewalt. Die Entscheidung über die Erteilung der Vollstreckungsklausel in Deutschland erfolgt aber in einem gerichtlichen Verfahren. In diesem ist auch bei der Vollstreckbarkeitserklärung öffentlicher Urkunden vorgesehen (§ 13 Abs. 2 AVAG), daß der Schuldner alle Einwendungen, die er gegen den Anspruch selbst richten, in Verfahren zur Erteilung der Vollstreckungsklausel geltend machen kann. Allerdings wird vertreten, daß die Grenzen des § 328 Abs. 1 Nr. 4 ZPO auch für Art. 50 EuGVÜ gelten. Nach dieser Vorschrift ist die Anerkennung zu versagen, wenn die Anerkennung mit dem Grundrechten unvereinbar ist. Bei dem Justizgewährleistungsanspruch des Art. 19 Abs. 4 GG handelt es sich zwar um ein grundrechtsgleiches Recht, das sich aber nur auf Akte deutscher Gewalt bezieht.

3. Die übrigen Voraussetzungen für die Vollstreckbarkeitserklärung nach dem EuGVÜ liegen vor. Die Gläubigerin hat jeweils die „titres exécutoire", die Nichtzahlungsbescheinigung und die Zustellungsurkunde über den Scheck im Original vorgelegt (Art. 50 Abs. 3, Art. 46 Abs. 1 EuGVÜ). Der Gläubiger hat auch bei Stellung seines Antrags auf Erteilung der Vollstreckungsklausel am 22. 4. 1997 Urkunden des zuständigen Gerichtsvollziehers vorgelegt, aus denen sich die wirksame Zustellung ergibt. Aus diesen ist zwar zu ersehen, daß die Nichtzahlungsbescheinigung und der Vollstreckungstitel dem Schuldner nicht persönlich übergeben wurden. Art. 47 Abs. 1 EuGVÜ verlangt jedoch lediglich eine Zustellung. Die Art der Zustellung richtet sich nach dem Recht des Staates, aus dem der vollstreckbare Titel stammt (vgl. *Kropholler*, a. a. O., Art. 47 Rdnr. 5). hier also nach den französischen Vorschriften. Nach diesen ist die Zustellung durch Niederlegung beim Bürgermeisteramt und Benachrichtigung durch einfachen Brief wirksam erfolgt.

Die Entscheidung über die Kosten des Beschwerdeverfahrens folgt aus § 91 ZPO, diejenige über den Wert des Beschwerdeverfahrens aus § 3 ZPO. Diese Vorschriften sind ergänzend zu denjenigen in §§ 12–44 AVAG heranzuziehen (vgl. *Kropholler*, a. a. O., Art. 37 EuGVÜ, Rdnr. 2). Der Senat hat bei der Umrechnung von FF 7.700,– (1.000 + 1.000 + 2.500 + 3.200) einen Kurs von 0,29 zugrunde gelegt.

## Nr. 24* LG Stuttgart – Haager Landkriegsordnung Art. 52; Londoner Schuldenabkommen Art. 5; BGB § 196; ZPO §§ 261, 328; GG Art. 100 Abs. 2; GVG § 17 a Abs. 3; ArbGG § 32

(Urteil v. 24. 11. 1999 – 24 O 192/99)

**Die Klage eines im NS-Staat als Zwangsarbeiter für ein deutsches Unternehmen tätigen Ausländers auf Entgelt und Schmerzensgeld für die Zwangsarbeit ist zulässig.**

**Ihr steht Art. 5 Abs. 2 Londoner Schuldenabkommen nicht entgegen. Die klageweise geltend gemachten Ansprüche sind jedoch nach §§ 196 f., 852 BGB verjährt. Eine Verjährungshemmung mit Blick auf das Londoner Schuldenabkommen ist nicht eingetreten.**

**Völkerrechtliche Reparationsansprüche der betroffenen Zwangsarbeiter selbst bestehen nicht. Eine Vorlage nach Art. 100 Abs. 2, 25 GG scheidet aus.**

(Leitsätze der Redaktion)

Der Kl. begehrt von der Bekl. Bezahlung und Schmerzensgeld für Zwangsarbeit, die er nach seinen Angaben bei der Rechtsvorgängerin der Bekl. in den Jahren 1942 bis 1945 leisten mußte. Die Bekl. hält die Klage wegen möglicher anderweitiger Rechtszuständigkeit und fehlender Justiziabilität für unzulässig und beruft sich im übrigen u. a. auf Verjährung. Der 1925 in L. in der Wojwodschaft Posen geborene Kl. ist seit seiner Geburt polnischer Staatsangehöriger. Im Frühjahr 1942 wurde er dort zum Schlosser ausgebildet. Die Rechtsvorgängerin der Bekl. war damals als Konstruktionsbüro mit angeschlossenem Prototypenbau tätig und zwar zumindest im Bereich Fahrzeug- und Sonderfahrzeugbau. Sie beschäftigte bis Kriegsende ausländische verschiedener Nationen, jedenfalls ein Teil der deutschen Firmen förderte während des Zweiten Weltkriegs aktiv und eigennützig, weil gewinnsteigernd ausländische Arbeitskräfte an, die hierzu zwangsweise ins Reich verbracht wurden. Parallel zu den gegenwärtigen Verhandlungen über die „Stiftungsinitiative: Erinnerung, Verantwortung, Zukunft" wurden in den USA von ehemaligen Zwangsarbeitern Sammelklagen gegen verschiedene deutsche Unternehmen anhängig gemacht.

Der Kl. trägt vor, er habe 1942 aufgrund eines polizeilichen Befehls auf dem Arbeitsamt des benachbarten B melden müssen, wo er sofort arrestiert und zu einem Sammeltransport geführt worden sei. Mit der Bahn sei er nach Stuttgart transportiert worden. Dort habe er von Stellen des Deutschen Reichs gegen seinen Willen festgehalten – vom 21. 3. 1942 bis 30. 4. 1945 bei der Bekl. im Werk D zu arbeiten gehabt. Er habe Autoreparaturen und Umrüstungen an Schnee- und Schwimm-

wagen durchführen müssen, sei im Bereich des Baus von Flugzeugrümpfen und Tragflächen eingesetzt gewesen und habe auch Gehäuse für Hochleistungsmotoren gebaut.

Obwohl seine Arbeitszeit 12 Stunden pro Tag bei sieben Tagen in der Woche betragen habe, habe er bei der Bekl. keinerlei Vergütung oder Entgelt erhalten. Er sei in einem von der Bekl. geführten und verwalteten Barackenlager untergebracht worden, das mit primitiven Betten mit Säcken aus Stroh oder Heu ausgestattet gewesen sei. Die Ernährung sei sehr schlecht gewesen. Sein Einsatz beruhe auf einer Anforderung ausländischer Arbeitskräfte durch die in der fraglichen Zeit tätigen Organe der Bekl. oder deren Mitarbeiter. Insgesamt habe die Rechtsvorgängerin der Bekl. zu fünfzig Zwangsarbeiter beschäftigt. Außerdem habe – wie der Bevollmächtigte des Kl. in der mündlichen Verhandlung unter Berufung auf einen Artikel in der S Zeitung vom 12. 10. 1999 vortrug – R zusammen mit seinem Sohn noch im März 1944 bei Himmler vorgesprochen und persönlich um KZ-Häftlinge für die Untertage-Rüstungsproduktion nachgesucht. Bei einem (unstreitig) damals üblichen Stundenlohn von 1,25 Reichsmark errechnet der Kl. unter Berücksichtigung von Zuschlägen einen ihm zustehenden Verdienst von 19.472,48 Reichsmark. Dieser sei als Schadensersatzanspruch nicht der Abwertung durch die Währungsreform von 1948 unterfallen und deshalb im Verhältnis 1:1 in Deutsche Mark umzustellen. Um den Geldwertverlust in Anbetracht der langen Zeiträumen bis heute auszugleichen, sei der Betrag mit dem Faktor 4,545454 zu multiplizieren, was eine Forderung von 88.511,26 Deutsche Mark ergebe. Wegen der weiteren Einzelheiten der Berechnung wird auf Seite 6 fortfolgende der Klageschrift verwiesen. Er ist weiter der Auffassung, daß ihm daneben noch Schmerzensgeld in Höhe von mindestens 10.000 Deutsche Mark zustehe. Der Kl. beantragt: Die Bekl. wird verurteilt, an den Kl. 88.511,26 Deutsche Mark sowie ein angemessenes Schmerzensgeld, mindestens aber 10.000 Deutsche Mark, nebst 4% Zinsen aus 98.511,26 Deutschen Mark seit Rechtshängigkeit zu bezahlen. Der Bekl. beantragt: Die Klage wird abgewiesen.

Die Bekl. bestreitet die tatsächlichen Angaben des Kl. im wesentlichen mit Nichtwissen. Ihre Unterlagen seien (unstreitig) durch den Bombenangriff von 19./20. 10. 1944 sowie Beschlagnahmen und Plünderungen direkt nach der Besetzung Stuttgarts vernichtet worden. Ihre damaligen Mitarbeiter seien verstorben. Auch anderweitig ergiebige Aussagen lägen ihr nicht vor. Die damaligen Arbeitszeiten hätten allerdings – einschließlich Pausen – von Montag bis Freitag zehn Stunden und samstags sechs Stunden betragen. Ihre Rechtsvorgängerin sei im Rahmen der Gleichschaltung der deutschen Wirtschaft von Akten der hoheitlichen Gewalt des nationalsozialistischen Staates in Form von Befehlen und Planungen abhängig gewesen. Die Einflußnahme des Staates sei bei ihr als einem in der Rüstungsproduktion tätigen Unternehmen beherrschend gewesen. Sie sei lediglich als Zuweisungsempfängerin tätig geworden, habe selbst keine Anstaltsgewalt ausüben können und statt eines Lohns nur die staatlich verordnete Alimentation erbringen können. Jedenfalls lasse es sich aber nicht ausschließen, daß sie erheblichem Druck ausgesetzt gewesen sei, ausländische Arbeitskräfte anzufordern. Im übrigen liege ein unverschuldeter Irrtum der Mitarbeiter ihrer Rechtsvorgängerin über die Rechtmäßigkeit des Handelns vor. Wegen des weiteren Vorbringens im Hinblick auf tatsächlichen Vortrag wird auf die bis zur mündlichen Verhandlung eingegangenen Schriftsätze verwiesen. Für die Auffassungen der Parteivertreter zu den Rechtsproblemen im einzelnen wird zusätzlich auch auf die Schriftsätze vom 29. 10. und 17. 11. 1999 Bezug genommen.

*Entscheidungsgründe:*

Die Klage ist zulässig (A). Ihr steht Art. 5 Abs. 2 des Londoner Schuldenabkommens nicht entgegen (B). Sie ist jedoch nicht begründet (C).

A. Der Zulässigkeit der Klage stehen weder eine anderweitige Rechtshängigkeit (I) noch ein Ausschluß des Rechtswegs entgegen (II). Weiter sind die ordentlichen Gerichte zur Entscheidung berufen (III). Der Kl. ist ordnungsgemäß vertreten (IV).

1. Der Klage steht keine von der Beklagtenseite als „möglicherweise beachtlich" bezeichnete anderweitige Rechtshängigkeit entgegen. Das folgt zwar noch nicht daraus, daß der tatsächliche Vortrag der Bekl. hierzu auch nicht ansatzweise substan-

tiiert ist. Dieses Verfahrenshindernis wäre nämlich von Amts wegen zu beachten. Aber zum einen kann eine anderweitige Rechtshängigkeit einer Klage unter ausdrücklicher Beteiligung der Parteien nicht festgestellt werden (1). Und zum anderen wäre bei der von der Bekl. in den Raum gestellten Konstellationen einer Sammelklage die weitere Voraussetzung nicht gegeben, daß ein in dem anderen Verfahren ergehendes Urteil in Deutschland anerkennungsfähig (Geimer in Zöller Zivilprozeßordnung 21. Auflage 1ZPR Randnummer 96) wäre (2).

1. Sofern das Verfahrensrecht des Staates, in dem eine andere Klage unter Beteiligung des Kl. gegen die Bekl. rechtshängig sein soll, für die Rechtshängigkeit eine Zustellung der Klage erfordert, kann die anderweitige Rechtshängigkeit ausgeschlossen werden. Weder behauptet die Bekl., eine solche Zustellung erhalten zu haben, noch erfolgte eine solche im dafür vorgesehenen Rechtshilfeverfahren. Die hierfür zuständige Stelle im Hause hat auf Anfrage erklärt, daß für die Bekl. kein Antrag auf eine solche Klagezustellung einging. Sollte nach dem Verfahrensrecht des betreffenden Staats Rechtshängigkeit schon bei Einreichung der Klage bei Gericht eintreten, was im Rahmen der Prüfung einer anderweitigen Rechtshängigkeit hingenommen wird (BGH NJW 1987, S. 3083 f.), so geht eine Unaufklärbarkeit zu Lasten der Bekl. Verfahrensfragen sind zwar von Amts wegen zu erforschen, soweit sich diese aber nicht endgültig klären lassen, greift die materielle Beweislast. Bei negativen Prozeßvoraussetzungen trifft dies die Bekl., die sich auf das Verfahrenshindernis beruft (Thomas/Putzo Zivilprozeßordnung 20. Auflage vor § 253 Randnummer 13). Eine Aussetzung des Rechtsstreits bis zur Klärung kommt vorliegend nicht in Betracht. Die vorliegende Klage ist nunmehr seit sechs Monaten anhängig. Es kann davon ausgegangen werden, daß der Bekl. eine andere und vor allem frühere Rechtshängigkeit inzwischen bekannt geworden wäre.

