IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY ROIF ROTSTAIN, ET AL., on behalf of themselves and all others similarly situated, | § § § § | |
| Plaintiffs | § | Civil Action No 3:09-CV-02384-N-BG |
| | § | |
| | § | Judge: Hon. David C. Godbey |
| v. | § | Mag.: Hon. Nancy M. Koenig |
| | § | |
| TORONTO-DOMINION BANK, ET AL. | § | |
| | § | |
| Defendants. | § | |
| | § | |

**BRIEF IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE**

TO THE HONORABLE COURT:

Intervenors[1] file this Brief in Support of their Motion for Leave to Intervene, and respectfully move this Court for an Order granting the Intervenors leave to intervene and appear as plaintiffs in this action against Defendants Toronto-Dominion Bank ("TD Bank"), Societe Generale Private Banking (Suisse) S.A. ("SG Suisse"), Blaise Friedli ("Friedli"), HSBC Bank, plc ("HSBC"), Trustmark National Bank ("Trustmark"), and Independent Bank f/k/a as Bank of Houston ("BoH") (collectively "Defendants"), all of whom are already parties in the above-referenced action.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

1.      Robert Allen Stanford ("R.A. Stanford"), his associates, and various entities under his control (the "Stanford Entities") perpetrated a Ponzi scheme against investors around the world.

---

[1] The term "Intervenors" is defined in the Motion for Leave to Intervene in support of which this brief is presented.

2.      The Stanford Ponzi scheme began with the founding of Guardian International Bank, Ltd. ("Guardian") on the island of Montserrat, where Guardian sold certificates of deposits ("CDs") through its sales force operating out of Houston, Texas.   Guardian, however, was eventually ordered by the Texas Department of Banking to cease its Texas operations due to its violations of the Texas Banking Code.   Montserrat likewise revoked Guardian's banking license for similar reasons.

3.      Guardian subsequently relocated to Antigua and changed its name to Stanford International Bank, Ltd. ("SIBL").   Because it was an offshore bank, SIBL needed other banks to accept deposits from its customers in exchange for CDs issued by SIBL.

4.      Although it held itself out as offering safe investments in the form of CDs earning above-market returns, SIBL operated as a classic Ponzi scheme and R.A. Stanford's personal piggy bank.

5.      SIBL transferred proceeds from the sale of its CDs to various other Stanford Entities to meet their cash needs and to fund R.A. Stanford's extravagant lifestyle through undisclosed and unsecured personal loans to R.A Stanford himself.

6.      The fraud remained hidden because information provided by Stanford Entities' financial advisors to purchasers of SIBL CDs omitted key facts about SIBL's investments and earnings – or, rather, the lack thereof – leaving investors unaware of SIBL and the Stanford Entities' unsanctioned and illegal activities, including actively bribing its auditor and regulators.

7.      The Stanford Ponzi scheme lasted from 1985 to early 2009, when it was brought down by the financial crisis.   On February 16, 2009, the U.S. District Court for the Northern District of Texas appointed a receiver for the Stanford Entities who took over the next day, February 17, 2009, the same day the SEC raided several Stanford Entities' offices.   The court has

found that the Stanford fraud was a Ponzi scheme as a matter of law.

8.     On August 23, 2009, nearly 10 years ago, a class action was filed in the 129th District Court for Harris County, Texas, on behalf of a putative class of SIBL CD investors—which would necessarily include Intervenors here—asserting various claims against Trustmark National Bank ("Trustmark"), HSBC Bank, plc ("HSBC"), The Toronto-Dominion Bank ("TD Bank"),  Societe Generale Private Banking (Suisse) S.A. ("SG Suisse"), and Bank of Houston ("BoH") (collectively "Defendants").[2]  [Doc. 1-4 in Case 3:09-cv-02384-N-BQ].  The Defendants removed the action to federal court, and the Judicial Panel for Multi-District Litigation transferred the case to this Court in the U.S. District Court for the Northern District of Texas, as part of the ongoing Stanford MDL proceedings.

9.     The Original Petition was then amended in October 2009.  In August 2009, the court approved the formation of the Official Stanford Investors Committee (the "OSIC") to litigate against third parties on behalf of the Receiver.  The OSIC filed a motion to intervene in this case, which the Court granted, and it filed two intervenor complaints.

