IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: STANFORD ENTITIES SECURITIES LITIGATION § § § *Rotstain, et al. v. Trustmark Nat'l* § *Bank, et al.*, 3:09-CV-2384-N § § | MDL No. 2099 |

# SUGGESTION OF REMAND TO THE SOUTHERN DISTRICT OF TEXAS

Pursuant to Panel Rule 10.1, this Court respectfully recommends that the Judicial Panel on Multidistrict Litigation ("JPML") remand *Rotstain, et al. v. Trustmark Nat'l Bank, et al.*, No. 3:09-CV-2384-N to the Southern District of Texas.

## I. HISTORY OF THE STANFORD MDL

R. Allen Stanford created and perpetrated a Ponzi scheme that has given rise to much litigation. Stanford created and owned Stanford International Bank, Ltd. (SIB), located in the Commonwealth of Antigua and Barbuda, and a complex web of related companies. Stanford sold certificates of deposit ("CDs") to the investing public, promising buyers high rates of return. Stanford represented to prospective investors that their funds would be reinvested in high-quality securities, which would yield high rates of return guaranteed by the CDs. Stanford, however, funneled the investors' funds into speculative private equity investments and also used the funds to support his extravagant lifestyle. As early as 1999, Stanford began using the vast majority of new investor funds to pay the promised returns to prior investors. This scheme allowed Stanford to continue selling additional CDs to yet more prospective investors. It is not clear when the scheme began,

ORDER – PAGE 1

but Stanford's Chief Financial Officer determined that the Ponzi scheme began and was insolvent as early as 1999, until it began to unravel in October 2008. By the time the scheme collapsed in February 2009, the Stanford entities had liabilities exceeding $7 billion from the sale of fraudulent CDs. Stanford was prosecuted for and convicted of numerous federal offenses.

The Securities and Exchange Commission (the "SEC") brought a civil suit in this District against Stanford, his agents, and his corporations on February 16, 2009. The SEC asked the Court to appoint a receiver for Stanford and his companies in order to preserve the Stanford corporations' resources and pursue the corporations' assets that were in the hands of third parties as a result of fraudulent conveyances. This Court then appointed Ralph S. Janvey (the "Receiver") as receiver and authorized him to commence any actions necessary to recover assets of the Receivership Estate.

The SEC's filing of the receivership instituted a flood of litigation in both federal and state courts. By Order dated October 6, 2009, the JPML centralized the federal Stanford litigation in this Court. *In re Stanford Entities Litig.*, 655 F. Supp. 2d 1360 (J.P.M.L. 2009). The Panel's rationale for MDL centralization was that "[a]ll actions arise out of the alleged $8 billion fraud" perpetrated by R. Allen Stanford through the Stanford companies he controlled. The Panel further reasoned that common factual questions existed, involving "alleged misrepresentations or omissions relating to the safety of Stanford investments." *Id*. These included whether "claims focus on (1) alleged misrepresentations or omissions by Stanford, (2) insurance coverage letters used by

Stanford to promote its investments or (3) the alleged role of the Commonwealth of Antigua and Barbuda in the alleged Stanford fraud . . . ." *Id*.

The receivership has proceeded along five fronts: (1) primary claims against Stanford and the Stanford principals; (2) establishment of an investor claims and distribution procedure; (3) asset recovery; (4) clawback litigation against certain Stanford investors and employees; and (5) third-party litigation against other entities (bankers, insurers, accountants, lawyers, etc.) that the Receiver believed had facilitated the Stanford Ponzi scheme.

Stanford and the Stanford principals were criminally prosecuted in the Southern District of Texas and were either found guilty or pled guilty. The SEC obtained summary judgment against Stanford in the receivership action. In connection with asset recovery,[1] the Receiver took control over Stanford's books and records and has completed an extensive forensic analysis of those records. The Stanford principals have been deposed from prison, and the Receiver's forensic expert has testified and been deposed multiple times. The Receiver has established a document repository for the recovered Stanford records and established procedures for litigants to obtain access to those materials.

The first three fronts of the receivership are substantially complete. This Court fervently hopes that the clawback and third-party litigation are winding down.

---

[1] The Receiver's asset recovery efforts were complicated by the existence of a parallel receivership process under the auspices of the government of Antigua and Barbuda, which had arguably sheltered the Stanford enterprises.