2. Ein von der Bekl. befürchtetes Urteil in einer Sammelklage ohne aktive Beteiligung des Kl., bei der ihr unter Umständen die Klage noch nicht einmal zugestellt werden müßte, wäre zudem nicht anerkennungsfähig. So ist bereits nicht ersichtlich, daß Gerichte in den USA bei einer fiktiven Anwendung deutscher Gesetze international zuständig wären (§ 328 Abs. 1 Nr. 1 ZPO – dies gälte im übrigen auch für Einzelklagen. Außerdem widerspräche ein Urteil in einer von der Beklagtenseite erwähnten Sammelklage – jedenfalls soweit es den Kläger ohne dessen aktive Beteiligung an einem solchen Verfahren betrifft – dem ordre public (§ 328 Abs. 1 Nr. 4 ZPO). Sie läßt sich nämlich mit grundlegenden Verfahrensmaximen (Zöller/ Geimer Zivilprozeßordnung 21. Auflage § 328 Randnummer 155) des deutschen – und im übrigen auch des sonstigen kontinentaleuropäischen – Rechts offensichtlich nicht vereinbaren (Mark EuZW 1994 S. 238, 240 f. unter 1a; Mann NJW 1994 S. 1187, 1188 f. unter 2.; Frauendorf ZRP 1999 S. 1, 5 f.; anderer Ansicht: OLG Frankfurt Entscheidungen der Oberlandesgerichte in Zivilsachen 1992 S. 89, 94 f., das ohne eigene Begründung auf Stiefel/Stürner VersR 1987 S. 829 f. verweist, das aber jedenfalls für den konkreten Fall wohl ebenfalls eine Anerkennungsfähigkeit verneinen würden, a. a. O. S. 830). Nach kontinentaleuropäischer Auffassung ist der Rechtsschutz nämlich individuell zu gewähren und braucht sich niemand durch Dritte – gegebenenfalls sogar ohne rechtliches Gehör – allein wegen seiner Mitgliedschaft in einer Gruppe („class") eine ihn bindende Entscheidung aufzwingen zu lassen. Soweit das betreffende Recht – auf Klägerseite – einen Austritt aus der „class" zuläßt, entschärft dies die Problematik nicht. Denn entweder das betroffene Recht stellt lückenlos sicher, daß alle Mitglieder der „class" von dem Prozeß unter-

richtet werden. Dies verbietet im vorliegenden Fall aber eine Sammelklage, da nicht ersichtlich ist, wie die in alle Welt verstreuten betroffenen Zwangsarbeiter – selbst wenn das Verfahren auf der Passivseite nur die Bekl. mit einer unstreitig überschaubaren Zahl von Zwangsarbeitern betreffen sollte – zuverlässig erreicht werden sollen. Oder es stellt dies nicht sicher, dann besteht aber die Möglichkeit zum Austritt nicht, womit ein Verstoß gegen den oben beschriebenen ordre public vorliegt. Denn selbst bei prominenteren Fällen berichten die öffentlichen Medien nur selektiv. Dies wird letztlich durch das Verhalten der Bekl. in diesem Prozeß bestätigt, die noch nicht einmal als ein auch in den USA namhaftes Unternehmen mit weitaus besseren Informationsquellen als der Kl. zu wissen scheint, ob sie von einer Sammelklage betroffen ist. Sollte der Beklagtenvortrag dagegen dahingehend zu verstehen sein, daß sie die Rechtsauffassung vertritt, aus einem Urteil in einer abstrakten Sammelklage gegen „die deutsche Wirtschaft" ohne ihre vorherige Einbeziehung und ohne Zustellung einer Klage an sie verpflichtet zu sein (dem stehen die beiden auf S. 12 f. des Schriftsatzes vom 4. 10. 1999 genannten Verfahren aber entgegen), so bestehen schon nachhaltige Zweifel, ob dies nach dem Zivilprozeßrecht der USA (Bundesrecht oder Recht der Einzelstaaten) der Fall ist. Daß eine solche Vorgehensweise gegen den ordre public verstieße, versteht sich aber von selbst.

II. Es liegt kein Ausschluß des Rechtsweges („nicht justiziabel") vor.

1. Dies gilt zunächst für zivilrechtliche Anspruchsgrundlagen.

a. Auf die zivilrechtlichen Anspruchsgrundlagen, insbesondere §§ 823 ff. BGB, hätte die behauptete fehlende Justiziabilität von Reparationsansprüchen keinen Einfluß. Sie sind nämlich vom Völkerrecht und den dortigen Reparations- und sonstigen Ansprüchen unabhängig und werden nicht „absorbiert" (BVerfG Beschluß vom 13. 5. 1996 NJW 1996 S. 2717, 2719 rechte Spalte 2. Absatz). Dasselbe gilt für das Verhältnis der Haager Landkriegsordnung (RGBl. 1910 S. 107 ff.) zum Bürgerlichen Gesetzbuch.

aa. Auch wenn die Kammer an die oben genannte Entscheidung des BVerfG nicht nach § 31 des Gesetzes über das BVerfG gebunden ist, folgt es den dortigen überzeugenden Ausführungen, die die Beklagtenseite im wesentlichen (vergleiche hierzu noch bb.) ohne neue Argumente unter Berufung auf ebenfalls nicht näher begründete Auffassungen der Bundesregierung und frühere sowie spätere angeblich in ihrem Sinn ergangene Entscheidungen der Fachgerichte bekämpft. Letzteres erfolgt schon deshalb zu Unrecht, weil in sämtlichen drei Entscheidungen, die zeitlich nach der Entscheidung des BVerfG ergingen und auf die sich die Beklagtenseite beruft, die Zulässigkeit der Klage bejaht wurde (OLG Köln, Urteil vom 27. 8. 1998 – 7 U 167/97 ausdrücklich auf S. 9 Blatt 296 der Akten; Urteil vom 3. 12. 1998 – 7 U 222/97 WM 1999 S. 242, 244 durch Bejahung der tatbestandlichen Voraussetzungen des § 839 BGB; OVG Münster NJW 1998 S. 2302, 2304 rechte Spalte sowie 2305 durch Einstieg in die materielle Prüfung des Abkommens über die Behandlung von Kriegsgefangenen sowie der behaupteten vertraglichen Vereinbarungen des Erblassers mit der Beklagten). Aus dem oben genannten Urteil des OLG Köln vom 3. 12. 1998 kann die Beklagtenseite im übrigen noch nicht einmal aus der Begründetheitsprüfung etwas für sich herleiten, nachdem die Verneinung der Ansprüche der Kl. allein auf das ebenfalls innerstaatliche Bundesentschädigungsgesetz gestützt wird. Im übrigen war es ebenfalls entgegen den früheren Behauptungen der Beklagtenseite selbst zu Zeiten, als die Frage des Parallellaufens

der Ansprüche noch offen war, als selbstverständlich angesehen worden, daß die Gerichtsbarkeit eröffnet war. Es stellte sich allenfalls die Frage, ob das Londoner Schuldenabkommen sie (ausnahmsweise) ausschließt, was aber vom BGH verneint wurde (MDR 1963 S. 492, 493 1. Absatz am Ende, weswegen – siehe noch unten B – die Zivilgerichte die Klagen als zur Zeit unbegründet abwiesen). Dies wird von der Beklagtenseite neuerdings (Schriftsatz vom 17. 11. 1999, Seite 6 ff.) wohl auch so gesehen.

bb. Die einzigen nicht bereits vom BVerfG ausdrücklich abgehandelten Argumente rechtfertigen keine andere Beurteilung.

(1) Soweit die Beklagtenvertreter sich darauf berufen, daß das Zivilrecht nicht geeignet sei, einen Ausgleich für Kriegsschäden in Form von Millionen von Klagen zu leisten, legt dies schon der Auffassung *France de la Croix* (NJW 1960 S. 2268 ff.) zur Exklusivität zugrunde, die das Völkerrecht in seiner Entscheidung zitiert und die es nicht zu überzeugen vermochte. Dasselbe gilt für die Kammer. Denn zum einen werden Ansprüche üblicherweise ohne Zuhilfenahme von Gerichten erfüllt und zum anderen bleibt es dem einzelnen Staat unbenommen, ob er solche – nach Ansicht der Beklagtenvertreter unpraktikablen – Millionen von Ansprüchen gewähren will. Das Völkerrecht hat nicht die Aufgabe, die einzelnen Staaten zu bevormunden. Ob das nationale Recht Deutschlands solche Ansprüche gewährt, ist dann im übrigen eine Frage der Begründetheit.

(2) Weiterhin wollen die Beklagtenvertreter die fehlende Justiziabilität zu Unrecht auf das Londoner Schuldenabkommen vom 27. 2. 1953 stützen. Eine Entscheidung über das Bestehen oder Nichtbestehen von Ansprüchen beziehungsweise ihre Struktur war mit ihm nicht beabsichtigt. Es legt lediglich fest, wie mit vergleichbaren Schulden vorläufig verfahren wird, ohne an ihnen etwas zu verändern (so auch OLG Köln, Urteil vom 3. 12. 1998 a. a. O. S. 250). Deshalb kann die Erwähnung der Reparationen in Art. 5 Abs. 2 des Abkommens entgegen der Auffassung der Beklagtenvertreter nicht dazu herangezogen werden, den Begriff der Reparationen im innerstaatlichen Recht festzulegen, zumal – unabhängig davon, ob eine Festlegung Wirkungen über das Abkommen hinaus haben sollte – der mit „Begriffsbestimmungen" betitelte Artikel 3 des Abkommens gerade keine Definition der Reparationen enthält. Aus früheren Entscheidungen der Fachgerichte, die aufgrund von Klagen anderer Zwangsarbeiter zu seinem Art. 5 Abs. 2 ergingen, läßt sich für die vorliegende Frage ebenfalls nichts herleiten. Der BGH hatte nämlich bereits in seinem Urteil vom 26. 2. 1963 (MDR 1963 S. 492, 493) die Klagesperre des Art. 5 Abs. 2 des Londoner Schuldenabkommens nach Sinn und Zweck auf zivilrechtliche Ansprüche angewandt und die Frage der „Exklusivität der völkerrechtlichen Reparationsansprüche", die „schlechthin zivilrechtliche Individualansprüche . . . von vornherein" ausschlössen, ohnehin offengelassen.

cc. Die Anspruchsparallelität besteht nicht nur zwischen Spezialgesetzen wie dem Bundesentschädigungsgesetz oder – wie die Beklagtenseite neuerdings meint – erst nach dem Abschluß des 2 + 4-Vertrags neu zu erlassenden Gesetzen und völkerrechtlichen Reparationsansprüchen. Vielmehr führt das BVerfG in der Entscheidung in klarer logischer Schlußfolgerung selbst ausdrücklich aus, daß dies erst recht für Vorschriften gilt, die in keinem spezifischen Zusammenhang mit der Regelung von Kriegsfolgen (BVerfG a. a. O. S. 2719 rechte Spalte 2. Absatz) oder der nationalsozialistischen Zwangsherrschaft stehen. Die Argumentation der Beklagtenvertreter auf Seite 5 des Schriftsatzes vom 17. 11. 1999, daß dies alles „gerade" im „Zusammenhang mit NS-Zwangsarbeit" nicht gelte, ignoriert

im übrigen geflissentlich, daß die Entscheidung des BVerfG ebenfalls in einer Zwangsarbeitersache erging.

dd. Wollte man dies mit den Beklagtenvertretern dennoch generell anders sehen, würde sich im konkreten Fall wohl trotzdem nichts ändern. Es spricht nämlich viel dafür, an dieser Stelle zugunsten des Kl. von einem rein innerstaatlichen Vorgang auszugehen. Die Zwangsverpflichtung des Kl. wurde vom Deutschen Reich nämlich als rein deutsche Angelegenheit behandelt, woran sich Deutschland samt seinen Gebietsassen festhalten lassen muß (ähnliche Ansätze finden sich – allerdings beschränkt auf den Staat als Anspruchsgegner und das anwendbare Recht – in der Entscheidung des BVerfG a. a. O. S. 2717 rechte Spalte unten). Soweit sich dies aufgrund der spärlichen Angaben der Parteien beurteilen läßt, beruhte die behauptete Zwangsarbeit des Kl. auf der Verordnung zur Sicherstellung des Kräftebedarfs für Aufgaben von besonderer staatspolitischer Bedeutung (RGBl. 1939 Teil 1 S. 206 f. mit der Ersten Durchführungsverordnung S. 403 ff., die auch den Vordruck zur Anforderung der Arbeitskräfte enthält, S. 407 f.). Sie war noch in Friedenszeiten im Reichsgebiet eingeführt worden und entspricht an sich in zahlreichen Punkten dem heute in Deutschland geltenden Arbeitssicherstellungsgesetz (BGBl. 1968 Teil 1 S. 787 ff.). Auf den Kl. wurde sie nur deswegen angewandt, weil die Verordnung ab 1. 9. 1940 im Wohngebiet des Kl. eingeführt worden war (Verordnung über den Arbeitseinsatz in den eingegliederten Ostgebieten RGBl. 1940 Teil 1 S. 1129). Dieses war tatsächlich zwar völkerrechtswidrig, da auf einem Verstoß gegen das Verbot des Angriffskriegs im Briand-Kellogg-Pakt (RGBl. 1929 Teil 2 S. 97 ff.) beruhend, aber durch die anfängliche militärische Überlegenheit Deutschlands faktisch wirksam als Teil des „Reichsgaus Posen" (§ 1 Abs. 1 des Führererlasses vom 8. 10. 1939, RGBl. 1939 Teil 1 S. 2042 f.) vom Deutschen Reich annektiert worden. Ohne diese Annektion hätte die Verpflichtung des Kl. nämlich schon offenkundig einen Verstoß gegen § 1 Abs. 2 der Verordnung in Verbindung mit Art. 52 der Haager Landkriegsordnung (RGBl. 1910 S. 107 ff.) dargestellt, die hierzu wegen des Verweises in § 1 Abs. 2 der Verordnung auf Staatsverträge und anerkannte Regeln des Völkerrechts auch nicht transformiert werden brauchte. Dabei kommt es nicht darauf an, ob – was in den hier zugänglichen Werken nicht festgestellt werden kann – die Haager Landkriegsordnung trotz Ratifizierung durch sämtliche Staaten, deren Staatsgebiet Teile des später wiedererstandenen Polens umfaßten, für Polen nach seiner Unabhängigkeit nicht mehr gegolten haben sollte, denn die entsprechenden Normen waren jedenfalls bis zum Zweiten Weltkrieg Völkergewohnheitsrecht geworden. Die Schlechterbehandlung des Kl. gegenüber Deutschen, die wie er zwangsweise verpflichtet wurden, beruht ebenfalls auf einer vom Reich als innerstaatliche Angelegenheit angesehenen „Anordnung über die arbeitsrechtliche Behandlung der polnischen Beschäftigten" vom 5. 10. 1941 (Reichsarbeitsblatt 1941 Teil 1 S. 448 ff.). Die von den Parteivertretern angesprochene Verordnung über die Einsatzbedingungen der Ostarbeiter (RGBl. 1942 Teil 1 S. 419 ff.), die eindeutig einen grenzüberschreitenden Bezug hatte, galt demgegenüber nicht für den Kl., sondern nur für Arbeitskräfte aus Gebieten östlich des „Generalgouvernements", also praktisch östlich der heutigen Ostgrenze Polens (§ 1 der Verordnung).