10.     The first intervenor complaint asserted causes of action against SG Suisse and Friedli, and the second intervenor complaint asserted causes of action against Trustmark, HSBC, TD Bank, and BoH.

11.     In response to these new complaints, the putative class plaintiffs moved for leave to amend their complaint to incorporate allegations and claims asserted in the OSIC intervenor complaints.  The Court granted the motion and the putative class filed their Second Amended Class Action Complaint on June 23, 2015 against Trustmark, HSBC, TD Bank, SG Suisse, Friedli, and

---

[2] Blaise Friedli, SG Suisse's Executive Vice President, was subsequently added as a defendant.

BoH.  [Doc. 279 in Case 3:09-cv-02384-N-BQ].

12.     As alleged more fully in Intervenors' Complaint, attached hereto as Exhibit A, and which largely mimics the putative class' Second Amended Complaint, the putative class asserted claims against Defendants for aiding and abetting fraud, aiding and abetting violations of the Texas Securities Act, aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and civil conspiracy.

13.     In particular, Defendants were aware that the only real infusion of capital into the Stanford empire came from SIBL CD investors and, Defendants, aware that R.A. Stanford was the sole owner and shareholder of every Stanford Entity, must have recognized the lack of corporate separateness of those entities.  Therefore, Defendants were aware of the misuse of SIBL CD investor funds and they should have frozen Stanford Entities' accounts and terminated their banking relationships.

14.     However, R.A. Stanford's business afforded Defendants substantial revenue and Defendants let the fraud continue, providing knowing and substantial assistance to Stanford's theft and diversion of billions of dollars of investor funds to enable Defendants' continued receipt of lucrative fees in connection with the services it was providing to Stanford.  Defendants turned a blind eye and R.A. Stanford used Defendants' good names and reputations to create an appearance of legitimacy to the SIBL CD program.  However, unsanctioned transfers between the Stanford Entities as facilitated by Defendants are the reason investors could not be repaid their investments.

15.     On October 29, 2015, the putative class moved for class certification, and subsequently amended their motion for class certification on January 26, 2016.  However, on November 7, 2017, the Court denied the putative class' motion for class certification after finding that common issues of fact did not predominate since investors had different financial advisors

and received varying oral representatives in separate sales pitches for SIBL CDs. *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N-BQ, (Doc. No. 428) (Order), at 3-5 (N.D. Tex. Nov. 7, 2017).

16.     Because the Court denied class certification, Intervenors' individual claims are no longer protected by a putative class, and Intervenors are thus forced to file individual claims against Defendants.

## II.
## BASIS FOR RELIEF REQUESTED

17.     Federal Rule of Civil Procedure 24 ("Rule 24") provides for two forms of intervention: intervention as of right and permissive intervention. "[A]nyone" shall be permitted to intervene in an action as of right under Rule 24(a)(2) if: (1) the application is timely; (2) the applicant has an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair the applicant's ability to protect that interest; and (4) the applicant's interest cannot be adequately represented by the existing parties. *See* Rule 24(a)(2); *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994). The intervention of right inquiry is flexible, focusing on the particular facts and circumstances of each case, and "must be measured by a practical rather than technical yardstick." *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992) (*quoting United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991)).

18.     Alternatively, Federal Rule of Civil Procedure 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention "lies within the discretion of the Court and in exercising its discretion the Court shall consider whether the

intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

*Huron Envt'l. Activist League v. EPA*, 917 F. Supp. 34, 43 (D. D.C. 1996) (quotation omitted).

19.     Intervention in the present action is warranted as of right because all four elements are met.  First, the intervention is timely.  *See Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) ("[T]hat these motions were filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation"); *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970) (finding application timely and permitting intervention where intervenor did not file application until over a year after the intervenors had knowledge about the underlying complaint); *Kazoak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) (same); *Innis, Speiden & Co. v. Food Machinery Corp.*, 2 F.R.D. 261, 265 (D. Del. 1942) (permitting intervention where application was filed 4 years after original suit).