ORDER – PAGE 3

## II. REMAND STANDARD

Section 1407 states that "[e]ach action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." 28 U.S.C. § 1407(a). However, it is "not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel . . . ." *In re Evergreen Valley Project Litig.*, 435 F. Supp. 923, 924 (J.P.M.L. 1977). Instead, the transferee judge "in his discretion will conduct the common pretrial proceedings with respect to the actions and any additional pretrial proceedings as he deems otherwise appropriate." *Id*. Therefore, in considering remand, the Panel is "greatly influenced by the transferee judge's suggestion that remand of the action is appropriate." *Id.*; *see also In re Data Gen. Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1226-27 (J.P.M.L. 1979) (per curiam). Moreover, courts "routinely suggest remand despite pending dispositive motions . . . and the JPML has repeatedly remanded cases under such circumstances." *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1200 (D. Minn. 2012); *see, e.g.*, *In re Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d 1175, 1177 (J.P.M.L. 2000).

## III. THIS COURT RESPECTFULLY SUGGESTS REMAND

In the dozen years since the JPML ordered this case transferred as part of the Stanford MDL, it has undergone significant changes. A high-level summary of the procedural history, the Court believes, will best serve the purposes of this suggestion.

ORDER – PAGE 4

Pursuant to an order of the JPML, this case was transferred to this court from the Southern District of Texas in December 2009. The original plaintiffs, a group of defrauded investors, brought this action against several banks as a putative class action asserting statutory and common law causes of action. After the initiation of this case, the Court approved the creation of an entity called the Official Stanford Investor's Committee ("OSIC"). OSIC has similar rights and responsibilities as a bankruptcy creditors' committee appointed under Title 11 of the United States Code. *See generally* Aug. 10, 2010 Order [1149], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). OSIC moved to intervene in the case, which the Court granted. After denying in whole or in part numerous motions to dismiss, the case proceeded to the class certification stage. The Court ultimately denied the motion for class certification, from which point forward the plaintiffs consisted of several individual named plaintiffs and OSIC.

Following denial of class certification, discovery proceeded. That process ended in late 2020, and the defendants subsequently filed motions for summary judgment. Contemporaneous with this Suggestion, the Court has issued an Order granting in part and denying in part the defendants' motions for summary judgment.

The ripe motions that remain pending at this point may broadly be grouped as follows:

- Motion to Set Trial Date
- Two Motions for Leave to Designate Responsible Third Parties
- Motion to Sever
- Numerous *Daubert* Motions
- Plaintiff OSIC's Partial Motion for Summary Judgment

ORDER – PAGE 5

- Defendant TD Bank's Motion for Leave to File a Second Motion for Summary Judgment

The Court respectfully suggests that the proper time to remand the case to the Southern District of Texas has arrived. The Defendants' motions for summary judgment addressed all claims in the case and may have obviated the need for trial as to one or more of the Defendants. The Court has recently addressed these motions, concluding that triable issues exist. The case will need to be remanded at some point so that trial may proceed in the Southern District.

Of the above outstanding motions, the first four motions deal explicitly with the manner in which the trial will be conducted. The power to resolve these matters properly lies with the judge who will preside over the trial.

The Court believes that, on balance, the final two motions in the above list are best left to the discretion of the trial judge. The Court's familiarity with the complexities of this case, developed over more than a decade, made it uniquely positioned to address the suite of motions to dismiss filed by the Defendants. Several of the grounds for summary judgment, for example, raised objections already considered at the motion to dismiss stage. Addressing these required only that the Court revisit issues with which it was familiar against a slightly different standard. Furthermore, as previously noted, these motions may have obviated the need for trial altogether. By contrast, the remaining motions (OSIC's partial motion for summary judgment and the motion for summary judgment that TD Bank wishes to file) focus on the preclusive effect of foreign judgments. Because these objections are 1) much narrower in scope than the all-encompassing motions originally

filed by defendants and 2) have the capacity to influence the scope of issues presented at trial in the Southern District, the Court believes that the discretion to resolve these motions should reside with the court tasked with overseeing the trial. Accordingly, the Court respectfully recommends that the JPML remand this case to the Southern District of Texas.

The District Clerk is instructed to direct a copy of this Order to the Judicial Panel on Multidistrict Litigation forthwith.

Signed January 19, 2022.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 7