b. Wenn sich die Beklagtenseite weiter darauf beruft, daß durch den Krieg das geltende Recht suspendiert worden sei (und damit nichts parallellaufen könne), hat sie auch damit keinen Erfolg. Abgesehen davon, daß dies wohl eher eine Frage des materiellen Rechts sein dürfte, galten die hier einschlägigen Teile des Bürgerlichen Gesetzbuches uneingeschränkt fort.

Soweit völkerrechtliche Vorschriften eine Rolle spielen, so stellt der Krieg – wie die Klägervertreter zu Recht anführen – keinen völlig rechtlosen Raum dar, es wird lediglich teilweise – ein ius in bello eingeschränkt. Wer sich an dessen nicht hält, der hat die Folgen zu tragen, wobei es – unabhängig von einer Verpflichtung aus dem Völkerrecht – im allgemeinen im eigenen Interesse des betroffenen Staats liegen dürfte, innerstaatliche Sanktionsmaßnahmen vorzusehen, um einer ausufernden eigenen (völkerrechtlichen) Inanspruchnahme für ein Fehlverhalten seiner Angehörigen von vornherein einen Riegel vorzuschieben. Daß er nicht in gleicher Weise ein Interesse für Ansprüche gegen sich selbst hat, liegt dabei auf der Hand.

Dementsprechend sind die bereits oben unter a. aa. diskutierten Urteile des OLG Köln und des OVG Münster entgegen der Auffassung der Beklagtenvertreter im Schriftsatz vom 17. 11. 1999 auf Seite 16 ff. auf Ansprüche zwischen Zivilpersonen auch nicht unbesehen übertragbar. Im übrigen kommt das OLG Köln im Urteil vom 3. 12. 1998 – 7 U 222/97 WM 1999 S. 242, 244 zum Ergebnis, daß die an sich gegebenen Ansprüche aus § 839 BGB am später eingeführten Bundesentschädigungsgesetz scheitern und nicht daran, daß § 839 BGB in Verbindung mit der Haager Landkriegsordnung von 1939 bis 1945 gar nicht oder wenigstens nicht für den dortigen Kläger gegolten hätte. Daß bei Amtshaftungsansprüchen im Rahmen des Einsatzes bewaffneter Kampfverbände außerhalb des eigenen Staatsgebiets etwas anderes gilt (so OLG Köln, Entscheidung vom 27. 8. 1998 – 7 U 167/97 S. 17 f., Blatt 304 f. der Akten), ist im übrigen nachvollziehbar. Unabhängig von der Frage des Anspruchsgegners handelt es sich beim vorliegenden Fall – wenn von der Eroberung des Wohngebiets des Kl. einmal abgesehen wird – im übrigen um einen mit dem sonstigen Kriegsereignissen nur mittelbar zusammenhängenden Vorgang, für den – siehe schon oben a. dd. – das Reich selbst damals kein anderes Recht anzuwenden gedachte als zu Friedenszeiten.

Weiterhin würde es selbst dann nicht an einem parallel laufenden innerstaatlichen Recht fehlen, wenn eine allgemeine Vermutungsregel existieren sollte, daß das nationale Recht des Schädigerstaats sein allgemeines deliktsrechtliches Instrumentarium nicht zugunsten der durch Kriegshandlungen geschädigten Personen fremder Staatsangehörigkeit zur Verfügung stellen will (*Tomuschat* IPRax 1999 S. 237, 239; gälte dies nur für „collateral damages" im Kosovo?). Denn selbst wenn man dem folgen wollte, so läge hier – selbst bei Annahme von Kriegshandlungen – ein Sachverhalt vor, in dem die Vermutung erschüttert wäre. Wegen der unter a. dd. abgehandelten Situation wäre der Kl. damals zwar als Reichsunteran minderer Klasse behandelt worden, aber eben doch als Reichsunteran. Daß bei Anwendung der damaligen „völkischen" Rechtsauffassungen dem Kl. keine Ansprüche zugestanden hätten, ist bei dieser Betrachtung unerheblich, weil diese Rechtsperversion nach allgemeiner Ansicht selbst unter Berücksichtigung intertemporalen Rechts keine Anwendung findet.

c. Schließlich kann das Argument der Gewaltenteilung nicht dazu führen, die Justiziabilität zu verneinen. Die Beklagtenseite führt vergeblich an, daß die Bundesregierung mit ihrer Beteiligung an der „Stiftungsinitiative: Erinnerung, Verantwortung und Zukunft" über die auswärtigen Beziehungen allein zu entscheiden und sich die Justiz jeder Einmischung in die äußeren Angelegenheiten zu enthalten habe, die dieser Lösung vorgreife.

Als Schlagwort besitzt das Prinzip der Gewaltenteilung (Art. 20 Abs. 3 GG) nämlich keine Überzeugungskraft. Das GG hat es an nahezu keiner Stelle (einzige Ausnahme: Art. 97 GG) nach der reinen Lehre im Sinne der scharfen Trennung der Staatsge-

walten verwirklicht, vielmehr besteht sein Zweck darin, daß sich die drei Staatsgewalten gegenseitig kontrollieren und begrenzen (Prinzip der „cheques and balances"). Die hierbei bestehende Grenze, daß keine der betroffenen Gewalten, also hier die Exekutive, der für die Erfüllung ihrer verfassungsmäßigen Aufgaben erforderlichen Zuständigkeiten beraubt werden darf (BVerfGE 9 S. 268, 279 f.), wird vorliegend nicht erreicht. Der von Beklagtenseite befürchtete Eingriff in Art. 59 GG als einer der Kompetenznormen genügt dafür nicht. Außerdem steht es der Bundesregierung in Zusammenarbeit mit der ersten Gewalt (cheques and balances, siehe oben) jederzeit offen, durch entsprechende Gesetzesänderungen einen Vorrang herzustellen, sei es daß die zivilrechtlichen Ansprüche der Zwangsarbeiter für einen Verhandlungszeitraum erneut auf Eis gelegt werden – wie dies durch die innerstaatliche Umsetzung des Londoner Schuldenabkommens bereits einmal der Fall war – oder daß die Ansprüche – soweit dem Völkerrecht, insbesondere zwischenstaatliche Verträge nicht entgegenstehen – enteignet werden, was dann allerdings eine angemessene Entschädigung (Art. 14 Abs. 3 S. 2 und 3 GG) zur Folge haben müßte. Bis zu einer solchen Entscheidung sieht sich das Zivilgericht an der Behandlung der Sache aber nicht gehindert.

2. Soweit sich der Bevollmächtigte des Kl. in der mündlichen Verhandlung auf direkte Ansprüche des Kl. gegen die Bekl. aus Reparationsrecht als Teil des Völkerrechts gestützt hat, ist auch die Frage des Bestehens solcher Ansprüche jedenfalls zwischen Individuen justiziabel. Das Grundgesetz gibt – selbst wenn sich Art. 19 Abs. 4 GG in der Tat auf Eingriffe der öffentlichen Gewalt beschränkt – von einer im Rechtsstaatsprinzip des Art. 20 Abs. 3 GG enthaltenen umfassenden Rechtsschutzgarantie aus (BVerfGE 54 S. 277, 291). Für Reparationen gilt nichts besonderes. Soweit sich die Klägerseite darauf beruft, daß diese nur in völkerrechtlichen Verträgen geschaffen werden, hat dies mit der Frage der Zulässigkeit einer Klage nichts zu tun. Ist eine solche Schaffung erforderlich und fehlt es an ihr, so wäre die Klage unschlüssig und damit als unbegründet abzuweisen. Daß Reparationen nicht per se unklagbar sind, entspricht allgemeiner Ansicht und liegt zum Beispiel Art. 3 Abs. 3 des sechsten Teils des Vertrags zur Regelung aus Krieg und Besatzung entstandener Folgen (BGBl. 1954 Teil 2 S. 157, 202 ff.) zugrunde, wonach in der Bundesrepublik Deutschland Klagen nicht zugelassen werden, mit denen die Rückabwicklung von Reparationen begehrt wird. Auch der Einwand einer „political question" greift nicht. Es bestehen zwar mit den Begriffen des „Ermessens" und des „Beurteilungsspielraums" Rechtsfiguren, die in weiten Bereichen der „political question" gleichkommen, wenn auch mit einer engeren Mißbrauchskontrolle; für den vorliegenden Fall greifen sie aber nicht. Ein völkerrechtliches Verbot, Rechtsschutz im Bereich von Reparationen zu gewähren, ist ebenfalls nicht ersichtlich.

III. Die ordentlichen Gerichte und damit das LG Stuttgart als internationaler und nationaler allgemeiner Gerichtsstand (§§ 12, 17 ZPO) für die Bekl. sind zuständig. Soweit die parallellaufenden zivilrechtlichen Ansprüche betroffen sind, liegt weder eine Zuweisung an die Arbeits- (1) noch an die Verwaltungsgerichte (2) vor. Für die behaupteten individuellen Reparationsforderungen aus Völkerrecht besteht Gesamtzuständigkeit (3). Ein Vorabbeschluß war nicht angezeigt (4).

1. Nach der inzwischen weit überwiegenden Auffassung (statt vieler: LG München, Urteil vom 16. 9. 1999 – 6 O 8417/99 S. 4 sowie Arbeitsgericht Nürnberg, Beschluß vom 9. 6. 1999 – 15 Ca 2117/99), der sich die Kammer anschließt, fällt

der Streit zwischen den Parteien nicht in die Zuständigkeit der Arbeitsgerichtsbarkeit.

a. Es fehlt an der hierfür nach § 2 Arbeitsgerichtsgesetz heutiger Fassung erforderlichen Arbeitnehmereigenschaft des Kl. Denn das Beschäftigungsverhältnis war jedenfalls von seiten des Kl. nicht freiwillig und damit nicht privatrechtlich, wie ein Hauptdefinitionsmerkmale für den Arbeitnehmerbegriff nach der herkömmlichen Definition darstellt (zum Beispiel: *Schaub* Arbeitsrechtshandbuch 8. Auflage § 8 II 2 oder *Germelmann/Matthes/Prütting* Arbeitsgerichtsgesetz 2. Aufl. S. 260). Die vom Arbeitsgericht Hannover (Beschluß vom 5. 8. 1999 – 10 Ca 272/99 S. 24) vorgebrachten Argumente sind nicht zwingend. Denn der Gesetzgeber wollte und konnte auf die bis dahin in Rechtsprechung und Lehre entwickelte Definition zurückgreifen. Wenn der Kl. – wie er behauptet – keinerlei Entgelt erhalten haben sollte und dies aufgrund der „völkischen" Rechtslage der Fall war, wäre eine Arbeitnehmereigenschaft erst recht zu verneinen.

b. Zwar würde zur Begründung der Zuständigkeit der Arbeitsgerichte ein arbeitnehmerähnliches Verhältnis zwischen den Parteien genügen. Aber auch hierfür ist Freiwilligkeit erforderlich (wie hier: Arbeitsgericht Nürnberg, Beschluß vom 9. 6. 1999 – 15 Ca 2117/99 S. 8).

c. Dasselbe gilt für faktische Arbeitsverhältnisse (Arbeitsgericht Augsburg Beschluß vom 30. 11. 1998 – 6 Ha 5/98; *Schröder* Jura 1994 S. 118 f.).

d. Etwas anderes ergibt sich nicht aus dem Argument a majore ad minus, daß Zwangsarbeiter aufgrund des Zwangs schutzwürdiger seien und deswegen erst recht geschützt werden müßten. Dieser Gedanke steht wohl hinter der Argumentation des Arbeitsgerichts Hannover in dem obengenannten Beschluß.