20.     As an initial matter, while more than a year has passed since class certification was denied, it is important to note that this is not a typical lawsuit.  This suit involves a $7 billion Ponzi scheme that impacted more than 17,000 victimized investors, and this specific case has been pending for nearly a decade.  To Intervenors' knowledge, only written discovery has taken place to date—with Defendants having only started their own document production within the last 60 days—and no depositions have taken place.  As discussed further below, Intervenors do not anticipate that any delay in discovery would result from this intervention.

21.     Moreover, because this case was initially filed as a class action suit on behalf of the nearly 17,000 victims of the Stanford Ponzi scheme, including Intervenors here, substantial time was required after the denial of class certification, to identify and locate unnamed class members and to finalize retention agreements to bring individual suits on their own behalf.  Additionally,

6

the undersigned counsel spent time attempting to negotiate a potential tolling agreement that would

have at least temporarily obviated the need for this intervention, though that agreement ultimately

failed to materialize.

22.    Ultimately, if Intervenors are denied intervention, they face the risk of losing the

ability to prosecute their own claims arising from one the most heinous financial crimes in history.

*See Edwards*, 78 F.3d at 1000 (explaining that when addressing timeliness, courts should consider,

among other things, "the extent of prejudice that the would-be intervenor may suffer if his petition

for leave to intervene is denied," and the "existence of unusual circumstances mitigating either for

or against a determination that the application is timely.").

23.    Second, the Intervenors—SIBL CD investors who made up part of the original

putative class—indisputably have an "interest relating to the property or transaction that is the

subject of this action" within the meaning of Rule 24(a)(2)—namely, the funds transferred by the

Stanford Entities to the Defendants and the transactions facilitated by the Defendants which

enabled R.A. Stanford to perpetrate his Ponzi scheme.  *See John Doe No. 1 v. Glickman*, 256 F.3d

371, 379-80 (5th Cir. 2001) (explaining that "the interest test is primarily a practical guide to

disposing of lawsuits by involving as many apparently concerned persons as compatible with

efficiency and due process[.]").  Indeed, the Intervenors intend to allege the same set of facts and

causes of action against Defendants, as reflected in Exhibit A.[3]

24.    Third, Intervenors "are so situated that the disposition of the [present] action may,

as a practical matter, impair" Intervenors' ability to protect their interests.  Should the Court refuse

to permit Intervenors to join the present action, their claims are at risk of being time-barred and

---

[3] Although Intervenors also intend to assert a new theory of liability pursuant to the Texas Theft Liability Act, the claim is predicated on the same set of facts and will not surprise or prejudice Defendants.

the Defendants refused to enter into a tolling agreement with Intervenors.  Likewise, Intervenors are so situated that if they are not permitted to prosecute their own claims, not only would their interests be impaired "as a practical matter," they risk losing the ability to protect their own interests as a *legal* matter based on collateral estoppel.  *See generally* Advisory Committee Note to Rule 24 (1966); *see also Glickman*, 254 F.3d at 380 (permitting intervention because the lawsuit applicant sought to intervene "could collaterally estop [the applicant] from re-litigating the issue[.]"); *Edwards*, 78 F.3d at 1004-05 (same).  And similarly, if Intervenors are not allowed to intervene, they will not have any ability to appeal an adverse ruling in this action despite the fact that any such ruling could impact Intervenors' separate lawsuits through collateral estoppel.  *See Glickman*, 256 F.3d at 379; *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001) (finding that the potential intervenor could suffer prejudice if not allowed to intervene into an action because the ruling in that action would restrict any remedy she sought in a separate suit).

25.    Fourth, the current individual plaintiffs in the lawsuit cannot adequately represent Intervenors' interests because this Court denied class certification and, therefore, Intervenors cannot personally recover from this underlying action unless they are permitted to intervene. Relatedly, OSIC, who is authorized to act in part on behalf of the Receiver, and thus the Receivership estate – not the individual investors— has already represented to this Court in its own motion to intervene that "it does not seek to replace or supplant the putative class Plaintiffs[.]" [Doc. 96 in Case 3:09-cv-02384-N-BQ].  In other words, OSIC has already admitted that it does not stand in place for the putative class plaintiffs, which includes Intervenors.  For example, given OSIC's position as acting on behalf of the receiver, OSIC is able to assert direct fiduciary duty claims, amongst other distinct claims, such as fraudulent transfers, against Defendants, whereas Intervenors would have no such claims.  In other words, OSIC is clearly positioned differently

than Intervenors—and may in fact be limited in what claims they are permitted to bring—and thus OSIC does not adequately represent the interests of the Intervenors. But in any event, the burden of proving that the existing parties do not adequately represent the applicant's interest is "minimal" and the applicant "need only show that the representation *may* be inadequate." *Glickman*, 256 F.3d at 380 (emphasis added).