Denn die Abgrenzung zwischen Arbeitsgerichten und ordentlichen Zivilgerichten beruht zwar auf der größeren Sachnähe der Arbeitsgerichte, führt aber materiell-rechtlich nicht zur Anwendung anderer Vorschriften. Soweit Rechtsstreite vor den Arbeitsgerichten anderen Kostenregelungen folgen, ist dies kein ausschlaggebendes Argument, da zum einen im Bedürfnisfall Prozeßkostenhilfe in Anspruch genommen werden kann und zum anderen im Fall des Obsiegens die Kostenregelung für die erste Instanz für den Arbeitnehmer nachteilig ist. Die Möglichkeit des Auftretens von Verbandsvertretern als kostengünstigere Alternative zu Rechtsanwälten spielt in den Fällen der vorliegenden Art eine untergeordnete Rolle, weil nicht typische Fragen eines Arbeitsverhältnisses Streitgegenstand sind (im Ergebnis ebenfalls ablehnend: *Schröder* a. a. O.).

e. Die Ansätze *Arndts* (Süddeutsche Juristenzeitung 1947 S. 517 f.) und des Arbeitsgerichts Hannover (a. a. O. S. 14 ff.) vermögen jedenfalls für den Fall der Zwangsarbeiter, die wie der Kl. aufgrund Dienstpflicht zur Arbeit gezwungen wurden, nicht zu überzeugen. Was zunächst *Arndt* anbelangt, so ist zwar seinem Ausgangspunkt zuzustimmen, daß die Ersetzung des normalen Arbeitsverhältnisses durch SS-Befehle sittenwidrig war; die Verneinung des Arbeitsverhältnisses und damit des Rechtswegs zu den Arbeitsgerichten beruht aber auf der faktischen Folge, daß das anschließende Verhältnis zwischen den dortigen Parteien eben nicht mehr von Freiwilligkeit und Gleichordnung gekennzeichnet war. Und im Falle der Entscheidung des Arbeitsgerichts Hannover handelte es sich um Häftlinge aus einem Konzentrationslager, für die wenigstens insoweit ein vertragliches Element vorhanden war, als die SS und die dortige Bekl. einen privatrechtlichen Dienstverschaffungsvertrag geschlossen hatten.

f. Schließlich kann eine Zuständigkeit auch nicht daraus hergeleitet werden, daß im Recht der Bundesrepublik Deutschland

bei der die Verordnung zur Sicherstellung des Kräftebedarfs für Aufgaben von besonderer staatspolitischer Bedeutung vom 13. 2. 1939 (RGBl. 1939 Teil 1 S. 206 f.) ähnliche Arbeitssicherstellungsgesetz (BGBl. 1968 Teil 1 S. 787 ff.) allgemein davon ausgegangen wird, daß zwar der Verpflichtungsakt des Arbeitsamts öffentlich-rechtlicher Natur ist, aber das damit begründete Dienstverhältnis als normales Arbeitsverhältnis behandelt wird (*Scholz* in Maunz/Dürig Kommentar zum GG, Stand Februar 1999, Artikel 12 a Randnummer 165; *von Münch/Kunig* GG 4. Auflage Art. 12 a Randnummer 16; *Schmidt-Bleibtreu/Klein* Kommentar zum GG 8. Aufl. Art. 12 a Randnummer 7, anderer Ansicht: Bonner Kommentar zum GG, Stand April 1999, Art. 12 a Randnummer 181, Arbeitsgericht Hannover a. a. O. S. 24 f.). Dies beruht nämlich auf einer ausdrücklichen verfassungsrechtlichen Vorgabe in Art. 12 a Abs. 2 GG.

2. Eine Zuständigkeit der Verwaltungsgerichte ergibt sich nicht daraus, daß die Beklagtenseite im Zusammenhang mit der Frage der Passivlegitimation von der Ausübung öffentlicher Gewalt im Über-/Unterordnungsverhältnis ausgeht, wegen das tatsächliche Geschehen im Reich zuzurechnen sei. Soweit die Bekl. im Bereich der Haftung aus unerlaubter Handlung auf das Reich als passivlegitimiert verweist, weil ihre Rechtsvorgängerin beliehene Unternehmerin gewesen ist (Art. 131 Abs. 1 S. 1 Weimarer Reichsverfassung), handelt es sich (abgesehen davon, daß die Zivilgerichte für Sonderzuweisung in Art. 34 S. 3 GG wie schon damals in Art. 131 Abs. 1 S. 3 Weimarer Reichsverfassung ohnehin zuständig sind) nicht um eine Frage der Zulässigkeit, sondern eine solche der Begründetheit. Für andere als Staatshaftungsansprüche gegen die Bekl. sind die ordentlichen Gerichte allein schon deswegen zuständig, weil unabhängig von der genauen Subsumtion des klägerischen Tatsachenvortrags (*Zöller/Gummer* Kommentar zur Zivilprozeßordnung 21. Aufl. § 13 GVG Randnummer 11) unter bestimmte Anspruchsgrundlagen jedenfalls gegen die Bekl. selbst sowohl nach der Subjektions- als auch nach der Sonderrechtstheorie (*Kissel* GVG 2. Aufl. § 3 Randnummer 88) nur zivilrechtliche Rechtsbeziehungen und Rechtsfolgen in Betracht kommen, ohne daß offensichtlich keine Anspruchsgrundlage gegeben wäre (ähnlich für Häftlinge aus Konzentrationslagern bereits OLG Stuttgart Rechtsprechung zum Wiedergutmachungsrecht 1964 S. 425; für Ostarbeiter: Arbeitsgericht Nürnberg, Beschluß vom 9. 6. 1999 – Ca 2117/99 S. 8 unter 2 a; soweit das Arbeitsgericht Berlin, Urteil vom 4. 8. 1950 – 10 Arb. 1645/49, Blatt 174 ff. der Akten, auf S. 3 von einem „Staatsakt" spricht, dürfte damit nicht das Verhältnis zwischen der die Klägerin beschäftigenden Beklagten und der Klägerin gemeint sein, sondern die Festnahme und Unterbringung im Konzentrationslager und Zuweisung an die Beklagte durch den Staat). Etwas anderes folgt schließlich entgegen der Ansicht der Beklagtenvertreter nicht daraus, daß – weil die Arbeitsgerichte mangels Freiwilligkeit des Verhältnisses zwischen den Parteien nicht zuständig sind – die Zivilgerichte erst recht nicht zuständig sein sollen. Eine Vielzahl der Anspruchsgrundlagen des Bürgerlichen Gesetzbuches, über die die Zivilgerichte entscheiden, beruht auf unfreiwilligen Verpflichtungen (Geschäftsführung ohne Auftrag, Eigentümer-Besitzer-Verhältnis, Deliktsrecht, Bereicherungsrecht, Unterhaltsansprüche, Pflichtteilsansprüche et cetera).

3. Die Zuständigkeit des LG ist auch insoweit gegeben, als der Bevollmächtigte der Kl. individuelle Reparationsansprüche des Kl. gegen die Bekl. aus Völkerrecht behauptet. Ohne daß entschieden werden müßte, welche Gerichte hierfür primär zuständig sind, folgt die Zuständigkeit im konkreten Fall aus § 17 Abs. 2 S. 1 GVG, denn das angerufene Gericht hat über den Rechtsstreit unter allen in Betracht kommenden rechtlichen Gesichtspunkten zu entscheiden.

4. Eine Vorabentscheidung, um die Zuständigkeitsfrage durch die Instanzen prüfen zu lassen (§ 17 a Abs. 3 und 4 GVG), war nicht angezeigt. Keine der Parteien hat die Zulässigkeit des Rechtswegs in Sinne der Zuständigkeit eines anderen Gerichtszweigs gerügt (nur so kann Abs. 3 des § 17 a GVG im Hinblick auf den Vorhergehenden Absatz 2 verstanden werden). Die Bekl. wendet sich mit ihrer Argumentation vielmehr gegen die Behandlung der Frage durch sämtliche Gerichte. Soweit der Vorabbeschluß im Ermessen des Gerichts steht, erschien er nicht geboten. Zwar ist die Abgrenzung zur Arbeitsgerichtsbarkeit in anderen Prozessen streitig, eine Vorabentscheidung nach § 17 a Abs. 3 S. 1 GVG macht aber keinen Sinn, wenn keiner der Parteien dieses Rechtsstreits eine andere Zuständigkeit vertritt und damit der Instanzenzug nicht beschritten würde.

IV. Die Zulässigkeit der Klage scheitert schließlich auch nicht daran, daß der Kl. nicht ordnungsgemäß vertreten wäre. Die Vollmachtskette vom Kl. über seinen Bevollmächtigten zur Prozeßbevollmächtigten ist nachgewiesen (Blatt 340 f. der Akten), zwischen dem Kl. und dem Bevollmächtigten inzwischen sogar öffentlich beglaubigt (Blatt 390 der Akten). Damit steht der Kl. so, wie wenn die beglaubigte Bevollmächtigung von Anfang an vorgelegen hätte (*Stein/Jonas* Zivilprozeßordnung § 89 Randnummer 12).

B. Das Londoner Schuldenabkommen steht der Geltendmachung der Ansprüche jedenfalls nicht mehr entgegen, weswegen es nicht darauf ankommt, ob es sich hierbei um eine Frage der Zulässigkeit (so die Verwaltungsrechtsprechung, zum Beispiel BVerwGE 35 S. 262, 264) oder der Begründetheit (so die Zivilrechtsprechung, zum Beispiel BGH VersR 1964 S. 637, 638 oder NJW 1973 S. 1549, 1552 unter 3.) handelt.

I. Sollte der anfängliche Beklagtenvortrag dahingehend zu verstehen sein, daß ihn Prozeßbevollmächtigten zur Auffassung sind, daß die Klagesperre aus Art. 5 Abs. 2 des Umsetzungsgesetzes (BGBl. 1953 Teil 2 S. 331) fortgelte, so kann dem nicht gefolgt werden. Das mit ihm ins deutsche nationale Recht umgesetzte Londoner Schuldenabkommen enthält seine zeitliche Begrenzung vielmehr selbst. Denn Art. 5 Abs. 2 erweitert die Prüfung nicht auf alle Zeiten, sondern stellt sie nur bis zur endgültigen Regelung der Reparationsfrage zurück. Zu dieser Auffassung scheinen die Beklagtenvertreter nunmehr auch gelangt zu sein (Schriftsatz vom 17. 11. 1999 S. 17).

II. Eine andere, aber ebenfalls zu bejahende Frage ist, ob eine solche endgültige Regelung der Reparationsfrage im Sinne des Londoner Schuldenabkommens getroffen ist. Insoweit kann weitgehend auf die zutreffenden Ausführungen des LG Bonn in Urteil vom 5. 11. 1997 – 1 O 134/92 (S. 2 ff. der Urteilsgründe), des LG Bremen in Urteil vom 2. 6. 1998 – 1 O 2889/90 (S. 11 f. der Urteilsgründe) und des OVG Münster NJW 1998 S. 2302, 2303 verwiesen werden. Demnach erfolgen Regelungen über Reparationen regelmäßig in einem Friedensvertrag und als ein solcher muß der 2 + 4-Vertrag angesehen werden. Dem steht – entgegen der Auffassung des Bevollmächtigten des Kl. – nicht entgegen, daß unter anderen das Heimatland des Kl. nicht Signatarstaat des 2 + 4-Vertrags war. Denn gerade Polen war – obwohl nicht Mitglied der „vier" Siegermächte – insoweit in diesen Vertrag einbezogen, als die Grenzregelung zwischen Deutschland und Polen in den 2 + 4-Vertrag eingebunden worden war (Art. 1 Abs. 2 sowie zur historischen Entwicklung: Stern in „Einführung zum 2 + 4-Vertrag", Band 3 der Reihe „Verträge und Rechtsakte der Deutschen Einheit", Beck-Verlag 1991, S. 32–34). Und in der Präambel des hierzu

geschlossenen Vertrags zwischen Deutschland und Polen (BGBl. 1991 Teil 2 S. 1329 ff.) wurde auf den 2 + 4-Vertrag Bezug genommen, woraus zu schließen ist, daß auch Polen keine eigentümlichen friedensvertraglichen Regelungen mehr anstrebt (vergleiche OVG Münster a. a. O. S. 2303). Im übrigen war aus der Stellung der vier Besatzungsmächte in Nachkriegsdeutschland allgemein anerkannt, daß diese die Interessen der übrigen Staaten bei allen weiteren Verhandlungen mit Deutschland vertraten. Dies begann bereits mit der in der Gesamtkapitulation enthaltenen Waffenstillstandsvereinbarung im Mai 1945, die auch von solchen Staaten respektiert wurde, die ihre Streitkräfte nicht den beteiligten alliierten Oberkommandos unterstellt hatten und die daher bei der Unterzeichnung nicht vertreten waren. Es setzte sich über die Nachkriegskonferenzen wie zum Beispiel die Potsdamer Konferenz fort, an der insbesondere Polen zwar nicht direkt beteiligt war, in denen aber über die Befriedigung polnischer Reparationsforderungen (aus dem sowjetischen Anteil) oder die „Ausweisung der Deutschen" aus unter anderem der polnischen Verwaltung unterstellten Gebieten mitentschieden wurde.

III. Schließlich heben sich die Argumente an dieser Stelle ohnehin gegenseitig auf, weil Polen an Londoner Schuldenabkommen ebenfalls nicht beteiligt war. Wer demnach die Ansicht vertritt, daß Polen deshalb nicht gebunden war, für den kommt es auf den actus contrarius nicht mehr an.

C. Die Klage ist jedoch nicht begründet.

Zivilrechtliche Ansprüche sind verjährt (I). Im Völkerrecht wurzelnde individuelle Ansprüche auf Reparationen bestehen nicht (II).

I. Nachdem sich die Bekl. – nicht justiziabel – dafür entschieden hat, die Einrede der Verjährung zu erheben und diese durchdringt, kommt es nicht mehr darauf an, daß die Klage im übrigen zumindest dem Grunde nach schlüssig ist.