26.     Intervention is also appropriate on permissive grounds. As explained above, Intervenors will allege the same set of facts and claims asserted by the original plaintiffs in this action. *See* Exhibit A. Additionally, for the reasons explained above, Intervenors will be prejudiced if they are not permitted to intervene, because their claims may otherwise be found to be time-barred and because Intervenors may be collaterally estopped from pursuing the same claims at a future time, and because they will likewise not be permitted to appeal any adverse ruling.

27.     On the other hand, this intervention will not prejudice the original parties to this action. As explained above, Intervenors seek to assert claims against Defendants based on the same facts. Defendants in fact knew that the original plaintiffs were not the only parties with such claims, as evidenced by the fact that this case was originally filed as a class action. Defendants will actually benefit from judicial efficiency by having an opportunity to resolve all potential claims against them based on the same set of facts in one forum with one trial. The Court will also benefit for the same reason. And further, the intervention will not prejudice the original plaintiffs to this action who purported to assert the Intervenors' claims as part of their class action.

28.     Correspondingly, Intervenors do not anticipate any delay in the case by their participation in discovery. Intervenors intend to rely on the same fact discovery that has been conducted to date, and without the need to rehash the same areas of discovery the original parties

have already exhausted.  Despite the expiration of the fact discovery deadline in this matter, Intervenors are informed that no depositions have been conducted since the denial of class certification, Defendants have only recently (within the past 60 days) begun the exchange of document discovery, and, moreover, a new scheduling order will need to be entered to permit the completion of discovery before trial.  *See Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3691015, at *3 (W.D. Tex. Dec. 12, 2006) (granting motion to intervene where significant discovery had only just began and court entered a new scheduling order and where intervenor's complaint was substantially similar to the complaint filed by the original plaintiffs); *see also Diaz*, 427 F.2d at 1125 (permitting intervention even where discovery had been completed).  Permitting this intervention will allow the Intervenors to participate in those depositions and avoid the need for witnesses to sit for more than one deposition.  In other words, permitting intervention will not cause delay and will conserve the parties and courts' resources.

29.    Based upon the foregoing, Intervenors respectfully request that their motion to intervene be granted, and that Intervenors be granted leave to file their Complaint in substantially the form attached as Exhibit A.

**PRAYER FOR RELIEF**

**WHEREFORE**, Intervenors pray that the Court grant this motion for leave to intervene in and prosecute this action and for such other relief as is just and proper.

Dated: May 3, 2019

Respectfully submitted,

KASOWITZ BENSON TORRES LLP


By: */s/* Constantine Z. Pamphilis
    Constantine Z. Pamphilis
    State Bar No. 00794419
    dpamphilis@kasowitz.com
    J. Michael Wilson
    State Bar No. 24047125
    mwilson@kasowitz.com
    Nathan W. Richardson
    State Bar No. 24094914
    nrichardson@kasowitz.com
    1415 Louisiana, Suite 2100
    Houston, Texas 77002
    Telephone: (713) 220-8800
    Facsimile: (713) 222-0843

    &

TILLOTSON LAW FIRM

Jeffrey M. Tillotson
Texas Bar No. 20039200
jtillotson@tillotsonlaw.com
1807 Ross Avenue, Suite 325
Dallas, Texas 75201
Telephone: (214) 382-3041
Facsimile: (214) 501-0731

OF COUNSEL:

KASOWITZ BENSON TORRES LLP

Andrew K. Glenn
aglenn@kasowitz.com
*Pro Hac Vice to be submitted*
Gavin D. Schryver
gschryver@kasowitz.com
*Pro Hac Vice to be submitted*
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

ATTORNEYS FOR INTERVENORS

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on this 3rd day of May, 2019 on all counsel of record via CM/ECF, and/or email, pursuant to the Rules of Procedure.

/s/ Nathan W. Richardson
Nathan W. Richardson