1. Soweit vertragliche oder quasi-vertragliche Ansprüche sowie solche aus Geschäftsführung ohne Auftrag (*Schröder* Jura 1994 S. 118, 119 ff.) oder Bereicherungsrecht in Betracht kommen, ist bei Anwendung deutschen materiellen Rechts die hierfür geltende zweijährige Verjährungsfrist nach §§ 196 f. BGB direkt beziehungsweise analog abgelaufen (BGHZ 48 S. 125, 127; BAG NJW 1966 S. 268, 269; 13. Zivilkammer des erkennenden Gerichts Beschluß vom 26. 8. 1999 – 13 O 98/99 S. 4 ff. mit weiteren Nachweisen; anderer Ansicht: *Schröder* a. a. O. S. 125 ohne nähere Begründung). Ohne daß auf die Frage einer Verjährung vor Inkrafttreten des Londoner Schuldenabkommens eingegangen werden müßte und ohne daß es darauf ankäme, ob die Hemmung bereits vor Veröffentlichung der Entscheidung des BVerfG vom 13. 5. 1996 am 2. 7. 1996 beendet war, lief die Verjährungsfrist jedenfalls (bei gegebenenfalls weiter) und endete somit spätestens am 2. 7. 1998 und damit rund vier Monate vor Einreichung der Klage. Ob bei Anwendung des deutschen Internationalen Privatrechts der Jahre 1942 bis 1945 die Annektion des Wohngebiets des Kl. in Verbindung mit der aus der fehlenden Verleihung der deutschen Staatsangehörigkeit aus Sicht des Deutschen Reichs folgenden Staatenlosigkeit des Kl. außer Betracht zu bleiben hat, daher bei einigen Anspruchsgrundlagen materielles Recht zur Anwendung kommt (eventuell bei Geschäftsführung ohne Auftrag) und dort unter Umständen längere Verjährungsfristen gelten, kann offenbleiben. Denn angesichts der Einführung deutschen Rechts in dem Gebiet, aus dem der Kl. stammt (§ 1 der Verordnung über die bürgerliche Rechtspflege in den eingegliederten Ostgebieten vom 25. 9. 1941, RGBl. 1941 Teil 1 S. 597 ff.), kann nicht ange-

nommen werden, daß das Deutsche Reich als Schädigerstaat über die verfahrenstechnischen Vorschriften des Internationalen Privatrechts dem Kl. auch dieses Recht zugute kommen lassen wollte. Zudem bestehen Zweifel, ob das BVerfG mit dem „eigenen nationalen Recht" (NJW 1996 S. 2717, 2719) ausländisches Recht gemeint hätte, das über das Internationale Privatrecht Anwendung findet.

2. Ansprüche aus unerlaubter Handlung sind ebenfalls verjährt (wie hier: LG München I, Urteil vom 16. 9. 1999 – 6 O 8417/99 Blatt 354–358 der Akten; 13. Zivilkammer des erkennenden Gerichts a. a. O.). Die dreijährige Verjährungsfrist für Ansprüche aus unerlaubter Handlung nach § 852 BGB – auch hier findet unabhängig von der Zurechnung des Abtransports des Kl. aus Sicht deutschen Rechts Anwendung, siehe unter I. – ist anwendbar (a). Sie ist abgelaufen, weil jedenfalls nicht unmittelbar mit Auslaufen des Londoner Schuldenabkommens ein anderer Hemmungstatbestand eingriff (b). Die Bekl. verstößt nicht gegen Treu und Glauben (§ 242 BGB), wenn sie sich hierauf beruft (c). Die Verhandlungen zur Stiftungsinitiative helfen dem Kl. bei der Frage der Verjährung nicht weiter (d).

a. Der Auffassung der Klägervertreter, daß § 852 BGB nicht anwendbar sei, weil die (zivilrechtlichen?) Entschädigungsansprüche völkerrechtlichen Ursprungs seien (Schriftsatz vom 29. 10. 1999 S. 1 f.), kann nicht gefolgt werden. Die zivilrechtlichen Ansprüche kommen unter anderem deswegen zum Zug, weil sie unabhängig vom Völkerrecht bestehen, was die Klägervertreter an anderer Stelle auch selbst annehmen. Auf die Existenz und Länge völkerrechtlicher Verjährungsfristen kommt es damit nicht an. Daß allgemeine Regeln des Völkerrechts bestünden, die in die Verjährung normaler zivilrechtlicher Ansprüche eingriffen oder wenigstens in solche völkerrechtlichen Ansprüche, die mehr geben, als das Völkerrecht selbst verlangt, ist nicht ersichtlich und wird außer von den Klägervertretern von niemandem behauptet. Eine Vorlage an das BVerfG nach Art. 100 Abs. 2 GG kommt daher nicht in Betracht.

b. Nachdem der Kl. vom Anfang an die Person des Schädigers und den Schaden selbst kannte, wäre die Klage nur dann noch rechtzeitig eingereicht, wenn nach Auslaufen des Londoner Schuldenabkommens spätestens am 15. 9. 1992 (Inkrafttreten des 2 + 4-Vertrags am 15. 3. 1991 (BGBl. 1991 Teil 2 S. 587) nebst eventuell weiterer 18 Monate infolge analoger Anwendung des § 1 Abs. 2 des Gesetzes über die Verjährung von deutschen Auslandsschulden und ähnlichen Schulden, BGBl. 1956 Teil 1 S. 915) eine andere Hemmung bis zur Veröffentlichung der obengenannten Entscheidung des BVerfG stattgefunden hätte. Dem ist aber nicht so.

aa. Eine Hemmung unter dem Gesichtspunkt einer ständigen anspruchsfeindlichen Rechtsprechung der Fachgerichte (kritisch hierzu Palandt/*Heinrichs* Kommentar zum Bürgerlichen Gesetzbuch 58. Aufl. § 203 Randnummer 7) konnte nicht eintreten. Dies gilt zunächst für die Wirkungen des Londoner Schuldenabkommens. Denn die klageabweisenden Urteile waren immer darauf gestützt, daß während seiner Geltung keine Klagbarkeit der Ansprüche bestand (weshalb die Klagen als zur Zeit unzulässig beziehungsweise unbegründet und nicht endgültig abgewiesen wurden). Mit der Frage, ob ohne Friedensvertrag eine Regelung der Reparationsfrage und damit eine Beendigung der Zurückstellung eingetreten war, hatte sich die Zivilrechtsprechung nur auf landgerichtlicher Ebene und da zugunsten des Klägers auseinandergesetzt (LG Bonn, Urteil vom 5. 11. 1998 – 1 O 134/92 Blatt 25 ff. der Akten; LG Bremen, Urteil vom 2. 6. 1998 – 1 O 2889/90 Blatt 135 ff. der Akten). Im übrigen hatte das BVerfG in der obengenannten Entscheidung auch keine

Wende herbeigeführt, da es zwar die Ansichten des LG Bonn hierzu referiert, aber selbst keine Stellungnahme abgibt, noch nicht einmal als obiter dictum. Weiter lag keine ständige anspruchsfeindliche Rechtsprechung dazu vor, ob zivilrechtliche Ansprüche parallel zu Reparationsansprüchen bestanden. Dies wurde allenfalls beiläufig erwähnt und dabei dann offengelassen (BGH NJW 1963 S. 492, 493; BVerwGE 35 S. 262, 264 – dort werden beide Anspruchsarten erwähnt und anschließend die individuellen Ansprüche geprüft –; *Schröder* Jura 1994 S. 118, 126; anderer Ansicht ohne Begründung: *Frauendorf* ZRP 1999 S. 1, 5). Die der Klägerseite günstige Auffassung der Beklagtenseite im Schriftsatz vom 17. 10. 1999 S. 22 f., daß die Rechtslage in dem Sinne klar war, daß die Exklusivität nach einheitliger Meinung bestanden hätte, ist damit widerlegt.

bb. Wohl deshalb beruft sich die Klägerseite darauf, daß eine Hemmung wegen einer unsicheren Rechtslage (BGH NJW 1994 S. 2752, 2753 sowie Nachschlagewerk des BGH in Zivilsachen, herausgegeben von Lindenmaier und Möhring § 203 BGB Nummer 5) vorgelegen habe, die erst durch die Entscheidung des BVerfG geklärt worden sei. Aber auch dem ist nicht zu folgen.

(1) Was zunächst die Frage anbelangt, ob die Zurückstellung durch das Londoner Schuldenabkommen mit dem 2 + 4-Vertrag beendet war, so entsprach es bereits kurz nach dessen Abschluß der allgemeinen Ansicht, daß die Reparationsfrage in dem Sinne geregelt war, daß keine Ansprüche mehr geltend gemacht werden (zum Beispiel: *Rauschning* DVBl. 1990 S. 1275, 1279 oder *Seidl-Hohenveldern* Völkerrecht 8. Aufl. 1994 Randnummer 1872). Damit war aber eindeutig, daß die Zurückstellung nach Art. 5 Abs. 2 des Londoner Schuldenabkommens beendet war (*Rauschning* a. a. O. weist ausdrücklich darauf hin, daß überall dort, wo es auf einen Friedensvertrag ankommt, der 2 + 4-Vertrag einen solchen darstellt).

(2) Nicht so eindeutig, aber im Ergebnis nicht hinreichend unklar für die Annahme einer Hemmung der Verjährungsansprüche stellt sich dagegen die Lage hinsichtlich der Anspruchsparallelität dar. Immerhin vertrat die Bundesregierung noch zwischen dem Ergehen der Entscheidung des BVerfG und ihrer Veröffentlichung in einer in der Bundestags-Drucksache 13/4787 vom 3. 6. 1996 abgedruckten Fortsetzung früherer Stellungnahmen (zum Beispiel Bundestags-Drucksache 10/6287) die Auffassung, eine Anspruchsparallelität bestehe nicht, und konnte sich dafür auf die wohl überwiegende Meinung in der Literatur (u. a. *Féaux la Croix* NJW 1960 S. 2268 f.) stützen. Auf der anderen Seite hatte der BGH (MDR 1963 S. 492, 493) und Teile des Schrifttums (*Domke* Schweizerische Juristenzeitung 1962 S. 2 ff.; *Schröder* Jura 1994 S. 118, 128) diese Auffassung aber in Frage gestellt. Scheinbar – für das Gericht nicht zugänglich – wurde dies auch sonst vertreten (vergleiche die Nachweise in der Entscheidung des BVerfG a. a. O. S. 1719 linke Spalte unten; die den dortigen Zitaten zugrundeliegende Auffassung macht nur dann Sinn, wenn eine Parallelität angenommen wird, selbst wenn *Dolzer* vom BVerfG auf der vorigen Seite neben *Féaux la Croix* zitiert wird). Trotz dieser offenen Lage trat aber keine Hemmung ein. Würde nämlich allein schon der Streit über die Lösung eines Rechtsproblems zu einer Hemmung führen, so würde die rechtsbefriedigende Wirkung der Verjährung in weiten Bereichen ausfallen, weil in der Jurisprudenz, die eben keine exakte mathematische Wissenschaft darstellt, über vieles gestritten werden kann (ähnlich: Nachschlagewerk des BGH in Zivilsachen, herausgegeben von Lindenmaier und Möhring § 852 BGB Nummer 12 unter II). Zwar ist

eine Unverjährbarkeit nicht völlig ausgeschlossen, wie dies im Falle einer mangelhaften Planung eines Architekten angenommen wird, bei der die abnahmefähige Herstellung des Architektenwerks verneint wird und deshalb weder dessen Vergütungsanspruch noch Gewährleistungsansprüche verjähren (BGH WM 1999 S. 1181). Dort beruht dies aber auf ausdrücklichen gesetzlichen Regelungen, die die Verjährung an die Abnahme(fähigkeit) anknüpfen. Um diese Unverjährbarkeit (wenn nämlich – gerade weil eine Verjährung nicht droht – niemand durch den Instanzenzug klagt und eine Klärung herbeiführt) zu rechtfertigen, bedarf es daher mehr, nämlich wie der BGH (BGHZ 129 S. 282, 289) festgestellt hat, daß die vertretenen Auffassungen in ihrer Fülle, Komplexität und Unterschiedlichkeit kaum noch zu überschauen und zu bewerten sind und in dieser unsicheren Lage nur der Gesetzgeber oder eine höchstrichterliche Entscheidung eine Klärung herbeiführen kann. Wie aus den dazu entschiedenen Fällen ersichtlich, ging es jeweils darum, daß nicht nur wie hier klar herauszuarbeitende Einzelfragen, sondern ganze Themenkomplexe so wenig geklärt waren, daß allein schon das Herausarbeiten der entscheidungserheblichen Fragen wegen der Vielfalt der unterschiedlichen und konkurrierenden Normen an der Vielzahl der hierzu vertretbaren Meinungen scheiterte. Daß es sich beim Kl. um einen polnischen Staatsangehörigen ohne Deutschkenntnisse handelt, ändert hieran nichts. Daß nach der Wiedervereinigung des wirtschaftlich erholten Deutschlands eine neue Situation bestand, mußte auch ihnen bekannt sein. Sofern er daraufhin überhaupt Rechtsrat eingeholt hätte, was wegen des Anwaltszwangs vor deutschen Landgerichten ohnehin erforderlich gewesen wäre, hätten sich die Rechtsprobleme nicht mehr in seiner eigenen Person gestellt.

c. Wenn sich die Bekl. nunmehr auf Verjährung beruft, verstößt sie entgegen der Auffassung der Klägerseite nicht deshalb gegen Treu und Glauben, weil die Bundesregierung als ihre Vertreterin durch die Art und Weise der Führung der Verhandlungen zum Abschluß des 2 + 4-Vertrags die Gläubiger in die Irre geführt habe, indem sie immer erklärt habe, keinen Friedensvertrag (und damit keine Reparationsregelung) zu wollen, und das Ergebnis für den Kl. nun das sei, daß wegen Klausel 12 der Präambel zum 2 + 4-Vertrag für das Londoner Schuldenabkommen doch die Wirkungen eines Friedensvertrags angenommen werden und damit seine Forderung verjährt sein solle. Dies folgt allerdings schon daraus, daß sich der Kl. im Gegenzug das Verhalten der polnischen Regierung zurechnen lassen muß. Zumächst ist jedoch schon zweifelhaft, ob das von Klägerseite behauptete venire contra factum proprium beim geschilderten Sachverhalt anzunehmen ist oder ob nicht verlangt werden muß, daß vom Schuldner oder seinem Gehilfen der positive Eindruck einer gewollten Schuldentilgung erweckt werden muß, was die Bundesregierung nach dem Vortrag der Klägerseite nach außen hin nie beabsichtigte. Weiterhin erscheint es bei Anlegung des Maßstabes des § 278 BGB zweifelhaft, ob die Bundesregierung Gehilfe der Bekl. bei der Erfüllung der ihr obliegenden Pflichten sein kann. Dies braucht aber nicht entschieden zu werden, weil der Kl. selbst bei Unterstellung einer für ihn positiven Ansicht mit der Klägerhebung zu lange wartete. Bei Anwendung der Grundsätze von Treu und Glauben tritt nämlich keine Hemmung ein. Vielmehr hat der Anspruchsinhaber nach Wegfall der Unzulässigkeit der Rechtsausübung begründenden Umstände innerhalb angemessener Frist Schritte zur Unterbrechung der Verjährung einzuleiten (Staudinger/*Peters* Kommentar zum Bürgerlichen Gesetzbuch 13. Auflage § 222 Randnummer 23 mit weiteren Nachweisen). Diese Frist ist knapp bemessen (allenfalls Monate: *Peters* a. a. O. Randnummer 24) und bleibt

selbst dann deutlich hinter den mindestens benötigten zweieinhalb Jahren (dazu gleich noch) zurück, wenn ein längerer Zeitraum einkalkuliert wird, bis die Entscheidung des BVerfG vom 13. 5. 1996 in Polen bekannt wurde.

d. Hieran ändert sich nichts dadurch etwas, daß ab Beginn der gegenwärtigen Verhandlungen im Zusammenhang mit der Stiftungsinitiative eine neue rechtzeitige Hemmung nach § 852 Abs. 2 BGB eingetreten wäre. Denn die Verhandlungen sind der Bekl. nicht zuzurechnen, nachdem diese sich an der Stiftungsinitiative nicht beteiligt hat und dies auch nicht beabsichtigt. Im übrigen kann eine Hemmung erst ab Beginn der Verhandlungen und noch nicht mit Beginn der deutschen internen Willensbildung angenommen werden. Selbst diese war aber erst Folge der Koalitionsverhandlungen nach den Wahlen vom 27. 9. 1998 (*Frauendorf* a. a. O. S. 5), als die Verjährung – wie unter a–c dargestellt – bereits eingetreten war.

II. Ein Anspruch des Kl. gegen den Bekl. direkt aus Völkerrecht besteht nicht (1). Dies kann das Gericht ohne Vorlage an das BVerfG selbst feststellen (2).

1. Daß Reparationen als Haftung für völkerrechtswidriges Verhalten – hier der Einsatz zur Zwangsarbeit – geschuldet werden, ist allgemein anerkannt, lediglich über die innere Begründung besteht Streit (vergleiche *Kischel* JZ 1998 S. 126 ff., zusammenfassend S. 129 unter VI). Dies bedeutet aber nicht, daß der Kläger (a) diese von den Beklagten (b) verlangen kann. Außerdem bestehen noch weitere hier nicht vorliegende Voraussetzungen (c).

a. Eine Berechtigung von Individuen, in eigener Person Reparationsansprüche geltend zu machen, bestand jedenfalls für die Zeit von 1942 bis 1945 nicht.

In der Zeit bis zum Ende des 2. Weltkriegs gab es zwar vereinzelte Vorschriften, in denen Individuen ausnahmsweise solche Rechte eingeräumt wurden. Hierzu zählt unter anderem der vom Bevollmächtigten des Kl. angesprochene Art. 297 Buchstabe e des Versailler Vertrags (RGBl. 1919 S. 687 ff.), der allerdings nicht Reparationen im Sinne dieses Vertrags betraf (Teil VIII), sondern im Teil X mit dem Titel „wirtschaftliche Bestimmungen" die Folgen der während des Krieges von Deutschland durchgeführten Liquidation von im Inland gelegenen „Feindesvermögen" regelte. Ein solcher Individualanspruch findet sich auch im deutsch-polnischen Oberschlesien-Abkommen von 1922. Außerdem wird vertreten, daß Art. 6 der Haager Landkriegsordnung ebenfalls Individualansprüche begründe. Es entspricht aber allgemeiner Ansicht, daß diese Ansätze nicht verallgemeinerungsfähig waren, was speziell für den Bereich der Reparationen dadurch bestätigt wird, daß für die Teil VIII des Versailler Vertrags (in der deutschen Übersetzung „Wiedergutmachungen") eine Staatenberechtigung vereinbart ist. Soweit in Art. 232 Abs. 2 die Angehörigen der Siegerstaaten erwähnt werden, gilt nichts anderes, denn dies dient der Berechnung der Höhe des Schadens und nicht dazu, diesen einen Individualanspruch zu verschaffen, wie die Klägervertreter inzwischen (Schriftsatz vom 29. 10. 1999 S. 10 f.) selbst betonen. Die sonstigen im Schriftsatz der Klägervertreter vom 29. 10. 1999 angeführten Konventionen aus der Vorkriegszeit wenden sich ebenfalls nur an die Hohen Vertragsschließenden Staaten zur Umsetzung in nationales Recht. Allerdings zeichnet sich seit dem 2. Weltkrieg – vor allem durch die im Schriftsatz vom 29. 10. 1999 unter e und f genannte Erklärung beziehungsweise Konvention – eine Entwicklung ab, daß Individuen insbesondere im Bereich der Menschenrechte in größerem Umfang eigene völkerrechtliche Ansprüche geltend machen können (BVerfG

a. a. O. S. 2719 linke Spalte unter aa). Es ist aber zweifelhaft, ob diese Entwicklung Reparationen bereits erreicht hat (verneinend: *Tönnishat* IPRax 1999 S. 238 linke Spalte). Dies kann aber letztlich offenbleiben, denn die Rechtsfortbildung kommt für den Kl. zu spät. Auch hier gilt intertemporales Recht.

b. Außerdem wird bisher soweit ersichtlich nirgends angenommen, daß Individuen Reparationsforderungen – einerlei ob im ursprünglichen oder neueren Sinn (nach der Diktion auf S. 8 f. des Schriftsatzes der Klägerseite vom 24. 8. 1999) – ausgesetzt sein können. Art. 25 GG hilft – neben anderen Bedenken – allein schon deshalb nicht weiter. Daran ändert sich nicht dadurch etwas, daß Individuen Adressaten einzelner Vorschriften sind, für deren Einhaltung sie strafrechtlich zur Verantwortung gezogen werden konnten (insbesondere durch das Nürnberger Kriegsverbrechertribunal) und noch können. Zum einen ist bereits streitig, ob die Haftung auf völkerrechtlicher oder einzelstaatenrechtlicher Ebene erfolgt. Und zum anderen läßt sich Strafrecht nicht mediatisieren.

c. Weiterhin entspricht es der völkerrechtlichen Praxis, daß die Modalitäten von (auf Völkerrecht beruhenden) Reparationen, insbesondere die Höhe, durch völkerrechtlichen Vertrag festgelegt werden (zum Beispiel: BVerfGE 41 S. 126, 154 f.; *Seidl-Hohenveldern* Völkerrecht 8. Aufl. Randnummer 1867, BGH NJW 1963 S. 525, 527 rechte Spalte Mitte). Dem steht die Feststellungen des BVerfG in seiner Entscheidung vom 13. 5. 1996 (a. a. O. S. 2719 rechte Spalte) nicht entgegen, daß eine Exklusivität nicht zur zivilrechtliche Ansprüche nicht ausschließe, sondern eine solche gar nicht existiere. Dies ändert nämlich nichts daran, daß auf Völkerrechtsebene eben doch eine nähere Ausgestaltung erforderlich ist. Solange dies nicht gesehen ist und das Londoner Schuldenabkommen leistet dies nicht (siehe schon oben A II 1 a bb (2), S. 10 des Urteils), besteht kein durchsetzbarer Anspruch auf Zahlung eines Betrags oder sonstige Leistungen, sondern allenfalls auf Abschluß eines solchen Vertrags, wobei Anspruchsgegner für diesen Anspruch ein Staat, aber nicht ein Individuum wäre. Die vom Bevollmächtigten des Kl. herangezogenen Ansprüche Deutschlands und Österreichs nach dem 1. Weltkrieg beruhten im übrigen gerade auf entsprechenden Regelungen im Versailler Vertrag (RGBl. 1919 S. 687 ff. – dort Teil VIII, S. 985 ff.) in Verbindung mit dem Londoner Zahlungsabkommen vom 27. 4. 1921 beziehungsweise im Vertrag von St. Germain. Auf die Frage eines Verzichts der polnischen Regierung mit Wirkung für die Staatsbürger oder eines Verlustes mangels Regelung im Zusammenhang mit dem 2 + 4-Vertrag kommt es damit nicht mehr an.

2. Eine Vorlage an das BVerfG nach Art. 100 Abs. 2 2. Alternative GG in Verbindung mit Art. 25 GG zur Klärung der Frage unter 1. bedarf es nicht. Zwar ist die Frage nach dem Bestand einer allgemeinen Regel des Völkerrechts, nach der Individuen völkerrechtliche Reparationsansprüche gegen andere Individuen ohne vorherige Begründung durch Verträge zustehen sollen, entscheidungserheblich, weil der Kl. mit sonstigen Ansprüchen wegen der Erhebung der Einrede der Verjährung nicht durchdringen kann. Weiterhin besteht die Pflicht zur Vorlage im Falle des Art. 100 Abs. 2 GG nicht erst dann, wenn das erkennende Gericht eine Regel des Völkerrechts bejaht oder Zweifel hat, ob eine solche besteht. Aber auch die geringeren Voraussetzungen für die Vorlagepflicht, nämlich ernstzunehmende objektive Zweifel, die sich aus einer Abweichung von der Meinung eines Verfassungsorgans, von Entscheidungen hoher deutscher, ausländischer oder internationaler Gerichte oder von den Lehren anerkannter Autoren der Völkerrechtswissenschaften ergeben

(BVerfGE 23 S. 288, 319), sind nicht gegeben. Soweit ersichtlich und dadurch gestützt, daß die Prozeßbevollmächtigten des Kl. hierzu ebenfalls nichts vorgetragen haben, wird diese Meinung lediglich vom Bevollmächtigten des Kl. vertreten. [. . .]

**Nr. 25\* OLG Hamm – RBerG Art. 1 § 1; EGV Art. 59 (EG Art. 49)**

(Urteil v. 15. 6. 1999 – 4 U 10/99)

**1. Betreibt ein im Ausland ansässiges Inkassounternehmen die Einziehung einer Forderung, deren Gläubiger und Schuldner beide im Inland ansässig sind, so benötigt das Unternehmen für diese Tätigkeit eine Erlaubnis nach Art. 1 § 1 RBerG.**

**2. Die Pflicht zur Einholung einer Erlaubnis gemäß Art. 1 § 1 RBerG verletzt nicht die Dienstleistungsfreiheit nach Art. 59 EGV.**

(Leitsätze der Redaktion)

Der Bekl. zu 2. – deutscher Staatsangehöriger – ist der Geschäftsführer der in den Niederlanden ansässigen Bekl. zu 1., die nicht die deutsche behördliche Erlaubnis zur Besorgung fremder Rechtsangelegenheiten gemäß Art. 1 § 1 RBerG hat. An ihrem Geschäftssitz beriet die Bekl. zu 1. eine in der Bundesrepublik ansässige deutsche Mandantin in rechtlichen Angelegenheiten. Sie übersandte dann unter dem 4. 11. 1997 an ein in [der Bundesrepublik] ansässiges Unternehmen ihr in den Niederlanden zur Post gegebenes Schreiben, in welchem sie mitteilte, von dem Mandanten „mit der Wahrnehmung seiner rechtlichen, betriebswirtschaftlichen und finanziellen Interessen beauftragt" worden zu sein, und in welchem sie mit Fristsetzung zur Bezahlung einer Geldschuld aufforderte.

Der Kl., der in D. als zugelassener Rechtsanwalt tätig ist, sieht in diesem Schreiben die rechtswidrige Besorgung fremder Rechtsangelegenheiten und damit zugleich einen Wettbewerbsverstoß.

Der Kläger hat beantragt, die Beklagten unter Androhung von Ordnungsmitteln zu verurteilen, es künftig zu unterlassen, Rechtsangelegenheiten Dritter einschließlich der Beratung und Einziehung fremder oder zu Einziehungszwecken abgetretener Forderungen geschäftsmäßig in der Weise zu besorgen, daß Zahlungsansprüche eines Auftraggebers gegenüber Dritten auf dem Gebiet der Bundesrepublik Deutschland außergerichtlich geltend gemacht werden.

Das Landgericht hat durch Urteil vom 3. November 1998 die Klage antragsgemäß abgewiesen. [. . .] Gegen dieses Urteil hat der Kläger form- und fristgerecht Berufung eingelegt.

Unter Ergänzung und Vertiefung seines erstinstanzlichen Vortrages ist der Kläger der Ansicht, daß das vom Bekl. zu 2. am Geschäftssitz der Bekl. zu 1. in den Niederlanden geführte Beratungsgespräch zwar nicht an dem deutschen Rechtsberatungsgesetz zu messen sei; dies gelte aber nicht für das beanstandete Schreiben an den Drittschuldner vom 4. November 1997. Ohne den Zugang dieses Schreibens beim Schuldner sei die Rechtsbesorgung für die Gläubigerin nicht abgeschlossen gewesen. Der Zugang der Zahlungsaufforderung beim Schuldner könne nicht als bloßer Reflex der im Ausland erfolgten Tätigkeit angesehen werden. Vielmehr habe man sich gegenüber der Schuldnerin erboten, möglichst kurzfristig miteinander in Verbindung zu treten, um die drohende Liquidation der Schuldnerin zu verhindern. Es liege somit auch das Angebot von Regulierungsverhandlungen im Rahmen des erteilten Mandates vor, was als „klassischer" Fall einer Rechtsbesorgung im Sinne des Rechtsberatungsgesetzes anzusehen sei.

Der Kl. beantragt, unter Abänderung des angefochtenen Urteils die Bekl. zu verurteilen, bei Vermeidung eines für jeden Fall der Zuwiderhandlung zu verhängenden Ordnungsgeldes, ersatzweise Ordnungshaft, zu vollstrecken an dem Bekl. zu 2., es zu unterlassen, Rechtsangelegenheiten Dritter einschließlich der Einziehung fremder Forderungen geschäftsmäßig im Bereich der Bundesrepublik Deutschland zu besorgen, insbesondere in der Weise, daß Zahlungsansprüche eines deutschen Auftraggebers gegenüber Dritten auf dem Gebiet der Bundesrepublik Deutschland außergerichtlich geltend gemacht werden.

Die Bekl. beantragen, die gegnerische Berufung zurückzuweisen.

Unter Ergänzung und Vertiefung ihres erstinstanzlichen Vortrages sind die Bekl. der Ansicht, daß der jeweilige Staat seinen eingeschränkten Hoheitsbereich beachten müsse. Die Bekl. zu 1. habe aber ihren Sitz in den Niederlanden, ebenso der Bekl. zu 2. Das Beratungsgespräch mit dem Gläubiger habe nur in den Niederlanden stattgefunden. Leistungsort für sämtliche erbrachten Leistungen der Bekl. zugunsten der Gläubigerin seien damit die Niederlande, so daß schon von daher das Rechtsberatungsgesetz im vorliegenden Falle nicht eingreifen könne. Die Durchführung der Beratung durch einen Ausländer im Ausland mit anschließender Absendung eines Schreibens über die Grenze hinweg spiele sich nicht im Hoheitsbereich des deutschen Staates ab und werde somit vom Rechtsberatungsgesetz nicht erfaßt. Die Bekl. hätten ihre Tätigkeiten ausschließlich in den Niederlanden erbracht, und zwar im Einklang mit den dortigen Gesetzen, die für die Beurteilung der Tätigkeit der Beklagten auch allein maßgeblich seien. [. . .]

Entscheidungsgründe:

Die Berufung des Kl. ist zulässig und begründet.

Die örtliche Zuständigkeit des angerufenen Gerichts ist nicht mehr zu prüfen, nachdem das Landgericht seine örtliche Zuständigkeit bejaht hat; § 512 a ZPO.

Die internationale Zuständigkeit folgt aus Art. 5 Nr. 3 EUGVÜ. Der Kl. beanstandet die Versendung eines bestimmten Schreibens als wettbewerbswidrig. Damit ist der Ankunftsort dieses Schreibens als Erfolgsort zugleich auch Tatort. Ob die Versendung tatsächlich wettbewerbswidrig war, nämlich einen Verstoß gegen das Rechtsberatungsgesetz darstellt, ist eine Frage der Begründetheit der Klage, die der internationalen Zuständigkeit des angerufenen Gerichts als Tatortgericht im Sinne des Art. 5 Nr. 3 EUGVÜ nicht entgegensteht (Pastor/Ahrens, Der Wettbewerbsprozeß, 4. Aufl., Kap. 22, Rz. 7, 33).

Das verlangte Verbot ist auch hinreichend bestimmt.

Wie in der mündlichen Verhandlung vor dem Senat noch einmal vom Klägervertreter ausdrücklich klargestellt worden ist, ist Gegenstand des Verbotsbegehrens das Schreiben der Bekl. vom 4. November 1997, also die Einziehung von Forderungen, bei denen sowohl der Gläubiger, als auch der Schuldner jeweils in der Bundesrepublik Deutschland ansässig sind. Dieses eigentliche Verbotsbegehren kommt in dem „insbesondere"-Zusatz auch hinreichend zum Ausdruck (Pastor/Ahrens, a.a.O., Kap. 27, Rz. 28; Teplitzky, Wettbewerbsrechtliche Ansprüche, 7. Aufl., Kap. 51, Rz. 36). Entsprechend diesem erkennbaren eigentlichen Verbotsbegehren des Kl. hat der Senat den Verbotstenor

---

\* Dazu oben Budzikiewicz, Die Anwendbarkeit des Rechtsberatungsgesetzes im Fall grenzüberschreitender Inkassotätigkeit, IPRax 2001, 218 (in diesem Heft).

# Exhibit 6

## German Constitution
## English Translation

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Übersetzung durch: Professor Christian Tomuschat und Professor David P. Currie
Übersetzung überarbeitet durch: Professor Christian Tomuschat und Professor Donald P.
Kommers in Kooperation mit dem Sprachendienst des Deutschen Bundestages
Translated by: Professor Christian Tomuschat and Professor David P. Currie
Translation revised by: Professor Christian Tomuschat and Professor Donald P. Kommers in
cooperation with the Language Service of the German Bundestag
Stand: Die Übersetzung berücksichtigt die Änderung(en) des Gesetzes durch Gesetz vom
11.7.2012 (BGBl. I S. 1478)
Version information: The translation includes the amendment(s) to the Act by the Act of
11.7.2012 (Federal Law Gazette I p. 1478)
© 2014 juris GmbH, Saarbrücken

# Basic Law for the Federal Republic of Germany

Basic Law for the Federal Republic of Germany in the revised version published in the
Federal Law Gazette Part III, classification number 100-1, as last amended by the Act of 11
July 2012 (Federal Law Gazette I p. 1478).
The Parliamentary Council, meeting in public session at Bonn am Rhein on 23 May 1949,
confirmed that the Basic Law for the Federal Republic of Germany, which was adopted by
the Parliamentary Council on 8 May 1949, was ratified in the week of 16 to 22 May 1949 by
the parliaments of more than two thirds of the participating German Länder.
By virtue of this fact the Parliamentary Council, represented by its Presidents, has signed
and promulgated the Basic Law.
The Basic Law is hereby published in the Federal Law Gazette pursuant to paragraph (3) of
Article 145.

## Preamble

Conscious of their responsibility before God and man, Inspired by the determination to
promote world peace as an equal partner in a united Europe, the German people, in the
exercise of their constituent power, have adopted this Basic Law. Germans in the Länder of
Baden-Württemberg, Bavaria, Berlin, Brandenburg, Bremen, Hamburg, Hesse, Lower
Saxony, Mecklenburg-Western Pomerania, North Rhine-Westphalia, Rhineland-Palatinate,
Saarland, Saxony, Saxony-Anhalt, Schleswig-Holstein and Thuringia have achieved the
unity and freedom of Germany in free self-determination. This Basic Law thus applies to the
entire German people.

## I. Basic Rights

### Article 1
### [Human dignity – Human rights – Legally binding force of basic rights]

(1) Human dignity shall be inviolable. To respect and protect it shall be the duty of all state
authority.

(2) The German people therefore acknowledge inviolable and inalienable human rights as
the basis of every community, of peace and of justice in the world.

(3) The following basic rights shall bind the legislature, the executive and the judiciary as
directly applicable law.

### Article 2
### [Personal freedoms]

(1) Every person shall have the right to free development of his personality insofar as he
does not violate the rights of others or offend against the constitutional order or the moral
law.

App. 2406

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(2) Every person shall have the right to life and physical integrity. Freedom of the person shall be inviolable. These rights may be interfered with only pursuant to a law.

## Article 3
## [Equality before the law]

(1) All persons shall be equal before the law.

(2) Men and women shall have equal rights. The state shall promote the actual implementation of equal rights for women and men and take steps to eliminate disadvantages that now exist.

(3) No person shall be favoured or disfavoured because of sex, parentage, race, language, homeland and origin, faith, or religious or political opinions. No person shall be disfavoured because of disability.

## Article 4
## [Freedom of faith and conscience]

(1) Freedom of faith and of conscience, and freedom to profess a religious or philosophical creed, shall be inviolable.

(2) The undisturbed practice of religion shall be guaranteed.

(3) No person shall be compelled against his conscience to render military service involving the use of arms. Details shall be regulated by a federal law.

## Article 5
## [Freedom of expression, arts and sciences]

(1) Every person shall have the right freely to express and disseminate his opinions in speech, writing and pictures, and to inform himself without hindrance from generally accessible sources. Freedom of the press and freedom of reporting by means of broadcasts and films shall be guaranteed. There shall be no censorship.

(2) These rights shall find their limits in the provisions of general laws, in provisions for the protection of young persons, and in the right to personal honour.

(3) Arts and sciences, research and teaching shall be free. The freedom of teaching shall not release any person from allegiance to the constitution.

## Article 6
## [Marriage – Family – Children]

(1) Marriage and the family shall enjoy the special protection of the state.

(2) The care and upbringing of children is the natural right of parents and a duty primarily incumbent upon them. The state shall watch over them in the performance of this duty.

(3) Children may be separated from their families against the will of their parents or guardians only pursuant to a law, and only if the parents or guardians fail in their duties or the children are otherwise in danger of serious neglect.

(4) Every mother shall be entitled to the protection and care of the community.

(5) Children born outside of marriage shall be provided by legislation with the same opportunities for physical and mental development and for their position in society as are enjoyed by those born within marriage.

## Article 7
## [School system]

App. 2407

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The entire school system shall be under the supervision of the state.

(2) Parents and guardians shall have the right to decide whether children shall receive religious instruction.

(3) Religious instruction shall form part of the regular curriculum in state schools, with the exception of non-denominational schools. Without prejudice to the state's right of supervision, religious instruction shall be given in accordance with the tenets of the religious community concerned. Teachers may not be obliged against their will to give religious instruction.

(4) The right to establish private schools shall be guaranteed. Private schools that serve as alternatives to state schools shall require the approval of the state and shall be subject to the laws of the Länder. Such approval shall be given when private schools are not inferior to the state schools in terms of their educational aims, their facilities, or the professional training of their teaching staff, and when segregation of pupils according to the means of their parents will not be encouraged thereby. Approval shall be withheld if the economic and legal position of the teaching staff is not adequately assured.

(5) A private elementary school shall be approved only if the educational authority finds that it serves a special pedagogical interest or if, on the application of parents or guardians, it is to be established as a denominational or interdenominational school or as a school based on a particular philosophy and no state elementary school of that type exists in the municipality.

(6) Preparatory schools shall remain abolished.

### Article 8
### [Freedom of assembly]

(1) All Germans shall have the right to assemble peacefully and unarmed without prior notification or permission.

(2) In the case of outdoor assemblies, this right may be restricted by or pursuant to a law.

### Article 9
### [Freedom of association]

(1) All Germans shall have the right to form corporations and other associations.

(2) Associations whose aims or activities contravene the criminal laws, or that are directed against the constitutional order or the concept of international understanding, shall be prohibited.

(3) The right to form associations to safeguard and improve working and economic conditions shall be guaranteed to every individual and to every occupation or profession. Agreements that restrict or seek to impair this right shall be null and void; measures directed to this end shall be unlawful. Measures taken pursuant to Article 12a, to paragraphs (2) and (3) of Article 35, to paragraph (4) of Article 87a, or to Article 91 may not be directed against industrial disputes engaged in by associations within the meaning of the first sentence of this paragraph in order to safeguard and improve working and economic conditions.

### Article 10
### [Privacy of correspondence, posts and telecommunications]

(1) The privacy of correspondence, posts and telecommunications shall be inviolable.

(2) Restrictions may be ordered only pursuant to a law. If the restriction serves to protect the free democratic basic order or the existence or security of the Federation or of a Land, the law may provide that the person affected shall not be informed of the restriction and that recourse to the courts shall be replaced by a review of the case by agencies and auxiliary

App. 2408

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

agencies appointed by the legislature.

## Article 11
### [Freedom of movement]

(1) All Germans shall have the right to move freely throughout the federal territory.

(2) This right may be restricted only by or pursuant to a law, and only in cases in which the absence of adequate means of support would result in a particular burden for the community, or in which such restriction is necessary to avert an imminent danger to the existence or the free democratic basic order of the Federation or of a Land, to combat the danger of an epidemic, to respond to a grave accident or natural disaster, to protect young persons from serious neglect, or to prevent crime.

## Article 12
### [Occupational freedom]

(1) All Germans shall have the right freely to choose their occupation or profession, their place of work and their place of training. The practice of an occupation or profession may be regulated by or pursuant to a law.

(2) No person may be required to perform work of a particular kind except within the framework of a traditional duty of community service that applies generally and equally to all.

(3) Forced labour may be imposed only on persons deprived of their liberty by the judgment of a court.

## Article 12a
### [Compulsory military and alternative civilian service]

(1) Men who have attained the age of eighteen may be required to serve in the Armed Forces, in the Federal Border Police, or in a civil defence organisation.

(2) Any person who, on grounds of conscience, refuses to render military service involving the use of arms may be required to perform alternative service. The duration of alternative service shall not exceed that of military service. Details shall be regulated by a law, which shall not interfere with the freedom to make a decision in accordance with the dictates of conscience, and which shall also provide for the possibility of alternative service not connected with units of the Armed Forces or of the Federal Border Police.

(3) Persons liable to compulsory military service who are not called upon to render service pursuant to paragraph (1) or (2) of this Article may, when a state of defence is in effect, be assigned by or pursuant to a law to employment involving civilian services for defence purposes, including the protection of the civilian population; they may be assigned to public employment only for the purpose of discharging police functions or such other sovereign functions of public administration as can be discharged only by persons employed in the public service. The employment contemplated by the first sentence of this paragraph may include services within the Armed Forces, in the provision of military supplies, or with public administrative authorities; assignments to employment connected with supplying and servicing the civilian population shall be permissible only to meet their basic requirements or to guarantee their safety.

(4) If, during a state of defence, the need for civilian services in the civilian health system or in stationary military hospitals cannot be met on a voluntary basis, women between the age of eighteen and fifty-five may be called upon to render such services by or pursuant to a law. Under no circumstances may they be required to render service involving the use of arms.

(5) Prior to the existence of a state of defence, assignments under paragraph (3) of this Article may be made only if the requirements of paragraph (1) of Article 80a are met. In

App. 2409

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

preparation for the provision of services under paragraph (3) of this Article that demand special knowledge or skills, participation in training courses may be required by or pursuant to a law. In this case the first sentence of this paragraph shall not apply.

(6) If, during a state of defence, the need for workers in the areas specified in the second sentence of paragraph (3) of this Article cannot be met on a voluntary basis, the right of German citizens to abandon their occupation or place of employment may be restricted by or pursuant to a law in order to meet this need. Prior to the existence of a state of defence, the first sentence of paragraph (5) of this Article shall apply mutatis mutandis.

### Article 13
### [Inviolability of the home]

(1) The home is inviolable.

(2) Searches may be authorised only by a judge or, when time is of the essence, by other authorities designated by the laws, and may be carried out only in the manner therein prescribed.

(3) If particular facts justify the suspicion that any person has committed an especially serious crime specifically defined by a law, technical means of acoustical surveillance of any home in which the suspect is supposedly staying may be employed pursuant to judicial order for the purpose of prosecuting the offence, provided that alternative methods of investigating the matter would be disproportionately difficult or unproductive. The authorisation shall be for a limited time. The order shall be issued by a panel composed of three judges. When time is of the essence, it may also be issued by a single judge.

(4) To avert acute dangers to public safety, especially dangers to life or to the public, technical means of surveillance of the home may be employed only pursuant to judicial order. When time is of the essence, such measures may also be ordered by other authorities designated by a law; a judicial decision shall subsequently be obtained without delay.

(5) If technical means are contemplated solely for the protection of persons officially deployed in a home, the measure may be ordered by an authority designated by a law. The information thereby obtained may be otherwise used only for purposes of criminal prosecution or to avert danger and only if the legality of the measure has been previously determined by a judge; when time is of the essence, a judicial decision shall subsequently be obtained without delay.

(6) The Federal Government shall report to the Bundestag annually as to the employment of technical means pursuant to paragraph (3) and, within the jurisdiction of the Federation, pursuant to paragraph (4) and, insofar as judicial approval is required, pursuant to paragraph (5) of this Article. A panel elected by the Bundestag shall exercise parliamentary oversight on the basis of this report. A comparable parliamentary oversight shall be afforded by the Länder.

(7) Interferences and restrictions shall otherwise only be permissible to avert a danger to the public or to the life of an individual, or, pursuant to a law, to confront an acute danger to public safety and order, in particular to relieve a housing shortage, to combat the danger of an epidemic, or to protect young persons at risk.

### Article 14
### [Property – Inheritance – Expropriation]

(1) Property and the right of inheritance shall be guaranteed. Their content and limits shall be defined by the laws.

(2) Property entails obligations. Its use shall also serve the public good.

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) Expropriation shall only be permissible for the public good. It may only be ordered by or pursuant to a law that determines the nature and extent of compensation. Such compensation shall be determined by establishing an equitable balance between the public interest and the interests of those affected. In case of dispute concerning the amount of compensation, recourse may be had to the ordinary courts.

### Article 15
### [Socialisation]

Land, natural resources and means of production may for the purpose of socialisation be transferred to public ownership or other forms of public enterprise by a law that determines the nature and extent of compensation. With respect to such compensation the third and fourth sentences of paragraph (3) of Article 14 shall apply mutatis mutandis.

### Article 16
### [Citizenship – Extradition]

(1) No German may be deprived of his citizenship. Citizenship may be lost only pursuant to a law, and against the will of the person affected only if he does not become stateless as a result.

(2) No German may be extradited to a foreign country. The law may provide otherwise for extraditions to a member state of the European Union or to an international court, provided that the rule of law is observed.

### Article 16a
### [Right of asylum]

(1) Persons persecuted on political grounds shall have the right of asylum.

(2) Paragraph (1) of this Article may not be invoked by a person who enters the federal territory from a member state of the European Communities or from another third state in which application of the Convention Relating to the Status of Refugees and the Convention for the Protection of Human Rights and Fundamental Freedoms is assured. The states outside the European Communities to which the criteria of the first sentence of this paragraph apply shall be specified by a law requiring the consent of the Bundesrat. In the cases specified in the first sentence of this paragraph, measures to terminate an applicant's stay may be implemented without regard to any legal challenge that may have been instituted against them.

(3) By a law requiring the consent of the Bundesrat, states may be specified in which, on the basis of their laws, enforcement practices and general political conditions, it can be safely concluded that neither political persecution nor inhuman or degrading punishment or treatment exists. It shall be presumed that a foreigner from such a state is not persecuted, unless he presents evidence justifying the conclusion that, contrary to this presumption, he is persecuted on political grounds.

(4) In the cases specified by paragraph (3) of this Article and in other cases that are plainly unfounded or considered to be plainly unfounded, the implementation of measures to terminate an applicant's stay may be suspended by a court only if serious doubts exist as to their legality; the scope of review may be limited, and tardy objections may be disregarded. Details shall be determined by a law.

(5) Paragraphs (1) to (4) of this Article shall not preclude the conclusion of international agreements of member states of the European Communities with each other or with those third states which, with due regard for the obligations arising from the Convention Relating to the Status of Refugees and the Convention for the Protection of Human Rights and Fundamental Freedoms, whose enforcement must be assured in the contracting states,

App. 2411

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

adopt rules conferring jurisdiction to decide on applications for asylum, including the reciprocal recognition of asylum decisions.

## Article 17
### [Right of petition]

Every person shall have the right individually or jointly with others to address written requests or complaints to competent authorities and to the legislature.

## Article 17a
### [Restriction of basic rights in specific instances]

(1) Laws regarding military and alternative service may provide that the basic right of members of the Armed Forces and of alternative service freely to express and disseminate their opinions in speech, writing and pictures (first clause of paragraph (1) of Article 5), the basic right of assembly (Article 8), and the right of petition (Article 17) insofar as it permits the submission of requests or complaints jointly with others, be restricted during their period of military or alternative service.

(2) Laws regarding defence, including protection of the civilian population, may provide for restriction of the basic rights of freedom of movement (Article 11) and inviolability of the home (Article 13).

## Article 18
### [Forfeiture of basic rights]

Whoever abuses the freedom of expression, in particular the freedom of the press (paragraph (1) of Article 5), the freedom of teaching (paragraph (3) of Article 5), the freedom of assembly (Article 8), the freedom of association (Article 9), the privacy of correspondence, posts and telecommunications (Article 10), the rights of property (Article 14), or the right of asylum (Article 16a) in order to combat the free democratic basic order shall forfeit these basic rights. This forfeiture and its extent shall be declared by the Federal Constitutional Court.

## Article 19
### [Restriction of basic rights – Legal remedies]

(1) Insofar as, under this Basic Law, a basic right may be restricted by or pursuant to a law, such law must apply generally and not merely to a single case. In addition, the law must specify the basic right affected and the Article in which it appears.

(2) In no case may the essence of a basic right be affected.

(3) The basic rights shall also apply to domestic artificial persons to the extent that the nature of such rights permits.

(4) Should any person's rights be violated by public authority, he may have recourse to the courts. If no other jurisdiction has been established, recourse shall be to the ordinary courts. The second sentence of paragraph (2) of Article 10 shall not be affected by this paragraph.

## II. The Federation and the Länder

## Article 20
### [Constitutional principles – Right of resistance]

(1) The Federal Republic of Germany is a democratic and social federal state.

(2) All state authority is derived from the people. It shall be exercised by the people through elections and other votes and through specific legislative, executive and judicial bodies.

App. 2412

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) The legislature shall be bound by the constitutional order, the executive and the judiciary by law and justice.

(4) All Germans shall have the right to resist any person seeking to abolish this constitutional order, if no other remedy is available.

### Article 20a
### [Protection of the natural foundations of life and animals]

Mindful also of its responsibility toward future generations, the state shall protect the natural foundations of life and animals by legislation and, in accordance with law and justice, by executive and judicial action, all within the framework of the constitutional order.

### Article 21
### [Political parties]

(1) Political parties shall participate in the formation of the political will of the people. They may be freely established. Their internal organisation must conform to democratic principles. They must publicly account for their assets and for the sources and use of their funds.

(2) Parties that, by reason of their aims or the behaviour of their adherents, seek to undermine or abolish the free democratic basic order or to endanger the existence of the Federal Republic of Germany shall be unconstitutional. The Federal Constitutional Court shall rule on the question of unconstitutionality.

(3) Details shall be regulated by federal laws.

### Article 22
### [Federal capital – Federal flag]

(1) Berlin is the capital of the Federal Republic of Germany. The Federation shall be responsible for representing the nation as a whole in the capital. Details shall be regulated by federal law.

(2) The federal flag shall be black, red and gold.

### Article 23
### [European Union – Protection of basic rights – Principle of subsidiarity]

(1) With a view to establishing a united Europe, the Federal Republic of Germany shall participate in the development of the European Union that is committed to democratic, social and federal principles, to the rule of law, and to the principle of subsidiarity, and that guarantees a level of protection of basic rights essentially comparable to that afforded by this Basic Law. To this end the Federation may transfer sovereign powers by a law with the consent of the Bundesrat. The establishment of the European Union, as well as changes in its treaty foundations and comparable regulations that amend or supplement this Basic Law, or make such amendments or supplements possible, shall be subject to paragraphs (2) and (3) of Article 79.

(1a) The Bundestag and the Bundesrat shall have the right to bring an action before the Court of Justice of the European Union to challenge a legislative act of the European Union for infringing the principle of subsidiarity. The Bundestag is obliged to initiate such an action at the request of one fourth of its Members. By a statute requiring the consent of the Bundesrat, exceptions from the first sentence of paragraph (2) of Article 42, and the first sentence of paragraph (2) of Article 52, may be authorised for the exercise of the rights granted to the Bundestag and the Bundesrat under the contractual foundations of the European Union.

(2) The Bundestag and, through the Bundesrat, the Länder shall participate in matters

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

concerning the European Union. The Federal Government shall keep the Bundestag and the Bundesrat informed, comprehensively and at the earliest possible time.

(3) Before participating in legislative acts of the European Union, the Federal Government shall provide the Bundestag with an opportunity to state its position. The Federal Government shall take the position of the Bundestag into account during the negotiations. Details shall be regulated by a law.

(4) The Bundesrat shall participate in the decision-making process of the Federation insofar as it would have been competent to do so in a comparable domestic matter, or insofar as the subject falls within the domestic competence of the Länder.

(5) Insofar as, in an area within the exclusive competence of the Federation, interests of the Länder are affected, and in other matters, insofar as the Federation has legislative power, the Federal Government shall take the position of the Bundesrat into account. To the extent that the legislative powers of the Länder, the structure of Land authorities, or Land administrative procedures are primarily affected, the position of the Bundesrat shall be given the greatest possible respect in determining the Federation's position consistent with the responsibility of the Federation for the nation as a whole. In matters that may result in increased expenditures or reduced revenues for the Federation, the consent of the Federal Government shall be required.

(6) When legislative powers exclusive to the Länder concerning matters of school education, culture or broadcasting are primarily affected, the exercise of the rights belonging to the Federal Republic of Germany as a member state of the European Union shall be delegated by the Federation to a representative of the Länder designated by the Bundesrat. These rights shall be exercised with the participation of, and in coordination with, the Federal Government; their exercise shall be consistent with the responsibility of the Federation for the nation as a whole.

(7) Details regarding paragraphs (4) to (6) of this Article shall be regulated by a law requiring the consent of the Bundesrat.

## Article 24
### [Transfer of sovereign powers – System of collective security]

(1) The Federation may by a law transfer sovereign powers to international organisations.

(1a) Insofar as the Länder are competent to exercise state powers and to perform state functions, they may, with the consent of the Federal Government, transfer sovereign powers to transfrontier institutions in neighbouring regions.

(2) With a view to maintaining peace, the Federation may enter into a system of mutual collective security; in doing so it shall consent to such limitations upon its sovereign powers as will bring about and secure a lasting peace in Europe and among the nations of the world.

(3) For the settlement of disputes between states, the Federation shall accede to agreements providing for general, comprehensive and compulsory international arbitration.

## Article 25
### [Primacy of international law]

The general rules of international law shall be an integral part of federal law. They shall take precedence over the laws and directly create rights and duties for the inhabitants of the federal territory.

## Article 26
### [Securing international peace]

App. 2414